UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MAHMOUD KHALIL, | *Civ. Act. No.* 25-cv-1963 |
| *Petitioner,* | |
| v. | |
| WILLIAM P. JOYCE, *et al.,* | |
| *Respondents.* | |

RESPONDENTS' OPPOSITION TO PETITIONER'S MOTION FOR RELEASE UNDER
*LUCAS v. HADDEN* AND *MAPP v. RENO*

On the brief:

YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division

DREW C. ENSIGN
Deputy Assistant Attorney General

SARAH S. WILSON
Assistant Director

ALANNA T. DUONG
DHRUMAN Y. SAMPAT
Senior Litigation Counsel

JOSHUA C. McCROSKEY
Trial Attorney

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT....................................................................................................1

FACTUAL BACKGROUND.......................................................................................................1

    I.    Khalil's Immigration Detention ......................................................................................1

    II.    Khalil's Habeas Petition ..................................................................................................3

LEGAL ARGUMENT..................................................................................................................5

    I.    The Court Should Defer Decision on this Motion.........................................................5

    II.    The Court Lacks the Authority to Grant Interim Release. ...........................................5

        A.    Bail Pending Habeas Review is Only Appropriate Where Habeas Review is Available. ......6

            i.    Khalil cannot overcome the jurisdictional bar in section 1252(b)(9). ...............................6

            ii.    Khalil cannot overcome the jurisdictional bar in section 1252(g). .....................................8

        B.    *Lucas* Does Not Permit Release Outside of the INA's Express Limitations.......................13

    III.    Khalil's Petition Fails on the Merits..........................................................................16

        A.    Khalil Has not Shown a High Probability of Success on his APA and Accardi Claims.....18

        B.    Khalil Has Not Shown a High Probability of Success on His Due Process Clause Claim.21

        C.    Khalil Has Not Shown a High Probability of Success on His First Amendment Claim....22

        D.    Khalil Has Not Established Extraordinary Circumstances to Interfere with Habeas Relief. 25

CONCLUSION.........................................................................................................................31

## TABLE OF AUTHORITIES

Page(s)

### Cases

*Accardi v. Shaughnessy,*
  347 U.S. 260 (1954) ................................................................................................ 18, 19

*Alvarez v. U.S. Immigr. & Customs Enf't,*
  818 F.3d 1194 (11th Cir. 2016) ............................................................................... 11

*Arce v. United States,*
  899 F.3d 796 (9th Cir. 2018) .................................................................................... 10

*Armando C. G. v. Tsoukaris,*
  No. 20-cv-5652 (MCA), 2020 WL 4218429 (D.N.J. July 23, 2020) ...................... 29

*Armstrong v. Exceptional Child Ctr., Inc.,*
  575 U.S. 320 (2015) ..................................................................................................... 6

*Bello-Reyes v. Gaynor,*
  985 F.3d 696 (9th Cir. 2021) .................................................................................... 24

*Bennett v. Spear,*
  520 U.S. 154 (1997) .............................................................................................. 18, 20

*Black v. Decker,*
  103 F.4th 133 (2d Cir. 2024) ............................................................................... 22, 23

*Bluman v. Fed. Election Comm'n,*
  800 F. Supp. 2d 281 (D.D.C. 2011), *aff'd,* 565 U.S. 1104 (2012) ........................ 25

*Bolante v. Keisler,*
  506 F.3d 618 (7th Cir. 2007) .................................................................................... 16

*Bonhometre v. Gonzales,*
  414 F.3d 442 (3d Cir. 2005) ....................................................................................... 7

*Boyer v. City of Orlando,*
  402 F.2d 966 (5th Cir. 1968) .................................................................................... 26

*Bridges v. Wixon,*
  326 U.S. 135 (1945) .................................................................................................... 25

*Calley v. Callaway,*
  496 F.2d 701 (5th Cir. 1974) .................................................................................... 21

*Camerena v. Director, Immigration and Customs Enforcement,*
  988 F.3d 1268 (11th Cir. 2021)..................................................................10

*Carlos M. R. v. Decker,*
  No. CV 20-6016 (MCA), 2020 WL 4339452 (D.N.J. July 28, 2020) ..................28

*Carlson v. Landon,*
  342 U.S. 524 (1952) ...................................................................................22

*Cinquemani v. Ashcroft,*
  No. 00 Civ. 1460 (RJD), 2001 WL 939664 (E.D.N.Y. Aug. 16, 2001) ..............16

*Citizens of Overton Park v. Volpe,*
  401 U.S. 402 (1971) ...................................................................................24

*Cooley v. Atty Gen.,*
  No. 10-cv-02, 2011 WL 13193263 (W.D. Pa. Feb. 1, 2011) ...........................18

*Cooper Butt ex rel Q.T.R. v. Barr,*
  954 F.3d 901 (6th Cir. 2020) .......................................................................12

*D'Alessandro v. Mukasey,*
  No. 08 Civ. 914, 2009 WL 799957 (W.D.N.Y. Mar. 25, 2009) .........................29

*Delgado v. Quarantillo,*
  643 F.3d 52 (2d Cir. 2011) ............................................................................8

*Demore v. Kim,*
  538 U.S. 510 (2003) ..............................................................................21, 22

*Duvall v. Elwood,*
  336 F.3d 228 (3d Cir. 2003) .........................................................................16

*E.F.L. v. Prim,*
  986 F.3d 959 (7th Cir. 2021) ..............................................................9, 10, 13

*E.O.H.C. v. Sec. United States Dep't of Homeland Sec.,*
  950 F.3d 177 (3d Cir. 2020) ...........................................................................7

*Elgharib v. Napolitano,*
  600 F.3d 597 (6th Cir. 2010) .......................................................................12

*Elkimya v. Dep't of Homeland Sec.,*
  484 F.3d 151 (2d Cir. 2007) .........................................................................27

*Enriquez-Perdomo v. Newman,*
  54 F.4th 855 (6th Cir. 2022) ..........................................................................9

*Fed. Defs. of New York, Inc. v. Fed. Bureau of Prisons,*
   954 F.3d 118 (2d Cir. 2020) ........................................................................... 19

*Frisby v. U.S. Department of Housing & Urban Development,*
   755 F.2d 1052 .................................................................................................... 24

*Garcia v. Att'y Gen. of U.S.,*
   553 F.3d 724 (3d Cir. 2009) ........................................................................... 13

*Gutierrez-Soto v. Sessions,*
   317 F. Supp. 3d 917 (W.D. Tex. 2018) ......................................................... 24

*Guzman v. Moshannon Valley Processing Ctr.,*
   Civ. Act. No. 24-1054 (JKS), 2024 WL 1251170 (D.N.J. Mar. 22, 2024) ........................................... 5

*Haig v. Agee,*
   453 U.S. 280 (1981) ................................................................................. 24, 26

*Hamama v. Homan,*
   912 F.3d 869 (6th Cir. 2018) ......................................................................... 10

*Han Tak Lee v. Cameron,*
   No. 4:08-CV-1972, 2014 WL 4187590 (M.D. Pa. Aug. 22, 2014) ................. 30

*Harisiades v. Shaughnessy,*
   342 U.S. 580 (1952) ........................................................................................ 25

*Harvey v. Chertoff,*
   263 F. App'x 188 (3d Cir. 2008) .................................................................... 22

*Holder v. Humanitarian L. Project,*
   561 U.S. 1 (2010) ............................................................................................ 25

*Hope v. Warden York Cnty. Prison,*
   972 F.3d 310 (3d Cir. 2020) ........................................................................... 21

*Hudler v. Union Cty.,*
   No. 21-cv-05, 2021 WL 963452 (M.D. Pa. Mar. 15, 2021) ......................... 18

*Humphries v. Various Fed. USINS Emps.,*
   164 F.3d 936 (5th Cir. 1999) ......................................................................... 11

*Ingram v. PBPP,*
   No. 23-cv-565, 2023 WL 6129539 (W.D. Pa. Sept. 19, 2023) ..................... 17

*INS v. Chadha,*
   462 U.S. 919 (1983) .......................................................................................... 8

*INS v. St. Cyr,*
   533 U.S. 289 (2001) .................................................................................................15

*J.E.F.M. v. Lynch,*
   837 F.3d 1026 (9th Cir. 2016) ...................................................................................7

*Jean-Claude W. v. Anderson,*
   No. 19-16282 (KM), 2021 WL 82250 (D.N.J. Jan. 11, 2021) ..............................16

*Jelani B. v. Anderson,*
   No. 20-6459 (SDW), 2020 WL 5560161 (D.N.J. Sept. 17, 2020) .......................16

*Jimenez-Angeles v. Ashcroft,*
   291 F.3d 594 (9th Cir. 2002) ............................................................................10, 11

*Johnston v. Marsh,*
   227 F.2d 528 (3d Cir. 1955) .............................................................................26, 28

*Kennedy v. Mason,*
   No. 20-cv-3512, 2021 WL 106378 (E.D. Pa. Jan. 11, 2021) ..............................17

*Kiadii v. Decker,*
   423 F. Supp. 3d 18 (S.D.N.Y. 2018) ...................................................................30

*Kleindienst v. Mandel,*
   408 U.S. 753 (1972) ........................................................................................25, 26

*Landano v. Rafferty,*
   970 F.2d 1230 (3d Cir. 1992) .......................................................................passim

*Leslie v. Holder,*
   865 F. Supp. 2d 627 (M.D. Pa. 2012) ...........................................................17, 29

*Lucas v. Hadden,*
   790 F.2d 365 (3d Cir. 1986) ..........................................................................passim

*Lujan v. Nat'l Wildlife Federation,*
   497 U.S. 870 (1990) ..............................................................................................20

*Mapp v. Reno,*
   241 F.3d 221 (2d Cir. 2001) ..........................................................1, 14, 15, 16

