# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

Mahmoud KHALIL,

       *Petitioner*,

v.

Donald J. TRUMP, in his official capacity as
President of the United States; William P.
JOYCE, in his official capacity as Acting Field
Office Director of New York, Immigration and
Customs Enforcement[1]; Caleb VITELLO, Acting
Director, U.S. Immigration and Customs
Enforcement; Kristi NOEM, in her official
capacity as Secretary of the United States
Department of Homeland Security; Marco
RUBIO, in his official capacity as Secretary of
State; and Pamela BONDI, in her official
capacity as Attorney General, U.S. Department of
Justice,

       *Respondents*.

Case No. 25-cv-1963 (MEF) (MAH)

**REPLY TO RESPONDENTS'
OPPOSITION TO PETITIONER'S
MOTION FOR RELEASE UNDER
*LUCAS V. HADDEN* AND *MAPP V.
RENO***

**ORAL ARGUMENT REQUESTED**

AMERICAN CIVIL LIBERTIES UNION OF NEW
JERSEY FOUNDATION
Jeanne LoCicero
Farrin Anello
Molly Linhorst
570 Broad Street, 11th Floor
Newark, New Jersey 07102
973-854-1715
jlocicero@aclu-nj.org

CENTER FOR CONSTITUTIONAL RIGHTS
Baher Azmy
Samah Sisay*
Diala Shamas*
666 Broadway, 7th Floor
New York, NY 10012
Tel: (212) 614-6464
bazmy@ccrjustice.org
ssisay@ccrjustice.org
dshamas@ccrjustice.org

---

[1] Respondent Yolanda Pittman, in her official capacity as Warden of Elizabeth Contact Detention
Facility, will be added.

NEW YORK CIVIL LIBERTIES UNION FOUNDATION
Amy Belsher*
Robert Hodgson*
Veronica Salama*
Molly Biklen*
New York Civil Liberties Union Foundation
125 Broad Street, 19th Floor
New York, N.Y. 10004
Tel: (212) 607-3300
abelsher@nyclu.org

AMERICAN CIVIL LIBERTIES UNION FOUNDATION
Omar Jadwat*
Noor Zafar*
Sidra Mahfooz*
Brian Hauss*
Esha Bhandari*
Vera Eidelman*
Tyler Takemoto*
Brett Max Kaufman*
American Civil Liberties Union Foundation
125 Broad Street, Floor 18
New York, NY 10004
Tel: (212) 549-2500
ojadwat@aclu.org

VAN DER HOUT LLP
Marc Van Der Hout (CA Bar #80778)
Johnny Sinodis (CA Bar #290402)
Oona Cahill (CA Bar #354525)
Van Der Hout LLP
360 Post St., Suite 800
San Francisco, CA 94108
Tel: (415) 981-3000
Fax: (415) 981-3003
ndca@vblaw.com

*Pro hac vice application pending or forthcoming

CLEAR PROJECT
MAIN STREET LEGAL SERVICES, INC.
Ramzi Kassem*
Naz Ahmad
Mudassar Hayat Toppa*
Shezza Abboushi Dallal*
CUNY School of Law
2 Court Square
Long Island City, NY 11101
Tel: (718) 340-4558
ramzi.kassem@law.cuny.edu
naz.ahmad@law.cuny.edu
mudassar.toppa@law.cuny.edu
shezza.dallal@law.cuny.edu

WASHINGTON SQUARE LEGAL SERVICES, INC.
Alina Das*
Immigrant Rights Clinic
245 Sullivan Street, 5th Floor
New York, New York 10012
Tel: (212) 998-6430
alina.das@nyu.edu

DRATEL & LEWIS
Amy E. Greer
29 Broadway, Suite 1412
New York, NY 10006
Tel: (212) 732-8805
Fax: (212) 571-3792
agreer@dratellewis.com

*Counsel for Petitioner*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................................................... ii

INTRODUCTION .................................................................................................................... 1

ARGUMENT .......................................................................................................................... 2

   I.   THIS COURT SHOULD NOT DEFER DECISION ON THIS MOTION........................ 2

   II.  NOTHING ELIMINATES THIS COURT'S INHERENT AUTHORITY TO RELEASE MR. KHALIL PENDING ADJUDICATION OF HIS HABEAS PETITION................... 3

       A.   COURTS HAVE INHERENT AUTHORITY TO ORDER RELEASE OF PETITIONERS IN IMMIGRATION HABEAS CASES......................................... 3

       B.   NONE OF THE JURISDICTIONAL BARS CITED BY RESPONDENTS APPLY TO MR. KHALIL'S CHALLENGES TO HIS DETENTION. ................................ 4

   III.  THIS COURT SHOULD EXERCISE ITS INHERENT AUTHORITY TO RELEASE MR. KHALIL PENDING ADJUDICATION OF HIS HABEAS PETITION................... 7

CONCLUSION...................................................................................................................... 12

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Al–Siddiqi v. Achim*,
   531 F.3d 490 (7th Cir. 2008) .................................................7

*Ashley v. Ridge*,
   288 F. Supp. 2d 662 (D.N.J. 2003) .................................................6

*Bello-Reyes v. Gaynor*,
   985 F.3d 696 (9th Cir. 2021) .................................................7, 10

