**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

MAHMOUD KHALIL,

       *Petitioner*,

   v.

WILLIAM P. JOYCE, et al.,

       *Respondents*.

No. 25-cv-01963 (MEF)(MAH)

<u>**OPINION and ORDER**</u>

<u>**Table of Contents**</u>

I.     <u>**Background**</u>

     **A.** <u>**The Facts**</u>

     **B.** <u>**Procedural History**</u>

     **C.** <u>**The Motion**</u>

     **D.** <u>**The Court's Approach**</u>

II.   <u>**Legal Principles**</u>

III.  <u>**Law of the Case**</u>

     **A.** <u>**General Principles**</u>

     **B.** <u>**"The Same Issue"**</u>

     **C.** <u>**Implicitly "The Same Issue"**</u>

     **D.** <u>**Discretion**</u>

     **E.** <u>**Conclusion**</u>

IV   <u>**What Supplies Jurisdiction**</u>

     **A.** <u>**The Respondent's Argument**</u>

     **B.** <u>**Section 1631**</u>

        **1.** <u>**The Court Can Look to Section 1631**</u>

        **2.** <u>**Section 1631 Applies to Habeas Petitions**</u>

        **3.** <u>**Section 1631 Applies Here**</u>

        **4.**    **Section 1631 Covers Personal Jurisdiction**

        **5.**    **What Section 1631 Means Here**

            **a)**    **Miller**

            **b)**    **Martinez-Nieto**

            **c)**    **Other Cases**

**V.**     **Section 1631 and Two Further Issues**

**VI.**    **The Endo Rule**

      **A.** **Background**

      **B.** **Consensus Understanding**

**VII.**    **The Immediate Custodian Rule**

      **A.** **The Louisiana Warden**

      **B.** **The New Jersey Warden**

        **1.**    **Facts**

        **2.**    **The Unknown Custodian Exception**

        **3.**    **Applying the Unknown Custodian Exception**

            **a)**    **"If Known"**

            **b)**    **The District of Confinement Rule**

            **c)**    **Conclusion**

**VIII.** **Conclusion and Next Steps**

*    *    *

A lawful permanent resident was detained, and filed a habeas corpus petition seeking his release.

The respondents, various federal officials, have moved to dismiss, arguing the Court does not have jurisdiction.

The motion is denied.

*    *    *

**I.**    **Background**

      **A.**    **The Facts**

The relevant facts for now are as follows.

A lawful permanent resident[1] was arrested by federal officials in Manhattan.  See Declaration of Amy E. Greer ("Greer Declaration") (ECF 11-1) ¶¶ 4-5; Second Supplemental Declaration of Acting Field Office Director William P. Joyce ("Joyce Declaration") (ECF 72) ¶¶ 6-7.

While in custody, he was handed various forms.  See Declaration of Mahmoud Khalil ("Khalil Declaration") (ECF 73-1) ¶¶ 4-6; Joyce Declaration ¶ 7.

These said two main things.  First, that federal officials were seeking to remove him from the United States.  See Joyce Declaration ¶ 7.  And second, that as part of that process, he would be required to appear before an immigration judge in Louisiana in about two weeks.  See Khalil Declaration ¶ 5.[2]

About seven hours after his arrest, see Greer Declaration ¶ 6, Joyce Declaration ¶ 7, the lawful permanent resident's lawyer electronically filed a habeas corpus petition on his behalf in federal court in Manhattan.[3]  See Greer Declaration ¶ 9.

*    *    *

From here, the lawful permanent resident is called "the Petitioner," and his habeas petition (ECF 38, as amended) is "the Petition."  The Petition names various federal officials.[4] From here, they are collectively called "the Respondents."

---

[1]  Mahmoud Khalil.  A lawful permanent resident is a person who has "been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws[.]"  8 U.S.C. § 1101(a)(20).

[2]  Removing a lawful permanent resident from the United States generally requires a removal hearing.  See 8 U.S.C. § 1229a. Those typically go forward before an immigration judge.  See 8 U.S.C. § 1229a(a)(1); 8 C.F.R. § 1240.10(a).

[3]  Under the relevant part of the habeas corpus statute, of which more below, a federal judge may direct a person's custodian to release him from custody if he is being held in violation of federal law.  See Rumsfeld v. Padilla, 542 U.S. 426, 434-35 (2004); Coleman v. Tennessee, 97 U.S. 509, 534-35 (1878); 28 U.S.C. § 2241(c); see also 28 U.S.C. § 2243.

[4]  The Respondents are listed in the Petition as: President of the United States Donald Trump; Acting Field Office Director of

\*    \*    \*

About one hour before the Petition was filed on his behalf, the Petitioner was moved to another detention facility.  See Khalil Declaration ¶ 8; Joyce Declaration ¶ 16.  As a result, when the filing was made, the Petitioner was no longer in New York.  See Khalil Declaration ¶ 7; Joyce Declaration ¶ 17.  He was in New Jersey.  See Khalil Declaration ¶¶ 8, 22; Joyce Declaration ¶ 17.

The Petitioner spent around eight hours in New Jersey.[5]  See Khalil Declaration ¶¶ 7-8, 22; Joyce Declaration ¶¶ 16, 18. From New Jersey, he was taken to Louisiana, where he remains today.[6]  See Greer Declaration ¶ 14; Khalil Declaration ¶¶ 24-26; Joyce Declaration ¶¶ 18-19.[7]

**B.    Procedural History**

In the Manhattan federal court, where the Petition had been filed, the Respondents moved to dismiss the case.  See Respondents' Memorandum of Law in Support of their Motion to Dismiss or Transfer the Case (ECF 31) at 1.

They argued the New York court did not have jurisdiction to hear it.  The Respondents' core argument: habeas cases must generally

---

New York, Immigration and Customs Enforcement, William P. Joyce; Acting Director of Immigration and Customs Enforcement Caleb Vitello; Secretary of the United States Department of Homeland Security Kristi Noem; Secretary of the United States Department of State Marco Rubio; and Attorney General of the United States Pamela Bondi.

[5]  The timeline reflects that at 2:00am on March 9, the clocks moved forward to 3:00am for daylight saving time.

[6]  Recall: Louisiana was where the Petitioner was due to appear before an immigration judge.

[7]  As to more precise dates and times, the Petitioner was arrested in Manhattan at around 8:35pm on March 8, 2025.  See Greer Declaration ¶ 6; Joyce Declaration ¶ 7.  On March 9, he arrived in New Jersey at 3:20am, see Joyce Decl. ¶ 16; the habeas petition was filed on his behalf at 4:40am, see Greer Declaration ¶ 9; and he was taken from New Jersey sometime around 11:30am or noon, bound for Louisiana.  See Joyce Declaration ¶ 18; Khalil Declaration ¶ 22.

be filed only in the judicial district where the person in question is being held, see id. at 3-4 --- and the Petitioner was not in New York when the Petition was filed there. See id. at 3. At that point, he was in New Jersey. See id.

In light of this, the Respondents argued, the New York court should either: (a) dismiss the case without prejudice (which would allow the Petitioner to refile it in the right district) or (b) transfer the case to the federal court in the Western District of Louisiana, where the Petitioner was (and is) confined. See id. at 9-11.

The Petitioner made various counterarguments, see generally Plaintiff['s] Memorandum of Law in Opposition to Defendants' Motion to Dismiss or Transfer (ECF 50) ("New York Opposition Brief"), and the New York court issued two main rulings.

First, the court held that it did not have power to take up the case. That was "plainly" the correct outcome under the "normal" rules for habeas cases, the court determined --- because the Petitioner was no longer in Manhattan when his habeas corpus petition was filed there. Khalil v. Joyce, 2025 WL 849803, at *7 (S.D.N.Y. Mar. 19, 2025).

And second, the court turned to deciding between (a) dismissing the case and (b) transferring it. See id. at *11. The court chose transfer, in particular to New Jersey. See id.

Why New Jersey? Because certain statutes tell federal courts where to transfer cases that ae improperly before them. One of those statutes directs a federal court to transfer such a case to where it "could" have been filed. Id. at *12 (quoting 28 U.S.C. § 1406(a)).

And at the moment the Petition was filed, there was only one such place --- New Jersey, where the Petitioner was being held. See id. at *13.

### C.    **The Motion**

The Respondents have now moved to dismiss this case on the argument that this Court lacks jurisdiction over it. See Respondents' Brief in Support of Their Renewed Motion to Dismiss or to Transfer the Case (ECF 90) ("Motion to Dismiss").

The motion has been fully briefed, and oral argument on it was heard.

The motion is before the Court.

###    D.    **The Court's Approach**

After a brief discussion of relevant general principles, see Part II, the Court takes up the Petitioner's first argument: that the Respondents' motion must be denied in light of the New York court's transfer of the case here.

This argument, the Court concludes, is not persuasive.  The New York court decided that it did not have jurisdiction.  It did not pass on whether this Court has jurisdiction.  The question is therefore an open one.  See Part III.

The Court then directly considers whether it has jurisdiction. The Court's conclusion: it does.

Under habeas law, jurisdiction in a particular district is established when a petitioner is physically present in the district at the same moment a petition is filed there on his behalf.  See Part II.

That confluence happened here.  The Petitioner was in custody in New Jersey as of March 9 at 4:40am.  And under a federal statute, the Petition, though filed in New York, must be treated as having been filed in New Jersey on March 9 at 4:40am. Therefore, this Court has jurisdiction.  See Part IV.

The Court then asks whether the jurisdiction it obtained on March 9 is now lost, because the Petitioner was moved to Louisiana.

The Court's jurisdiction, it concludes, has not been lost.  The Supreme Court has all but so held.  See Part VI.

Finally, the Court asks whether the jurisdiction it obtained on March 9 is undone because the Petition did not name a Louisiana warden (in whose custody the Petitioner now is) or a New Jersey warden (in whose custody the Petitioner was before being moved to Louisiana).

These omissions do not defeat jurisdiction, the Court holds.  As to the Louisiana warden, this is because of the effect of an on-point Supreme Court case.  See Part VII.A.  And as to the New Jersey warden, this is because there was no way for the Petitioner's lawyer to know he was in New Jersey when she filed the Petition on his behalf.  See Part VII.B.

## II.  **Legal Principles**

This Opinion and Order generally lays out the law on a given topic as it becomes relevant.

But two legal principles come up frequently, so they are briefly sketched out here, along with some of their connections to the case.

The first: a habeas corpus petition must generally be filed in the judicial district where the habeas petitioner is physically in custody.  See Rumsfeld v. Padilla, 542 U.S. 426, 435 (2004); United States v. Hayman, 342 U.S. 205, 213 (1952); Ahrens v. Clark, 335 U.S. 188, 190 (1948).[8]

Recall that the Petitioner was in custody in New Jersey at the moment when his Petition was filed, and he is now in custody in Louisiana.  See Part I.A.

The second legal principle: a habeas corpus petition, like this one, that challenges custody imposed by Immigration and Customs Enforcement --- a federal agency referred to from here as "ICE" --- must generally name as the respondent the warden of the detention facility where the person is held.  See Anariba v. Dir. Hudson Cnty. Corr. Ctr., 17 F.4th 434, 444 (3d Cir. 2021).

The Petitioner here did not name the warden of the New Jersey facility, though he now seeks permission to do so.  See Petitioner's Memorandum of Law in Opposition to Respondents' Renewed Motion to Dismiss or Transfer & in Support of His Cross-Motion for Re-Transfer (ECF 107) ("Opposition Brief") at n.1; see also Petitioner's Supplemental Memorandum of Law in Further Support of His Motion to Compel Respondents to Return Him to

---

[8]  There are exceptions to this rule.  For example, the rule does not apply to a challenge to something other than here-and-now physical custody --- as when a person challenges a "detainer," on the argument it will lead to his or her future confinement. See Padilla, 542 U.S. at 438 (citing Braden v. 30th Jud. Cir. Ct. of Ky., 410 U.S. 484 (1973)).  And things work differently when a person is detained outside the United States.  See, e.g., Ex parte Hayes, 414 U.S. 1327, 1328-29 (1973) (Douglas, J., in chambers).  The exceptions alluded to in this footnote are irrelevant here.  This is because habeas challenges to "present physical confinement" within the United States, as in this case, must be brought in the judicial district where the person in question is confined.  See Padilla, 542 U.S. at 435.

This District (ECF 96) at n.1.  And the Petitioner here did not name the warden of the Louisiana facility, but he has not asked to do that.

With the key legal principles in mind, move on now to consider this case.

### III.  **Law of the Case**

The Petitioner's first argument is that the Respondents' motion to dismiss must be denied without considering whether it is persuasive.  See Opposition Brief at 7-8.

The New York court, the argument goes, has already ruled on the relevant issue --- and this Court must stick with that ruling under the "law of the case" doctrine.  See id. at 7-12.

But this argument does not work.

First, its premise is inaccurate.  The New York court did not rule on the issue that this Court now needs to take on.  See Part III.B and Part III.C.  Therefore, the law-of-the-case doctrine is not on the table.

And second, even if the doctrine might have a role, the Court would not opt to apply it here.  See Part III.D.

Take these points up in a moment, after a quick look at some general legal principles.  See Part III.A.

### A.  **General Principles**

The starting point here is one of the law's recurring questions: how should one court weigh an earlier judicial decision?

Different bodies of legal rules, each tailored to a different circumstance, supply answers.  Stare decisis is an example; res judicata is another.[9]

---

[9]  Stare decisis is "[t]he doctrine of precedent, under which a court must follow earlier judicial decisions when the same points arise again in litigation."  Stare Decisis, Black's Law Dictionary (12th ed. 2024).  Res judicata is "[a]n affirmative defense barring the same parties from litigating a second lawsuit on the same claim, or any other claim arising from the same transaction or series of transactions and that could have

One of these bodies of rules is the "law of the case" doctrine.[10]

Under the doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Arizona v. California, 460 U.S. 605, 618 (1983).

The law-of-the-case doctrine may apply when, as here, a litigant asks a federal court in one district to defer in some way to a ruling a federal court in another district already made in the case. See, e.g., Hayman Cash Reg. Co. v. Sarokin, 669 F.2d 162, 168-69 (3d Cir. 1982); see generally Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 816-17 (1988) (discussing law-of-the-case doctrine as between "coordinate courts").

But the doctrine kicks in only when the two courts have resolved "the same issue." Fagan v. City of Vineland, 22 F.3d 1283, 1290 (3d Cir. 1994); accord, e.g., Arizona, 460 U.S. at 618; Musacchio v. United States, 577 U.S. 237, 244-45 (2016); Pepper v. United States, 562 U.S. 476, 506 (2011); 18 James Wm. Moore et al., Moore's Federal Practice § 134.20 (2025).

This means that "the doctrine does not apply when the first judge never decided the precise issue before the second judge." Chi. Joe's Tea Room, LLC v. Vill. of Broadview, 894 F.3d 807, 818 (7th Cir. 2018).

When the doctrine is in play, it is discretionary. See United States v. U.S. Smelting Refin. & Mining Co., 339 U.S. 186, 199 (1950); see generally In re Celgene Corp., Inc. Sec. Litig., 747 F. Supp. 3d 748, 761 (D.N.J. 2024) (laying out some of the history of this approach).

This means that a court generally has a choice. Cf. Zervos v. Verizon N.Y., Inc., 252 F.3d 163, 169 n.6 (2d Cir. 2001). It can opt to go with the earlier decision. Or it can reflect on the previous decision, and, if necessary, take things in a

---

been --- but was not --- raised in the first suit." Res Judicata, sense 2, Black's Law Dictionary (12th ed. 2024).

[10]  For the relationship of law of the case to stare decisis, see, for example, Loumar, Inc. v. Smith, 698 F.2d 759, 762 (5th Cir. 1983). And for the link between law of the case and res judicata, see, for example, Southern Railway Co. v. Clift, 260 U.S. 316, 319 (1922).

9

different direction --- informed by the prior decision, but not entirely hemmed in by it.

**B.    "The Same Issue"**

Come back now to this case.

The Petitioner's argument is that under the law-of-the-case doctrine, the New York court's decision requires this Court to deny the Respondents' current motion to dismiss for lack of jurisdiction.  See Opposition Brief at 12.

But this argument is not persuasive.

