UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MAHMOUD KHALIL, | *Civ. Act. No.* 25-cv-1963 (MEF) (MAH) |
| *Petitioner,* | |
| v. | |
| WILLIAM P. JOYCE, *et al.,* | |
| *Respondents.* | |

RESPONDENTS' OPPOSITION TO PETITIONER'S MOTION FOR A PRELIMINARY
INJUNCTION

On the brief:

YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division

DREW C. ENSIGN
Deputy Assistant Attorney General

AUGUST E. FLENTJE
Acting Director

SARAH S. WILSON
Assistant Director

ALANNA T. DUONG
DHRUMAN Y. SAMPAT
Senior Litigation Counsel

JOSHUA C. McCROSKEY
RACHEL BROWNING
Trial Attorneys

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

BACKGROUND ................................................................................................................1

   I.   Legal Framework for Detention ............................................................................1

   II.   Khalil's Immigration Detention ...........................................................................3

   III.   Khalil's Immigration Proceedings .......................................................................4

   IV.   Khalil's Habeas Petition ......................................................................................5

LEGAL STANDARD .........................................................................................................7

LEGAL ARGUMENT ........................................................................................................8

   I.   Khalil is Not Substantially Likely to Succeed on the Merits of his Claims. ................8

      A.   This Court Lacks Jurisdiction under the INA and REAL ID Act. ...................8

        i.   Section 1252(b)(9) bars relief and review. ...................................9

        ii.   Khail's Petition and Injunction Run Afoul of § 1252(g). ...................14

        iii.   Section 1226(e) bars review of the decision to detain Khalil. .................20

      B.   Khalil Cannot Circumvent the Administrative Process Through Habeas. ..........21

      C.   Khalil is Unlikely to Succeed Because Venue in this District is Improper. ........22

      D.   Khalil's Requested Injunction to Vacate the Secretary's Determination Invokes an Unreviewable Political Question. ...............................................23

      E.   Khalil is Unlikely to Succeed in his Due Process Challenges to his Detention. ......26

      F.   Khalil's First Amendment Claim is Not Substantially Likely to Succeed. ..........28

   II.   Khalil Cannot Establish that He Would Suffer Legal Irreparable Harm. .................33

   III.   The Injunction Would be Contrary to Public Interest. ......................................34

   IV.   The Court Should Require Bond. .....................................................................35

CONCLUSION................................................................................................................................36

# <u>TABLE OF AUTHORITIES</u>

Page(s)

<u>Cases</u>

*Aguilar v. Att'y Gen. of the U.S.,*
663 F.3d 692 (3d Cir. 2011)................................................................................................11

*Allegheny Energy, Inc. v. DQE, Inc.,*
171 F.3d 153 (3d Cir. 1999)..................................................................................................7

*Alvarez v. U.S. Immigr. & Customs Enf't,*
*Enf't,* 818 F.3d 1194 (11th Cir. 2016).................................................................................16

*Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.,*
42 F.3d 1421 (3d Cir. 1994)................................................................................................34

*Arce v. United States,*
899 F.3d 796 (9th Cir. 2018)...............................................................................................15

*Armstrong v. Overton,*
Civ. Act. No. 07-152, 2008 WL 360891 (W.D. Pa. Feb. 8, 2008) .....................................32

*Baker v. Carr,*
369 U.S. 186 (1962) .............................................................................................................23

*Bennett v. Spear,*
520 U.S. 154 (1997) .............................................................................................................32

*Bennington Foods LLC v. St. Croix Renaissance, Grp., LLP,*
528 F.3d 176 (3d Cir. 2008)..................................................................................................7

*Bluman v. Fed. Election Comm'n,*
800 F. Supp. 2d 281 (D.D.C. 2011), *aff'd, 565* U.S. 1104 (2012)........................................29

*Bonhometre v. Gonzales,*
414 F.3d 442 (3d Cir. 2005)..................................................................................................9

*Borbot v. Warden Hudson Cty. Corr. Fac.,*
906 F.3d 272 (3d Cir. 2018)................................................................................................27

*Bradshawv. CHW Grp., Inc.,*
---F. Supp. 3d ---, 2025 WL 306783 (D.N.J. Jan. 24, 2025).................................................8

*Bridges v. Wixon,*
326 U.S. 135 (1945)..............................................................................................................29

*Camerena v. Director, Immigration and Customs Enforcement,*
   988 F.3d 1268 (11th Cir. 2021) ...................................................................................15

*Campbell Soup Co. v. ConAgra, Inc.,*
   977 F.2d 86 (3d Cir. 1992) .........................................................................................32

*Carlson v. Landon,*
   342 U.S. 524 (1952) ............................................................................................26, 27

*Cooper Butt ex rel Q.T.R. v. Barr,*
   954 F.3d 901 (6th Cir. 2020) .....................................................................................18

*Delaware State Sportsmen's Ass'n, Inc. v. Delaware Dep't of Safety & Homeland Sec.,*
   108 F.4th 194 (3d Cir. 2024) .......................................................................................6

*Demore v. Kim,*
   538 U.S. 510 (2003) .........................................................................................2, 25, 27

*Dep't of Homeland Sec. v. Thuraissigiam,*
   591 U.S. 103 (2020) ...................................................................................................21

*Dobrick-Peirce v. Open Options, Inc.,*
   No. 2:05CV1451, 2006 WL 2089960 (W.D. Pa. July 25, 2006) ..............................22

*DSE, Inc. v. United States,*
   169 F.3d 21 (D.C. Cir. 1999) .....................................................................................34

*Duvall v. Elwood,*
   336 F.3d 228 (3d Cir. 2003)........................................................................................20

*E.F.L. v. Prim,*
   986 F.3d 959 (7th Cir. 2021) ..........................................................................14, 15, 18

*E.O.H.C. v. Sec. United States Dep't of Homeland Sec.,*
   950 F.3d 177 (3d Cir. 2020).............................................................................9, 10, 13

*Elgharib v. Napolitano,*
   600 F.3d 597 (6th Cir. 2010) .....................................................................................17

*El-Shifa Pharmaceutical Industries Co. v. United States,*
   607 F.3d 836 (D.C. Cir. 2010).....................................................................................23

*Enriquez-Perdomo v. Newman,*
   54 F.4th 855 (6th Cir. 2022) ......................................................................................14

*Fabian A. v. Dep't of Homeland Sec.,*
   Civ. Act. No. 21-1384, 2021 WL 3486905 (D.N.J. Aug. 9, 2021) .............................9

*Falcone v. Dickstein,*
    92 F.4th 193 (3d Cir. 2024) ................................................................28

*Fiallo v. Bell,*
    430 U.S. 787 (1977) ..........................................................................30

*Flowserve Corp. v. Burns Int'l Servs. Corp.,*
    423 F. Supp. 2d 433 (D. Del. 2006) ..................................................34

*Frank's GMC Truck Center, Inc. v. General Motors Corp.,*
    847 F.2d 100 (3d Cir.1988) ...............................................................34

*Garcia v. Att'y Gen. of U.S.,*
    553 F.3d 724 (3d Cir. 2009) ...............................................................19

*German Santos v. Warden Pike Cty. Corr. Fac.,*
    965 F.3d 203 (3d Cir. 2020).........................................................21, 27

*Gertz v. Robert Welch, Inc.,*
    418 U.S. 323 (1974) ..........................................................................29

*Gonzalez v. Trevino,*
    42 F.4th 487 (5th Cir. 2020), *cert.granted*, 142 S. Ct. 325 (2023)........28

*Gregory E. v. Warden of Essex Cty. Corr. Fac.,*
    Civ. Act. No. 19-1928, 2020 WL 3129541 (D.N.J. June 12, 2020) .....9

*Griffin v. Vaughn,*
    112 F.3d 703 (3d Cir.1997)................................................................32

*Gross v. German Foundation Indus. Initiative,*
    456 F.3d 363 (3d Cir. 2006).................................................23, 24, 25

*Guerrero-Lasprilla v. Barr,*
    589 U.S. 221 (2020) ..........................................................................11

*Haig v. Agee,*
    453 U.S. 280 (1981) ..........................................................................31

*Hamama v. Homan,*
    912 F.3d 869 (6th Cir. 2018) .............................................................15

*Kim v. Hanlon,*
    99 F.4th 140 (3d Cir. 2024) ............................................................7, 24

*Harisiades v. Shaughnessy,*
    342 U.S. 580 (1952) .................................................................24, 29, 30

*Holder v. Humanitarian L. Project,*
    561 U.S. 1 (2010) ........................................................................................ 30, 31

*Hope v. Warden York Cnty. Prison,*
    972 F.3d 310 (3d Cir. 2020) ................................................................ 7, 25, 26

*Hoxworth v. Blinder, Robinson & Co., Inc.,*
    903 F.2d 186 (3d Cir. 1990) ............................................................................ 34

*Humphries v. Various Fed. USINS Emps.,*
    164 F.3d 936 (5th Cir. 1999) ........................................................................... 16

*Hussain v. Gonzales,*
    492 F. Supp. 2d 1024 (E.D. Wisc. 2007) ..................................................... 2, 3

*Illinois ex rel. Madigan v. Telemarketing Assocs., Inc.,*
    538 U.S. 600 (2003) ....................................................................................... 29

*INS v. Chadha,*
    462 U.S. 919 (1983) ....................................................................................... 12

*INS v. Lopez-Mendoza,*
    468 U.S. 1032 (1984) ..................................................................................... 28

*INS v. St. Cyr.,*
    533 U.S. 289 (2001) ....................................................................................... 21

*Instant Airfreight Co. v. C.F. Airfreight, Inc.,*
    882 F.2d 797 (3d Cir. 1989) ........................................................................... 32

*Islas -Veloz v. Whitaker,*
    914 F.3d 1249 (9th Cir. 2019) ......................................................................... 11

*Iwanowa v. Ford Motor Co.,*
    67 F. Supp. 2d 424 (D.N.J. 1999) .................................................................. 24

*J.E.F.M. v. Lynch,*
    837 F.3d 1026 (9th Cir. 2016) ........................................................................... 9

*Jean-Claude W. v. Anderson,*
    No. 19-16282 (KM), 2021 WL 82250 (D.N.J. Jan. 11, 2021) ....................... 20

*Jelani B. v. Anderson,*
    No. 20-6459 (SDW), 2020 WL 5560161 (D.N.J. Sept. 17, 2020) ................. 20

*Jennings v. Rodriguez,*
    138 S. Ct. 830 (2018) .................................................................................. 2, 13

*Jimenez-Angeles v. Ashcroft,*
 291 F.3d 594 (9th Cir. 2002) .......................................................................... 15, 16

*Kleindienst v. Mandel,*
 408 U.S. 753 (1972) ............................................................................................. 30

*Kos Pharm., Inc. v. Andrx Corp.,*
 369 F.3d 700 (3d Cir. 2004) ............................................................................ 7, 33

*Koszelnik v. Sec. of Dep't of Homeland Sec.,*
 *Sec.,* 828 F.3d 175 (3d Cir. 2016) ......................................................................... 29

*LaChemise Lacoste v. General Mills, Inc.,*
 487 F.2d 312 (3d Cir. 1973) .................................................................................. 33

