IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Mahmoud KHALIL,<br><br>    Petitioner,<br> v.<br><br>William P. JOYCE, *et al.*,<br><br>    Respondents. | Case No. 2:25-cv-1963 (MEF) |

**BRIEF OF IMMIGRATION REFORM LAW INSTITUTE AS**
***AMICUS CURIAE* IN SUPPORT OF RESPONDENTS AND IN**
**OPPOSITION TO PETITIONER'S MOTION FOR PRELIMINARY**
**INJUNCTION**

JOHN M. MIANO
N.J. Bar No. 020012005
MATT A. CRAPO*
D.C. Bar No. 473355
Immigration Reform Law Institute
25 Massachusetts Ave., NW, Ste 335
Washington, DC 20001
(202) 232-5590
jmiano@verizon.net
mcrapo@irli.org

* *pro hac vice* application forthcoming

Counsel for *Amicus Curiae*
Immigration Reform Law Institute

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1, *amicus curiae* Immigration Reform Law Institute makes the following disclosures:

1) For non-governmental corporate parties please list all parent corporations: None.

2) For non-governmental corporate parties please list all publicly held companies that hold 10% or more of the party's stock: None.

Dated: April 2, 2025                      Respectfully submitted,

                                          s/ John Miano
                                          JOHN M. MIANO

i

# TABLE OF CONTENTS

**Page**

DISCLOSURE STATEMENT ................................................................................. i

TABLE OF AUTHORITIES ................................................................................. iii

INTEREST OF *AMICUS CURIAE* ........................................................................ 1

INTRODUCTION ................................................................................................... 1

ARGUMENT .......................................................................................................... 3

    I. Khalil is Unlikely to Succeed on the Merits Because This Court Lacks Jurisdiction to Enjoin Petitioner's Removal Proceedings ........................... 3

    II. Khalil's habeas petition is premature........................................................... 7

CONCLUSION ..................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Arizona Dream Act Coal. v. Brewer*,
  855 F.3d 957 (9th Cir. 2017) ................................................................................ 1

*Bonhometre v. Gonzales*,
  414 F.3d 442 (3d Cir. 2005) ................................................................................. 4

*Dep't of Homeland Sec. v. Thuraissigiam*,
  591 U.S. 103 (2020) ............................................................................................ 9

*Kolkevich v. Att'y Gen.*,
  501 F.3d 323 (3d Cir. 2007) ................................................................................. 9

*Massieu v. Reno*,
  91 F.3d 416 (3d Cir. 1996) ........................................................................... 5, 6, 9

*Santos-Zacaria v. Garland*,
  598 U.S. 411 (2023) ............................................................................................ 6

*Matter of Silva-Trevino*,
  26 I. & N. Dec. 826 (B.I.A. 2016) ....................................................................... 1

*Tazu v. Att'y Gen.*,
  975 F.3d 292 (3d Cir. 2020) ................................................................................. 4

*Trump v. Hawaii*,
  585 U.S. 667 (2018) ............................................................................................ 1

*United States v. Texas*,
  599 U.S. 670 (2023) ............................................................................................ 1

*Verde-Rodriguez v. Att'y Gen.*,
  734 F.3d 198 (3d Cir. 2013) ................................................................................. 9

*Wash. All. Tech Workers v. U.S. Dep't Homeland Security*,
  50 F.4th 164 (D.C. Cir. 2022) .............................................................................. 1

## STATUTES

5 U.S.C. § 703 ............................................................................................................... 6

8 U.S.C. § 1182(a)(3)(C)(iii) ........................................................................................ 7

8 U.S.C. § 1182(a)(6)(C)(i) ...................................................................................... 2, 9

8 U.S.C. § 1227(a)(1)(A) ..................................................................................... 2, 8, 9

8 U.S.C. § 1227(a)(4)(C)(i) ............................................................................. 1, 2, 5, 7

8 U.S.C. § 1227(a)(4)(C)(ii) ........................................................................................ 7

8 U.S.C. § 1252(a)(5) ......................................................................................... 3, 6, 8, 9

8 U.S.C. § 1252(b)(9) ........................................................................................... 3, 5, 6

8 U.S.C. § 1252(d)(1) ................................................................................................ 3, 6

8 U.S.C. § 1252(g) ................................................................................................ 3, 5, 6

