UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MAHMOUD KHALIL,

            *Petitioner,*

v.

WILLIAM P. JOYCE, et al.,

            *Respondents.*

Case No. 2:25-cv-01963

**DECLARATION OF IAN FERNANDO HINONANGAN, ESQ.
IN SUPPORT OF PETITIONER'S *HABEAS* PETITION
ASSERTING THAT A CHARGE OF REMOVABILITY
UNDER SECTION 237(a)(4)(C)(i)
OF THE IMMIGRATION AND NATIONALITY ACT
DOES *NOT* SANCTION MANDATORY DETENTION
OF PETITIONER UNDER 8 U.S.C. SECTION 1226**

I, Ian Fernando Hinonangan, Esq., declare under penalty of perjury, pursuant to 28 U.S.C. Section 1746, that the foregoing is true and correct:

1. I am an immigration law practitioner with a solo practice in Jersey City, New Jersey. I have been practicing since 2003 and have represented Executive Office for Immigration Review (EOIR) respondents in New Jersey, New York, Pennsylvania, Massachusetts, Minnesota, Connecticut, Illinois, Texas, California, Maryland, Virginia, North Carolina, Georgia and Washington D.C.

2. I received my juris doctor from City University of New York (CUNY) Law School in 2002. I received my B.A. in Sociology from State University of New York (SUNY) - Binghamton in 1997.

3. I was admitted to practice law by the Supreme Court of New Jersey in November 2002 and subsequently by the New Jersey District Court and the Third Circuit Court of Appeals in 2003.

4. I submit this declaration in support of the Brief of Over 150 Immigration Lawyers, Law Professors, and Scholars as Amici Curiae in the above-captioned case.

5. I refer all parties to the Notice to Appear (NTA), DHS Form I-862, in the record dated "March 9, 2025". See, Exhibit A of Declaration of William P. Joyce March 14, 2025, (ECF 48), ¶¶ 7-9.

6. An NTA is a charging document to determine the deportability or inadmissibility of an alien. This charging document is filed by the Department of Homeland Security (DHS) to Immigration Court hereby commencing the alien's placement in removal proceedings. 8 C.F.R. §1003.14(a) & 1003.20(a).

7. The NTA issued to Khalil is dated March 9, 2025 and time stamped "12:40 a.m." See, (ECF 48), Ex. A. ¶ 7-9.

8. The NTA was signed by a supervisory special agent at "26 Federal Plaza, New York, NY". Id. [Emphasis Added.]

9. Since the supervisory special agent issued and signed this NTA at the New York City field office then it follows that the Immigration Court in New York City should have been the proper venue to hear Khalil's removal proceedings under 8 C.F.R. §1003.14(a) & 1003.20(a). [Emphasis Added.]

10. "Venue shall lie at the Immigration Court where jurisdiction vests . . . ." See, 8 C.F.R. § 1003.20(a); see also 8 C.F.R. § 1239.1(a) ("Every removal proceeding conducted under section 240 of the Act (8 U.S.C. 1229a) to determine the deportability or inadmissibility of an alien is commenced by the filing of a notice to appear with the immigration court.") (emphasis added). Accordingly, venue for

Immigration Court proceedings lies with the Immigration Court where the charging document is filed by the Department of Homeland Security (DHS). 8 C.F.R. §1003.14(a) & 1003.20(a).

11. Consequently, jurisdiction presumptively vests at the Immigration Court where the charging document is filed. *Id.* Generally, this will be the same Immigration Court that is listed on the charging document. *Id.*

12. However, the supervisory special agent who issued and signed Khalil's NTA had already pre-determined the venue for Khalil's removal proceedings. The NTA expressly ordered Khalil to appear at 8:30 a.m on March 27, 2025, at the Immigration Court located at 830 Pinehill Road, **Jena, Louisiana**. See, (ECF 48), Ex. A, ¶ 7-9. [Emphasis Added.]

13. The facts are undisputed that Khalil was in the custody of Homeland Security Investigations (HSI) for approximately seven hours at 26 Federal Plaza, New York City from March 8 (Saturday) to March 9 (Sunday).[1] (HSI is a a division of U.S. Immigration and Customs Enforcemen(ICE).

14. Yet at no time during those seven hours that Khalil was apprehended by and in the custody of HSI did the government and the supervisory special agent who ultimately issued and signed Khalil's NTA at 12:40 a.m. on March 9th ever considered and weighed in on whether Khalil, who is lawful permanent resident, should have been released from HSI custody after he had been processed. See, (ECF 48), Ex. A, ¶ 7-9.

