# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

Mahmoud KHALIL,

*Petitioner*,

v.

Donald J. TRUMP, in his official capacity as President of the United States; William P. JOYCE, in his official capacity as Acting Field Office Director of New York, Immigration and Customs Enforcement; Yolanda PITTMAN, in her official capacity as Warden of Elizabeth Contract Detention Facility; Caleb VITELLO, Acting Director, U.S. Immigration and Customs Enforcement; Kristi NOEM, in her official capacity as Secretary of the United States Department of Homeland Security; Marco RUBIO, in his official capacity as Secretary of State; and Pamela BONDI, in her official capacity as Attorney General, U.S. Department of Justice,

*Respondents*.

Case No. 25-cv-01963 (MEF-MAH)

**ORAL ARGUMENT REQUESTED**

# PETITIONER'S REPLY IN SUPPORT OF
# MOTION FOR PRELIMINARY INJUNCTIVE RELIEF

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT. ........................................................................1

I. THIS COURT CAN ADJUDICATE MR. KHALIL'S CLAIMS. .............................1

    A. Section 1252(b)(9) does not bar review of Mr. Khalil's claims. .......................2

    B. Section 1252(g) does not bar review of Mr. Khalil's claims. ...........................8

    C. Section 1226(e) does not bar review of Mr. Khalil's claims . ....................... 12

    D. Mr. Khalil properly seeks to enjoin the Policy and Rubio Determination... 13

II. THE POLITICAL QUESTION DOCTRINE IS INAPPLICABLE. ................... 14

III. THE GOVERNMENT DOES NOT MEANINGFULLY CONTEST THE MERITS OF MR. KHALIL'S CONSTITUTIONAL CLAIMS. ..................... 15

    A. The First Amendment and vagueness claims are likely to succeed. ............. 15

    B. Mr. Khalil's detention claims are likely to succeed. ........................................ 19

IV. IRREPARABLE HARM, EQUITIES, AND PUBLIC INTEREST. .................. 21

V. THE REQUESTED RELIEF DOES NOT REQUIRE A BOND..................... 22

CONCLUSION. ........................................................................ 22

# TABLE OF AUTHORITIES

**Cases** ...................................................................................................................... Page(s)

*ACLU v. Ashcroft*, 322 F.3d 240 (3d Cir. 2003), *aff'd and remanded*,
   542 U.S. 656 (2004) ................................................................................................... 22

*Aguilar v. ICE*,
   510 F.3d 1 (1st Cir. 2007) ............................................................................................3

*Al–Siddiqi v. Achim*,
   531 F.3d 490 (7th Cir. 2008) ...................................................................................... 13

*Alcaraz v. INS*,
   384 F.3d 1150 (9th Cir. 2004) .................................................................................... 11

*Alli v. Decker*,
   650 F.3d 1007 (3d Cir. 2011) ..................................................................................... 13

*Am.-Arab Anti-Discrimination Comm. v. Reno*,
   70 F.3d 1045 (9th Cir. 1995) .................................................................................18, 19

*Anderson v. Davila*,
   125 F.3d 148 (3d Cir. 1997) .....................................................................................17, 18

*Armando C.G. v. Tsoukaris*,
   20-CV-5652, 2020 WL 4218429 (D.N.J. July 23, 2020) ...................................... 13

*Baker v. Carr*,
   369 U.S. 186 (1962) ..................................................................................................14, 15

*Bell v. Wolfish*,
   441 U.S. 520 (1979) .................................................................................................... 20

*Bello-Reyes v. Gaynor*,
   985 F.3d 696 (9th Cir. 2021) ....................................................................................8, 18

*Black v. Decker*,
   103 F.4th 133 (2d Cir. 2024) .......................................................................................5

*Bluman v. FEC*,
    800 F. Supp. 2d 281 (D.D.C. 2011) ........................................................ 19

*Bridges v. Wixon*,
    326 U.S. 135 (1945) .............................................................................. 19

*Carlson v. Landon*,
    342 U.S. 524 (1952) ......................................................................... 20, 21

*Catholic Soc. Servs., Inc. v. I.N.S.*,
    232 F.3d 1139 (9th Cir. 2000) ............................................................... 10

*Chang v. United States*,
    327 F.3d 911 (9th Cir. 2003) ................................................................... 7

*Christian A.R. v. Decker*,
    453 F. Supp. 3d 670 (D.N.J. 2020) ..................................................... 5, 13

*Colo. River Water Conservation Dist. v. U.S.*,
    424 U.S. 800 (1976) .............................................................................. 14

*Demore v. Kim*,
    538 U.S. 510 (2003) .................................................................... 6, 13, 21

*Dennis v. United States*,
    341 U.S. 494 (1941) ......................................................................... 18, 19

*DHS v. Regents of the Univ. of California*,
    140 S. Ct. 1891 (2020) ........................................................................... 9

*E.O.H.C., v. Sec'y United States Dep't of Homeland Sec.*,
    950 F.3d 177 (3d Cir. 2020) ................................................................ 2, 3

*Garcia v. Att'y Gen.*,
    553 F.3d 724 (3d Cir. 2009) ............................................................. 10, 11

*German Santos v. Warden Pike Cnty. Corr. Facility*,
    965 F.3d 203 (3d Cir. 2020) ............................................................. 20, 21

*Gonzalez v. ICE*,
    975 F.3d 788 (9th Cir. 2020) ..................................................................7

*Gross v. German Found.*,
    456 F.3d 363 (3d Cir. 2006) ................................................................. 15

*Harisiades v. Shaughnessy*,
    342 U.S. 580 (1952) ........................................................................18, 19

*Jane v. Rodriguez*,
    No. 20-CV-5922, 2020 WL 6867169 (D.N.J. Nov. 23, 2020) ........................... 14

*Jennings v. Rodriguez*,
    583 U.S. 281 (2018) ................................................................... *passim*

*Khouzam v. Att'y Gen. of U.S.*,
    549 F.3d 235 (3d Cir. 2008) ................................................................. 15

*Kleindienst v. Mandel*,
    408 U.S. 753 (1972) ............................................................................ 19

*Kong v. United States*,
    62 F.4th 608 (1st Cir. 2023) ..................................................................9

*Kos Pharm., Inc. v. Andrx Corp.*,
    369 F.3d 700 (3d Cir. 2004) ................................................................. 15

*Kwai Fun Wong v. United States*,
    373 F.3d 952 (9th Cir. 2004) ..................................................................9

*Madu v. Attorney General*,
    470 F.3d 1362 (11th Cir. 2006) ............................................................ 11

