April 10, 2025

Honorable Michael E. Farbiarz, United States District Judge
Martin Luther King Building & U.S. Courthouse
50 Walnut Street, Newark, New Jersey 07101

Re:   *Khalil v. Trump, et al.*, No. 2:25-cv-1963 (MEF) (MAH)

Dear Judge Farbiarz,

    We write in response to this Court's Order directing the parties to "explain whether an Immigration Judge considering a charge of removal is legally empowered to build a factual record tailored for eventual review of a legal issue by the relevant Court of Appeals that the Immigration Judge is not itself empowered to resolve." ECF 178. Immigration judges ("IJs") are not so empowered. No statute creates authority to engage in such factfinding; implementing regulations and regular practice preclude it; and courts routinely observe that, as a result, the factual record created in an immigration proceeding is insufficient to provide meaningful review of such issues at any later stage. *Elgin v. Dep't of Treasury* confirms each of these conclusions.

    As a threshold matter, none of Mr. Khalil's claims in this case can be heard by the relevant Court of Appeals through a petition for review ("PFR") as they are collateral to his removal. *See* ECF 175 at 6-7. In reviewing PFRs, appeals courts are authorized to conduct judicial review only of "matters on which the validity of the final order is contingent." *INS v. Chadha*, 462 U.S. 919, 938 (1983); *see* 8 U.S.C. § 1252(a)(1) (providing for review of removal orders alone). But, even assuming a Court of Appeals could hear those claims, there is no statute or regulation that permits IJs to build a factual record on issues they cannot resolve.

    An IJ's jurisdiction is limited to a determination of removability, deportability, and excludability under the INA.[1] 8 C.F.R. §§ 1240.1(a), 1240.31, 1240.41. An IJ's authority to permit discovery is also limited by statute. No provision in the INA or its implementing regulations authorizes IJs to build a factual record on issues preserved for the Court of Appeals. Instead, the INA limits a noncitizen's ability to develop a factual record in removal proceedings, providing IJs with the limited authority to "receive evidence, and interrogate, examine, and cross-examine the alien and any witnesses." 8 U.S.C. § 1229a(b)(1). While an IJ "may issue subpoenas for the attendance of witnesses and presentation of evidence," *id.*, to do so the IJ must find that such evidence is "essential" to the removal case before them, 8 C.F.R. § 1003.35(a) (requiring deposition "testimony or other evidence" be "essential"), 1003.35(b) (same for any subpoena to produce a witness or order any "documentary evidence"). Even where such evidence goes to the heart of the removability inquiry, "[a]s a matter of practice, [IJs] use this authority rarely, if at all." Kurzban Decl. (ECF 175-1) ¶ 21; *see also Romanishyn v. Att'y Gen. of U.S.*, 455 F.3d 175, 186 (3d Cir. 2006) (upholding IJ's refusal to permit noncitizen to call witnesses in support of his defense against removal); *Jarbough v. Att'y Gen. of the U.S.*, 483 F.3d 184, 192 (3d Cir. 2007) (upholding IJ's refusal to permit expert witness to testify on critical element of removal defense).[2]

---

[1] As will be discussed in the additional briefing ordered by this Court, the IJ has no authority to entertain Mr. Khalil's constitutional claims brought in this case.

[2] Indeed, the IJ in Mr. Khalil's case has already denied Mr. Khalil's request for discovery outright, noting the court's limited jurisdiction, and scheduled his removability hearing—where

Multiple courts have concluded that IJs lack authority to develop a record on issues that IJs cannot hear with an eye towards review in the Court of Appeals.[3] *See, e.g.*, *Tefel v. Reno*, 972 F. Supp. 608, 615 (S.D. Fla. 1997) ("Their claim . . . is not one which IJs have any jurisdiction to consider. A record could therefore never be created before the IJ or the BIA that a Court of Appeals could review."); *Centro Presente v. DHS*, 332 F. Supp. 3d 393, 407 (D. Mass. 2018) (rejecting application of (b)(9) to claims seeking to set aside determination eliminating petitioners' immigration status because, "[l]ike the constitutional and statutory claims at issue in *McNary*, the assertion of the claims here would require developing a record that would not be possible or relevant in any one individual plaintiff's removal proceeding"); *Jafarzadeh v. Duke*, 270 F. Supp. 3d 296, 310 (D.D.C. 2017) (where "plaintiffs' claims . . . cannot be raised in the administrative process, the circuit court would necessarily be hobbled" because "there would not *be* a record" on those claims). And those courts' views are consistent with the Supreme Court's in *Reno v. AADC*, 525 U.S. 471 (1999), which observed that, where "neither the [IJ] nor the [BIA] has authority to hear [] claims . . . a challenge to a final order of deportation based upon such a claim would arrive in the court of appeals without the factual development necessary for decision." *Id.* at 476. Because these claims "rest on the development of a factual record in the district court, requiring them to raise such claims only before the Court of Appeals is tantamount to denying Plaintiffs a forum before which they can raise their constitutional claims." *Tefel*, 972 F. Supp. at 615.

