Uploaded on: 04/21/2025 at 04:55:48 PM (Central Daylight Time) Base City: JNA

Alice Miller  
Chief Counsel  
Numa Metoyer  
Deputy Chief Counsel  
U.S. Department of Homeland Security  
U.S. Immigration and Customs Enforcement  
830 Pinehill Road  
Jena, Louisiana 71342  
TEL:   (318) 992-1850

☒ **DETAINED**

UNITED STATES DEPARTMENT OF JUSTICE  
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW  
IMMIGRATION COURT  
JENA, LOUISIANA

| IN THE MATTER OF: | ) | |
|---|---|---|
| | ) | In Removal Proceedings |
| Mahmoud Khalil | ) | |
| | ) | A ███ |
| | ) | |
| Respondent | ) | |

Immigration Judge: Comans          Next Hearing: Unknown

**U.S. DEPARTMENT OF HOMELAND SECUIRTY'S**  
**OPPOSITON TO RESPONDENT'S MOTION TO TERMINATE**

Exh. 15 - Adm.

The U.S. Department of Homeland Security, U.S. Immigration and Customs Enforcement (DHS) respectfully requests that the immigration judge deny the respondent's motion to terminate proceedings.

## FACTS

On March 8, 2025, agents of ICE Homeland Security Investigations (HSI) began conducting surveillance within the vicinity of the respondent's suspected address of ▇▇▇▇▇▇ ▇▇▇▇▇▇ New York, New York, with the intentions of establishing a pattern of life. The terminology "pattern of life" is a term of art utilized by HSI when conducting surveillance that simply means they are gathering information on the targeted subject regarding his frequent locations, people he associates with, and various other information essential to law enforcement activities. During the course of the surveillance, an HSI supervisory agent was notified by ICE Enforcement Removal Operations (ERO) that a charge of removability under section 237(a)(4)(C) of the Immigration and Nationality Act (INA) had been approved and was supported by the Secretary of State's determination that the respondent's presence or activities in the United States would have serious adverse foreign policy consequences for the United States. An individual resembling the respondent was seen near the location. He was first observed walking on the sidewalk. The HSI supervisory agent radioed an HSI agent who was parked directly in front of the ▇▇ ▇▇▇▇▇▇▇ ▇▇▇▇▇ address. The agent observed the individual, whom he also believed to be the respondent approach the building. The respondent was with a female, later determined to be his wife. The HSI agent exited his vehicle, identified himself as HSI and police, and asked the respondent if he was Mahmoud Khalil. The respondent confirmed that he was Mahmoud Khalil. The HSI supervisory agent then approached and asked the respondent for identification. The respondent produced a foreign driver's license. His wife interjected and

indicated that the respondent had lawful residence status. The supervisory agent exercised discretion and gave the respondent's wife an opportunity to obtain the respondent's conditional residence card which was located in their apartment, in lieu of arresting him for violating section 264(e) of the INA.[1] The respondent and the HSI agents remained in the foyer.

The supervisory agent asked the respondent to cooperate while they attempted to verify his identify, but the respondent stated that he would not cooperate and that he was going to leave the scene. The HSI supervisory agent believed there was a flight risk and arrest was necessary. At that time, the respondent's wife had returned to the scene. The supervisory agent verbally informed the respondent that he was under arrest. To note, the respondent's wife recorded this part of the encounter.[2] Her video clearly shows that the arrest occurred in the foyer of the building.

The respondent was placed under arrest and transported to the ICE Enforcement and Removal Operations New York office for processing and booking into immigration custody. At that time, HSI officers also executed and served the respondent with a warrant of arrest (Form I-200), a Notice to Appear (Form I-862), and a Notice of Custody determination (Form I-286).

## ARGUMENT

Here, officers had exigent circumstances to conduct the warrantless arrest, it is the pattern and practice of DHS to fully process a respondent once in custody with an I-200 as part of that intake processing. In fact, 8 C.F.R. 236.1(b)(1), states that at the time of the notice to appear or any time thereafter and up to the time of removal proceedings are completed, the respondent may

---

[1] Under INA section 264(e) every alien, eighteen years of age and over, shall at all times carry with him and have in his personal possession any certificate of alien registration or alien registration receipt card issued to him. When an alien fails to comply with INA 246(e) he shall be guilty of a misdemeanor.
[2] https://youtube.com/shorts/ihjycIIovms?si=CWn4bmc41FMXSnlc

Uploaded on: 04/21/2025 at 04:55:48 PM (Central Daylight Time) Base City: INA

be arrested and taken into custody under the authority of Form I-200. Thus, DHS can issue an I-200 at any point, although in this case the arrest was under the exigent circumstance.

