Marc Van Der Hout
Johnny Sinodis
Oona Cahill
Van Der Hout LLP
360 Post Street, Suite 800
San Francisco, California 94108
Telephone: (415) 981-3000
Facsimile: (415) 981-3003

Attorneys for Respondent
Mahmoud KHALIL

**DETAINED**

UNITED STATES DEPARTMENT OF JUSTICE

EXECUTIVE OFFICE FOR IMMIGRATION REVIEW

OFFICE OF THE IMMIGRATION JUDGE

JENA, LOUISIANA

| | |
|---|---|
| In the Matter of: | ▆▆▆▆▆▆ |
| Mahmoud KHALIL, | Hearing Date: TBD |
| | Hearing Time: TBD |
| Respondent, | Before: Hon. Judge Jamee E. Comans |
| In Removal Proceedings. | |

**REPLY IN SUPPORT OF MOTION TO TERMINATE REMOVAL PROCEEDINGS BASED ON AN EGREGIOUS FOURTH AMENDMENT VIOLATION AND EGREGIOUS VIOLATION OF THE REGULATIONS REQUIRING AN ADMINISTRATIVE ARREST WARRANT OR EVIDENCE OF FLIGHT RISK**

On April 24, 2025, I, Johnny Sinodis, caused the enclosed document to be served on the U.S. Department of Homeland Security via the EOIR Courts and Appeals System (ECAS). This document was electronically filed through ECAS and both parties are participating in ECAS. Therefore, there is no separate service completed.

Executed this 24th day of April 2025.
We include a separate certificate of service on the final page, as requirements vary by Immigration Courts.

Uploaded on 04/24/2025 at 09:30:21 AM (Central Daylight Time) Base City, NV/A

Respondent, Mr. Mahmoud KHALIL, ██████████ through counsel, hereby submits this Reply in Support of Motion to Terminate Removal Proceedings Based on an Egregious Fourth Amendment Violation and Egregious Violation of the Regulations Requiring an Administrative Warrant or Evidence of Flight Risk.

In their opposition to the motion, DHS does not even attempt to dispute that proceedings should be terminated where, as here, an egregious regulatory violation occurred. They further do not dispute that they had no warrant at all, neither judicial nor administrative, when they arrested Mr. Khalil in his private apartment building. Instead, without pointing to a single piece of evidence, they falsely contend that Mr. Khalil refused to cooperate with agents, and this supposed failure to cooperate justified their warrantless arrest. Attorney argument is not evidence. *United States v. Garcia*, 99 F.4th 253, 267 (5th Cir. 2024) (quoting *INS v. Phinpathya*, 464 U.S. 183, 188 n.6 (1984) ("counsel's statements in [a] motion and subsequent briefs are not evidence.").  DHS's legal brief offers no factual basis contradicting the statements of Mr. Khalil, his wife, his attorney, or video of the arrest that DHS cites. *See* DHS Opposition ("Opp'n") at n. 2.

Extensive documentation, and multiple witness statements confirm that no such justification existed. Mr. Khalil fully complied with the agents arresting him, despite the fact that after repeated requests by Mr. Khalil, his wife, and his lawyer, they never showed him a warrant—because none existed. The egregious regulatory violation committed by DHS agents requires this Court to terminate Mr. Khalil's case, as does the egregious violation of the Fourth Amendment.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On March 8, 2025, DHS arrested and detained Mr. Khalil inside his apartment building in New York City. DHS did not have a judicial search warrant permitting them to enter the apartment building, which they needed in order to enter a private space. *See* Document List, dated Apr. 11,

2025 at p. 36 (Photos of signs in Mr. Khalil's Lobby demonstrating it is a private space). DHS also did not have an arrest warrant for Mr. Khalil, nor, contrary to the unsupported assertions of government counsel, did DHS have any reason to believe that he was a flight risk.

Mr. Khalil's apartment building is restricted access, meaning only those individuals with a key to the front entrance of the building may enter. *See* Document List, submitted Apr. 11, 2025 at p. 36 (Photos of signs in Mr. Khalil's lobby, demonstrating it is a private space). According to the DHS brief, HSI agents were conducting "pattern of life" surveillance in the vicinity of his apartment building. Opp'n at 2. Presumably, then, the agents could observe how individuals entered the building, and that it was not open to the public.

On the evening of March 8, 2025, Mr. Khalil was returning home with his wife from an Iftar meal. Ex. A (Declaration of Noor Abdalla). When Mr. Khalil unlocked the entrance door to the building, he entered the building with his wife. *Id.* His wife observed two unknown individuals follow them into the building. *Id.* Neither Mr. Khalil nor Dr. Abdalla had given any of these individuals permission to enter the building. *Id.*; *see also* Ex. B (Declaration of Mahmoud Khalil). Notably, both the I-213 and DHS's opposition to the motion to terminate obfuscate how the agents ended up inside Mr. Khalil's apartment building. DHS Evidence Part 4 (submitted Apr. 9, 2025), Tab A, I-213; Opp'n at 2-3.

