May 9, 2025

<u>VIA ECF</u>
Honorable Michael E. Farbiarz
United States District Judge
District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street, Newark, New Jersey 07101

     **Re:**    *Khalil v. Trump, et al.*, No. 2:25-cv-1963 (MEF) (MAH)

Dear Judge Farbiarz:

       Petitioner again respectfully writes to provide notice of supplemental authorities relevant to the Court's consideration of Petitioner's motions, particularly his motion for release. First, in the *Özturk* case, the court held the scheduled bail hearing today and following the proceedings, which included remote testimony by Ms. Özturk, SO ORDERED the following:

> Petitioner to be released immediately on PR w/conditions; gov't is to notify the court when she is released; gov't to submit proposed order as to conditions of release after conferring with ICE.

*Özturk v. Hyde*, No. 25-0374, Dkt 130 (D. Vt. May 9, 2025)

       Second, in *Mahdawi v. Trump*, No. 25-1113, Dkt 86.1 (2d Cir. May 9, 2025) (attached), the Second Circuit denied the government's motion for a stay of the order releasing Petitioner on bond, which the district court had based on the absence of a danger to the community or flight risk, and for mandamus review, leaving Mr. Mahdawi at liberty.

                                    Respectfully submitted,

                                      /s/ Baher Azmy

AMERICAN CIVIL LIBERTIES UNION OF NEW JERSEY FOUNDATION
Jeanne LoCicero
Farrin R. Anello
Molly K.C. Linhorst
570 Broad Street, 11th Floor
Newark, New Jersey 07102
973-854-1715

NEW YORK CIVIL LIBERTIES UNION FOUNDATION
Amy Belsher*
Robert Hodgson*

CENTER FOR CONSTITUTIONAL RIGHTS
Baher Azmy
Samah Sisay*
Diala Shamas*
666 Broadway, 7th Floor
New York, NY 10012
Tel: (212) 614-6464

CLEAR PROJECT
MAIN STREET LEGAL SERVICES, INC.
Ramzi Kassem*
Naz Ahmad
Shezza Abboushi Dallal*

Veronica Salama*
Molly Biklen*
125 Broad Street, 19th Floor
New York, N.Y. 10004
Tel: (212) 607-3300

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
Omar Jadwat
Noor Zafar*
Sidra Mahfooz*
Brian Hauss*
Esha Bhandari*
Vera Eidelman*
Tyler Takemoto*
Brett Max Kaufman*
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2500

CUNY School of Law
2 Court Square
Long Island City, NY 11101
Tel: (718) 340-4558

WASHINGTON SQUARE LEGAL SERVICES, INC.
Alina Das*
Immigrant Rights Clinic
245 Sullivan Street, 5th Floor
New York, New York 10012
Tel: (212) 998-6430

DRATEL & LEWIS
Amy E. Greer
29 Broadway, Suite 1412
New York, NY 10006
Tel: (212) 732-8805
Fax: (212) 571-3792

VAN DER HOUT LLP
Marc Van Der Hout (CA Bar #80778)*
Johnny Sinodis (CA Bar #290402)*
Oona Cahill (CA Bar #354525)*
360 Post St., Suite 800
San Francisco, CA 94108
Tel: (415) 981-3000
Fax: (415) 981-3003

*Appearing Pro hac vice*                    *Counsel for Petitioner*

25-1113
*Mahdawi v. Trump*

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰
## 𝔣𝔬𝔯 𝔱𝔥𝔢 𝔖𝔢𝔠𝔬𝔫𝔡 𝔆𝔦𝔯𝔠𝔲𝔦𝔱

_____

August Term 2024
Argued: May 6, 2025
Decided: May 9, 2025

No. 25-1113

_____

MOHSEN MAHDAWI,

*Petitioner–Appellee,*

*v.*

DONALD J. TRUMP, in his official capacity as President of the United States; PATRICIA HYDE, in her official capacity as Acting Boston Field Office Director, U.S. Immigration and Customs Enforcement; J DOE, in official capacity as Vermont Sub-Office Director, U.S. Immigration and Customs Enforcement; TODD LYONS, in his official capacity as Acting Director, U.S. Immigration and Customs Enforcement; KRISTI NOEM, in her official capacity as Secretary of the United States Department of Homeland Security; MARCO RUBIO, in his official capacity as Secretary of State; and PAMELA BONDI, in her official capacity as U.S. Attorney General,

*Respondents–Appellants.\**

_____

Appeal from the United States District Court
for the District of Vermont

_____

\* The Clerk of Court is respectfully directed to amend the caption as set forth above.

