June 4, 2025

VIA ECF
Honorable Michael E. Farbiarz
United States District Judge
District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street, Newark, New Jersey 07101

    Re:    *Khalil v. Trump, et al.*, No. 2:25-cv-1963 (MEF) (MAH)

Dear Judge Farbiarz,

    Mr. Khalil submits this letter brief in further support of his motion for a preliminary injunction. ECF 275; *see* ECF 272 ("Op.") at 99-100 & nn. 87-88. While the Court could conclude that he has met all of the requirements for preliminary relief without additional evidence, Mr. Khalil appends and cites herein, pursuant to the Court's May 29 Order, additional evidence.

    Mr. Khalil has met his burden of demonstrating he is suffering and will suffer multiple irreparable harms flowing from the government's unconstitutional application of 8 U.S.C. § 1227(a)(4)(C) ("Foreign Policy Ground") to him. These harms can only be fully remedied by the relief he seeks: (1) release from detention, (2) an injunction against the Rubio Determination, and (3) an injunction against the Policy.

    <u>(1) Release</u>: Mr. Khalil is experiencing irreparable harm from his arrest and detention.[1] ECF 124 at 36-38 (collecting cases). The government has repeatedly—and exclusively—argued that the purported basis of Mr. Khalil's arrest and detention is his removal under the Foreign Policy Ground. *See, e.g.,* ECF 156 at 10-11 (citing regulation governing detention under Foreign Policy Ground and asserting Mr. Khalil can seek release by arguing he is not properly subject to that statute). "[P]laintiff remains incarcerated solely under the authority of an unconstitutional statute." *Massieu v. Reno*, 915 F. Supp. 681, 696 (D.N.J.). Thus, this Court can and should remedy the irreparable harm flowing from the government's unconstitutional application of the Foreign Policy Ground to Mr. Khalil by ordering his release.

    The Court questioned whether it could issue this relief because a later-added charge related to his permanent resident application ("post-hoc charge") is "arguably an independent cause" of his detention. Op. at 100. It is not. The government has *not* argued Mr. Khalil's detention is independently justified by the post-hoc charge. *See generally* ECF 156. Nor could it, for three reasons. First, the evidence—including the government's own public statements—demonstrates that federal officials decided to detain Mr. Khalil on the basis of his protected speech, irrespective of what removal charges they ultimately brought. *See* ECF 124 at 31, 68-1–4, 175-6, 175-10–20; Salama Decl. Ex. P (Declaration

---

[1] These harms include the loss of Mr. Khalil's liberty; the chilling of his First Amendment protected activities; the separation from his family, particularly his wife and newborn child; and psychological harm specific to his arrest and detention. *See* Am. Pet. ¶¶ 8, 58–72; ECF 55 ("First Abdalla Decl.") ¶¶ 28–29; Salama Decl. Ex. B (Second Declaration of Noor Abdalla ("Second Abdalla Decl.")) ¶¶ 13, 20-24; Salama Decl. Ex. A (Decl. of Mahmoud Khalil ("Khalil Decl.")) ¶¶ 7–23; Salama Decl. Ex. O (Expert Declaration of Dr. Andrew Rasmussen ("Rasmussen Expert Decl.")) pp. 9-10 (documenting clinical psychological harm Mr. Khalil is suffering from shock of unjust arrest and continued detention and family separation, which will inevitably severely worsen absent release).

of Kerry Doyle ("Doyle Decl.")) ¶ 11 (former nationwide ICE Principal Legal Advisor and former Immigration Judge explaining that government official's statements about Mr. Khalil's arrest are "extraordinary"). Second, the government's later, pretextual decision to add the second charge—*after* it detained Mr. Khalil and *after* he filed his lawsuit—is a continuation of, not a cure to, retaliatory motive. *See* ECF 124 at 18 n.20; *see also* Salama Decl. Ex. K ("Second Kurzban Decl.") ¶¶ 17-18 (explaining it is rare for ICE to amend a Notice to Appear to add factual allegations and charges of this nature against a lawful permanent resident); *Ragbir v. Homan*, 923 F.3d 53, 79 (2d Cir. 2019) (cautioning that additional near-term attempts to remove plaintiff would carry the "taint of the unconstitutional conduct").[2]

