# Exhibit L

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| Mahmoud KHALIL, <br><br> *Petitioner*, <br><br> v. <br><br> Donald J. TRUMP, in his official capacity as President of the United States; William P. JOYCE, in his official capacity as Acting Field Office Director of New York, Immigration and Customs Enforcement; Yolanda PITTMAN, in her official capacity as Warden of Elizabeth Contract Detention Facility; Caleb VITELLO, Acting Director, U.S. Immigration and Customs Enforcement; Kristi NOEM, in her official capacity as Secretary of the United States Department of Homeland Security; Marco RUBIO, in his official capacity as Secretary of State; and Pamela BONDI, in her official capacity as Attorney General, U.S. Department of Justice, <br><br> *Respondents*. | Case No. 25-cv-01963 (MEF-MAH) <br><br> **DECLARATION OF STACY TOLCHIN** |

I, Stacy Tolchin, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct to the best of my knowledge.

1. I am an attorney licensed to practice law before the State of California. I have been practicing immigration law since 2002.

2. I am admitted to practice before the United States Supreme Court; the United States Court of Appeals for the Ninth, Tenth, and Second Circuits; the United States District Courts for the Northern District of California, Eastern District of California, Central District of California, and Southern District of California; the United States District Court for New Mexico; and the U.S. Court of Federal Claims.

3. I received my Juris Doctorate from the University of California at Los Angeles

in 2001 and have been practicing law for over 23 years.

4. I am a recipient of the American Immigration Lawyers' Association of Southern California Chapter's 2019 Pro Bono Champion Award, University of California at Los Angeles Law School's 2018 Alumni Public Service Award, the National Lawyers Guild of Southern California 2017 annual award, the American Immigration Lawyers Association's 2009 Jack Wasserman Award for Excellence in Immigration Litigation, the 2009 American Civil Liberties Union of Southern California Equal Justice Advocacy Award, the 2008 National Immigration Law Center Annual Award, the 2007 "Unsung Hero" Award for the National Lawyers Guild of the Bay Area, and was recognized in 2003 by the Arab-American Anti-Discrimination Committee of San Francisco. I have also been named to "Super Lawyers" from 2012-2024.

5. I have represented noncitizens in applications for adjustment of status (i.e., green card applications) and naturalization for more than 20 years, and have represented noncitizens in removal proceedings during that time as well.

6. Both the applications for adjustment of status and naturalization have historically had a question on them requesting information on whether the applicant has ever, at any time, been associated with or a member of any organization in the United States or anywhere in the world.

7. This question is vague and ambiguous and has always been problematic in that applicants do not understand how to answer. It is unclear if the question requires a response about the applicant's place of worship, book club, sports team, university, fraternity/sorority, place of employment, video or computer game circles, or political party.

8. I have been at many interviews where the applicant has volunteered the name of an organization, such as a professional organization, and we have been told by the adjudicating official that the question does not really pertain to such organizations and not to provide details of association with the organization on the application.

9. The vast majority of my clients answer "NO" to the question in its entirety. In the few occasions when it turned out that an adjudicating officer asked more direct questions about memberships and affiliations that my clients answered and the officer deemed relevant, the officer sometimes simply made a note and moved on, and sometimes stated that the question was not asking about that type of membership/association and never even noted the response in the

2

application.

10. It is difficult to advise clients what to put on the application regarding this question because people are not able to remember their "associations" at "any time" "anywhere in the world." Even I would not know what to put on the application if I were completing it for myself.

11. The naturalization application was in fact changed on April 1, 2024 to eliminate this question. Now the question in the naturalization application asks only about membership or association directly in terrorist or totalitarian organizations.

12. The adjustment of status application continues to contain the vague and ambiguous question regarding membership and association. However, I have been in many interviews where the adjudicators skip the question altogether.

13. In the rare instances where the membership/association question has been at issue, courts have held that the government must still prove that the missing information is material and the individual had an intent to deceive or made a willful misrepresentation. In some of the cases I have litigated, courts have held that the government has failed to prove those critical components. For example, I have seen denials of naturalization, for instance, where the applicant failed to list their donation to a Palestinian rights organization. This was litigated after a naturalization denial before the U.S. District Court for the Central District of California in Hamdi v. United States Citizenship & Immigr. Serv., No. EDCV1000894VAPDTBX, 2012 WL 13135302, at *10 (C.D. Cal. Aug. 29, 2012), and the district court found that the failure to disclose the association was not done with the subjective intent to defraud.

14. I also was involved with a case where the government attempted to denaturalize an individual from Iran due to his failure to disclose his Iranian military service under the membership/association question on the naturalization application. This case was litigated before the Ninth Circuit in United States v. Mousavi, 378 F. App'x 667, 669 (9th Cir. 2010), and the court held that the failure to disclose the military membership was not material to the naturalization application.

15. I have never seen things like the omission of a student internship or student club membership being the basis for a material misrepresentation charge.

16. As relevant to Mr. Khalil's case, it is incredibly rare to see a lawful permanent resident detained and placed into removal proceedings for having failed to disclose a past membership or association on the application for adjustment of

3

status. In order to do so, the Department of Homeland Security would have to show the applicant made a false representation and, in doing so, intended to deceive, or willfully failed to disclose a fact that was material, which is very difficult because most associations/memberships are not material. Further, the question on the Form I-485 and Form N-400 is so open-ended and ambiguous that it is hard to show that there was an intent to hide such information, or that it was willfully done. In the vast majority of cases, the question is just usually irrelevant, and without further instruction or prompting, applicants are left without sufficient information to know how to answer the question.

17. I have represented at least ten permanent residents who have been placed into removal proceedings after they were denied naturalization. The only ones who were detained were those who had criminal convictions that DHS believed made them removable, in addition to being ineligible for naturalization.

18. Lawful permanent residents who are charged with removal for fraud or willful misrepresentation at the time of admission (i.e., when they adjusted their status to that of a lawful permanent resident) are eligible for a waiver under 8 U.S.C. § 1227(a)(1)(H). In order to qualify for the waiver, the applicant must have a spouse, parent, or child who is a permanent resident or a U.S. Citizen. I have handled roughly five to seven of these waivers before immigration judges, and these are straightforward waivers that do not require a showing of hardship at all. Once the applicant is deemed eligible (in that they adjusted status and have a qualifying family member), the only inquiry for the immigration judge is the consideration of discretionary factors. These waivers are even available in cases where the applicant has been found to have purposefully committed marriage fraud for purposes of an immigration benefit. I have never had one of these waivers denied by an immigration judge.

19. If the sole charge of removal against Mr. Khalil were 8 U.S.C. § 1227(a)(1)(A), due to what is perceived to be fraud or a material misrepresentation committed by him at the time he adjusted his status to that of a lawful permanent resident, and an immigration judge were to sustain that charge, then he would qualify for a waiver under 8 U.S.C. § 1227(a)(1)(H). Under those circumstances, I believe that he would be granted the waiver in the exercise of discretion given his relationship to his U.S. citizen wife and child, and the lack of any criminal history in his case.

////

Dated: June 4, 2025  
Pasadena, CA

Signed:

_____  
STACY TOLCHIN