# Exhibit P

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| Mahmoud KHALIL,<br><br>    *Petitioner*,<br><br>v.<br><br>Donald J. TRUMP, in his official capacity as President of the United States; William P. JOYCE, in his official capacity as Acting Field Office Director of New York, Immigration and Customs Enforcement; Yolanda PITTMAN, in her official capacity as Warden of Elizabeth Contract Detention Facility; Caleb VITELLO, Acting Director, U.S. Immigration and Customs Enforcement; Kristi NOEM, in her official capacity as Secretary of the United States Department of Homeland Security; Marco RUBIO, in his official capacity as Secretary of State; and Pamela BONDI, in her official capacity as Attorney General, U.S. Department of Justice,<br><br>    *Respondents*. | Case No. 25-cv-01963 (MEF-MAH)<br><br>**DECLARATION OF KERRY E. DOYLE** |

## DECLARATION OF KERRY E. DOYLE

I, KERRY E. DOYLE, hereby declare and state:

1.    The facts set forth in this declaration are based on my personal knowledge, unless otherwise indicated, and, if called as a witness, I could and would testify thereto. I am over eighteen years of age and of sound mind to declare to the facts stated herein.

2.    I am currently Of Counsel with Green and Spiegel, LLC, which is an immigration firm based in Philadelphia, Pennsylvania. I graduated *cum laude* from American University, Washington College of Law with a J.D. and The George Washington University with a B.A. in Political Science. I am a member of the Commonwealth of Massachusetts Bar, the Supreme Court Bar and the bars of Several Federal Courts of Appeals and U.S. District Courts.

3.    I served as Principal Legal Advisor (PLA), for Immigration Customs Enforcement

(ICE) from September 2021 through September 2024. In that role, I oversaw the more than 1,500 attorneys and staff who work for the Office of the Principal Legal Advisor (OPLA) across the country. As PLA, I was responsible for establishing the direction and priorities of our office in alignment with the Office of General Counsel (OGC), ICE, and DHS leadership. During that time, I also served on detail as Acting Deputy General Counsel, Office of General Counsel (OGC), Department of Homeland Security (DHS) from February 2024 through May 2024 and as Deputy General Counsel from October 2024 through December 2024. I was appointed as an Immigration Judge and served in that position from December 2024 through mid-February 2025.

4. In private practice, I have represented many hundreds of noncitizens in removal proceedings. I am a recognized expert in complex immigration issues, including immigration court removal proceedings. I have been a frequent speaker at immigration conferences and national lawyer trainings, including recurring trainings co-hosted by the Boston Immigration Court (part of the Executive Office for Immigration Review (EOIR)) and the New England chapter of AILA, with a specific focus on training pro-bono attorneys volunteering to represent noncitizens in immigration bond hearings. I have been recognized as an expert witness on immigration law topics before both state and federal courts. In light of my expertise, while in private practice, I was selected by the Immigration Court to represent detained individuals who have been deemed incompetent through the National Qualified Representative Program. In the past, I worked closely with the Massachusetts Immigrant and Refugee Advocacy Coalition and the Massachusetts Law Reform Institute providing technical assistance and public testimony on various immigration-related policy issues before the state legislature and the Boston City Council. More recently, I have testified before the Federal Law Enforcement subcommittee of the Government Oversight Committee in the U.S. House of Representatives.

5. I am providing this declaration in my personal capacity. The opinions herein should

not be construed to represent the position of DHS or any components therein, the Department of Justice, or Green and Spiegel, LLC. Moreover, while the views I express herein are generally based on my over twenty-five years of immigration law practice, including extensive experience in both private practice and government service, no part of this declaration includes, references, reflects, draws upon, confirms, or denies privileged, confidential, deliberative, sensitive, or classified information.

6. I have reviewed Mahmoud Khalil's Third Amended Petition for Writ of Habeas Corpus and Complaint, ECF 236 ("Petition"). While I do not represent Mr. Khalil and I have no first-hand knowledge of the facts from this case, I understand from the Petition that Mr. Khalil is confined at the Central Louisiana ICE Detention Facility in Jena, Louisiana. I also understand from the Petition that Mr. Khalil has never been convicted of a crime nor arrested (prior to his apprehension by ICE on March 8, 2025).

7. Mr. Khalil's overnight transfer to Louisiana is highly unusual.

8. Indeed, it is extraordinarily rare for DHS to transfer someone, overnight, from one part of the country, such as New York or New England, all the way to Louisiana. This is particularly true where that person's family and attorneys are in the greater New Jersey area. Historically, a noncitizen is most likely to remain in the general geographic area where they are living before being detained, barring an extremely unusual situation. I cannot recall a situation in which something similar happened to one of my clients in my twenty-five plus years of private practice.

9. I cannot recall the U.S. government detaining a lawful permanent resident of the United States with no prior criminal involvement or arrests and then placing that person in removal proceedings charging primarily 8 U.S.C. 1227(a)(4)(C), based even in part on that person's constitutionally protected political speech in the United States. This case is the first such instance

of which I have become aware of this occurring.

10. In fact, I do not recall the U.S. government ever citing 8 U.S.C. 1227(a)(4)(C) as a ground of removability in any removal case not involving a current or former foreign government official. This case is the first such instance of which I have become aware.

11. I understand from the Petition that senior U.S. government officials made statements after Mr. Khalil's apprehension, explicitly referencing his detention to send a message to others that they, too, should fear arrest. If that allegation in the Petition is accurate, it would also be extraordinary in my view.

12. I believe that there is a strong governmental and public interest in protecting noncitizens from retaliation through immigration enforcement because freedom of speech is a bedrock of democratic governance and the rule of law.

13. This holds particularly true in the immigration context, where the U.S. government has limited enforcement resources and must exercise wide prosecutorial discretion in a fair and legitimate manner. Even the appearance of retaliation as the main motive for an enforcement action risks undermining the rule of law.

14. DHS guidance has publicly reiterated the agency's commitment to honoring noncitizens' First Amendment rights and avoiding enforcement against a noncitizen solely based on First Amendment protected activity. This includes then-Acting Secretary of Homeland Security Kevin K. McAleenan's May 17, 2019 guidance titled "Information Regarding First Amendment Protected Activities" and then-Secretary of Homeland Security Alejandro N. Mayorkas's September 30, 2021 guidance titled "Guidelines for the Enforcement of Civil Immigration Law."

15. Targeting a noncitizen for apprehension, detention, and removal based solely on that noncitizen's speech would be contrary to these principles and I believe would risk undermining the perceived legitimacy of immigration enforcement.

16. It is also unusual that DHS added a second charge of removability alleging misrepresentations in Mr. Khalil's immigration applications in the absence of any pending immigration application triggering review, and only after he was apprehended and filed a habeas corpus petition.

17. Moreover, in light of the fact that the new charges appear challenging for the government to prove, this development highlights the government's concern that the original charge for removal may not be proven and that they are eager to have Mr. Khalil removed at any cost. The arrest, detention and aggressive posture of the government in this case, evidenced by the amended charges, will, in my view, chill the free speech rights of citizens and noncitizens.

18. Lawful permanent residents of the United States are not typically placed in removal proceedings, and certainly not detained, based solely on the types of allegedly missing information described in the second charge (as detailed in the Petition). That such a charge was added creates an even broader fear among noncitizens. While not all noncitizens who have engaged in political speech may have Mr. Khalil's public profile, most have submitted various immigration applications to DHS and probably now fear that their applications will become a pretext for targeting.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

DATED:    June 4, 2025                              /s/ Kerry E. Doyle

                                                                                          KERRY E. DOYLE