June 16, 2025

VIA ECF
Honorable Michael E. Farbiarz
United States District Judge
District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, NJ 07101

Re:    *Khalil v. Trump*, *et al.*, No. 2:25-cv-1963 (MEF) (MAH)

Dear Judge Farbiarz,

In light of the Court's recent rulings, ECF 303 and 306, and Respondents' newly claimed justification to detain Petitioner Mahmoud Khalil, ECF 304, Petitioner respectfully requests that the Court rule on his fully-briefed motion for release on bail pending adjudication of his habeas corpus petition, *see, e.g.,* ECF 53 and 93, or, in the alternative, on his motion to compel his return to detention in New Jersey, ECF 11 and 96.

Following this Court's June 11, 2025 opinion and order enjoining Mr. Khalil's removal and detention based on the Secretary of State's determination, ECF 299, Respondents have taken the position that Mr. Khalil "is *now* detained based on [the] other charge of removability"—alleged omissions in an immigration application, ECF 304 (emphasis added). Given this Court's factual finding, drawing on undisputed evidence, that the detention of U.S. lawful permanent residents on this basis "virtually never" occurs, ECF 299 at 8, the decision to continue Petitioner's detention on this basis further underscores Respondents' unlawful, retaliatory purpose, and independently provides additional grounds for release during the pendency of his long-running habeas proceedings.

To be clear, Petitioner does not ask the Court to adjudicate the merits of Respondents' new decision to detain him based on the post-hoc, immigration application related charge, which Petitioner intends to address separately. Nevertheless, the extraordinary rarity of detention on this basis is relevant here to the independent inquiry whether Mr. Khalil is entitled to bail pending the (potentially lengthy) adjudication of those merits (alongside other claims). Petitioner remains available to testify in person should the Court need his live testimony in support of his motion for release or the separate motion for his return.

1.    **This Court should grant Mr. Khalil's motion for release.**

These developments only bolster Mr. Khalil's motion for release on bail. First, as Mr. Khalil has previously briefed, he raises several substantial claims, ECF 93 at 15-19, and this Court has now ruled on one of them—that Mr. Khalil "is likely to succeed on the merits of his claim that Section 1227, as applied to him here through the Secretary of State's determination, is vague in violation of the Due Process Clause of the Constitution." *Khalil v. Trump,* No. 25-CV-01963 (MEF) (MAH), __ F. Supp. 3d. __, 2025 WL 1514713, at *52 (D.N.J. May 28, 2025).

Second, Mr. Khalil has raised substantial claims that Respondents' decision to detain him—distinct from both the initiation of removal proceedings based on the Rubio determination and the later addition of the post-hoc charge as a second ground for removal—is retaliatory and punitive, in violation of the First and Fifth Amendments. ECF 93, at 15-17; ECF 162 at 24-25; ECF 124 at 31-35. While the Court has not yet fully ruled on Mr. Khalil's detention claims, these recent developments—namely, Respondents' "extremely unusual" decision to continue detaining Mr. Khalil, a U.S. permanent resident, based solely on the post-hoc charge, ECF 299 at 10 *quoting* Kurzban Declaration; ECF 284-11, coupled with their refusal to even transfer him to a facility closer to his family, in violation of their own directive, *see* below—underscore the retaliatory and punitive nature of his continued detention. Together or in isolation, these additional facts further highlight that Mr. Khalil satisfies the first prong of the standard for release on bail. ECF 93 at 12-17 (collecting and applying cases).

Third, as Mr. Khalil has previously briefed, there are several extraordinary circumstances that demonstrate why release is required to make the habeas remedy effective. ECF 93 at 19-22. Mr. Khalil's most recent evidentiary submissions—which, like his previous evidentiary submissions, Respondents have not contested—demonstrate serious personal harms to Mr. Khalil and support such a finding. Moreover, Mr. Khalil's detention based on the post-hoc, immigration application related charge alone is "extraordinary." This Court, crediting Mr. Khalil's evidence, found it would be "overwhelmingly" unlikely for Respondents to detain him solely on that charge. ECF 299 at 10. Nonetheless, that is precisely what Respondents are doing.

