

**U.S. Department of Justice**

Civil Division

---

June 17, 2025

**By ECF**
Honorable Michael E. Farbiarz
United States District Judge
U.S. Post Office & Courthouse
Federal Square
Newark, New Jersey 07101

    Re:   *Khalil v. Trump, et al.*, **Civ. Act. No. 25-1963 (MEF) (MAH)**
            **Government's Response to ECF Nos. 308, 309**

Dear Judge Farbiarz:

    Respondents (the "Government") submit this letter in response to the Court's Order, ECF No. 309, and to Petitioner Mahmoud Khalil's letter regarding his motions seeking release and transfer, ECF No. 308.

### I. The Court Should Deny Khalil's Motion for Release Because He Failed to Challenge an Independent Basis for his Detention.

    Khalil remains detained because he is currently charged as removable for fraudulently or willfully misrepresenting material facts on his adjustment of status application. *See* ECF No. 304. Khalil seeks to rehash the arguments in his motion that this Court already denied on Friday, June 13, 2025. But he provides no basis for this Court to reconsider its prior order. Khalil's second removability charge independently justifies his continued detention, and therefore, his motion seeking release should be denied.

    As a threshold matter, the Court should deny the motion to release because the Court has already determined that Khalil's detention remains lawful. *See* ECF No. 306. Khalil's instant request is this akin to a motion for reconsideration—without attempting to satisfy the demanding standard that governs such requests. Specifically, Khalil fails to direct the Court to any matter or controlling decisions that the Court may have overlooked, and that alone is sufficient to deny reconsideration. *See* L. Civ. R. 7.1(i); *see also Bowers v. Nat'l Collegiate Athletic Ass'n*, 130 F.Supp.2d 610, 612 (D.N.J. 2001) ("The word 'overlooked' is the operative term in the Rule."). Indeed, Khalil concedes that there is nothing new for this Court to consider. *See* ECF No. 308 at 1–3 (citing to filings that predate the Court's June 13 order).

    In any event, this Court should not order Khalil's outright release, because doing so would impede on the Government's discretionary decision to detain him on lawful independent grounds. Congress barred judicial intervention over those decisions. *See* 8 U.S.C. § 1226(e); *see also* ECF No. 99 at 22–25. This Court previously recognized that this limitation could affect its jurisdiction to grant release. *See* ECF No. 214 at 106 n.73. The Government renews those arguments here.

Substantively, Khalil does not make out his case for release. The Government can and does continue to detain him pursuant to his second removability charge and the well-established process Congress set up to govern the detention and release of aliens subject to removal proceedings is not constitutionally infirm, as Khalil now seems to claim. Congress authorized detention of aliens and gave the Executive significant discretion in that regard. *See* 8 U.S.C. § 1226(a) (providing that "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States"); *Borbot v. Warden Hudson Cnty. Corr. Fac.*, 906 F.3d 274, 275 (3d Cir. 2018). As the Third Circuit has recognized, detaining aliens pending removal proceedings is an important governmental interest. *See Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 328–29 (3d Cir. 2020) (recounting Supreme Court precedent that established the important governmental interest related to immigration detention). And this Court determined that Khalil failed to submit any factual evidence and did not make any meaningful arguments as to why that removability charge would not justify his continued detention. *See* ECF No. 306.

Khalil is also improperly attempting to circumvent the administrative process that is well established and is currently available to him as with any other person subject to removal and that he has not completed. Khalil is free to seek a custody determination before the immigration court and obtain release administratively. Specifically, he can request a custody determination before an officer of the Department of Homeland Security. 8 C.F.R. § 236.1(c)(8). The officer may "in [his] discretion, release an alien" provided that the alien demonstrates to the satisfaction of the officer that "the alien is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8). If ICE determines that detention during the pendency of removal proceedings is necessary, Khalil may request a custody redetermination hearing (colloquially called a "bond hearing") before an immigration judge ("IJ"). *See* 8 C.F.R. §§ 236.1(d), 1003.19, 1236.1(d). IJs have broad discretion in deciding whether to release an individual on bond. *Matter of Guerra*, 24 I. & N. Dec. 37, 39 (BIA 2006). IJs consider multiple discretionary factors, including any information that may be deemed relevant. *Id.* at 40. Khalil may seek further administrative review of a bond determination before the Board of Immigration Appeals at any time before a final order of removal. 8 C.F.R. §§ 1003.1(b)(7), 1003.19, 1003.38, 1236.1(d). These procedures are lawful and apply to every alien seeking release from custody during immigration proceedings. Upon information and belief, Khalil requested a custody determination before ICE on Friday evening, after this Court had already denied his request for release. That request was denied on Monday, June 16, 2025, after he filed his letter before this Court. Upon information and belief, Khalil has never sought to a custody redetermination before the IJ.