*Massieu v. Reno,*
   91 F.3d 416 (3d Cir. 1996) ..........................................................7, 8, 9, 13

*Mathews v. Diaz,*
   426 U.S. 67 (1976) ................................................................................................25

*McLeod v. INS*,
  802 F.2d 89 (3d Cir. 1986) ................................................................................24

*Mons v. McAleenan*,
  No. CV 19-1593 (JEB), 2019 WL 4225322 (D.D.C. Sept. 5, 2019) ....................18

*Nasrallah v. Barr*,
  590 U.S. 573 (2020) ..........................................................................................20

*Nielsen v. Preap*,
  586 U.S. 392 (2019) ..........................................................................................22

*Nieves v. Bartlett*,
  587 U.S. 391 (2019) ..........................................................................................23

*Norton v. S. Utah Wilderness,*
  *All.*, 542 U.S. 55 (2004)....................................................................................19

*Okonkwo v. INS*,
  69 F. App'x 57 (3d Cir. 2003) ..........................................................................16

*OPAWL - Bldg. AAPI Feminist Leadership v. Yost*,
  118 F.4th 770 (6th Cir. 2024)............................................................................25

*Principe v. Ault*,
  62 F. Supp. 279 (N.D. Ohio 1945) ......................................................................6

*Ragbir v. Homan*,
  923 F.3d 53 (2d Cir. 2019) ................................................................................24

*Rauda v. Jennings*,
  55 F.4th 773 (9th Cir. 2022)..............................................................................10

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
  525 U.S. 471 (1999)......................................................................................passim

*Saadulloev v. Garland*,
  No. 3:23-CV-00106, 2024 WL 1076106 (W.D. Pa. Mar. 12, 2024) ............ 11, 14

*Singleton v. Piazza*,
  No. 05-cv-6685, 2006 WL 2520581 (E.D. Pa. Aug. 25, 2006) ................18, 26, 27

*Sissoko v. Rocha*,
  509 F.3d 947 (9th Cir. 2007)..............................................................................11

*S.N.C. v. Sessions*,
  No. 18 CIV. 7680 (LGS), 2018 WL 6175902 (S.D.N.Y. Nov. 26, 2018) ............30

*Stolfa v. Holder,*
  498 F. App'x 58 (2d Cir. 2012) ...........................................................................27

*Tazu v. Att'y Gen. United States,*
  975 F.3d 292 (3d Cir. 2020) .........................................................................passim

*Tercero v. Holder,*
  510 F. App'x 761 (10th Cir. 2013) .....................................................................11

*Torres v. U.S. Dep't of Homeland Sec.,*
  No. 17-cv-1840 JM (NLS), 2017 WL 4340385 (S.D. Cal. Sept. 29, 2017)..........19

*Trump v. Hawaii,*
  585 U.S. 667 (2018) ..........................................................................................24

*United States v. Nkanga,*
  452 F. Supp. 3d 91 (S.D.N.Y. 2020) ...................................................................29

*Vanderklok v. United States,*
  868 F.3d 189 (3d Cir. 2017) ..............................................................................24

*Vasquez v. Aviles,*
  639 F. App'x 898 (3d Cir. 2016) ...........................................................................7

*Vega v. United States,*
  514 F. Supp.2d 767 (W.D. Pa. 2007) ..................................................................18

*Velesaca v. Decker,*
  458 F. Supp. 3d 224 (S.D.N.Y. 2020) .................................................................18

*Verde-Rodriguez v. Att'y Gen. U.S.,*
  734 F.3d 198 (3d Cir. 2013) ................................................................................7

*Wong Wing v. United States,*
  163 U.S. 228 (1896) ....................................................................................21, 22

*Yi v. Maugans,*
  24 F.3d 500 (3d Cir. 1994) ................................................................................16

*Zadvydas v. Davis,*
  533 U.S. 678 (2001) ..........................................................................................22

## **Statutes**

5 U.S.C. § 551(3) .................................................................................................19

5 U.S.C. § 702 .....................................................................................................18

6 U.S.C. § 202(3) .................................................................................................9

8 U.S.C. § 1182(f) ..............................................................................................24

8 U.S.C. § 1226(a) ...................................................................................2, 14, 22

8 U.S.C. § 1226(c) ..............................................................................................22

8 U.S.C. § 1226(e) ........................................................................................14, 15

8 U.S.C. § 1231(a)(2) ..........................................................................................22

8 U.S.C. § 1231(a)(6) ..........................................................................................22

8 U.S.C. § 1252(a)(5) ...............................................................................7, 15, 20

8 U.S.C. § 1252(b)(9) ...................................................................................7, 20

8 U.S.C. § 1252(g) ................................................................................................9

28 U.S.C. § 2241 ..................................................................................................5

**Regulations**

8 C.F.R. § 1003.14(a) ...........................................................................................3

8 C.F.R. § 1003.19(f) ..........................................................................................16

**Other Authorities**

H.R. Conf. Rep. No. 109-72 ..................................................................................7

Pub. L. 104-208 ...................................................................................................9

*The Accardi Principle*,
    74 Geo. Wash. L. Rev. 569 (2006) ...............................................................19

## PRELIMINARY STATEMENT

Respondents (hereafter "the Government") submit this response in opposition to Petitioner Mahmoud Khalil's motion for release under the authority of *Lucas v. Hadden*, 790 F.2d 365 (3d Cir. 1986), and *Mapp v. Reno*, 241 F.3d 221 (2d Cir. 2001). *See* ECF No. 93. The grant of release on bail is appropriate in habeas cases only where habeas relief is available in the first place. But this Court does not have jurisdiction to issue habeas relief in this matter, and therefore lacks the authority to grant bail or release. Even if the Court had jurisdiction—which it does not—to justify bail on its own terms, a petitioner must demonstrate: (1) "substantial constitutional claims upon which he has a high probability of success"; and (2) "extraordinary or exceptional circumstances exist which make the grant of bail necessary to make the habeas remedy effective." *Landano v. Rafferty*, 970 F.2d 1230, 1239 (3d Cir. 1992) (cleaned up). Khalil's motion falls short on both counts. Khalil fails to raise a substantial constitutional claim upon which he has a high probability of success and, further, that extraordinary circumstances exist making the grant of bail necessary to render the habeas remedy effective. This Court should deny Khalil's motion for release.

## FACTUAL BACKGROUND

I.   Khalil's Immigration Detention

Mahmoud Khalil ("Khalil"), a native of Syria and citizen of Algeria, entered the United States on a student visa in December 2022. *See* Declaration of Acting Field Office Director William Joyce ("Joyce Decl.") ¶ 5 (ECF No. 32). He adjusted to lawful permanent resident status in November 2024. *Id.* ¶ 6. At approximately 8:35 p.m. on March 8, 2025, Special Agents from the U.S. Immigration and Customs Enforcement ("ICE") Homeland Security Investigations ("HSI") Office of the Special Agent in Charge for the New York Area of Responsibility detained Khalil at 195 Claremont Avenue in Manhattan, New York, for the purpose of placing him in removal proceedings. *Id.* ¶ 7; Second

Supplemental Declaration of Acting Field Office Director William Joyce ("2d Supp. Joyce Decl.") (ECF No. 72), ¶ 7.

Upon completion of processing, ICE transported Khalil from 26 Federal Plaza to the Elizabeth Detention Facility in Newark, New Jersey,[1] where he was physically present and booked into the detention facility at 2:20 a.m. Eastern Standard Time (3:20 a.m. Eastern Daylight Time) on March 9, 2025. *Id.* ¶ 8. The Elizabeth Detention Center was also a brief stop because the facility was dealing with bedbug issues, and the facility could not accept anyone as a full transfer. *Id.* ¶ 11. ICE made an operational decision to not inquire into bedspace of surrounding areas of responsibility given the "awareness of general paucity of bedspace." *Id.* The request to Enforcement and Removal Operations ("ERO") New Orleans was made on March 8, 2025, and a flight was scheduled for 2:35pm on March 9, 2025. *Id.* Shortly before noon on March 9, Khalil departed the Elizabeth Detention Facility and was brought to the airport to be transported to the Central Louisiana ICE Processing Facility in Jena, Louisiana. Joyce Decl. ¶ 11. ICE, specifically ERO New York, "did not receive any directives or instructions pertaining to Khalil's detention." 2d Supp. Joyce Decl. ¶ 14. Khalil was booked into the Central Louisiana ICE Processing Facility at 12:33 a.m. on March 10, 2025, and he remains detained at that facility. Joyce Decl. ¶ 12.

On March 9, 2025, while at 26 Federal Plaza, DHS served Khalil with a Notice to Appear ("NTA"), the document used to commence removal proceedings, charging him as removable under 8 U.S.C. § 1227(a)(4)(C)(i), as an alien who the Secretary of State has reasonable ground to believe the presence or activities in the United States would have potentially serious adverse foreign policy

---

[1] Elizabeth Detention Facility has comprehensive overnight accommodations for detainees, such as beds and 24-hour medical staff, whereas 26 Federal Plaza is a Hold Room facility used for detention of individuals awaiting removal, transfer, immigration court hearings, medical treatment, intra-facility movement, or other processing into or out of a facility, and it does not have beds or overnight medical staff. Joyce Decl. ¶ 10.

consequences from the United States. *See* 2d Supp. Joyce Decl., Ex. A – NTA, Mar. 9, 2025. Khalil was personally served the NTA. *See id.* On that same day, Khalil's NTA was filed with the Immigration Court at the LaSalle Detention Facility, vesting that court with jurisdiction over his removal proceedings. *See* 8 C.F.R. § 1003.14(a) ("Jurisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court."); Ex. A, NTA; 2d Supp. Joyce Decl. ¶ 20 ("Except for this ongoing lawsuit, ERO New York is not involved in Khalil's immigration removal proceedings which are pending before the LaSalle Immigration Court in Jena, Louisiana."). On March 17, 2025, ICE added an additional charge of removability. *See* As-filed Notice to Appear ("Filed NTA") (ECF No. 90-1), at 5. Khalil is now charged as inadmissible at the time of his adjustment of status because he sought to procure an immigration benefit by fraud of willful misrepresentation of a material fact. *See* Filed NTA at 5. The NTA alleges that he withheld membership in certain organizations and failed to disclose continuing employment by the Syria Office in the British Embassy in Beirut when he submitted his adjustment of status application. *Id.* The NTA ordered that Khalil appear for a removal hearing at 8:30 a.m. on March 27, 2025, at the Immigration Court located at 830 Pinehill Road, Jena, Louisiana. *See* 2d Supp. Joyce Decl., Ex. A – NTA, Mar. 9, 2025. ICE also served Khalil with a Notice of Custody Determination, notifying Khalil that his detention was governed by 8 U.S.C. § 1226(a) (immigration custody during removal proceedings). Joyce Decl. ¶ 7.