*Bridges v. Wixon*,
   326 U.S. 135 (1945) .................................................9

*Chehazeh v. AG*,
   666 F.3d 118 (3d Cir. 2012).................................................5

*D'Alessandro v. Mukasey*,
   No. 08 Civ. 914, 2009 WL 799957 (W.D.N.Y. Mar. 25, 2009).................................................12

*Demore v. Kim*,
   538 U.S. 510 (2003).................................................7, 11

*Elkimya v. Dep't of Homeland Sec.*,
   484 F.3d 151 (2d Cir. 2007) .................................................4

*EOHC v. Sec'y of DHS*,
   950 F.3d 177 (3d Cir. 2020) .................................................5

*Grant v. Zemski*,
   54 F. Supp. 2d 437 (E.D. Pa. 1999) .................................................6

*Gutierrez-Soto v. Sessions*,
   317 F. Supp. 3d 917 (W.D. Tex. 2018).................................................7

*Guzman v. Moshannon Valley Processing Ctr.*,
   Civ. Act. No. 24-1054 (JKS), 2024 WL 1251170 (D.N.J. Mar. 22, 2024).................................................3

*Hall v. San Francisco Superior Ct.*,
   No. C 09-5299 PJH, 2010 WL 890044 (N.D. Cal. Mar. 8, 2010) .................................................12

*Han Tak Lee v. Cameron*,
   No. 4:08-CV-1972, 2014 WL 4187590 (M.D. Pa. Aug. 22, 2014) .................................................12

*INS v. St. Cyr*,
   533 U.S. 289 (2001).................................................4

*Jean-Claude W. v. Anderson*,
    No. 19-16282 (KM), 2021 WL 82250 (D.N.J. Jan. 11, 2021) .................................................6

*Jelani B. v. Anderson*,
    No. 20-6459 (SDW), 2020 WL 5560161 (D.N.J. Sept. 17, 2020) ...........................................6

*Jennings v. Rodriguez*,
    583 U.S. 281 (2018)...................................................................................................................4, 5

*Jimenez-Angeles v. Ashcroft*,
    291 F.3d 594 (9th Cir. 2002) ........................................................................................................7

*Johnson v. Guzman Chavez*,
    141 S. Ct. 2271 (2021) ..................................................................................................................5

*Johnston v. Marsh*,
    227 F.2d 528 (3d Cir. 1955)......................................................................................................3, 8

*Landano v. Rafferty*,
    970 F.2d 1230 (3d Cir. 1992)....................................................................................................8, 9

*Leslie v. Holder*,
    865 F. Supp. 2d 627 (M.D. Pa. 2012) ....................................................................................8, 12

*Mapp v. Reno*,
    241 F.3d 221 (2d Cir. 2001)................................................................................................3, 4, 8

*Massieu v. Reno*,
    91 F.3d 416 (3d Cir. 1996)...........................................................................................................5

*Moss v. Miniard*,
    No. 18-CV-11697, 2024 WL 4326813 (E.D. Mich. Sept. 27, 2024).........................................12

*Nielsen v. Preap*,
    586 U.S. 392 (2019).....................................................................................................................5

*Nieves v. Bartlett*,
    587 U.S. 391 (2019)...................................................................................................................10

*Osorio-Martinez v. Att'y Gen. of U.S. of Am.*,
    893 F.3d 153 (3d Cir. 2018).........................................................................................................7

*Patel v. Barr*,
    No. CV 20-3856, 2020 WL 4700636 (E.D. Pa. Aug. 13, 2020)..................................................4

*Ragbir v. Homan*,
    923 F.3d 53 (2d Cir. 2019)......................................................................................................9, 10

iii

*Rado v. Manson,*
    435 F. Supp. 349 (D. Conn. 1977) ......................................................12

*Rauda v. Jennings,*
    55 F.4th 773 (9th Cir. 2022) ..............................................................7

*Reno v. AADC,*
    525 U.S. 471 (1999)........................................................................6, 7

*Sanchez v. Winfrey,*
    No. CIV.A.SA04CA0293RFNN, 2004 WL 1118718 (W.D. Tex. Apr. 28, 2004) .............................................................................................12

*Sean B. v. McAleenan,*
    412 F. Supp. 3d 472 (D.N.J. 2019) ....................................................7

*Singh v. Holder,*
    638 F.3d 1196 (9th Cir. 2011) ...........................................................7

*Sylvain v. Att'y Gen. of U.S.,*
    714 F.3d 150 (3d Cir. 2013).............................................................7

*Tazu v. Att'y Gen. of U.S.,*
    975 F.3d 292 (3d Cir. 2020) .............................................................7

*United States v. Nkanga,*
    452 F. Supp. 3d 91 (S.D.N.Y. 2020) ................................................12

*United States v. Ruiz,*
    536 U.S. 622 (2002).........................................................................3

*Zadvydas v. Davis,*
    533 U.S. 678 (2001).......................................................................11