The reason why: the issue that was resolved by the New York court is not "the same," Fagan, 22 F.3d at 1290, as the issue on the now-pending motion to dismiss --- and so the law-of-the-case doctrine is not part of the mix.

*    *    *

To see the point, start by zeroing in on what the New York court did, and then look to the question now before this Court.

At its core, the New York court held that it did not have jurisdiction over this case, see Khalil, 2025 WL 849803, at *2, and that it would transfer the matter to New Jersey.  See id.

Why New Jersey?  The New York court looked mainly to a 1948 law that covers court-to-court transfers, 28 U.S.C. § 1406(a).  See id. at *12-14.  Under Section 1406(a), a federal court with a case that has been filed in the wrong place has two choices.  It can dismiss the case (which the New York court decided against, see id. at *12) or transfer it "to any district . . . in which [the case] could have been brought" (which the New York court decided to do, see id. at *11 (quoting 28 U.S.C. § 1406(a)).

Per the New York court, Section 1406(a) pointed to New Jersey.  At the moment his habeas petition was filed, the Petitioner was in custody here.  Id. at *12.  And as noted, a habeas petition can be filed only in the district where a person is detained.  See id. at *1 (citing Padilla, 542 U.S. at 449).

Therefore, the New York court concluded, the case "could have been brought" in New Jersey and would be transferred here.  See id. at *12 (quoting 28 U.S.C. § 1406(a)) (emphasis added).

Now compare all of that to "the . . . issue," Fagan, 22 F.3d at 1290, before the Court now.

That issue is the one put by the Respondents in their motion to dismiss: does <u>this</u> Court, in New Jersey, have jurisdiction over this case?  <u>See</u> Motion to Dismiss at 1.[11]

Did the New York court make that determination, about this Court's jurisdiction?

The Petitioner seems to say yes.  For example, the Petitioner takes the Respondents to task for arguing that "this Court . . . must re-evaluate its own jurisdiction . . . because [the New York court] got that question wrong."  Opposition Brief at 10 (cleaned up).

But "wrong" or right --- the premise of this argument is that the New York court assessed this Court's jurisdiction.

---

[11]  Note that working through the Respondents' motion does not threaten what the Petitioner invokes --- "a perpetual game of jurisdictional ping-pong until one of the parties surrenders to futility."  Opposition Brief at 12 (cleaned up).  Look to the cases the Petitioner cites as the basis for his concern.  In <u>Hayman Cash Register Co.</u> v. <u>Sarokin</u>, 669 F.2d 162 (3d Cir. 1982), a Washington, DC, federal court transferred a case to New Jersey --- only to have the case transferred back to DC by the New Jersey court.  <u>See</u> <u>id</u>. at 163-64.  That back-and-forth took two years, <u>see</u> <u>id</u>., and the court of appeals put an end to it.  The other main case cited by the Petitioner is <u>Christianson</u> v. <u>Colt Industries Operating Corp.</u>, 486 U.S. 800 (1988).  There, the Federal Circuit transferred a case to the Seventh Circuit, which then transferred it back.  <u>See</u> <u>id</u>. at 806-07.  This, too, took two years, <u>see</u> <u>id</u>. at 804, and the Supreme Court cut things off based, in part, on law-of-the-case grounds.  But <u>Hayman</u> and <u>Christianson</u> are a long way off from this case.  There is no danger here of "perpetual . . . ping-pong," <u>Christianson</u>, 486 U.S. at 818, played until someone folds.  The New York court transferred this case to New Jersey.  But no one wants the case to now be sent back to New York.  (In purely nominal fashion, solely to preserve the issue for appeal, the Petitioner asks for a return to New York.  <u>See</u> Opposition Brief at 30-31.  But put that aside as irrelevant for now.  There is no real ask from either party to go back to New York.)

But subject to an exception taken up below in footnote 14, there is nothing explicit along those lines in the New York court's decision.[12]

For example, the critical argument from the Respondents in New York was that habeas jurisdiction never vested in New Jersey, because the Petitioner did not file a Petition here.  <u>See</u> Respondents' Memorandum of Law in Support of Their Motion to Dismiss or to Transfer the Case (ECF 31) at 10.  And, the Respondents argued, the federal transfer statutes cannot fill the gap because they "do not independently vest courts with jurisdiction."  <u>See</u> Respondents' Reply Memorandum of Law in Further Support of Their Motion to Dismiss or to Transfer the Case (ECF 71) at 14.

But these questions were not addressed in the New York court's opinion.  There was no discussion, for example, as to whether one court can potentially take habeas jurisdiction on a derivative basis --- based on an earlier filing in another court.  And there was no discussion as to whether there is a federal statute that vests the jurisdiction the Respondents said was missing.

These are not gaps in the New York court's analysis.  They are, rather, indications of what the analysis was about.  The New York court opined as to its own jurisdiction.  <u>See</u> <u>Khalil</u>, 2025 WL 849803, at *5-*11.  But it did not purport to rule as to this Court's jurisdiction --- which raises substantial (and distinct) issues of its own, covered here.  <u>See</u> Part IV to Part VII.

*    *    *

Moreover, there are strong affirmative indications that the New York court did not see itself as resolving this Court's jurisdiction.

---

[12]  To be sure, the Petitioner notes that the New York court ruled that it had subject-matter jurisdiction over this case and that this Court does, too.  <u>See</u> <u>id</u>.  But such a ruling is beside the point.  No one doubts that federal district courts have jurisdiction over the subject matter, habeas cases under 28 U.S.C. § 2241.  Rather, the question is whether <u>this</u> Court has power over <u>this</u> habeas petition.  A ruling as to federal courts' subject-matter jurisdiction over habeas cases generally does not answer that.

Look to one in particular.

To see it, start by noting that in the Supreme Court's <u>Padilla</u> decision, Justice Kennedy suggested in a concurrence that certain sorts of wrongful behavior from the United States, like hiding a detainee's location, might confer habeas jurisdiction on a particular court, even one that might not otherwise have power over the case.  <u>See</u> 542 U.S. at 454 (Kennedy, J., concurring).

The New York court did not decide whether to adopt for itself this concurrence.  <u>See</u> <u>Khalil</u>, 2025 WL 849803, at *8.  But it determined that even if the concurrence might be on the table as a general matter, the actions of federal officials in this particular case would not trigger it.  <u>See</u> <u>id</u>. at *8-11.

In reaching this conclusion, the New York court put aside any questions as to federal officials' conduct related to the Petitioner's later New Jersey-to-Louisiana transfer.  <u>See</u> <u>id</u>. at *8.  Those questions, the New York court said, were not "jurisdictionally relevant."  <u>Id</u>. at *9.

And that makes sense.  Any possible downstream misconduct by federal officials in sending the Petitioner from New Jersey to Louisiana could not impact whether there was or was not jurisdiction at an earlier point, in New York.

Such an inquiry might, of course, shed light on whether there was jurisdiction in New Jersey.

But no analysis like that was conducted.  The New York court suggested such an analysis would be "jurisdictionally [ir]relevant."  <u>Id</u>. at *9.  And with good reason.  It was, indeed, irrelevant to <u>its</u> question (is there jurisdiction in New York?) --- even as it might well have been relevant to a question it was <u>not</u> addressing (is there jurisdiction in New Jersey?).

*    *    *

Nor is it surprising in any way that the New York court transferred the case here without first deciding that this Court has jurisdiction.

Courts routinely transfer cases on the understanding that the transferee court will itself determine in the first instance, when the case arrives, whether it has jurisdiction.  <u>See</u>, <u>e.g.</u>, <u>Abira Med. Lab'ys, LLC</u> v. <u>Cigna Health & Life Ins. Co.</u>, 2023 WL

13

4074081, at *2 n.4 (D.N.J. June 16, 2023); <u>Ike</u> v. <u>U.S.
Citizenship & Immigr. Servs.</u>, 2020 WL 7360214, at *2 (D.D.C.
Dec. 15, 2020); <u>Kneizys</u> v. <u>Fed. Deposit Ins. Co.</u>, 2020 WL
5632954, at *4 (D. Nev. Sept. 21, 2020); <u>Moore</u> v. <u>Baker</u>, 2018 WL
3421601, at *1 (M.D. Ala. June 18, 2018), <u>report and
recommendation adopted by</u> 2018 WL 3420802 (M.D. Ala. July 13,
2018); <u>Morrison</u> v. <u>Rochlin</u>, 2017 WL 1162938, at *3 n.3 (M.D. Pa.
Mar. 29, 2017); <u>Hara</u> v. <u>Hardcore Choppers, LLC</u>, 904 F. Supp. 2d
22, 28 (D.D.C. 2012); <u>Benninghoff</u> v. <u>Ortho-McNeil Pharma., Inc.</u>,
2011 WL 13218034, at *2 (C.D. Cal. Apr. 6, 2011); <u>Miller</u> v.
<u>Toyota Motor Corp.</u>, 2008 WL 11451547, at *3 (N.D. Ohio Sept. 30,
2008); <u>De Pedrero</u> v. <u>Schweizer Aircraft Corp.</u>, 2008 WL 11503874,
at *1 (S.D. Tex. Feb. 4, 2008); <u>Int'l Flavors & Fragrances Inc.</u>
v. <u>Van Eeghen Int'l. B.V.</u>, 2006 WL 1876671, at *8 (S.D.N.Y. July
6, 2006); <u>Alta. Telecomms. Rsch. Ctr.</u> v. <u>Rambus, Inc.</u>, 2006
WL 1049083, at *3 n.2 (E.D. Va. Apr. 12, 2006); <u>Apollo Prods.,
Inc.</u> v. <u>Marino</u>, 2006 WL 1798250, at *5 (W.D. Mo. June 28, 2006);
<u>Weber</u> v. <u>Jolly Hotels</u>, 977 F. Supp. 327, 334 (D.N.J. 1997);
<u>Downs</u> v. <u>Red River Shipping Corp.</u>, 1994 WL 554174, at *3 n.4
(E.D. La. Oct. 6, 1994); <u>United States</u> v. <u>Am. River Transp.,
Inc.</u>, 150 F.R.D. 587, 592 (C.D. Ill. 1993); <u>Trask</u> v. <u>Serv.
Merch. Co.</u>, 135 F.R.D. 17, 21 n.3 (D. Mass. 1991); <u>Miller</u> v.
<u>Campbell</u>, 1991 WL 311899, at *1 (E.D. Mich. Feb. 7, 1991);
<u>Jennings</u> v. <u>Entre Comput. Ctrs., Inc.</u>, 660 F. Supp. 712, 716 (D.
Me. 1987); <u>Booth</u> v. <u>Alvin Petroleum, Inc.</u>, 1987 WL 6748, at *4
(E.D. Pa. Feb. 13, 1987); <u>cf</u>. <u>Federal Practice and Procedure</u>
§ 3842.

And there may well have been special reason to proceed that way
here.

To decide there was no wrongful conduct in New York, which may
have been relevant to jurisdiction, the New York court leaned on
its understanding of how ICE handles everyday cases in New York.
<u>See</u> <u>Khalil</u>, 2025 WL 849803, at *8-10.  That understanding was
based to an extent on the New York judge's own direct experience
with New York ICE practices.  <u>See</u> <u>id.</u> at *8.

How does New Jersey ICE operate?  The New York court may well
have thought that the question was best considered in the first
instance by a New Jersey judge --- himself or herself personally
familiar with local ICE practices.  <u>Cf</u>. <u>Padilla</u>, 542 U.S. at 449
n.17 (dismissing Justice Kennedy's proposed exception to habeas
rules given that its factual premise was never suggested by the

district court, "which was much closer to the facts of the case than we are").

More generally, the New York court might have thought that determining what happened to the Petitioner in New Jersey could bear on New Jersey jurisdiction, see Khalil, 2025 WL 849803, at *8 (citing Padilla, 542 U.S. at 454 (Kennedy, J., concurring)) --- but that any necessary fact-gathering on that point should go forward closer to where things happened, in New Jersey.

                    *    *    *

And one last point.

The Third Circuit has repeatedly made clear in the law-of-the-case context that the question of what one court decided is assessed, in part, with reference to the issues that were teed up for it by the parties.

In United States v. Curtis, 683 F.2d 769 (3d Cir. 1982), for example, the court of appeals "decline[d] to infer [the first court's] rejection," id. at 772, of an argument that the parties had not meaningfully raised to the court "in the absence of some judicial statement that the contention has been considered and rejected." Id.

And look, too, to Fagan v. City of Vineland, 22 F.3d 1283 (3d Cir. 1994).  There, the Third Circuit held that the first judge had not considered a particular issue --- in large part because the motion papers before him did not themselves dive into it. See id. at 1290-91.

Against this backdrop, it would make little sense to conclude that the New York court held that this Court has jurisdiction --- even as the Petitioner himself did not substantially make that argument in New York.

The Petitioner's initial opposition brief mentioned going forward in New Jersey --- but only as a fourth fallback.  See New York Opposition Brief at 20.  The Petitioner argued to keep the case in New York; or if not, to allow jurisdictional discovery; or if not that, to allow an amendment to the Petition.  See id.  And if all that failed, the Petitioner argued, the case should be moved to New Jersey instead of Louisiana.  See id.

None of this teed up a serious reckoning with the distinct legal complexities associated with this Court's jurisdiction, and none

15

of those complexities were discussed in the Petitioner's opening brief --- which cited none of the key authorities that are relevant to New Jersey jurisdiction.  There was, for example, no discussion from the Petitioner of 28 U.S.C. § 1631, <u>see</u> Part IV.B below, or <u>Demjanjuk</u> v. <u>Meese</u>, 784 F.2d 1114 (D.C. Cir. 1986), <u>see</u> Part VII below.

And when the New York court followed up with a directive for further briefing as to the import of three particular statutes, <u>see</u> Order (ECF 63), there was more of the same --- New Jersey jurisdiction was not substantially put forward as an issue by the Petitioner.

The Petitioner suggested that "venue" was proper in New Jersey. <u>See</u> New York Opposition Brief at 20; Plaintiff['s] Supplemental Memorandum of Law in Opposition to Respondents' Motion to Dismiss or Transfer (ECF 70) ("New York Supplemental Opposition Brief") at 1-2, 5.  And it did so largely by leaning on arguments from the location of witnesses, lawyers, and parties, <u>see</u> New York Supplemental Opposition Brief at 2-3, arguments that the New York court mainly agreed with.  See <u>Khalil</u>, 2025 WL 849803, at *12.

But this argument from the Petitioner simply invited the New York court to do what it did --- to transfer the case on convenience-type grounds, <u>see</u> <u>id</u>., and to allow the transferee court (this Court) to decide in the first instance on its own jurisdiction.

And this, as the cases cited above show, is an everyday approach in transfer cases.

*     *     *

A final, related piece of the Petitioner's papers helps to make clear that the question of New Jersey jurisdiction was far removed from how this case was litigated in New York.

The New York court, as noted, sought analysis as to three statutes.  <u>See</u> Order (ECF 63).  In response, the Petitioner said that these statutes "use almost identical language."  New York Supplemental Opposition Brief at 5.  But they do not.  Two of the statutes (28 U.S.C. § 1404(a) and 28 U.S.C. § 1406(a)) use virtually "identical language," and they touch in various ways on transfer and convenience.  <u>See</u> 28 U.S.C. §§ 1404(a), 1406(a).

But the third statute uses quite different language than the other two.  And that difference is perhaps the single most important piece of the New Jersey jurisdiction analysis to come. <u>See</u> Part IV.B.  But the Petitioner did not note that language for the New York court, apparently because it did not matter for the argument he was making --- an argument as to transfer and convenience, not as to New Jersey jurisdiction.

*    *    *

Bottom line: the New York court decided that it did not have jurisdiction, but not that this Court does.

### C.    <u>Implicitly "The Same Issue"</u>

To finish out the analysis, go one step further.

Was the issue of New Jersey's jurisdiction somehow taken up <u>implicitly</u> by the New York court?  <u>See</u> <u>Moore's Federal Practice</u> § 134.20 ("The law of the case doctrine applies to an issue or issues that have actually been decided explicitly or by necessary implication."); <u>cf.</u> <u>Christianson</u>, 486 U.S. at 817.