*Ledezma-Cosino v. Sessions,*
 857 F.3d 1042 (9th Cir. 2017) .............................................................................. 11

*Lujan v. Nat'l Wildlife Federation,*
 497 U.S. 870 (1990) .............................................................................................. 31

*Malkandi v. Holder,*
 576 F.3d 906 (9th Cir. 2009) ................................................................................ 11

*Marquez-Reyes v. Garland,*
 36 F.4th 1195 (9th Cir. 2022) .............................................................................. 11

*Massieu. Reno,*
 91 F.3d 416 (3d Cir. 1996) .................................................................................... 12

*Mateo v. Att'y Gen. United States,*
 870 F.3d 228 (3d Cir. 2017) .................................................................................. 11

*Mathews v. Diaz,*
 426 U.S. 67 (1976) ................................................................................................ 23

*Matter of Guerra,*
 24 I. & N. Dec. 37 (BIA 2006) ............................................................................... 2

*Mayorga v. Meade,*
 No. 24-CV-22131, 2024 WL 4298815 (S.D. Fla. Sept. 26, 2024) ......................... 20

*McAllister v. Att'y Gen. of U.S.,*
 444 F.3d 178 (3d Cir. 2006) .................................................................................. 11

*Medley v. Garland,*
 71 F.4th 35 (2d Cir. 2023) .................................................................................... 12

*Miranda v. Garland,*
    34 F.4th 338 (4th Cir. 2022) ............................................................................ 26, 27

*Mobarez v. Kerry,*
    187 F. Supp. 3d 85 (D.D.C. 2016) ........................................................................ 25

*Morales v. Maxwell,*
    No. CV 21-07263 (ZNQ) (RLS), 2024 WL 4651757 n.14 (D.N.J. Nov. 1, 2024) ............ 28

*Munaf v. Geren,*
    553 U.S. 674 (2008) ........................................................................................... 21

*Nguyen v. United States,*
    No. 23-CV-06047-VKD, 2024 WL 1382470 (N.D. Cal. Apr. 1, 2024) ......................... 25

*Nieves v. Bartlett,*
    587 U.S. 391 (2019) ........................................................................................... 28

*Nken v. Holder,*
    556 U.S. 418 (2009) ........................................................................................... 33

*Okonkwo v. INS,*
    69 F. App'x 57 (3d Cir. 2003) .............................................................................. 20

*Ortega v. Bonnar,*
    415 F. Supp. 3d 963 (N.D. Cal. 2019) .................................................................... 20

*Pinker v. Roche Holdings, Ltd.,*
    292 F.3d 361 (3rd Cir. 2002) ............................................................................... 22

*Preiser v. Rodriguez,*
    411 U.S. 475 (1973) ........................................................................................... 21

*Presbyterian Church (U.S.A.) v. United States,*
    752 F. Supp. 1505 (D. Ariz., 1990) ....................................................................... 30

*Price v. U.S. INS,*
    962 F.2d 836 (9th Cir. 1992) ............................................................................... 29

*Rajah v. Mukasey,*
    533 F.3d 427 (2d Cir. 2008) ............................................................................ 12, 13

*Rauda v. Jennings,*
    55 F.4th 773 (9th Cir. 2022) ................................................................................ 15

*Reno v. Am.-Arab Anti-Discrimination Comm.,*
    525 U.S. 471 (1999) ..................................................................................... passim

*Rezai v. I.N.S.,*
   62 F.3d 1286 (10th Cir. 1995) ..........................................................................................11

*Saadulloev v. Garland,*
   No. 3:23-CV-00106, 2024 WL 1076106 (W.D. Pa. Mar. 12, 2024)........................16, 18, 20

*Shaughnessy v. United States ex rel. Mezei,*
   345 U.S. 206, (1953) .........................................................................................................30

*Sissoko v. Rocha,*
   509 F.3d 947 (9th Cir. 2007) ..........................................................................................16

*State of California v. United States,*
   104 F.3d 1086 (9th Cir. 1997) ........................................................................................23

*State of New Jersey v. United States,*
   91 F.3d 463 (3d Cir. 1996)...............................................................................................24

*Taal v. Trump,*
   No. 3:25-CV-335 (ECC/ML), 2025 WL 926207 (N.D.N.Y. Mar. 27, 2025) ...................18

*Tazu v. Att'y Gen. United States,*
   975 F.3d 292 (3d Cir. 2020).......................................................................................passim

*Tercero v. Holder,*
   510 F. App'x 761 (10th Cir. 2013)..................................................................................16

*Thomas v. Weiss,*
   No. 21-CV-14554-RMB-EAP, 2024 WL 2830662 (D.N.J. June 4, 2024)........................28

*Trinity Indus., Inc. v. Chi. Bridge & Iron Co.,*
   735 F.3d 131 (3d Cir. 2013)...............................................................................................7

*United States v. Aguilar,*
   883 F.2d 662 (9th Cir.1989) ...........................................................................................30

*United States v. Martinez-Fuerte,*
   428 U.S. 543 (1976) .........................................................................................................33

*United States v. Rowlee,*
   899 F.2d 1275 (2d Cir. 1990) ..........................................................................................29

*Vasquez v. Aviles,*
   639 F. App'x 898 (3d Cir. 2016).......................................................................................9

*Velasco Lopez v. Decker,*
   978 F.3d 842 (2d Cir. 2020)............................................................................................20

*Verde-Rodriguez v. Att'y Gen. U.S.,*
   734 F.3d 198 (3d Cir. 2013)................................................................9

*Winter v. Nat. Res. Def. Council, Inc.,*
   555 U.S. 7 (2008)................................................................ 32, 33

*Wong Wing v. United States,*
   163 U.S. 228 (1896) ................................................25, 26, 27

*Yi v. Maugans,*
   24 F.3d 500 (3d Cir. 1994)................................................20

*Yoc-Us v. Att'y Gen.,*
   932 F.3d 98 (3d Cir. 2019)................................................12

*Yusupov v. Att'y Gen. of U.S.,*
   650 F.3d 968 (3d Cir. 2011)................................................11

*Zadvydas v. Davis,*
   533 U.S. 678 (2001)................................................26

*Zambelli Fireworks Mfg. Co. v. Wood,*
   592 F.3d 412 (3d Cir. 2010)................................................8

**Statutes**

6 U.S.C. § 202(3) ................................................14

8 U.S.C. § 1225 ................................................1

8 U.S.C. § 1226(a) ................................................5, 19, 33

8 U.S.C. § 1226(c)(2)................................................2

8 U.S.C. § 1226(e) ................................................20

8 U.S.C. § 1227(a)(1)(A)................................................28

8 U.S.C. § 1227(a)(4)(C)................................................30

8 U.S.C. § 1229a(a)................................................10

8 U.S.C. § 1229a(c)(3)................................................10

8 U.S.C. § 1229a(c)(5)................................................10

8 U.S.C. § 1252(a)(2)(D)................................................10

8 U.S.C. § 1252(a)(5) .................................................................................................. 9, 10

8 U.S.C. § 1252(b)(9) ............................................................................................. 8, 9, 10

8 U.S.C. § 1252(g) ..........................................................................................................14

28 U.S.C. § 1391(e) .......................................................................................................22

**Rules**

Fed. R. Civ. P. 65(c) .......................................................................................................34

**Regulations**

8 C.F.R. § 1003.14(a) ................................................................................................ 4, 5

8 C.F.R. § 1003.19(f) ........................................................................................... 3, 20, 22

8 C.F.R. § 236.1(c)(8) ......................................................................................................2

8 C.F.R. § 236.1(d) ..........................................................................................................2

**Other Authorities**

H.R. Conf. Rep. No. 109-72 ...........................................................................................9

Pub. L. 104-208 ............................................................................................................14

# INTRODUCTION

The Court should deny Petitioner Mahmoud Khalil's motion for a preliminary injunction that seeks (1) to vacate Secretary of State Rubio's determination as to his immigration status and (2) release him from custody. He also loosely seeks to enjoin an amorphous policy on how the Executive decides to enforce inadmissibility and deportability statutes. Khalil's preliminary injunction, and indeed this entire case, suffers from multiple jurisdictional defects: (1) the Immigration and Nationality Act prohibits district courts from entertaining challenges to removability, including the decision to commence removal proceedings; and (2) district courts lack jurisdiction to reverse the decision to detain Khalil.[1]

Even if these jurisdictional hurdles pose no bar on review, the Court should still deny the preliminary injunction because Khalil's claims and petition fail on the merits. He improperly seeks to circumvent the administrative removal proceed by way of a habeas petition. Khalil also fails to establish that venue in this District is proper. Additionally, his challenge to the Secretary's foreign policy determinations is also barred by the political question doctrine. More, he cannot show a high likelihood of success on any of his claims under the Due Process nor the First Amendment. Finally, Khalil cannot meet his burden to show irreparable harm or that the equities weigh in his favor. Accordingly, the Court should deny Khalil's motion.

# BACKGROUND

I.    Legal Framework for Detention

In the Immigration and Nationality Act ("INA"), Congress enacted a multi-layered statutory scheme for civil detention pending a decision on removal, during the administrative and judicial review

---

[1] The Court determined that it had habeas jurisdiction over this matter. *See* ECF No. 153. The Government contests that decision and is contemplating whether further review may be appropriate. *See id.*

of removal orders, and in preparation for removal. *See generally* 8 U.S.C. §§ 1225, 1226, 1231. The time and circumstances of entry, as well as the stage of the removal process, determine where a detainee falls within this scheme and whether detention is discretionary or mandatory. For individuals like Khalil, § 1226 "generally governs the process of arresting and detaining . . . aliens pending their removal." *Jennings v. Rodriguez*, 138 S. Ct. 830, 837 (2018). Within § 1226, subsection (a) provides that "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). By contrast, if someone has been convicted of certain enumerated criminal offenses, § 1226(c) mandates his detention during removal proceedings (though the alien may be released for certain witness-protection reasons). 8 U.S.C. § 1226(c)(1)(A)-(D); 8 U.S.C. § 1226(c)(2); *Demore v. Kim*, 538 U.S. 510, 513 (2003).

Section 1226(a) detainees may be detained for the duration of the removal proceedings or be released "on bond of at least $1,500," or conditional parole. *See* 8 U.S.C. § 1226(a)(1)-(2). When an individual is taken into custody under § 1226(a), an Immigration and Customs Enforcement ("ICE") official makes an initial custody determination, including the setting of a bond. *See* 8 C.F.R. §§ 236.1(c)(8), 236.1(d). The ICE officer may "in [his] discretion, release an alien" provided that the officer is satisfied that "the alien is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8). If ICE determines that detention during the pendency of removal proceedings is necessary, the detainee may request a custody redetermination hearing before an immigration judge ("IJ"). *See* 8 C.F.R. §§ 236.1(d), 1003.19, 1236.1(d). Generally, IJs have broad discretion in deciding whether to release someone on bond. *Matter of Guerra*, 24 I. & N. Dec. 37, 39 (BIA 2006).