## INTEREST OF AMICUS CURIAE

The Immigration Reform Law Institute ("IRLI") is a non-profit 501(c)(3) public interest law firm dedicated to litigating immigration-related cases on behalf of, and in the interests of, United States citizens, and also organizations and communities seeking to control illegal immigration. IRLI has litigated or filed *amicus curiae* briefs in a wide variety of immigration-related cases before federal courts and administrative bodies, including *Trump v. Hawaii*, 585 U.S. 667 (2018); *United States v. Texas*, 599 U.S. 670 (2023); *Ariz. Dream Act Coalition v. Brewer*, 855 F.3d 957 (9th Cir. 2017); *Wash. All. Tech Workers v. U.S. Dep't Homeland Security*, 50 F.4th 164 (D.C. Cir. 2022); and *Matter of Silva-Trevino*, 26 I. & N. Dec. 826 (B.I.A. 2016).[1]

## INTRODUCTION

On March 8, 2025, Petitioner was detained by Immigration and Customs Enforcement ("ICE") and charged with being removable under 8 U.S.C. § 1227(a)(4)(C)(i) because the Secretary of State determined that his presence or activities in the United States would have serious adverse foreign policy consequences for the United States. ECF Doc. 124 at 17 (PageID: 609); ECF Doc.

---

[1] No counsel for a party authored this brief in whole or in part and no person or entity, other than *amicus curiae*, its members, or its counsel, has contributed money that was intended to fund preparing or submitting the brief.

1

90-1 at 2 (PageID: 125).[2] Petitioner claims that by seeking his removal under 8 U.S.C. § 1227(a)(4)(C)(i), the government is violating his First Amendment right to free speech. ECF Doc. 124 at 23-35 (PageID: 615-27). To cure this alleged violation, Khalil asks this Court to release him and enjoin Respondents from seeking to remove him (and others) under the INA's "Foreign Policy Ground." ECF Doc. 124 at 52 (PageID: 644).

This Court should deny Petitioner's motion for preliminary injunction because it lacks jurisdiction to enjoin the actions that the government has taken to remove Khalil. Moreover, Khalil's petition is premature because the question of whether his alleged speech is lawful or whether the government has a countervailing compelling interest are questions that must be resolved in the first instance by the immigration courts. Not to mention the question of whether Khalil is removable on the separate and independent ground of deportability that has been lodged against him. Congress has funneled review of all questions of law and fact regarding removability, including constitutional claims, into the courts of appeal following full adjudication

---

[2] Subsequently, on March 17, 2025, ICE lodged an additional charge of deportability against Khalil under 8 U.S.C. § 1227(a)(1)(A), alleging that Khalil was inadmissible under 8 U.S.C. § 1182(a)(6)(C)(i) at the time of adjustment of status because he sought to procure that benefit by fraud or by willfully misrepresenting a material fact. ECF Doc. 90-1 at 5 (PageID: 128).

by the immigration courts. Khalil's attempt to leapfrog the administrative process while enjoining that very process should be rejected.

## ARGUMENT

### I. Khalil is Unlikely to Succeed on the Merits Because This Court Lacks Jurisdiction to Enjoin Petitioner's Removal Proceedings.

Congress has declined to empower district courts to review most legal or constitutional claims relating to removal. To prevent piecemeal litigation and streamline the removal process, Congress requires aliens to exhaust their administrative remedies before seeking judicial review of their claims in a "petition for review filed with an appropriate court of appeals." 8 U.S.C. § 1252(a)(5); *see also id.* § 1252(d)(1) (requiring administrative exhaustion). In particular, 8 U.S.C. § 1252(b)(9) provides that if a legal or constitutional claim, "aris[es] from any action taken or proceeding brought to remove an alien," then "[j]udicial review of all questions of law and fact . . . shall be available only in judicial review of a final order" of removal. Because judicial review of a final order of removal is available only in the courts of appeals, district courts cannot review these "arising from" claims.

In addition, Congress has expressly stripped federal courts of habeas jurisdiction to review any cause or claim arising from the government's decision to commence removal proceedings, adjudicate cases, or execute removal orders. 8 U.S.C. § 1252(g) ("Except as provided in this section and notwithstanding any

3

other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."). Therefore, no court other than the appropriate court of appeals has jurisdiction to hear Khalil's challenges to the government's decision to institute removal proceedings against him.