---

[1] On March 8, 2025 at 8:35 p.m.— HSI apprehended Khalil at his home in Manhattan, New York and subsequently transferred him to 26 Federal Plaza for processing at 8:44 p.m. See, (ECF 48) at 7; also see Second Supplemental Declaration of William P. Joyce dated March 14, 2025, (ECF 72) at 7. At 9:20 p.m., Khalil arrived at the ICE Field Office at 26 Federal Plaza. *Id.* The cutoff of Khalil's custody in New York City is at 2:20 a.m. (EST) (3:20 a.m. Easter Daylight Time) on March 9th since this was the time that Khalil was booked at the Elizabeth Detention Facility in Elizabeth, New Jersey. See (ECF 72) at 16; also (ECF 153) at 3.

15. Nothing in the record, including the declarations of various governmental officials in their capacity as field office directors, shows that HSI and other governmental officials charged with Khalil's custody ever considered, contemplated and weighed in on whether Khalil, who is lawful permanent resident, should have been released from HSI custody during the seven hours that Khalil was under HSI custody in New York City.

16. Hence, the urgency of the habeas petition currently before U.S.D.J. Michael A. Farbiarz. See (ECF 153).

17. The reason for why HSI and other governmental officials charged with Khalil's custody never considered whether Khalil, who is lawful permanent resident, should have been released from HSI custody during the seven hours that Khalil was under HSI custody in New York City is in plain view— because HSI had already decided that the venue for Khalil's removal proceeding was the Immigration Court in Jena, Louisiana. See, (ECF 48) at 7; also see Second Supplemental Declaration of William P. Joyce dated March 14, 2025, (ECF 72) at 7.

18. Yet regardless of what HSI has already decided as to venue the supervisory special agent still had to satisfy the more pressing and urgent question of whether the apprehension of Khalil warranted his mandatory detention.

19. To do so, the supervisory special agent needed to charge him with removability from the U.S. to justify his arrest, apprehension and detention. So at 12:40 a.m., early morning of March 9th, 2025, while Khalil was still at 26 Federal Plaza, New York, NY, Khalil was issued the NTA dated March 9, 2025 and stamp dated "12:40 a.m." See, (ECF 48), Ex. A, ¶ 7-9.

20. So now— we look at the sole charge specified on the March 9, 2025 NTA: Section 237(a)(4)(C)(i) of the Immigration and Nationality Act (INA), which reads: "The Secretary of State has reasonable ground to believe that your presence or activities in the United States would have potentially serious adverse foreign policy consequences for the United States." See Section 237(a)(4)(C)(i) of the INA; also see the NTA at (ECF 48), Ex. A, ¶ 7-9.[2]

21. The next question therefore is: Does a charge of removability under Section 237(a)(4)(C)(i) trigger mandatory detention? To answer this, we look at 8 U.S.C. Section 1226 - Apprehension and Detention of Aliens.[3] A strict reading of subsection (a) compels a reading that while Khalil may be arrested and detained pending a decision on whether he is removable from the U.S. (which is what the NTA charges him as removable), the "and" between subsection (1) (may continue to detain) and (2) "may release the alien on bond… or conditional parole…" squarely defeats the mandatoriness of Khalil's detention. [Emphasis Added.]

---

[2] It must be noted that the record contains Form I-261, Additional Charges of Inadmissibility/Deportability hand-dated "3/17/2025" and signed by a "Deportation Officer". See (ECF 128), Ex. A, ¶¶ 5-6. This form bears Khalil's address in Jena Louisiana, where he is currently in custody. Id. Since his document is dated March 17, 2025, this was therefore not attached to William P. Joyce's Declarations under (ECF 32) dated March 12, 2025, (ECF 48) dated March 14, 2025 and even (ECF 72) dated March 17, 2025, same date as said I-261.

It must also be noted that Khalil refused to sign both the NTA (form I-862) and subsequent form I-261. See (ECF 128), ¶¶ 2-6.

[3] 8 U.S. Code § 1226 - Apprehension and Detention of Aliens
(a) Arrest, detention, and release
    On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
    (1) may continue to detain the arrested alien; and
    (2) may release the alien on
        (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
        (B) conditional parole; but
    (3) may not provide the alien with work authorization…

22. Furthermore, the exception provided in subsection (c) Detention of Criminal Aliens of the same section, does not apply to Khalil since Khalil is not a criminal alien.[4]

23. **So the answer to the question of whether a charge of removability under Section 237(a)(4)(C)(i) trigger mandatory detention is no under 8 U.S.C. Section 1226.**

24. Yet again at no time during the seven hours that Khalil was apprehended by and in the custody of HSI did the government and the supervisory special agent who ultimately issued and signed Khalil's NTA at 12:40 a.m. on March 9th ever consider, contemplate or weigh in on whether Khalil, who is lawful permanent resident, should have been released from HSI custody either on bond or conditional parole, after he had been processed, consistent with 8 U.S.C. Section 1226.