*Marbury v. Madison*,
    5 U.S. 137 (1803) .............................................................................. 15

*Massieu v. Reno,*
    91 F.3d 416 3d Cir. 1996) .................................................................. 7, 8

*McCarthy v. Madigan,*
503 U.S. 140 (1992) ..................................................................................... 4

*McCormack v. Twp. of Clinton,*
872 F. Supp. 1320 (D.N.J. 1994) ............................................................... 22

*Media Matters v. Bailey,*
No. 24-CV-147 (APM), 2024 WL 3924573 (D.D.C. Aug. 23, 2024) ............... 17

*Mt. Healthy City Sch. Dist. v. Doyle,*
429 U.S. 274 (1977) ..................................................................... 16, 17, 18

*Nielsen v. Preap,*
586 U.S. 392 (2019) ............................................................................... 2, 3

*Nieves v. Bartlett,*
587 U.S. 391 (2019) ............................................................................ 16, 17

*Nnadika v. Attorney Gen. of U.S.,*
484 F.3d 626 (3d Cir. 2007) ....................................................................... 3

*Omar Mejia Rojas,*
2014 WL 1120179 (BIA Jan. 31, 2014) ...................................................... 4

*Orozco-Velasquez v. Atty. Gen. of U.S.,*
817 F.3d 78 (3d Cir. 2016) ...................................................................... 11

*Osorio-Martinez v. Att'y Gen. of U.S. of Am.,*
893 F.3d 153 (3d Cir. 2018) ...................................................................... 8

*Ozturk v. Trump,*
No. 25-CV-10695-DJC, 2025 WL 1009445 (D. Mass. Apr. 4, 2025) ..............2

*Pensamiento v. McDonald,*
315 F. Supp. 3d 684 (D. Mass. 2018)..............................................................8

*Ragbir v. Homan,* 923 F.3d 53 (2d Cir. 2019), *cert. granted, judgment vacated on other grounds sub nom. Pham v. Ragbir,* 141 S. Ct. 227 (2020)........................................12, 17, 18

*Ragbir v. United States,*
    No. 17-1256, 2018 WL 1446407 (D.N.J. Mar. 23, 2018) ..................................... 11

*Regents of the Univ. of California v. U.S. Dep't of Homeland Sec.,*
    908 F.3d 476 (9th Cir. 2018) ................................................................ 11

*Reilly v. City of Harrisburg,*
    858 F.3d 173 (3d Cir. 2017) ................................................................ 22

*Reno v. Am. Anti-Discrimination Comm.,*
    525 U.S. 471 (1999) ......................................................... 8, 10, 11, 12, 19

*Saleh v. City of New York,*
    No. 06 CIV. 1007 (SHS), 2007 WL 4437167 (S.D.N.Y. Dec. 17, 2007) .......... 16

*Schaeuble v. Reno,*
    87 F. Supp. 2d 383 (D.N.J. 2000) ......................................................... 12

*Sean B. v. McAleenan,*
    412 F. Supp. 3d 472 (D.N.J. 2019) ........................................................8

*Stilp v. Contino,*
    613 F.3d 405 (3d Cir. 2010) ................................................................ 22

*Sylvain v. Att'y Gen. of U.S.,*
    714 F.3d 150 (3d Cir. 2013) ................................................................ 13

*Taal v. Trump,*
    No. 3:25-CV-335, 2025 WL 926207 (N.D.N.Y. Mar. 27, 2025) ........................ 11

*Tazu v. Atty. Gen. of U.S.,*
    975 F.3d 292 (3d Cir. 2020) .............................................................*passim*

*Temple Univ. v. White,*
    941 F.2d 201 (3d Cir. 1991) ................................................................ 22

*Weil v. White,*
    629 F. App'x 262 (3d Cir. 2015) ........................................................... 17

*Youngstown Sheet & Tub Co. v. Sawyer*,
    343 U.S. 579 (1952) ................................................................ 15

*Zadvydas v. Davis*,
    533 U.S. 678 (2001) ............................................................ 20, 21

*Zivotofsky ex rel. Zivotofsky v. Clinton*,
    566 U.S. 189 (2012) ............................................................ 14, 15

**Statutes, Rules and Regulations**

6 U.S.C. § 202(3) ........................................................................9

8 U.S.C. § 1226a ...................................................................... 21

8 U.S.C. § 1226(c) .................................................................... 21

8 U.S.C. § 1226(e) ............................................................... 12, 13

8 U.S.C. § 1252(a)(1) ..................................................................4

8 U.S.C. § 1252(b)(9) ........................................................*passim*

8 U.S.C. § 1252(g) .............................................................*passim*

28 U.S.C. § 1331 ...................................................................... 13

28 U.S.C. § 2253(b) ....................................................................4

8 C.F.R. § 1003.19(a) ..................................................................4

8 C.F.R. § 1003.19(h)(2)(ii) .........................................................4

8 C.F.R. § 1239.1…………………………………………………………9

Fed. R. Civ. P. 65(c) ................................................................ 22

H.R. Rep. No. 109-72 ..................................................................3

**Other Authorities**

Alina Das, *Protecting Immigrant Activists From U.S. Government Retaliation: Lessons From First Amendment Litigation*, Knight Institute, (Feb. 12, 2025) *available at* https://perma.cc/WB7S-QL6B ............................................................ 17

The government's opposition, ECF 156 ("Br."), does not contest the key issues that decide this motion: the Rubio Determination is based on Mahmoud Khalil's speech; his detention serves no legitimate purpose; and the government is acting against him pursuant to a publicly announced, unconstitutionally vague Policy with the explicit purpose to chill and punish disfavored viewpoints. *Compare id.* with ECF 124. Instead, the government primarily insists the INA's judicial review provisions forbid this Court from looking at what it has done to Mr. Khalil and why. That is wrong. To get to that result, this Court would have to ignore key language in those provisions; expand statutes the Supreme Court and Third Circuit have repeatedly admonished courts to construe narrowly; and adopt a nonsensical and unjust approach to judicial review that cannot be squared with binding precedent. Mr. Khalil's straightforward challenge to his unlawful detention and an unconstitutional Policy that is collateral to his removal proceedings are precisely the types of claims routinely adjudicated in district courts, since they would otherwise be "effectively unreviewable" or relief would arrive too late. The government's opposition only confirms that the relief requested is appropriate.