Mr. Khalil's petition brings claims relating to three central issues: (1) that his apprehension and detention are unconstitutional; (2) that the government's policy of targeting noncitizens who engage in expressive activity in support of Palestine or critical of Israel is viewpoint discriminatory and void for vagueness; and (3) that the Rubio Determination was retaliatory in violation of the First Amendment. An IJ cannot develop the necessary factual record for any of these claims.

First, the IJ is not authorized to develop a factual record into the retaliatory purpose, reasonableness, or excessiveness of Mr. Khalil's detention at all, both because the IJ is forbidden to hold a bond hearing, ECF 156 at 2 (citing 8 C.F.R. § 1003.19(h)(2)(i)(C)), and because the IJ is forbidden to address constitutional claims, *see infra*. In any event, constitutional challenges to detention go to the federal district court through writs of habeas corpus; circuit courts do not review detention claims through a PFR. *See Chadha*, 462 U.S. at 938 (authorizing review only as to "the validity of the final order" of removal); *see also Jennings v. Rodriguez*, 583 U.S. 281, 293 (2018) (interpreting 1252(b)(9) narrowly to permit challenges to detention).

---

she has stated she will rule on his removability—for *this Friday*, April 10 (just two days after the government first provided evidence supporting its immigration charges). Whatever theoretical discovery tools might be available in some immigration cases, Mr. Khalil has already been denied the use of them in his own.

[3] In opposing the motion for preliminary injunction, the government cites *Aquino v. Att'y Gen.*, 53 F.4th 761, 768 (3d Cir. 2022), for the proposition that an IJ "can develop the record for further review" on issues it cannot decide. ECF 156 at 13. The Third Circuit says no such thing in *Aquino*, which decided a different question: whether the IJ had adequately developed the record on the petitioner's claimed relief from removal under the Convention Against Torture, 53 F.4th at 768, a question over which the IJ indisputably had jurisdiction, *see* Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment. 1465 U.N.T.S. 85 (1988); 8 U.S.C. § 1231; 8 C.F.R. §§ 1208.16, 1208.17, 1208.18.

Second, Mr. Khalil's claims related to the Policy raise issues that extend far beyond the "validity" of any final order in Mr. Khalil's case and are thus unreviewable on a PFR. Even if further review were available, discovery into these claims would require, at a minimum, numerous depositions of government officials not party to Mr. Khalil's immigration proceedings and document requests into materials the IJ has no authority to compel. The limited discovery tools available to the IJ are insufficient to build this record even if the IJ were authorized and inclined to permit it. *See Centro Presente*, 332 F. Supp. 3d at 407.

Third, as to the Rubio Determination, according to the BIA, IJs may not even inquire into the "reasonableness" of the Secretary of State's Section 1227(a)(4)(C) determination, *In Re Ruiz-Massieu*, 22 I. & N. Dec. 833 (BIA 1999), much less whether it was unconstitutional retaliation. In *Massieu*, the BIA concluded that the Secretary of State's determination under Section 1227(a)(4)(C) "should be treated as conclusive evidence of the respondent's deportability," and that "neither the "Immigration Judge [nor] this Board [have the] authority to question the validity of that determination."[4] The BIA notably distinguished Section 1227(a)(4)(C) from other INA provisions that "*do* require a more active fact-finding role by the Immigration Judge." *Id.* at 840–43 (cleaned up) (emphasis added); *see also* ECF 110-1 (Immigration Practitioners Amicus Br.) at 14–16 (examining BIA's extreme deference to Secretary of State's determination).