Contrary to the respondent's argument, DHS was not required to obtain a judicial warrant of arrest prior to arresting the respondent on March 8, 2025. Per the regulations, immigration officers have the right to ask questions of anyone if they do not restrain the individual's freedom to walk away. 8 C.F.R. § 287.8(b)(1). Immigration officers also have the right to briefly detain an individual for questioning where there is a reasonable suspicion based on specific articulable facts that the individual engaged in an offense against the United States or is an alien illegally in the United States. 8 C.F.R. § 287.8(b)(2). As to arrest, an immigration officer may effectuate an arrest where he has reason to believe that the individual has committed an offense against the United States or is an alien illegally in the United States. 8 C.F.R. § 287.8(c)(2)(i). Generally, a warrant of arrest must be obtained. 8 C.F.R. § 287.8(c)(2)(ii). However, an exception to the warrant requirement exists where the immigration officer has reason to believe that the individual is likely to escape before a warrant can be obtained. *Id.*

In this case, HSI agents arrived at the address of ███ ████████ ███ New York, New York, to conduct surveillance with the intentions of establishing a pattern of life. Upon receiving notification that there was a legally sufficient removability charge under section 237(a)(4)(C) of INA after a determination by the Secretary of State that the respondent's presence or activities in the United States would have serious adverse foreign policy consequences for the United States, the HSI agents lawfully proceeded to question the respondent and asked for confirmation of his identity. Per the regulations, the HSI agents were within their authority to question the respondent. To note, they were also within their authority to briefly detain him for questioning because at that time they had received information that he was a removable alien and had failed

Uploaded on: 04/21/2025 at 04:55:48 PM (Central Daylight Time) | Base City: JNA

to carry his alien registration receipt card on his person, which is a misdemeanor under section 264(e) of the INA.

As to arrest, the HSI agents were not required to obtain a warrant of arrest because the arrest was effectuated upon the respondent's statements and actions that gave the agents reasons to believe that it was likely he would escape before they could obtain a warrant. The respondent, though required, was not carrying his alien registration receipt card on his person. He refused to cooperate with the agents, even though they exercised discretion and decided not to arrest him on a misdemeanor charge for failure to possess his green card, which is punishable by a fine or imprisonment. He verbally informed the agents that he was going to leave the scene, even though his wife had not yet returned with his conditional residence card. Given the agents' interaction with the respondent and the information received regarding removability and the Secretary of State's determination, the agents had reason to believe that the respondent was likely to escape before a warrant could be obtained. Thus, the exception to the warrant requirement applied and the agents were within lawful authority to arrest the respondent on March 8, 2025, at that time.

## CONCLUSION

Based on the foregoing, there is no basis for termination of the removal proceedings. DHS requests that the respondent's motion to terminate be denied.

Respectfully submitted on April 21, 2025,

NUMA V METOYER III
*Digitally signed by NUMA V METOYER III*
*Date: 2025.04.21 16:50:18 -05'00'*

Numa Metoyer
Deputy Chief Counsel
Department of Homeland Security
U.S. Immigration and Customs Enforcement
830 Pinehill Road
Jena, Louisiana 71342

Exh. 15 - Adm.

Uploaded on: 04/21/2025 at 04:55:48 PM (Central Daylight Time) | Base City: JNA

# CERTIFICATE OF SERVICE

On the date below, I have provided a copy of the Department of Homeland Security Oppostion to the respondent and/or the respondent's counsel via:

☐ Central Louisiana ICE Processing Center
830 Pinehill Rd,
Jena, Louisiana 71342

☑ the Executive Office for Immigration Review (EOIR) Court & Appeals System (ECAS), in accordance with 8 C.F.R. 1003.31. The electronic case record in ECAS includes a Form EOIR-28 Notice of Entry of Appearance, which indicates the respondent is represented by counsel for this proceeding. Pursuant to 8 C.F.R. 1003.32, filing the foregoing via ECAS will effectuate service of the motion upon the respondent.

☐ River Correctional Center
26362 Highway 15
Ferriday, LA 71334

☐ OTHER:

NUMA V METOYER III
Digitally signed by NUMA V METOYER III
Date: 2025.04.21 16:51:01 -05'00'

Numa Metoyer
Deputy Chief Counsel
Department of Homeland Security
Immigration and Customs Enforcement
830 Pinehill Road
Jena, Louisiana 71342

4/21/25
Date