Immediately upon entering the building, these individuals began to ask Mr. Khalil questions, including to confirm his identity. Ex. B (Declaration of Mahmoud Khalil). The agents asked him if he was Mahmoud Khalil, and he confirmed he was. *Id.* They then proceeded to inform him that he needed to go with them and told him his visa had been revoked. Both Mr. Khalil and his wife asked the agents to see a warrant, but they did not provide one. *Id.*; Ex. A (Declaration of Noor Abdalla). His wife also observed two other individuals join the first two agents from another

2

part of the lobby, presumably because they had entered the building through another locked entrance. *Id.* Mr. Khalil explained he did not have a student visa, but instead had a green card, and asked if his wife could bring his permanent resident card, and his wife went upstairs to their apartment.[1] *Id.*; Ex. B (Declaration of Mahmoud Khalil). His wife observed another agent in the hallway when she entered their apartment. *Id.*

Mr. Khalil then called his attorney, Amy Greer, in front of the agent. *Id.*; Ex. C (Declaration of Amy Greer). Ms. Greer spoke with one of the agents detaining Mr. Khalil. *Id.* At no point during the conversation with Ms. Greer did the agents indicate to her that they believed Mr. Khalil was attempting to flee. *Id.* Mr. Khalil, at that point, was in the foyer of his apartment building, surrounded by multiple armed agents and complying with all of the agents' demands. *Id.*

Mr. Khalil's wife returned to the foyer and presented Mr. Khalil's permanent resident card. Ex. A (Declaration of Noor Abdalla); Ex. B (Declaration of Mahmoud Khalil). At least four DHS agents were inside the apartment building, as video of the moment Mr. Khalil was taken away makes clear.[2] Mr. Khalil can be seen in the video calmly speaking with the officers, asking his wife to call his lawyer, and walking with the officers as they take him outside of the building. *Id.*

---

[1] DHS asserts, in a completely irrelevant statement, that the supervisory agent exercised discretion by giving Mr. Khalil's wife an opportunity to obtain the respondent's conditional residence card which was located in their apartment, in lieu of arresting him for violating section 264(e) of the INA, Opp'n at 2. As federal courts have acknowledged, however, prosecutions under INA 264(e) are exceedingly rare. *See United States v. South Carolina*, 840 F. Supp. 2d 898, 917 (D.S.C. 2011), *modified in part*, 906 F. Supp. 2d 463 (D.S.C. 2012), *aff'd*, 720 F.3d 518 (4th Cir. 2013) ("[u]nder the federal enforcement scheme, there are few prosecutions for failure to possess alien registration materials."). The former general counsel of the Immigration and Naturalization Service has stated that "prosecutions are rarely undertaken under § 1304 because the system is outdated and the registration materials exclude numerous persons who are present lawfully." *Id.* Furthermore, Mr. Khalil was in his private apartment building when he was arrested. DHS cannot reasonably contend that they could prosecute Mr. Khalil for not having his green card on his person within his own building, particularly when they had no legal right to be there. DHS's argument is a baseless attempt to misdirect that the Court must reject.
[2] https://youtube.com/shorts/ihjycIIovms?si=CWn4bmc41FMXSnlc.

Reply In Support of Motion to Terminate Removal Proceedings
Mr. Mahmoud KHALIL, ███

Uploaded on 4/24/2025 at 9:30:02 AM (Central Daylight Time), Base City: N/A

At no point during this interaction is there any evidence of Mr. Khalil in the video or anywhere else that Mr. Khalil "informed the agents that he was going to leave the scene" as DHS counsel baselessly asserts with no evidence in his opposition to this motion. DHS Opp'n at 4. Nor did the HSI agents present a judicial search warrant or an administrative arrest warrant, despite repeatedly being asked by Mr. Khalil, his wife, and his attorney.[3] Mr. Khalil's assertion of what transpired is supported by the only evidence in the record, and DHS has provided nothing indicating otherwise. The I-213 submitted by DHS does not in any way assert, state, or convey that the agents perceived Mr. Khalil to be attempting to flee. DHS Evidence, Tab A, I-213. Tellingly, no agent present at the scene has ever submitted sworn or unsworn testimony that Mr. Khalil attempted to flee or otherwise posed a flight risk.

The Court must decline to credit DHS's arguments, unsupported by testimony or by any evidence in the record.

## ARGUMENT

Three Justices of the Supreme Court recently acknowledged that "[f]ederal law governing detention and removal of immigrants *continues, of course*, to be binding as well." *Noem v. Abrego Garcia*, No. 24A949, 2025 WL 1077101, at *2 (U.S. Apr. 10, 2025) (emphasis added) (citing both 8 U.S.C. § 1226(a) and 8 C.F.R. § 287.8(c)(2)(ii) to point out a warrant is required before a noncitizen "may be arrested and detained pending a decision" on removal). DHS does not dispute that removal proceedings should be terminated for pre-hearing regulatory violations when the

---

[3] In fact, either ICE special agent Grimshaw blatantly falsely wrote in the I-213 that "Hernandez informed Mr. Khalil that we had a warrant for his arrest," I-213, Tab A of DHS Submission of Documents, April 9, 2025, or Agent Hernandez blatantly and falsely stated to Grimshaw that he had told Mr. Khalil that. DHS frankly admits in their opposition that they had no warrant and in fact the evidence shows that no warrant was issued until at least 4 hours after his arrest when he was already in custody. *See* Motion to Terminate, Tab A.