No. 2:25-cv-389, Geoffrey W. Crawford, *Judge*
_____

Before:        PARKER, CARNEY, and NATHAN, *Circuit Judges.*
_____

NAZ AHMAD
RAMZI KASSEM
MUDASSAR HAYAT TOPPA
SHEZZA ABBOUSHI DALLAL
CLEAR Project
Main Street Legal Services, Inc.
Long Island City, NY

NATHAN FREED WESSLER
BRETT MAX KAUFMAN
BRIAN HAUSS
ESHA BHANDARI
NOOR ZAFAR
SIDRA MAHFOOZ
American Civil Liberties Union
New York, NY

LIA ERNST
MONICA H. ALLARD
HILLARY A. RICH
ACLU Foundation of Vermont
Montpelier, VT

ANDREW B. DELANEY
Martin Delaney & Ricci Law Group
Barre, Vermont

LUNA DROUBI
MATTHEW MELEWSKI
KEEGAN STEPHAN
Beldock Levine & Hoffman LLP
New York, NY

CYRUS D. MEHTA
DAVID A. ISAACSON
Cyrus D. Mehta & Partners PLLC
New York, NY

*Counsel for Petitioner–Appellee*

DREW C. ENSIGN
ALANNA T. DUONG
DHRUMAN Y. SAMPAT
YAAKOV M. ROTH
ERNESTO H. MOLINA
Civil Division
U.S. Dept. of Justice
Washington, D.C.

MICHAEL P. DRESCHER
Acting United States Attorney
District of Vermont

*Counsel for Respondents–Appellants*

_____

BARRINGTON D. PARKER, SUSAN L. CARNEY, and ALISON J. NATHAN, *Circuit Judges*:

Mohsen Mahdawi is an undergraduate student at Columbia University. He is also a Lawful Permanent Resident who has lived in the United States for over a decade and is in the process of applying to become a U.S. citizen. When Mahdawi appeared for his naturalization interview in Vermont on April 14, 2025, he answered the government's questions and passed his citizenship test. But, he alleges, at the interview's conclusion, a team of armed law enforcement officers entered the room and placed him under arrest. He was brought to a U.S. Citizenship and Immigration Services office and was served with a Notice to Appear, which informed him that the U.S. Secretary of State had determined that he was removable from the United States under the Immigration and Nationality Act. Officers then brought him to the airport in Burlington, Vermont, with the intent to transport him to Louisiana, but after they missed the flight to Louisiana, officers brought him to a detention center in Vermont.

Through counsel, Mahdawi filed a habeas petition, challenging his arrest and detention and seeking his release. He maintains that, in violation of his First and Fifth Amendment rights, he was arrested and detained in retaliation for his peaceful advocacy on the politically contentious topic of the war in Gaza. On Mahdawi's emergency motion, the district court issued, and later extended, a

temporary restraining order prohibiting the government from removing Mahdawi from the District of Vermont.  Following a bail hearing, the court also granted Mahdawi's motion to be released during the pendency of his habeas proceeding, finding that he was neither a flight risk nor a danger to the community—findings that the government does not contest before this panel.

The government now seeks an emergency stay of these orders.  Largely for the reasons explained in our opinion in *Öztürk v. Hyde*, No. 25-1019, 2025 WL 1318154 (2d Cir. May 7, 2025), we deny the motion for a stay.  As explained there, the government is unlikely to succeed on its arguments that the district court lacked jurisdiction over Mahdawi's habeas petition.  We further conclude that the government is unlikely to succeed on its arguments that the district court lacked the authority to order Mahdawi's release.  We are also unpersuaded by the government's argument that the district court's orders prevented it from effectuating duly enacted law, thereby causing it to suffer irreparable injury.  In fact, immigration removal proceedings have continued in Louisiana, and Mahdawi has attended them remotely since his release.  Finally, the balance of the equities tips in favor of denying the stay.  Indeed, the practical effect of the relief the government seeks would be Mahdawi's re-detention.  Individual liberty

substantially outweighs the government's weak assertions of administrative and logistical costs. For these reasons, the government's motion for a stay is **DENIED** and the government's request for a writ of mandamus is also **DENIED**.

## I.    BACKGROUND

This case arises from the arrest and detention of Mohsen Mahdawi, a Palestinian student who entered the United States in July 2014 and has been a Lawful Permanent Resident since January 2015. Mahdawi is an undergraduate at Columbia University, majoring in philosophy. As a student at Columbia, he spoke out against Israel's military response to the atrocities committed by Hamas on October 7, 2023. He also took part in student demonstrations where he spoke publicly about "the importance of respecting international law, human rights, and the need for a permanent ceasefire and a peaceful resolution." *Mahdawi v. Trump*, No. 2:25-cv-389, 2025 WL 1243135, at *1 (D. Vt. Apr. 30, 2025) (quotation marks omitted) (quoting Dist. Ct. Dkt. ECF No. 19-2 ¶ 15). The government does not at this time assert that his speech was not protected by the First Amendment.