Third, the mere allegation that Mr. Khalil is removable under the post-hoc charge is insufficient to justify his detention. To satisfy due process, discretionary civil immigration detention must be justified by a showing that Mr. Khalil is a flight risk or danger. ECF 124 at 31-33; *see also Ozturk v. Trump*, No. 2:25-CV-374, 2025 WL 1420540, at *5 (D. Vt. May 16, 2025) (granting bail to noncitizen in ICE custody raising First and Fifth Amendment claims) (citing *Velasco Lopez v. Decker*, 978 F.3d 842, 857 (2d Cir. 2020) ("The Government . . . has no interest in the continued incarceration of an individual who it cannot show to be either a flight risk or a danger to his community.")). The government's own regulations also require detention be justified by flight and danger considerations. *See* Second Kurzban Decl. ¶¶ 10-13; *Velasaca v. Decker*, 458 F. Supp. 3d 224, 242 (S.D.N.Y. 2020) (finding ICE's failure to provide individualized consideration of flight risk and danger likely violated INA and implementing regulations). Mr. Khalil has submitted substantial and uncontested evidence of his lack of flight risk and dangerousness, Am. Pet. ¶¶ 4-5, 11; ECF 91-1, 93-1, 56-2, 56-6; First Abdalla Decl. ¶¶ 4, 28-30; *see also* Khalil Decl. ¶¶ 5, 12, 15, 17, and the government has not attempted to argue otherwise. Thus, even if the post-hoc charge provides authority to detain an individual who is a flight risk or danger, it does not provide the missing (and constitutionally necessary) justification to detain someone like Mr. Khalil, who is not. That his detention is not necessary to mitigate any flight risk or danger is additional evidence of its retaliatory purpose. *See* Doyle Decl. ¶¶ 9, 18 (explaining that in her experience, including as ICE's Principal Legal Advisor, detention in this case is extraordinary); Second Kurzban Decl. ¶¶ 14-18 (same); Salama Decl. Ex. L (Decl. of Stacy Tolchin ("Tolchin Decl.")) ¶¶ 16-17 (same). Because there is no other lawful basis to detain Mr. Khalil, his continued detention based on the unconstitutional application of the Foreign Policy Ground requires an order that he be released.[3]

(2) Enjoin the Rubio Determination: In addition to harms resulting from his detention, Mr. Khalil is experiencing several other forms of irreparable harm that would be remedied by this Court setting aside the Rubio Determination. *See* ECF 124 at 13-14, 35-36. First, the direct result of the

---

[2] In its Opinion, the Court does not reach certain First Amendment claims concerning Mr. Khalil's detention and the government's policy to target certain noncitizens for detention and deportation, nor the related Fifth Amendment claim that Mr. Khalil's ongoing detention violates due process. To the extent the Court finds it cannot issue the full relief Mr. Khalil seeks—including release—through a finding he is likely to succeed on his vagueness claim, respectfully, it should rule on the remaining claims on which he seeks this same preliminary relief. *See* Fed. R. Civ. P. 52(a); *see also* ECF 214 at 11 ("[T]he law requires sped-up judicial review of First Amendment claims of the kind Petitioner raises here.").

[3] If the Court does not believe a sufficient evidentiary record exists for release under either this motion or his motion for bail, Mr. Khalil requests an evidentiary hearing and the opportunity to testify in person at the courthouse.

Rubio Determination is Mr. Khalil's potential loss of lawful permanent resident status and removal under the Foreign Policy Ground. This harm is not speculative; the immigration court has already sustained the removal charge based on the Rubio Determination alone. Op. 4-5. The Supreme Court has "long recognized" that deportation is "a particularly severe penalty" for lawful permanent residents. *Padilla v. Kentucky*, 559 U.S. 356, 365–66 (2010) (citing *Fong Yue Ting v. United States*, 149 U.S. 698, 740 (1893)); *see also De Jesus Martinez v. Nielsen*, 341 F. Supp. 3d 400, 408–09 (D.N.J. 2018) ("Denying [petitioner] the opportunity to complete the waiver process would constitute the ultimate irreparable harm— deportation"); *Ragbir*, 923 F.3d at 71–72 (holding that threat of removal constitutes adverse action under First Amendment). These harms are distinct from those presented by a removal order pursuant to the post-hoc charge, which, unlike a removal order on the Foreign Policy Ground, provides for a routinely granted waiver of removal in cases where a U.S. permanent resident has a U.S. citizen spouse or child. Tolchin Decl. ¶¶ 18–19. Moreover, given the frivolous nature of the post-hoc charge, *id.* ¶¶ 6–16; Khalil Decl. ¶¶ 24–29; Salama Decl. Ex. C (Decl. of Johnny Sinodis ("Sinodis Decl.")) ¶¶ 6-7, 9–27, and the government's complete failure to satisfy its burden, *see* Sinodis Decl. ¶¶ 7, 22, 25–27 (noting that DHS did not cross-examine or attempt to refute Mr. Khalil's testimony regarding the post-hoc charge and abandoned any argument in support of it in its closing argument), it may very well be dismissed or overturned on appeal, leaving the Rubio Determination as the sole basis for removal.