In addition, Mr. Khalil is neither a flight risk nor a danger. ECF 93 at 20.[1] As the Court observed, Mr. Khalil "has no criminal record. The Secretary of State's determination does not say that he has been involved in criminal activity or violence. And the Respondents have not put forward any evidence as to involvement by the Petitioner in violence, destruction of property, or any other sort of criminal activity." ECF 299 at 10 n.10. The uncontested evidence shows that, "as a matter of fact . . . it is overwhelmingly likely that Petitioner would not be detained based on the lawful-permanent-resident-application charge." *Id.* at 10. That Respondents have confirmed they have now made the exceedingly rare and extremely unusual choice of detaining Mr. Khalil based on the immigration application-related charge, ECF 304, amounts to further unconstitutional retaliation and adds to the extraordinary circumstances warranting relief. This Court should therefore order Mr. Khalil's immediate release pending further adjudication of his habeas petition.[2]

---

[1] Apart from the most recent tranche of evidentiary submissions, ECF 284-1 to 284-17, Petitioner previously submitted evidence of his lawful permanent resident status (ECF 56-2), family ties to his U.S. citizen wife and child (ECF 55, 56-4, 56-5, 203, 207), educational program (ECF 56-1), immigration court filings, including evidence refuting removal charges (ECF 198-1, 200, 210-1, 210-2, 210-3, 211-1, 212-1, 213-1, 213-2, and additional filings), and letters of support from friends, classmates, teachers, and colleagues (ECF 56-6, 93-1), all of which demonstrate his community ties and that he poses neither flight nor public safety risk.

[2] Now that this Court's preliminary injunction has taken effect, even if it were followed by withdrawal or dismissal of the enjoined foreign policy-based removal charge, 8 U.S.C. 1227(a)(4)(C), with Petitioner remaining detained on the immigration application related charge only, the theoretical possibility of release on immigration bond that Respondents and the Court

As in the cases of other similarly-situated petitioners granted bail, if Mr. Khalil were to remain detained pending adjudication of this habeas petition, while continuing to accrue these harms, he will lose the benefit of the habeas remedy. *See, e.g., Ozturk v. Trump*, No. 2:25-CV-374, __ F. Supp. 3d. __, 2025 WL 1420540, at *8 (D. Vt. May 16, 2025) (finding extraordinary circumstances meriting release on bail, including chilling effect); *Mahdawi v. Trump*, No. 25-CV-00389, __ F. Supp. 3d __, 2025 WL 1243135, at *13 (D. Vt. Apr. 30, 2025) (same); *cf. Khan Suri v. Trump*, No. 25-cv-480, 2025 WL 1392143, at *1 (E.D. Va. May 14, 2025) (granting release on bail).