Khalil requests that this Court interject and preempt these processes and rule on these issues in the first instance. *See* ECF No. 308 at 2. But this Court should decline to grant relief when administrative avenues are available *See Jean-Claude W. v. Anderson*, No. 19-16282, 2021 WL 82250, at *2 (D.N.J. Jan. 11, 2021) (declining to reach due process challenge in habeas action because petitioner had not "exhausted all available administrative remedies") (citing *Yi v. Maugans*, 24 F.3d 500, 503–04 (3d Cir. 1994); *Okonkwo v. INS*, 69 F. App'x 57, 59–60 (3d Cir. 2003)); *Jelani B. v. Anderson*, No. 20-6459, 2020 WL 5560161, at *2 (D.N.J. Sept. 17, 2020) (similar).

### II.     The Court Should Deny Khalil's Transfer Motion.

The Government renews its arguments why the Court should deny Khalil's request for a transfer. *See* ECF No. 97. At the outset, multiple jurisdictional bars foreclose Khalil's transfer requests.

*See* ECF No. 97 at 8–11. The Government acknowledges that the Court rejected arguments related to 8 U.S.C. §§ 1252(g) and (b)(9). *See* ECF No. 214. Further, Section 1226(e) precludes this Court from managing the detention of Khalil. *See supra.* But a separate jurisdictional bar further forecloses Khalil's request to be transferred to New Jersey. *See* 8 U.S.C. § 1252(a)(2)(B)(ii). As the Government previously explained, the Department of Homeland Security "'necessarily has the authority to determine the location of detention of an alien in deportation proceedings . . . and therefore, to transfer aliens from one detention center to another.'" *Calla-Collado v. Attorney Gen. of U.S.*, 663 F.3d 680, 685 (3d Cir. 2011) (quoting *Gandarillas–Zambrana v. Bd. of Immigration Appeals*, 44 F.3d 1251, 1256 (4th Cir. 1995)). Congress granted this discretionary authority to the Executive. *See CoreCivic, Inc. v. Murphy*, 690 F. Supp. 3d 467, 472 (D.N.J. 2023) (citing 8 U.S.C. § 1231(g)). And courts within this circuit have concluded that Congress thereby foreclosed judicial review of such decisions. *See, e.g.*, *Jane v. Rodriguez*, Civ. Act. No. 20-5922, 2020 WL 10140953, at *1-2 (D.N.J. May 22, 2020) (declining to "impose its own judgment as to when and how DHS should exercise its statutorily protected discretion to choose the place of detention of detainees"); *Fattah v. Sabol*, Civ. Act. No. 08-1325, 2008 WL 2914856, at *1 (M.D. Pa. July 24, 2008) (noting that when § 1231(g)(1) is read in conjunction with § 1252(a)(2)(B)(ii), "there is a question as to whether this Court has jurisdiction to review" a discretionary decision made under § 1231). These courts do not sit alone. *See, e.g.*, *Salazar v. Dubois*, No. 17-cv-2186, 2017 WL4045304, at *1 (S.D.N.Y. Sept. 11, 2017) (concluding that the district court "does not have authority to issue an order to change or keep [an alien] at any particular location"); *Zheng v. Decker*, No. 14-cv-4663, 2014 WL 7190993, at *15-16 (S.D.N.Y. Dec. 12, 2014) (denying petitioner's request that the Court order ICE not to transfer him to another jurisdiction, holding that § 1231(g) transfer authority "is among the [Secretary of Homeland Security's] discretionary powers"); *Jacquet v. Hodgson*, No. CIV.A. 03-11568, 2003 WL 22290360, at *1 (D. Mass. Oct. 6, 2003) (holding that a court is "without power to prevent transfer of a plaintiff" because the"[Secretary of Homeland Security] shall arrange for appropriate places of detention" under § 1231(g), and "no court shall have jurisdiction" under § 1252(g) "to hear any cause or claim" arising from the discretion granted to the Secretary); *Avramenkov v. INS*, 99 F. Supp. 2d 210, 213 (D. Conn. 2000) (refusing to grant petitioner's request for an injunction to prevent transfer because "Congress has squarely placed the responsibility of determining where aliens are to be detained within the sound discretion of the Attorney General").