ICE has no current plans or intentions to transfer Khalil during the pendency of his removal proceedings. 2d Supp. Joyce Decl. ¶ 19.

II.    <u>Khalil's Habeas Petition</u>

On March 9, 2025, Khalil filed the underlying petition for habeas corpus, alleging that DHS's arrest and detention of him was a result of the U.S. government's repression of student activism and speech specifically targeting students at Columbia University for criticism of Israel's actions against

Gaza. *See* ECF No. 2 at 1-2 (petition); ECF No. 38 at 2 ¶¶ 23 (amended petition). In his operative petition, he brings a claim under the First Amendment (Count One), alleging that the Government was motivated by his participation in protests and his statements regarding Palestine and Israel, and took action to discourage him from speaking out in the future, *see* ECF No. 38 at 26–27 ¶¶ 88–90; and the Due Process Clause of the Fifth Amendment (Count Two), alleging that his detention was unjustified, punitive, and bears no "reasonable relation" to a legitimate government purpose, *id.* at 27–29 ¶¶ 92–95.

Khalil also brings a claim under the Administrative Procedure Act ("APA") and the *Accardi* Doctrine (Count Three), alleging that the U.S. Government's "policy" of targeting aliens for removal based on speech advocating for Palestinian rights and its "determination" that his "presence or activities would potentially have serious adverse foreign policy consequences for the United States" and "would compromise a compelling United States foreign policy interest" are arbitrary and capricious, an abuse of discretion, contrary to constitutional right, contrary to law, and in excess of statutory jurisdiction. *Id.* at 29 ¶ 96. Finally, he brings a claim for release on bail pending adjudication of his habeas petition (Count Four), alleging that he raised substantial constitutional and statutory claims regarding his detention and showed that extraordinary circumstances exist, because of his certain personal hardships, that make a grant of bail necessary for habeas relief to be effective. *Id.* at 29–30 ¶¶ 98–99.

Khalil requests that this Court assume jurisdiction over this matter and vacate Respondents' "policy" of targeting noncitizens for removal based on their First Amendment-protected speech and "determination" that his presence and activities would have potentially serious adverse foreign policy consequences. *Id.* at 31 ¶¶ 23. He further requests that this Court order his immediate release pending these proceeding, or order his release, and declare that Respondents' actions to arrest and detain him violated the First Amendment and Due Process Clause of the Fifth Amendment. *Id.* at 31 ¶¶ 58.

On March 15, 2025, Khalil brought the instant motion for release under *Lucas v. Hadden* and *Mapp v. Reno*. *See* ECF Nos. 53 (memorandum of law), 93 (amended memorandum of law). He argues that he raised substantial claims and a clear case for habeas relief and that his personal circumstances presented a case of extraordinary circumstances that make the grant of bail necessary to make habeas relief effective. *See* ECF No. 93 at 12-21.

## LEGAL ARGUMENT

I.    The Court Should Defer Decision on this Motion.

The Court should defer on deciding this motion until it decides the Government's pending motion to dismiss or transfer. *See* ECF No. 90. As the Government's motion explains, Khalil brings this habeas action under 28 U.S.C. § 2241, and he must bring it against his immediate custodian and in the district of his confinement. *See id.* Because the Court lacks habeas jurisdiction over the petition, it necessarily lacks authority to grant bail or release. *See Guzman v. Moshannon Valley Processing Ctr.*, Civ. Act. No. 24-1054 (JKS), 2024 WL 1251170, at *1 (D.N.J. Mar. 22, 2024) ("District courts are limited to granting habeas relief within their respective jurisdictions, so that the court issuing the writ has jurisdiction over the custodian.").

II.   The Court Lacks the Authority to Grant Interim Release.

Khalil relies on *Lucas v. Hadden*, 790 F.2d 365 (3d Cir. 1986), for the proposition that this Court may grant bail pending habeas review in an immigration case like this one. But *Lucas* did not involve immigration proceedings. And while the federal courts may have a general inherent authority to grant bail or release in certain circumstances, that authority can be conditioned by statute. *Cf. Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327–28 (2015) ("The power of federal courts of equity to enjoin unlawful executive action is subject to express and implied statutory limitations. Courts of equity can no more disregard statutory and constitutional requirements and provisions than can courts of law.") (cleaned up); *Principe v. Ault*, 62 F. Supp. 279, 284 (N.D. Ohio 1945) ("As was pointed out

by Lord Russell in the case of *The Queen v. Spilsbury*, we are not to conclude that the court is without power because no power was expressly granted, but we are to conclude that the court has the power to admit to bail unless we find that the exercise of such power is forbidden by statute.").

The federal immigration laws bar such relief here.

A.  Bail Pending Habeas Review is Only Appropriate Where Habeas Review is Available.

A prerequisite to obtaining relief under *Lucas* (or *Mapp*) is an appropriate habeas claim upon which the Court is likely to grant relief. Khalil's habeas claims, however, face several jurisdictional hurdles that prevent him from litigating these claims in district court and similarly eliminate this Court's authority to grant bail pending an adjudication on these claims. For the same reasons, Khalil is not able to show a high probability of success on the merits of his claim because those claims must be brought first in immigration court and litigated through the process set forth in the Immigration and Nationality Act ("INA").

i.    *Khalil cannot overcome the jurisdictional bar in section 1252(b)(9).*

Khalil's habeas claims challenge removability and the Secretary of State's designation, which he acknowledges serve the basis for his detention. He asks this Court to declare these acts unlawful, vacate the removability charges and thereby release him from custody. Pet., Prayer for Relief, ¶¶ 2-7. But "[f]or an alien challenging his removal," the appropriate jurisdictional "path begins with a petition for review of his removal order, not a habeas petition." *Tazu v. Att'y Gen. United States*, 975 F.3d 292, 294 (3d Cir. 2020).

In passing the REAL ID Act, Congress prescribed a single path for judicial review of orders of removal: "a petition for review filed with an appropriate court of appeals." 8 U.S.C. § 1252(a)(5); *see also Verde-Rodriguez v. Att'y Gen. U.S.*, 734 F.3d 198, 201 (3d Cir. 2013). The REAL ID Act further provides that, "Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, *arising from any action taken or proceeding brought to remove an alien*

*from the United States* under this subchapter shall be available only in judicial review of a final order under this section." 8 U.S.C. § 1252(b)(9) (emphasis added). Read in conjunction with section 1252(b)(9), section 1252(a)(5) expresses Congress's intent to channel and consolidate judicial review of every aspect of removal proceedings into the petition-for-review process in the courts of appeals. H.R. Conf. Rep. No. 109-72, at 174–75; *see also Bonhometre v. Gonzales*, 414 F.3d 442, 446 (3d Cir. 2005) (highlighting Congress's "clear intent to have all challenges to removal orders heard in a single forum (the courts of appeals)" as part of a petition for review).

In fact, "most claims that even relate to removal" are improper if brought before the district court. *E.O.H.C. v. Sec. United States Dep't of Homeland Sec.* 950 F.3d 177, 184 (3d Cir. 2020); *see also Reno v. Am.-Arab Anti-Discrimination Comm.* ("*AADC*"), 525 U.S. 471, 483 (1999) (labeling section 1252(b)(9) an "unmistakable zipper clause," and defining a zipper clause as "[a] clause that says 'no judicial review in deportation cases unless this section provides judicial review.'"); *Vasquez v. Aviles*, 639 F. App'x 898, 900–01 (3d Cir. 2016); *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016) ("Taken together, § 1252(a)(5) and § 1252(b)(9) mean that any issue – whether legal or factual – arising from any removal-related activity can be reviewed only through the [petition-for-review] process."). Khalil is currently in removal proceedings, which means his challenge to removability based on First Amendment or other grounds is "inextricably linked" to his removal proceedings and its conclusion. *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011).

Indeed, the Third Circuit requires that Khalil present removability issues to an immigration judge before there is any Article III review. In *Massieu v. Reno*, a petitioner had challenged the predecessor to Khalil's deportability ground,[2] arguing that it violated the Due Process Clause because it was impermissibly vague. 91 F.3d 416, 417 (3d Cir. 1996) (Alito, J.). In reversing the district court's

---

[2] Previously found at 8 U.S.C. § 1251(a)(4)(C)(i).

order declaring the provision unconstitutional and enjoining deportation proceedings against the petitioner, the Third Circuit held that a petitioner must first exhaust their administrative remedies before the immigration court and the petition-for-review process. *Id.* The *Massieu* court specifically noted that for "an alien attempting to prevent an exclusion or deportation proceeding from taking place in the first instance," he must avail himself of the administrative procedures. *Id.* at 421.