**Statutes**

8 C.F.R. § 1003.19 .............................................................................6

8 U.S.C. § 1182 ................................................................................10

8 U.S.C. § 1226 ...............................................................................4, 7

8 U.S.C. § 1252 ...........................................................................4, 5, 6, 7

28 U.S.C. § 2243 ...............................................................................3

**Other authorities**

Declaration of Mahmoud Khalil, *Khalil v. Trs. of Columbia Univ. in City of N.Y.*, No. 25-2079 (S.D.N.Y. Mar. 19, 2025), ECF 16.7.................................................................11

*Transcript: Secretary of State Marco Rubio on Face the Nation with Margaret Brennan: March 16, 2025*, CBS News (Mar. 16, 2025, 3:28PM EDT), https://www.cbsnews.com/news/marco-rubio-secretary-of-state-face-the-nation-transcript-03-16-2025/ ....................................................................................................1

## INTRODUCTION

It is uncontested that Petitioner Mahmoud Khalil is neither a flight risk nor a danger to the community. The evidence presented in this case—core bail factors which Respondents do not challenge in their opposition to his release, ECF 99—demonstrates that Mr. Khalil is a lawful permanent resident with no criminal record; a loving and devoted husband to his pregnant U.S. citizen wife; a kind and thoughtful classmate, student, colleague, and friend; and a dedicated Palestinian human rights defender who has spoken out about Palestinian rights alongside people of diverse backgrounds, beliefs, and perspectives. ECF 56-2, 56-6, 93-1.

Respondents have imprisoned Mr. Khalil *not* because he is a flight risk or danger, but to punish him for his speech and to suppress campus protest in support of Palestinian rights. Unlike the myriad other cases Respondents cite, the purpose of Mr. Khalil's detention has been made plain by Respondents' own statements, Am. P. ¶¶ 29-33, 73-81, which make the First Amendment and Due Process issues here even more clear than in the contexts where the Department of Homeland Security (DHS) solely claims pretextual reasons, later rejected by federal courts, for its actions.[2] Whatever discretion the federal government may have to detain a petitioner pending removal proceedings, it never has discretion to violate the U.S. Constitution.

Respondents make a series of extraordinary arguments in an attempt to eliminate or, at least, diminish this Court's inherent authority to order Mr. Khalil's release pending the adjudication of his habeas petition. First, they ask this Court to await the adjudication of

---

[2] *See also Transcript: Secretary of State Marco Rubio on Face the Nation with Margaret Brennan: March 16, 2025*, CBS News (Mar. 16, 2025, 3:28PM EDT), https://www.cbsnews.com/news/marco-rubio-secretary-of-state-face-the-nation-transcript-03-16-2025/ ("If [Mr. Khalil] had told us I'm going over there, and I'm going over there to become the spokesperson and one of the leaders of a movement that's going to turn one of your allegedly elite colleges upside down, people can't even go to school, library buildings being vandalized. We never would have let him in. […] And now that he's doing it and he's here, he's going to leave, and so are others, and we're going to keep doing it.").

Respondents' second motion to dismiss or transfer this case, even though Judge Furman's decision is law of the case under binding Third Circuit precedent. Second, they raise a string of jurisdictional arguments that have no application to a challenge to the legality of *detention*, as the Supreme Court has repeatedly held, and which, if applied here, would violate Article III, the First Amendment, the Fifth Amendment, and the Suspension Clause because they would provide Mr. Khalil with no forum to challenge the legality of his detention. Respondents leave to a footnote their contention that Mr. Khalil cannot even ask an Immigration Judge for bond. Under Respondents' own position, this Court is the only forum by which Mr. Khalil can seek redress for his detention challenges. Finally, they suggest that even if this Court does have jurisdiction over his challenge to his detention, he does not meet the standards for release under applicable case law—even going so far as to suggest that this Court lacks the inherent authority to release Mr. Khalil because this is a civil immigration (not criminal) habeas petition, when in fact courts have applied even more flexible standards to permit release in civil immigration habeas petitions precisely because there is no past adjudication of guilt or imposition of sentence being disturbed.

Under any standard, Mr. Khalil's case meets the standard for release. As a result of Respondents' decision to make a highly publicized example of Mr. Khalil, the world is watching to see if Mr. Khalil's fundamental rights will be preserved or if, instead, he will remain imprisoned throughout this litigation. This Court should reject Respondents' arguments and exercise its inherent authority to restore Mr. Khalil to his freedom—the status he had prior to the present controversy, and the only status that is constitutionally justified—pending further adjudication.

## ARGUMENT

## I.    THIS COURT SHOULD NOT DEFER DECISION ON THIS MOTION.

This Court should not delay its decision on release pending its adjudication of Respondents' second motion to dismiss in this case. Judge Furman's decision on venue is law of

the case, and Respondents' claims are wrong on the merits of their venue argument. ECF 90.[3] This Court has "jurisdiction to determine its own jurisdiction," *United States v. Ruiz*, 536 U.S. 622, 628 (2002), and the fact that Respondents' seek to relitigate this issue is reason to move forward with, rather than delay, *pendente lite* relief.

## II. NOTHING ELIMINATES THIS COURT'S INHERENT AUTHORITY TO RELEASE MR. KHALIL PENDING ADJUDICATION OF HIS HABEAS PETITION.