At one or two points, the Petitioner appears to argue the New York court's transfer decision necessarily implied that this Court has jurisdiction over the case.  <u>See</u> Opposition Brief at 9, 12.

This argument, if it is being made, seems to start from the New York court's ruling that this case "could have been brought," 28 U.S.C. § 1406(a) (emphasis added), in New Jersey because the Petitioner was in this state at the moment of filing.

And that is certainly true to what the New York court held.

From that starting point, the Petitioner's argument seems to be this.  Because (a) this case "could have been brought" in New Jersey (as the New York court ruled, citing the Section 1406(a) transfer statute), it follows that (b) this case should be treated as if it <u>was</u> brought in New Jersey at the moment it was filed in New York --- and because of that (c) this Court now has jurisdiction over the case.

Much of this argument might well be persuasive in the end.  Indeed, Part IV of this Court's Opinion explains why (b) is sound.  And Part VI of this Court's Opinion explain why the progression from (b) to (c) also makes sense.  But these issues are not addressed in the New York court's opinion.

17

Maybe, though, the conclusions reached in this Opinion were logically necessary to, and thus implicitly baked into, the New York court's transfer decision.[13]

But this works only if the New York court's decision --- (a), in the above --- necessarily leads to (b), and then (b) necessarily leads to (c).

But it does not go that way.

The first step in the (a)/(b)/(c) progression is the move from (a) (saying that the case <u>could</u> have been brought in New Jersey, as the New York court held) to (b) (concluding that, therefore, the case should be treated as if it <u>was</u> brought in New Jersey).

But that (a)-to-(b) move is not a necessary one --- not in logic and not in the law.

                        *    *    *

To see the point, start by imagining a student who turns in a math assignment late.  She <u>could</u> have done her homework on time. But that does not mean that her late work must be received by the teacher as if it <u>was</u> handed in on time.  What could have been done (on-time work) sets the table for another question (whether to accept the late work).  But it does not answer it.

Or think of a train passenger asking the conductor not to charge him the extra $5 penalty fare, the step-up fine imposed for buying the ticket on board the train instead of back in the station.  The passenger will not argue to the conductor that he could have bought the ticket in the station.  That is not a winning argument.  Why?  Because the fact that the passenger <u>could</u> have bought the ticket earlier does not compel the conductor to give the passenger a break, to treat him as if he <u>did</u> buy the ticket earlier.

In short, there is typically real daylight between what could have been done and what was done.  Sometimes that daylight can be closed up.  The late homework might be accepted as if it had been submitted on time.  The conductor might say "no problem" and not charge the $5 penalty.

---

[13]  Recall: "[t]he law of the case doctrine applies to an issue or issues that have actually been decided explicitly or by necessary implication."  <u>Moore's Federal Practice</u> § 134.20.

But none of that changes the basic point: saying that a thing could have been done (which is what the New York court said about filing this case in New Jersey) does not inevitably lead to the conclusion that the thing should be treated as if it was done.

*    *    *

And what is true as a matter of common sense is true as a matter of habeas corpus law, too.

In the Supreme Court's Padilla case, for example, a person was held in New York and then transferred to South Carolina.  Only after the transfer was a habeas petition filed on his behalf in New York.  See 542 U.S. at 431-32.  Could the petition have been filed for the person while he was in New York?  Yes, and if so, there would have been jurisdiction there.  See id. at 441.

But that possibility (what could have happened) did not answer whether the New York court had jurisdiction over the case. Indeed, the Padilla Court discussed that point at some length, see id. at 448-49 & n.17, and then held the New York court did not have jurisdiction.  See id. at 451.

In short, where the case could have gone forward (New York) did not determine which court (New York or South Carolina) had power over the case when it mattered.

Take another example.

In al-Marri v. Rumsfeld, 360 F.3d 707 (7th Cir. 2004), a person detained in Illinois, believing he was to be moved to military custody, asked to stay his transfer to have time to petition for habeas.  See id. at 712.  But he was transferred before he could file his petition.  Per the Seventh Circuit, the question of where the petition could have been filed (in Illinois, before the transfer) did not answer whether jurisdiction was vested in the Illinois court (as if the filing had in fact been made):

> After the United States filed a motion to dismiss al-Marri's indictment in the Central District of Illinois, his lawyer orally opposed "any movement of Mr. Al-Marri until we have an opportunity to file --- it will be a habeas corpus action I suspect . . . . We would ask that the Court stay his removal from the Peoria County jail for at least

19

until some time tomorrow so we would have an
opportunity to file an appropriate petition
with the Court in regard to the transfer to
military custody." The district judge
denied this motion . . . .

According to al-Marri, asking the district
court for an injunction against transfer was
equivalent to filing a petition under §
2241; and if such a petition had been filed
while al-Marri was still in the Central
District of Illinois, that would have
[allowed the Illinois court to exercise
jurisdiction over such a petition] . . . .
But what actually happened, rather than what
could have happened, governs. Someone who
files a notice of appeal one day after the
time expired loses, even if the notice could
have been filed on time. Likewise with a
complaint filed one day after the statute of
limitations, or a summons attempted to be
served in hand one day after the potential
defendant left the jurisdiction. What did
happen is that, after arriving [in South
Carolina], al-Marri filed a petition in
Peoria, Illinois.

Id. at 712 (emphasis in original) (cleaned up).

Accordingly, the Seventh Circuit held, the habeas corpus case
could not go forward in Illinois.

*    *    *

In a nutshell, the New York court's opinion might be understood
as implicitly holding that this Court has jurisdiction over this
case only if the New York holding (that this case "could have
been" brought in New Jersey) necessarily requires the conclusion
that New Jersey has jurisdiction. It does not. Padilla and al-
Marri show that. Where a case "could have been" filed does not
answer the question of whether it should be treated as having
been filed there.

*    *    *

Where things stand:

20

The issue raised here by the Respondents' motion is whether this Court has jurisdiction over this case.

That issue was not resolved by the New York court.  <u>See</u> Part III.B.

And it does not work to argue that the New York court somehow implicitly held that this Court has jurisdiction.  That runs aground on <u>Padilla</u> and <u>al-Marri</u>.  <u>See</u> Part III.C.

All of this means that the law-of-the-case doctrine does not come online here --- because "[t]he law of the case operates only to limit reconsideration of the same issue."  <u>Fagan</u>, 22 F.3d at 1290.

     **D.**   <u>**Discretion**</u>

As noted, the law-of-the-case doctrine is discretionary.  <u>See</u> Part III.A.

And even assuming <u>arguendo</u> that the doctrine could be taken to apply here, based on some aspect of the language or implicit logic of the New York opinion, the Court would use its discretion not to invoke the doctrine in this case.[14]

---

[14]  In its next-to-last paragraph, the New York court's opinion said: "It will be up to the transferee court in New Jersey to consider not only [the] Petition, <u>over which it alone has jurisdiction</u>, but also the various motions that [the Petitioner] has filed to date in connection with his Petition[.]"  <u>Id</u>. at *14 (emphasis added).  But it is not clear these words were necessary to the New York court's transfer decision.  And while the words are in the opinion's "in sum" conclusion, the body of the opinion being summarized does not directly consider this Court's jurisdiction, for the reasons noted in Parts III.B and III.C above.  Moreover, especially because the Petitioner did not himself meaningfully argue in New York as to New Jersey jurisdiction, <u>see</u> Part III.B, this Court does not take the underscored words as resolving the question.  <u>See</u> <u>Fagan</u>, 22 F.3d at 1289-91 (opinion and case citation by the first judge "might imply" a holding on an issue taken up by the second --- but did not count as resolving "the same issue" because the holding was "ambiguous" as to whether it did, and "[t]he record [wa]s unclear" given that the parties had not directly briefed the issue); <u>see also</u> <u>Curtis</u>, 683 F.2d at 772 (law-of-the-case

This Part III.D explains why.

*    *    *

"[O]ne of the bases of the law of the case doctrine is to promote the finality and efficiency of the judicial process by protecting against the agitation of settled issues."  In re Celgene, 747 F. Supp. 3d at 761 (cleaned up).

When "[t]ime was invested, attention was focused, and a decision was made," id., the ball should stop bouncing.  An issue that "has been reached and resolved, and is in the rear-view mirror," id., should be left there.

But none of that is this case.

The relevant question --- does this Court now have jurisdiction? --- was not substantially addressed by the New York court.  This does not clear the "a decision was made" bar.  Id.  Moreover, the question of this Court's current jurisdiction can hardly be chalked up as being in the "rear-view mirror."  Id.  The Respondents made that clear in New York, saying that if the New York court opted to transfer this case to New Jersey, they would raise, here, the question of whether this Court has jurisdiction.  See Respondents' Memorandum of Law in Support of Their Motion to Dismiss or to Transfer the Case (ECF 31) at 10-11.

In short: if the Court were to assume arguendo that the law-of-the-case doctrine applies here because the New York court focused on "the same issue," Fagan, 22 F.3d at 1290, this Court would exercise its discretion to not apply the doctrine, because of the "unusual circumstances," see Hayman Cash Reg., 669 F.2d at 165, 169, 170, set out above, plus three more discussed just below.

---

doctrine not triggered, in spite of language in the first opinion that might "reflect[] full awareness" of a certain question, because the parties had not meaningfully briefed that issue).  On balance, the better understanding is that the New York court did what courts routinely do.  See Part III.B (collecting cases).  It transferred this case here on convenience-focused grounds, see Khalil, 2025 WL 849803, at *13-14, and left it for this Court in the first instance to rule on its jurisdiction.

First, the law-of-the-case doctrine aims to nip delay in the bud by preventing an issue that was considered before from being litigated again.  See id. at 167.

And more pointedly: "the place of trial [should not] remain unsettled for an unnecessarily long time to accommodate double judicial consideration."  Hoffman v. Blaski, 363 U.S. 335, 349 (1960) (Frankfurter, J., dissenting).  Cases need to get off the ground.

But these concerns do not loom large.  A "double" look is not happening here --- the New York court ruled on its jurisdiction, and this Court today rules on its own.  And there has been no "unnecessar[y]" delay.  The New York court ruled ten days after the habeas petition was filed.  This Court rules today on the second business day after oral argument.  (Oral argument itself went forward around 36 hours after the last brief as to jurisdiction was filed.)

Second, the law-of-the-case doctrine rests on the idea that it is for "the judicial department to say what the law is."  Marbury v. Madison, 5 U.S. (1 Cranch) 137, 177 (1803).  This "duty," id., falls to the judiciary as a whole ("the judicial department"), and there is no reason to think that one judge is somehow better at it than another.  The law-of-the-case doctrine reflects that idea --- by telling the second judge to respect the first, who has "sa[id] what the law is" for the case, and whose determination should generally stand.

But again, none of this is at stake here.  On the point of New Jersey's jurisdiction, there has not yet been a sustained statement of "what the law is."[15]

Third and finally, courts routinely hold that "judges are significantly less constrained by the law of the case doctrine with respect to jurisdictional questions."  Gilbert v. Ill. State Bd. of Educ., 591 F.3d 896, 903 (7th Cir. 2010) (cleaned up); accord, e.g., Phelps v. Alameda, 366 F.3d 722, 728 n.6 (9th Cir. 2004); cf. Pub. Int. Rsch. Grp. of N.J., Inc. v. Magnesium Elektron, Inc., 123 F.3d 111, 118-19 (3d Cir. 1997).  And that

---

[15]  Cf. Pennsylvania v. Brown, 373 F.2d 771, 784 (3d Cir. 1967) ("It is universally recognized that questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.") (cleaned up).

principle applies with special force here.  Especially on a potentially complex question, it does not make sense to allow either a very short statement or an implicit ruling to take the place of a direct and detailed analysis.

Jurisdiction is the "first and fundamental question," Great S. Fire Proof Hotel Co. v. Jones, 177 U.S. 449, 453 (1900), and it should be taken head-on and fully before it is determined whether this Court can assume power over this case.

### E.    Conclusion

The law-of-the-case doctrine does not apply.  This is because the issue here is whether this Court has jurisdiction, and that "same issue" was not taken up by the New York court, see Part III.B, not even implicitly.  See Part III.C.

In addition, even assuming arguendo there is some way in which that "same issue" was reached and resolved in New York, law of the case is a discretionary doctrine, see Part III.A. --- and the Court chooses not to apply it here.  See Part III.D.

## IV.  What Supplies Jurisdiction

The Petitioner's law-of-the-case argument aimed to cut things off at the pass, but it was not persuasive.  See Part III.

Come now then to the substance of the Respondents' motion to dismiss for lack of jurisdiction.

The argument the motion rests on is unpacked just below in Part IV.A, and in Part IV.B the Court explains why it does not work.

### A.    The Respondents' Argument

The Respondents' argument can be put this way:

A habeas court has jurisdiction over a case when it has two things at once.  First, it must have the habeas petition.  And second, it must have, in its district, the habeas petitioner. See Motion to Dismiss at 1; cf. Padilla, 542 U.S. at 435, 437.

The New York court sent the Petition to New Jersey on March 19. See Khalil, 2025 WL 849803, at *14.  But by the time the Petition arrived in New Jersey, the Petitioner was gone.  He was in Louisiana.

24

At no moment, then, were the Petition and the Petitioner together in the same place.  When the Petitioner was here, the Court lacked the Petition; and now that the Court has the Petition, the Petitioner is elsewhere.  The Petition and the Petitioner missed each other; and so, the argument goes, there has never been jurisdiction in this Court.

Therefore, it makes no difference that the New York court moved the case here on March 19 under Section 1406(a) and Section 1404(a), because the case "could have been" or "might have been" brought here back on March 9, when the case was first filed and the Petitioner was physically in New Jersey.

Why does the transfer make no difference?

Jurisdiction is missing because the Petition and the Petitioner were never here together, as the Supreme Court in Padilla required.  And the transfer statutes do not purport to provide the missing jurisdiction.  See Motion to Dismiss at 1, 5, 9-10.

On the Respondents' argument, the transfer statutes are like conveyor belts, smoothing the way for cases to move from one district to another.

But they are not like time machines.  They do not allow a Petition that arrived in New Jersey on March 19 to be treated as if it had arrived in New Jersey on March 9 at 4:40am --- the moment it was filed in New York, and also a moment when the Petitioner was here in New Jersey.  And unless the Petition can be somehow backdated and thought of as having been in New Jersey on March 9 when the Petitioner was last here, there is no moment when both the Petition and the Petitioner were here together in New Jersey.  Therefore, there would be no habeas jurisdiction in the state.

   **B.   Section 1631**

The problem with the Respondents' argument as set out above is this: it does not reckon with 28 U.S.C. § 1631.

That statute dates from 1982, and it is titled "Transfer to cure want of jurisdiction."  Per Section 1631:

> Whenever a civil action is filed in a court
> . . . and that court finds that there is a
> want of jurisdiction, the court shall, if it
> is in the interest of justice, transfer such

> action . . . to any other such court . . .
> in which the action . . . could have been
> brought at the time it was filed or noticed,
> and the action . . . <u>shall</u> <u>proceed</u> <u>as</u> <u>if</u> it
> had been filed in . . . the court to which
> it is transferred on the date upon which it
> was actually filed in . . . the court from
> which it is transferred.

28 U.S.C. § 1631 (emphasis added).

The statute is a command from Congress to the courts. Its language is clear. <u>See</u> <u>Jimenez</u> v. <u>Quarterman</u>, 555 U.S. 113, 118 (2009) ("[W]hen the statutory language is plain, we must enforce it according to its terms."); <u>accord</u> <u>King</u> v. <u>Burwell</u>, 576 U.S. 473, 474 (2015); <u>Dodd</u> v. <u>United States</u>, 545 U.S. 353, 359 (2005).

It tells a court that receives a transferred case (as this Court did) that it must treat the case ("<u>shall</u> proceed") "as if it had been filed in . . . the court to which it is transferred" (New Jersey) at the time it was first filed in the transferor court (New York).

In other words, when Section 1631 is in play, it does indeed work as a kind of time machine, in a way that Section 1404(a) and Section 1406(a) do not purport to.

If Section 1631 applies, its import for this case is unmissable:

The Petition arrived in New Jersey on March 19. But this Court, per Section 1631, "shall proceed" as if the Petition got here when it was filed in New York --- March 9 at 4:40am. At that moment, the Petitioner was in New Jersey --- so there is no missing piece of the jurisdictional puzzle. Under Section 1631, the Petition counts as having been in New Jersey at the same moment the Petitioner was here.