These same regulations promulgated by the Executive limit an IJ's discretion. IJs cannot review ICE's custody determinations for someone like Khalil, who is charged removable under Section 1227(a)(4). 8 C.F.R. § 1003.19(h)(2)(i)(C). Although Khalil cannot challenge ICE's custody determination specifically, he can request that an IJ determine whether he is properly subject to

removal under Section 1227(a)(4). 8 C.F.R. § 1003.19(h)(2)(ii); *see also Hussain v. Gonzales*, 492 F. Supp. 2d 1024, 1033 (E.D. Wisc. 2007), *aff'd sub nom. Hussain v. Mukasey*, 510 F.3d 739 (7th Cir. 2007). He can submit evidence and legal authority as to whether he is properly included within the removability charge to allow the IJ to make the determination in the first place. *Hussain*, 492 F. Supp. 2d at 1033. If Khalil disagrees with the IJ's determination, he can seek review before the Board of Immigration Appeals ("BIA"). 8 C.F.R. § 1003.19(f); *see also Hussain*, 492 F. Supp. 2d at 1033 (discussing the BIA's decision determining proper detention authority and custody review process).

II.     Khalil's Immigration Detention

Khalil, a native of Syria and citizen of Algeria, entered the United States on a student visa in December 2022. *See* Declaration of Acting Field Office Director William Joyce ("Joyce Decl.") ¶ 5 (ECF No. 32). He adjusted to lawful permanent resident status in November 2024. *Id.* ¶ 6. At approximately 8:35 p.m. on March 8, 2025, Special Agents from the U.S. Immigration and Customs Enforcement ("ICE") Homeland Security Investigations ("HSI"), Office of the Special Agent in Charge for the New York Area of Responsibility detained Khalil at 195 Claremont Avenue in Manhattan, New York, to place him in removal proceedings. *Id.* ¶ 7; Second Supplemental Declaration of Acting Field Office Director William Joyce ("2d Supp. Joyce Decl.") (ECF No. 72), ¶ 7.

Upon completion of processing, ICE transported Khalil from 26 Federal Plaza to the Elizabeth Detention Facility in Newark, New Jersey,[2] where he was physically present and booked into the detention facility on March 9, 2025. *Id.* ¶ 8. Khalil's stop at the Elizabeth Detention Center was also brief because the facility was dealing with bedbug issues, and could not accept anyone as a

---

[2] Elizabeth Detention Facility has comprehensive overnight accommodations for detainees, such as beds and 24-hour medical staff, whereas 26 Federal Plaza is a Hold Room facility used for detention of individuals awaiting removal, transfer, immigration court hearings, medical treatment, intra-facility movement, or other processing into or out of a facility, and it does not have beds or overnight medical staff. Joyce Decl. ¶ 10.

full transfer. *Id.* ¶ 11. ICE made an operational decision to not request bedspace at facilities in surrounding areas of responsibility given the "awareness of general paucity of bedspace." *Id.* Those other areas of responsibilities required the bedspace to accommodate for ongoing law enforcement operations. *Id.* On March 8, 2025, Enforcement and Removal Operations New York ("ERO New York") requested and obtained bedspace from ERO New Orleans, and a flight was scheduled for the next day. *Id.* Shortly before noon on March 9, Khalil departed the Elizabeth Detention Facility and was brought to the airport to be transported to the Central Louisiana ICE Processing Facility in Jena, Louisiana. Joyce Decl. ¶ 11. ICE, specifically ERO New York, "did not receive any directives or instructions pertaining to Khalil's detention." 2d Supp. Joyce Decl. ¶ 14. Khalil was booked into the Central Louisiana ICE Processing Facility at 12:33 a.m. on March 10, 2025, and he remains detained at that facility. Joyce Decl. ¶ 12. ICE has no current plans or intentions to transfer Khalil during the pendency of his removal proceedings. 2d Supp. Joyce Decl. ¶ 19.

III.  Khalil's Immigration Proceedings

On March 9, 2025, while at 26 Federal Plaza, DHS personally served Khalil with a Notice to Appear ("NTA"), the document used to commence removal proceedings, charging him as removable under 8 U.S.C. § 1227(a)(4)(C)(i)-(ii), as an alien who the Secretary of State has reasonable ground to believe the presence or activities in the United States would have potentially serious adverse foreign policy consequences from the United States and continued presence or activities would compromise a compelling United States foreign policy interest. *See* 2d Supp. Joyce Decl., Ex. A – NTA, Mar. 9, 2025. On that same day, Khalil's NTA was filed with the Immigration Court at the LaSalle Detention Facility, vesting that court with jurisdiction over his removal proceedings. *See* 8 C.F.R. § 1003.14(a) ("Jurisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court."); Ex. A, NTA. On March 17, 2025, ICE added a charge of removability. *See* As-filed Notice to Appear ("Filed NTA") (ECF No. 90-1), at 5. Khalil is

now also charged as being inadmissible at the time of his adjustment of status because he sought to procure an immigration benefit by fraud or willful misrepresentation of a material fact. *See* Filed NTA at 5. The NTA alleges that he failed to disclose certain information in his adjustment of status application, including: (1) his service as the political affairs officer for the United Nations Relief and Works Agency for Palestine Refugees; and (2) his employment as a program manager by the Syria Office in the British Embassy in Beirut. *Id.* The NTA ordered that Khalil appear for a removal hearing at 8:30 a.m. on March 27, 2025, at the Immigration Court located at 830 Pinehill Road, Jena, Louisiana. *See* 2d Supp. Joyce Decl., Ex. A – NTA, Mar. 9, 2025. ICE also served Khalil with a Notice of Custody Determination, notifying Khalil that his detention was governed by 8 U.S.C. § 1226(a) (immigration custody during removal proceedings). Joyce Decl. ¶ 7.

On March 10, 2025, the Executive Office for Immigration Review notified Khalil and ICE that a master calendar hearing had been set for March 21, 2025. *See* attached Second Declaration of Melissa Harper ("2d Harper Decl."), ¶ 5. Khalil and his counsel appeared at the hearing, and his counsel waived a formal reading of the removability charge. *Id.* ¶ 6. Khalil through counsel declined to plead to any allegations and instead moved to continue the hearing until April 9. *Id.* ¶¶ 6, 7. Over ICE's objection, the IJ continued the hearing until April 8, 2025. *Id.* ¶¶ 8, 9.

IV.    Khalil's Habeas Petition

On March 9, 2025, Khalil filed the underlying petition for habeas corpus, alleging that DHS's arrest and detention of him was a result of the U.S. government's repression of student activism and speech specifically targeting students at Columbia University for criticism of Israel's actions against Gaza. *See* ECF No. 2 at 1-2 (petition); ECF No. 38 at 2 ¶¶ 23 (amended petition). In his operative petition, he brings a claim under the First Amendment (Count One), alleging that the Government was motivated by his participation in protests and his statements regarding Palestine and Israel, and took action to discourage him from speaking out in the future, *see* ECF No. 38 at 26–27 ¶¶ 88–90; and

the Due Process Clause of the Fifth Amendment (Count Two), alleging that his detention was unjustified, punitive, and bears no "reasonable relation" to a legitimate government purpose, *id.* at 27–29 ¶¶ 92–95.

Khalil also brings a claim under the Administrative Procedure Act ("APA") and the *Accardi* Doctrine (Count Three), alleging that the U.S. Government's "policy" of targeting aliens for removal based on speech advocating for Palestinian rights and its "determination" that his "presence or activities would potentially have serious adverse foreign policy consequences for the United States" and "would compromise a compelling United States foreign policy interest" are arbitrary and capricious, an abuse of discretion, contrary to constitutional right, contrary to law, and in excess of statutory jurisdiction. *Id.* at 29 ¶ 96. Finally, he brings a claim for release on bail pending adjudication of his habeas petition (Count Four), alleging that he raised substantial constitutional and statutory claims regarding his detention and showed that extraordinary circumstances exist, because of his certain personal hardships, that make a grant of bail necessary for habeas relief to be effective. *Id.* at 29–30 ¶¶ 98–99.

Khalil requests that this Court assume jurisdiction over this matter and vacate Respondents' "policy" of targeting noncitizens for removal based on their First Amendment-protected speech and "determination" that his presence and activities would have potentially serious adverse foreign policy consequences. *Id.* at 31 ¶¶ 23. He further requests that this Court order his immediate release pending these proceedings, or order his release, and declare that Respondents' actions to arrest and detain him violated the First Amendment and Due Process Clause of the Fifth Amendment. *Id.* at 31 ¶¶ 58.

On March 25, 2025, Khalil filed his amended motion for a preliminary injunction. *See* ECF No. 124 ("Pet'r Mot."). In seeking the injunction, Khalil limits his theories to alleged violations of the First and Fifth Amendments of the United States Constitution. *See generally id.*

**LEGAL STANDARD**

"Preliminary injunctions are not automatic. Rather, tradition and precedent have long reserved them for extraordinary situations." *Delaware State Sportsmen's Ass'n, Inc. v. Delaware Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 198 (3d Cir. 2024). To prevail and obtain a preliminary injunction, the moving party must demonstrate that (1) there is a likelihood of ultimate success on the merits; (2) a restraining order or injunction is necessary to prevent irreparable injury; (3) the threatened injury outweighs the harm that the restraining order or injunction would inflict on the other party; and (4) the restraining order or injunction would not be adverse to the public interest. *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004); *see also Allegheny Energy, Inc. v. DQE, Inc.*, 171 F.3d 153, 158 (3d Cir. 1999) (setting forth the four elements for demonstrating the need for a preliminary injunction).

Rather than simply requesting to maintain the status quo, Khalil seeks a "mandatory injunction" to force the Government to act, meaning a heightened standard applies. *Bennington Foods LLC v. St. Croix Renaissance, Grp.*, LLP, 528 F.3d 176, 179 (3d Cir. 2008). "[O]ver and above the showing required to maintain the status quo . . . a plaintiff must 'show a *substantial likelihood* of success on the merits and that [one's] right to relief is indisputably clear[.]'" *Kim v. Hanlon*, 99 F.4th 140, 155 (3d Cir. 2024) (citing *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 320 (3d Cir. 2020) (emphasis added)). Mandatory injunctions are generally disfavored and "only granted sparingly by the courts." *Trinity Indus., Inc. v. Chi. Bridge & Iron Co.*, 735 F.3d 131, 139 (3d Cir. 2013).

As set forth below, Khalil cannot show a likelihood of success on the merits, much less a substantial likelihood, or that the factors and law are clearly in his favor. *Hope*, 972 F.3d at 320. Additionally, he does not establish irreparable harm or that the equities favor granting the sweeping mandatory preliminary relief he seeks.

## **LEGAL ARGUMENT**

I.    <u>Khalil is Not Substantially Likely to Succeed on the Merits of his Claims.</u>

Khalil's habeas action and his request for a preliminary injunction run into multiple jurisdictional bars under the INA and the REAL ID Act. As this Court has previously noted, "'when there is a question as to a court's authority to hear a dispute, it is incumbent upon the court to resolve such doubts … before proceeding to … the merits.'" *Bradshaw v. CHW Grp., Inc.*, --- F. Supp. 3d ---, No. 24-CV-00114 (MEF)(JBC), 2025 WL 306783, at *1 (D.N.J. Jan. 24, 2025) (cleaned up) (quoting *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 418 (3d Cir. 2010)). Resolving any one of these jurisdictional flaws is fatal to this motion. But even putting those defects aside, should the Court need to address the merits of Khalil's claims, he is not likely to succeed on any of them let alone all.