The case law in this circuit confirms that district courts lack jurisdiction to adjudicate such claims. For instance, in *Tazu v. Att'y Gen.*, the Third Circuit held that "[i]f an alien challenges one of those discrete actions, [to commence proceedings, adjudicate cases, or execute removal orders against any alien,] § 1252(g) funnels jurisdiction over that challenge into a petition for review in a single court of appeals." 975 F.3d 292, 296 (3d Cir. 2020); *see also Bonhometre v. Gonzales*, 414 F.3d 442, 446 (3d Cir. 2005) (stating that § 1252(b)(9) "effectively limit[s] all aliens to one bite of the apple with regard to challenging an order of removal, in an effort to streamline what Congress saw as uncertain and piecemeal review of orders of removal, divided between the district courts (habeas corpus) and the courts of appeals (petitions for review)").

At bottom, Khalil's challenge here is aimed at the government's determination that he is removable from the United States under 8 U.S.C. § 1227(a)(4)(C)(i) and the actions the government has taken in order to effectuate that removal. He asks this Court to enjoin Respondent Rubio's "determination that the INA's 'Foreign Policy Ground' [of deportability] applies to him." ECF Doc. 124 at 52 (PageID: 644). But this determination by Respondent Rubio is the basis for Respondents' actions to remove Khalil from the United States. So in essence, Khalil is asking this Court to enjoin Respondents from commencing or adjudicating his removal proceedings, which this Court may not do under 8 U.S.C. § 1252(b)(9) and (g).

Indeed, the case directly on point and controlling here is one that Khalil glosses over in a footnote (ECF Doc. 124 at 41, n.27 (PageID: 633)): *Massieu v. Reno*, 91 F.3d 416 (3d Cir. 1996). In that case, the Third Circuit, applying the precursor to § 1252, held that the district court that had held that the precursor to § 1227(a)(4)(C) (i.e. the "Foreign Policy Ground" of deportability) unconstitutional *lacked jurisdiction to hear the case. Id.* at 421-22 ("Congress has removed jurisdiction over plaintiff's claims from the district courts and has vested exclusive federal court jurisdiction in this court after the exhaustion of available administrative remedies."). Writing for the Court, then-Circuit Judge Alito explained:

> where an alien is attempting to prevent an exclusion or deportation proceeding from taking place in the first instance and is thus not, strictly speaking, attacking a final order of deportation or exclusion, it is well settled that "judicial review is precluded if the alien has failed to avail

5

> himself of all administrative remedies," one of which is the deportation or exclusion hearing itself. *See, e.g., Xiao v. Barr*, 979 F.2d 151, 153 (9th Cir. 1992); *see also* 3 Charles Gordon & Stanley Mailman, Immigration Law and Procedure § 81.02[2], at 81-26-28 (1996) ("A person against whom a deportation proceeding is brought may feel that the proceeding is unjustified and illegal but generally has no right to go to court immediately to stop the proceeding. Congress has provided an administrative device for passing upon an alien's deportability, and generally there must be a final administrative ruling before judicial review can be initiated.").

*Id.* at 421. *Massieu* controls here.[3] Just as in *Massieu*, Khalil asks this Court to hold that the "Foreign Policy Ground" of deportability is unconstitutional. And just as in *Massieu*, this Court lacks jurisdiction to rule on that claim.

In sum, Khalil's claims all arise from the government's actions taken or decisions made to commence removal proceedings against him. And in essence, he asks this Court to enjoin his removal proceedings. Because Congress has deprived this Court of the power to do so, it should deny Khalil's request for injunctive relief.

---

[3] Although the Supreme Court has since decided that the exhaustion requirement in § 1252(d)(1) is not jurisdictional, *see Santos-Zacaria v. Garland*, 598 U.S. 411 (2023), that does not render *Massieu* any less controlling on the question of whether Congress intended to limit judicial review in the appropriate court of appeals following completion of administrative proceedings. Indeed, the Administrative Procedure Act acknowledges that "[t]he form of proceeding for judicial review is *the special statutory review proceeding* relevant to the subject matter *in a court specified by statute* ...." 5 U.S.C. § 703. Congress has specified by statute that judicial review of all questions of law and fact relating to removal proceedings be raised in the courts of appeals. 8 U.S.C. § 1252(a)(5), (b)(9), (g).