25. Khalil was and still is eligible to be released on either bond or conditional parole by HSI/ICE since he is not a criminal alien under a strict application of subsection (c) of 8 U.S.C. Section 1226.

---

[4] (c) Detention of criminal aliens
   (1) Custody
      The Attorney General shall take into custody any alien who—
      (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,
      (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,
      (C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence [1] to a term of imprisonment of at least 1 year,
      (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title, or
      (E)
         (i) is inadmissible under paragraph (6)(A), (6)(C), or (7) of section 1182(a) of this title; and
         (ii) is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person…

   A run-down of subsections (A)-(E) above do not apply to Khalil. Furthermore, as to the additional charge of Section 237(a)(1)(A) on Khalil's I-261 dated March 17, 2025, Section (c) above as it pertains to "Detention of Criminal Aliens" also does not apply because, again, Khalil is not a criminal alien.

26. Hence, the urgency of the habeas petition currently before U.S.D.J. Michael A. Farbiarz. See (ECF 153). "Our tradition is that there is no gap in the fabric of habeas --- no place, no moment, where a person held in custody in the United States cannot call on a court to hear his case and decide it. See, e.g., 3 William Blackstone, Commentaries *131 ("[T]he sovereign is at all times entitled to have an account, why the liberty of any of her subjects is restrained, wherever that restraint may be inflicted."); accord, e.g., Boumediene, 553 U.S. at 741; 2 Joseph Story, Commentaries on the Constitution of the United States § 1341, p. 237 (3d ed.1858). See (ECF 153) at 66.

27. Having established jurisdiction to hear Khalil's habeas petition, U.S.D.J. Michael A. Farbiarz must rule on said habeas petition prior to Khalil's continued initial master calendar hearing on **April 8, 2025 at 1 p.m.**, which is five days from today. See (ECF 153); See also (ECF156-1) at 9. [Emphasis Added.] It must be further noted that Khalil, through counsel, did not enter pleadings and reasserted his motion to continue the master hearing. See (ECF156-1) at 7.

28. On the question of proper venue in Executive Office for Immigration Review (EOIR), we turn to the aforesaid regulations, to wit, 8 C.F.R. §1003.20(a). "Venue shall lie at the Immigration Court where jurisdiction vests . . . .". See, 8 C.F.R. §1003.20(a).

29. This would mean that as of Khalil's actual appearance at Immigration Court in Jena, Louisiana on March 21, 2025 (6 days earlier from his scheduled master hearing on March 27th as noted on Khalil's NTA), venue lay at *that* Immigration Court and jurisdiction *vested* soon as proceedings commenced before an Immigration Judge had. See (ECF156-1) at 6.

30. However, 8 C.F.R. §1003.14(a) contains the additional provision *that only after the charging document has been filed with the Immigration Court may venue be changed.* See 8 C.F.R.§1003.14(a). When read together with §1003.20(a), this provision in §1003.14(a) comports with the commonplace practice of respondents filing for change of venue in Immigration Court.

31. Accordingly, upon Khalil's release from DHS/ICE custody, he is able to immediately request for a change of venue to the proper venue under 8 C.F.R.§ 1003.14(a) and 1003.20. First, Khalil possesses good cause to request a change of venue to the Immigration Court in his city of residence: New York City. Furthermore, the present Immigration Court will also consider as good cause the undisputed fact that the NTA issued to Khalil and signed by a supervisory special agent on March 9th was *at* the New York City field office. See, (ECF 48), Ex. A, ¶ 7-9.

Dated: April 3, 2025

Respectfully submitted,

/s/ Ian Hinonangan

IAN F. HINONANGAN, ESQ.
Attorney - Amicus: Immigration Lawyers,
Law Professors, and Scholars
Ian F. Hinonangan, P.C.
350 Warren Street, Suite #10
Jersey City, NJ 07302
iancorporate@yahoo.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing filing was served on counsel of record via the Court's CM/ECF system on April 3, 2025.

Dated: April 3, 2025

IAN F. HINONANGAN, ESQ.
Attorney – Amicus: Immigration Lawyers, Law Professors, and Scholars