## I.    THIS COURT CAN ADJUDICATE MR. KHALIL'S CLAIMS.

The government conflates and misconstrues Mr. Khalil's distinct claims as one uniform and unreviewable challenge to his "removability." Br. 12. But binding precedent leaves no doubt that this Court can hear Mr. Khalil's challenges to his unconstitutional detention. Nor should this Court adopt the government's atextual view of the INA, which would preclude Mr. Khalil from seeking any meaningful review of

1

his distinct challenges to the Policy and the Rubio Determination. *See Ozturk v. Trump*, No. 25-CV-10695-DJC, 2025 WL 1009445, at *4 & n.1 (D. Mass. Apr. 4, 2025) (rejecting identical jurisdiction arguments and holding that habeas is the "correct vehicle for Ozturk to pursue her challenge to her arrest and detention upon the revocation of her student visa pending removal proceedings").

## A. Section 1252(b)(9) does not bar review of Mr. Khalil's claims.

The government's argument that the channeling requirement in (b)(9) strips this Court of its ability to review Mr. Khalil's claims misconstrues those claims and invites the Court to adopt an extreme interpretation of (b)(9) the Supreme Court rejected. None of Mr. Khalil's claims—which do not challenge a removal order, seek to terminate his immigration proceedings, or challenge any provision of the INA—are barred, because they would not receive meaningful review in the limited administrative process available in immigration court and any possible relief would come too late.

The Supreme Court has narrowly interpreted (b)(9) to avoid "extreme" results that would render valid claims, including challenges to detention, "effectively unreviewable." *Jennings v. Rodriguez*, 583 U.S. 281, 293 (2018); *see also Nielsen v. Preap*, 586 U.S. 392, 402 (2019)((b)(9) did not preclude detention challenge). Interpreting that precedent alongside the strong presumption in favor of judicial review of administrative action, the Third Circuit derived a simple "now-or-never" principle: "When a detained alien seeks relief that a court of appeals cannot meaningfully provide on petition for review of a final order of removal, § 1252(b)(9) does not bar consideration by a district

court." *E.O.H.C.*, *v. Sec'y U.S. Dep't of Homeland Sec.*, 950 F.3d 177, 180 (3d Cir. 2020); *see also id.* at 184-86; *accord* Br. 10 (acknowledging *E.O.H.C.* allows for review of claims that "can[not] receive meaningful review through the petition for review.").

Here, Mr. Khalil does not challenge any order of removal (there is none) that could be reviewed through a petition for review ("PFR"), nor does he challenge any aspect of his removal proceedings that would receive meaningful review through the PFR process. *See Nnadika v. Att'y Gen. of U.S.*, 484 F.3d 626, 632 (3d Cir. 2007) (holding (b)(9) captures "only challenges that directly implicate the order of removal"). Instead, he challenges his *current* unconstitutional detention and seeks to enjoin a Policy that is *currently* chilling his speech and the speech of countless others. "[C]ourts cannot meaningfully provide" review of these claims "alongside review of a final order of removal" and, even assuming they could, "relief may come too late to redress" the harm. *E.O.H.C.*, 950 F.3d at 186 (citing *Aguilar v. ICE*, 510 F.3d 1, 11 (1st Cir. 2007)).

Indeed, Mr. Khalil's constitutional challenges to his detention are precisely the claims courts find beyond the bounds of (b)(9). *See, e.g.*, *Preap*, 586 U.S. at 402; *Aguilar*, 510 F.3d at 11 (holding "district courts retain jurisdiction over challenges to the legality of [immigration] detention" and noting "Congress stated unequivocally that the channeling provisions of section 1252(b)(9) should not be read to preclude 'habeas review over challenges to detention'") (quoting H.R. Rep. No. 109-72). As in *Jennings* and *Preap*, Mr. Khalil challenges his detention pending removal proceedings, not the proceedings themselves. His claim does not arise from removal proceedings; it arises

from detention.[1] The government's assertion that Mr. Khalil is able to "challenge his detention" in immigration court, Br. 10, does not change this analysis. As a practical matter, that "challenge" is meaningless given the government's position that the only claim he can raise is that he is not "properly subject to his foreign policy removability charge," Br. 10 (citing 8 C.F.R. § 1003.19(h)(2)(ii))[2]; *id.* 21 n.5, and that Mr. Khalil cannot even seek a custody redetermination from an IJ, *see* ECF 99 at 8 (citing 8 C.F.R. § 1003.19(a)). Under the government's position, an IJ can neither ensure Mr. Khalil's detention is tied to permissible government interests nor consider any of the constitutional claims Mr. Khalil presses here. And even if ICE's detention decision were subject to IJ review—which as described above it is not—the BIA has held it has "no authority to consider . . . the constitutionality of his detention." *Omar Mejia Rojas,* 2014 WL 1120179, *1 (BIA Jan. 31, 2014); Ira Kurzban Decl. ¶ 25. Nor is Mr. Khalil able to challenge his detention through a PFR in the Court of Appeals. 8 U.S.C. § 1252(a)(1) (providing for review of removal orders alone). This is not "meaningful review."[3]

---

[1] The larger statutory scheme attests to the availability of habeas corpus challenges to "detention pending removal proceedings." 28 U.S.C. § 2253(b).

[2] The government argues that the IJ can only review "whether the Secretary of State made the requisite finding." Br. 13; *see also id.* Section I.D.

[3] The government suggests Mr. Khalil must, separate and apart from (b)(9), exhaust his detention claims in immigration court. Br. 21-22. There is no statutory exhaustion requirement prior challenging the constitutionality of detention. And prudential exhaustion is not required here because it would be futile for the reasons discussed herein. *See McCarthy v. Madigan*, 503 U.S. 140, 147 (1992) (recognizing that prudential exhaustion is not required where a plaintiff "may suffer irreparable harm if unable to secure immediate judicial consideration of her claim," where there is "some doubt as to

*Jennings*, 583 U.S. at 321; *cf. Black v. Decker*, 103 F.4th 133, 152 (2d Cir. 2024) (finding IJ review that is limited to whether a person is properly subject to removal provision insufficient to satisfy due process). Even if Mr. Khalil eventually obtains release through a successful PFR at the conclusion of proceedings years from now, s*ee* Kurzban Decl. ¶¶ 14–18, the harms he challenges "would have already taken place," *Jennings*, 583 U.S. at 293. "And of course, it is possible that no [removal] order would ever be entered . . . depriving that detainee of any meaningful chance for judicial review." *Id.*

The government's reliance on *Tazu v. Atty. Gen. of U.S.,* 975 F.3d 292 (3d Cir. 2020), is misplaced. There, the petitioner sought to stay the execution of a final, valid order of removal. *Id.* at 295. The court found his challenge to the AG's authority to remove him (and the "brief door-to-plane detention" that removal involved) were so "bound up with" the merits of removal that he was attempting "to thwart the removal itself." *Id.* at 299-300. But *Tazu* reiterated what was already clear from numerous other cases: that "(b)(9) does not foreclose all claims" challenging immigration detention. *Id.* at 299. Here, as in the many challenges to unconstitutional detention routinely heard by district courts, *see, e.g., Christian A.R. v. Decker*, 453 F. Supp. 3d 670, 682 (D.N.J. 2020), Mr. Khalil's challenge to his detention is not "bound up with" his removal proceedings.