The Court's order referred to *Elgin v. Department of Treasury*, 567 U.S. 1 (2012). That case and its analysis highlight why an IJ here cannot and will not build a comparable factual record that would allow for meaningful review in a court of appeals of the issues an IJ cannot decide.[5]

First, the *Elgin* Court made clear that (as the petitioners had conceded), in the scheme at issue there, as-applied constitutional challenges to adverse employment determinations were *required* to "be brought within the CSRA scheme." *Id.* at 12 ("must"). In fact, the petitioners themselves in *Elgin* agreed at oral argument that as-applied constitutional challenges were the "bread and butter cases at the [MSPB]." Oral Argument at 6:37, *Elgin v. Dep't of Treasury*, No. 11-45 (Feb. 27, 2012), https://www.oyez.org/cases/2011/11-45; *see also id.* at 8:19 (same). And, surely not incidentally, the *Elgin* Court explained that "the MSPB routinely adjudicates" as-applied constitutional claims and, when developing a factual record, "routinely identifies the relevant constitutional framework" to decide those claims, 567 U.S. at 12 (noting examples of MSPB adjudicating First and Fourth Amendment claims); *see id.* at 19 n.9 (same).

Second, the Court pointed to a robust set of discovery tools available to the administrative law judges in the MSPB. *See id.* (pointing to 5 U.S.C. § 1204(b)(1)–(2) to highlight MSPB's

---

[4] The government makes similar arguments, asserting that its invocation of the Foreign Policy Ground has "no manageable standard," Br. 24—in other words, is vague, *see* ECF 124 at 23–31.

[5] *Elgin*, which predates and thus cannot displace the "meaningful review" analysis of *Jennings* and its progeny, *see* ECF 175 at 2–7, also involved quintessentially remunerable claims—seeking employment reinstatement and back pay—without the temporal urgency of a claim seeking relief from the irreparable harm of retaliatory detention and ongoing widespread chilled speech. *Compare id.* at 7–8 (seeking pay and reinstatement), *with E.O.H.C. v. Sec'y US DHS*, 950 F.3d 177, 186 (3d Cir. 2020) (finding (b)(9) did not apply where "relief may come too late" though the administrative process) (citing *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 484 (1991)); ECF 175 at 2–7 (relief would come too late for Mr. Khalil).

specific statutory authority to "administer oaths, examine witnesses, take depositions, issue interrogatories, subpoena testimony and documents, and otherwise receive evidence"). And third, the Court highlighted that a court reviewing the MSPB's decision could rely on material outside the record and take "judicial notice of facts" relevant to the constitutional inquiry. *Id.* at 19.

The scheme at issue in *Elgin* is leagues away from the one in which IJs operate. First, the BIA has long held that immigration courts cannot consider either facial *or as-applied* constitutional claims. *See, e.g.*, *Matter of Ramos*, 15 I. & N. Dec. 671, 675 (B.I.A. 1976) (declining to consider respondent's "as applied" equal protection and due process challenges because "we do not entertain constitutional challenges"); *Matter of H-*, 3 I. & N. Dec. 411, 419, 456 (B.I.A. 1949) (rejecting "as applied" challenge and holding it had "no jurisdiction" to consider the issue). Far from being mandatory and common, IJ review of constitutional claims of any stripe is simply anathema. Second, IJs are limited by statute and regulation to only those tools that are "essential" to the adjudication of removability. *See* 8 U.S.C. § 1229a(b)(1) (naming only "depositions and subpoenas"); 8 C.F.R. § 1003.35 (depositions and subpoenas only available if "evidence is essential"). And third, PFR review is statutorily limited to "only . . . the administrative record on which the order of removal is based," with "administrative findings of fact [that] are conclusive," 8 U.S.C. §1252(b)(4), and the Third Circuit has held that, on a PFR, a court of appeals "cannot take judicial notice of materials outside the administrative record," *Rad v. Att'y Gen. United States*, 983 F.3d 651, 657 (3d Cir. 2020); *see also Lin v. Holder,* 565 F.3d 971, 979 (6th Cir. 2009) (same).