4

Reply In Support of Motion to Terminate Removal Proceedings
Mr. Mahmoud KHALIL, ▮

regulation was promulgated for the benefit of the Respondent and the violation was "egregious" in nature like the one present here *See Sanchez v. Sessions*, 904 F.3d 643, 653 (9th Cir. 2018); *see* 8 C.F.R. § 287.8(c)(2)(i) ("A warrant of arrest shall be obtained except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained.").

**I.      . ICE Agents Unlawfully Entered Mr. Khalil's Apartment Building**

Here, Mr. Khalil suffered an unlawful warrantless arrest inside his apartment building that Columbia University used as student housing. The apartment building is not open to the public. *See* Document List, dated Apr. 11, 2025, at p. 36 (Photos of signs in Mr. Khalil's lobby, demonstrating it is a private space). HSI agents followed Mr. Khalil into the building, and did not ask his permission to enter the building. Ex. A (Declaration of Noor Abdalla); Ex. B (Declaration of Mahmoud Khalil). Mr. Khalil has presented credible undisputed evidence that DHS agents unlawfully entered his apartment building and unlawfully arrested him. In turn, DHS has presented no evidence that it possessed a judicial warrant to enter this private space, nor has it provided any evidence or testimony to explain how the agents ended up inside the apartment building, where even DHS concedes that the arrest took place. Opp'n, at 2-3. Moreover, DHS concedes that the agents did not have an arrest warrant for Mr. Khalil at the time of his arrest. Opp'n, at 2.

The HSI agents did not have lawful authority to enter the apartment building, or to follow Mr. Khalil into the apartment building. The record thus shows that DHS's conduct not only violated the regulations requiring a warrant for an arrest, but that the conduct "shocks the conscience" in light of the fact that the arrest was pre-planned and so a warrant could readily have been obtained and with the arrest taking place inside a private area in front of Mr. Khalil's pregnant U.S. citizen wife, and the outrageous lie told by agent Hernandez to Mr. Khalil that the

Uploaded on 04/24/2025 at 09:30:21 AM (Central Daylight Time) Base City: N/A

agents had a warrant for his arrest when that was knowingly untrue. *See* I-213, DHS April 9 submission, Tab A. *Sanchez,* 904 F.3d at 655.

## II.     Contrary to DHS's Baseless Assertions, Mr. Khalil Did Not Pose a Risk of Flight

Nor has DHS provided any other evidence that Mr. Khalil posed a risk of flight. In contrast, Mr. Khalil has submitted credible evidence that he did *not* pose a risk of flight.

The INA provides that an immigration officer may only make a warrantless arrest if "he has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation *and* is likely to escape before a warrant can be obtained for his arrest…".   INA § 287(a)(2) (emphasis added).  The regulations require that "A warrant of arrest shall be obtained except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained." 8 C.F.R. § 287.8(c)(2)(i).

As set out in Mr. Khalil's Motion to Terminate and supported by the additional declarations submitted here, the officers in this matter failed to obtain an arrest warrant in violation of 8 C.F.R. § 287.8(c)(2)(i), a regulation meant to protect such individuals.  57 Fed. Reg. 47011, 47011 (Oct. 14, 1992) (establishing "enforcement standards" for the "conduct of arrests" and "assure[s] the continuance of disciplined and professional conduct by [ ] enforcement personnel.").  DHS's claims of exigent circumstances are naked attempts to retroactively justify their pre-planned arrest without an arrest warrant. DHS's opposition only confirms that the arrest was pre-planned, despite the lack of an administrative warrant. *See* Opp'n, at 2 (claiming that the HSI agents were conducting "pattern of life" surveillance). Mr. Khalil's wife was eight months pregnant at the time, and the agents followed Mr. Khalil into his own apartment building. Ex. B (Declaration of Mahmoud Khalil). Mr. Khalil, therefore, had had every incentive to stay in the area, in the same building as his pregnant wife. *See United States v. Segura-Gomez*, No. 4:17-CR-65-FL-1, 2018

Reply In Support of Motion to Terminate Removal Proceedings
Mr. Mahmoud KHALIL, █████████

WL 6582823, at *8 (E.D.N.C. May 25, 2018) (discussing how defendant was observed attending court for a family custody dispute and therefore had no incentive to flee). There is no indication that Mr. Khalil and his wife observed HSI's surveillance of them. *See id.* ("There is no indication that defendant had any awareness that the agents were surveilling him prior to their speaking with him….It therefore appears that the agents had from at least the point when they identified [Mr. Khalil approaching his own residence], at the earliest, to the point when they approached him in which to obtain an arrest warrant.").

DHS has not proffered an explanation as to why the agents decided to follow Mr. Khalil and his wife into the apartment building, a private residence not open to members of the public, instead of continuing the "pattern of life" surveillance until such time as they had a valid administrative arrest warrant. *Id.* ("There is no indication that defendant's conduct or other circumstances compelled the agents to approach" him when the agents did.).