On April 14, 2025, Mahdawi appeared for his naturalization interview in Vermont. Mot. Ex. A (Habeas Petition, hereinafter "Pet.") at 12 ¶ 50. Unbeknownst to Mahdawi, a month earlier the Secretary of State had secretly issued a memorandum, ostensibly pursuant to 8 U.S.C. § 1227(a)(4)(C), declaring

3

him deportable for his speech and associations, which the memorandum described as "otherwise lawful."  Mot. Ex. B at 1.  At the end of his interview, he was arrested by a team of masked ICE agents, brought to a U.S. Citizenship and Immigration Service office, and served with a Notice to Appear ("NTA").  The NTA stated that Mahdawi was removable because "[t]he Secretary of State has determined that your presence and activities in the United States would have serious adverse foreign policy consequences and would compromise a compelling U.S. foreign policy interest."  *Mahdawi*, 2025 WL 1243135, at *3 (quoting Dist. Ct. Dkt. ECF No. 19-2, at 10, 13).

That same day, shortly before 2:00 p.m., the agents transported Mahdawi to the airport in Burlington, Vermont, intending to transport him to a Louisiana jail. They missed their scheduled flight, and Mahdawi was moved first to the ICE field office in St. Albans, Vermont, and then to the Northwest State Correctional Facility in Swanton, Vermont.

Mahdawi's attorney filed a habeas petition in the District of Vermont, which was first assigned to Judge William K. Sessions III.  Among other things, his petition challenges "the government's targeting and detention of Mr. Mahdawi,"

and alleges that his "unlawful arrest and detention" was intended "to punish him for his speech and to chill similar speech."  Pet. at 2 ¶ 4, 15 ¶¶ 64–67, 16 ¶ 76.

Shortly after his arrest on April 14, Judge Sessions granted Mahdawi's emergency motion for a temporary restraining order ("TRO") prohibiting Mahdawi's transfer to Louisiana or his removal from this country.  *Mahdawi*, No. 2:25-cv-389, 2025 WL 1099021, at *1 (D. Vt. Apr. 14, 2025).  On April 24, following the case's reassignment to Judge Geoffrey W. Crawford, the court extended the TRO.  *Mahdawi*, No. 25-cv-389 (D. Vt. Apr. 24, 2025), Dist. Ct. Dkt. ECF No. 34. During this time, Mahdawi remained detained at Northwest Correctional Facility.

Mahdawi applied for release on bail pending resolution of his habeas petition.  On April 30, 2025, after a hearing, Judge Crawford granted the application.  In a careful and well-reasoned opinion, the court concluded, among other things, that Mahdawi presented neither a flight risk nor a danger to his community or to others.  *Mahdawi*, 2025 WL 1243135, at *12.  The government has yet to contest these findings.

Before us is the government's emergency motion seeking a stay pending appeal of the district court's order extending its initial TRO (April 24, 2025 Order) and its order of release on bail (April 30, 2025 Order).  The government asked for

this stay motion to be heard on an expedited schedule, and together with its stay motion in *Öztürk*.  An applications judge granted these requests and denied the request for an administrative stay.  *See* 2d Cir. Dkt. ECF No. 30.[1]

## II.    APPELLATE JURISDICTION

As an initial matter, and as Mahdawi concedes, we have appellate jurisdiction to review each of the challenged orders.  First, under the "collateral order doctrine," we have jurisdiction to review "'a small class of' interlocutory rulings that 'are too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.'"  *Fischer v. New York State Dep't of L.*, 812 F.3d 268, 273 (2d Cir. 2016) (quoting *Will v. Hallock*, 546 U.S. 345, 349 (2006)) (other internal citations omitted).  We have previously held that an order granting bail pending disposition of a habeas petition is an appealable collateral order.  *Iuteri v. Nardoza*, 662 F.2d 159, 161 (2d Cir. 1981).

Second, because the TRO lasts for up to 90 days and "carries many of the hallmarks of a preliminary injunction," we construe it "as an appealable preliminary injunction."  *Dep't of Educ. v. California*, 145 S. Ct. 966, 968 (2025); *see*

---

1 The government also moved to consolidate the two cases.  We deny that motion by separate order.

*also Trump v. J. G. G.*, 145 S. Ct. 1003, 1005, 1006 (2025) (vacating a TRO that had enjoined the government from removing any of the individual plaintiffs from the United States for 14 days).  Accordingly, we conclude that both the district court's release order and extended TRO are appealable orders.