Second, Mr. Khalil's First Amendment rights are being chilled now and will continue to be chilled by the Rubio Determination.[4] Khalil Decl. ¶¶ 13–14 (describing his inability to protest and self-censorship out of fear of surveillance and further punishment); Am. Pet. ¶ 8. "Plaintiff's constitutional injury accrues daily." *Massieu*, 915 F. Supp. at 696. The determination is a sword of Damocles hanging over Mr. Khalil's head, serving as a constant warning of the consequences of disfavored speech. As this Court has recognized, "where a vague statute abuts upon sensitive areas of basic First Amendment freedoms, it operates to inhibit the exercise of those freedoms." Op. 75 at n.63 (citing *Grayned v. City of Rockford*, 408 U.S. 104, 111-12 (1972)); *see id.* at 97 n.82 (noting that "[t]he vagueness challenge as to the Secretary's determination is tightly bound up with First Amendment issues"). And where constitutional violations chill speech, courts "ha[ve] no trouble finding" irreparable harm. *Ireland v. Hegseth*, No. 25-CV-01918, 2025 WL 1084239, at *3 (D.N.J. Mar. 24, 2025); *see also id.* n.6 (in Fifth Amendment case, noting Third Circuit finds irreparable harm where a constitutional violation has (1) "a chilling effect;" (2) "a purposeful unconstitutional government suppression of [constitutional rights];" and (3) a "direct penalization, as opposed to incidental inhibition, of [constitutional rights]." (brackets in original, citing *Hohe v. Casey*, 868 F.2d 69, 73 (3d Cir. 1989)). Here, as in *Ireland*, the Court can find irreparable harm based its finding that the Rubio Determination likely violates the Fifth Amendment and its related chilling effect.[5]

---

[4] Another U.S. permanent resident, Yunseo Chung, is named in the same Rubio Determination as Mr. Khalil. ECF 198-1. She has also alleged the chilling of her First Amendment rights resulting from the Rubio Determination. Pet. and Compl., *Chung v. Trump*, ¶¶ 159-162, No. 25-cv-2412 (S.D.N.Y. Mar. 25, 2025), ECF 17.

[5] Mr. Khalil has separately demonstrated per se irreparable harm resulting from the Rubio Determination's violation of his First Amendment rights. ECF 175 at 10-18; *see also* ECF 214 at 83 ("That is because '[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury'" (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion))).

Third, the Rubio Determination has damaged Mr. Khalil's reputation by baselessly identifying him as a risk to the foreign policy of the United States, marking him and his family as targets for harassment and notoriety, and severely undermining his ability to pursue a career in international diplomacy and human rights advocacy. *See* ECF 124 (citing Am. Pet. ¶¶ 73–81; First Abdalla Decl. ¶¶ 28–29 (Mr. Khalil's then-pregnant wife describing harassment directed at Mr. Khalil, her, and their extended family since his detention)); *see also* Khalil Decl. ¶¶ 6–8, 14–28; Second Abdalla Decl. ¶¶ 5-6, 24; Rasmussen Expert Decl., p. 10 (describing psychological harms from such false and high-level targeting); *see generally* Salama Decl. Ex. Q (expert report discussing the psychological harms likely to result from the Rubio Determination and related charges of antisemitism). The "[d]esignation works an immediate substantial harm to the reputation[] of petitioner[]." *Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 145 (1951) (Black, J., concurring) (recognizing harms associated with designations and blacklists "devoid of fundamental fairness"); *see also Ireland*, 2025 WL 1084239, at *3 (finding irreparable harm stemming from, inter alia, "damage to reputation") (citing *Fitzgerald v. Mountain Laurel Racing, Inc.*, 607 F.2d 589, 601 (3d Cir. 1979) (finding irreparable injury established where eviction from place of employment harmed plaintiff's business and reputation)). And the longer the determination stands, the more reputational damage it does. An order setting aside the Rubio Determination would help restore Mr. Khalil to the status quo ante and eliminate the stigma of his ongoing designation as a purported foreign policy concern.