---

point to, ECF 304 at 1; ECF 306 at 2, still would not obviate the need for the relief Petitioner seeks through his pending motions for release on bail or return. Indeed, even if Petitioner were granted immigration bond, Respondent DHS likely would invoke an automatic stay of release pending appeal to the BIA, under 8 C.F.R. § 1003.19(i)(2), keeping Petitioner detained in Louisiana as a result. While, like Petitioner's ongoing detention, invocation of this regulation is exceedingly rare, Respondents have done just that in several comparable cases also involving students recently. *See, e.g., Günaydın v. Trump*, No. 25-CV-1151 (JMB) (DLM), 2025 WL 1459154, at *10 (D. Minn. May 21, 2025) (holding that automatic stay regulation violated petitioner's due process rights); *Aditya v. Trump*, No. 25-CV-1976 (KMM) (JFD), 2025 WL 1420131, at *6, *13 (D. Minn. May 14, 2025) (noting that government provided no evidence that "invocation of an apparently rarely used stay provision to prevent [petitioner's] release by the IJ was not motivated by Mr. H's protected speech"); *Mohammed v. Trump*, No. 25-CV-1576 (JWB) (DTS), 2025 WL 1334847, at *6 (D. Minn. May 5, 2025) (holding that petitioner raised substantial claim as to automatic stay regulation violating due process). In another case, one that Respondents identified to the Court as also "being related to the Israel-Palestine conflict," ECF 256 at 10, a detained noncitizen protester, Leqaa Kordia, was granted immigration bond in the amount of $20,000, which she promptly posted on April 4, 2025. She nonetheless remains in immigration detention in Texas today because DHS unilaterally stayed her release pending BIA appeal of the Immigration Judge's bond ruling. Pet. for Habeas Corpus, ¶¶ 154-60, *Kordia v. Noem*, No. 25-CV-1072 (N.D. Tex. Apr. 30, 2025). Finally, there is no petition for review process available on bond and a BIA bond decision cannot be appealed to a federal court of appeals. *See, e.g., Mahdawi v. Trump*, 136 F.4th 443, 452 (2d Cir. 2025) ( "We are not persuaded that an IJ or the BIA will develop a sufficient factual record, or any record at all, with respect to the challenged detention, especially given that bond hearings are decided separately, appealed separately, and contain records separate from those made in the removal proceedings."), *citing* 8 U.S.C. § 1226(a); 8 C.F.R. §§ 236.1(d), 1003.19(d); U.S. Dep't Just., Exec. Off. for Immigr. Rev., Immigration Court Practice Manual, § 9.3(e), (f) (last visited June 16, 2025), *available at* https://www.justice.gov/eoir/reference-materials/ic/chapter-9/3 [https://perma.cc/9A6W-AG9U]. Absent meaningful habeas review, the executive branch would have final say on the detention of noncitizen students such as Mr. Khalil, notwithstanding any constitutional violations.

**2. Recent ICE decisions further support Mr. Khalil's release or, in the alternative, his return to New Jersey.**

On May 30, 2025, following the difficulties Mr. Khalil and his family faced when his wife and child attempted to visit him in the Central Louisiana ICE Processing Center in Jena, Louisiana, ECF 284-2 at ¶¶ 18-22; ECF 284-1 at ¶ 7, Mr. Khalil requested that ICE transfer him to a detention center in New Jersey pursuant to ICE Directive 11064.3 (Interests of Noncitizen Parents and Legal Guardians of Minor Children or Incapacitated Adults). The directive states that ICE "must place the Covered Individual as close as practicable to the noncitizen's minor child(ren)," ICE Directive 11064.3 § 5.3(2), and that "[i]f the … detention facility is not the closest location to the Covered Individual's minor child(ren) …, the FODs must consider transfers … to a facility within the AOR that is closer to the location of the minor child(ren)." *Id.* at § 5.3(3). The directive further provides that, "at facilities where there is no provision for contact visits by minors, FODs must arrange, upon request, for a contact visit by minor child(ren) within the first 30 days of detention;" and that, "[a]fter that time, upon request … ICE personnel must consider a request for transfer, when practicable, to a facility that would allow such visitation[.]" *Id.* at § 5.5(1). Unlike the Jena facility, the Elizabeth Detention Center in New Jersey permits contact visits. ECF 258-2. On June 2, 2025, the Acting Field Office Director of the New Orleans ICE Field Office, Brian S. Acuna, denied the transfer request, and then declined to reconsider his decision on June 4, 2025. Ex. A.