If the Court does not agree with these jurisdictional bars, then Khalil's claim also fails on the merits. Khalil's letter remains unclear as to whether he alleges violations of the Performance-Based National Detention Standards ("PBNDS"). *Compare* ECF No. 308 (not mentioning PBNDS), *with* ECF No. 308-1 at 8 (relying on the PBNDS). To the extent that he does, his *Accardi* challenge fails for the same reason that his challenge to ICE Directive 11064.3 fails: they are policies or guidelines, not regulations. *See Wright v. F.B.I.*, No. CIV.A. 02-915, 2006 WL 2587630, at *10 (D.D.C. July 31, 2006), *on reconsideration*, 598 F. Supp. 2d 76 (D.D.C. 2009) ("To be given the force and effect of law, a regulation must prescribe 'substantive' or 'legislative' rules rather than merely 'interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice.'") (quoting *Chrysler Corp. v. Brown*, 441 U.S. 281, 301 (1979)).

Even if the Court looks to the merits of the directive and the PBNDS, Khalil misreads both. First, he misconstrues the directive and makes no attempt to argue that it should apply to him. ICE Directive 11064.3 defines "Covered Individual" as individuals who are: (1) primary caretakers or have custody of a minor child in the United States; and/or (2) those who have direct interest in family, probate, guardianship, or child welfare proceedings involving a minor child. *See* ICE Directive 11064.3, Interests of Noncitizen Parents and Legal Guardians of Minor Children or Incapacitated Adults, § 3.1,

https://www.ice.gov/doclib/news/releases/2022/11064.3.pdf (last visited June 16, 2025). Notwithstanding ICE's explanation that he is not a "covered individual," Khalil makes no attempt to contest that assertion here. *See* ECF No. 308-1.

Moreover, when discussing initial detention placement, the directive does not prevent ICE from detaining Khalil in Louisiana. ICE Directive 11064.3 § 5.3(3) (requiring ICE to "*consider* transfers outside the [Area of Responsibility ("AOR")] of initial apprehension or to a facility within the AOR that is closer to the location of the minor child[.]"). The directive confirms that ICE retains discretion to detain Khalil where it so chooses. Additionally, factual considerations counsel against transferring Khalil to Elizabeth. Simply, the facility is over capacity. Declaration of Arthur J. Wilson, Jr. ("Wilson Decl."), ¶ 3. The facility has a bedspace capacity of 304, but the current occupancy is 355. *See id.* ¶ 4. Although the facility is currently meeting applicable detention standards, ordering a transfer would undoubtedly affect the facility's continued efforts to fall back within operational norms. *See id.* ¶¶ 3, 4.

Finally, Khalil states that the Elizabeth Detention Center allows for contact visits. *See* ECF No. 308 at 4. That is incorrect. *See* Elizabeth Contract Detention Facility, https://www.ice.gov/detain/detention-facilities/elizabeth-contract-detention-facility (last visited June 16, 2025) ("All family or other social visits are Non-contact."). The PBNDS affords facilities discretion when trying to accommodate contact visitation. *See* U.S. Immigration and Customs Enforcement, Performance-Based National Detention Standards 2011 § 5.7.V.B. (2011, rev. 2016) ("Each facility administrator shall decide *whether* to permit contact visits, as appropriate for the facility's physical plant and detainee population.") (emphasis added). The administrator may make exceptions but only on a case-by-case basis. *Id.* The PBNDS therefore permits the facility administrator to accommodate requests, but nothing requires an exercise of that discretion. *See* U.S. Immigration and Customs Enforcement, Performance-Based National Detention Standards 2011 § 5.7.V.I.2(b) (2011, rev. 2016) ("Facilities that allow visitations by minor children … *should try* to facilitate contact visitation when possible.") (emphasis added). Therefore, transferring Khalil to Elizabeth would not alter the status quo when it comes to contact visits.

For the reasons previously argued and the aforementioned reasons, the Court should deny both motions.

\*   \*   \*

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

YAAKOV M. ROTH
Principal Deputy Assistant Attorney General

DREW C. ENSIGN
Deputy Assistant Attorney General

ALANNA T. DUONG
Senior Litigation Counsel

*s/ Dhruman Y. Sampat*
DHRUMAN Y. SAMPAT
Senior Litigation Counsel
Office of Immigration Litigation
General Litigation and Appeals Section
PO Box 878, Ben Franklin Station
Washington, D.C. 20044
dhruman.y.sampat@usdoj.gov

5