Because of this precedent, this Court should conclude that Khalil must bring his First and Fifth Amendment claims as challenges to his removability charge in removal proceedings, not in federal district court. *See id.* at 422 (recognizing that the court of appeals could review the final removal order and "'all matters on which the validity of the final order is contingent.'") (quoting *INS v. Chadha*, 462 U.S. 919, 937–39 (1983)); *id.* at 423 (reaffirming that district court review is not appropriate and review of removal is not meaningfully precluded when "the challenge by the aliens is neither procedural nor collateral to the merits"). And, although the immigration court may not be able to address Khalil's constitutional challenges immediately, it can review whether the Secretary of State made the requisite finding before Khalil was charged with the specific ground of removability. *See id.* at 424, 426 (noting that an immigration judge is not authorized to consider the constitutionality of the statute but could consider whether a petitioner is deportable).

Khalil cannot use *Lucas* as a means to obtain release and improperly "upset the scheme created by Congress to provide plaintiff with a faster decision." *Id.* at 424.

ii.     *Khalil cannot overcome the jurisdictional bar in section 1252(g).*

Khalil also cannot show a high probability of success because his claims run headlong into the jurisdictional bar in § 1252(g). He is seeking to challenge the decision to commence proceedings via habeas petition, despite that Congress prohibited a district court from reviewing such an action.

Section 1252(g), as amended by the REAL ID Act, specifically deprives courts of jurisdiction, including habeas corpus jurisdiction, to review "any cause or claim by or on behalf of any alien arising

8

from the decision or action by the Attorney General to [1] commence proceedings, [2] adjudicate cases, or [3] execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). Section 1252(g) eliminates jurisdiction "[e]xcept as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory)."[3] *Id.* Though this section "does not sweep broadly," *Tazu*, 975 F.3d at 296, its "narrow sweep is firm," *E.F.L. v. Prim*, 986 F.3d 959, 964–65 (7th Cir. 2021). Except as provided by § 1252, courts "cannot entertain challenges to the enumerated executive branch decisions or actions." *Id.*

The statute was "'directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion,'" to protect "'no deferred action' decisions and similar discretionary decisions." *Tazu*, 975 F.3d at 297 (quoting *AADC*, 525 U.S. at 485). This particular limitation exists for "good reason": "[a]t each stage the Executive has discretion to abandon the endeavor." *AADC*, 525 U.S. at 483–84. In addition, through § 1252(g) and other provisions of the INA, Congress "aimed to prevent removal proceedings from becoming 'fragment[ed], and hence prolong[ed].'" *Tazu*, 975 F.3d at 296 (alterations in original) (quoting *AADC*, 525 U.S. at 487); *see Rauda v. Jennings*, 55 F.4th 773, 777–78 (9th Cir. 2022) ("Limiting federal jurisdiction in this way is understandable because Congress wanted to streamline immigration proceedings by limiting judicial review to final orders, litigated in the context of petitions for review.").

Section 1252(g) prohibits district courts from hearing challenges to decisions and actions about *whether* and *when* to commence removal proceedings. *See Jimenez-Angeles v. Ashcroft*, 291 F.3d 594, 599

---

[3] Congress initially passed § 1252(g) in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. 104-208, 110 Stat. 3009. In 2005, Congress amended § 1252(g) by adding "(statutory or nonstatutory), including section 2241 of title 28, United States Code, or any other habeas corpus provision, and sections 1361 and 1651 of such title" after "notwithstanding any other provision of law." REAL ID Act of 2005, Pub. L. 109-13, § 106(a), 119 Stat. 231, 311. After Congress enacted the Homeland Security Act of 2002, § 1252(g)'s reference to the "Attorney General" includes the Secretary of Homeland Security. 6 U.S.C. § 202(3); *see also Enriquez-Perdomo v. Newman*, 54 F.4th 855, 863 & nn.3–4 (6th Cir. 2022) (explaining the historical development of § 1252(g)).

(9th Cir. 2002) ("We construe § 1252(g) . . . to include not only a decision in an individual case *whether* to commence, but also *when* to commence, a proceeding."). Circuit courts, including the Third Circuit, have held § 1252(g) applies to the discretionary decision to execute a removal order. *See Tazu*, 975 F.3d at 297–99 ("The plain text of § 1252(g) covers decisions about *whether* and *when* to execute a removal order."); *Rauda*, 55 F.4th at 777–78 ("No matter how [petitioner] frames it, his challenge is to the Attorney General's exercise of his discretion to execute [his] removal order, which we have no jurisdiction to review."); *E.F.L.*, 986 F.3d at 964–65 (holding that § 1252(g) barred review of the decision to execute a removal order while an individual sought administrative relief); *Camerena v. Director, Immigration and Customs Enforcement*, 988 F.3d 1268, 1272, 1274 (11th Cir. 2021) (holding that § 1252(g) bars review of challenges to the discretionary decision execute a removal order); *Arce v. United State*s, 899 F.3d 796, 800 (9th Cir. 2018) (finding that § 1252(g) would bar claims asking the Attorney General to delay the execution of a removal order); *Hamama v. Homan*, 912 F.3d 869, 874 (6th Cir. 2018) ("Under a plain reading of the text of the statute, the Attorney General's enforcement of long-standing removal orders falls squarely under the Attorney General's decision to execute removal orders and is not subject to judicial review."). Under the plain text of § 1252(g), the provision must apply equally to decisions and actions to *commence* proceedings that ultimately may end in the execution of a final removal order. *See Jimenez-Angeles*, 291 F.3d at 599; *see also Sissoko v. Rocha*, 509 F.3d 947, 950–51 (9th Cir. 2007) (holding that § 1252(g) barred review of a Fourth Amendment false-arrest claim that "directly challenge[d] [the] decision to commence expedited removal proceedings"); *Humphries v. Various Fed. USINS Emps.*, 164 F.3d 936, 945 (5th Cir. 1999) (determining that § 1252(g) prohibited review of an alien's First Amendment retaliation claim based on the Attorney General's decision to put him into exclusion proceedings).

In addition to barring challenges to *whether* and *when* to commence proceedings, § 1252(g) bars district courts from hearing challenges to the *method* by which the Secretary of Homeland Security

chooses to commence removal proceedings. *See Alvarez v. U.S. Immigr. & Customs Enf't*, 818 F.3d 1194, 1203 (11th Cir. 2016) ("By its plain terms, [§ 1252(g)] bars us from questioning ICE's discretionary decisions to commence removal—and thus necessarily prevents us from considering whether the agency should have used a different statutory procedure to initiate the removal process."); *Saadulloev v. Garland*, No. 3:23-CV-00106, 2024 WL 1076106, at *3 (W.D. Pa. Mar. 12, 2024) ("The Government's decision to arrest Saadulloev on April 4, 2023, clearly is a decision to 'commence proceedings' that squarely falls within the jurisdictional bar of § 1252(g)."). Arresting Khalil to commence removal proceedings is an "action . . . to commence proceedings" that this Court lacks jurisdiction to review. *See Tazu*, 975 F.3d at 298–99 ("Tazu also challenges the Government's re-detaining him for prompt removal. . . . While this claim does not challenge the Attorney General's *decision* to execute his removal order, it does attack the *action* taken to execute that order. So under § 1252(g) and (b)(9), the District Court lacked jurisdiction to review it."). Under the same reasoning, § 1252(g) bars review of *where* to commence proceedings. And choosing to commence proceedings in Louisiana is a decision or action not subject to review. *See Tercero v. Holder*, 510 F. App'x 761, 766 (10th Cir. 2013) ("Accordingly, the Attorney General's discretionary decision to detain Mr. Tercero and others in New Mexico is not reviewable by way of a habeas petition.").

That Khalil raises First and Fifth Amendment claims does not restore the jurisdiction of this Court. *See Tazu*, 975 F.3d at 296–98 (holding that any constitutional claims must be brought in a petition for review, not a separate district court action); *Elgharib v. Napolitano*, 600 F.3d 597, 602–04 (6th Cir. 2010) (noting that "a natural reading of 'any other provision of law (statutory or nonstatutory)' includes the U.S. Constitution" and finding additional support for the court's interpretation from the remainder of the statute). Indeed, the Supreme Court held that a prior version of § 1252(g) barred claims similar to those brought here. *See AADC*, 525 U.S. at 487–92. In *AADC*, aliens alleged that the "INS was selectively enforcing immigration laws against them in violation of

their First and Fifth Amendment rights." *Id.* at 473–74. The Supreme Court noted "an admission by the Government that the alleged First Amendment activity was the basis for selecting the individuals for adverse action." *Id.* at 488 n.10. The aliens argued to the Supreme Court that a lack of immediate review would have a "chilling effect" on their First Amendment rights. *Id.* at 488. Nonetheless, the Supreme Court held that the "challenge to the Attorney General's decision to 'commence proceedings' against them falls squarely within § 1252(g)." *Id.* at 487. Further, the Court found that "[a]s a general matter—and assuredly in the context of claims such as those put forward in the present case—an alien unlawfully in this country has no constitutional right to assert selective enforcement as a defense against his deportation." *Id.* at 488; *see also Cooper Butt ex rel Q.T.R. v. Barr*, 954 F.3d 901, 908–09 (6th Cir. 2020) (holding that the district court did not have jurisdiction to review a claim that the plaintiffs' father "was removed 'based upon ethnic, religious and racial bias' in violation of the Equal Protection Clause of the Fifth Amendment").