### A. COURTS HAVE INHERENT AUTHORITY TO ORDER RELEASE OF PETITIONERS IN IMMIGRATION HABEAS CASES.

Respondents wrongly suggest that federal courts' *inherent* authority to release habeas petitions on bail has been eliminated by statute or is somehow confined to the criminal habeas context. ECF 99 at 5-6, 16. As the Third Circuit has explained in *Johnston v. Marsh*:

> One of the inherent powers of the judiciary with regard to proceedings before it has been the admission of a prisoner to bail where, in the exercise of his discretion, the judge deems it advisable. It is clear that at common law courts had the inherent power to grant bail. Our Federal judiciary has consistently recognized that at common law this inherent power existed. . . . We believe that the basic misconception in [] decisions denying this authority lies in their view that since Federal courts have limited, statutory jurisdiction, their powers in proceedings involving this jurisdiction are necessarily limited and must be statutory. This, as already indicated, is not our view of the matter.

227 F.2d 528, 531 (3d Cir. 1955). This principle applies to the civil habeas statute, *id.* at 530 (citing 28 U.S.C. § 2243), which is the statute under which petitioners may seek to challenge their immigration detention. *See Mapp v. Reno*, 241 F.3d 221 (2d Cir. 2001) (describing courts' inherent authority to release immigrants on bail). Respondents argue that the Second Circuit "recognized that it cannot override a statute to grant relief" and therefore *Mapp v. Reno* is no longer good law after the REAL ID Act. ECF 99 at 14. Respondents fail to mention that the Second Circuit has

---

[3] Nor does the single case Respondents cite in its section seeking delay have anything to do with the inherent authority to release a petitioner *pendente lite*. *Guzman v. Moshannon Valley Processing Ctr.*, Civ. Act. No. 24-1054 (JKS), 2024 WL 1251170, at *1 (D.N.J. Mar. 22, 2024).

already rejected this precise argument. *See Elkimya v. Dep't of Homeland Sec.*, 484 F.3d 151, 154 (2d Cir. 2007) (discussing *Mapp* and holding that the REAL ID Act of 2005 "did not qualify our inherent authority to admit bail to petitioners in immigration cases"). None of the statutory provisions cited by Respondent in 8 U.S.C. § 1252, as amended by the REAL ID Act, make any reference to courts' inherent authority, and therefore impose no limitation to that authority. *Id.*

## B. NONE OF THE JURISDICTIONAL BARS CITED BY RESPONDENTS APPLY TO MR. KHALIL'S CHALLENGES TO HIS DETENTION.

Even if this Court's inherent authority could be limited by statute, none of the provisions cited by Respondents forbid release. This Court should reject Respondents' attempt to shoehorn this challenge to Mr. Khalil's detention into various jurisdiction-channeling and jurisdiction-stripping provisions in 8 U.S.C. §§ 1252(a)(5), (b)(9), (g), 1226(e).[4] The Supreme Court has repeatedly rejected these arguments, and the Third Circuit has interpreted these provisions narrowly. Respondents' arguments, which ignore precedent, raise serious constitutional concerns.

***First***, the jurisdiction-channeling provisions in §§ 1252(a)(5) and (b)(9) have no application to a petitioner's challenge to the legality of his detention. Section 1252(a)(5) applies only to review of final orders of removal. *See, e.g.*, *INS v. St. Cyr*, 533 U.S. 289, 311, 313 (2001) (§ 1252(a) applies to "[j]udicial review of a final order of removal"); *Patel v. Barr*, No. CV 20-3856, 2020 WL 4700636, at *3 (E.D. Pa. Aug. 13, 2020) (§ 1252(a)(5) does not apply where petitioner is not challenging "order of removal"). There has been no such order issued in Mr. Khalil's case, and his challenge to detention does not involve review of any such order: § 1252(a)(5) is inapplicable. Nor does § 1252(b)(9) preclude review. The Supreme Court explained in *Jennings v. Rodriguez*, 583 U.S. 281 (2018), that "the applicability of § 1252(b)(9) turns on

---

[4] These bars do not apply to any of Petitioner's claims, as will be addressed in the preliminary injunction briefing.

whether the legal questions that we must decide 'aris[e] from' the actions taken to remove" noncitizens, and construed that phrase narrowly to avoid "extreme" results that would render claims of "excessive detention" "effectively unreviewable." *Id*. at 293; *see also Nielsen v. Preap*, 586 U.S. 392, 399-400, 402 (2019) (finding that § § 1252(b)(9) did not preclude review of detention challenge); *Johnson v. Guzman Chavez*, 141 S. Ct. 2271, 2284 n.4 (2021) (same).

Respondents rely on *Massieu v. Reno*, 91 F.3d 416 (3d Cir. 1996), but even there the Third Circuit ordered the petitioner's release on bail pending its adjudication of the case, *id.* at 419. Moreover, *Massieu*'s ultimate holding is inapplicable to Mr. Khalil's challenge to detention, because none of the statutory provisions analyzed in *Massieu* apply to challenges to detention at all.[5] It is true that if Mr. Khalil prevails on his challenges to removal and any appeals, he will eventually be released from detention. But his current habeas challenge is a "now or never" claim: he is arguing that his *present* confinement is unconstitutional. *See, e.g., EOHC v. Sec'y of DHS*, 950 F.3d 177, 180 (3d Cir. 2020) ("When a detained alien seeks relief that a court of appeals cannot meaningfully provide on petition for review of a final order of removal, § 1252(b)(9) does not bar consideration by a district court."); *see also id*. at 184-86; *see also Chehazeh v. AG*, 666 F.3d 118, 131 (3d Cir. 2012) (construing § 1252(b)(9) narrowly). Here, just as in *Jennings*, denying jurisdiction to challenge detention until it has "already taken place" would render such detention "effectively unreviewable." 583 U.S. at 293.