The key questions, then, are these: does Section 1631 apply to this case, and does it have the effect sketched out above? Yes and yes, the Court concludes. The sections that follow explain why.

## 1.   <u>The Court Can Look to Section 1631</u>

In transferring this case, the New York court relied on Section 1404(a) and Section 1406(a), not Section 1631.  <u>See</u> <u>Khalil</u>, 2025 WL 849803, at *12-13.

Does this mean this Court should not rely on Section 1631?

No.  In <u>Xu</u> v. <u>DHS/ICE Office of Chief Counsel</u>, 2024 WL 2185060 (3d Cir. May 15, 2024), for example, the Third Circuit preserved the timeliness of a lawsuit by "deem[ing]" it transferred under Section 1631 --- even though the district court had not used that statute, but rather had dismissed the case.  <u>See</u> <u>id</u>. at *1.

And before that, on another occasion, the Third Circuit had come to essentially the same conclusion --- that a transferee court can invoke Section 1631 even though the transferor court did not.  <u>See</u> <u>Martinez-Nieto</u> v. <u>Att'y Gen. of U.S.</u>, 805 F. App'x 131, 135 (3d Cir. 2020).

And every circuit court to have decided the issue has landed on that same spot, too.  <u>See</u> <u>Franco</u> v. <u>Mabe Trucking Co., Inc.</u>, 3 F.4th 788, 796 (5th Cir. 2021); <u>Kolek</u> v. <u>Engen</u>, 869 F.2d 1281, 1284 (9th Cir. 1989);[16] <u>Ross</u> v. <u>Colo. Outward Bound Sch., Inc.</u>, 822 F.2d 1524, 1526-27 (10th Cir. 1987); <u>In re Teles AG Informationstechnologien</u>, 747 F.3d 1357, 1361 (Fed. Cir. 2014); <u>see</u> <u>also</u> <u>Ctr. for Nuclear Resp., Inc.</u> v. <u>U.S. Nuclear Regul. Comm'n</u>, 781 F.2d 935, 944-45 (D.C. Cir. 1986) (R.B. Ginsburg, J., dissenting).

In short: the Court can, and does,[17] look to Section 1631 here; the fact the New York court did not invoke it as a basis for

---

[16]   <u>Accord</u> <u>Rodriguez-Roman</u> v. <u>INS</u>, 98 F.3d 416, 423-24 (9th Cir. 1996); <u>In re McCauley</u>, 814 F.2d 1350, 1352 (9th Cir. 1987).

[17]   The Fifth Circuit has explained that Section 1631 --- which says a court "shall" transfer if certain requirements are met --- is sometimes mandatory.  <u>See</u> <u>Franco</u>, 3 F.4th at 796.  And the statute includes a similarly mandatory directive from Congress to the <u>transferee</u> court.  That court "<u>shall</u> proceed as if [the case] had been filed in . . . the court to which it is transferred[.]"  28 U.S.C. § 1631 (emphasis added).

transferring this case does not matter, as every circuit to consider the question has suggested.[18]

### 2.    Section 1631 Applies to Habeas Petitions

Per the section just above, the Court can look to Section 1631 --- but does it apply in habeas cases like this one?

Yes.  Section 1631 applies to any "civil action" filed in a district court, see 28 U.S.C. § 1631, and a habeas proceeding is a civil action.  See, e.g., Mayle v. Felix, 545 U.S. 644, 654 n.4 (2005).

In accord with this, the Third Circuit has repeatedly recognized that Section 1631 applies to habeas petitions.  See, e.g., Robinson v. Johnson, 313 F.3d 128, 139 (3d Cir. 2002) (stating that a district court may transfer a habeas petition under § 1631); United States v. Vidal, 647 F. App'x 59, 60 (3d Cir. 2016) (same); Foy v. Super-Rich Members of Illuminati, 622 F. App'x 102, 103 (3d Cir. 2015) (same); Harvey v. Maiorana, 518 F. App'x 82, 83 (3d Cir. 2013) (same).

And so have other courts of appeals across the Nation.  See, e.g., Chappell v. Colorado, 2024 WL 2973701, at *2 n.5 (10th Cir. June 13, 2024); Gallo-Alvarez v. Ashcroft, 266 F.3d 1123,

---

[18]  The Court decides the issue with the benefit of the parties' views, though to a very limited extent.  The New York court ordered briefing on various statutes, including Section 1631, see ECF 63, and the parties provided it.  See ECF 70-71.  And in his brief to this Court, the Petitioner notes (lightly) that transfer under Section 1631 could have been appropriate.  See Opposition Brief at 11 n.9.  Note that had the Petitioner not invoked Section 1631 in any way at all, this Court could have considered it sua sponte.  See Danziger & De Llano, LLP v. Morgan Verkamp LLC, 948 F.3d 124, 132 (3d Cir. 2020) (a district court "may transfer a case at the parties' request or sua sponte" under Section 1631).  What position to take is for the litigants under the party-presentation principle; but saying what the law is --- that is for the Court, and can therefore be raised sua sponte.  See In re Celgene Corp., 747 F. Supp. 3d at 760 n.17.  Indeed, not bringing to bear Section 1631 would ignore Congress' mandatory directive to transferee courts, see footnote 17, as to how they "shall proceed."  This Court must hew to Congress' directive.  Cf. Amy Coney Barrett, Substantive Canons and Faithful Agency, 90 B.U. L. Rev. 109, 112 (2010).

1127-28 (9th Cir. 2001); <u>Phillips</u> v. <u>Seiter</u>, 173 F.3d 609, 610 (7th Cir. 1999).

### 3.    Section 1631 Applies Here

Section 1631 applies to habeas cases in general, <u>see</u> Part IV.B.2 --- but does it apply to <u>this</u> habeas case in particular?

It does.  The statute's effect on a transferee court is mandatory, <u>see</u> footnote 17, but only in two circumstances. <u>See</u> <u>Franco</u>, 3 F.4th at 796.  First, when the transferor court "finds that there is a want of jurisdiction." 28 U.S.C. § 1631.  And second, when transfer to another court is "in the interest of justice."  <u>Id</u>.

Here, each box was checked.  The New York court (the transferor court) determined that there was "a want of jurisdiction."  <u>See</u> <u>Khalil</u>, 2025 WL 849803, at *14.  And it held that transfer was in the interest of justice.  <u>See id</u>.[19]

### 4.    Section 1631 Covers Personal Jurisdiction

To this point, the Court has established that it can look to Section 1631, even though the New York court did not invoke it as a basis for transfer, <u>see</u> Part IV.B.1 --- and that Section 1631 applies to habeas petitions in general, <u>see</u> Part IV.B.2, and to this one in particular.  <u>See</u> Part IV.B.3.

Section 1631 is in play.  What then does it do?

The words of the statute make clear that it cures jurisdictional defects.  It tells the transferee court that it "shall" treat the case as having been brought there, in the transferee court, at the moment it was first initiated in the transferor court.

---

[19]  Had the New York court not made its own "interest of justice" determination, it is possible that this Court might have been called on to assess the question, as part of determining whether Section 1631 applies.  <u>Cf</u>. <u>Xu</u>, 2024 WL 2185060, at *1 & n.1 (determining that a Section 1631 transfer would be "in the interest of justice" where the district court had dismissed the complaint altogether); <u>Martinez-Nieto</u>, 805 F. App'x at 135 (similar).  But this is irrelevant for now, because the New York court issued its own interest-of-justice ruling.

But what <u>kinds</u> of jurisdictional defects can be cured by Section 1631?

Subject-matter defects are irrelevant here.  <u>See</u> footnote 12.

Does the statute cure the sort of personal jurisdiction issues that are on the table here?

A leading treatise has suggested that Section 1631 focuses <u>only</u> on subject-matter jurisdiction cures.  <u>See</u> <u>Federal Practice and Procedure</u> ¶ 3842.

But this is not the better view.

To see why, start with the text --- and end with it.

"If the text be clear and distinct, no restriction upon its plain and obvious import ought to be admitted, unless the inference be irresistible."  <u>Martin</u> v. <u>Hunter's Lessee</u>, 14 U.S. 304, 338-39 (1816); <u>see</u> <u>Conn. Nat'l Bank</u> v. <u>Germain</u>, 503 U.S. 249, 253-54 (1992) (collecting cases).

Section 1631 says it can cure "a want of jurisdiction."  Had Congress wished, it could have said, for instance, that the statute will cure "a want of subject-matter jurisdiction."  But it did not, and the Court interprets the words as they are.  The Court may not add a "restriction," <u>Martin</u>, 14 U.S. at 339, and reading in "subject-matter" as a limit on "jurisdiction" would do just that.

The Fifth Circuit has recently made this point, noting that Congress' choice of an open-ended umbrella term in Section 1631 (jurisdiction) means that the term cannot be pared back to remove some of what it ordinarily encompasses (like personal jurisdiction).  <u>See</u> <u>Franco</u>, 3 F.4th at 793.

This makes sense.  "Jurisdiction" may be "a verbal coat of too many colors."  <u>United States</u> v. <u>L. A. Tucker Truck Lines, Inc.</u>, 344 U.S. 33, 39 (1952) (Frankfurter, J., dissenting).  But that is the term Congress chose.  And it will not do for a court to see itself as tidying up Congress' work after the fact, by removing some here and a bit there, on the thought that doing so provides more coherence.

Moreover, the Fifth Circuit confirmed its reading by looking to a present-day dictionary, which defines "jurisdiction" as referencing <u>both</u> the personal and subject-matter sorts.  <u>See</u> <u>Franco</u>, 3 F.4th at 792; <u>cf</u>. <u>Kontrick</u> v. <u>Ryan</u>, 540 U.S. 443, 455

(2004) (suggesting that "the label 'jurisdictional' . . . delineat[es] the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) falling within a court's adjudicatory authority").

To be sure, the Supreme Court routinely directs courts to look to the contemporary meaning of statutory text, and that often involves a look to time-of-enactment dictionaries.  See Sandifer v. U.S. Steel Corp., 571 U.S. 220, 227–28 (2014).

But "jurisdiction" meant roughly the same thing in 1982, when Section 1631 became law.  Shortly before the statute's enactment, a leading legal dictionary defined "jurisdiction" as "a term of large and comprehensive import," generally sweeping in "the authority by which courts and judicial officers take cognizance of and decide cases."  Jurisdiction, Black's Law Dictionary (5th ed. 1979).  The same dictionary defined "want of jurisdiction," the fuller phrase in Section 1631, as a "[l]ack of jurisdiction over person or subject matter."  Want of Jurisdiction, Black's Law Dictionary (5th ed. 1979) (emphasis added).

Given the clear meaning of "jurisdiction," there is no textual reason to think Congress wanted Section 1631 to reach only one sort of jurisdiction.

Congress' choice not to use the words "subject-matter jurisdiction" in Section 1631 is especially telling given that it has repeatedly used that language elsewhere in Title 28.  See Franco, 3 F.4th at 792-93 (citing, for example, 28 U.S.C. § 1390(a)) ("The term 'venue' refers to the geographic specification of the proper court or courts for the litigation of a civil action that is within the subject-matter jurisdiction of the district courts in general.") (emphasis added).

And when legislators could have, but did not, adopt "obvious alternative" language, "the natural implication is that they did not intend" the alternative, and the Court cannot revisit that choice.  Lozano v. Montoya Alvarez, 572 U.S. 1, 16 (2014).

In short: the text of Section 1631 is clear, and underscores that the statute works to cure all sorts of jurisdictional defects --- the kind at issue here (related to personal

jurisdiction) and also those that have no bearing here (related to subject-matter jurisdiction).[20]

*    *    *

This conclusion reflects the clear judicial consensus.

As alluded to above, the Fifth Circuit has held "that the term 'jurisdiction' in Section 1631 encompasses both personal and subject-matter jurisdiction." Franco, 3 F.4th at 794.

The First, Sixth, and Seventh Circuits have said the same. See Fed. Home Loan Bank of Bos. v. Moody's Corp., 821 F.3d 102, 114 (1st Cir. 2016), abrogated on other grounds by Lightfoot v. Cendant Mortg. Corp., 580 U.S. 82 (2017); Roman v. Ashcroft, 340 F.3d 314, 328 (6th Cir. 2003); North v. Ubiquity, Inc., 72 F.4th 221, 227 (7th Cir. 2023).

And "[t]he Ninth, Tenth, and Eleventh Circuits have implicitly reached the same conclusion by either applying § 1631 to a transfer to cure a defect in personal jurisdiction, directing a district court to consider utilizing the provision to rectify a lack of personal jurisdiction, or approving such a transfer after it occurred." Franco, 3 F.4th at 794 (citing Gray & Co. v. Firstenberg Mach. Co., 913 F.2d 758, 761–62 (9th Cir. 1990); Ross, 822 F.2d at 1527–28)); see United States v. Kinsey, 393 F. App'x 663, 665 (11th Cir. 2010); accord Okongwu v. Reno, 229 F.3d 1327, 1331 & n.3 (11th Cir. 2000).

And though the Third and Eighth Circuits have not answered this question directly, they have said in dicta that a transfer under Section 1631 can cure a lack of personal jurisdiction. See Island Insteel Sys., Inc. v. Waters, 296 F.3d 200, 218 n.9 (3d Cir. 2002); Johnson v. Woodcock, 444 F.3d 953, 954 n.2 (8th Cir. 2006); accord Chavez v. Dole Food Co., Inc., 836 F.3d 205, 224 (3d Cir. 2016) (noting that the proper transfer statute was "arguably" Section 1631 in a case where personal jurisdiction

---

[20]  The Second Circuit has said that "the legislative history of section 1631 provides some reason to believe that this section authorizes transfers only to cure lack of subject matter jurisdiction." SongByrd, Inc. v. Est. of Grossman, 206 F.3d 172, 179 n.9 (2d Cir. 2000). But because the text is clear, the legislative history is out of bounds. See, e.g., Bostock v. Clayton Cnty., 590 U.S. 644, 674 (2020) ("[L]egislative history can never defeat unambiguous statutory text[.]"); accord Nat'l Ass'n of Mfrs. v. Dep't of Def., 583 U.S. 109, 132 n.9 (2018).

was lacking); <u>Tripati</u> v. <u>Wexford Health Sources Inc.</u>, 2022 WL 17690156, at \*2 n.4 (3d Cir. Dec. 15, 2022) (similar); <u>Danziger</u>, 948 F.3d at 132 (calling Section 1631 the "relevant statute" regarding transfer where district court lacked personal jurisdiction); <u>D'Jamoos ex rel. Est. of Weingeroff</u> v. <u>Pilatus Aircraft Ltd.</u>, 566 F.3d 94, 109-11 (3d Cir. 2009) (remanding to the district court to consider whether transfer was appropriate under Section 1631 when it lacked personal jurisdiction over defendant).[21]

\*    \*    \*

The Court holds: Section 1631 can cure a personal-jurisdiction defect of the kind at issue here, and not just subject-matter jurisdiction defects.

### 5.    <u>What Section 1631 Means Here</u>

The previous sections, <u>see</u> Parts IV.B.1 to IV.B.4, established that the Court can look to Section 1631 in this case and use it to cure difficulties as to personal jurisdiction.

How would that work here?  To see the answer, start by looking again at the statutory language, and filling in some of the facts of this case.

> Whenever a civil action [here, this habeas case] is filed in a court [the New York court] . . . and that court finds that there is a want of jurisdiction [as it did here], the court shall, if it is in the interest of justice [as it found], transfer such action . . . to any other such court [this Court] . . . in which the action . . . could have been brought . . . , and the action . . . <u>shall proceed as if</u> it had been filed in . . . the court to which it is transferred on the date upon which it was actually filed in . . . the court from which it is transferred [that is, March 9, 2025, at 4:40am].

---

[21]  The Fourth Circuit has not decided the issue.  <u>See</u> <u>In re Carefirst of Md., Inc.</u>, 305 F.3d 253, 257 n.2 (4th Cir. 2002).

28 U.S.C. § 1631.

Bottom line: Section 1631 means that the Petition here is treated as if it was backdated --- and in particular, as if it was filed on March 9.