A.    <u>This Court Lacks Jurisdiction under the INA and REAL ID Act.</u>

Through a habeas petition, Khalil seeks to vacate the Secretary of State's determination that his presence either with or independent of his activities pose serious foreign policy consequences to the United States. Pet'r Mot. 3. He further seeks to enjoin an ill-defined initiative that would also alter the status of his ongoing removal proceedings. *Id.*

This Court lacks the authority to hear those claims. By way of the INA and then the REAL ID Act, Congress divested federal district courts from hearing claims related to removal. 8 U.S.C. § 1252(b)(9). So too any claim related to the decision to commence removal proceedings. *Id.* § 1252(g). But that is all precisely what Khalil challenges here. Such claims are barred. Congress requires channeling this sort of suit through the petition-for-review process; there is no present role for the federal district courts to play.

In seeking release, Khalil seeks to reverse the Government's decision to detain him pending removal proceedings. Congress, however, left that decision to the Secretary of Homeland Security and made that decision unreviewable. Congress insulated such discretionary decisions from judicial review.

i.  *Section 1252(b)(9) bars relief and review.*

The Third Circuit has unequivocally stated that the jurisdictional path to "challenging removal [is] with a petition for review of his removal order, not a habeas petition." *Tazu v. Att'y Gen. United States*, 975 F.3d 292, 294 (3d Cir. 2020). Despite this directive, Khalil presses forward in a habeas action that his removability charge is a result of alleged First Amendment discrimination and that his detention violates due process. Pet'r Mot. 11–35. He must bring those challenges through a petition for review. This Court lacks jurisdiction over the matter and therefore should not grant preliminary injunctive relief.

In passing the REAL ID Act, Congress prescribed a single path for judicial review of orders of removal: "a petition for review filed with an appropriate court of appeals." 8 U.S.C. § 1252(a)(5); *see also Verde-Rodriguez v. Att'y Gen. U.S.*, 734 F.3d 198, 201 (3d Cir. 2013). The REAL ID Act further provides that, "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, *arising from any action taken or proceeding brought to remove an alien from the United States* under this subchapter shall be available only in judicial review of a final order under this section." 8 U.S.C. § 1252(b)(9) (emphasis added). Read in conjunction with section 1252(b)(9), section 1252(a)(5) expresses Congress's intent to channel and consolidate judicial review of every aspect of removal proceedings into the petition-for-review process in the courts of appeals. H.R. Conf. Rep. No. 109-72, at 174–75; *see also Bonhometre v. Gonzales*, 414 F.3d 442, 446 (3d Cir. 2005) (highlighting Congress's "clear intent to have all challenges to removal orders heard in a single forum (the courts of appeals)" as part of a petition for review).

In fact, "most claims that even relate to removal" are improper if brought before the district court. *E.O.H.C. v. Sec. United States Dep't of Homeland Sec.* 950 F.3d 177, 184 (3d Cir. 2020); *Fabian A. v. Dep't of Homeland Sec.*, Civ. Act. No. 21-1384, 2021 WL 3486905, at *2 (D.N.J. Aug. 9, 2021); *Gregory E. v. Warden of Essex Cty. Corr. Fac.*, Civ. Act. No. 19-19287, 2020 WL 3129541, at *2 (D.N.J. June 12,

9

2020); *see also Reno v. Am.-Arab Anti-Discrimination Comm.* ("*AADC*"), 525 U.S. 471, 483 (1999) (labeling section 1252(b)(9) an "unmistakable zipper clause," and defining a zipper clause as "[a] clause that says 'no judicial review in deportation cases unless this section provides judicial review.'"); *Vasquez v. Aviles*, 639 F. App'x 898, 900–01 (3d Cir. 2016); *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016) ("Taken together, § 1252(a)(5) and § 1252(b)(9) mean that any issue – whether legal or factual – arising from any removal-related activity can be reviewed only through the [petition-for-review] process.").

Put otherwise, the Third Circuit has underscored that district courts cannot review "any action taken or proceeding brought to remove an alien" so long as the claim can receive meaningful review through the petition for review. *E.O.H.C.*, 950 F.3d at 186.

That should resolve this case. Khalil can challenge his removal in front of an IJ, who will determine whether Khalil is removable. 8 U.S.C. §§ 1229a(a), (c). The government must show by clear and convincing evidence that Khalil is removable. 8 U.S.C. § 1229a(c)(3). Khalil then has a right to appeal an adverse order from the IJ to the BIA. 8 U.S.C. § 1229a(c)(5). If he is unsuccessful with his administrative appeal, he can obtain Article III judicial review by filing a petition for review with the appropriate court of appeals. 8 U.S.C. § 1252(a)(5). As important, during immigration proceedings, and then later before the court of appeals, Khalil will have the ability to press his constitutional claims, along with any other bases he wishes to raise to contest his detention and/or removal. *See* 8 U.S.C. § 1252(b)(9) (preserving judicial review of "interpretation and application of constitutional and statutory provisions" for courts of appeals but stripping all other courts of jurisdiction, including under habeas, to review such questions of law and fact).

The decision to detain Khalil and his removability are unquestionably intertwined and confirms the importance of Khalil pursuing this challenge before an IJ first. Khalil is permitted to challenge his detention and ask an immigration judge whether he is properly subject to his foreign policy removability charge. 8 C.F.R. § 1003.19(h)(2)(ii). Should a district court second-guess that

decision, it would necessarily vacate the removability charge. This challenge sufficiently "relate[s] to removal." *E.O.H.C.*, 950 F.3d at 184. And this is exactly the sort of piecemeal litigation the INA meant to avoid.

Congress specifically preserved judicial review of "constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals[.]" 8 U.S.C. § 1252(a)(2)(D). The Supreme Court recognized that § 1252(a)(2)(D) was intended to preserve the kind of review traditionally available in a habeas proceeding, including review of the "erroneous application or interpretation of statutes." *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 232 (2020); *see also Tazu*, 975 F.3d at 300 (because Tazu raised constitutional claims or questions or law related to the timing of his removal and re-detention, § 1252(a)(2)(D) preserves judicial review). Per that recognition, courts of appeals have routinely reviewed constitutional and legal challenges to removability. *See, e.g.*, *Mateo v. Att'y Gen. United States*, 870 F.3d 228, 232 (3d Cir. 2017) (holding that the constitutional vagueness standard applies to immigration cases and can be used to challenge the INA's definition of a crime of violence); *Aguilar v. Att'y Gen. of the U.S.*, 663 F.3d 692, 701-04 (3d Cir. 2011) (considering whether the definition of crime of violence in § 16(b) as applied to non-citizens in removal proceedings was vague); *Yusupov v. Att'y Gen. of U.S.*, 650 F.3d 968, 981, 992–93 (3d Cir. 2011) (reviewing the agency's determination that there were "reasonable grounds to believe that the alien is a danger to the security of the United States" and holding that the government had not met its burden); *McAllister v. Att'y Gen. of U.S.*, 444 F.3d 178, 186 (3d Cir. 2006) (analyzing the alleged terrorist ground of inadmissibility and concluding that it was "[neither] vague nor overbroad in that it [did] not infringe on constitutionally protected behavior"); *Rezai v. I.N.S.*, 62 F.3d 1286, 1291 (10th Cir. 1995) (reviewing whether the Board violated petitioner's First Amendment rights by declining to usurp another agency's authority and reopen deportation proceeding on the basis of an unadjudicated visa petition); *Marquez-Reyes v. Garland*, 36 F.4th 1195, 1205–07 (9th Cir. 2022) (reviewing if inadmissibility statute can withstanding First

Amendment scrutiny); *Islas -Veloz v. Whitaker*, 914 F.3d 1249, 1250 (9th Cir. 2019) (assessing whether the statutory phrase, "crime involving moral turpitude" is unconstitutionally void for vagueness); *Ledezma-Cosino v. Sessions*, 857 F.3d 1042, 1047 (9th Cir. 2017) (assessing the constitutional void-for-vagueness question by comparing the criminal law standard with that applied in the context of removal proceedings); *Malkandi v. Holder*, 576 F.3d 906, 914–15 (9th Cir. 2009) (concluding that substantial evidence supported the government's determination that there were "reasonable grounds to regard [petitioner] as a danger to national security").

It is indisputable that Khalil can obtain meaningful Article III review of his removability through a petition for review. In *Massieu v. Reno*, for instance, a petitioner had challenged the predecessor to Khalil's deportability ground,[3] arguing that it violated the Due Process Clause because it was impermissibly vague. 91 F.3d 416, 417 (3d Cir. 1996) (Alito, J.). In reversing the district court's order declaring the provision unconstitutional and enjoining deportation proceedings, the Third Circuit held that a petitioner must first exhaust his administrative remedies before the immigration court and a petition for review. *Id.* The *Massieu* court specifically noted that for "an alien attempting to prevent an exclusion or deportation proceeding from taking place in the first instance," he must avail himself of the administrative procedures. *Id.* at 421.

*Massieu* is on all fours with this case, and confirms that Khalil can and must raise his First and Fifth Amendment challenges to removability through the process created by Congress, culminating in a petition for review before the appropriate court of appeals. *See id.* at 422 (recognizing that the court of appeals could review the final removal order and "'all matters on which the validity of the final order is contingent.'") (quoting *INS v. Chadha*, 462 U.S. 919, 937–39 (1983)); *id.* at 423 (reaffirming that district court review is not appropriate and review of removal is not meaningfully precluded when "the challenge by the aliens is neither procedural nor collateral to the merits"). Khalil may present his

---

[3] Previously found at 8 U.S.C. § 1251(a)(4)(C)(i).

as-applied constitutional arguments before an IJ who could rule on the issue. *See Yoc-Us v. Att'y Gen.*, 932 F.3d 98, 102 (3d Cir. 2019) (noting that an IJ had denied a motion to terminate proceedings where the petitioners argued that evidence had been gathered in violation of their Fourth Amendment rights); *see also Medley v. Garland*, 71 F.4th 35, 42-43 (2d Cir. 2023) (discussing, among other cases, *Rajah v. Mukasey*, 533 F.3d 427, 446 (2d Cir. 2008), which identified "possible remedies" for "significant regulatory violations" that occurred during the arrest phase of removal proceedings). To the extent that an IJ may not be able decide an issue, he can develop the record for further review. *See Aquino v. Att'y Gen.*, 53 F.4th 761, 768 (3d Cir. 2022). Although the immigration court may not be able to address Khalil's potential broader constitutional challenges immediately, it can review whether the Secretary of State made the requisite finding before Khalil was charged with the specific ground of removability. *See id.* at 424, 426 (noting that an immigration judge is not authorized to consider the constitutionality of the statute but could consider whether a petitioner is deportable).