## II. Khalil's habeas petition is premature.

Even if the Court had jurisdiction to hear Khalil's claims, it should decline to do so because they are premature. There is an exception to the "Foreign Policy Ground" of deportability upon which Khalil has been charged. While § 1227(a)(4)(C)(i) renders deportable any alien "whose presence or activities in the United States the Secretary of State has reasonable ground to believe would have potentially serious adverse foreign policy consequences for the United States," there is an exception to this ground of deportability. Under § 1227(a)(4)(C)(ii), the exceptions "described in clauses (ii) and (iii) of section 1182(a)(3)(C) of this title shall apply to deportability under clause (i) in the same manner as they apply to inadmissibility under section 1182(a)(3)(C)(i) of this title." The exception in § 1182(a)(3)(C)(iii), in turn, protects an alien such as Khalil from removal under the "Foreign Policy Ground" on the basis of "the alien's past, current, or expected beliefs, statements, or associations, *if such beliefs, statements, or associations would be lawful within the United States*, unless the Secretary of State personally determines that the alien's admission would compromise a compelling United States foreign policy interest." (emphasis added).

Thus, Khalil is not removable under the INA so long as his "beliefs, statements, or associations" were or are lawful within the United States.[4] If the agency determines otherwise or decides that even if his statements and associations are lawful, Khalil's presence (and statements or associations) would compromise a compelling foreign policy interest, Khalil may seek judicial review under 8 U.S.C. § 1252(a)(5) in the appropriate court of appeals as set forth above. Completion of Khalil's removal proceedings will fully develop the record and potentially narrow the issues in this case.

In addition, Khalil has been charged with a separate and independent ground of deportability under 8 U.S.C. § 1227(a)(1)(A). In support of this ground of removability, ICE alleges that Khalil failed to disclose material facts regarding his membership in particular groups and his employment by the British Embassy in response to specific questions in his application to adjust status. ECF Doc. 90-1 at 5 (PageID: 128). Whether these allegations are sufficient to support a charge of

---

[4] Whether aliens possess the same free speech rights as citizens is a murky question. There are circumstances in which an alien's First Amendment rights may be constitutionally curtailed. As then-Circuit Judge Kavanaugh recognized in *Bluman v. FEC*, the Supreme Court "has further indicated that aliens' First Amendment rights might be less robust than those of citizens in certain discrete areas." 800 F. Supp. 281, 287 (D.D.C. 2011) (citing *Harisiades v. Shaughnessy*, 342 U.S. 580, 591-92 (1952), for the proposition that the First Amendment does not protect aliens from deportation because of membership in the Communist Party), *summarily aff'd*, 565 U.S. 1104 (2012).

removability under §§ 1182(a)(6)(C)(i) and 1227(a)(1)(A) are questions that must be first decided by the agency. Again, review of any final administrative order of removal is available only in the appropriate court of appeals pursuant to 8 U.S.C. § 1252(a)(5). The Third Circuit has held that barring habeas review in district courts and funneling all post-administrative review of removal orders into the courts of appeals is constitutional. *Kolkevich v. Att'y Gen.*, 501 F.3d 323, 336-38 (3d Cir. 2007); *Verde-Rodriguez v. Att'y Gen.*, 734 F.3d 198, 204 (3d Cir. 2013). And the Suspension Clause does not "permit a petitioner to claim the right to enter or remain in a country or to obtain administrative review potentially leading to that result." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 117 (2020).

The exhaustion requirement is important for another reason. Even if the agency determines that Khalil is removable as charged, he may seek relief from removal before the agency. For instance, Khalil could seek asylum or withholding of removal. As the *Massieu* court observed:

> there are certainly issues to which the immigration judge and the Board of Immigration Appeals will be able to apply their expertise, and the resolution of a number of those issues could well resolve this matter without the need for any involvement by the federal courts. If this matter does end up in this court, at that point there will be no lingering doubt as to the administrative disposition of plaintiff's claims for asylum and withholding of deportation.

91 F.3d at 426.

This Court should decline Khalil's invitation to enjoin his removal proceedings. Instead, the agency should be permitted to apply its expertise and develop a full record for judicial review before an appropriate court of appeals as Congress intended.

## CONCLUSION

For the foregoing reasons and those set forth by Respondents, the Court should deny Petitioner's request for injunctive relief.

Dated: April 2, 2025                Respectfully submitted,

s/ John Miano
JOHN M. MIANO
N.J. Bar No. 020012005
MATT A. CRAPO*
D.C. Bar No. 473355
Immigration Reform Law Institute
25 Massachusetts Ave., NW, Suite 335
Washington, DC 20001
(202) 232-5590
jmiano@verizon.net
mcrapo@irli.org

* *pro hac vice* application forthcoming

Counsel for *Amicus Curiae*
Immigration Reform Law Institute