---

whether the agency was empowered to grant effective relief," and where the agency has "predetermined the issue" or resort to the agency would otherwise be futile). There is no agency process for an individual charged under the foreign policy ground to seek bond from an IJ or raise the constitutional claims presented here, and Mr. Khalil's unconstitutional detention is causing him immense and irreparable harm.

This Court need not opine on any aspect of his removability charges to find that Mr. Khalil is being detained for impermissible, punitive and retaliatory purposes. *See infra* 19–21; *cf. Demore v. Kim*, 538 U.S. 510, 532–33 (2003) (Kennedy, J., concurring) (noting courts may "inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons").

Mr. Khalil's First and Fifth Amendment challenges to the Policy, including as applied to him though the Rubio Determination, are also not subject to (b)(9), because they are collateral to his immigration case and would not receive meaningful review in that administrative process. The government takes the position that Mr. Khalil cannot raise his First Amendment and due process challenges to the Policy in his removal proceedings, Br. 12-13, and that no meaningful review would be available on a PFR. Indeed, the government appears to concede that the IJ cannot hear Mr. Khalil's challenges to the government's Policy as unconstitutionally vague and viewpoint discriminatory, Br. 12-13, and it adopts the breathtaking position that *no court* can meaningfully review the Rubio Determination. *See id.* at Section I.D; Br. 13 (arguing the IJ can review only "whether the Secretary of State made the requisite finding"). On the government's position, the IJ cannot even examine the basis for Secretary Rubio's finding, *id.* at 13, let alone entertain a claim that it was retaliatory. This is not "meaningful review." *Jennings.*, 583 U.S. at 321. The government concludes by proclaiming that Mr. Khalil can "raise any challenge that he sees fit" on a PFR, Br. 14, but the Circuit Courts are limited in a PFR to review of a final order of removal, and

6

the related evidence and arguments developed below. Kurzban Decl. ¶¶ 19–24. Mr. Khalil's claims concern facts and respondents wholly beyond the purview of his removal proceedings. *See* ECF 162, Am. Pet; *Chang v. United States*, 327 F.3d 911, 923–24 (9th Cir. 2003). "[C]ramming judicial review of those questions into the review of final removal orders would be absurd." *Jennings*, 583 U.S. at 293. Moreover, as with his detention claims, any review in a PFR process would come too late. Mr. Khalil is experiencing the harms flowing from the violation of his First Amendment rights now.

The government relies heavily on *Massieu v. Reno*, 91 F. 3d 416 (3d Cir. 1996), but that decision is not "on all fours with this case." Br. 12. *Massieu* concerned a facial challenge to the petitioner's removability under the predecessor Foreign Policy Ground, where the petitioner "directly challeng[ed] his deportability" and the court held, interpreting pre-(b)(9) provisions of the INA, that he could bring such a challenge through a PFR. 91 F.3d at 421; *see also Gonzalez v. ICE*, 975 F.3d 788, 810 (9th Cir. 2020) (broadly casting doubt on pre-*Jennings* (b)(9) case law). Here, Mr. Khalil is not directly challenging his removal proceedings or facially challenging any statute. His challenges to the Policy are collateral to his removal proceedings. Moreover, unlike in *Massieu*, Mr. Khalil alleges the government's invocation of the Foreign Policy Ground is retaliatory and the harms flowing from the Rubio Determination, including his detention, are *already* accruing irrespective of the ultimate decision in his immigration case. In contrast, the harms resulting from the application of the Ground to Massieu would have only come to pass if the government ultimately succeeded in obtaining an order of removal

against him on that basis. *See also* ECF 108 at 5-6 (*Massieu* discussion).

## B. Section 1252(g) does not bar review of Mr. Khalil's claims.

Section 1252(g) does not apply to Mr. Khalil's claims because they do not challenge any discretionary decision *of the Attorney General* to "'*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" 8 U.S.C. § 1252(g) (emphasis added). This narrow provision is tethered solely to the AG's decisions with respect to these "three discrete actions." *Reno v. Am. -Arab Anti-Discrimination Comm.* (*"AADC"*), 525 U.S. 471, 482 (1999). It does not alter a court's jurisdiction to review the "many other decisions or actions that may be part of the deportation process—such as the decision to open an investigation." *Id.* at 483; *see also Jennings*, 583 U.S. at 294 (explaining "we read the language" in (g) "to refer to just those three specific actions themselves").[4]

Nor does (g) apply to Mr. Khalil's challenge to the legality of his detention. Courts have readily found jurisdiction over challenges to detention. *See, e.g., Bello-Reyes v. Gaynor*, 985 F.3d 696, 698, 700 n.4 (9th Cir. 2021) (finding (g) did not bar First Amendment challenge to ICE detention); *Pensamiento v. McDonald*, 315 F. Supp. 3d 684, 688 (D. Mass. 2018) (holding (g) does not bar habeas review of unlawful immigration detention). While conceding that (g) "does not sweep broadly," Br. 14-15 (citing *Tazu*, 975 F.3d at 296), the government nonetheless urges an expansive interpretation of it to

---

[4] The government's arguments, if applied here, would raise serious constitutional concerns as there is similarly no adequate substitute for habeas. *See Osorio-Martinez v. Att'y Gen. of U.S. of Am.*, 893 F.3d 153, 167 (3d Cir. 2018) (invoking Suspension Clause to protect the writ); *Sean B. v. McAleenan*, 412 F. Supp. 3d 472, 484-90 (D.N.J. 2019).

capture the decision to *arrest and detain* Mr. Khalil, *id.* at 16-17. But an arrest is not a "decision or action" to "commence proceedings." *See Kong v. United States*, 62 F.4th 608, 609 (1st Cir. 2023) (holding (g) does not bar challenge to immigration arrest and detention and distinguishing *Tazu*); 8 C.F.R. § 1239.1 ("Every removal proceeding . . . is commended by the filing of a notice to appear."). And *Tazu*'s finding that "a brief door-to-plane detention" is part of executing a final order of removal, 975 F.3d at 298, is plainly inapplicable here where Mr. Khalil has no order of removal. *Tazu* held ICE needed to detain Mr. Tazu to effectuate his removal; the government need not detain Mr. Khalil to commence proceedings here. In any event, (g) does not provide the AG unreviewable discretion to unconstitutionally arrest noncitizens.