The vast differences between the IJ scheme and the one at issue in *Elgin* are probably why, to Petitioner's knowledge, no court has ever held that the MSPB process described in *Elgin* is akin to the IJ process for (b)(9) purposes. And at least two have explained persuasively why it is not. *See Centro Presente*, 322 F. Supp. 3d at 408 (noting *Elgin* Court's reliance on both MSPB's familiarity with "constitutional claims" and its possession of the "tools to create the necessary record" as ensuring that *Elgin* "petitioners' constitutional claims [could] receive meaningful review" through MSPB and appellate process, and holding "[t]he same cannot be said here as to any statutory or constitutional claims" brought by noncitizens before an IJ); *Saget v. Trump*, 345 F. Supp. 3d 287, 296 (E.D.N.Y. 2018) (following *Centro Presente* and agreeing that "Plaintiffs would not be able to assert the claims they pursue here in immigration court because such claims"—based on allegations of "unconstitutional racial animus"—"would require developing a record that would not be relevant to an individual removal proceeding"). As described above, in practice this means that IJs cannot and do not permit factfinding related to collateral or constitutional issues they will not and cannot decide and that the court of appeals are not empowered to decide on PFR, either. *See supra*; ECF 175-1 ¶¶ 21-24.

For all these reasons, the MSPB process discussed in *Elgin* is particularly inapplicable to the immigration detention context. Instead, the "meaningful review" analysis of *E.O.H.C.*—which asks whether the specific "relief" sought could be "meaningfully provide[d]" at the end of a PFR process, or whether, "even if it does . . . relief may come too late," 950 F.3d at 186—should govern.

                      Respectfully submitted,

                      ____/s/Jeanne LoCicero_____

| | |
|---|---|
| **DRATEL & LEWIS**<br>Amy E. Greer<br>29 Broadway, Suite 1412<br>New York, NY 10006<br>Tel.: (212)732-8805<br>agreer@dratellewis.com | **AMERICAN CIVIL LIBERTIES UNION OF NEW JERSEY FOUNDATION**<br>Jeanne LoCicero<br>Farrin R. Anello<br>Molly K.C. Linhorst<br>570 Broad Street, 11th Floor<br>Newark, NJ 0710<br>Tel.: (973) 854-1715 |
| **CENTER FOR CONSTITUTIONAL RIGHTS**<br>Baher Azmy<br>Samah Sisay*<br>Diala Shamas*<br>666 Broadway, 7th Floor<br>New York, NY 10012<br>Tel.: (212) 614-6464<br>bazmy@ccrjustice.org<br>ssisay@ccrjustice.org<br>dshamas@ccrjustice.org | **NEW YORK CIVIL LIBERTIES UNION FOUNDATION**<br>Amy Belsher*<br>Robert Hodgson*<br>Veronica Salama*<br>Molly Biklen*<br>125 Broad Street, 19th Floor<br>New York, NY 10004<br>Tel.: (212) 607-3300<br>abelsher@nyclu.org |
| **VAN DER HOUT LLP**<br>Marc Van Der Hout*<br>Johnny Sinodis*<br>Oona Cahill*<br>360 Post Street, Suite 800<br>San Francisco, CA 94108<br>Tel.: (415) 981-3000<br>Fax: (415) 981-3003<br>ndca@vblaw.com | **AMERICAN CIVIL LIBERTIES UNION FOUNDATION**<br>Omar Jadwat*<br>Noor Zafar*<br>Sidra Mahfooz*<br>Brian Hauss*<br>Esha Bhandari*<br>Vera Eidelman*<br>Tyler Takemoto*<br>125 Broad Street, 18th Floor<br>New York, NY 10004<br>Tel.: (212) 549-2500<br>ojadwat@aclu.org |
| **CLEAR PROJECT**<br>**MAIN STREET LEGAL SERVICES, INC.**<br>Ramzi Kassem*<br>Naz Ahmad<br>Mudassar Hayat Toppa*<br>Shezza Abboushi Dallal*<br>CUNY School of Law<br>2 Court Square, 5th Floor<br>Long Island City, NY 11101<br>Tel.: (718) 340-4558<br>ramzi.kassem@law.cuny.edu<br>naz.ahmad@law.cuny.edu<br>mudassar.toppa@law.cuny.edu<br>shezza.dallal@law.cuny.edu | **WASHINGTON SQUARE LEGAL SERVICES, INC.**<br>Alina Das*<br>Immigrant Rights Clinic<br>245 Sullivan Street, 5th Floor<br>New York, New York 10012<br>Tel.: (212) 998-6430<br>alina.das@nyu.edu |

*Counsel for Petitioner*

\**Admitted* pro hac vice