The Court should decline to rubber-stamp the HSI's agents' actions in this matter, as DHS "has made no showing that a warrant could not have been obtained." *Id.* Indeed, DHS readily acknowledges they were well aware of the Secretary of State's determination under § 1227(a)(4)(C)(i) with respect to Mr. Khalil, which would have, in DHS' opinion been enough to support a warrant of arrest, *before* they approached him and Ms. Abdalla. There is no record evidence that the HSI agents attempted to obtain an administrative warrant once they became aware that the Secretary of State had agreed, ostensibly, to DHS' request to issue a determination under § 1227(a)(4)(C)(i) with respect to Mr. Khalil, which the DHS brief alleges questionably with no evidence that they learned they started the "pattern of life" surveillance. *See* Opp'n, at 4. All the record evidence indicates that Mr. Khalil was returning to his stable residence, in the presence of his pregnant wife, and would have no incentive to flee.

Moreover, Mr. Khalil has submitted overwhelming and uncontradicted (by evidence) evidence that he was not attempting to flee or leave the scene. By all accounts, Mr. Khalil was returning to his *home*, not fleeing to an undisclosed location where he could potentially evade detection, nor did he make any statement to the agents that he was going to leave the scene as DHS counsel baselessly and with no evidence asserts. Ex. A (Declaration of Noor Abdalla); Ex. B (Declaration of Mahmoud Khalil). Mr. Khalil answered the officers' questions. *Id.* Nothing in the I-213 indicates that the agents perceived Mr. Khalil to be attempting to leave or even asking to leave. DHS Submission, Tab A, at 6. Ms. Greer's account of her conversation with HSI Agent Hernandez, who was one of the officers arresting Mr. Khalil, similarly does not include any indication that the officers perceived Mr. Khalil to be attempting to leave or was otherwise looking to flee. Ex. C (Declaration of Amy Greer). The video Mr. Khalil's wife recorded of the moments after which Mr. Khalil was handcuffed show Mr. Khalil calmly speaking with the officers, with her, and walking away with the officers.[4] If DHS had any evidence to the contrary it would have attached it to its filing and then the Court would have had to conduct an evidentiary hearing where DHS (and perhaps both parties)  would  need to produce its witnesses for Mr. Khalil to exercise his constitutional and statutory right to cross-examine them. INA § 240(b)(4)(B); *see also* 8 C.F.R. § 1240.10(a)(4).  But there is zero contradictory evidence submitted by DHS so there is no need for a hearing as Mr. Khalil's evidence is uncontradicted and consistent with DHS' own I-213 submission.

It is clear from all the record evidence that no exigent circumstances existed, but that ICE still chose to unlawfully enter Mr. Khalil's apartment building, question him, detain him, and take him away from his pregnant wife with no attempt to even obtain an arrest warrant. Because this

---

[4] https://youtube.com/shorts/ihjycIIovms?si=CWn4bmc41FMXSnlc.

Uploaded on 04/24/2025 at 06:30:31 AM (Central Daylight Time) Base City: JAX
Case 2:25-cv-01963-MEF-MAH    Document 210-3    Filed 04/24/25    Page 10 of 28
PageID: 1688

violation was egregious, termination is required. *Sanchez*, 904 F.3d at 655.

## CONCLUSION

The conduct in this case shocks the conscience, deprived Mr. Khalil of fundamental rights, and prejudiced him. Mr. Khalil was arrested without a warrant inside his private apartment building and where all accounts indicate he was returning to his home, a known address to agents, not an unknown location. Termination is thus required.

Dated: April 24, 2025                          Respectfully submitted:

                                               Marc Van Der Hout
                                               Johnny Sinodis
                                               Oona Cahill
                                               Van Der Hout LLP

                                               Attorneys for Mr. Khalil

9

Reply In Support of Motion to Terminate Removal Proceedings
Mr. Mahmoud KHALIL, ███████

# EXHIBIT A

## Declaration of Noor Abdalla, Mr. Khalil's wife

I, Noor Abdalla, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct to the best of my knowledge, information, and belief:

1. On March 8, 2025, at approximately 8:25 PM, Mahmoud and I were returning from iftar (a meal breaking our daily fast, observed during the holy month of Ramadan) to our apartment in Columbia University housing. Two agents in plain clothing approached us, following us from outside our building into the lobby. The agents asked if my husband was Mahmoud Khalil. He answered that he was, and they proceeded to state that they were going to detain him. A few other agents appeared with the original two agents at this point, apparently having entered through another entrance. One agent told me that I needed to leave and go up to my apartment, or else I would be arrested, too.

2. The agents asked Mahmoud to show them his identification, and Mahmoud presented his identification as soon as he was asked.

3. Mahmoud and I asked the agent who appeared to be in charge if he had a warrant for Mahmoud's arrest, and the agent he had one on his phone but never showed it to us.

4. At no point during that interaction did Mahmoud attempt to flee or state that he would not comply with the officers.

5. Mahmoud then asked if I could go up and get his green card, and the agents said that I could and that they would wait for me downstairs. I quickly made my way up to our apartment to get Mahmoud's green card, believing that there must be some confusion about his immigration status. I observed one agent upstairs in our hallway as I was entering the apartment. When I came back downstairs and provided Mahmoud's green

Uploaded on 04/24/2025 at 06:39:33 AM (Central Daylight Time) Base City: JNY
Case 2:25-cv-01963-MEF-MAH   Document 210-3   Filed 04/24/25   Page 13 of 28
PageID: 1691

card to the agents, they seemed confused, and we heard one agent who was speaking with someone else over the phone inform them that Mahmoud was a green card holder.