## III.    STAY PENDING APPEAL

A stay is "an exercise of judicial discretion," and the "propriety of its issue is dependent upon the circumstances" presented to the court.  *Nken v. Holder*, 556 U.S. 418, 433 (2009) (quotation marks omitted).  "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of [the Court's] discretion."  *Id.* at 433–34.  The four stay factors are "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."  *Id.* at 434 (quotation marks omitted).  "The first two factors . . . are the most critical."  *Id.*  And where "the government is a party to the suit, the final two factors merge."  *New York v. U.S. Dep't of Homeland Sec.*, 969 F.3d 42, 58–59 (2d Cir. 2020).  We deny the stay because the government has not met its burden on any of these factors.

## A.     Likelihood of Success on the Merits

The government contends that several provisions of the Immigration and National Act ("INA") stripped the district court of jurisdiction in this case, and that the district court accordingly lacked the power to order Mahdawi's release and to extend the TRO.  These arguments are unlikely to succeed in no small part because our analysis is guided by longstanding principles of statutory interpretation requiring Congress to speak clearly and specifically when it wishes to deprive the federal courts of jurisdiction.  Repeatedly, including in the INA context, the Supreme Court has declared that we should "take account . . . of the presumption favoring interpretations of statutes [to] allow judicial review . . . absent clear statement." *Kucana v. Holder*, 558 U.S. 233, 237 (2010) (quotation marks and citation omitted); *see also McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 483–84 (1991).  "[O]nly upon a showing of clear and convincing evidence of a contrary legislative intent should the courts restrict access to judicial review." *Bowen v. Michigan Acad. of Fam. Physicians*, 476 U.S. 667, 671 (1986) (quotation marks omitted).  As explained below, the provisions on which the

government relies do not state, let alone clearly state, a jurisdictional bar on review of Mahdawi's detention claims.

      1.     *Release Order*

At this stage, the government makes no challenge to the district court's substantive determination that Mahdawi should be released on bail pending the disposition of his habeas petition. *See Mahdawi*, 2025 WL 1243135, at *8–13. Instead, it makes only jurisdictional challenges to the release order based on 8 U.S.C. §§ 1252(g), 1252(a)(5), and 1252(b)(9). We conclude that these jurisdictional challenges are unlikely to succeed.

      a.  *8 U.S.C. § 1252(g)*

We begin with the government's argument that the district court's release order should be stayed on the ground that § 1252(g) strips the district court of jurisdiction to hear Mahdawi's habeas petition. Section 1252(g) prohibits courts from "hear[ing] any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General [or Secretary of Homeland Security] to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g).[2] The government claims that

---

[2] As part of transferring many immigration-related responsibilities from the Attorney General to the Secretary of the Department of Homeland Security, "the

Mahdawi's challenge to his unlawful detention "aris[es] from" the commencement of removal proceedings.  Mot. at 7 (quotation marks omitted).

The government dramatically overstates the reach of § 1252(g) and has failed to demonstrate a likelihood of success on this claim.  As we said in *Öztürk v. Hyde*, § 1252(g) does not reach "claims that are independent of, or wholly collateral to, the removal process."  No. 25-1019, 2025 WL 1318154, at *9 (2d Cir. May 7, 2025) (quoting *Kong v. United States*, 62 F.4th 608, 614 (1st Cir. 2023)).  The Supreme Court and our Court have explained that § 1252(g)'s bar on jurisdiction is "narrow[]," and "applies only to three discrete actions": a decision "to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'"  *Reno v. Am.-Arab Anti-Discrimination Comm. ("AADC")*, 525 U.S. 471, 482 (1999) (quoting 8 U.S.C. § 1252(g) (emphases adopted)); *see also Öztürk*, 2025 WL 1318154, at *8.  Section 1252(g) is thus "directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion."  *AADC*, 525 U.S. at 485 n.9.  But there are "many other decisions or actions that may be part of the deportation process" and yet do not fall within the three discrete exercises of "prosecutorial

---

Homeland Security Act of 2002 mandates that references to the Attorney General are deemed to include DHS where, as here, the relevant agency functions have been transferred from the Department of Justice to DHS."  *Shabaj v. Holder*, 718 F.3d 48, 51 n.3 (2d Cir. 2013) (citing 6 U.S.C. § 557); *see also* 6 U.S.C. § 202.

discretion" covered by § 1252(g).  *Id.* at 482, 485 n.9; *see also Öztürk*, 2025 WL 1318154, at *8.