(3) <u>Set Aside the Policy</u>: If the Court still finds, notwithstanding the above, that the post-hoc charge presents a barrier to release, the Court should rule on Mr. Khalil's claim that the government's Policy is unlawful and enjoin its application to Mr. Khalil, including through that charge. As Mr. Khalil repeatedly has argued, *see* ECF 124 at 18-23; ECF 133 at 2-10, the government's policy to arrest, detain, and seek to deport noncitizens who engage in protected expression in support of Palestinian rights or critical of Israel is both viewpoint discriminatory in violation of the First Amendment and vague in violation of the Fifth Amendment. If the Court finds Mr. Khalil is likely to prevail on this claim, it should further enjoin, as a remedy, the application of that policy here: the Rubio Determination, the Post-Hoc Charge, and his ongoing detention.

While the Court "denied" Mr. Khalil's motion insofar as it sought to "preliminarily enjoin the failure-to-disclose ground for removal," ECF 272 at 99, Mr. Khalil did not move for preliminary relief against the post-hoc charge as a standalone matter. Instead, he moved for relief against the Policy, which, after amendment, encompassed the second charge. *See* ECF 223 at 1; *id.* at n.3. Nonetheless, to the extent the Court requires an independent showing of likelihood of success against the post-hoc charge, Mr. Khalil meets it.[6] *Mt. Healthy City Sch. Dist. v. Doyle*, 429 U.S. 274 (1977). First, this Court has already found Mr. Khalil has engaged in First Amendment protected activities. ECF 214 at 82. Second, as argued, ECF 124 at 13, initiating deportation proceedings is retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights. Third, there is plainly a causal link between Mr. Khalil's protected conduct and the lodging of the post-hoc charges. The government's statements about its decision to target Mr. Khalil for removal on the basis of his speech alone suffice. ECF 124 at 15-18; *see Ragbir,* 923 F.3d at 70-71 (citing remarks of immigration officials as indicia of retaliation); *Gutierrez-Soto v. Sessions,* 317 F. Supp. 3d 917, 934 (W.D. Tex. 2018) (same).

---

[6] This Court found that it had no evidence before it in the record sufficient to address Mr. Khalil's claims relating to the post-hoc charge. Op. 98-99. However, evidence of the existence, timing, and nature of the post-hoc charge has been in the record in this case since March 20, when the government introduced it, *see* ECF 90-1. In any event, Mr. Khalil has now verified the Third Amended Petition, which contains these and related allegations. *See* Khalil Decl. ¶ 1.

4

In addition, the timing of the new charges, shortly after the government had already decided to retaliate against Mr. Khalil by issuing the Rubio Determination and arresting him, and just one week after Mr. Khalil filed this habeas, Am. Pet. ¶¶ 88-89, are further proof of this causal connection, *see Bello-Reyes v. Gaynor,* 985 F.3d 696, 702 (9th Cir. 2021) (timing of detention by immigration officials provides indicia of retaliation); *M.Q. v. United States*, No. 22-CV-10680, 2025 WL 965810, at *10 (S.D.N.Y. Mar. 31, 2025) (same); *Gutierrez-Soto*, 317 F. Supp. 3d at 934 (same); *see also Rueda Vidal v. U.S. Dep't of Homeland Sec.*, 536 F. Supp. 3d 604, 622 (C.D. Cal. 2021) (timing of revocation of immigration status provides indicia of retaliation). Moreover, Mr. Khalil is not the only individual the government has recently targeted for removal and detention based on political speech; several of these other instances also involve pretextual charges separate from the Foreign Policy Ground. See ECF 175-2, Exs. A-S (collecting court documents from suits related to other individuals facing similar charges). This "pattern of conduct" supports a finding of retaliation. *See Gutierrez-Soto*, 317 F. Supp. 3d at 934. Last, the fact that the post-hoc charge is highly unusual and meritless lays bare its pretextual nature. *See* Doyle Decl. ¶¶ 16-18 (finding the merits and timing of the charges atypical and "challenging . . . to prove"); Sinodis Decl. ¶¶ 6-27 (explaining the lack of any evidentiary or legal basis for the post-hoc charge and noting the immigration court has already indicated DHS had not met its burden on at least one of the three allegations in support of that charge); Khalil Decl ¶¶ 24–29; Tolchin Decl. ¶¶ 15-16; *M.Q.*, 2025 WL 965810, at *10 (finding inconsistencies in purported reasoning to revoke release to support indicia of pretextual retaliation).