ICE is bound by the rules it promulgates, including its own directives. *See Accardi v. Shaughnessy*, 347 U.S. 260 (1954) (agency may not violate its own rules and processes simply because Attorney General singled out individual for deportation); *Leslie v. Attorney Gen. of U.S.*, 611 F.3d 171, 175-179 (3d Cir. 2010) (reaffirming that "rules promulgated by a federal agency that regulate the rights and interests of others are controlling upon the agency"); *Jane v. Rodriguez*, No. CV 20-5922-ES, 2020 WL 6867169, at *6 (D.N.J. Nov. 23, 2020) (agency is bound not only by formal regulations but also "materials such as agency guidance or policy documents" that create binding norms). In short, ICE must "follow [its] own procedures." *Morton v. Ruiz,* 415 U.S. 199, 235 (1974). The fact that ICE has not done so here only further bolsters Petitioner's motion for release. ECF 93. Respondents' consistent pattern of violating their own directives and policies with respect to Petitioner provides strong additional evidence of the retaliatory purpose and effect of his arrest and ongoing detention, demonstrating the substantial nature of Petitioner's claims for habeas relief, including his First Amendment and *Accardi* claims. *Id.* at 15-18. It also amounts to yet another extraordinary circumstance, among the many that have characterized Petitioner's ordeal from the start, providing further justification for release. *Id.* at 19-21. In addition, the thrust of the applicable ICE directive prioritizing proximity to minor children dovetails with the alternative relief Petitioner seeks in his pending motion to compel his return to New Jersey, ECF 96, which aims to facilitate this Court's exercise of its jurisdiction over the instant petition, including by promoting greater access by Mr. Khalil to his family, who resides near this District.

Petitioner respectfully requests that this Court order immediate release without a stay of its decision, as other courts have recently done, allowing Petitioner to be released during the pendency of any stay proceedings in the court of appeals. *See Ozturk v. Trump*, 2025 WL 1420540, at *9 n.4 (granting release and declining to issue stay pending appeal); *Mahdawi v. Trump*, 2025 WL 1243135, at **13-14 (same); *Suri v. Trump*, 2025 WL 1392143, at *1(same). In the alternative, the Court should grant Petitioner's pending motion to compel his return to New Jersey.

Respectfully submitted,

s/ *Naz Ahmad*

AMERICAN CIVIL LIBERTIES UNION OF NEW JERSEY FOUNDATION
Jeanne LoCicero
Farrin R. Anello
Molly K.C. Linhorst
Liza Weisberg
570 Broad Street, 11th Floor
Newark, New Jersey 07102
973-854-1715

NEW YORK CIVIL LIBERTIES UNION FOUNDATION
Amy Belsher*
Robert Hodgson*
Veronica Salama*
Molly Biklen*
125 Broad Street, 19th Floor
New York, N.Y. 10004
Tel: (212) 607-3300

AMERICAN CIVIL LIBERTIES UNION FOUNDATION
Omar Jadwat
Noor Zafar*
Sidra Mahfooz*
Michael K.T. Tan*
Brian Hauss*
Esha Bhandari*
Vera Eidelman*
Tyler Takemoto*
Brett Max Kaufman*
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2500

CLEAR PROJECT
MAIN STREET LEGAL SERVICES, INC.
Ramzi Kassem*
Naz Ahmad
Mudassar Toppa*
Shezza Abboushi Dallal*
CUNY School of Law
2 Court Square
Long Island City, NY 11101
Tel: (718) 340-4558

CENTER FOR CONSTITUTIONAL RIGHTS
Baher Azmy
Samah Sisay*
Diala Shamas*
666 Broadway, 7th Floor
New York, NY 10012
Tel: (212) 614-6464

WASHINGTON SQUARE LEGAL SERVICES, INC.
Alina Das*
Immigrant Rights Clinic
245 Sullivan Street, 5th Floor
New York, New York 10012
Tel: (212) 998-6430

DRATEL & LEWIS
Amy E. Greer
29 Broadway, Suite 1412
New York, NY 10006
Tel: (212) 732-8805
Fax: (212) 571-3792

VAN DER HOUT LLP
Marc Van Der Hout (CA Bar #80778)*
Johnny Sinodis (CA Bar #290402)*
Oona Cahill (CA Bar #354525)*
360 Post St., Suite 800
San Francisco, CA 94108
Tel: (415) 981-3000
Fax: (415) 981-3003

5

*Counsel for Petitioner*

\* *Appearing Pro hac vice*