Khalil alleges that his initial and, at this point, short detention violates the APA, the Due Process Clause, and the *Accardi* principle. Pet. ¶¶ 91–96. But the Third Circuit rejected the notion that a petitioner could avoid the jurisdictional limitations of § 1252(g) by asserting certain claims or through clever drafting of a petition. *See Tazu*, 975 F.3d at 297–98 ("Any other rule would gut § 1252(g). Future petitioners could restyle any challenge to the three actions listed in § 1252(g) as a challenge to the Executive's general lack of authority to violate due process, equal protection, the Administrative Procedure Act, or some other federal law."). "Section 1252(g) precludes judicial review of 'any' challenge to 'the decision or action by [DHS] to [commence proceedings].'" *E.F.L.*, 986 F.3d at 964–65. This prohibition "includes challenges to DHS's 'legal authority.'" *Id.* (noting that, "[o]therwise, § 1252(g) would be a paper tiger; any petitioner challenging the execution of a removal order could characterize his or her claim as an attack on DHS's 'legal authority' to execute the order and thereby avoid § 1252(g)'s bar."). Therefore, this Court lacks jurisdiction under § 1252(g) to review any claim

from Khalil that the Secretary of Homeland Security lacked a lawful basis to commence proceedings against Khalil. Khalil raise these claims first in immigration court and before a circuit court on a petition for review, but not before this Court in the first instance. *See Massieu*, 91 F.3d at 417 (holding that a district court did not have jurisdiction to hear a challenge to the constitutionality of § 241(a)(4)(C)(i) of the INA, 8 U.S.C. § 1251(a)(4)(C)(i), as applied to an alien in deportation proceedings); *Tazu*, 975 F.3d at 300 (requiring that the challenges to the act of executing a removal order must go through a petition for review).

Khalil cannot rely on the Third Circuit's decision in *Garcia v. Att'y Gen. of U.S.*, 553 F.3d 724 (3d Cir. 2009). *See* ECF No. 96 at 10. The court there held on a petition for review that the Secretary of Homeland Security did not have the statutory authority to initiate removal proceedings against a lawful permanent resident after five years had passed since the alien had become a lawful permanent resident. *See id.* at 725–26. The court noted that § 1252(g) did not apply to the alien's petition for review of a final order of removal. *See id.* at 729. Here, in contrast, Khalil has not properly filed a petition for review after receiving a final order of removal. His collateral proceeding in this Court precisely the type of fragmentation that Congress enacted § 1252(g) to prevent. *See Tazu*, 975 F.3d at 296. Moreover, the legal issue in *Garcia* is not applicable because the Secretary of Homeland Security commenced removal proceedings against Khalil less than five years after his status was adjusted to lawful permanent residence. Therefore, the INA does not itself remove the Secretary of Homeland Security's discretion to commence removal proceedings against Khalil. *See Tazu*, 975 F.3d at 297–98 ("*Garcia* addressed only a case in which the [INA] itself took away the Attorney General's authority. It does not reach [petitioner's] claims under other provisions.").

B. *Lucas* Does Not Permit Release Outside of the INA's Express Limitations.

Even if Khalil's challenges to the Government's decision to initiate removal proceedings could be brought in a habeas petition, the INA restricts this Court's review of detention decisions.

Importantly, Khalil does not challenge the length of his detention. Instead, he challenges ICE's decision to detain him at all, and that claim is not available. *See Saadulloev*, 2024 WL 1076106, at *3 (recognizing that there is no judicial review of the threshold detention decision). The decision to detain Khalil is governed by 8 U.S.C. § 1226(a), which is the discretionary detention statute that authorizes detention pending a final decision in removal proceedings. *See* 8 U.S.C. § 1226(a) (authorizing ICE to arrest and detain an alien "pending a decision on whether the alien is to be removed from the United States"). The INA explicitly bars judicial review of the discretionary decision over whether or not to detain someone placed in removal proceedings. Section 1226(e) provides that: "The Attorney General's discretionary judgment regarding the application of [§ 1226] shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole." 8 U.S.C. § 1226(e).

Khalil relies heavily—if not exclusively—on the Second Circuit's decision in *Mapp v. Reno*, 241 F.3d 221 (2d Cir. 2001). But even considering *Mapp*, that out-of-circuit case does not provide this Court with authority to grant interim release. *Mapp*, decided in 2001, was a pre-REAL ID Act case where an alien had challenged his deportation proceedings, but not the validity of his detention, through a district court habeas petition. Prior to passage of the REAL ID Act of 2005, aliens could seek review of their removal orders through the filing of a habeas petition in federal district court. *See, e.g.*, *INS v. St. Cyr*, 533 U.S. 289, 311–14 (2001). The REAL ID Act removed habeas as a permissible avenue for challenging a removal order, stripped district courts of jurisdiction to review removal orders, and vested the courts of appeals with exclusive jurisdiction to review challenges to final removal orders. *See* 8 U.S.C. § 1252(a)(5). The Second Circuit recognized that it cannot override a statute to grant relief. *Mapp*, 241 F.3d at 227–29. Because a statute applies here, *Mapp* cannot create authority that is otherwise limited by statute.

In reaffirming that federal courts have inherent authority to admit habeas petitioners to bail, even in the immigration context, the Second Circuit qualified this holding as subject to limits imposed by Congress. *Mapp*, 241 F.3d at 223 (noting "that this authority may well be subject to appropriate limits imposed by Congress"). The court "acknowledge[d] that, in cases involving challenges to [ICE] detention, Congress's plenary power over immigration matters renders this authority readily subject to congressional limitation." *Id.* at 231. No such limitation was at issue in *Mapp*, but here 8 U.S.C. § 1226(e) is an "express statutory constraint[]" that limits the Court's authority in this context. *Mapp*, 241 F.3d at 231.

Section 1226(e) restricts this Court's authority in two ways. **First**, Section 1226(e) provides a "clear direction from Congress," *Mapp*, 241 F.3d at 227, that "[n]o court may set aside any action or decision by [ICE] under [§ 1226] regarding the detention or release of any alien," 8 U.S.C. § 1226(e).[4] Thus, this Court lacks authority to grant interim release to a habeas petitioner who is subject to detention under § 1226(a). **Second**, ICE's discretionary decision to detain the petitioner cannot readily be set aside through a *Mapp* motion. As the Second Circuit explained, where Congress provided for discretionary detention, federal courts may be further constrained from granting release on bail where the agency has exercised such discretion. *See Mapp*, 241 F.3d at 229 n.12 ("[W]hile it may be the case that had the INS exercised its discretion under § 1231(a)(6) and decided not to release Mapp on bail, *we would be required to defer to its decision*, where there has been no such consideration of a detainee's fitness for release, deference to the INS . . . is not warranted."); *see also Cinquemani v. Ashcroft*, No. 00 Civ. 1460 (RJD), 2001 WL 939664, at *6–8 & n.6 (E.D.N.Y. Aug. 16, 2001) (citing *Mapp*). ICE did so

---

[4] This is not to say that district courts lack jurisdiction at all over the release of an alien in immigration habeas proceedings, but under the circumstances here, that authority may be exercised only at the conclusion of the habeas case and upon a merits determination that the petitioner's detention is unlawful. That is not the inquiry in a *Mapp* motion, and so there is no tension with this distinction. *See infra* at Sect. III (discussing standard).

here. *See* 2d Joyce. Decl. ¶ 7. Thus, this Court cannot supplant ICE's discretionary decision to detain in this context.

Accordingly, the Court lacks authority to grant the petitioner's request for interim release during the pendency of this action. *Mapp*, 241 F.3d at 227–29; *accord Bolante v. Keisler*, 506 F.3d 618, 620–21 (7th Cir. 2007) ("Even if in the absence of legislation a federal court could grant bail to an alien challenging a removal order, it cannot do so if Congress has forbidden it.").[5]

III.    Khalil's Petition Fails on the Merits.

Given the jurisdictional hurdles discussed above, there is not a robust body of case law for bail-pending-habeas in the immigration context.[6] But even applying the general standard for bail-pending-habeas to this specific context, Khalil has failed to establish either a substantial constitutional claim or exceptional circumstances to warrant the exceptional form of relief he requests under *Lucas* (or *Mapp*). The Third Circuit has indicated that courts may grant bail pending review of a petition for habeas corpus in very limited and extraordinary circumstances. *See Landano*, 970 F.2d at 1239

---

[5] That does not mean Khalil is unable to challenge his custody determination. Khalil may seek review as to whether he is properly subject to his removal provision. 8 C.F.R. § 1003.19(h)(2)(ii). If adverse, Khalil may seek appeal of that determination. 8 C.F.R. § 1003.19(f). But Khalil does not allege to have done so, and that poses a separate jurisdiction hurdle that this Court could use to justify dismissal his habeas claim. *See Jean-Claude W. v. Anderson*, No. 19-16282 (KM), 2021 WL 82250, at *2 (D.N.J. Jan. 11, 2021) ("To have jurisdiction to consider whether [petitioner] was denied due process, … I must confirm that [petitioner] has exhausted all available administrative remedies; if he has not, then I cannot review the merits of his claim." (citing *Yi v. Maugans*, 24 F.3d 500, 503–04 (3d Cir. 1994); *Okonkwo v. INS*, 69 F. App'x 57, 59–60 (3d Cir. 2003))). "Because the exhaustion requirement is jurisdictional, the failure of a habeas petitioner to present his [or her] claims first to the immigration courts is 'fatal to the District Court's jurisdiction over [the petitioner's] habeas petition.'" *Jelani B. v. Anderson*, No. 20-6459 (SDW), 2020 WL 5560161, at *2 (D.N.J. Sept. 17, 2020) (quoting *Duvall v. Elwood*, 336 F.3d 228, 233–34 (3d Cir. 2003)).

[6] One exception may be *Leslie v. Holder*, 865 F. Supp. 2d 627 (M.D. Pa. 2012), but that habeas challenge was entirely different than the one before this Court. In *Leslie*, the district court, acting in accordance with the Third Circuit's mandate requiring a bond hearing, reviewed the prolonged detention of § 1226(c) detainee. 865 F. Supp. 2d at 642. The case is distinguishable from the one at hand, which involves a challenge to the initial detention of § 1226(a) detainee.