---

[5] As addressed in preliminary injunction briefing, *Massieu* is distinguishable with respect to all of Petitioner's claims for several reasons, not least because Mr. Khalil is not directly challenging his removal proceedings or facially challenging any statute in the Immigration and Nationality Act. Rather, his challenges to Respondents' policy to retaliate against and punish noncitizens for their participation in protests concerning Israel's military campaign in Gaza and his own detention are collateral to his removal proceedings and would not receive meaningful review if limited to the administrative review process. *See EOHC*, 950 F.3d at 180 (holding statutory exhaustion requirement does not bar district court review "[w]hen a detained alien seeks relief that a court of appeals cannot meaningfully provide on petition for review of a final order of removal").

Respondents assert in a footnote that Mr. Khalil is able to "challenge his custody determination" but that such review is limited to the question of "whether he is properly subject to his removal provision" under 8 § C.F.R. 1003.19(h)(2)(ii). ECF 99 at 16 n.5. By citing that provision, Respondents take the position that Mr. Khalil is *not* permitted to seek an ordinary custody redetermination from an immigration judge under 8 § C.F.R. 1003.19(a) *because* he is being charged under the foreign policy bar. *Id.* at § 1003.19(h)(2)(i)(C). Under Respondents' position, an immigration judge can neither issue him bond nor consider any of the constitutional claims Mr. Khalil presses here. ECF 99 at 8.[6]

**Second**, the jurisdiction-stripping provision in 8 U.S.C. § 1252(g) has no application to a petitioner's challenge to the legality of his detention. This provision is tethered solely to the "three discrete actions" referenced in 8 U.S.C. § 1252(g). *Reno v. AADC*, 525 U.S. 471, 482 (1999). It therefore does not alter a court's jurisdiction to review "many other decisions or actions that may be part of the deportation process—such as the decisions to open an investigation, to surveil the suspected violator, to reschedule the deportation hearing, to include various provisions in the final

---

[6] To the extent Respondents argue in a footnote (ECF 99 at 16 n.5) that Mr. Khalil must first exhaust a challenge to his removal grounds before seeking to challenge his detention, he does not. *See Ashley v. Ridge*, 288 F. Supp. 2d 662, 666-67 (D.N.J. 2003) (no exhaustion requirement where petitioner raises constitutional claims); *Grant v. Zemski*, 54 F. Supp. 2d 437, 441-442 & n.5 (E.D. Pa. 1999) (no statutory exhaustion requirement for detention challenges and any prudential exhaustion requirement is inapplicable where it would cause undue burden to petitioner or be futile). Mr. Khalil raises constitutional challenges to his present confinement and any exhaustion would be futile and burdensome. Nor can he raise detention challenges in a petition for review, because a custody determination is not a removal order under 8 U.S.C. § 1252. The two cases cited by Respondents are distinguishable because they involve petitioners whom the government provided, or conceded were eligible for, bond hearings. *See Jean-Claude W. v. Anderson*, No. 19-16282 (KM), 2021 WL 82250, at *2 (D.N.J. Jan. 11, 2021) (holding that petitioner who received habeas relief in the form of a bond hearing but was denied bond was required to appeal the bond decision to the Board of Immigration Appeals); *Jelani B. v. Anderson*, No. 20-6459 (SDW), 2020 WL 5560161, at *2 (D.N.J. Sept. 17, 2020) (holding that pro se petitioner who challenged his detention based on his mistaken belief that he was subject to mandatory detention was eligible for and required to first seek a bond hearing before the immigration judge).

order that is the product of the adjudication, and to refuse reconsideration of that order." *Id.* at 483. Another action not described in § 1252(g) is the decision to detain. Appropriately, courts have readily found habeas jurisdiction over challenges to retaliatory detention. *See, e.g., Bello-Reyes v. Gaynor*, 985 F.3d 696, 698 (9th Cir. 2021) (addressing merits of First Amendment challenge to ICE detention); *Gutierrez-Soto v. Sessions*, 317 F. Supp. 3d 917, 921 (W.D. Tex. 2018) (addressing merits of First Amendment challenge to ICE detention).[7]

**Third**, 8 U.S.C. § 1226(e) has no application to a petitioner's challenge to the legality of his detention. *See Demore v. Kim*, 538 U.S. 510, 516-17 (2003); *see also Sylvain v. Att'y Gen. of U.S.*, 714 F.3d 150, 155 (3d Cir. 2013) (citing *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011) ("[Section 1226(e)] does not limit habeas jurisdiction over constitutional claims or questions of law."); *Al–Siddiqi v. Achim*, 531 F.3d 490, 494 (7th Cir. 2008) ("[T]his section ... does not deprive us of our authority to review statutory and constitutional challenges.")).