Various Third Circuit cases back up this reading.  Consider some below.

### a) <u>Miller</u>

In <u>Miller</u> v. <u>United States</u>, 753 F.2d 270 (3d Cir. 1985), the petitioner challenged his discharge from the Army before the Third Circuit and the Federal Circuit.  Later, he petitioned the Third Circuit for fees incurred at the Federal Circuit.  <u>See</u> <u>id</u>. at 272.

The Third Circuit held that it lacked jurisdiction over the claim for Federal Circuit fees.  But by then, the deadline to file for fees in the proper court (the Federal Circuit) had passed.  <u>See</u> <u>id</u>. at 273, 276.

But the Third Circuit recognized that the Federal Circuit <u>would</u> have had jurisdiction over the fee petition "had it been filed as an original petition with that court."  <u>Id</u>. at 276. Backdating jurisdiction to the time of the original filing, the Third Circuit sent the petition to the Federal Circuit "in the interest of justice."  <u>Id</u>.

### b) <u>Martinez-Nieto</u>

A newer Third Circuit case shares the same holding.  In <u>Martinez-Nieto</u> v. <u>Attorney General of United States</u>, 805 F. App'x 131 (3d Cir. 2020), a person petitioned the Third Circuit to review a decision of the Board of Immigration Appeals.  <u>See</u> <u>id</u>. at 133–34.  He filed his petition on the last possible day --- and, mistakenly, in the district court instead of the court of appeals.  <u>See</u> <u>id</u>. at 135.

The Third Circuit explained that the two criteria of Section 1631 were met: the district court lacked jurisdiction, and a transfer would serve the interest of justice.  <u>See</u> <u>id</u>. at 135. It therefore assumed jurisdiction over the otherwise time-barred petition, since it "would have been able to exercise jurisdiction on the date that the petition was filed in the District Court."  <u>Id</u>.

Like Miller, Martinez-Nieto parallels the facts here.  A petitioner filed his action in a court that lacked jurisdiction. By the time he sought to fix his error, the right court could no longer exercise jurisdiction because of a procedural hurdle.  A transfer "in the interest of justice" cured this problem by backdating jurisdiction in the receiving court to the time at which the petition was originally filed.

### c)    Other Cases

Miller and Martinez-Nieto are no outliers.

Before, after, in between them, Third Circuit cases have pointed in the same direction: Section 1631 vests a court with precisely the jurisdiction it would have had at the time of the original case's filing.  See Xu, 2024 WL 2185060, at *1; Forkpa-bio v. Att'y Gen. of U.S., 296 F. App'x 239, 243 n.4 (3d Cir. 2008); Mejia-Juarez v. Att'y Gen. of U.S., 287 F. App'x 204, 205 n.1 (3d Cir. 2008); Keller v. Petsock, 849 F.2d 839, 843 (3d Cir. 1988); cf. Monteiro v. Att'y Gen. of U.S., 261 F. App'x 368, 369 (3d Cir. 2008); Lawal v. Ashcroft, 89 F. App'x 774, 776 (3d Cir. 2004); Campbell v. Off. of Pers. Mgmt., 694 F.2d 305, 309 n.6 (3d Cir. 1982).

## V.    Section 1631 and Two Further Issues

The analysis set out in Part IV establishes that this case, filed in New York on March 9 at 4:40am, must be treated as if it had been filed in New Jersey on March 9 at 4:40am --- under the authority of Section 1631.

This establishes that this Court has jurisdiction.

After all, the Petitioner was in custody in New Jersey on March 9.  The Petition must be treated as if it was filed here in New Jersey at that same moment.  And per the Supreme Court in Padilla: that adds up to jurisdiction.  See Padilla, 542 U.S. at 447 (so holding); see generally Part II.

But there are two complexities.

The first: what of the fact that the Petitioner, here in New Jersey when the Petition was filed, is now in Louisiana? Jurisdiction may well have been proper in New Jersey on March 9. But is jurisdiction still proper today, now that the Petitioner is no longer in New Jersey?

The Court's conclusion: yes, for the reasons set out in Part VI.

The second issue: what of the fact that the Petitioner has not named as a respondent either the warden of the Louisiana facility (where he is now in custody) or the warden of the facility in New Jersey (where he was in custody while here)? That is generally required.  See Anariba, 17 F.4th at 444 (holding that a habeas petition that challenges ICE custody must generally name as the respondent the warden of the facility where the person is held).

Jurisdiction might well have been proper in New Jersey on March 9.  But is jurisdiction still proper given that he has not sued the relevant warden?

The Court's conclusion: again, yes, for the reasons laid out in Part VII.

Take all this up now, in the next two Parts.

## VI.  __The Endo Rule__

As noted just above, see Part V, this Court's jurisdiction is not undone because the Petitioner is no longer in New Jersey, having been moved to Louisiana after the Petition was filed.

The basis for this conclusion is a rule --- call it "the Endo Rule" --- that a habeas court that otherwise has jurisdiction over a case does not lose that jurisdiction just because the habeas petitioner has been moved out of the district.

Is that rule good law?  This Part shows that it is.

The Court moves through the background quickly --- describing the key Supreme Court decision in this area and the two competing understandings of it, only one of which supports the referenced Endo Rule.  See Part VI.A.

From there, the Court explains that any debate that there once may have been is now over.  The Endo Rule is now the law.  See Part VI.B.

And under the Endo Rule, this Court --- which otherwise has jurisdiction, see Part IV --- does not lose that jurisdiction because the Petitioner was transferred from New Jersey to Louisiana.

A. __Background__

Start with the key Supreme Circuit case, <u>Ex parte Endo</u>, 323 U.S. 283 (1944).

Mitsuye Endo, an American citizen, was removed from her home and detained in a California "relocation center," along with thousands of other Japanese-Americans.  <u>See</u> <u>id</u>. at 284-85, 288.

While confined at the "center," she filed a habeas petition in a California federal court.  <u>See</u> <u>id</u>. at 285.

The petition was denied, Endo appealed, and while the appeal was pending she was moved out of California and to a different facility, this one in Utah.  <u>See</u> <u>id</u>.

The case went to the Supreme Court, which held Endo should be released.  <u>See</u> <u>id</u>. at 304.  But how?  Could the California court issue a habeas corpus writ releasing Endo --- even though she had been moved out of California?

Yes, the Supreme Court held.  <u>See</u> <u>id</u>. at 307.

\*    \*    \*

How to understand the Supreme Court's <u>Endo</u> decision?

On some accounts, the decision was not about the California court's power after Endo was moved to Utah.  Rather, the decision was about whether the case had become moot because the people who were originally named as respondents in the habeas petition were no longer Endo's immediate custodians.

On this reading, the Supreme Court in <u>Endo</u> held no more and no less than this: the case before it was not moot.  <u>See</u> <u>id</u>. at 305.

On that interpretation, <u>Endo</u> defeats any argument that a case in which a habeas petitioner has been moved is not ripe for decision --- but it does not affirmatively supply a basis for the first court (the California court) to continue to exercise jurisdiction.

There is some language in <u>Endo</u> that supports a mootness-flavored reading. <u>See id</u>. And over the years, some courts have foregrounded the mootness/ripeness aspects of the decision.[22]

\*   \*   \*

But there is another interpretation of <u>Endo</u> --- one focused squarely on the idea that a court keeps power over a habeas case, even after the petitioner-detainee may have been transferred out of the court's territory.

That reading is true to the <u>Endo</u> Court's language. <u>See id</u>. at 306-07 (stating that the California federal court "acquired jurisdiction" when Endo filed her habeas petition, and kept the case because the objective of the habeas corpus statute "may be in no way impaired or defeated by the removal of the prisoner from the territorial jurisdiction of the District Court," and the habeas "decree of the court [can be] made effective if a respondent who has custody of the prisoner is within reach of the court's process even though the prisoner has been removed from the district since the suit was begun").

And that reading is in keeping with broader jurisdictional principles.

Diversity jurisdiction, for example, locks in at the time a case is filed --- and survives changing circumstances down the line.

That is true as to changes in the parties' citizenship. <u>See</u> <u>Louisville, N.A. & C.R.</u> v. <u>Louisville Tr. Co.</u>, 174 U.S. 552, 566 (1899) (so holding); <u>McCracken</u> v. <u>ConocoPhillips Co.</u>, 335 F. App'x 161, 162 (3d Cir. 2009) (same).

And it is also true as to changes in the amount in controversy. <u>See</u> <u>St. Paul Mercury Indem. Co.</u> v. <u>Red Cab Co.</u>, 303 U.S. 283,

---

[22]  <u>See</u>, <u>e.g.</u>, <u>Copley</u> v. <u>Keohane</u>, 150 F.3d 827, 829-30 (8th Cir. 1998); <u>Sharp</u> v. <u>Ciccone</u>, 360 F.2d 605, 606 (8th Cir. 1966); <u>Factor</u> v. <u>Fox</u>, 175 F.2d 626, 628-29 (6th Cir. 1949); <u>White</u> v. <u>Gilley</u>, 2023 WL 5987206, at *2-3 (E.D. Ky. Sept. 13, 2023); <u>Dailey</u> v. <u>Pullen</u>, 2023 WL 3456696, at *3 (D. Conn. May 15, 2023); <u>Parker</u> v. <u>Hazelwood</u>, 2019 WL 4261832, at *6 (D.N.H. Sept. 9, 2019); <u>Gonzalez</u> v. <u>Grondolsky</u>, 152 F. Supp. 3d 39, 44-45 (D. Mass. 2016); <u>Bowen</u> v. <u>Harris</u>, 224 F. Supp. 976, 977-78 (W.D. Mo. 1964).

289-90 (1938) (so holding); <u>Auto-Owners Ins. Co.</u> v. <u>Stevens &</u>
<u>Ricci Inc.</u>, 835 F.3d 388, 395-96 (3d Cir. 2016) (same).

Or take this example: jurisdiction over <u>in</u> <u>rem</u> civil forfeiture
and admiralty proceedings is generally determined by the
physical location of the "res," the thing, at the moment when a
case is initially filed and the res is seized.  <u>See</u> <u>Republic</u>
<u>Nat'l Bank of Mia.</u> v. <u>United States</u>, 506 U.S. 80, 84-85 (1992).

The res might later wind up leaving the physical jurisdiction of
a district court.  Maybe it is moved.  Or maybe it is sold off,
and the cash goes somewhere else.

What then for the court's jurisdiction?  The answer: the court
that initially had jurisdiction generally keeps it.  <u>See</u>
<u>Republic Nat'l Bank</u>, 506 U.S. at 84; <u>see</u> <u>also</u>, <u>e.g.</u>, <u>United</u>
<u>States</u> v. <u>Real Props. & Premises</u>, 521 F. App'x 379, 383 (6th
Cir. 2013) (applying <u>Republic Nat'l Bank</u> to retain
jurisdiction); <u>Vitol, S.A.</u> v. <u>Primerose Shipping Co. Ltd.</u>, 708
F.3d 527, 540-41 (4th Cir. 2013) (same, as to <u>quasi</u> <u>in</u> <u>rem</u>
proceedings); <u>Ventura Packers, Inc.</u> v. <u>F/V Jeanine Kathleen</u>, 424
F.3d 852, 860-61 (9th Cir. 2005) (<u>in</u> <u>rem</u>).[23]

---

[23]  This has essentially been the rule since the early days of
this Republic.  <u>See</u>, <u>e.g.</u>, <u>The Little Charles</u>, 26 F. Cas. 979,
982 (C.C.D. Va. 1818) (No. 15,612) (Marshall, C.J.) (in a case
regarding the seizure of a vessel, "[t]here must be seizure to
vest the jurisdiction.  But it is not believed that the
continuance of possession, is necessary to continue the
jurisdiction.  It is a general principle, that jurisdiction,
once vested, is not divested, although a state of things should
arrive in which original jurisdiction could not be exercised.");
<u>The Rio Grande</u>, 90 U.S. (23 Wall.) 458, 463 (1875) (similar).
Note that there are exceptions to the rule.  Jurisdiction, for
example, can be lost if a change in circumstances renders any
judgment "useless," because there is nothing left within the
court's jurisdiction to collect against.  <u>See</u> <u>Republic Nat'l</u>
<u>Bank</u>, 506 U.S. at 85-87; <u>see</u> <u>also</u> <u>Cmty. Bank of Lafourche</u> v.
<u>Lori Ann Vizier, Inc.</u>, 541 F. App'x 506, 513 (5th Cir. 2013);
<u>Eurasia Int'l, Ltd.</u> v. <u>Holman Shipping, Inc.</u>, 411 F.3d 578, 583-
84 (5th Cir. 2005); <u>Woodlands Ltd.</u> v. <u>Nationsbank, N.A.</u>, 164
F.3d 628, *5-6 (4th Cir. 1998); <u>United States</u> v. <u>One Parcel of</u>
<u>Real Estate at 3262 SW 141 Ave., Mia.</u>, 33 F.3d 1299, 1303-04
(11th Cir. 1994); <u>Newpark Shipbuilding & Repair, Inc.</u> v. <u>M/V</u>
<u>Trinton Brute</u>, 2 F.3d 572, 573 (5th Cir. 1993).

B.    **Consensus Understanding**

As alluded to just above, see Part VI.A, there has been a debate over the years as to how to most faithfully read Endo.

But that back and forth is now over.  The Supreme Court has made clear that Endo is not a mootness case but a jurisdictional one. Per the Court in Padilla:

> Endo stands for the important but limited
> proposition that when the Government moves a
> habeas petitioner after she properly files a
> petition naming her immediate custodian, the
> District Court retains jurisdiction and may
> direct the writ to any respondent within its
> jurisdiction who has legal authority to
> effectuate the prisoner's release.

Padilla, 542 U.S. at 441 (emphasis added).

That might have been dicta, but other cases' holdings point the same way.

Take, for example, Anariba v. Director Hudson County Correctional Center, 17 F.4th 434 (3d Cir. 2021).

There, a person detained in New Jersey filed a habeas petition. See id. at 436.  The petition was denied.  Transferred to a detention facility outside New Jersey, he made a new filing, which the Third Circuit took as a motion to reconsider the habeas ruling.  See id. at 439, 444.

Could the motion be taken up, even though the habeas petitioner was no longer in New Jersey?  Yes, the Third Circuit answered, see id. at 445-46 --- because like Padilla, it took Endo as supporting continued jurisdiction in a habeas court, even after the habeas petitioner was moved out of the relevant district. The Third Circuit cited Endo and Padilla.  See id.

And it noted:

> Our precedent likewise reflects an adherence
> to the general rule articulated in Endo,
> that the government's post-filing transfer
> of a § 2241 petitioner out of the court's
> territorial jurisdiction does not strip the
> court of jurisdiction over the petition.

40

Id. (citing Ex parte Catanzaro, 138 F.2d 100, 101 (3d Cir. 1943)).[24]

And from Catanzaro:

> [W]e do not believe that passing about of the body of a prisoner from one custodian to another after a writ of habeas corpus has been applied for can defeat the jurisdiction of the Court to grant or refuse the writ on the merits of the application.

138 F.2d at 101.

All of this is consistent with other Third Circuit cases.  See, e.g., Hoffman v. Warden Phila. FDC, 2022 WL 1564177, at *2 (3d Cir. May 18, 2022); McGee v. Martinez, 490 F. App'x 505, 506 (3d Cir. 2012); Brown v. Yates, 154 F. App'x 319, 320 (3d Cir. 2005).[25]

And the district courts of this Circuit have treated the matter as done and settled: a habeas court with jurisdiction does not lose it because the detainee has been moved out of the district. See, e.g., Summers v. FCI Loretto Warden, 2025 WL 72797, at *1 (W.D. Pa. Jan. 10, 2025); Saillant v. Hoover, 2020 WL 4924567, at *2 (M.D. Pa. Aug. 21, 2020); Guerrero Sanchez v. Sabol, 2019 WL 1977922, at *5 n.14 (M.D. Pa. May 3, 2019); Almahdi v. Rabsatt, 2015 WL 5567312, at *2 (D.N.J. Sept. 22, 2015); McGee

_____

[24]  See also Anariba, 17 F.4th at 448 ("Allowing a district court to retain jurisdiction for all post-filing proceedings . . . despite a detainee's transfer out of the territorial jurisdiction of the district court in which the § 2241 petition was filed, would minimize incentives for Government abuse of the already turbulent ICE transfer process.").