Khalil cannot rely on *E.O.H.C.* as a workaround to *Massieu*. Pet'r Mot. 29 n.27. To the extent that *E.O.H.C.* opened the doors to district-court review of certain "now or never" claims, *Tazu* made clear that narrow exception has no applicability here. Because the petitioners in *E.O.H.C.* were challenging their *temporary* return to Mexico rather than return to Guatemala, they were not challenging an action to related to removal. *See E.O.H.C.*, 950 F.3d at 184, 186. That is what made the petitioners' claims "now-or-never." *Tazu*, 975 F.3d at 299. The *Tazu* court found that whatever *E.O.H.C.*'s outer bounds, § 1252(b)(9) nevertheless bars review to questions that "are bound up with (and thus 'arise from') an 'action taken' to remove [an alien]." *Tazu*, 975 F.3d at 299.

There can be no dispute that Khalil's charge of removability clearly falls within that category. Khalil challenges *whether* he can be detained, and *whether* he can be removed. That goes to the heart—and is certainly "part of"—Khalil's removal. *Tazu*, 975 F.3d at 299. It is different in kind than the sort of collateral claims that might otherwise escape review—such as a claim (as in *E.O.H.C.*) about the

*length* of pre-removal detention. *See id.* But here, Khalil is specifically challenging "the process of deciding removability [and] the Government's decision to detain" him, and thus falls within the heartland of § 1252(b)(9). *E.O.H.C.*, 950 F.3d at 185 (citing *Jennings*, 138 S. Ct. at 841).

If Khalil ultimately receives a removal order, then he can raise any challenge that he sees fit with the appropriate court of appeals. That path remains available, and therefore, § 1252(b)(9) bars this Court's review.

> ii.     *Khail's Petition and Injunction Run Afoul of § 1252(g).*

Khalil's claims and request for relief also run headlong in the independent jurisdictional bar contained in § 1252(g). He challenges the Government's decisions to charge him with removability and then detain him, which arise "from the decision [and] action" to "commence proceedings." 8 U.S.C. § 1252(g). Regardless of his framing, this Court does not have jurisdiction to entertain such a challenge, and Khalil must do so through a petition for review.

Section 1252(g), as amended by the REAL ID Act, specifically deprives courts of jurisdiction, including habeas corpus jurisdiction, to review "any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to [1] commence proceedings, [2] adjudicate cases, or [3] execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). Section 1252(g) eliminates jurisdiction "[e]xcept as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory)."[4] *Id.* Though this section "does not sweep broadly,"

---

[4] Congress initially passed § 1252(g) in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. 104-208, 110 Stat. 3009. In 2005, Congress amended § 1252(g) by adding "(statutory or nonstatutory), including section 2241 of title 28, United States Code, or any other habeas corpus provision, and sections 1361 and 1651 of such title" after "notwithstanding any other provision of law." REAL ID Act of 2005, Pub. L. 109-13, § 106(a), 119 Stat. 231, 311. After Congress enacted the Homeland Security Act of 2002, § 1252(g)'s reference to the "Attorney General" includes the Secretary of Homeland Security. 6 U.S.C. § 202(3); *see also Enriquez-Perdomo v. Newman*, 54 F.4th 855, 863 & nn.3–4 (6th Cir. 2022) (explaining the historical development of § 1252(g)).

*Tazu*, 975 F.3d at 296, its "narrow sweep is firm," *E.F.L. v. Prim*, 986 F.3d 959, 964–65 (7th Cir. 2021). Except as provided by § 1252, courts "cannot entertain challenges to the enumerated executive branch decisions or actions." *Id.*

Section 1252(g) was "'directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion,'" to protect "'no deferred action' decisions and similar discretionary decisions." *Tazu*, 975 F.3d at 297 (quoting *AADC*, 525 U.S. at 485). This limitation exists for "good reason:: so "[a]t each stage the Executive has discretion to abandon the endeavor." *AADC*, 525 U.S. at 483–84. In addition, through § 1252(g) and other provisions of the INA, Congress "aimed to prevent removal proceedings from becoming 'fragment[ed], and hence prolong[ed].'" *Tazu*, 975 F.3d at 296 (alterations in original) (quoting *AADC*, 525 U.S. at 487); *see Rauda v. Jennings*, 55 F.4th 773, 777–78 (9th Cir. 2022) ("Limiting federal jurisdiction in this way is understandable because Congress wanted to streamline immigration proceedings by limiting judicial review to final orders, litigated in the context of petitions for review.").

Section 1252(g) prohibits district courts from hearing challenges to decisions and actions about *whether* and *when* to commence removal proceedings. *See Jimenez-Angeles v. Ashcroft*, 291 F.3d 594, 599 (9th Cir. 2002) ("We construe § 1252(g) . . . to include not only a decision in an individual case *whether* to commence, but also *when* to commence, a proceeding."). Circuit courts, including the Third Circuit, have held § 1252(g) applies to the discretionary decision to execute a removal order. *See Tazu*, 975 F.3d at 297–99 ("The plain text of § 1252(g) covers decisions about *whether* and *when* to execute a removal order."); *Rauda*, 55 F.4th at 777–78 ("No matter how [petitioner] frames it, his challenge is to the Attorney General's exercise of his discretion to execute [his] removal order, which we have no jurisdiction to review."); *E.F.L.*, 986 F.3d at 964–65 (holding that § 1252(g) barred review of the decision to execute a removal order while an individual sought administrative relief); *Camerena v. Director, Immigration and Customs Enforcement*, 988 F.3d 1268, 1272, 1274 (11th Cir. 2021) (holding that

15

§ 1252(g) bars review of challenges to the discretionary decision execute a removal order); *Arce v. United State*s, 899 F.3d 796, 800 (9th Cir. 2018) (finding that § 1252(g) would bar claims asking the Attorney General to delay the execution of a removal order); *Hamama v. Homan*, 912 F.3d 869, 874 (6th Cir. 2018) ("Under a plain reading of the text of the statute, the Attorney General's enforcement of long-standing removal orders falls squarely under the Attorney General's decision to execute removal orders and is not subject to judicial review."). Under the plain text of § 1252(g), the provision must apply equally to decisions and actions to *commence* proceedings that ultimately may end in the execution of a final removal order. *See Jimenez-Angeles*, 291 F.3d at 599; *see also Sissoko v. Rocha*, 509 F.3d 947, 950–51 (9th Cir. 2007) (holding that § 1252(g) barred review of a Fourth Amendment false-arrest claim that "directly challenge[d] [the] decision to commence expedited removal proceedings"); *Humphries v. Various Fed. USINS Emps.*, 164 F.3d 936, 945 (5th Cir. 1999) (determining that § 1252(g) prohibited review of an alien's First Amendment retaliation claim based on the Attorney General's decision to put him into exclusion proceedings).

The scope of § 1252(g) also bars district courts from hearing challenges to the *method* by which the Secretary of Homeland Security chooses to commence removal proceedings. *See Alvarez v. U.S. Immigr. & Customs Enf't*, 818 F.3d 1194, 1203 (11th Cir. 2016) ("By its plain terms, [§ 1252(g)] bars us from questioning ICE's discretionary decisions to commence removal—and thus necessarily prevents us from considering whether the agency should have used a different statutory procedure to initiate the removal process."); *Saadulloev v. Garland*, No. 3:23-CV-00106, 2024 WL 1076106, at *3 (W.D. Pa. Mar. 12, 2024) ("The Government's decision to arrest Saadulloev on April 4, 2023, clearly is a decision to 'commence proceedings' that squarely falls within the jurisdictional bar of § 1252(g)."). Arresting Khalil to commence removal proceedings is an "action . . . to commence proceedings" that this Court lacks jurisdiction to review. *See Tazu*, 975 F.3d at 298–99 ("Tazu also challenges the Government's re-detaining him for prompt removal. . . . While this claim does not challenge the Attorney General's

*decision* to execute his removal order, it does attack the *action* taken to execute that order. So under § 1252(g) and (b)(9), the District Court lacked jurisdiction to review it."). Under the same reasoning, § 1252(g) bars review of *where* to commence proceedings. And choosing to commence proceedings in Louisiana is a decision or action not subject to review. *See Tercero v. Holder*, 510 F. App'x 761, 766 (10th Cir. 2013) ("Accordingly, the Attorney General's discretionary decision to detain Mr. Tercero and others in New Mexico is not reviewable by way of a habeas petition.").

In *Tazu*, the Third Circuit carefully analyzed the plain text of the statute and determined that the word "decision" means "the act of settling or terminating (as a contest or controversy) by giving judgment." 975 F.3d at 297 (citing *Decision*, Webster's Third New International Dictionary (1966)). Applying this definition, the Court there held that "to settle or terminate the execution of a removal order, the Attorney General must choose a date for that removal." *Id.* Section 1252(g) expressly refers to the decision to commence proceedings, which includes whether and when to commence them. The decision whether to initiate a removal proceeding against an alien is the exact type of prosecutorial discretion Congress had in mind in enacting this provision and on all fours with the type of discretion the Third Circuit addressed in *Tazu*. The act of detaining Khalil is part and parcel of the initiation of the removal proceeding and therefore also barred by § 1252(g). *Id.* at 298-99.

That Khalil raises First and Fifth Amendment claims does not change the analysis. *See Tazu*, 975 F.3d at 296–98 (holding that any constitutional claims must be brought in a petition for review, not a separate district court action); *Elgharib v. Napolitano*, 600 F.3d 597, 602–04 (6th Cir. 2010) (noting that "a natural reading of 'any other provision of law (statutory or nonstatutory)' includes the U.S. Constitution" and finding additional support for the court's interpretation from the remainder of the statute). Indeed, the Supreme Court held that a prior version of § 1252(g) barred claims similar to those brought here. *See AADC*, 525 U.S. at 487–92. In *AADC*, the respondents had alleged that the "INS was selectively enforcing immigration laws against them in violation of their First and Fifth

Amendment rights." *Id.* at 473–74. The Supreme Court noted "an admission by the Government that the alleged First Amendment activity was the basis for selecting the individuals for adverse action." *Id.* at 488 n.10. The respondents argued to the Supreme Court that a lack of immediate review would have a "chilling effect" on their First Amendment rights. *Id.* at 488. Nonetheless, the Supreme Court held that the "challenge to the Attorney General's decision to 'commence proceedings' against them falls squarely within § 1252(g)." *Id.* at 487. Further, the Court found that "[a]s a general matter—and assuredly in the context of claims such as those put forward in the present case—an alien unlawfully in this country has no constitutional right to assert selective enforcement as a defense against his deportation." *Id.* at 488; *see also Cooper Butt ex rel Q.T.R. v. Barr*, 954 F.3d 901, 908–09 (6th Cir. 2020) (holding that the district court did not have jurisdiction to review a claim that the plaintiffs' father "was removed 'based upon ethnic, religious and racial bias' in violation of the Equal Protection Clause of the Fifth Amendment").

In his only attempt to address § 1252(g), Khalil argues in a footnote that the jurisdictional bar should not apply because he is challenging the Secretary of State's foreign policy determination rather than the Attorney General's decision to initiate removal proceedings. Pet'r Mot. 21, n.21. The Third Circuit specifically cautioned against reading § 1252(g) to allow "a challenge to the *Executive's* general lack of authority to violate due process, equal protection, the Administrative Procedure Act, or some other federal law." *Tazu*, 975 F.3d at 298 (emphasis added). In this case, it is the Secretary of State's determination that prompted the commencement of removal proceedings; in other words, but for the Secretary's determination, Khalil may not be in proceedings. This Court simply "cannot entertain challenges to the enumerated *executive* branch decisions or actions." *E.F.L.*, 986 F.3d at 964–65 (emphasis added). Doing so would improperly render § 1252(g) "a paper tiger" or "toothless." *Id.* at 965.