Nor does (g) bar review of Mr. Khalil's challenges to the Policy and the Rubio Determination. These claims "challenge Government actions taken *before* the Attorney General tried to execute [any] order," or even commence proceedings. *Tazu,* 975 F.3d 292, 298 (emphasis added and citing *Kwai Fun Wong v. U.S.*, 373 F.3d 952, 965 (9th Cir. 2004) (finding (g) does not reach such challenges)). The Rubio Determination was not an "action by the Attorney General to commence proceedings." 8 U.S.C. § 1252(g). It was a determination made by the Secretary of State.[5] *See DHS v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1907 (2020) ((g) did not preclude judicial review of a challenge

---

[5] The AG has delegated this authority to the Secretary of Homeland Security. 6 U.S.C. § 202(3). *There is no such delegation to the Secretary of State.*

to government's decision to rescind DACA, even though decision could be "cast . . . as an initial 'action' in the agency's 'commence[ment] [of] proceedings'"); *Catholic Soc. Servs., Inc. v. I.N.S.*, 232 F.3d 1139 (9th Cir. 2000) (en banc) (finding (g) did not bar review of challenge to policy that led to denial of immigration relief, although such denial could lead to decision to commence removal proceedings).

Recognizing this fatal flaw, the government grasps at *Tazu*'s use of the term "Executive" to suggest this Court should rewrite (g) to bar challenges to the actions of *any* member of the Executive Branch. Br. 18. But "what § 1252(g) says is much narrower." *AADC*, 525 U.S. at 482. "The provision applies *only* to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Id.* And in *Tazu*, there was no dispute that the petitioner directly challenged the AG's decision to execute a final, valid order of removal. 975 F.3d at 294 (noting petitioner "ask[ed] the District Court to stop the Attorney General from executing his valid removal order").

While the Rubio Determination was necessary for the AG to commence proceedings under the Foreign Policy Ground, the Determination did not itself commence proceedings. The AG had to take a separate step, exercising her own discretion, to begin proceedings. Mr. Khalil's challenge to the "very authority" behind the AG's decision to commence proceedings does "not implicate[]" Section 1252(g). *Garcia v. Att'y Gen.*, 553 F.3d 724, 729 (3d Cir. 2009); *see also Madu v. Att'y General*, 470 F.3d 1362, 1368 (11th Cir. 2006) (explaining that (g) "does not proscribe substantive

review of the underlying legal bases for those discretionary decisions and actions").[6]

Multiple courts have similarly found that even claims closely related to the initiation of removal proceedings, including against policies that render noncitizens removable, are not precluded by (g), so long as the claim does not *directly* challenge the decision to commence proceedings itself. *See, e.g., Regents of the Univ. of California*, 140 S. Ct. at 1907; *Orozco-Velasquez v. Atty. Gen. of U.S.*, 817 F.3d 78, 81 (3d Cir. 2016) (rejecting application of (g) to claims concerning deficient NTA); *Alcaraz v. INS*, 384 F.3d 1150 (9th Cir. 2004); *Ragbir v. U.S.,* No. 17-1256, 2018 WL 1446407 *8 (D.N.J. Mar. 23, 2018) (rejecting application of (g) because claim did not "arise from" immigration proceedings but instead the question of whether petitioner was guilty of removable offense).

It is for these reasons that *AADC* does not dispose of Mr. Khalil's claims.[7] There, the Supreme Court held that (g) barred the plaintiffs' claims that the *AG* selectively prosecuted them. 525 U.S. at 478. As noted, Mr. Khalil does not challenge

---

[6] The government objects to *Garcia*'s relevance on the basis that it was decided on a PFR. Br. 19. But (g)'s purpose—to shield prosecutorial discretion—is distinct from (b)(9)'s purpose as a channeling provision. Claims are barred by (g) (or, in this case, *not* barred) irrespective of whether the claim is raised in a PFR or a separate action.

[7] The remaining cases cited by the government do not support its expansive interpretation and in fact support Mr. Khalil's argument. *See* Br. 15-16 (citing only cases where (g) was held to apply to the three discrete actions named in the statute). And *Taal v. Trump*, where the court found in three short paragraphs that the plaintiff had not established jurisdiction sufficient to warrant a TRO against two executive orders, is under-reasoned and unpersuasive. *See* No. 3:25-CV-335, 2025 WL 926207, at *2-3 (N.D.N.Y. Mar. 27, 2025). Critically, in analyzing (b)(9) and (g) the court relied on the plaintiffs' concession that "Taal will have the opportunity to raise his constitutional challenges before the immigration courts." *Id.* Mr. Khalil makes no such concession.

the AG's decision to commence proceedings; he is challenging the Policy and Secretary Rubio's retaliatory determination. Moreover, unlike in *AADC*, Mr. Khalil is not an "alien unlawfully in the country" whom the government has selectively targeted for removal on additional terrorism-related grounds. *Id.* 491-92. He is an LPR whom the government has attempted to *render* removable via the retaliatory acts challenged here. *See Schaeuble v. Reno*, 87 F.Supp.2d 383, 392 (D.N.J. 2000) (finding (g) inapplicable because "even if Plaintiff's 'true objective' were to challenge the Attorney General's decision to 'commence proceedings,' Plaintiff is not alleging 'selective enforcement of the immigration laws'"). Thus, to the extent there is any ambiguity as to whether (g) applies, it cannot be construed to bar Mr. Khalil's multiple constitutional claims.

Finally, even if (g) applied—which it does not—Mr. Khalil's claims fall under *AADC*'s exception for "outrageous" conduct for substantially the same reasons the Second Circuit identified in *Ragbir*: he is not in violation of any immigration laws, he is a LPR with a strong interest in avoiding selective detention and deportation, he is being openly retaliated against for protected expression, and the government's admission that he was targeted for the views he expressed obviates the need for any sensitive inquiry into the "real" reasons for his removal. 923 F.3d 53, 69–73 (2d Cir. 2019), *cert. granted, judgment vacated on other grounds sub nom. Pham v. Ragbir*, 141 S. Ct. 227 (2020).

## C. Section 1226(e) does not bar review of Mr. Khalil's claims.

The government briefly argues that Section 1226(e) also prevents this Court from reviewing Mr. Khalil's challenge to the government's retaliatory decision to detain him.