6. Despite seeing the green card, the officer informed Mahmoud his green card had also revoked. The agents insisted that they would be taking him away anyway. The agents handcuffed him and forced him out of our apartment building. I called after him, asking how I would be able to reach him, and he directed me to call his attorney, Amy Greer, which I immediately did, keeping her on the line with me and asking for guidance on what to do.

7. When they took my husband to the street, I followed them, begging for their names, contact information, or any way to get in touch with my husband. I was still on the phone with Amy and explained his lawyer was requesting their names. The officers refused to provide me with any of that information, and instead told me he was being taken to "26 Federal Plaza." I continued to approach the various cars of agents stationed outside, asking for the name of the agency they were from and trying to get someone to speak with Mahmoud's lawyer. The agents walked quickly away from me, some of them entered the cars, and drove off. I then watched Mahmoud being driven off by the agents, having no idea why he was being arrested or how I could reach him.

8. At no point after I returned to our building's lobby with Mahmoud's green card and when I followed the agents out of our building did I see Mahmoud attempt to flee from or resist the agents.  Mahmoud remained calm and complied with all of the agents' directives.

Executed on this 23rd day of April 2025 in New York, New York.

_____

Noor Abdalla
Declarant

# EXHIBIT B

## <u>Declaration of Mahmoud Khalil</u>

I, Mahmoud Khalil, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct.

1. On Saturday, March 8, 2025, at approximately 8:25 PM, my wife and I were returning from dinner at a friend's apartment next door to our Columbia-owned apartment building when two agents in plain clothing followed us from outside our building into the foyer. The agents asked me if I was Mahmoud Khalil, and I confirmed that I was. The agents claimed to be from the police and I asked them which police. They said the Department of Homeland Security ("DHS") and that I had to go with them. At that point, I handed them my driver's license and asked them why I should go with them. They told me that my visa has been revoked. I explained that I am not a visa holder, but in fact have a green card. They were visibly confused when they heard that I have a green card. I requested to see an arrest warrant.

2. They asked my wife to leave me and said otherwise she would be detained. I asked my wife to go upstairs to our apartment to get my green card. I waited in the foyer with the agents as my wife went up to our apartment to find my green card.

3. At 8:26 PM, I called my attorney, Amy Greer, as I was surrounded by people claiming to be from the DHS inside my Columbia-owned apartment and who wanted me to go with them. My attorney asked me if they had shown me an arrest warrant. I asked the agent again to see the arrest warrant, to which he replied that he had the warrant on his phone. The same agent told me to hand over my phone to him and identified himself as special agent Elvin Hernandez to Amy Greer. During the call between my attorney and Agent Hernandez, he reiterated that he had an administrative warrant. But despite repeated

requests, he did not show the warrant. After a brief phone call with my attorney regarding my status as a green card holder and if a warrant existed, the agent abruptly ended the phone call. The other agents asked me to move to the other side of the foyer, and I complied. I sat in the foyer while waiting for my wife.

4.  Once my wife returned and showed the agents my green card, Agent Hernandez, on the phone with an unknown individual, informed them that I was a green card holder. I tried to call my lawyer again on my phone.

5.  Then, a DHS agent told me I was under arrest and directed me to turn around. I asked again about the warrant, but complied with the request. As I turned, I attempted to hand my wife my phone to talk to the lawyer. The agent said "stop resisting" to which my wife and I both responded that I was not resisting but attempting to hand my phone to my wife. I placed my hands behind my back as they arrested me and stated to them, "I am coming with you, don't worry," as clearly shown in the video my wife was recording. Once I was handcuffed, the agents escorted me out of the building and on to Claremont Avenue. The agents placed me in a car and drove me to 26 Federal Plaza.

6.  At no point in my interactions with these agents did I attempt to resist, flee, or otherwise not comply with the agents' orders. Throughout this interaction, I insisted on seeing the warrant that the agent stated he had on his phone and that he would show me, but he did not at any point show me a warrant.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 23rd day of April, 2025.


                                    /s/ Mahmoud Khalil

Uploaded on 04/24/2025 at 06:30:33 AM (Central Daylight Time) Base City: JFK
Case 2:25-cv-01963-MEF-MAH    Document 210-3    Filed 04/24/25    Page 18 of 28
PageID: 1696

Mahmoud Khalil

I, Oona Cahill, declare as follows:

1. My name is Oona Cahill. I am a licensed attorney in good standing in the state of California. I am an attorney of record in the above-referenced case.
2. I represent the Petitioner, Mahmoud Khalil.
3. I signed Mr. Khalil's declaration on his behalf with his express consent, after reviewing it with him, as reflected in his declaration. I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed on the 23rd day of April, 2025.