For that reason, in *Öztürk*, we concluded that a petitioner's "claims of unlawful and retaliatory detention" were "independent of, and collateral to, the removal process." *Öztürk*, 2025 WL 1318154, at *9.  There, we explained that relief from the allegedly improper detention did not interfere with DHS's "prosecutorial discretion." *AADC*, 525 U.S. at 485 n.9.  Nor did it interfere with DHS's ability to initiate removal proceedings against the petitioner, to adjudicate her removal case, or to execute any removal order.  *See Öztürk*, 2025 WL 1318154, at *9–10.  We therefore held that her unlawful detention claims were collateral to the removal process and fell outside of § 1252(g)'s narrow jurisdictional bar.  *Id.* at *9.

The same is true here.  Mahdawi's habeas petition challenges his ***detention*** on the grounds that it violates his rights under the Constitution.[3]  As in *Öztürk*,

---

[3] Among other things, the petition's Prayer for Relief requests that the court "Order the immediate release of Petitioner pending these proceedings," "Order the release of Petitioner," and "Declare that Respondents' actions to arrest and detain Petitioner violate the First Amendment and the Due Process Clause of the Fifth Amendment."  Pet. at 18.  At this time, the Court need not decide whether every single Prayer for Relief survives § 1252(g).  The district court is still considering the government's motion to dismiss Mahdawi's petition and will have the opportunity to assess which claims are barred by § 1252(g) in the first instance.  So long as part of his challenge to his detention falls outside of § 1252(g), his petition survives, as does the district court's authority to order his release.

Mahdawi's "detention does not arise from the government's 'commenc[ement] of proceedings,'" which begins with the filing of an NTA in an immigration court. 2025 WL 1318154, at *9 (quoting *AADC*, 525 U.S. at 482); *see also* 8 U.S.C. § 1229(a); 8 C.F.R. § 1239.1. Nor do his claims "arise from the decision to adjudicate [his] removal case," since it does not "implicate the Executive's discretion" to continue or withdraw such a proceeding. *Öztürk*, 2025 WL 1318154, at *10 (quotation marks omitted). Moreover, the government does not claim that Mahdawi's detention was "***mandated*** by the mere fact" that it commenced removal proceedings against him. *Id.* To the contrary, the government "confirmed that ICE's decision to arrest and detain [Mahdawi] was not directed by § 1226(a)." *Id.; see also* Mot. at 20 (citing 8 U.S.C. § 1226(a) as its "statutory basis for [Mahdawi's] detention"). And since no removal order has been entered, Mahdawi's detention-related claims could not "possibly 'arise from' the execution of a removal order." *Öztürk*, 2025 WL 1318154, at *10. Mahdawi's unlawful detention claims are thus likely "independent of, and collateral to, the removal process." *Id.* at *9.

The government nevertheless insists that the Supreme Court's decision in *AADC* bars this claim. It is unlikely to succeed on this argument, too. It is true that the petitioners in *AADC* claimed that the "INS was selectively enforcing

immigration laws against them in violation of their First and Fifth Amendment rights." 525 U.S. at 474. And the Supreme Court indeed concluded that the "challenge to the Attorney General's decision to 'commence proceedings' against them [fell] squarely within § 1252(g)." *Id.* at 487. But the petitioners' claims in that case fell within that jurisdictional bar because they sought "to prevent the initiation of deportation proceedings," *id.* at 474—i.e., the "commence[ment of] proceedings," *id.* at 482. The habeas claims in that case did not sound in unlawful *detention* at all, and *AADC* is therefore of no help to the government.

Accordingly, the government has failed to satisfy its burden of demonstrating that § 1252(g) likely strips the district court of jurisdiction to hear Mahdawi's petition.

### b.  8 U.S.C. §§ 1252(a)(5) and 1252(b)(9)

For similar reasons, the government's argument that 8 U.S.C. §§ 1252(a)(5) and (b)(9) bar district court review of Mahdawi's claims is unlikely to succeed. Section 1252(b)(9) bars district court review of claims "arising from . . . action[s]" or "proceeding[s] brought to remove an alien." 8 U.S.C. § 1252(b)(9). The government urges the conclusion that Mahdawi's arrest and detention are a but-for result of the Secretary of State's determination that he was removable, and thus § 1252(b)(9) strips district courts of jurisdiction. Mot. at 15. In other words, the

government contends that its detention of Mahdawi works to funnel all his unlawful detention claims into § 1252(b)(9), irrespective of how attenuated the claims may be to removal proceedings.