Finally, Mr. Khalil has demonstrated the other *Winter* factors—the balance of the equities and the public interest—are satisfied here. ECF 124 at 38-40; *see also Am. Civil Liberties Union v. Reno*, 929 F. Supp. 824, 849 (E.D. Pa. 1996) (striking down vague law and finding "no party has any interest in the enforcement of an unconstitutional law"), *aff'd*, 521 U.S. 844, 117 (1997); *Ragbir*, 923 F.3d at 71 ("[T]o allow this retaliatory conduct to proceed would broadly chill protected speech, among not only [noncitizen] activists . . . but also . . . citizens and other residents."). Nonetheless, he hereby submits additional evidence demonstrating that the Policy, the Rubio Determination, and his ongoing detention have had an enormous chilling effect not just on him, but on many other noncitizens and citizens nationwide, including his family and people in his surrounding academic community, who are refraining from speaking on a matter of political import. *See* Second Abdalla Decl. ¶¶ 25-27; Salama Decl. Ex. D (AAUP declarations describing chill); Ex. F-2 (same with respect to legal organization Muslim Advocates) ¶¶ 8-9; Ex. J ¶¶ 5-10 (Jewish activists and students); Ex. F-3 ¶¶ 5-10 (legal clients); *see generally* Ex. I (organization Human Rights Watch); Exs. H-1-12 (students); Exs. G-1-11 (professors).

Mr. Khalil also submits evidence that the government's Policy undermines the public's interest in upholding democratic and First Amendment principals domestically and abroad. *See generally* Salama Decl. Ex. N (Declaration of Christopher Le Mon); *id.* ¶ 22 (former State Department official stating "allowing the Federal government to carry out reprisals against individuals as a response to dissent, protest, or critical speech that the current administration dislikes would strike a serious blow against the health and stability of American democracy, would deal a serious blow to U.S. credibility worldwide on human rights issues, and would make every person in the United States—noncitizens and citizens alike—far less safe and far less free").

In sum, this Court should grant Mr. Khalil the full relief to which he is entitled—through the present motion or, like several other district courts addressing similar claims, by granting his motion for bail or, at the very least, his motion to compel his return to the district, pending further adjudication of these matters.

Respectfully submitted,

/s/ *Liza Weisberg*

AMERICAN CIVIL LIBERTIES UNION OF NEW JERSEY FOUNDATION
Jeanne LoCicero
Farrin R. Anello
Molly K.C. Linhorst
Liza Weisberg
570 Broad Street, 11th Floor
Newark, New Jersey 07102
973-854-1715

NEW YORK CIVIL LIBERTIES UNION FOUNDATION
Amy Belsher*
Robert Hodgson*
Veronica Salama*
Molly Biklen*
125 Broad Street, 19th Floor
New York, N.Y. 10004
Tel: (212) 607-3300

AMERICAN CIVIL LIBERTIES UNION FOUNDATION
Omar Jadwat
Noor Zafar*
Sidra Mahfooz*
Michael K.T. Tan*
Brian Hauss*
Esha Bhandari*
Vera Eidelman*
Tyler Takemoto*
Brett Max Kaufman*
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2500

CLEAR PROJECT
MAIN STREET LEGAL SERVICES, INC.
Ramzi Kassem*
Naz Ahmad
Mudassar Hayat Toppa*
Shezza Abboushi Dallal*
CUNY School of Law
2 Court Square
Long Island City, NY 11101
Tel: (718) 340-4558

CENTER FOR CONSTITUTIONAL RIGHTS
Baher Azmy
Samah Sisay*
Diala Shamas*
666 Broadway, 7th Floor
New York, NY 10012
Tel: (212) 614-6464

WASHINGTON SQUARE LEGAL SERVICES, INC.
Alina Das*
Immigrant Rights Clinic
245 Sullivan Street, 5th Floor
New York, New York 10012
Tel: (212) 998-6430

DRATEL & LEWIS
Amy E. Greer
29 Broadway, Suite 1412
New York, NY 10006
Tel: (212) 732-8805
Fax: (212) 571-3792

VAN DER HOUT LLP
Marc Van Der Hout (CA Bar #80778)*
Johnny Sinodis (CA Bar #290402)*
Oona Cahill (CA Bar #354525)*

              360 Post St., Suite 800
              San Francisco, CA 94108
              Tel: (415) 981-3000
              Fax: (415) 981-3003

              *Counsel for Petitioner*

\* *Appearing Pro hac vice*