(reversing the district court's decision and holding that there was insufficient basis for bail for the state prisoner pending habeas review where no extraordinary circumstances existed); *Lucas*, 790 F.2d at 367 (reversing the district court's decision and holding that bail for a federal prisoner pending habeas review was not appropriate because he had not made a showing of extraordinary circumstances). "[A] preliminary grant of bail is an exceptional form of relief in a habeas corpus proceeding." *Landano*, 970 F.2d at 1239. Specifically, the grant of release on bail is appropriate in habeas cases only where: (1) the petitioner has raised "substantial constitutional claims upon which he has a high probability of success"; and (2) "extraordinary or exceptional circumstances exist which make the grant of bail necessary to make the habeas remedy effective." *Id.* (cleaned up).

The standard is conjunctive; that is, a petitioner must establish both a substantial constitutional claim upon which he has a high likelihood of success and extraordinary circumstances for this Court to grant him bail. *See, e.g.*, *Ingram v. PBPP*, No. 23-cv-565, 2023 WL 6129539, at *1 (W.D. Pa. Sept. 19, 2023) (state prisoner failing to establish both prongs); *Kennedy v. Mason*, No. 20-cv-3512, 2021 WL 106378, at *1–2 (E.D. Pa. Jan. 11, 2021) (state prisoner failing to establish extraordinary circumstances, even considering the COVID-19 pandemic); *Hudler v. Union Cty.*, No. 21-cv-05, 2021 WL 963452, at *2 (M.D. Pa. Mar. 15, 2021) (state prisoner failing to establish a substantial constitutional claim); *Cooley v. Atty Gen.*, No. 10-cv-02, 2011 WL 13193263, at *1 (W.D. Pa. Feb. 1, 2011) (state prisoner failing to establish extraordinary circumstances); *Vega v. United States*, 514 F. Supp.2d 767, 770–74 (W.D. Pa. 2007) (federal prisoner failing to establish extraordinary circumstances). In other words, a petitioner seeking bail pending habeas review carries a "high burden." *Singleton v. Piazza*, No. 05-cv-6685, 2006 WL 2520581, at *2 (E.D. Pa. Aug. 25, 2006).

Here, Khalil fails both prongs. He cannot show that: (1) he has raised "substantial constitutional claims upon which he has a high probability of success" nor can he show (2) "extraordinary or exceptional circumstances exist which make the grant of bail necessary to make the

habeas remedy effective." *Landano*, 970 F.2d at 1239. On Prong 1, Khalil first runs into multiple jurisdictional bars over this habeas petition. *See supra* at Sect. II. But he also cannot show that, even if this Court were to find jurisdiction, there is a high probability of success on the merits. On Prong 2, his case is not one of the limited exceptions that warrant relief.

A.  Khalil has not Shown a High Probability of Success on his APA and Accardi claims.

Khalil fails to demonstrate any merit to his claims brought under the APA and *Accardi v. Shaughnessy*, 347 U.S. 260 (1954). *See Landano*, 970 F.2d at 1239. The APA provides a right to judicial review of "final agency action for which there is no other adequate remedy." *Bennett v. Spear*, 520 U.S. 154, 175 (1997). "The APA [thus] empowers litigants to challenge agency action that is arbitrary, capricious, and contrary to law, *see* 5 U.S.C. §§ 702, 706(2), and the *Accardi* doctrine provides them with a means by which they can hold agencies accountable to their own policies." *Mons v. McAleenan*, No. CV 19-1593 (JEB), 2019 WL 4225322, at *9 (D.D.C. Sept. 5, 2019), *appeal dismissed sub nom. Mons v. Wolf*, No. 19-5306, 2020 WL 3635095 (D.C. Cir. June 29, 2020). Many other courts have recognized this connection between *Accardi* and the APA. *See Velesaca v. Decker*, 458 F. Supp. 3d 224, 236 (S.D.N.Y. 2020) (noting that when agencies fail to follow their regulations, "the APA (as developed by case law) gives aggrieved parties a cause of action to enforce compliance. This cause of action is sometimes called 'the *Accardi* principle'") (cleaned up); *Torres v. U.S. Dep't of Homeland Sec.*, No. 17-cv-1840 JM (NLS), 2017 WL 4340385, at *5 (S.D. Cal. Sept. 29, 2017) (stating that APA claim based on DHS failure to follow Deferred Action for Childhood Arrivals policy rules and standard operating procedures) (citing *Accardi*, 347 U.S. at 268). In short, the APA provides the cause of action for claimants to enforce an agency's duty, as set forth in the *Accardi* doctrine, to adhere to its own rules. *See Fed. Defs. of New York, Inc. v. Fed. Bureau of Prisons*, 954 F.3d 118, 130 (2d Cir. 2020) (citing Thomas W. Merrill, *The Accardi Principle*, 74 Geo. Wash. L. Rev. 569, 594 (2006).

Under long-standing principles limiting APA claims, Khalil's *Accardi* claim, which properly arises under the APA, must fail because it fails to challenge any agency action cognizable under the APA, let alone the "final" agency action required for APA review. Where "no other statute provides a private right of action, the 'agency action' complained of must be 'final agency action.'" *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 61–62 (2004) (citing 5 U.S.C. § 704). The APA defines "agency action" as including "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(3). The Supreme Court has interpreted this to mean: (1) taking one of the "circumscribed, discrete agency actions" listed under § 551 (and their equivalents); (2) saying no to a request to take one of those actions; or (3) omitting to take one of those actions. *Norton*, 542 U.S. at 62. The only agency action that can be compelled under the APA is action "legally required." *Id.* at 63.

Here, Khalil's APA claim fails on both counts. Khalil fails to identify a final agency action on which to base his APA claim. *See* Mot. 14; ECF No. 93 at 18. Indeed, he does not allege that DHS took, denied, or failed to take any of the actions covered by § 551. *See* Mot. 14; ECF No. 93 at 18–19. At most, Khalil objects to an alleged general policy regulating enforcement priorities. ECF No. 93 at 18. But even taken on its terms, that sort of overarching policy goal is definitionally not subject to APA review, which requires a consummated decision that itself affects rights and obligations. *See Lujan v. Nat'l Wildlife Federation*, 497 U.S. 870, 890 (1990) ("The term 'land withdrawal review program' (which as far as we know is not derived from any authoritative text) does not refer to a single [Bureau of Land Management] order or regulation, or even to a completed universe of particular BLM orders and regulations. It is simply the name by which petitioners have occasionally referred to the continuing (and thus constantly changing) operations of the BLM in reviewing withdrawal revocation applications and the classifications of public lands and developing land use plans as required by the FLPMA. It is no more an identifiable 'agency action'—much less a 'final agency action'—than a 'weapons

procurement program' of the Department of Defense or a 'drug interdiction program' of the Drug Enforcement Administration."); *Bennett*, 520 U.S. at 177–78 (requiring a final agency action to "mark the consummation of the agency's decisionmaking process" and "the action must be one by which "rights or obligations have been determined," or from which "legal consequences will flow").

Even if Khalil could identify a final agency action, that agency action would be directly tied to the Secretary's decision to initiate removal proceedings against him and the validity of those charges, which must be brought in removal proceedings. *See* 8 U.S.C. § 1252(b)(9). Because Khalil has an alternative forum for his claim, it is not cognizable under the APA. *See Bennett*, 520 U.S. at 175–77.

Khalil's *Accardi* claim fails for the same reasons: at bottom, Khalil challenges the Government's decision to initiate removal proceeding against him. *See* ECF No. 93 at 18–19. To the extent that the claim is not barred by § 1252(g), it must be brought through Khalil's removal proceedings and raised in a petition for review of his final order of removal. *See* 8 U.S.C. §§ 1252(a)(5), (b)(2), (b)(9); *Nasrallah v. Barr*, 590 U.S. 573, 580 (2020) ("The REAL ID Act clarified that final orders of removal may not be reviewed in district courts, even via habeas corpus, and may be reviewed only in the courts of appeals.") (citation omitted). Moreover, Khalil's reliance on the DHS, Memorandum of Kevin McAleenan (May 17, 2019), fails to support his claim. *See* ECF No. 93 at 18. The Memorandum restricts only the collection of documents and does not prevent the initiation of removal proceedings. Accordingly, even if Khalil had pleaded a violation of a document retention policy, the remedy would not provide relief for Khalil's claims; an administrative claim would be insufficient to support Khalil's request for *Lucas* (or *Mapp*) relief. *See Landano*, 970 F.2d at 1239 (recognizing that bail pending post-conviction habeas corpus review was available "only when the petitioner has raised substantial constitutional claims upon which he has a high probability of success, and also when extraordinary or exceptional circumstances exist which make the grant of bail necessary to make the habeas remedy effective.") (citing *Calley v. Callaway*, 496 F.2d 701, 702 (5th Cir. 1974)).

B.  Khalil Has Not Shown a High Probability of Success on His Due Process Clause claim.

Khalil alleges that his due process rights were violated because the Government had not demonstrated that he needed to be detained, but he has not made a clear case for habeas relief. *See* ECF No. 93 at 17; *Lucas*, 790 F.2d at 367. "Detention of aliens pending their removal in accordance with the INA is constitutional and is supported by legitimate governmental objectives." *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 328–29 (3d Cir. 2020) (citing *Demore v. Kim*, 538 U.S. 510, 531 (2003), and *Wong Wing v. United States*, 163 U.S. 228, 235 (1896)). Indeed, the Supreme Court "has firmly and repeatedly endorsed the proposition that Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Demore*, 538 U.S. at 522. Because "any policy toward aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations, the war power, and the maintenance of a republican form of government." *Id.* at 522–23. Accordingly, the Supreme Court has long held that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process." *Id.* at 522–23. This has resulted in the Supreme Court ruling that individuals held during the pendency of removal proceedings may be detained even without an individualized determination as to flight risk or dangerousness. *See, e.g., Carlson v. Landon*, 342 U.S. 524, 528–34, 538 (1952); *Wong Wing*, 163 U.S. at 235 (holding deportation proceedings "would be vain if those accused could not be held in custody pending the inquiry into their true character.").