## III. THIS COURT SHOULD EXERCISE ITS INHERENT AUTHORITY TO RELEASE MR. KHALIL PENDING ADJUDICATION OF HIS HABEAS PETITION.

---

[7] Rather than addressing the case law on detention, Respondents rely heavily on cases like *Tazu v. Att'y Gen. of U.S.*, 975 F.3d 292 (3d Cir. 2020), *Rauda v. Jennings*, 55 F.4th 773 (9th Cir. 2022), and *Jimenez-Angeles v. Ashcroft*, 291 F.3d 594 (9th Cir. 2002), but the petitioners in those cases were not seeking release from detention. Release from detention—which is the core of what Judge Furman has already ruled this case is about—is what the Great Writ is for, and Respondents' arguments, if applied here, would raise serious constitutional concerns. This is also true with respect to challenges to deportation where there is similarly no adequate substitute for habeas. *See Osorio-Martinez v. Att'y Gen. of U.S. of Am.*, 893 F.3d 153, 167 (3d Cir. 2018) (holding that petitioners who have significant ties to the U.S. and are accorded important statutory and procedural protections are entitled to invoke the Suspension Clause and petition federal courts for a writ of habeas corpus and that "INA's jurisdiction-stripping provisions effect an unconstitutional suspension of the writ" when the challenged removal regime did not provide an adequate substitute process); *Sean B. v. McAleenan,* 412 F. Supp. 3d 472, 484-90 (D.N.J. 2019) (applying Suspension Clause to protect review). Respondents' arguments raise grave constitutional concerns, not only under the Suspension Clause, but under Article III and the First and Fifth Amendments themselves.

Turning to the merits of the bail application, Respondents argue that Mr. Khalil does not merit release. They begin by suggesting Mr. Khalil must meet the strictest version of the standard for release on bail, which courts in the Third Circuit have applied to criminal habeas petitions. ECF 99 at 16 (citing *Landano v. Rafferty*, 970 F.2d 1230, 1239 (3d Cir. 1992), and several "state prisoner" cases as requiring "both a substantial constitution claim upon which he has a high likelihood of success and extraordinary circumstances"). Mr. Khalil can and does meet that standard, ECF 93, but the *Landano* standard is inapplicable here. The Third Circuit, citing the civil habeas statute, presented the overarching bail standard as "where, in the exercise of his discretion, the judge deems it advisable." *Johnston*, 227 F.2d at 531. Moreover, *Mapp v. Reno* is persuasive authority on how the standard applies in immigration cases. *See Leslie v. Holder*, 865 F. Supp. 2d 627, 634 (M.D. Pa. 2012) (relying on *Mapp* and describing the standard as "whether the habeas petition raises substantial claims and whether extraordinary circumstances exist that make the grant of bail necessary to make the habeas remedy effective") (citations omitted) (cleaned up). Unlike a criminal habeas adjudication in which a court of law has already tried and sentenced an individual for a crime and the individual is seeking release pending a post-conviction habeas petition, here, Mr. Khalil is being detained on unproven civil immigration charges and is challenging the constitutionality of his ongoing detention in the only forum that is empowered to consider the constitutional claims raised here. Release on bail is as reasonable here as it would be pre-trial in a criminal case.

Under any standard, however, Mr. Khalil merits release pending adjudication of his habeas petition. As noted above, none of Respondents' jurisdictional arguments apply to his challenge to detention. *See supra* Point II. In terms of the merits of his claims, Petitioner asserts that all of his claims are substantial and present a clear basis for habeas relief. ECF 93. Even under the

heightened standard in *Landano*, his First and Fifth Amendment challenges to his ongoing detention are substantial constitution claims upon which he has a high likelihood of success. Respondents have made plain their basis for Mr. Khalil's detention—his speech regarding Israel and Palestine. This violates the First Amendment.[8] As the Second Circuit held in *Ragbir v. Homan*, "[t]o allow this retaliatory conduct to proceed would broadly chill protected speech, among not only activists subject to . . . deportation but also those citizens and other residents who would fear retaliation against others." 923 F.3d 53, 71 (2d Cir. 2019), *judgment vacated sub nom. Pham v. Ragbir*, 141 S. Ct. 227 (2020) (vacating on other grounds).

Furthermore, Respondents' claim that there are facially legitimate reasons for Mr. Khalil's detention and that the added charges of removability to Mr. Khalil's Notice to Appear, more than one week after he was detained, weaken his First Amendment claim. Respondents' arguments strain credulity. The government attempts to sanitize its unconscionable weaponization of the INA's foreign policy provision by pointing to meritless post-hoc allegations levied against Mr. Khalil several days after he was detained and initially charged with removability. Moreover, the