[25]  Other circuit courts take the same approach.  See Roberts v. LeJeune, 43 F.4th 695, 698 (7th Cir. 2022); Lennear v. Wilson, 937 F.3d 257, 263 n.1 (4th Cir. 2019); Pinson v. Bekebile, 604 F. App'x 649, 652-53 (10th Cir. 2015); White v. Lamanna, 42 F. App'x 670, 671 (6th Cir. 2002); Vasquez v. Reno, 233 F.3d 688, 695 (1st Cir. 2000); Francis v. Rison, 894 F.2d 353, 354 (9th Cir. 1990); Harris v. Ciccone, 417 F.2d 479, 480 n.1 (8th Cir. 1969); see also Stokes v. U.S. Parole Comm'n, 374 F.3d 1235, 1237-39 (D.C. Cir. 2004); Henderson v. INS, 157 F.3d 106, 125 (2nd Cir. 1998).

v. Martinez, 2011 WL 5599338, at *2 (M.D. Pa. Nov. 17, 2011); Dandridge v. Schultz, 2007 WL 4300846, at *8 n.3 (E.D. Pa. Dec. 6, 2007); Qiang v. Dist. Dir. for Immigr. Customs Enf't, 2006 WL 3762029, at *2 (M.D. Pa. Dec. 20, 2006); Parra v. U.S. Parole Comm'n, 2005 WL 8164431, at *2 n.3 (W.D. Pa. Dec. 13, 2005); Bah v. Wagner, 2005 WL 83259, at *1 (E.D. Pa. Jan. 13, 2005); Miller v. United States, 2004 WL 887420, at *1 (E.D. Pa. Apr. 23, 2004); Chavez-Rivas v. Olsen, 194 F. Supp. 2d 368, 371 (D.N.J. 2002); Caballero v. United States, 145 F. Supp. 2d 550, 558 (D.N.J. 2001); see also White v. Grace, 2005 WL 1309044, at *4 (M.D. Pa. June 1, 2005).

\*      \*      \*

Bottom line: the Endo Rule is the law --- and under that rule this Court retains the jurisdiction it had over this case, see Part IV, even though the Petitioner is now in Louisiana.

## VII. **The Immediate Custodian Rule**

To this point, the Court has determined that it properly acquired jurisdiction over this case because, under 28 U.S.C. § 1631, the Petition counts as if it was filed here at around 4:40am on March 9 --- when the Petitioner was in New Jersey. See Part IV.

And as set out just above, see Part VI, jurisdiction has stayed with the Court since March 9 --- even though later on March 9 the Petitioner was moved to Louisiana and remains there.

There is, though, one remaining issue.

As noted, see Part II and Part V, habeas petitions must name as a respondent the detainee's "immediate custodian." See generally Padilla, 542 U.S. at 435. For a person being detained in connection with an immigration matter, the immediate custodian is the warden of the detention center. See Anariba, 17 F.4th at 444.

The Petitioner did not name any warden.

That was no surprise --- at the time she put together a filing on his behalf, the Petitioner's lawyer thought he was in New

York.  It would not have made sense for her to name the warden of a New Jersey facility.[26]

Is this an issue?  As a practical matter, not always.

When a habeas case is filed in the wrong district and then sent to another, the petitioner often simply adds a proper respondent-warden in the new district --- and things are wrapped up that way.[27]

But that is not required.

A court does not have jurisdiction unless the proper immediate custodian is named as a respondent on the petition.  See Padilla, 542 U.S. at 441.  A respondent-custodian can choose to waive objections to personal jurisdiction.  See Dufur v. U.S. Parole Comm'n, 34 F.4th 1090, 1096–97 (D.C. Cir. 2022); Flynn v. Kansas, 299 F. App'x 809, 810 n.3 (10th Cir. 2008); Smith v. Idaho, 392 F.3d 350, 355-56 (9th Cir. 2004).  But he or she does not need to.

---

[26] Naming a New Jersey warden while confident that her client was in New York might have been in some tension with the lawyer's professional obligations.  See Fed. R. Civ. P. 11(b); cf. Moore's Federal Practice § 11.11.  And note that the law has long expected lawyers working on behalf of detainees to do the legwork needed to name the right custodian, even when doing so is very difficult.  See, e.g., Paul D. Halliday, Habeas Corpus: From England to Empire 43 (2010) (describing 17th- and 18th-century practice).

[27] For cases in which courts have gone down that route or a similar one, see, for example: Jackson v. Chapman, 589 F. App'x 490, 491 n.1 (11th Cir. 2014); Kordelski v. Jordan, 111 F. App'x 557, 558 n.* (10th Cir. 2004); Stanley v. Calif. Sup. Ct., 21 F.3d 359, 360 (9th Cir. 1994); West v. Louisiana, 478 F.2d 1026, 1029 (5th Cir. 1973); Medina v. People, 2020 WL 5217150, at *6 (C.D. Cal. July 28, 2020); Bradley v. U.S. Parole Comm'n, 2017 WL 2604267, at *1 n.2 (M.D. Pa. May 23, 2017); report and recommendation adopted by 2017 WL 2592403 (M.D. Pa. June 15, 2017); Forney v. Recktenwald, 2014 WL 4437552, at *1 (M.D. Pa. Sept. 9, 2014); Burns v. Weber, 2010 WL 276229, at *5 (D.N.J. Jan. 19, 2010); see also Bridges v. Chambers, 425 F.3d 1048, 1049 (7th Cir. 2005); Smith v. Idaho, 392 F.3d 350, 353 n.3 (9th Cir. 2004); Cruz-Aguilera v. INS, 245 F.3d 1070, 1073 n.2 (9th Cir. 2001).

That is in essence the tack the Respondents take here.

First, they argue that this Court lacks jurisdiction because the Petitioner's current immediate custodian (the warden of the Louisiana facility where he is held) is not named as a respondent.  See Motion to Dismiss at 6 (implying this argument); Transcript at 17:14-19, Khalil v. Joyce, No. 25-01963 (D.N.J. Mar. 28, 2025) ("March 28 Transcript").

And this might be a practical problem.

There are hard territorial limits on a habeas court's jurisdiction.  This Court's habeas power ends at the state line.  Out-of-state "long arm" jurisdiction is available in most other civil cases, but not in this one.  See Padilla, 542 U.S. at 444-45; see also Gonzalez v. Grondolsky, 152 F. Supp. 3d 39, 44 (D. Mass. 2016) (interpreting Padilla); Qiang, 2006 WL 3762029, at *2 (same); see generally Brian R. Means, Postconviction Remedies § 12:5 (2024) (describing Padilla).

So if the Louisiana warden must be named, the Court might not be able to reach him or her.

And second, the Respondents argue that even if the Petition were treated as having been filed on March 9, there is no jurisdiction here because a New Jersey warden was never named. See Motion to Dismiss Brief at 8 ("Because [the Petitioner's] original petition was improper, no court has yet had proper habeas jurisdiction over this matter."); March 28 Transcript at 8:25 to 9:12.

*    *    *

Neither of these arguments works.

The first argument, as to the Louisiana warden, runs aground on the Supreme Court's Endo Rule, see Part VI, for reasons explained below in Part VII.A.

The second argument, as to the New Jersey warden, makes for a closer question.  But it, too, does not work --- in light of the "unknown custodian" exception most commonly associated with Judge Bork's decision in Demjanjuk v. Meese, 784 F.2d 1114 (D.C. Cir. 1986).  This is explained in Part VII.B.

A. __The Louisiana Warden__

Recall that under the Endo Rule a court retains jurisdiction over a habeas petitioner even after the petitioner is moved out of the court's territory.  See Part VI.

But how can this work?

Assume that the court decides that the petitioner must be released.  The court then would be expected in the ordinary case to issue a writ to the petitioner's immediate custodian.  But the court does not have obvious direct power over the custodian.  After all, in the Endo situation the immediate custodian is by definition physically outside the court's jurisdiction.[28]

Something needs to give.  Either the Endo idea that the court keeps jurisdiction as the petitioner is moved about.  Or the idea that habeas writs can run only to the immediate custodian.

The Supreme Court's choice: to relax the immediate custodian rule.[29]  Per the Padilla Court:

> Endo stands for the . . . proposition that when the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release.

542 U.S. at 441.

---

[28]  "By definition" because Endo is about detainees who are moved outside a court's territory.  And immediate custodians are always physically with detainees.  See Padilla, 542 U.S. at 444 ("By definition, the immediate custodian and the prisoner reside in the same district.").  That is what makes them "immediate" custodians.  See Yi v. Maugans, 24 F.3d 500, 508 (3d Cir. 1994) ("[I]t is the warden that has day-to-day control over the prisoner and who can produce the actual body.").

[29]  In a somewhat analogous non-habeas context, courts have seen things differently --- and held that it is the retain-jurisdiction principle that might not be sustainable.  See footnote 23 (discussing the "useless judgment" rule).

Who has "legal authority"?  A senior supervisor of the immediate custodian.

For example, in the Endo case itself, the California court did not have power over Endo's Utah-based immediate custodian.  See 323 U.S. at 285.  But that did not matter, the Supreme Court explained.  The California court had jurisdiction over an up-the-chain supervisor of the immediate custodian, and the supervisor could tell the immediate custodian to release Endo. See id. at 304-05.

*    *    *

Come back now to this case.

Here, there was no need for the Petitioner to have named the Louisiana warden as a respondent.  This is because one of the warden's senior supervisors is named --- and that is what is needed under the Supreme Court's decisions in Padilla and Endo.

The senior supervisor-respondent is the Secretary of Homeland Security.  See footnote 4.  Her cabinet department includes ICE. See Clark v. Martinez, 543 U.S. 371, 375 (2005).  And ICE runs the facility where the Petition is currently detained.  See Joyce Declaration ¶¶ 18-19.

Moreover, as the Respondents concede, the Secretary "is within the Court's jurisdiction."  See Respondents' Letter (Mar. 28, 2025) (ECF 140).  Therefore, if it came to it, this Court could order the Secretary to direct the immediate custodian to release the Petitioner.

## B.    The New Jersey Warden

Come now to a final immediate custodian issue.

The Petition, as discussed above, was filed in New York on March 9, and must be treated as if it was filed in New Jersey at that moment.  See Part IV.B.  But the Petition said nothing about the Petitioner's then-custodian --- the warden of the New Jersey facility where he was then held.

That seems at first glance to run afoul of the immediate custodian rule.  After all, jurisdiction requires not only that the petitioner be in the district --- but also that his immediate custodian be named as a respondent on the petition.

See Padilla, 542 U.S. at 435, 442.  And here no New Jersey warden was named.[30]

The Court's concludes that, on the facts here, this is no bar to jurisdiction.

To explain why, the Court first sets out some relevant (and uncontested) facts, see Part VII.B.1, and then describes the unknown custodian exception to the immediate custodian rule.  See Part VII.B.2.  The Court then determines, see Part VII.B.3, that the exception applies to this case --- and excuses the Petitioner's failure to name a New Jersey warden.  See Part VII.B.3.

### 1.   Facts

Move now through some of the relevant facts.

The Petitioner, as previously noted, was arrested at around 8:30pm on March 8.  See Greer Declaration ¶ 4; Joyce Declaration ¶ 7.  The arrest took place in Manhattan.  See Joyce Declaration ¶ 7.

One of the arresting agents said to the Petitioner's wife that he was being taken to a particular and prominent local building. See Declaration of Noor Ramez Abdalla (ECF 55) ("Abdalla Declaration") ¶ 14; see also Greer Declaration ¶ 7.  The building is in Manhattan.

A lawyer for the Petitioner then "worked all night to draft a habeas petition."  Greer Declaration ¶ 9.  It was electronically filed at 4:40am, see id., in the federal court in Manhattan.

Why there?  Per the lawyer:

> At the time of filing the petition, we had
> every reason to believe that Mahmoud [the

---

[30]  The Endo Rule, as discussed just above in Part VI, is not relevant.  It is about a transfer (in this case, to Louisiana) after jurisdiction has attached --- not about whether jurisdiction properly attached in the first place.  It allows for loosening of the immediate custodian rule at Time 2, after a person has been moved.  See Part VI.A.  But it does not purport to say anything as to the immediate custodian rule for the earlier period, at Time 1.

> Petitioner] was detained in New York because
> of what the DHS agent told his wife and the
> ICE Online Detainee Locator System.
>
> I originally checked the ICE locator around
> 10 PM on Saturday, March 8th and Mahmoud was
> not in the system.  I checked again at 1:35
> AM on Sunday, March 9th and it said he was
> in custody in New York and to call the field
> office. I checked again at 4:29 AM on
> Sunday, March 9th and it said the same
> thing.  I checked again at 8:30 AM on
> Sunday, March 9th and Mahmoud was still
> listed as being detained in New York.

Id. ¶¶ 9-10.

In a nutshell: the Petitioner filed in Manhattan because
affirmatively-supplied information said he was there.  The
arresting agent pointed to Manhattan, and so did the online
"detainee locator" --- it "located" the Petitioner in New York,
both before and after the filing was made there.

But as has been discussed, the Petitioner was moved from
Manhattan to New Jersey during the early hours of March 9, about
80 minutes before the Manhattan petition was filed.  Compare
Joyce Declaration ¶ 14, with Greer Declaration ¶ 9.

Could the Petitioner have told his lawyer or someone else that
he had been moved to New Jersey?  The evidence on this point is
from the Petitioner, and has not been disputed:

> The moment I arrived [in New Jersey], I told
> the officers that I needed to call my
> attorney.  They told me to ask another guy
> at the facility.  I asked that guy, and he
> said I needed to wait until I was processed.

Khalil Declaration ¶ 9.

> Later, in the morning, I asked a female
> officer to allow me to call my attorney, and
> she told me, like the first guy, to wait
> until I was processed.

Id. ¶ 12.

Could someone have determined in real time that the Petitioner had been moved to New Jersey, such that the Petition, then being prepared, might have listed a New Jersey warden as a respondent?

Nothing in the record suggests that. And there is no suggestion that anyone connected with the Petitioner was sitting on their hands. The lawyer worked through the night on a habeas petition, and re-checked the "detainee locator" ten or so minutes before filing. See Greer Declaration ¶¶ 9-10.

Per the Petitioner's wife's declaration:

> I was unable to sleep that night, first working with Amy [the lawyer] to secure immigration counsel for Mahmoud and then trying to find a way to make contact with him. The lawyers relayed to me that he seemed to be in Manhattan throughout the night, according to an ICE locator. By the early morning, they had filed a lawsuit in federal court, with my consent.
>
> Within a few hours and still in the early morning on Sunday, the locator showed Mahmoud as being held at an immigration detention facility in Elizabeth, New Jersey. I immediately went there, desperate to see my husband. I attempted to see him twice and was told by employees at the facility that he was not there, and that I would not be able to see him. I waited outside of the facility for approximately two hours and was never able to see or be in contact with Mahmoud.

Abdalla Declaration ¶¶ 15-16.

Based on the undisputed evidence here, the Court finds that, as of the time she filed the petition on March 9, the Petitioner's lawyer had been affirmatively and persistently led to believe he was in Manhattan;[31] that she relied on that information; and that

---

[31]  The record here does not provide any obvious reason to conclude that the information supplied by the arresting agent, or posted on the website, was provided in bad faith or with an intent to deceive. But no definitive findings are necessary on this point. This is because the application of the unknown

in spite of her best efforts there was no realistic way for her to know that the Petitioner was, in fact, in New Jersey when she filed the Petition.

All of this leads, all but necessarily, to another finding: as of the time she filed the Petition, there was no real way for the Petitioner's lawyer to know that, at that moment, the Petitioner's immediate custodian was a New Jersey warden.  After all, there was no way for her to know he <u>was</u> in New Jersey.

## 2.    <u>The Unknown Custodian Exception</u>

Situations like the above are rare.  A lawyer for a person in custody can almost always name the detainee's immediate custodian.  But not always, and that is when the unknown custodian exception to the immediate custodian rule kicks in.

Take it up here.