18

Notably, the Northern District of New York recently affirmed that § 1252(g) bars claims that closely mirror those brought by Khalil. *See Taal v. Trump*, No. 3:25-CV-335 (ECC/ML), 2025 WL 926207, at *2-3 (N.D.N.Y. Mar. 27, 2025). There, plaintiffs sought to enjoin two executive orders and attempted to prevent Taal's placement in removal proceedings and indeed conceded that Taal would have an opportunity to raise his constitutional challenges before immigration courts and the appropriate court of appeals. *Id.* at *2. So Taal was not foreclosed from obtaining judicial review, and the court recognized the importance of that notion. *Id.*

Although not cited in his opening papers, Khalil is likely to respond to the Government's jurisdictional arguments and rely on *Garcia v. Att'y Gen. of U.S.*, 553 F.3d 724 (3d Cir. 2009). The case does not help Khalil. The court there held on a petition for review that the Secretary of Homeland Security did not have the statutory authority to initiate removal proceedings against a lawful permanent resident after five years had passed since the alien had become a lawful permanent resident. *See id.* at 725–26. The court noted that § 1252(g) did not apply to the alien's petition for review of a final order of removal. *See id.* at 729. Here, in contrast, Khalil has not properly filed a petition for review after receiving a final order of removal. His collateral proceeding in this Court is precisely the type of fragmentation that Congress enacted §§ 1252(b)(9) and 1252(g) to prevent. *See Tazu*, 975 F.3d at 296. Moreover, the legal issue in *Garcia* is not applicable because the Secretary of Homeland Security commenced removal proceedings against Khalil less than five years after his status was adjusted to lawful permanent residence. Therefore, the INA does not itself remove the Secretary of Homeland Security's discretion to commence removal proceedings against Khalil. *See Tazu*, 975 F.3d at 297–98 ("*Garcia* addressed only a case in which the [INA] itself took away the Attorney General's authority. It does not reach [petitioner's] claims under other provisions.").

Again, Khalil can obtain review, just not before this Court in the first instance. This Court should follow *Tazu* and *AADC* and find that § 1252(g) bars district-court review and relief. *See Tazu*, 975 F.3d at 300 (reading § 1252(g) to funnel questions into a petition for review).

          *iii.*    *Section 1226(e) bars review of the decision to detain Khalil.*

Section 1226(e) serves as yet another jurisdictional bar that precludes district court review of Khalil's claim of "retaliatory detention that violates due process and the First Amendment." Pet'r Mot. 31–35. The decision to detain Khalil is governed by 8 U.S.C. § 1226(a), which is the discretionary detention statute that authorizes detention pending a final decision in removal proceedings. *See* 8 U.S.C. § 1226(a) (authorizing ICE to arrest and detain an alien "pending a decision on whether the alien is to be removed from the United States"). The INA explicitly bars judicial review of the discretionary decision over whether or not to detain someone placed in removal proceedings. Section 1226(e) provides that: "The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole." 8 U.S.C. § 1226(e).

Section 1226(e) covers the initial decision to detain Khalil. *See Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) (finding that § 1226(e) did not bar review because the petitioner did not challenge "his initial detention"); *see also Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) (not applying § 1226(e) because the petitioner did not challenge the "*initial detention* or bond decision") (emphasis added); *Mayorga v. Meade*, No. 24-CV-22131, 2024 WL 4298815, at *7 (S.D. Fla. Sept. 26, 2024) (applying § 1226(e) to hold that a § 1226(a) detainee "failed to establish that his detention is

subject to review"); *Saadulloev*, 2024 WL 1076106, at *3 (recognizing that there is no judicial review of the threshold detention decision).[5]

    B.  <u>Khalil Cannot Circumvent the Administrative Process Through Habeas.</u>

    Khalil filed a habeas petition, which in part challenges actions that relate to but are not necessarily about his detention. In his preliminary injunction motion, he requests this Court to enjoin the Secretary of State's foreign policy determination and enjoin the Government from enforcing an undefined policy that targets for detention and removal individuals who engaged in constitutionally protected activity. But these forms of relief are simply an attempt to circumvent the administrative process created by Congress.

    "Habeas is at its core a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). The writ of habeas corpus and its protections are "strongest" when reviewing "the legality of Executive detention." *INS v. St. Cyr.*, 533 U.S. 289, 301 (2001). Therefore, the traditional function of the writ is to seek one's release from unlawful detention. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 117 (2020) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)). Khalil may seek "simple release". *See Thuraissigiam*, 591 U.S. at 119 ("Claims so far outside the core of habeas may not be pursued through habeas.") (internal quotations and citations omitted). The Third Circuit carefully considered the habeas implications in *Tazu* and reaffirmed that a petitioner does not have a

---

[5] That does not mean Khalil is unable to challenge his custody determination. Khalil may seek review as to whether he is properly subject to his removal provision. 8 C.F.R. § 1003.19(h)(2)(ii). If adverse, Khalil may seek appeal of that determination. 8 C.F.R. § 1003.19(f). But Khalil does not allege to have done so, and that poses a separate jurisdiction hurdle that this Court could use to justify dismissal his habeas claim. *See Jean-Claude W. v. Anderson*, No. 19-16282 (KM), 2021 WL 82250, at *2 (D.N.J. Jan. 11, 2021) ("To have jurisdiction to consider whether [petitioner] was denied due process, … I must confirm that [petitioner] has exhausted all available administrative remedies; if he has not, then I cannot review the merits of his claim." (citing *Yi v. Maugans*, 24 F.3d 500, 503–04 (3d Cir. 1994); *Okonkwo v. INS*, 69 F. App'x 57, 59–60 (3d Cir. 2003))). "Because the exhaustion requirement is jurisdictional, the failure of a habeas petitioner to present his [or her] claims first to the immigration courts is 'fatal to the District Court's jurisdiction over [the petitioner's] habeas petition.'" *Jelani B. v. Anderson*, No. 20-6459 (SDW), 2020 WL 5560161, at *2 (D.N.J. Sept. 17, 2020) (quoting *Duvall v. Elwood*, 336 F.3d 228, 233–34 (3d Cir. 2003)).

constitutional right to anything more than the petition-for-review process. 975 F.3d at 300. That process is "an adequate substitute for a petitioner's historic right to habeas corpus." *Id.* Hence, the right to habeas for detained aliens likely guarantees only one of two forms of relief: (1) release in the form of removal from the country, *Tazu*, 375 F.3d at 300 (citing *Thuraissigiam*, 591 U.S. at 119); or (2) a bond hearing before an IJ after detention has become unconstitutionally prolonged, *German Santos v. Warden Pike Cty. Corr. Fac.*, 965 F.3d 203, 214 (3d Cir. 2020).[6]

Khalil seeks more than just release; he seeks vacatur of the Secretary of State's determination and to enjoin an undefined amorphous policy. Pet'r Mot. 40. That is simply a misapplication of the Great Writ and an attempt to work around his administrative proceedings. As argued above, he can obtain review related to this removal from of an IJ, the BIA, and then ultimately the court of appeals. *See* Sect.I.A.i-ii. He can also obtain a custody determination in front of the IJ as to whether he is properly subject to his removal provision. 8 C.F.R. § 1003.19(h)(2)(ii). If adverse, Khalil may seek appeal of that determination. 8 C.F.R. § 1003.19(f). At bottom, his detention and removal claims are reviewable. Khalil must pursue those claims in the right forum.

C.   Khalil is Unlikely to Succeed Because Venue in this District is Improper.

Khalil is also unlikely to succeed on the merits, because venue is improper in this district for his amended complaint (and the preliminary injunction motion upon which it rests). Khalil bears the burden to establish venue, as the court must accept "well-pled factual allegations regarding venue as true." *Dobrick-Peirce v. Open Options, Inc.*, No. 2:05CV1451, 2006 WL 2089960, at *4 (W.D. Pa. July 25, 2006) (citing *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 368 (3rd Cir. 2002)). Khalil has not attempted to do meet his burden. *See* Amended Pet. ¶¶ 16-18 (referring to New York despite noting Khalil being in Louisiana). Nor is it clear how he could. *See* 28 U.S.C. § 1391(e). Neither Khalil nor any Respondent resides here. Nor did any substantial event take place here: From the decision to designate Khalil for

---

[6] This form of relief would only be permissible in the context of § 1226(c) detention.

removal, to his apprehension, to his ultimate detention—all of those events took place (or are taking place) elsewhere. As such, even if this Court has a limited habeas jurisdiction over this suit (ECF 153)—a point the Government contests—that does not make it a proper forum for every claim, and for all time. As for Khalil's petition and accompanying motion for injunctive relief, venue is not proper in this district.

### D. Khalil's Requested Injunction to Vacate the Secretary's Determination Invokes an Unreviewable Political Question.

Even if this Court determined that the jurisdiction-stripping provisions on the INA did not apply and that Khalil could seek an injunction in this habeas action, which it should not, vacatur of the Secretary's foreign policy determination is barred by the political question doctrine.[7]

As noted by the Supreme Court, the gravamen of any political question is "essentially a function of the separation of powers." *Baker v. Carr*, 369 U.S. 186, 217 (1962). To guide courts in determining when such a question is raised, the Supreme Court identified six "formulations" that indicate a question has been committed to the political branches:

> Prominent on the surface of any case held to involve a political question is found a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Id.*; *accord Gross v. German Foundation Indus. Initiative*, 456 F.3d 363, 377 (3d Cir. 2006). "A finding of any one of the six factors indicates the presence of a political question." *Gross*, 456 F.3d at 377. Khalil's

---

[7] This Court cannot review this question under the doctrine. On a petition for review, the appropriate court of appeals would consider whether its precedent allows for any review and if so, the extent of that review.

request to second-guess the Secretary of State's determination and the Executive's foreign policy considerations implicates *all* six.

Necessarily, Khalil's requested injunction sits at the intersection of two issues textually committed to the political branches of the government: (1) foreign affairs, *see State of California v. United States*, 104 F.3d 1086, 1091 (9th Cir. 1997) ("the issue of protection of the States from invasion implicates foreign policy concerns which have been constitutionally committed to the political branches."); *see also El-Shifa Pharmaceutical Industries Co. v. United States*, 607 F.3d 836, 842 (D.C. Cir. 2010) ("The political question doctrine bars our review of claims that, regardless of how they are styled, call into question the prudence of the political branches in matters of foreign policy or national security constitutionally committed to their discretion."); and (2) immigration policy, *see Mathews v. Diaz*, 426 U.S. 67, 81 (1976) ("the responsibility for regulating the relationship between the United States and our alien visitors has been committed to the political branches of the Federal Government."). As observed by the Supreme Court, "any policy towards aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations, the war power, and the maintenance of a republican form of government. Such matters are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference." *Harisiades v. Shaughnessy*, 342 U.S. 580, 588-89 (1952).