Br. 20-21. But 1226(e) has no application to Mr. Khalil's challenge to the constitutionality of his detention. *See Jennings*, 583 U.S. at 295-56 (finding 1226(e) does not preclude constitutional challenge to "the extent of the Government's detention authority"); *Demore v. Kim*, 538 U.S. 510, 516-17 (2003); *see also Sylvain v. Att'y Gen. of U.S.*, 714 F.3d 150, 155 (3d Cir. 2013) (holding that 1226(e) does not limit habeas review of statutory authority to impose detention); *Ozturk*, 2025 WL 1009445, at *4 & n.1 (rejecting 1226(e) argument identical to government's argument here).

### D. Mr. Khalil properly seeks to enjoin the Policy and Rubio Determination.

The government suggests that Mr. Khalil cannot seek injunctive relief against the Policy and Rubio Determination because he has "filed a habeas petition." Br. 21. But Mr. Khalil filed a habeas petition *and* a complaint, seeking habeas relief *and* invoking the subject-matter jurisdiction of this Court under 28 U.S.C. § 1331. Hybrid formulations are routinely filed in this Circuit seeking various forms of relief. *See, e.g.*, *Alli v. Decker*, 650 F.3d 1007, 1009–10, 1016 (3d Cir. 2011) (considering "combined habeas petition and civil complaint" that sought declaratory relief regarding immigration bond hearings); *Christian A.R.*, 453 F. Supp. 3d at 682 (granting relief on constitutional conditions of confinement claim in hybrid habeas/complaint); *Armando C.G. v. Tsoukaris*, 20-CV-5652, 2020 WL 4218429, at *7 (D.N.J. July 23, 2020) (same).

Proceeding on the erroneous assumption this Court is limited to habeas review, the government goes further and argues *Tazu* limits habeas relief to a bond hearing in the case of prolonged detention. Br. 22. *Tazu* says no such thing and any interpretation

13

otherwise would run straight into *Jennings*'s holding that (b)(9) does not bar a variety of detention-related claims. And indeed, such claims are routinely brought through habeas petitions. *See, e.g., Jane v. Rodriguez*, No. 20-CV-5922, 2020 WL 6867169, at *1 (D.N.J. Nov. 23, 2020) (considering habeas petitioners' claim for declaratory relief that a detention center failed to follow ICE regulations).

## II.    THE POLITICAL QUESTION DOCTRINE IS INAPPLICABLE.

In arguing Mr. Khalil's claims are nonjusticiable because they implicate "foreign policy considerations," Br. 35, the government "suppose[s] that every case or controversy which touches foreign relations lies beyond judicial cognizance." *Baker v. Carr*, 369 U.S. 186, 211 (1962). But it is an "obligation of the federal courts to exercise the jurisdiction given them," *Colo. River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 817 (1976), even in cases they "would gladly avoid," *Zivotofsky v. Clinton*, 566 U.S. 189, 194 (2012). Here, Mr. Khalil does not challenge the wisdom of a discretionary decision, he challenges the *legality* of the executive's action as against long-standing constitutional principles; thus courts "will not stand impotent before an obvious instance of a manifestly unauthorized exercise of power." *Baker*, 369 U.S. at 217.

The political question doctrine is a "narrow exception" to courts' presumptive exercise of jurisdiction. *Zivotofsky*, 566 U.S. at 195. Here, straightforward constitutional jurisprudence creates "judicially manageable standards" to adjudicate Mr. Khalil's claims. *Baker*, 369 U.S at 217; *see also Khouzam v. Att'y Gen. of U.S.*, 549 F.3d 235, 250 (3d Cir. 2008) ("We apply *Baker* with particular caution . . . where individual liberty hangs

in the balance"). The only Third Circuit case the government relies on to argue otherwise *rejects* its position. *See Gross v. German Found.*, 456 F.3d 363, 388 (3d Cir. 2006) ("[E]ven where significant foreign policy concerns are implicated, a case does not present a political question under this factor so long as it involves normal principles of interpretation."). And even in the context of a highly sensitive inter-branch dispute about Jerusalem, the Supreme Court recently affirmed that applying constitutional law to a challenge to executive authority is "a familiar judicial exercise." *Zivotofsky*, 566 U.S. at 196. Ultimately, the principle that courts must review claims regarding the legality of executive action is as old as the republic. *See Marbury v. Madison*, 5 U.S. 137, 166 (1803). The government's arguments to the contrary fail.[8]

## III. THE GOVERNMENT DOES NOT MEANINGFULLY CONTEST THE MERITS OF MR. KHALIL'S CONSTITUTIONAL CLAIMS.[9]

### A. The First Amendment and vagueness claims are likely to succeed.

Mr. Khalil likely to succeed on the merits of his claims that: (1) the Rubio Determination was retaliatory, (2) the Policy under which the Rubio Determination was made—which seeks to silence the pro-Palestine speech of noncitizens by punishing

---

[8] The government's absolutist position is so broad, it cannot be squared with foundational separation of powers cases authorizing judicial review of unlawful executive action. *See, e.g., Youngstown Sheet & Tub Co. v. Sawyer*, 343 U.S. 579 (1952).

[9] The government's argument this Court should hold Mr. Khalil to the higher "mandatory injunction" standard is based on the false assertion that "the last, peaceable, non-contested status" is *after* the government enacted the Policy, and *after* his detention, Br. 34 (quoting *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004)). But the status quo ante is "easily identifiable," *id.*, as Mr. Khalil being at home with his wife, preparing for the birth of his first child. In any event, Mr. Khalil satisfies either standard.

them with arrest and detention because of their views—constitutes impermissible viewpoint discrimination, and (3) the Policy and Determination are unconstitutionally vague. The government's opposition does not even address claims (2) and (3), effectively conceding them. *Compare* Br. *with* ECF 124.[10] And as to Mr. Khalil's retaliation claim, the government does not contest that he meets all elements of the *Mt. Healthy* standard. Instead, it asserts that a different, inapplicable standard should apply, that noncitizens are not protected by the First Amendment, and that the Rubio Determination is beyond judicial review. Br. 28–32. These arguments are unavailing.

Mr. Khalil has shown—and the government does not dispute—he satisfies all three criteria for First Amendment retaliation under *Mt. Healthy City Sch. Dist. v. Doyle*, 429 U.S. 274 (1977). *Compare* Br. 28–32 with ECF 124 at 10–18.[11] The government

---

[10] The government, incredibly, disclaims the existence of the Policy, Br. 32, but statements from high-ranking officials consistently describing it, along with the recent detentions that expressly implement it, confirm it exists. *See generally* Linhorst Decl.; ECF 124 4-9; *see also Velesaca v. Decker*, 458 F. Supp. 3d 224, 243 (S.D.N.Y. 2020) (enjoining unwritten policy denied by government; noting, for APA and other purposes, that "finality can be gleaned from agency action and the effects thereof and does not require any written evidence"; and collecting cases at note 7).