/s/ Oona Cahill

Oona Cahill

Uploaded on 04/24/2025 at 06:30:31 AM (Central Daylight Time) Base City: JNA
Case 2:23-cv-01963-MEF-MAH    Document 210-3    Filed 04/24/25    Page 19 of 28
PageID: 1697

# EXHIBIT C

Uploaded on 04/24/2025 at 06:30:33 AM (Central Daylight Time) Page City: JENA
Case 2:25-cv-01963-MEF-MAH   Document 210-3   Filed 04/24/25   Page 20 of 28
PageID: 1698

## DECLARATION OF AMY E. GREER

I, Amy E. Greer, under penalty of perjury, declare as follows:

1.    I am an attorney with Dratel & Lewis, a law firm that specializes in criminal defense in New York. I am an attorney for Mahmoud Khalil.

2.    At 8:26 PM EST on Saturday, March 8, 2025, Mahmoud called me and said he was surrounded by people claiming to be from the U.S. Department of Homeland Security ("DHS") at his Columbia-owned apartment and that they were going to arrest him.  He sounded calm but scared.

3.    An agent told Mahmoud to give him the phone and Mahmoud complied. The agent then identified himself to me as special agent Elvin Hernandez. Agent Hernandez told me he was an agent with DHS, but I do not recall whether he specified what branch. I asked why DHS was detaining Mahmoud and whether they had a warrant. Agent Hernandez said they had an administrative warrant. I asked the basis of the warrant, and he said the U.S. Department of State revoked Mahmoud's student visa.

4.    When I told Agent Hernandez that Mahmoud does not have a student visa because he is a green card holder and permanent resident in the U.S., he said they revoked the green card, too. I explained to Agent Hernandez that Mahmoud is entitled to due process as a green card holder before his green card can be revoked and he responded that Mahmoud would have the chance to go before an immigration judge. When I began to ask more questions about what grounds they would have to put Mahmoud in immigration proceedings, Agent Hernandez started to grumble at me. I asked him to show me, Mahmoud, or his wife the warrant and he hung up

on me.

5.      I was never shown a warrant that night.

6.      At no point in the time I was on the phone with Mahmoud or with Special Agent
        Hernandez did I hear any kind of struggle or any sounds indicating that Mahmoud
        was or had tried to flee, nor did I ever hear Mahmoud indicate he would not
        cooperate with the agents.

7.      A couple of minutes passed and around 8:34 PM Mahmoud's wife called using
        Mahmoud's phone.  I was talking to a partner at my firm so we both joined the
        call. We could hear everything happening. Mahmoud's wife was also narrating
        everything. DHS agents handcuffed Mahmoud. His wife asked do you have a
        warrant, but the DHS agents did not respond. Mahmoud's wife asked the
        agents where they were taking him and again, they did not answer her. She
        continued to follow them and narrate what was happening and explained to me
        that there were more agents and cars outside, but nobody would tell her what was
        happening.

8.      Noor narrated as DHS agents put Mahmoud in an unmarked vehicle. Finally, one
        agent told her that they were taking him to 26 Federal Plaza. The agent did not
        take my information as Mahmoud's lawyer or leave any information about who
        we should contact about his case.

9.      At no point in the time I was on the phone with Noor did I hear any kind of
        struggle or any sounds indicating that Mahmoud was or had tried to flee, nor did I
        ever hear Mahmoud indicate he would not cooperate with the agents

I declare under penalty of perjury that the foregoing is true and correct to the best of my

knowledge and belief.

Executed this 23rd day of April, 2025 in Stonington, CT.

Amy E. Greer

Uploaded on 04/24/2025 at 06:30:31 AM (Central Daylight Time) Base City: JNA
Case 2:25-cv-01963-MEF-MAH    Document 210-3    Filed 04/24/25    Page 23 of 28
PageID: 1701

# EXHIBIT D

U.S. Department of Homeland Security     Subject ID : 398167780     **Record of Deportable/Inadmissible Alien**

| Family Name (CAPS) | First | Middle | Sex | Hair | Eyes | Cmplxn |
|---|---|---|---|---|---|---|
| KHALIL, MAHMOUD | | | M | BRO | BRO | |

| Country of Citizenship | Passport Number and Country of Issue | | Height | Weight | Occupation |
|---|---|---|---|---|---|
| ALGERIA | | | 67 | 170 | |

| U.S. Address | | Scars and Marks |
|---|---|---|
| | | |

| Date, Place, Time, and Manner of Last Entry | Passenger Boarded at | F.B.I. Number | ☐ Single ☐ Divorced ☐ Married ☐ Widower ☐ Separated |
|---|---|---|---|
| | | | |

| Number, Street, City, Province (State) and Country of Permanent Residence | Method of Location/Apprehension |
|---|---|
| | L 16C |

| Date of Birth | Age: 30 | Date of Action 03/08/2025 | Location Code XNY/XNY | At/Near | Date/Hour 03/08/2025 22:09 |
|---|---|---|---|---|---|

| City, Province (State) and Country of Birth | AR ☒ | Form : (Type and No.) Lifted ☐ Not Lifted ☐ | By |
|---|---|---|---|
| SYRIA | | | |

| NIV Issuing Post and NIV Number | Social Security Account Name | Status at Entry | Status When Found |
|---|---|---|---|
| | | | |