As we explained in *Öztürk*, we do not read § 1252(b) so broadly. *Öztürk*, 2025 WL 1318154, at \*10–13. First, the language of § 1252(b) contradicts the government. *Id.* at \*11 ("[T]he very text of § 1252(b) sets out requirements only with respect to review of an order of removal under subsection (a)(1)." (cleaned up) (citing 8 U.S.C. § 1252(b))). No order of removal is at issue here. Second, the Supreme Court has rejected the government's proposed expansive approach, holding that "§ 1252(b)(9) does not present a jurisdictional bar where those bringing suit are not asking for review of an order of removal, the decision to seek removal, or the process by which removability will be determined." *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 19 (2020) (cleaned up) (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018)).

As explained above, Mahdawi's unlawful detention claims may be resolved without affecting pending removal proceedings. He asserts that the government arrested him to punish speech with which it disagrees. But doing so would violate the Constitution—quite separate from the removal procedures followed by the

immigration courts.  Consequently, even if his claims have a substantive overlap with challenges he may bring in his removal proceedings, his detention claims do not themselves challenge or arise from "removal proceedings," and "§ 1252(b)(9)'s channeling function has no role to play."  *Öztürk*, 2025 WL 1318154, at *11 (quotation marks omitted).  As we noted in *Öztürk*, legislative history from the REAL ID Act further supports this conclusion.  H.R. Rep. No. 109–72, at 175 (2005) (Conf. Rep.), *as reprinted in* 2005 U.S.C.C.A.N. 240, 300 (specifying that jurisdiction-stripping provisions "would not preclude habeas review over challenges to detention that are independent of challenges to removal orders").

This distinction between detention and removal makes practical sense.  While challenges to ***removal*** can be heard in a petition for review after an order of removal has been entered by an immigration judge and affirmed by the Board of Immigration Appeals, the same is not true of constitutional challenges to ***detention*** like those raised by Mahdawi.  As we explained in *Öztürk*, "neither the IJ nor the BIA has 'jurisdiction to decide constitutional issues.'"  *Öztürk*, 2025 WL 1318154, at *12 (quoting *Rabiu v. Immigr. & Naturalization Serv.*, 41 F.3d 879, 882 (2d Cir. 1994)).  And while the court of appeals considering the petition for review may consider constitutional claims, that court is obliged to "decide the petition

*only* on the administrative record on which the order of removal is based." 8 U.S.C. § 1252(b)(4)(A) (emphasis added). We are not persuaded that an IJ or the BIA will develop a sufficient factual record, or any record at all, with respect to the challenged ***detention***, especially given that bond hearings are decided separately, appealed separately, and contain records separate from those made in the removal proceedings. *See* 8 U.S.C. § 1226(a); 8 C.F.R. §§ 236.1(d), 1003.19(d); U.S. Dep't Just., Exec. Off. for Immigr. Rev., Immigration Court Practice Manual, § 9.3(e), (f) (last visited May 6, 2025), available at https://www.justice.gov/eoir/reference-materials/ic/chapter-9/3 [https://perma.cc/9A6W-AG9U]. This means that in many, if not most, instances, courts of appeal would not have a sufficient record to assess the constitutionality of the government's conduct in cases such as this.

Construing an independent constitutional challenge to detention as necessarily implying a challenge to removal would lead to what *Jennings* called an "absurd" result. 583 U.S. at 293 (opinion of Alito, J., joined by Roberts, C.J., and Kennedy, J.). Mahdawi's core argument is that his free speech and due process rights are being violated, ***now***. Pet. at 15–16, ¶¶ 63–76; *see also Öztürk*, 2025 WL 1318154, at *12. "By the time a final order of removal [is] eventually entered"—if it ever is entered—the allegedly wrongful detention will have already occurred.

*Jennings*, 583 U.S. at 293 (opinion of Alito, J., joined by Roberts, C.J., and Kennedy, J.).

Accordingly, the government has not established that § 1252(b)(9) likely strips the district court of jurisdiction to hear Mahdawi's petition.  For the same reasons, we reject the government's argument that § 1252(a)(5) likely forecloses review of Mahdawi's petition.  Section 1252(a)(5) bars district court review "of an order of removal," but no order of removal is at issue here.  8 U.S.C. § 1252(a)(5).