Here, Khalil unpersuasively asserts that his detention is punitive, "wholly unjustified," and "bears no 'reasonable relation' to any legitimate government purpose." ECF No. 93 at 17. But, Congress "empowers the Secretary of Homeland Security [through 8 U.S.C. § 1226(a)] to arrest and hold an alien 'pending a decision on whether the alien is to be removed from the United States.'" *Nielsen v. Preap*, 586 U.S. 392, 397 (2019) (quoting 8 U.S.C. § 1226(a)). Congress also empowers the Secretary with "the discretion either to detain the alien or to release him on bond or parole." *Id.* These congressional objectives held constitutional by the Supreme Court—detention of aliens in removal

proceedings and mandatory detention of criminal aliens—thus render unsound Khalil's allegations that civil detention of aliens in removal proceedings is tantamount to punishment. *See Nielsen*, 586 U.S. at 397; *see also* 8 U.S.C. § 1226(c) (mandatory detention for those convicted of crimes of moral turpitude, controlled substances offenses, and terrorism offenses); 8 U.S.C. § 1231(a)(2) (mandatory detention for certain aliens ordered removed); 8 U.S.C. § 1231(a)(6) (detention beyond removal period for aliens ordered removed and determined a risk to the public or not likely to comply with the order); *Harvey v. Chertoff*, 263 F. App'x 188, 191 (3d Cir. 2008) (noting that "an immigration detainee is akin to that of a pretrial detainee").

To the extent that Khalil is basing his claim on *Demore*, 538 U.S. at 532–33 (Kennedy, J., concurring), *Black v. Decker*, 103 F.4th 133, 143 (2d Cir. 2024), or *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001), the three cases cited in his brief (*see* Mot. 14; ECF No. 93 at 17), those claims take time to mature, and are not available until immigration detention exceeds a minimum of six months. *See Demore*, 538 U.S. at 510 (affirming constitutionality of detention exceeding six months); *Zadvydas*, 533 U.S. at 693 (adopting six months as a presumptively reasonable period of detention following a final order of removal); *Black*, 103 F.4th at 143 (declining to adopt a rule that detention exceeding six-month brightline is per se unconstitutional). Khalil has been detained for two weeks since March 9, 2025, *see* ECF No. 93 at 7, and is not able to show a reasonable likelihood of success on any of the clams contemplated the cases cited.

C.  Khalil Has Not Shown a High Probability of Success on His First Amendment Claim.

Regarding the merits of the First Amendment claim, Khalil has not made out a "clear case" for habeas relief. *Lucas*, 790 F.2d at 367. Indeed, the nature of his claim reveals the *very reason* that Congress chose to channel these actions into administrative proceedings. The decision to remove an alien is a fact-intensive one, which often requires sensitive information. Whether that evidence passes muster is a deliberative decision that Congress has assigned to immigration judges in the first instance,

with review by appellate courts on the back end. Congress made the specific judgment that those judgment calls are particularly ill-suited for expedited proceedings in federal court.

That said, here, the government has initiated removal proceedings against Khalil based on two statutory charges of removability: (1) the Secretary of State's determination that Khalil's presence would have serious adverse foreign policy consequences for the United States and would compromise a compelling foreign policy interest, INA § 237(a)(4)(C)(i)-(ii); and (2) the finding that Khalil was inadmissible at the time of his adjustment of status because of fraud or willful misrepresentation of a material fact, INA § 237(a)(1)(A). *See* ECF No. 90-1, at 2, 5. Both of those bases are facially legitimate justifications for Khalil's detention and removal; and those facially valid justifications are preclusive on this posture. *See Nieves v. Bartlett*, 587 U.S. 391, 402 (2019).

Moreover, Khalil's First Amendment arguments falter on their own terms. Regardless of his allegations concerning political speech, Khalil withheld membership in certain organizations and failed to disclose continuing employment by the Syria Office in the British Embassy in Beirut when he submitted his adjustment of status application. It is black-letter law that misrepresentations in this context are not protected speech. Thus, Khalil's First Amendment allegations are a red herring, and there is an independent basis to justify removal sufficient to foreclose Khalil's constitutional claim here.

Nor does the Secretary of State's determination run afoul of any constitutional limit. For one, Khalil's accusations against the Secretary run headlong into the presumption in favor of regularity— it would be remarkable, and surely unjustified on this record, to countenance a claim that the Secretary of State was motivated by bias and unlawful targeting. *See McLeod v. INS*, 802 F.2d 89, 95 (3d Cir. 1986) ("Agency action, however, is entitled to a presumption of regularity. The burden of proof rests with the party alleging irregularity.") (citing *Citizens of Overton Park v. Volpe*, 401 U.S. 402, 415 (1971)); *Frisby v. U.S. Department of Housing & Urban Development*, 755 F.2d 1052. 1055 (3d Cir. 1985). All the

more so where this decision involves the sensitive area of foreign affairs and is committed to the Secretary's discretion. *See AADC*, 525 U.S. at 491 (The government "should not have to disclose its 'real' reasons for deeming nationals of a particular country a special threat . . . and even if it did disclose them a court would be ill equipped to determine their authenticity and utterly unable to assess their adequacy."); *cf. Trump v. Hawaii*, 585 U.S. 667, 685–86 (2018) (finding it "questionable" that when making a finding under 8 U.S.C. § 1182(f), which "exudes deference to the President in every clause," the President must "explain that finding with sufficient detail to enable judicial review"). That is why "matters intimately related to foreign policy and national security are rarely proper subjects for judicial intervention." *Vanderklok v. United States*, 868 F.3d 189, 206 (3d Cir. 2017) (citing *Haig v. Agee*, 453 U.S. 280, 292 (1981)).[7]

As fundamental, Khalil misapprehends how the First Amendment applies in this context. While "[f]reedom of speech and of press is accorded aliens residing in this country," *Bridges v. Wixon*, 326 U.S. 135, 148 (1945), the Supreme Court has "indicated that aliens' First Amendment rights might be less robust than those of citizens in certain discrete areas." *Bluman v. Fed. Election Comm'n*, 800 F. Supp. 2d 281, 287 (D.D.C. 2011) (three-judge panel) (citing *Harisiades v. Shaughnessy*, 342 U.S. 580, 591–92 (1952)), *aff'd*, 565 U.S. 1104 (2012); *see OPAWL - Bldg. AAPI Feminist Leadership v. Yost*, 118 F.4th 770, 779–81 (6th Cir. 2024). Moreover, the government's power and its interests are at their apex in the context of regulating immigration. *See Mathews v. Diaz*, 426 U.S. 67, 81–82 (1976). Decisions in this area, which "may implicate our relations with foreign powers" and "changing political and economic circumstances," are "frequently of a character more appropriate to either the Legislature or

---

[7] In the motion seeking release, Khalil relies on non-binding, out-of-circuit authority. *See* ECF No. 93, at 20–21 (citing *Bello-Reyes v. Gaynor*, 985 F.3d 696, 698 (9th Cir. 2021); *Ragbir v. Homan*, 923 F.3d 53 (2d Cir. 2019), *cert. granted, judgment vacated sub nom. Pham v. Ragbir*, 141 S. Ct. 227 (2020); *Gutierrez-Soto v. Sessions*, 317 F. Supp. 3d 917, 921 (W.D. Tex. 2018)). None of those cases involved sensitive matters of foreign policy.

the Executive than to the Judiciary." *Id.* at 81; *see Harisiades*, 342 U.S. at 588–89 ("Such matters are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference."). Courts must give substantial deference to the governmental findings when, as here, the "litigation implicates sensitive and weighty interests of national security and foreign affairs." *Holder v. Humanitarian L. Project*, 561 U.S. 1, 33–34 (2010). Accordingly, the Supreme Court has found foreign policy and immigration decisions to be constitutional even when they burden *U.S. citizens'* First Amendment rights. *See id.* at 7–8, 10; *Kleindienst v. Mandel*, 408 U.S. 753, 769–70 (1972). And the Supreme Court has held that the government "constitutionally may deport a legally resident alien because of membership in the Communist Party," even though the First Amendment recognizes freedom of association. *Harisiades*, 342 U.S. at 581, 591–92. Meaning, those First Amendment considerations do not overcome the Executive's prerogative and control over immigration. *See Mandel*, 408 U.S. at 767–68.[8]

Thus, Khalil has not shown a clear case for habeas relief. Khalil has limited rights to complain under the First Amendment in this context. The Government has lawful bases for seeking removal. And the Court should not second-guess the government's discretionary determinations about foreign policy matters.

D.  Khalil Has Not Established Extraordinary Circumstances to Interfere with Habeas Relief.

---

[8] Congress also made clear that it intended to prioritize foreign policy considerations when it came to the admission and deportability of aliens. *See* 8 U.S.C. § 1227(a)(4)(C)(ii); 8 U.S.C. § 1182(a)(3)(C)(iii) (providing for a determination that an alien would not be deportable for "past, current, or expected beliefs, statements, or associations, if such beliefs, statements, or associations would be lawful within the United States, *unless the Secretary of State personally determines that the alien's admission would compromise a compelling United States foreign policy interest*") (emphasis added). The Executive can properly act when Congress has authorized it to do so. *See Haig*, 453 U.S. at 282, 289, 309 (upholding Executive authority to revoke passport on national security and foreign policy grounds after concluding revocation was authorized by Congress).