---

[8] Respondents attempt to diminish the protections afforded by the First Amendment upon all peoples in the United States, citizens and noncitizens alike, *see Bridges v. Wixon*, 326 U.S. 135, 148 (1945), by suggesting that the Respondents' mere invocation of national security or foreign policy implications suspends those protections. ECF 99 at 24-25. But the government cannot justify the overt suppression of disfavored views that are otherwise protected by the First Amendment with the magic words "foreign policy," a category that can be stretched to cover almost any issue of national (let alone international) concern. Indeed, the Supreme Court in *Bridges* reaffirmed non-citizens' First Amendment rights in a case in which foreign policy and national security concerns—namely, affiliation with the Communist Party—were at issue. 326 U.S. at 137–138, 142. Here, Respondents' many statements about Mr. Khalil's detention make plain that Mr. Khalil was targeted for detention because of his constitutionally-protected speech for Palestinian rights and criticizing the State of Israel. If Respondents' theory about the First Amendment were correct, then noncitizens, including lawful permanent residents, would be free to express only their enthusiastic support for the Administration and its policies. Such abuse of the Administration's removal powers to silence dissent and distort public debate in its favor would undermine the entire purpose of the First Amendment.

charges evince that the government is seeking to remove him for "beliefs, statements, or associations [that] would be lawful within the United States." 8 U.S.C. § 1182(a)(3)(C)(iii). The charges are a continuation of Respondents' retaliation against Mr. Khalil for his First Amendment-protected speech and activity, and underscore, rather than, diminish the First Amendment issues in this case.[9]

Petitioner also presents substantial due process challenges to his detention. Respondents acknowledge, and yet do not challenge, Petitioner's argument that he is not a flight risk or danger to the community. ECF 99 at 26 (acknowledging and not challenging Petitioner's argument "that is not a flight risk or a danger to the community," stating only that "personal hardships are not the sort that give rise to relief"). Respondents argue that his detention is authorized because he is facing removal—but the fact that he faces removal cannot justify detention if he is neither a flight risk nor danger to the community. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (explaining that

---

[9] Respondents briefly state that its justifications for removability are "preclusive" of his First Amendment claims under *Nieves v. Bartlet*, 587 U.S. 391, 204 (2019). *Nieves,* however, is a § 1983 damages case that addresses individual officer liability for past conduct where probable cause exists for arrest and does nothing to alter long-standing First Amendment jurisprudence prohibiting government officials from engaging in retaliation. *See Nieves*, 587 U.S at 412-413 (Gorsuch, J., concurring) ("Both sides accept that an officer violates the First Amendment when he arrests an individual in retaliation for his protected speech. . . . If the state could use these laws not for their intended purposes but to silence those who voice unpopular ideas, little would be left of our First Amendment liberties, and little would separate us from the tyrannies of the past or the malignant fiefdoms of our own age. . . ."). The Second and Ninth Circuits have thus rejected the argument that the purported existence of facially valid justifications for detention or deportation defeat a First Amendment claim. *See Bello-Reyes v. Gaynor*, 985 F.3d 696, 701 (9th Cir. 2021) (refusing to apply *Nieves* in part because "no equivalent benchmark [to probable cause] exists where ICE is revoking bond" and thus "extending [*Nieves*] to this situation would effectively eliminate almost any prospect of obtaining release on habeas for actually retaliatory, unconstitutional immigration bond revocation"); *Ragbir,* 923 F.3d at 67 & n.17 (noting that the probable cause requirement for the Fourth Amendment serves a specific purpose for securing an individual and evidence in the process of investigating a criminal offense, circumstances not readily translatable into the civil immigration context), *judgment vacated sub nom. Pham v. Ragbir*, 141 S. Ct. 227 (2020) (remanding on other grounds and refusing to grant certiorari on the basis of *Nieves*).

civil immigration detention is only justified based on flight risk and dangerousness). He has demonstrated a high likelihood of success that his detention is unconstitutional as applied to him: he is a lawful permanent resident whom the government concedes is neither a flight risk nor a danger to the community. While Respondents seem to believe that only more prolonged detention would give rise to a constitutional concern, due process is also violated where, as here, "detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons." *Demore v. Kim*, 538 U.S. 510, 532-33 (2003) (Kennedy, J., concurring). Respondents have already made clear to the world that detention is for "other reasons," and thus his detention fails to comport with due process. *Id.*

Given these substantial claims and the others addressed in his motion, the only question is whether this case presents extraordinary circumstances that necessitate release to make the habeas remedy effective. It does. First, the Trump Administration is making an example out of Mr. Khalil's ongoing detention, impeding his ability to participate in ongoing public dialogue about Israel and Palestine and chilling the speech of others with each passing day he remains detained. ECF 67 at 22-23; ECF 93 at 19-20. This is extraordinary, and Respondents have no response. Second, his detention is impeding his ability to access counsel and meaningfully participate in his defense. Respondents note that he is a plaintiff in a lawsuit against Columbia University, but that only underscores the burden that his detention has imposed on his ability to speak out and petition for redress of grievances in court: his declaration in support of that litigation was finalized prior to his detention, on March 2, 2025, and his detention has impeded his ability to participate in that litigation as well as this lawsuit. *See* Declaration of Mahmoud Khalil, *Khalil v. Trs. of Columbia Univ. in City of N.Y.*, No. 25-2079 (S.D.N.Y. Mar. 19, 2025), ECF 16.7. Third, Mr. Khalil's lack of flight risk and dangerousness—uncontested by Respondents—is an extraordinary circumstance,

as numerous courts have found.[10] And while Respondents note that family separation is a "ubiquitous occurrence" in immigration cases, ECF 99 at 27, the widespread nature of this hardship makes the particular circumstances faced by Mr. Khalil no less extraordinary. Detention is preventing him from being present for his pregnant wife, who is at risk of preeclampsia, and the birth of their son. ECF 55 at ¶¶ 20-22. Pressing needs to care for family and health concerns are extraordinary circumstances, as Respondents note. ECF 99 at 29-30.