\*    \*    \*

The unknown custodian exception is often associated with Judge Bork, who issued a relevant in-chambers opinion in <u>Demjanjuk</u> v. <u>Meese</u>, 784 F.2d 1114 (D.C. Cir. 1986).

In federal custody and soon to be extradited, the <u>Demjanjuk</u> petitioner applied for a habeas writ, but the United States declined to say where he was.  <u>See id.</u> at 1115-16.  What to do? How to satisfy the immediate custodian rule when there is no sense of where the detainee is (and therefore who his immediate custodian is)?

In these circumstances, Judge Bork held that the habeas petition before him could be assessed on the merits.  <u>See id.</u> at 1116. It was the more "[]practica[l]" solution, Judge Bork ruled.  <u>Id</u>. This even though it was at odds with the district of confinement rule, of which more soon, because it was anyone's guess whether the petitioner was in DC, where Judge Bork sat.  And this even though it was at odds with the immediate custodian rule, for the same reason.

Given that the immediate custodian was unknown, Judge Bork relaxed the immediate custodian rule --- and allowed the Attorney General to be named as the respondent on the habeas

custodian exception, as discussed below, does not turn on the presence of such factors.

petition, on the theory that the Attorney General was the ultimate supervisor of the immediate custodian --- whoever that custodian might turn out to be.  See id.

That, in a nutshell, is what the unknown custodian exception does.  It opens up an exception to the otherwise-applicable immediate custodian rule when, on the facts of a given case, the immediate custodian simply cannot be known.

*     *     *

Is this rule the law of the land?  The Supreme Court's Padilla opinion suggests the answer is yes.

In Padilla, Chief Justice Rehnquist wrote for five Justices. Two of those Justices, in a concurrence, proposed an exception to the immediate custodian rule.  See 542 U.S. at 454 (Kennedy, J., concurring).  The Chief Justice rejected this exception. "No exceptions to this rule, either recognized or proposed, apply here."  Id. at 435-36.  The "proposed" exception was clearly the one offered up by the two concurring Justices --- the Chief Justice had cited it.  See id. at 436.

But what were the "recognized" exceptions?  The Chief Justice's opinion suggests two, and each laid out in footnote 18 of the Padilla opinion.  That footnote reads in part:

> Demjanjuk v. Meese, 784 F.2d 1114 (C.A.D.C.1986), on which the dissent relies, is similarly unhelpful:  When, as in that case, a prisoner is held in an undisclosed location by an unknown custodian, it is impossible to apply the immediate custodian and district of confinement rules.  That is not the case here, where the identity of the immediate custodian and the location of the appropriate district court are clear.

542 U.S. at 450 n.18 (cleaned up).

And at another point in the opinion, the Chief Justice explained that, on the facts of the Padilla case itself, "the identity of the immediate custodian" was not "shrouded . . . in secrecy." Id. at 449 n.17.

All of this suggests that the Padilla majority took Judge Bork's unknown custodian exception as part of our law.

After all, as far as "proposed" and "recognized" exceptions went, the unknown custodian exception was on the "recognized" side of the line.  And the <u>Padilla</u> Court took the exception as a given, with the facts of the case to be measured against it (was the immediate custodian "shrouded . . . in secrecy"?).

\*   \*   \*

The United States has generally taken the same basic approach. Where the issue has come up around the country, it has argued that the unknown custodian exception does not match the facts of a particular case.  <u>See</u> Appellee's Brief at 25, <u>Remy</u> v. <u>Chadbourne</u>, 184 F. App'x 79 (2d Cir. 2006) (No. 05-0602), 2006 WL 6263982; Brief for John Ashcroft Attorney General of the United States at 33, <u>Filsaime</u> v. <u>Ashcroft</u>, 393 F.3d 315 (2d Cir. 2004) (No. 03-2221), 2004 WL 3525390, at \*33; Respondents' Reply Memorandum in Support of Motion to Dismiss Improper Respondents at 6 n.3, <u>Ali</u> v. <u>Obama</u>, 741 F. Supp. 2d 18 (D.D.C. 2010) (No. 10-1020), 2008 WL 8202651; Memorandum in Support of Motion to Dismiss, at 10, <u>Baez</u> v. <u>INS</u>, 2005 WL 3541030 (E.D. La. Oct. 25, 2005) (No. 03-1568), 2003 WL 25713262.

But it does not appear to have contended that the unknown custodian exception is in some sense itself incorrect as a matter of law.

\*   \*   \*

Lower court opinions have also treated the unknown custodian rule as a basic part of our law.

In <u>United States</u> v. <u>Moussaoui</u>, 382 F.3d 453 (4th Cir. 2004), for example, a defendant sought access to a trial witness held in military custody via a writ of habeas corpus <u>ad testificandum</u>, but the immediate custodian was unknown.  <u>See id</u>. at 465.

No matter, the Fourth Circuit held.  "[T]he immediate custodian [was] unknown.  Under such circumstances, the writ is properly served on the prisoner's ultimate custodian."  <u>Id</u>. (citing <u>Demjanjuk</u>, 784 F.2d at 1116).

The "ultimate custodian" in Judge Bork's case was the Attorney General who supervised all the federal prisons in which the habeas petitioner might have been held.  <u>See Demjanjuk</u>, 784 F.2d at 1116.  In <u>Moussaoui</u>, the "ultimate custodian" was the Secretary of Defense, who supervised all the Nation's troops,

some of whom were said to be holding the witness.  382 F.3d at 465.

Moussaoui does not stand alone.

In United States v. Paracha, 2006 WL 12768 (S.D.N.Y. Jan. 3, 2006), aff'd, 313 F. App'x 347 (2d Cir. 2008), the court came to the same conclusion on virtually the same facts.  Witnesses were said to be in the custody of the United States "in undisclosed locations abroad."  Id. at *5.  Could a habeas writ issue for their testimony?  Yes, the Court held, citing the unknown custodian exception: because "the immediate custodian is unknown, a writ may properly be served on the prisoner's ultimate custodian."  Id. at *6 (citing Demjanjuk and Moussaoui).  And so the writ went to the Secretary of Defense.  See id.

Another example.  In Ali v. Ashcroft, 2002 WL 35650202 (W.D. Wash. Dec. 10, 2002), a habeas class action named the Attorney General as respondent.  See id. at 3.  What about the immediate custodian rule?  Per the district court, this did not matter: "[a] nationwide habeas class with the Attorney General as respondent is appropriate when the location of the putative class members is unclear."  Id.

In dicta, the lower federal courts have consistently embraced the unknown custodian exception to the immediate custodian rule.  See, e.g., Vasquez, 233 F.3d at 696; Roman, 340 F.3d at 325; Aransevia v. McKelvy, 77 F. App'x 531 (D.C. Cir. 2003); Guerra v. Meese, 786 F.2d 414, 416 n.1 (D.C. Cir. 1986); Hamama v. Adducci, 2017 WL 2806144, at *2 (E.D. Mich. June 26, 2017); Heras-Quezada v. Terry, 2012 WL 13076586, at *2 (D.N.M. July 17, 2012), report and recommendation adopted by 2012 WL 13076297 (D.N.M. Sept. 10, 2012); Bailes v. Quinlan, 1988 WL 58914, at *1 n.3 (D.D.C. May 20, 1988); cf. Blackmon v. England, 323 F. Supp. 2d 1, 4 (D.D.C. 2004).

And a standard treatise has put it this way: "The 'immediate custodian' rule . . . is inapplicable . . . where the prisoner's current whereabouts are unknown."  Randy Hertz & James S. Liebman, 1 Federal Habeas Corpus Practice & Procedure § 10.1 (7th ed. 2015); accord Brian R. Means, Federal Habeas Manual § 1:93 (2024) ("[W]here the immediate custodian is unknown, the writ may be served on the prisoner's ultimate custodian.").

### 3.    <u>Applying the Unknown Custodian Exception</u>

The unknown custodian exception is an established part of federal law, <u>see</u> Part VII.B.2, and under it the immediate custodian rule can be set aside in "limited and special circumstances." <u>Demjanjuk</u>, 784 F.2d at 1116.

Which ones?  When the identity of the immediate custodian is virtually unknowable.

That was the case here.

The Petitioner's lawyer, the Court has found, was affirmatively led to believe that he was in New York --- and because no phone calls were allowed, the Petitioner could not undo the impression.  <u>See</u> Part VII.B.1.

What happens when the unknown custodian exception applies?  The Petitioner is permitted to name not his immediate custodian, as is normally required, but his "ultimate" custodian.  <u>See</u> <u>Demjanjuk</u>, 784 F.2d at 1116; <u>Moussaoui</u>, 382 F.3d at 465; <u>Paracha</u>, 2006 WL 12768, at *6.

And that is what the Petitioner did here.  His Petition, filed on March 9, named as a respondent the Secretary of the Department of Homeland Security.  She is the ultimate supervisor of any possible warden of a New Jersey detention facility.

All of this adds up the conclusion that the Respondents' New Jersey-focused immediate custodian argument is not persuasive. The Petitioner did not name as a respondent his immediate New Jersey custodian.  But he did not need to.  That custodian was not only unknown to the Petitioner's lawyer, but virtually unknowable to her.  And so the Petition could clear the bar by doing what it did --- naming the Petitioner's ultimate custodian, the Secretary of Homeland Security.

*    *    *

Take now three points related to the above conclusion, each rooted in a comparison of this case to <u>Demjanjuk</u>.

### a)    <u>"If Known"</u>

The first point: in some ways, this is an easier case for application of the unknown custodian exception than <u>Demjanjuk</u> --- given where this case is procedurally and where that one was.

To see the point, note that a federal habeas court exercises a package of powers. The "power to entertain a prisoner's request that the court direct a habeas writ to a custodian" is one of these powers. Lee Kovarsky, A Constitutional Theory of Habeas Power, 99 Va. L. Rev. 753, 757 (2013). Another power typically comes into play later, the "power to issue a habeas writ instructing a custodian to produce the body and justify detention." Id.; see also id. at 763-65 (describing habeas procedure at common law); Halliday, Habeas Corpus: From England to Empire at 39-63 (setting out, historically, the set of procedures that were bundled together in order "to produce the body").

Judge Bork used the unknown custodian rule through to the end of the case --- at the merits stage.

But this case is at a much earlier point. All that is in play for now is the table-setting question, the Court's "power to entertain a prisoner's request that the court direct a habeas writ to a custodian." Kovarsky, A Constitutional Theory of Habeas Power, 99 Va. L. Rev. at 757.

And at this earlier point in the litigation, there is more flexibility in terms of a petitioner naming the correct custodian.

The habeas statute, for example, is cleaved in two. Section 2243 covers the later stages of a habeas case, on merits/remedy. See 28 U.S.C. § 2243. Section 2242 covers the earliest stage --- what is essentially the pleading stage, where this case is now.

In turn, Section 2242 is more forgiving when it comes to naming precisely the right custodian. See 28 U.S.C. § 2242 (indicating that a habeas petition "shall allege . . . the name of the person who has custody over [the petitioner] . . . if known") (emphasis added); see also Nguyen v. Kissinger, 528 F.2d 1194, 1204 n.17 (9th Cir. 1975) (the section "requires the naming of the custodian 'if known,' seemingly contemplating the power of the district court to develop the fact if unknown"). Section 2243, which kicks in later, has no "if known" carve-out.

Judge Bork, as noted, applied the unknown custodian exception through to what was the last stage of the habeas proceeding. He ruled on the merits of the habeas petition before him, see

_Demjanjuk_, 784 F.2d at 1116–18, but even at that point no immediate custodian had been named.

It is a lighter lift than that to apply the unknown custodian exception to this case now --- at the <u>beginning</u> of the habeas process, when Congress has suggested (through the "if known" language) something of a different approach to unknown custodian issues. <u>Cf.</u> <u>Armentero</u> v. <u>INS</u>, 340 F.3d 1058, 1068 (9th Cir. 2003), <u>reh'g granted, opinion withdrawn</u>, 382 F.3d 1153 (9th Cir. 2004), <u>opinion after grant of reh'g</u>, 412 F.3d 1088 (9th Cir. 2005) ("[W]hile a petitioner's immediate physical custodian is typically a proper respondent . . . the statutory custodian requirement of 28 U.S.C. § 2241 is sufficiently flexible to permit the naming of respondents who are not immediate physical custodians if practicality, efficiency, and the interests of justice so demand.").[32]

### b)    <u>The District of Confinement Rule</u>

Turn now to another reason why it is more straightforward to apply the unknown custodian exception in this case than in _Demjanjuk_.

To see the point, first take a step back.

\*    \*    \*

The law often channels cases to particular courts based on fixed-in-advance criteria, like where an event took place or where a defendant lives. <u>See</u> <u>Daimler AG</u> v. <u>Bauman</u>, 571 U.S. 117, 128 (2014); <u>Atl. Marine Constr. Co.</u> v. <u>U.S. Dist. Ct. for the W. Dist. of Tex.</u>, 571 U.S. 49, 55-56 (2013).  Applying pre-baked rules of this sort has a number of effects, including paring back possible forum-shopping.

---

[32]  At a later stage in the proceedings here, would the unknown custodian exception continue to excuse not naming the New Jersey warden who apparently held the Petitioner as of March 9?  That question is for later.  But it also may never come up.  The Petitioner has sought permission to amend the Petition, <u>see</u> Opposition Brief at n.1, to add appropriate respondents now that the dust has settled, and it is clear where the Petitioner was on March 9 at 4:40am.  That request is hereby granted, and the Petition may be amended to add additional respondents, provided the amended petition is filed before 5:00pm on April 3.

Habeas law is no exception.  It too has rules that send certain cases to certain courts.  And limiting forum-shopping is also a key purpose of those rules.

The rules are reflected in Congress' 1867 amendments to the habeas statute, under which the district courts have power to grant habeas writs --- but only "within their respective jurisdictions."  28 U.S.C. § 2241(a).

Congress, per the Supreme Court, "thought [it] inconvenient, potentially embarrassing, certainly expensive and on the whole quite unnecessary to provide every judge anywhere with authority to issue the Great Writ on behalf of applicants far distantly removed from the courts whereon they sat."  Carbo v. United States, 364 U.S. 611, 617 (1961).

Judicial practice reflects this same concern, and courts have long held that a habeas writ cannot typically issue as to a person in custody outside the borders of the district in which the habeas court sits.  See, e.g., United States ex rel. Harrington v. Schlotfeldt, 136 F.2d 935, 940 (7th Cir. 1943); United States ex rel. Belardi v. Day, 50 F.2d 816, 817 (3d Cir. 1931); In re Boles, 48 F. 75, 75-76 (8th Cir. 1891); Ex parte Yee Hick Ho, 33 F.2d 360, 361 (N.D. Cal. 1929); Ex parte Gouyet, 175 F. 230, 233 (D. Mont. 1909); see also Carbo, 364 U.S. at 616 (describing an unreported decision in which Chief Justice Chase, riding circuit, "reject[ed] an application for the Great Writ from a prisoner on the ground that he was incarcerated outside his circuit").[33]

---

[33] This may sometimes have been the approach in pre-1867 cases, too.  See, e.g., In re Bickley, 3 F. Cas. 332, 333 (S.D.N.Y. 1865) (No. 1,387) (discussing "actual confinement" of the prisoner in the court's district).  As to a possible reason why, note that the 1867 amendments' reference to habeas courts' "respective jurisdiction" is often taken to mean the district courts' territorial jurisdiction.  See Padilla, 542 U.S. at 442-44; see also, e.g., Ex parte Kenyon, 14 F. Cas. 353, 354 (C.C.W.D. Ark. 1878) (No. 7,720).  But that may not have added quite so much.  Especially in the pre-"long arm" era, territorial limits on the jurisdiction of the federal courts were often thought to already exist, flowing from the fact that Congress in 1789 had opted to divide the Nation into distinct territorial districts.  (For an example of this approach, see Justice Washington's opinion in Ex parte Graham, 10 F. Cas. 911 (C.C.E.D. Pa. 1818) (No. 5,657).)  On this understanding,

In the mid-20th century, the Supreme Court began to refer to this approach in shorthand --- as the "district of confinement rule."  See Ahrens, 335 U.S. at 210 (Rutledge, J., dissenting) (using the term "district of confinement"); Carbo, 364 U.S. at 618 (same); Braden, 410 U.S. at 499 n.15 (same); see generally Padilla, 542 U.S. at 442 ("[T]he traditional rule has always been that the Great Writ is issuable only in the district of confinement.") (cleaned up).