Additionally, there is simply no manageable standard on what constitutes "potentially serious adverse foreign policy consequences." 8 U.S.C. § 1227(a)(4)(C)(i). Nor is there a manageable standard on what constitutes a "compelling foreign policy interest." 8 U.S.C. § 1227(a)(4)(C)(ii). The Third Circuit has recognized that not all foreign policy concerns pose a political question but done so as long "as it involves normal principles of interpretation of the constitutional provisions at issue, normal principles of statutory construction, or normal principles of treat or executive agreement construction." *Gross*, 465 F.3d at 388 (cleaned up). Although Khalil is likely to argue that settled First

24

Amendment principles provide the standard to address the constitutional question, *see Hanlon*, 99 F.4th at 153, this case does not avail itself to a manageable standard that would not interfere with the Executive's recognized power to "expel or exclude aliens." *State of New Jersey v. United States*, 91 F.3d 463, 469-70 (3d Cir. 1996) (finding this power as implicating the second *Baker* factor). For this Court to determine what constitutes a serious or compelling foreign policy consequence, it would have to inescapably obtain information on what the Executive considered in making the determination and how much weight it gave various factors while sifting through numerous documents and materials, all of which counsel against accepting Khalil's invitation into a sensitive area. *See Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 489 (D.N.J. 1999).

Khalil is asking this Court to "displac[e] the Executive in its foreign policy making role" and to reverse a political decision that has already been made. *Gross*, 456 F.3d at 389-90. The request implicates factors three, four, five, and six of the *Baker* test. He is in effect asking "the Court to second guess foreign policy decisions that the Constitution has expressly committed to the political branches." *Nguyen v. United States*, No. 23-CV-06047-VKD, 2024 WL 1382470, at *5 (N.D. Cal. Apr. 1, 2024), *aff'd*, No. 24-2221, 2025 WL 880141 (9th Cir. Mar. 21, 2025); *see also Mobarez v. Kerry*, 187 F. Supp. 3d 85, 92 (D.D.C. 2016) (Ketanji Brown Jackson, J.) ("[I]f the court is being called upon to serve as a forum for reconsidering the wisdom of discretionary decisions made by the political branches in the realm of foreign policy or national security, then the political-question doctrine is implicated, and the court cannot proceed."). Second-guessing of this sort of discretion is exactly what the political question doctrine was meant to insulate from judicial review. *See Gross*, 456 F.3d at 390 (noting that factors four, five, and six "is relevant only if judicial resolution of a question would contradict prior decisions taken by a political branch in those limited context where such contradiction would seriously interfere with important governmental interest") (quotations omitted).

E.  Khalil is Unlikely to Succeed in his Due Process Challenges to his Detention.

Khalil unconvincingly argues that his detention violates due process. Pet'r Mot. 31–35. But this argument runs contrary Supreme Court and Third Circuit precedent.

"Detention of aliens pending their removal in accordance with the INA is constitutional and is supported by legitimate governmental objectives." *Hope*, 972 F.3d at 328–29 (citing *Demore*, 538 U.S. at 531, and *Wong Wing v. United States*, 163 U.S. 228, 235 (1896)). Indeed, the Supreme Court "has firmly and repeatedly endorsed the proposition that Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Demore*, 538 U.S. at 522. Because "any policy toward aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations, the war power, and the maintenance of a republican form of government." *Id.* at 522–23. Accordingly, the Supreme Court has long held that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process." *Id.* at 522–23. This has resulted in the Supreme Court ruling that individuals held during the pendency of removal proceedings may be detained even without an individualized determination as to flight risk or dangerousness. *See, e.g., Carlson v. Landon*, 342 U.S. 524, 528–34, 538 (1952); *Wong Wing*, 163 U.S. at 235 (holding deportation proceedings "would be vain if those accused could not be held in custody pending the inquiry into their true character.").

Instead of addressing this line of cases, Khalil argues that mitigating flight risk and preventing danger to the community can be the "*only* legitimate purposes for immigration detention." Pet'r Mot. 32. That is incorrect. "The enforcement of our immigration laws is the government's sovereign prerogative, and detention is *necessarily* a part of the removal procedure." *Miranda v. Garland*, 34 F.4th 338, 366 (4th Cir. 2022) (emphasis added). *Carlson* is particularly instructive here. There, four petitioners had been arrested and charged with being members of the Communist Party of the United States. *Id.* at 529. The petitioners challenged their detention without bond while in custody during the

pendency of consideration of their deportability. *Id.* The Supreme Court upheld their detention without bond, recognizing that "evidence of membership plus personal activity in supporting and extending the Party's philosophy concerning violence gives adequate ground for detention." *Id.* at 535. Similarly here, Khalil is charged as removable because the Secretary of State certified that Khalil's presence or activities in the United States would have potentially serious adverse foreign policy consequences and would compromise a compelling foreign policy interest. "It cannot be expected that the Government should be required in addition to show specific acts of sabotage or incitement to subversive action." *Id.* at 535. Therefore, Khalil is wrong, Pet'r Mot. 32, and his current detention is not "tantamount to punishment." *Hope*, 972 F.3d at 329.

Khalil misplaces his reliance on *Zadvydas v. Davis*, Justice Kennedy's concurrence in *Demore*, and *German Santos*. Pet'r Mot. 31–32. In *Zadvydas*, the detention statute at issue, § 1231, concerns post-removal hearing detention where indefinite detention without the possibility of removal posed a "serious constitutional problem." 533 U.S. 678, 690 (2001). Khalil suggests that his detention is similarly positioned. Pet'r Mot. 32. But § 1226 does not pose those same problems. The statute authorizes detention until the end of one's removal proceedings, which is "of a much shorter duration" than the one posed in *Zadvydas. Miranda*, 34 F.4th at 361. Although the decisions related to § 1226(c) detainees, *Demore* (limited to Justice Kennedy's concurrence), and *German Santos* are perhaps more analogous to Khalil's situation, even those decisions noted that due process concerns arise only *after* a prolonged detention period. *See Demore*, 538 U.S. at 532 ("[A] lawful permanent resident alien such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness if the *continued* detention became unreasonable or unjustified."); *German Santos*, 965 F.3d at 213 (holding that "more than two-and-a-half years" was "an unreasonably long time, and there is no end in sight"). But duration alone cannot sustain a due process challenge for a § 1226(a) detainee. *Borbot v. Warden Hudson Cty. Corr. Fac.*, 906 F.3d 272, 277 (3d Cir. 2018).

Khalil challenges the *initial* decision of detention. But the Supreme Court has indeed recognized that "detention or temporary confinement, as part of the means necessary to give effect to the provisions for the exclusion or expulsion of aliens, would be valid." *Wong Wing*, 163 U.S. at 235; *see also Carlson*, 342 U.S. at 538 (same). To the extent that Khalil's due process challenge has *any* merit, his arguments are premature.

    F.   Khalil's First Amendment Claim is Not Substantially Likely to Succeed.

Khalil spends most of his efforts to undermine the Secretary of State's determination and some undefined policy, arguing that they are retaliatory, viewpoint discrimination, and void for vagueness. Pet'r Mot. 11–31. His contentions on this point only further confirm why the challenge must first be exhausted through the congressionally created scheme, ultimately culminating in a petition for review before the appropriate court of appeals. *See* supra at Sect. I.A.i-ii. But even if the Court were to consider the merits of Khalil's First Amendment challenge, his claim is likely to fail.

Contrary to Khalil's assertion that the Government's arrest and detention of him are retaliatory, the Government initiated removal proceedings against Khalil based on: (1) the Secretary of State's determination that Khalil's activities or presence has serious adverse foreign policy consequences for the United States and that his presence or activities would compromise a compelling foreign policy interest, *see* 8 U.S.C. § 1227(a)(4)(C)(i)-(ii); and (2) the allegation that he was inadmissible at the time of his application for adjustment of status to lawful permanent residency, due to fraud or the willful misrepresentation of a material fact, in violation of 8 U.S.C. § 1227(a)(1)(A). *See* Filed NTA. Both grounds of removability are facially valid reasons to initiate removal proceedings and preclude Khalil from demonstrating that his arrest and detention violate his rights under the First Amendment. *See, e.g.*, *Nieves v. Bartlett*, 587 U.S. 391, 402 (2019) (explaining that the presence of "probable cause" will overcome the allegation that an officer's arrest of a suspect was retaliatory); *see also Falcone v. Dickstein*, 92 F.4th 193, 211–12 (3d Cir. 2024). Khalil makes no attempt to show that similarly situated

28

individuals were not detained and did not have removal proceedings initiated against them. That is sufficient to defeat his theory of First Amendment retaliation. *See, e.g.*, *Thomas v. Weiss*, No. 21-CV-14554-RMB-EAP, 2024 WL 2830662, at *12 (D.N.J. June 4, 2024); *Gonzalez v. Trevino*, 42 F.4th 487, 492-93 (5th Cir. 2020) (holding plaintiff's retaliatory arrest claim failed because probable cause existed for her arrest and plaintiff failed to offer evidence that similarly situated individuals who mishandled a government petition were not arrested), *cert. granted*, 142 S. Ct. 325 (2023); *Morales v. Maxwell*, No. CV 21-07263 (ZNQ) (RLS), 2024 WL 4651757, at *10 n.14 (D.N.J. Nov. 1, 2024). Indeed, the Supreme Court has explained that a removal proceeding "is a purely civil action to determine eligibility to remain in the country," and is not meant to punish for past conduct. *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1038 (1984). With respect to the Government's charges of removability against him, Khalil's "[p]ast conduct is relevant only insofar as it may shed light on . . . [his] right to remain [in the United States]." *Id.*

Khalil's failure to disclose certain information in his application for lawful permanent resident status – namely, his membership in certain organizations and his employment by the Syria Office in the British Embassy in Beirut (in violation of 8 U.S.C. § 1227(a)(1)(A)) – do not represent "protected speech" under the First Amendment.[8] It is black-letter law that misrepresentations in this context are not protected speech. *See, e.g., Illinois ex rel. Madigan v. Telemarketing Assocs., Inc.*, 538 U.S. 600, 611 (2003) ("[T]he First Amendment does not shield fraud"); *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 340 (1974) (explaining that "there is no constitutional value in false statements of fact"); *Price v. U.S. INS*, 962 F.2d 836, 842-44 (9th Cir. 1992) (balancing First Amendment interests of applicant for naturalization

---

[8] The amended NTA states that Khalil failed to disclose his membership in the United Nations Relief and Works Agency for Palestine Refugees and the Columbia University Apartheid Divest. *See* Filed NTA. The Third Circuit has explained that "[a] misrepresentation is material if it tends to shut off a line of inquiry which is relevant to the alien's eligibility and which might well have resulted in a proper determination that he be excluded." *Koszelnik v. Sec. of Dep't of Homeland Sec.*, 828 F.3d 175, 180 (3d Cir. 2016) (internal quotation marks and citation omitted).

with government's interest in obtaining relevant information; holding that, by refusing to answer questions about his associations, petitioner forfeited First Amendment protections to challenge the agency's denial of his application); *United States v. Rowlee*, 899 F.2d 1275, 1279 (2d Cir. 1990) (rejecting First Amendment challenge to making false statements in connection with fraudulent tax return). Thus, Khalil's First Amendment allegations are a red herring, and there is an independent basis to justify removal sufficient to foreclose Khalil's constitutional claim here.