[11] DHS's *post hoc* addition of new, meritless immigration charges does nothing to dispel the inference that the Rubio Determination was substantially motivated by Mr. Khalil's protected speech. *See Saleh v. New York*, No. 06-CV-1007, 2007 WL 4437167, at 6 (S.D.N.Y. Dec. 17, 2007) (finding officers' probable cause to believe plaintiff overstayed visa and subsequent arrest by ICE had "no bearing" on plaintiff's claim NYPD officers retaliated against him by reporting him to ICE). Nor do they advance the government's burden of proving that it would have targeted, arrested, and detained Mr. Khalil even if he had not engaged in the protected activity. *Cf. Weil v. White*, 629 F. App'x 262, 267 (3d Cir. 2015). To the contrary, the timing of the new charges—one week after Mr. Khalil filed his habeas—only strengthens the inference of retaliatory animus and may

instead relies on *Nieves v. Bartlett*, 587 U.S. 391 (2019), to assert that because the grounds for removability in Mr. Khalil's amended NTA "are facially valid," he cannot succeed on his retaliation claim. Br. 28. But the cases the government cites for this proposition all address retaliation claims based on criminal arrest. *See id.* (citing *Nieves* and four other criminal arrest cases). Tellingly, "defendants cite no case in which a court has applied *Nieves* in the civil context. To the contrary, courts have declined to extend *Nieves* beyond the retaliatory arrest setting." *Media Matters v. Bailey*, No. 24-CV-147 (APM), 2024 WL 3924573, at *12–13 (D.D.C. Aug. 23, 2024) (cleaned up) (and explaining why "rationales for the no-probable-cause rule are ill-fitting in the civil investigative setting").

In the immigration context, courts have held that even an "undisputedly valid final order of removal" does not bar a noncitizen's habeas "claim that Government officials sought to deport him in retaliation for his speech," *Ragbir*, 923 F.3d at 67, and that probable cause to revoke an immigration bond does not defeat a noncitizen's habeas claim for retaliatory arrest and detention, *Bello-Reyes*, 985 F.3d at 701 ("[W]e decline to extend a rule this closely dependent on § 1983 case law and the particularities of criminal arrests."). In these cases, courts "apply *the Mt. Healthy* standard, the default rule for First Amendment retaliation claims."[12] *Id.* at 702; *see also Ragbir*, 923 F.3d at 366.

---

even give rise to additional retaliation claims. *See Anderson v. Davila*, 125 F.3d 148, 153 (3d Cir. 1997) (police surveillance of plaintiff shortly after publication of article about his discrimination lawsuit was retaliation).

[12] *See also* Linhorst Decl. Ex. L, Alina Das, *Protecting Immigrant Activists From U.S. Government Retaliation*, Knight Institute (Feb. 12, 2025) (explaining why *Nieves* does not apply to retaliation claims in the immigration context).

And, as the Third Circuit has emphasized, "under *Mt. Healthy* and its progeny," even a "legitimate and constitutional government action can become unconstitutional" if "undertaken in retaliation" for protected speech. *Anderson*, 125 F.3d at 153.

The government sidesteps the merits of Mr. Khalil's First Amendment claims by arguing that the First Amendment does not protect noncitizens from retaliatory arrest, detention, and removal based on their political beliefs and expression. Br. 30 (relying principally on *Harisiades v. Shaughnessy*, 342 U.S. 580 (1952)). However, although *Harisiades* upheld the deportation of noncitizens based on their Communist Party membership, it did so on the ground that such membership was not protected under then-current First Amendment doctrine, regardless of citizenship status. *See* 342 U.S. at 592 & n.18 (citing *Dennis v. United States*, 341 U.S. 494 (1941)). "[R]ead properly, *Harisiades* establishes that deportation grounds are to be judged by the same standard applied to other burdens on First Amendment rights." *Am.-Arab Anti-Discrimination Comm. v. Reno*, 70 F.3d 1045, 1064 (9th Cir. 1995).[13]

The government also invokes *Kleindienst v. Mandel*, 408 U.S. 753 (1972), but that case merely held that "*unadmitted* and *nonresident* alien[s] ha[ve] no constitutional right of *entry* to this country." *Id.* at 762 (emphases added). "The *Kleindienst* analysis expressly

---

[13] *Dennis* and *Harisiades* and have been cabined by subsequent Supreme Court precedents. *See* ECF 86-3 at 13 n.12 (FIRE Amicus Br.). The government also cites *Bluman v. FEC*, 800 F. Supp. 2d 281 (D.D.C. 2011), but that case discussed noncitizens' rights in the context of "activities 'intimately related to the process of democratic self-government,'" like voting and holding office. *Id.* at 287. It did not suggest that the government may retaliate against noncitizens for their protected speech.

rests upon the Attorney General's discretionary power to determine who may enter the country from abroad, a power exercised by the political branches as a derivative of the sovereign power to defend the country against foreign encroachment and dangers." *AADC*, 70 F.3d at 1064 (cleaned up). This case stands on an entirely different footing. *See Bridges v. Wixon*, 326 U.S. 135, 148 (1945) ("Freedom of speech and press is accorded aliens *residing* in this country.") (emphasis added). "If aliens do not have First Amendment rights at deportation, then their First Amendment rights in other contexts are a nullity, because the omnipresent threat of deportation would permanently chill their expressive and associational activities." *AADC*, 70 F.3d at 1065–66.

Ultimately, the government falls back on the argument that this Court cannot second-guess Secretary Rubio's determination that Mr. Khalil's presence in the country "would compromise a compelling United States foreign policy interest." Br. 30–31. As already discussed, *see supra* at 14–15, the fact that the INA may authorize the Secretary of State to designate some noncitizens as foreign policy risks in rare circumstances does not divest this Court of its mandate to adjudicate Mr. Khalil's constitutional claims—particularly as the drafters of that provision expressly did not intend it to be used as a tool to suppress dissent. *See* ECF 124 at 5 n.5.

**B. Mr. Khalil's detention claims are likely to succeed.**

The government contends that it can lawfully detain any noncitizen for any reason so long as removal proceedings are pending. Br. 26. It cannot. Furthermore, Mr. Khalil does not challenge the mere fact of detention pending removal, but the

retaliatory, punitive *basis* of that detention. Indeed, Defendant Rubio recently confirmed the coercive purpose of detaining noncitizen students, stating that "if [the students] seek to self-deport they can do that, because that's what we've done. We're basically asking them to leave the country. That's why they've been detained." Linhorst Decl. Ex. M. But civil detention must be "nonpunitive," *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001), and "[r]etribution and deterrence are not legitimate nonpunitive governmental objectives," *Bell v. Wolfish*, 441 U.S. 520, 539 n.20 (1979) (cleaned up).