| Date Visa Issued | Social Security Number | Length of Time Illegally in U.S. |
|---|---|---|
| | | |

| Immigration Record | Criminal Record |
|---|---|
| POSITIVE - See Narrative | None Known |

| Name, Address, and Nationality of Spouse (Maiden Name, if Appropriate) | Number and Nationality of Minor Children |
|---|---|
| | None |

| Father's Name, Nationality, and Address, if Known | Mother's Present and Maiden Names, Nationality, and Address, if Known |
|---|---|
| | |

| Monies Due/Property in U.S. Not in Immediate Possession | Fingerprinted? ☒ Yes ☐ No | Systems Checks See Narrative | Charge Code Word(s) See Narrative |
|---|---|---|---|
| None Claimed | | | |

| Name and Address of (Last)(Current) U.S. Employer | Type of Employment | Salary Hr | Employed from/to |
|---|---|---|---|
| | | | |

Narrative (Outline particulars under which alien was located/apprehended. Include details not shown above regarding time, place and manner of last entry, attempted entry, or any other entry, and elements which establish administrative and/or criminal violation. Indicate means and route of travel to interior.)

Left Index fingerprint      Right Index fingerprint



Health Information
----------------
The subject claims good health.

Current Administrative Charges
-----------------------------
03/08/2025 - 237a4Ci - FOREIGN POLICY

Records Checked

...(CONTINUED ON I-831)

| Alien has been advised of communication privileges | 3/8/25 VG (Date/Initials) | V10855 GRIMSHAW Special Agent | (Signature and Title of Immigration Officer) |
|---|---|---|---|

| Distribution: | Received: (Subject and Documents) (Report of Interview) |
|---|---|
| | Officer: V10855 GRIMSHAW |
| | on March 8, 2025 (time) |
| | Disposition: Warrant of Arrest/Notice to Appear |
| | Examining Officer: MORAN, TIMOTHY   TIMOTHY M MORAN Digitally signed by TIMOTHY M MORAN Date 2025.03.08 00:01:51 -05'00' |

Form I-213 (Rev. 08/01/07)

Uploaded on 04/24/2025 at 06:03:67 AM (Central Daylight Time) Case 25-cy-NM

| U.S. Department of Homeland Security | | Continuation Page for Form | I-213 |
|---|---|---|---|

| Alien's Name<br>KHALIL, MAHMOUD | File Number | Date<br>03/08/2025 |
|---|---|---|

----------------

**Record of Deportable/Excludable Alien:**
**ENCOUNTER:**
On March 8, 2025, at approximately 8:35 p.m., members of Homeland Security Investigations
(HSI) New York, El Dorado Task Force (EDTF), conducted an administrative arrest of Mahmoud
Khalil (DOB: 01/01/1995), at 195 Claremont Avenue, Manhattan, NY on INA charges of 237
(A)(4)(c)(i).

At approximately 8:32 p.m., EDTF member (A)GS Elvin Hernandez, while conducting surveillance
in the vicinity of 195 Claremont Avenue, Manhattan, witnessed a male and female walking in
the vicinity of Tiemann Place and Claremont Avenue. (A)GS Hernandez announced over the
radio to the other EDTF members conducting surveillance that the male looked like the wanted
subject, Mahmoud KHALIL. SA Austin Braaten, while parked fronting 195 Claremont, observed
the couple walking towards the front entrance of the 195 Claremont. SA Braaten exited his
vehicle and approached the building entrance as the couple walked up the front stairs. SA
Braaten noted that the male was likely Mahmoud KHALIL, based on pictures provided to the
surveillance team of Mr. KHALIL. SA Braaten identified himself as Police and a member of
Homeland Security Investigations. SA Braaten asked Mr. KHALIL if his name was Mahmoud
KHALIL, to which he stated yes and inquired as to why he was being stopped. At that time
(A)GS Hernandez approached Mr. KHALIL and asked him for his identification, at which time
Mr. KHALIL produced a Lebanese driver's license with the name Mahmoud KHALIL and DOB:
01/01/1995).
A(GS) Hernandez informed Mr. KHALIL that we had a warrant for his arrest, at which time he
asked if he could contact his lawyer. Mr. KHALIL, while standing in the foyer of 195
Claremont Avenue, was allowed to place a call to his lawyer utilizing his own cell phone.
After a brief conversation with his lawyer, (A)GS Hernandez could speak
with the attorney. (A)GS briefly spoke with Mr. KHALIL's attorney, Amy Greer, and informed
her that her client was being taken into Homeland Security Investigations custody. During
this time, Mr. KHALIL's wife went to their apartment to retrieve Mr. KHALIL's United States
Permanent Resident card. After informing Mr. KHALIL's wife that her husband was being
arrested, Mr. KHALIL was placed in handcuffs and informed that he was under arrest. Present
during the arrest was (A)GS Hernandez, SA Braaten, SA Devan Correia, and SA William
Bronsteen.

Mr. KHALIL was escorted in handcuffs to SA Braaten's vehicle parked across the street from
the entrance to 195 Claremont Avenue and placed into the back seat. While Mr. KHALIL was
being placed in the car for transport, Mr. KHALIL's wife was filming the interaction and
causing a disturbance. She was informed that interfering with the arrest could result in
criminal charges for her.