### 2.  *TRO Extension Order*

The government also asserts that the INA deprived the district court of jurisdiction to extend its TRO.  As a preliminary matter, the government conceded at argument that if the release order remains in place, its challenge to the TRO is "essentially moot."  Oral Arg. Hearing at 23:40–24:09.  But in any event, the government is unlikely to prevail.  As in *Öztürk*, the government relies on 8 U.S.C. § 1252(a)(2)(B)(ii), which precludes the exercise of federal court jurisdiction "to review . . . any . . . decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is ***specified*** under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security."  8 U.S.C. § 1252(a)(2)(B)(ii) (emphasis added).  Here, the government contends that § 1252(a)(2)(B)(ii) deprived the district court of jurisdiction to extend

the TRO on the ground that the decision where to detain a noncitizen pending removal proceedings is committed to the discretion of the Secretary of Homeland Security, and the INA precludes judicial review over such discretionary decisions. *See* Mot. at 17–19.

But as we explained in *Öztürk*, 2025 WL 1318154, at *7–8, the government dramatically overstates the scope of § 1252(a)(2)(B)(ii).  Section 1252(a)(2)(B)(ii)'s bar on jurisdiction applies only to those decisions where Congress has expressly "set out the Attorney General's discretionary authority in the statute." *Kucana*, 558 U.S. at 247.  Crucially, the question is not whether § 1231(g) "require[s] an exercise of discretion" because even if it "probably do[es]," the crux is "whether the text . . . specifies that the decision is in the discretion of the Attorney General." *Nethagani v. Mukasey*, 532 F.3d 150, 154 (2d Cir. 2008) (cleaned up).  We have held that "when a statute authorizes the Attorney General to make a determination, but lacks additional language specifically rendering that determination to be within his discretion (*e.g.*, 'in the discretion of the Attorney General,' 'to the satisfaction of the Attorney General,' etc.), the decision is not one that is 'specified . . . to be in

the discretion of the Attorney General' for purposes of § 1252(a)(2)(B)(ii)." *Id.* at 154–55.

The government argues that two different statutory provisions, 8 U.S.C. § 1231(g) and 8 U.S.C. § 1226(a), "specif[y]" that the decision to detain immigrants in the custodial location of the government's choice is within the executive branch's exclusive discretion, precluding judicial review. The government is unlikely to prevail on this argument. Section 1231(g) has no such additional language. It merely states that "[t]he Attorney General shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal." 8 U.S.C. § 1231(g)(1). Far from authorizing discretion, § 1231(g) uses the obligatory "shall" rather than the permissive "may." This language is "in stark contrast to other sections of the INA," which both use permissive verbs and include additional language specifying that those decisions that are within the Attorney General or DHS Secretary's discretion. *Aguilar v. U.S. Immigr. & Customs Enf't Div. of Dep't of Homeland Sec.*, 510 F.3d 1, 20 (1st Cir. 2007); *cf., e.g.*, 8 U.S.C. § 1157(c)(1) ("[T]he Attorney General *may, in the Attorney General's discretion* . . . ." (emphasis added)). When "Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed

19

that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Nken*, 556 U.S. at 430 (quoting *I.N.S. v. Cardoza–Fonseca*, 480 U.S. 421, 432 (1987)).[4]

Section 1226(a), which states that "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States," similarly falls outside the scope of § 1252(a)(2)(B)(ii).  8 U.S.C. § 1226(a).  First, the permissive "may" in § 1226(a) provides discretion only as to the decision to detain—not as to the location of detention.  But even if this section did "authorize[] the Attorney General" to detain an alien wherever they saw fit, it "lacks additional language specifically rendering that determination to be within his discretion (*e.g.,* 'in the discretion of the Attorney General,' 'to the satisfaction of the Attorney General,' etc.)."  *Nethagani*, 532 F.3d at 154–55.  Accordingly, such a decision does

---

[4] In fact, the very next sentence of § 1231(g)(1) uses the permissive "may," and the subsection appears to relate "more centrally to the government's brick and mortar obligations for obtaining facilities in which to detain aliens."  *Reyna as next friend of J.F.G. v. Hott*, 921 F.3d 204, 209 (4th Cir. 2019).  Section 1231(g) first provides that the Attorney General "shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal."  8 U.S.C. § 1231(g)(1).  If such facilities "are unavailable," the statute then provides that "the Attorney General *may* expend" from specified appropriations "amounts necessary to acquire land and to acquire, build, remodel, repair, and operate facilities (including living quarters for immigration officers if not otherwise available) necessary for detention."  *Id.* (emphasis added).

not preclude judicial review because it "is not one that is 'specified . . . to be in the discretion of the Attorney General' for purposes of § 1252(a)(2)(B)(ii)." *Id.* at 155.