Because the standard for release is deliberately stringent, "[v]ery few cases have presented extraordinary circumstances." *Landano*, 970 F.2d at 1239 (citations omitted). The touchstone for these circumstances is not just a general sentence of the equities, but instead where delay will specifically render the habeas remedy ineffective—because, for instance, a petitioner will have already served the duration of his sentence in the meantime, or some severe health complication might have irreparable or fatal consequences. *Id.* (citations omitted); *see also Johnston v. Marsh*, 227 F.2d 528, 529 (3d Cir. 1955) (granting bail to state prisoner with severe diabetes who was "rapidly progressing toward total blindness" and would be released for immediate hospital treatment); *Boyer v. City of Orlando*, 402 F.2d 966 (5th Cir. 1968) (awarding bail to state prisoner "because the sentence was so short that if bail were denied and the habeas petition were eventually granted, the defendant would already have served the sentence"); *Singleton*, 2006 WL 2520581, at *2 (denying bail to state prisoner because the unproven allegations that he needed future surgery to remove possibly cancerous polyps and suffered from respiratory disease "simply [did] not rise to the *level of immediate and impending catastrophic illness* discussed by the Third Circuit" under the extraordinary circumstances standard) (emphasis added).

Khalil has failed to carry the "high burden" of establishing extraordinary circumstances. *Singleton*, 2006 WL 2520581, at *2; *see also Elkimya v. Dep't of Homeland Sec.*, 484 F.3d 151, 154 (2d Cir. 2007) ("We do not opine on whether Elkimya's petition raises substantial claims, because we hold that he has failed to demonstrate extraordinary circumstances making the grant of bail necessary."). Khalil claims that the "circumstances of his detention and placement in removal proceeding shave extraordinary from the start." ECF No. 93 at 19. To support his claim, he relies on personal hardships, including the circumstances of his arrest by ICE, his detention in Louisiana, his wife being pregnant and the separation of their family, and that he is not a flight risk or a danger to the community. *See* ECF No. 93 at 19–20.

But these personal hardships are not the sort that give rise to relief in this context—in no small part, because few are personally unburdened by being placed in immigration detention during their removal proceedings. In light of this, as then-Judge Sotomayor recognized, an "extraordinary circumstance" is not an open-ended inquiry on the equities. Rather, it is concerned with whether "continued detention" would "affect [a] Court's ultimate consideration of the legal issues presented." *Elkimya*, 484 F.3d at 154; *see Stolfa v. Holder*, 498 F. App'x 58, 60 (2d Cir. 2012) (recognizing that the petitioner "may nevertheless file an application for custody or bond redetermination with the immigration judge having jurisdiction over his place of detention"). And here, Khalil has not made a showing of *that*. There is no evidence in the record that Khalil's representation has been compromised by his detention in Louisiana (where he is held with others who were apprehended or detained in other states). In fact, all record evidence cuts the other way. *See* ECF No. 29 (Judge Furman's order indicating the Government's consent to facilitating calls with Khalil's attorneys); Declaration of Melissa Harper ("Harper Decl.") (ECF No. 49), ¶¶ 4-10 (outlining the Louisiana facility's robust and flexible system to facilitate calls); *Khalil, et al. v. The Trustees of Columbia University in the City of New York, et .*, Civ. Act. No. 25-2079 (S.D.N.Y.), Dkt Nos. 1 and 16 (evidencing Khalil's lawsuit with Columbia University and his submission of a declaration in support of a temporary restraining order). More, this is not a case where bail is necessary to preserve the efficacy of any later remedy—such as cases where an appeal would last longer than the sentence imposed at trial. Rather, it is an attempt to get ultimate relief as a preliminary matter. Last, while it is true Khalil will be separated from his family during detention, that is inherent to detention; it is a ubiquitous occurrence in this context, not an exceptional one.

As for the last point, the Third Circuit has made clear that "[v]ery few cases have presented extraordinary circumstances, and those that have seem to be limited to situations involving poor health or the impending completion of the prisoner's sentence." *Landano*, 970 F.2d at 1239. Stated differently,

the extraordinary circumstances must relate to the petitioner's detention, thus warranting the exceptional form of relief of early release. *See id.* Indeed, cases where courts found generally involved "situations involving severe health problems or the impending completion of the prisoner's sentence." *Landano*, 970 F.2d at 1239 (citations omitted). Khalil's case does not meet that high standard.

For instance, in *Johnston*, the foundation for *Lucas*, an advanced diabetic state prisoner was "rapidly progressing toward total blindness" and was released directly to the hospital for treatment. *Johnston*, 227 F. 2d at 529; *see also Landano*, 970 F.2d at 1239 (noting that "the [*Johnston*] decision did not place the prisoner at liberty but instead released him to a hospital for immediate treatment"). Other cases more recently applied *Lucas* in considering the spread of COVID-19 throughout detention facilities, which put the immigration detainees at higher risk. *See, e.g., Carlos M. R. v. Decker*, No. CV 20-6016 (MCA), 2020 WL 4339452, at *10 (D.N.J. July 28, 2020) (collecting cases where petitioners provided evidence of "serious underlying medical conditions that render[ed them] more vulnerable to complications or even death if [they] were to contract COVID-19"). Looking to the Second Circuit under *Mapp* also shows how far below the extraordinary circumstance standard Khalil's case falls. In *D'Alessandro v. Mukasey*, testimony from an ICE medical professional and the medical records showed that the petitioner had many serious medical issues, including, but not limited to: (1) "an enlarged prostate gland which [caused] urinary outlet obstruction (i.e., pain and difficulty in urinating and inability to empty his bladder completely)"; (2) "renal (kidney) cysts which must be followed up to make sure they do not rupture or bleed"; (3) "'significant' varicose veins, a consequence of which is that he risk[ed] reduced oxygenation of the tissues"; and (4) "near-vision problems (foggy vision)". No. 08 Civ. 914, 2009 WL 799957, at *4 (W.D.N.Y. Mar. 25, 2009); *see also Armando C. G. v. Tsoukaris*, No. 20-cv-5652 (MCA), 2020 WL 4218429, at *4 (D.N.J. July 23, 2020) (same regarding the noncitizen having underlying medical conditions rendering him "vulnerable to severe illness or death if he were to contract the novel coronavirus disease 2019").

28

The majority of the cases Khalil relies on to support his claim also had "situations involving severe health problems." *Landano*, 970 F.2d at 1239; ECF No. 93 at 21. In *Leslie v. Holder*, the district court concluded that "the extent of Leslie's detention without a bail hearing is extraordinary, and encompasses more than 1,400 days" and "Leslie's physical health, and the cascading array of medical problems described by this 59 year-old detainee who suffers from coronary, intestinal, neurological and skeletal complaints, presents extraordinary concerns of the type which have in the past justified bail consideration." 865 F. Supp. 2d at 639. The government acknowledged, in *United States v. Nkanga*, "the extraordinary circumstances that make this case an appropriate one for bail 'include the defendant's age; his multiple health issues; the nature of the defendant's offense; the precise timing of his March 12, 2020 sentencing proceeding in relation to the emerging COVID-19 pandemic; and the conclusions already reached by the Court in previous aspects of this litigation regarding the defendant's health issues, and apparent lack of dangerousness or risk of flight." 452 F. Supp. 3d 91, 95–96 (S.D.N.Y. 2020). In *S.N.C. v. Sessions*, "Petitioner's personal circumstances [were] not that of the usual Petitioner." No. 18 CIV. 7680 (LGS), 2018 WL 6175902, at *6 (S.D.N.Y. Nov. 26, 2018). Her "psychologist confirm[ed] that the difficulties she faced as a human trafficking and domestic abuse survivor have left her with post-traumatic stress disorder, a condition that the detention environment aggravate[d]," and her "caseworker, who [was] also a counselor, also report[ed] that Petitioner [was] suffering depression and physical pain as result of being separated from her children, the youngest of which she [was] still nursing." *Id.* And in *Kiadii v. Decker*, the medical records showed that that the petitioner's health had deteriorated while in ICE custody, because a "lump in her breast that has been twice removed in the past ha[d] now 'reformed,' leading to 'very severe pain,' [and] which ha[d] been treated only with ibuprofen." 423 F. Supp. 3d 18, 20 (S.D.N.Y. 2018).

Indeed, in the only case that Khalil relies on that does not involve a serious medical issue, the district court had already concluded that the petitioner was entitled to relief because the court had

vacated his conviction and ordered a new trial. *Han Tak Lee v. Cameron*, No. 4:08-CV-1972, 2014 WL 4187590, at *3 (M.D. Pa. Aug. 22, 2014). Notably, there, "[g]iven the fact that Lee [had] been incarcerated for the past 24 years, and that further significant delays may arise in this litigation if the Commonwealth appeal[ed] the decision, or elect[ed] to pursue these charges further," the district court concluded that "'extraordinary circumstances exist[ed] that [made] the grant of bail necessary to make the habeas remedy effective." *Id.* (cleaned up). But the standard for release is deliberately stringent, and "[v]ery few cases have presented extraordinary circumstances." *Landano*, 970 F.2d at 1239 (citations omitted). Khalil's case does not fit the bill. His claims that the "silencing and chilling effect on speech, the impact on Mr. Khalil's ability to support his wife through her pregnancy and be present for the birth of their child, the impact of detention on his own health and wellbeing, and the lack of any factors justifying physical confinement" (ECF No. 93 at 21) simply do not constitute extraordinary circumstances under the *Lucas* (or *Mapp*) standard.

\*      \*      \*

## **CONCLUSION**

For the foregoing reasons, the Court should deny Khalil's motion.

Dated: March 23, 2025

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division

DREW C. ENSIGN
Deputy Assistant Attorney General
Office of Immigration Litigation

SARAH S. WILSON
Assistant Director

ALANNA T. DUONG
Senior Litigation Counsel

*s/ Dhruman Y. Sampat*
DHRUMAN Y. SAMPAT
Senior Litigation Counsel
Office of Immigration Litigation
General Litigation and Appeals Section
PO Box 878, Ben Franklin Station
Washington, D.C. 20044
dhruman.y.sampat@usdoj.gov

JOSHUA C. McCROSKEY
Trial Attorney

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing filing was served on counsel of record via this Court's CM/ECF system on March 23, 2025.

*s/ Dhruman Y. Sampat*
DHRUMAN Y. SAMPAT
Senior Litigation Counsel