## **CONCLUSION**

For the foregoing reasons, this motion should be granted, and this Court should order Respondents to release Mr. Khalil pending the adjudication of this case.

Dated: March 24, 2025                                    Respectfully submitted,
New York, NY

                                                         /s/ Naz Ahmad

---

[10] *See, e.g., Leslie*, 865 F. Supp. 2d at 638; *Moss v. Miniard*, No. 18-CV-11697, 2024 WL 4326813, at *5 (E.D. Mich. Sept. 27, 2024); *United States v. Nkanga*, 452 F. Supp. 3d 91, 96 (S.D.N.Y. 2020); *Han Tak Lee v. Cameron*, No. 4:08-CV-1972, 2014 WL 4187590 (M.D. Pa. Aug. 22, 2014); *Hall v. San Francisco Superior Ct.*, No. C 09-5299 PJH, 2010 WL 890044, at *13 (N.D. Cal. Mar. 8, 2010); *D'Alessandro v. Mukasey*, No. 08 Civ. 914, 2009 WL 799957, at *3 (W.D.N.Y. Mar. 25, 2009); *Sanchez v. Winfrey*, No. CIV.A.SA04CA0293RFNN, 2004 WL 1118718, at *3 (W.D. Tex. Apr. 28, 2004); *Rado v. Manson*, 435 F. Supp. 349, 350 (D. Conn. 1977).

CLEAR PROJECT
MAIN STREET LEGAL SERVICES, INC.
Naz Ahmad
Ramzi Kassem*
Mudassar Hayat Toppa*
Shezza Abboushi Dallal*
CUNY School of Law
2 Court Square
Long Island City, NY 11101
(718) 340-4558
ramzi.kassem@law.cuny.edu
naz.ahmad@law.cuny.edu
mudassar.toppa@law.cuny.edu
shezza.dallal@law.cuny.edu

WASHINGTON SQUARE LEGAL SERVICES, INC.
IMMIGRANT RIGHTS CLINIC
ALINA DAS*
245 Sullivan Street, 5th Floor
New York, New York 10012
Tel: (212) 998-6430
alina.das@nyu.edu

CENTER FOR CONSTITUTIONAL RIGHTS
Baher Azmy
Samah Sisay*
Diala Shamas*
666 Broadway, 7th Floor
New York, NY 10012
(212) 614-6464
bazmy@ccrjustice.org
ssisay@ccrjustice.org
dshamas@ccrjustice.org

**NEW YORK CIVIL LIBERTIES UNION FOUNDATION**
Amy Belsher*
Robert Hodgson*
Veronica Salama*
Molly Biklen*
125 Broad Street, 19th Floor
New York, N.Y. 10004
Tel: (212) 607-3300
abelsher@nyclu.org

**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
Omar Jadwat*
Noor Zafar*
Sidra Mahfooz*
Brian Hauss*
Brett Max Kaufman*
Esha Bhandari*
Vera Eidelman*
Tyler Takemoto*
American Civil Liberties Union Foundation
125 Broad Street, Floor 18
New York, NY 10004
ojadwat@aclu.org

**AMERICAN CIVIL LIBERTIES UNION OF NEW JERSEY FOUNDATION**
Jeanne LoCicero
Farrin Anello
Molly Linhorst
570 Broad Street, 11th Floor
Newark, New Jersey 07102
973-854-1715
jlocicero@aclu-nj.org

14

**DRATEL & LEWIS**
Amy E. Greer
29 Broadway, Suite 1412
New York, NY 10006
Phone: (212) 732-8805
Fax: (212) 571-3792
Email: agreer@dratellewis.com

**VAN DER HOUT LLP**
Marc Van Der Hout (CA Bar #80778)
Johnny Sinodis (CA Bar #290402)
Oona Cahill (CA Bar #354525)
Van Der Hout LLP
360 Post St., Suite 800
San Francisco, CA 94108
Tel: (415) 981-3000
Fax: (415) 981-3003
ndca@vblaw.com

*\*Application for admission* pro hac vice
*pending or forthcoming*

*Counsel for Petitioner*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| Mahmoud KHALIL,<br><br>   *Petitioner*,<br><br>     v.<br><br>Donald J. TRUMP, et al.,<br><br>   *Respondents*. | Case No. 2:25-cv-01963-MEF<br><br>**CERTIFICATE OF SERVICE** |

I hereby certify that on March 24, 2025, I electronically filed a Reply Memorandum of Law in Support of Petitioner's Motion for Release.

Notice of this filing will be sent to all counsel of record in this case via the Court's electronic filing system.

Dated: March 24, 2025              Respectfully Submitted,
New York, NY

                                   /s/ Naz Ahmad
                                   Naz Ahmad
                                   CLEAR PROJECT
                                   MAIN STREET LEGAL SERVICES, INC.
                                   CUNY School of Law
                                   2 Court Square
                                   Long Island City, NY 11101
                                   Tel: (718) 340-4558