The district of confinement rule is this: "for . . . habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement." Padilla, 542 U.S. at 443 (emphasis added).

But this line can be hard to hold.

Habeas is a remedy that runs to a detainee's custodian, on the theory that it is the custodian who can release the detainee if ordered to do so by a court.  See, e.g., id. at 435; Braden, 410 U.S. at 494-95; Wales v. Whitney, 114 U.S. 564, 574 (1885); see also 28 U.S.C. § 2243.

And that can fold complexity into the mix.

Sometimes, for example, a person might be detained in district A while his custodian is in both district A and district B.  This may be the case when the custodian is physically in district A but exercises power in both district A and district B.  Does this mean that the case can go forward in both the district of confinement (A) and also in one of the districts where the custodian is located (B)?  Does the background district of confinement rule get overridden or softened?[34]

Or take another example.

Think of a federal criminal prisoner, held in a prison in district A under the authority of the Attorney General, as in some sense all or virtually all federal criminal prisoners are. Can her habeas case go forward only in district A (because that

territorial limits on jurisdiction in habeas cases may have been taken as the background assumption --- confirmed and made more explicit in the 1867 statutory amendment, but not newly established by it.

[34]  The Third Circuit has suggested that the answer is no, the action goes forward only in A.  See Day, 50 F.2d at 817-18.

is her "district of confinement"), or can it go forward in any of the country's 94 judicial districts that she picks?  (The theory for going forward in any of the 94 districts would be that the Attorney General is legally present in each district, cf. Fed. R. Civ. P. 4(i)(2), and that, if ordered to do so by any district court, the Attorney General can as a practical matter direct the release of a person confined in district A.[35])

*    *    *

All of this points to habeas law's core challenge in this area: to prevent the district of confinement rule (habeas cases generally go forward only in the district where the petitioner is held) from being undermined by the fact that habeas cases must always run against a custodian (who may well be somewhere else, outside the district of confinement).

A critical part of the Supreme Court's approach to this issue has been to adopt the immediate custodian rule.

That rule tells habeas petitioners to name nearby officials (like the warden of a detention facility, see Padilla, 542 U.S. at 435, Yi v. Maugans, 24 F.3d 500, 507 (3d Cir. 1994)), and not far-off supervisors (like the warden's boss in another state or back in Washington).

> In habeas challenges to present physical
> confinement, . . . the district of
> confinement is synonymous with the district

---

[35]  If a habeas case can go forward anywhere a petitioner chooses, the forum-shopping would become severe.  Per Judge Easterbrook:

> National venue would mean that one
> idiosyncratic district or appellate court
> anywhere in the nation could insist that the
> entire federal government dance to its tune.
> Requiring prisoners to litigate where they
> are confined . . . not only distributes
> business among the district courts and
> circuits but also allows important issues to
> percolate through multiple circuits before
> the Supreme Court must review a disputed
> question.

al-Marri, 360 F.3d at 710.

> court that has territorial jurisdiction over
> the proper respondent.  This is because
> . . . the immediate custodian rule
> applies . . . .  By definition, the
> immediate custodian and the prisoner reside
> in the same district.

Padilla, 542 U.S. at 444 (cleaned up).

> Whenever a § 2241 habeas petitioner seeks to
> challenge his present physical custody
> within the United States, he should name his
> warden as respondent and file the petition
> in the district of confinement.
>
> This rule, derived from the terms of the
> habeas statute, serves the important purpose
> of preventing forum shopping by habeas
> petitioners.  Without it, a prisoner could
> name a high-level supervisory official as
> respondent and then sue that person wherever
> he is amenable to long-arm jurisdiction.
> The result would be rampant forum shopping,
> district courts with overlapping
> jurisdiction, and the very inconvenience,
> expense, and embarrassment Congress sought
> to avoid when it added the jurisdictional
> limitation 137 years ago.

Id. at 447 (cleaned up).

The immediate custodian rule, in short, checks all the boxes.

It tells habeas petitioners who to sue: the immediate custodian.
And zeroing in on the immediate custodian prevents any possible
end-run around the district of confinement rule --- because an
immediate custodian is always in the same district where the
petitioner is confined.

Put differently, the immediate custodian rule eases the possible
tension between (1) the overarching district of confinement rule
and (2) the idea that all habeas petitions must name a
custodian.

The reason is that, under the immediate custodian rule, these
two always point in the same direction.  Why?  Because the
district of confinement rule focuses on where a habeas

petitioner is.  And the immediate custodian rule focuses on a custodian who is always with the petitioner.  A person in custody and his immediate custodian are, "[b]y definition," <u>id</u>. at 444, always in the same place.

\*    \*    \*

Against the backdrop set out above, come back to <u>Demjanjuk</u> and then to this case.

In <u>Demjanjuk</u>, Judge Bork relaxed the immediate custodian rule because the custodian was unknown.  <u>See</u> Part VII.B.2.

But doing so in that case was an especially large leap.  This was because in <u>Demjanjuk</u>, relaxing the immediate custodian rule (via the unknown custodian exception) potentially threatened to undermine one of the key reasons the immediate custodian rule is there in the first place --- to prevent habeas petitions from going forward in a place that is <u>not</u> the district of confinement.

After all, the <u>Demjanjuk</u> <u>petition</u> was filed before Judge Bork in Washington, DC.  But the <u>Demjanjuk</u> <u>petitioner</u> may not have been confined there.  Where he was being held was unknown to the court.  <u>See</u> <u>Demjanjuk</u>, 784 F.2d at 1115–16.  He could just as easily have been in custody in Texas or Michigan or Maine.  Any federal judge in America might have been asked to use the unknown custodian exception and get to the merits, just as Judge Bork was asked to (and did).  <u>Cf</u>. <u>id</u>. at 1116 ("[i]t is impracticable to require the attorneys to file in every jurisdiction").

\*    \*    \*

But this case poses none of these issues.

This case, as filed on March 9 at 4:40am, can go forward in New Jersey because that is where the Petitioner was confined at that moment.  <u>See</u> Part VII.B.1.  And because New Jersey was the district of confinement then, this case can go forward <u>only</u> in New Jersey, unless it is now dismissed and re-filed elsewhere. <u>See</u> <u>Padilla</u>, 542 U.S. at 443 ("[F]or . . . habeas petitions challenging present physical confinement, jurisdiction lies in only <u>one</u> district: the district of confinement.") (emphasis added).

This means that relaxing the immediate custodian rule here --- because as of the time of filing on March 9 the Petitioner's

lawyer could not know that the Petitioner was in New Jersey --- does not open the door to forum-shopping.  The case as filed can go forward only here.  The other 93 districts, where the Petitioner was nowhere to be found, are out of the question.

Indeed, relaxing the immediate custodian rule here has precisely the opposite effect of forum-shopping.

It opens the way to this case continuing in the district that was the single district of confinement at the moment the Petition was filed.  The unknown custodian exception does this by removing an impediment to this case going forward in New Jersey, the district of confinement (the impediment being the contention that the immediate custodian rule was violated because no New Jersey custodian was timely named as a respondent).

*    *    *

To put the point in a different way:

Per the Supreme Court, the immediate custodian rule exists in part to protect the district of confinement rule.

If the unknown custodian exception to the immediate custodian rule makes sense even where (as in <u>Demjanjuk</u>) it seems to <u>undermine</u> the district of confinement rule, then there is an all-the-stronger case for applying the unknown custodian exception here.

Why?  Because applying the unknown custodian exception in this case actively advances the district of confinement rule.  Applying the exception here helps ensure that this case <u>goes forward</u> in the district of confinement, New Jersey, where the Petitioner was held when the Petition was filed.

If the unknown custodian exception can apply (as in <u>Demjanjuk</u>) even in the teeth of the district of confinement rule --- why not apply it where, as here, it is the way to make that rule stick?

c)    <u>Conclusion</u>

The unknown custodian exception applies here.  <u>See</u> Part VII.B.3. And in two important ways it makes more sense to apply the exception in this case than it did in <u>Demjanjuk</u>.  <u>See</u> Parts VII.B.3.a–b.

In another sense, though, Demjanjuk was a stronger and easier case for application of the unknown custodian exception.

That is the subject of this section.

* * *

Per the Supreme Court, courts must apply the habeas statute with an eye to the underlying equitable nature of the writ.  See Brown v. Davenport, 596 U.S. 118, 132 (2022); Holland v. Florida, 560 U.S. 631, 646 (2010); Boumediene v. Bush, 553 U.S. 723, 780 (2008); Munaf v. Green, 553 U.S. 674, 693 (2008); Schlup v. Delo, 513 U.S. 298, 319 (1995).

And it appeared in Demjanjuk that, if the unknown custodian exception were not brought to bear, no habeas petition could have been heard anywhere in the United States (save, perhaps, by a Supreme Court Justice).  After all, the location of the petitioner was being kept confidential.  See Part VII.B.3.  No proper custodian could be named anywhere because no custodian could be named --- and this would have been as much a problem for a habeas petition filed in DC, where the case was brought, as it would have been anywhere else.

From an equitable perspective, this suggests that Demjanjuk was a more persuasive case for application of the unknown custodian exception.  Without that exception, the Demjanjuk case could not go forward anywhere.  But this case, without the exception, can simply be dismissed and refiled in Louisiana.[36]

---

[36]  The equities, as referenced here, have nothing to do with the merits.  Not in this case --- the Court expresses no view on the case's merits.  And not in Demjanjuk --- where Judge Bork was convinced that the petition before him was plainly not persuasive on the merits.  See 784 F.2d at 1116-17.  (To be sure, there may be a way in which habeas law and Judge Bork's view of the merits came together in Demjanjuk.  The habeas petition came to Judge Bork in the first instance, and he was a circuit judge.  He decided that it was not worth the time to remand the case to a district court, see id. at 1115, as would typically be done under Federal Rule of Appellate Procedure 22(a), because the case was plainly doomed on the merits.  See id.  The case being in a circuit court, and not a district court, meant no real possibility of fact-finding, whereas a district judge could presumably have considered

*    *    *

To unpack the point a bit more, in Demjanjuk the unknown custodian exception was the last resort.  It was applied, and the case was considered.  But if the exception was not applied, there would have been no way for the petitioner to seek habeas relief --- not in Washington, DC, (where no custodian was named) and not anywhere else (where there would have been the same problem).  Without leaning on the unknown custodian exception, there could have been no habeas remedy anywhere.[37]

Here, things are different.  If the unknown custodian rule is not applied here, this case might arguably need to be dismissed.  But if so, a habeas petition can still be presented.  The Petitioner is now detained in Louisiana, and he can presumably refile a habeas petition there.

In that sense --- and it is plainly an important one --- this case is a less compelling one for application of the unknown custodian exception than Demjanjuk was.

*    *    *

That point moves the needle, but not far enough.  And on balance the Court's judgment remains the same: that the unknown custodian exception applies here.

First, the exception applies on its face, see Part VII.B.3, and, while it is associated with Demjanjuk, the exception is bigger than just that case.  See VII.B.2.  Second, applying the exception here is generally consistent with the habeas statute.

---

allowing for some tightly-limited discovery to identify a custodian.  See, e.g., Maqaleh v. Hagel, 738 F.3d 312, 325-26 (D.C. Cir. 2013), vacated in part on unrelated grounds sub nom. al-Najar v. Carter, 575 U.S. 908 (2015) (describing jurisdictional discovery in the habeas context).  The lack of a named custodian --- an issue addressed in Demjanjuk through the unknown custodian exception --- might conceivably have been handled in a narrower way, and in a factual way rather than a legal way, if Judge Bork had viewed the petition as even potentially having merit, such that a remand to the district court could have made sense.)

[37]  And in such a circumstance, there might be an argument that applying the unknown custodian exception is constitutionally required, by the Suspension Clause.  Cf. Roman, 340 F.3d at 325.

See Part VII.B.3.a.  And third, on the facts of this particular case, the unknown custodian exception vindicates the district of confinement rule, and in that sense protects against forum-shopping.  See Part VII.B.3.b.

All that weighs heavily.

Moreover, applying the unknown custodian exception in this case is in the interest of the equitable concerns that the Supreme Court has long invoked in habeas law.

If the unknown custodian exception does not apply here, and this case is therefore dismissed, it is true that the Petition can be refiled in another federal court.

But it is also true that if the exception does not apply, and the case is dismissed on that basis, then the implication would be that there can be a period of time during which a person can be arrested in the United States and then moved by federal officials, during which period no habeas court would have the power to hear him out --- even though, as here, his lawyers and family cannot determine where he is only because they have been given inaccurate information about his whereabouts, and because he has not been allowed to correct that information by making a phone call.

A detainee in that situation would not be able to file a habeas petition in his original place of confinement, because he is no longer there.  See Khalil, 2025 WL 849803, at *14 (so holding).

And without the benefit of the unknown custodian exception, he might well not be able to file a habeas petition in the place where he was moved --- because when he filed in the first location he did not name his second custodian (who was then unknown).

Looking back from the perspective of today, April 1, that may not seem like very much.  The Petitioner is now in Louisiana. He can file a habeas petition from there.

But that is not the only perspective.

The implication of not applying the unknown custodian exception here is that, as of March 9, the Petitioner, detained in the United States, would not have been able to call on any habeas court.  Not in Louisiana, New York, or New Jersey.  And not anywhere else, either.

That is too far.  Our tradition is that there is no gap in the fabric of habeas --- no place, no moment, where a person held in custody in the United States cannot call on a court to hear his case and decide it.  See, e.g., 3 William Blackstone, Commentaries *131 ("[T]he sovereign is at all times entitled to have an account, why the liberty of any of her subjects is restrained, wherever that restraint may be inflicted."); accord, e.g., Boumediene, 553 U.S. at 741; 2 Joseph Story, Commentaries on the Constitution of the United States § 1341, p. 237 (3d ed. 1858).

## VIII.    Conclusion and Next Steps

The Court's conclusion: it has jurisdiction over this case and the Respondents' motion to dismiss must therefore be denied.

*    *    *

Recall for a moment the basis for this conclusion.

A habeas court generally has jurisdiction (1) where the habeas petitioner is physically in the court's district when (2) he files his habeas petition.  See Part II.

Here, each box is checked.  The Petitioner was in New Jersey on March 9 at 4:40am.  And Congress has required that the Petition must be taken as having been filed in New Jersey at that same moment.  See Part IV.

That vested this Court with jurisdiction.

The Court's jurisdiction is not defeated by the Petitioner having been moved to Louisiana.  See Part VI.

And the Court's jurisdiction is not undone, either, by the Petition not having named either a Louisiana or New Jersey warden.  See Part VII.

*    *    *

Before concluding, note that this case is postured in an unusual way.  But in rare circumstances, other courts have dealt with a case that, in some ways, has similar facts to this one.

In such cases, a habeas petition is filed in Place 1 while the petitioner is actually in Place 2; and by the time a court sends the case to a court in Place 2, the petitioner has been moved to Place 3.

These cases have all landed on the same conclusion as this Court: jurisdiction is proper in Place 2.  See Golding v. Sessions, 2018 WL 6444400 (S.D.N.Y. Dec. 6, 2018); Simpson v. Ashcroft, 321 F. Supp. 2d 13 (D.D.C. 2004); Belvett v. Ashcroft, 2002 WL 287839 (S.D.N.Y. Feb. 27, 2002).  Here, that place is New Jersey.

\*    \*    \*

In the ordinary course, the Court's decision today would likely be unappealable.  But there may be reasons for allowing an interlocutory appeal here under 28 U.S.C. § 1292(b).  The Court will solicit the parties' views on this question.

But discussion about an interlocutory appeal may turn out to be unnecessary.  The Respondents, for example, may opt to waive their right to further challenge this Court's jurisdiction (and venue) over the Petition.  As to that point, the Court will solicit the Respondents' views pursuant to an Order.  It will issue shortly.

\*    \*    \*

For the reasons set forth above, the Respondents' motion to dismiss is denied.

It is on this 1st day of April, 2025, so **ORDERED**.

_____
Michael E. Farbiarz, U.S.D.J.