Khalil fundamentally misapprehends how the First Amendment applies in this context. Although "[f]reedom of speech and of press is accorded aliens residing in this country," *Bridges v. Wixon*, 326 U.S. 135, 148 (1945), these rights are "less robust than those of citizens in certain discrete areas," *Bluman v. Fed. Election Comm'n*, 800 F. Supp. 2d 281, 287 (D.D.C. 2011) (three-judge panel) (Kavanaugh, J.) (citing *Harisiades*, 342 U.S. at 591–92), *aff'd*, 565 U.S. 1104 (2012). *Harisiades* is instructive. There, the Supreme Court reviewed a First Amendment challenge to removal. The petitioners were ordered deported because they associated with or were members of the Communist Party. *Harisiades*, 342 U.S. at 582-83. Specifically, each petitioner was found deportable because of membership in an organization which advocates overthrow of the Government by force and violence. *Id.* at 582-83. The petitioners all raised in part that their deportation abridged the freedom of speech and assembly protected by the First Amendment. *Id.* at 584. The Supreme Court ruled that the First Amendment did not "prevent the deportation of these aliens" just on membership alone. *Id.* at 582-83, 592.

Moreover, as for the ground of removability under 8 U.S.C. § 1227(a)(4)(C), courts have consistently held that laws or decisions concerning foreign policy and immigration enforcement are relegated to the political branches of government and can overcome a challenge to certain individual rights under the First Amendment. *See Kleindienst v. Mandel*, 408 U.S. 753, 766 (1972) (declining to balance First Amendment interest of college professors and desire for the admission of a Marxist

speaker against "Congress' plenary power to make rules for the admission of aliens"); *United States v. Aguilar*, 883 F.2d 662, 696 (9th Cir.1989) ("The government's interest in controlling immigration outweighs appellants' purported religious interest....") (citing *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 210, (1953); *Fiallo v. Bell*, 430 U.S. 787, 792 (1977)); *Presbyterian Church (U.S.A.) v. United States*, 752 F. Supp. 1505, 1513–14 (D. Ariz., 1990) ("[T]he government's interest in controlling immigration outweighs appellants' purported religious interest." (quoting *Aguilar*, 883 F.2d at 696)). Even when weighing First Amendment considerations, courts must give substantial deference to the governmental findings when, as here, the "litigation implicates sensitive and weighty interests of national security and foreign affairs." *Holder v. Humanitarian L. Project*, 561 U.S. 1, 33–34 (2010); *see also id.* at 34 ("[W]hen . . . collecting evidence and drawing factual inferences in [the area of national security and foreign relations], . . . respect for the Government's conclusions is appropriate.").

Khalil's circumstance not only implicates deference to the Executive's foreign policy considerations but also Congress's intention to prioritize foreign policy considerations to the admission and deportability of foreign nationals. Congress specifically carved out an exception and provided that an alien would not be deportable for "past, current, or expected beliefs, statements, or associations, if such beliefs, statements, or associations would be lawful within the United States." 8 U.S.C. § 1182(a)(3)(C)(iii).[9] In doing so, Congress delegated a significant amount of discretion to the Secretary of State such that the exception could be overridden if there was a personal determination that presence or activities "would compromise a compelling United States foreign policy interest." *Id.* The Executive can properly act when Congress has authorized it to do so. *See Haig v. Agee*, 453 U.S. 280, 282, 289, 309 (1981) (upholding Executive authority to revoke passport on national security and foreign policy grounds after concluding revocation was authorized by Congress). "The mere fact that

---

[9] This exception is incorporated into 8 U.S.C. § 1227(a)(4)(C)(ii).

[Khalil]… engaged in criticism of the Government does not render his conduct beyond the reach of the law."[10] *Id.* at 309. That is what happened here.

That Khalil also challenges some undefined policy does not change the analysis. He does not point to any consummated decision that itself affects rights and obligations. *See Lujan v. Nat'l Wildlife Federation*, 497 U.S. 870, 890 (1990) ("The term 'land withdrawal review program' (which as far as we know is not derived from any authoritative text) does not refer to a single [Bureau of Land Management] order or regulation, or even to a completed universe of particular BLM orders and regulations. It is simply the name by which petitioners have occasionally referred to the continuing (and thus constantly changing) operations of the BLM in reviewing withdrawal revocation applications and the classifications of public lands and developing land use plans as required by the FLPMA. It is no more an identifiable 'agency action'—much less a 'final agency action'—than a 'weapons procurement program' of the Department of Defense or a 'drug interdiction program' of the Drug Enforcement Administration."); *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (requiring a final agency action to "mark the consummation of the agency's decisionmaking process" and "the action must be one by which "rights or obligations have been determined," or from which "legal consequences will flow").

---

[10] Khalil cites an Associated Press article as evidence of the lack of "clarity" regarding what activities he supposedly "led" that were aligned with Hamas. See Pet'r Mot. at 26-27 and n.25. The article states that Khalil and other students were under investigation by Columbia University and that he faced disciplinary charges for his involvement in the "Columbia University Apartheid Divest group," as well as "sanctions for potentially helping to organize an 'unauthorized marching event' in which participants glorified Hamas' Oct. 7, 2023, attack [on Israelis] and [for] playing a 'substantial role' in the circulation of social media posts criticizing Zionism, among other acts of alleged discrimination." https://perma.cc/HPH9-T2SV, at page 5 (last visited Mar. 30, 2025). The article further reports that Khalil denied these allegations. *Id.*

II.    <u>Khalil Cannot Establish that He Would Suffer Legal Irreparable Harm.</u>

Khalil falls short of establishing "irreparable injury is likely in the absence of an injunction." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); Pet'r Mot. 35-38. This injunction is not the "only way of protecting [him] from harm." *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir. 1992). As the Government argued above, Khalil has multiple avenues to seek release and challenge the Secretary of State's foreign policy determination. *See supra* at Sect.I.A.i-ii, iv. Therefore, this Court should find Khalil's failure to establish this prong dispositive and deny his motion. *See Instant Airfreight Co. v. C.F. Airfreight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989) ("A failure to demonstrate irreparable injury must necessarily result in the denial of a preliminary injunction.").

The Government does not quarrel with Khalil that separation from his wife and continued detention are likely to be stressful, Pet'r Mot. 37, but few are personally unburdened by being placed in immigration detention during their removal proceedings. Khalil has been detained for just over three weeks, and courts have recognized lengthier detention periods that do not create irreparable harm. *See, e.g., Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir.1997) (fifteen-month long stint in administrative detention does not constitute atypical or significant hardship); *Armstrong v. Overton*, Civ. Act. No. 07-152, 2008 WL 360891, at *2 (W.D. Pa. Feb. 8, 2008) (thirty days of solitary confinement did not create irreparable harm to warrant an injunction). More importantly, however, "injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. That Khalil may be eventually ordered removal is not sufficient. *See Nken v. Holder*, 556 U.S. 418, 435 (2009).

Khalil fails to meet that high standard.

III.    <u>The Injunction Would be Contrary to Public Interest.</u>

Khalil focuses solely on the alleged First Amendment interests and relies on those to argue that the equities favor him and therefore warrant an injunction. Pet'r Mot. 38-40. However he misses a key component of the analysis.

It is well settled that the public interest in the enforcement of the United States' immigration laws is significant. *See, e.g.*, *United States v. Martinez-Fuerte*, 428 U.S. 543, 556-58 (1976); *Nken*, 556 U.S. at 435. There is "always a public interest in prompt execution of removal orders." *Nken*, 556 U.S. at 436. That principle extends to the prompt resolution of determining removability because "[t]he continued presence of an alien lawfully deemed removable undermines the streamlined removal proceedings IIRIRA established, and 'permit[s] and prolong[s] a continuing violation of United States law.'" *Id.* (quoting *AADC*, 525 U.S., at 490). Khalil also fails to acknowledge that the Government has a valid statutory basis for his detention. 8 U.S.C. § 1226(a). The immigration interests outweigh Khalil's weaker First Amendment interests in this context. *See supra* at Sect.I.E.

Finally, the public interest would be better served by maintaining the status quo, or "the last, peaceable, noncontested status of the parties." *Kos Pharm., Inc.*, 369 F.3d at 708. That moment is easily identifiable: Khalil being detained and charged as removable. By vacating a removal charge and releasing Khalil, an injunction would necessarily and improperly disturb that status quo. *See LaChemise Lacoste v. General Mills, Inc.*, 487 F.2d 312, 314 (3d Cir. 1973) (refusing to issue a preliminary injunction because it "would necessarily have gone beyond the maintenance of the status quo"). Granting Khalil's requested injunction would lead to duplicative litigation, expend judicial resources, and create confusion over Khalil's immigration proceedings, all of which tip the balance of public interest equities in the Government's favor. *Contra Flowserve Corp. v. Burns Int'l Servs. Corp.*, 423 F. Supp. 2d 433, 440 (D. Del. 2006) ("The Court further concludes that the decision to issue a preliminary injunction in this case weighs in favor of the public interest. By preserving the status quo, the Court will prevent

34

duplicative litigation against Burns thereby conserving judicial resources and protecting the integrity of the Court's jurisdiction over this action. In addition, the preservation of the status quo will prevent confusion and disruption in the administration and resolution of the underlying asbestos cases.").

IV.    The Court Should Require Bond.

The Court may issue a preliminary injunction "only if the movant gives security" for "costs and damages sustained" by the non-moving party if they are later found to "have been wrongfully enjoined." Fed. R. Civ. P. 65(c). "'Although the amount of the bond is left to the discretion of the court, the posting requirement is much less discretionary.'" *Hoxworth v. Blinder, Robinson & Co., Inc.*, 903 F.2d 186, 210 (3d Cir. 1990) (quoting *Frank's GMC Truck Center, Inc. v. General Motors Corp.*, 847 F.2d 100, 103 (3d Cir.1988), *holding modified by Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421 (3d Cir. 1994)). In the event the Court issues an injunction here, the Court should require Khalil to post an appropriate bond commensurate with the scope of any injunction. *See DSE, Inc. v. United States*, 169 F.3d 21, 33 (D.C. Cir. 1999) (stating that Rule 65(c) places "broad discretion in the district court to determine the appropriate amount of an injunction bond").

\*      \*      \*

## CONCLUSION

For the foregoing reasons, the Court should deny Khalil's motion for a preliminary injunction.

Dated: April 2, 2025

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division

DREW C. ENSIGN
Deputy Assistant Attorney General
Office of Immigration Litigation

AUGUST E. FLENTJE
Acting Director

SARAH S. WILSON
Assistant Director

ALANNA T. DUONG
Senior Litigation Counsel

*s/ Dhruman Y. Sampat*
DHRUMAN Y. SAMPAT
Senior Litigation Counsel
Office of Immigration Litigation
General Litigation and Appeals Section
PO Box 878, Ben Franklin Station
Washington, D.C. 20044
dhruman.y.sampat@usdoj.gov.

JOSHUA C. McCROSKEY
RACHEL BROWNING
Trial Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing filing was served on counsel of record via this Court's CM/ECF system on April 2, 2025.

*s/ Dhruman Y. Sampat*
DHRUMAN Y. SAMPAT
Senior Litigation Counsel