Unable to point to a single case permitting immigration detention for purposes not related to mitigating flight risk or danger, the government resorts to a Red Scare– era case involving the detention of admitted Communist Party members. Br. 26–27 (citing *Carlson v. Landon*, 342 U.S. 524 (1952)). But *Carlson* involved a statutory scheme specifically authorizing detention of Communist Party members pending removal because Congress had found they posed special dangers. 342 U.S. at 541–42. There is no special detention scheme applicable to individuals being removed under the Foreign Policy ground. *Cf., e.g.,* 8 U.S.C. § 1226a (detention scheme related to terrorism-related grounds of removal). Nor has Congress applied the mandatory detention scheme in 8 U.S.C. § 1226(c) to such individuals. Thus, while the Court found that "evidence of [Communist Party] membership plus personal activity … gives adequate ground for detention" under the statutory scheme in *Carlson*, *see* Br. 27 (citing 342 U.S. at 541), the government is wrong to simply swap "designation under the Foreign Policy ground" for Communist membership and activity.

20

Finally, the government attempts to cabin *Zadvydas*, *Demore*, and *German Santos* as only relevant to challenges to prolonged detention. Br. 27. But those cases all affirm that civil detention may be carried out only for nonpunitive purposes and must be tethered to flight risk and danger. *See, e.g., Demore*, 538 at 532 (Kennedy, J., concurring) (immigration detention must "facilitate deportation, or [] protect against risk of flight risk or dangerousness" and cannot be to "incarcerate for other reasons"); *Zadvydas*, 533 U.S. at 690 (citing civil confinement precedent and noting immigration detention must be "nonpunitive in purpose and effect" and predicated on flight risk or danger); *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 214 (3d Cir. 2020) (noting continued detention must be justified by flight risk or danger). Here, where the government does not—and could not—allege that Mr. Khalil poses a flight risk or danger, it lacks any legitimate purpose for detaining him.

## IV.    IRREPARABLE HARM, EQUITIES, AND PUBLIC INTEREST.

In arguing that Mr. Khalil has not established irreparable harm, the government does not—because it cannot—dispute that injunctive relief is "clearly appropriate" where, as here, First Amendment rights are "either threatened or in fact being impaired at the time relief is sought." *Stilp v. Contino*, 613 F.3d 405, 409 n.4 (3d Cir. 2010), and it otherwise broadly disregards the severe legally cognizable harms Mr. Khalil describes in his motion. *Compare* Br. 33 *with* ECF 124 at 13–14 & 35–38. Similarly, while the "public interest in enforcing immigration laws is significant," Br. 34, "neither the Government nor the public can claim an interest in the enforcement of an

unconstitutional" policy to suppress speech. *ACLU v. Ashcroft*, 322 F.3d 240, 251 (3d Cir. 2003) (cleaned up), *aff'd and remanded*, 542 U.S. 656 (2004). Where, as here, the challenged actions and this very case broadly threaten the freedom to speak on an urgent matter of public concern, *see* Linhorst Decl. Ex. A–K, the balance of equities tips strongly in favor of the relief sought here. *Reilly v. City of Harrisburg*, 858 F.3d 173, 176–77 (3d Cir. 2017).

## V.    THE REQUESTED RELIEF DOES NOT REQUIRE A BOND.

The Third Circuit waives Rule 65(c)'s bond requirement when an injunction imposes "no risk of monetary harm" and enforces a "significant federal right." *McCormack v. Twp. of Clinton*, 872 F. Supp. 1320, 1328 (D.N.J. 1994). Both factors apply here. First, the government does not identify "costs and damages" it would sustain should this Court issue preliminary relief. Second, waiver of the bond requirement is necessary "to prevent undue restriction of" Mr. Khalil's ability to enforce his constitutional rights. *Temple Univ. v. White*, 941 F.2d 201, 219–20 (3d Cir. 1991).

## CONCLUSION

For the foregoing reasons, this Court should grant preliminary relief. [14]

---

[14] Finally, the government argues that venue is improper, Br. 23, but the Court has already rejected that argument, ECF 78, and Mr. Khalil's venue-related allegations have been superseded by the Court's recent order, ECF 153.

Dated: April 6, 2025
Newark, NJ

NEW YORK CIVIL LIBERTIES UNION
FOUNDATION
Amy Belsher*
Robert Hodgson*
Veronica Salama*
Molly Biklen *
125 Broad Street, 19th Floor
New York, NY 10004
Tel: (212) 607-3300

CLEAR PROJECT
MAIN STREET LEGAL SERVICES, INC.
Ramzi Kassem*
Naz Ahmad
Shezza Abboushi Dallal*
CUNY School of Law
2 Court Square
Long Island City, NY 11101
Tel: (718) 340-4558

VAN DER HOUT LLP
Marc Van Der Hout**
Johnny Sinodis**
Oona Cahill**
360 Post St., Suite 800
San Francisco, CA 94108
Tel: (415) 981-3000

WASHINGTON SQUARE LEGAL
SERVICES, INC.
IMMIGRANT RIGHTS CLINIC
Alina Das*
245 Sullivan Street, 5th Floor
New York, NY 10012
Tel: (212) 998-6430

*Counsels for Petitioner*
**Admitted Pro Hac Vice*

Respectfully submitted,

*/s/ Jeanne LoCicero*
AMERICAN CIVIL LIBERTIES UNION OF
NEW  JERSEY FOUNDATION
Jeanne LoCicero
Farrin R. Anello
Molly K.C. Linhorst
570 Broad Street, 11th Floor
Newark, NJ 07102
Tel: (973) 854-1715

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
Omar Jadwat*
Noor Zafar*
Sidra Mahfooz*
Brian Hauss*
Brett Max Kaufman*
Esha Bhandari*
Vera Eidelman*
Tyler Takemoto*
125 Broad Street, Floor 18
New York, NY 10004
Tel: (212) 549-2500

CENTER FOR CONSTITUTIONAL RIGHTS
Baher Azmy
Samah Sisay*
Diala Shamas*
666 Broadway, 7th Floor
New York, NY 10012
Tel: (212) 614-6464

DRATEL & LEWIS
Amy E. Greer
29 Broadway, Suite 1412
New York, NY 10006
Tel: (212)732-8805
**PHV application pending or forthcoming*