At approximately 8:44 p.m. SA Braaten and SA Correia began transport of Mr. KHALIL to 26
Federal Plaza, Manhattan, with SA Braaten driving and SA Correia sitting in the back seat
with Mr. KHALIL. At approximately 9:20 p.m., the Special Agents arrived at 26 Federal Plaza
with Mr. KHALIL.

**ALIENAGE AND DEPORTABILITY:**
KHALIL is a male citizen and national of Algeria. KHALIL is married to a USC and is an CR6

| Signature<br>V10855 GRIMSHAW | Title<br>Special Agent |
|---|---|

_____2_____ of _____4_____ Pages

Form I-831 Continuation Page (Rev. 08/01/07)

Uploaded on 04/24/2025 at 00:00:07 AM (Central Daylight Time) Page 26 by JNH

U.S. Department of Homeland Security | Continuation Page for Form __I-213__

| Alien's Name | File Number | Date |
|---|---|---|
| KHALIL, MAHMOUD | | 03/08/2025 |

LPR.

IMMIGRATION HISTORY:
On 03/11/2018, KHALIL entered the United States via commercial flight UA941 from London, England to Newark International Airport in New Jersey. At the time of his entry, KHALIL had a valid B1 visa issued 01/31/2018 and expiring on 09/10/2018.

On 11/05/2018, KHALIL entered the United States via land from Canada to Detroit, Michigan. At the time of his entry, KHALIL had a valid B2 visa issued 01/31/2018 and expiring on 05/04/2019/.

On 12/20/2022, KHALIL entered the United States via commercial flight IB6251 from Madrid, Spain to John F. Kennedy International Airport. At the time of his entry, KHALIL had a valid F1 visa issued 12/13/2022.

On 08/18/2024, KHALIL entered the United States via commercial flight NO401 from Rome, Italy to John F. Kennedy International Airport. At the time of his entry, KHALIL had USCIS issued Advanced Parole.

CRIMINAL HISTORY:
Subject does not have a Criminal Record.

FAMILY HISTORY:
KHALIL claims to be married to a USC.

CONSULAR NOTIFICATION:
KHALIL is a citizen of Algeria. Algeria has a mandatory consular notification. The consulate of Algeria was notified of KHALIL's arrest.

PHONE CALL:
KHALIL was afforded the opportunity to make a telephone call and elected to call his lawyer witnessed by SA Bronsteen and SA Hernandez. The phone call lasted approximately five minutes.

MEDICAL INFORMATION:
KHALIL was asked if he has any medical conditions or illnesses that require medical attention. KHALIL stated he does not. KHALIL was sent to the IHSC medical staff at 26 Federal Plaza, New York, NY 10278 for detention evaluation. KHALIL was offered water at 2145 hours and a meal at 2300 hours.

GANG and TERRORISM AFFILIATIONS:
KHALIL was asked if he was affiliated with any gangs or terrorist organizations and states he is not.

MILITARY:
KHALIL stated that he has never served with any of the United States military branches.

CREDIBLE/REASONABLE FEAR:
KHALIL was asked if he had any credible fear of returning to his native country Algeria, which he stated he does not.

FUNDS:
KHALIL was in possession of $0.00 USD.

| Signature | Title |
|---|---|
| V10855 GRIMSHAW | Special Agent |

3 of 4 Pages

U.S. Department of Homeland Security

Continuation Page for Form __I-213__

| Alien's Name | File Number | Date |
|---|---|---|
| KHALIL, MAHMOUD | | 03/08/2025 |

PROPERTY:
KHALIL's property is itemized on property receipt # 5300490.

DISPOSITION:
KHALIL was served and provided copies of Warrant of Arrest (I-200), Notice to Appear (I-862), Notice of Custody Determination (I-286), and a Free Legal Service List. KHALIL refused to provide a sworn statement (I-215). KHALIL was given a Notice to Appear
Note: KHALIL was advised of the EOIR-33 requirements to provide a valid address or change of address and telephone number within 5 days of acquiring or moving so that notification of hearing or correspondence can be mailed to the address provided by him. KHALIL was informed that failure to comply with this requirement or report to his immigration hearing might result in his removal in absentia. KHALIL stated that he understood everything that was explained to him.


Other Identifying Numbers
------------------------------------
ALIEN-233698925

| Signature                | Title |
|---|---|
| V10855 GRIMSHAW          | Special Agent |

____4____ of ___4___ Pages

Form I-831 Continuation Page (Rev. 08/01/07)

Uploaded on 04/24/2025 at 06:30:31 AM (Central Daylight Time) Base City: JNA

## CERTIFICATE OF SERVICE

On April 24, 2025, I, Johnny Sinodis, caused the enclosed document to be served on the U.S. Department of Homeland Security via the EOIR Courts and Appeals System (ECAS). This document was electronically filed through ECAS and both parties are participating in ECAS. Therefore, there is no separate service completed.

Executed this 24th day of April 2025.

Reply In Support of Motion to Terminate Removal Proceedings
Mr. Mahmoud KHALIL, ▮▮▮▮▮▮