The Supreme Court has applied the "presumption favoring interpretations of statutes [to] allow judicial review . . . absent clear statement" to § 1252(a)(2)(B)(ii)'s bar on jurisdiction. *Kucana*, 558 U.S. at 237 (quotation marks omitted). Under these circumstances, we do not believe that § 1252(a)(2)(B)(ii), by operation of § 1231(g) and § 1226(a), likely forecloses judicial review.

Accordingly, we conclude that the government is unlikely to succeed in its appeal of the order releasing Mahdawi and the order extending the TRO.

**B.    Irreparable Injury**

As in *Öztürk*, the government contends that any court order related to immigration detention matters causes irreparable injury to its sovereign authority. But the government has not demonstrated in what way it is being "enjoined by a court [from] effectuating statutes enacted by representatives of its people." Mot. at 19 (quoting *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers)). The district court's order to hold Mahdawi (if detained) in Vermont pending his habeas petition hearing does not enjoin the government from enforcing or "effectuating" any duly enacted law. The district court concluded that Mahdawi is neither a flight risk nor a danger to the community, and the

government does not challenge that determination. Further, Mahdawi's challenge to his detention does not seek to disrupt—and nothing prevents the government from continuing with—the removal proceedings it has commenced. *See* 8 U.S.C. § 1229a(b)(2)(A)(iii)–(iv) (providing that removal proceedings may take place through video conference or, in some circumstances, "through telephone conference"). We thus conclude that the government has not shown any irreparable injury from either his release on bail or continued presence in the District of Vermont pending his removal proceedings.

## C.   Balance of Equities

Finally, the balance of the equities weighs heavily against a stay. First of all, the practical effect of the relief the government seeks would be to allow Mahdawi's re-detention. And "[t]he interest of the habeas petitioner in release pending appeal [is] always substantial." *Hilton v. Braunskill*, 481 U.S. 770, 777 (1987). This is especially true given Mahdawi's substantial First Amendment claims. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."). And as to the TRO, inherent in the term "habeas corpus" is the notion that the government is required to produce the detainee in order to allow the court to examine the legality of detention. *See* 28 U.S.C. § 2243 ("[T]he person to whom the writ is

directed shall be required to produce at the hearing the body of the person detained."); *Johnson v. Eisentrager*, 339 U.S. 763, 778 (1950) ("A basic consideration in habeas corpus practice is that the prisoner will be produced before the court. This is the crux of the statutory scheme established by the Congress; indeed, it is inherent in the very term 'habeas corpus.'").

For its part, the government does not contest the district court's findings that Mahdawi is neither a danger to the public nor a flight risk. Instead, it claims irreparable harm from the "practical cost[]" of "creat[ing] an ad-hoc location for Mahdawi to continue to appear for his removal proceedings in Louisiana remotely." Mot. at 19–20. We are unpersuaded. For one, Mahdawi is not in ICE detention, so his appearing remotely is his responsibility, not the government's. But even if he were re-detained, "[f]aced with such a conflict between the government's unspecific financial and administrative concerns on the one hand, and the risk of substantial constitutional harm to [Mahdawi] on the other, we have little difficulty concluding 'that the balance of hardships tips decidedly' in [his] favor." *Öztürk*, 2025 WL 1318154, at *14 (quoting *Mitchell v. Cuomo*, 748 F.2d 804, 808 (2d Cir. 1984) (internal quotation marks omitted)).

## IV.  MANDAMUS RELIEF

The government asks this Court, in the alternative, to issue a writ of mandamus and hold that the district court lacked authority to order Mahdawi's release and extend the TRO.  "The remedy of mandamus is a drastic one, to be invoked only in extraordinary situations."  *Kerr v. U. S. Dist. Ct. for N. Dist. of California*, 426 U.S. 394, 402 (1976).  "We issue the writ only in exceptional circumstances amounting to a judicial usurpation of power or a clear abuse of discretion."  *In re Roman Cath. Diocese of Albany, New York, Inc.*, 745 F.3d 30, 35 (2d Cir. 2014) (quotation marks omitted); *see also Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004).  The government has shown no such exceptional circumstances.  *Öztürk*, 2025 WL 1318154, at *14 (denying writ of mandamus because "the government's argument . . . that the district court lacked jurisdiction . . . runs the government head into the 'general rule that appellate courts should avoid determining jurisdictional issues on a petition for mandamus'" (quoting *In re Ivy*, 901 F.2d 7, 10 (2d Cir. 1990))).  We therefore decline to issue a writ of mandamus.

*     *     *

For the reasons stated above, the government's motion for a stay of the district court's release order and extended TRO is **DENIED**.  The government's request for a writ of mandamus is also **DENIED**.

The parties are directed to confer with the Clerk of Court to set a briefing schedule for the merits of the appeal.