

**VIA EMAIL**
June 13, 2025

Brian Acuna
Acting Field Office Director
Immigration and Customers Enforcement
Enforcement and Removal Operations
1250 Poydras, Suite 325
New Orleans, LA 70113

Re:  **Request for Release**

   **Mahmoud KHALIL,** ▮▮▮▮▮▮ , ▮▮▮▮▮▮

Dear Acting Field Office Director Acuna,

On behalf of our client, **Mr. Mahmoud KHALIL,** ▮▮▮▮▮▮ enclosed please find a request for immediate release from custody on his own recognizance or on a minimal bond so that Mr. Khalil can be reunited with his U.S. citizen wife, Dr. Noor Abdalla, and one-month old U.S. citizen son, Deen Khalil. 8 C.F.R. § 236.1(c)(8). We also request that ICE confirm it has formally withdrawn or will withdraw its unconstitutional INA § 237(a)(4)(C) foreign policy charge stemming from the Rubio Memorandum.

On June 11, 2025, Judge Farbiarz of the federal district court for the District of New Jersey issued a preliminary injunction enjoining ICE from "seeking to remove [Mr. Khalil] from the United States based on the Secretary of State's determination, as reflected in the Secretary's memorandum to the Secretary of Homeland Security." *Khalil v. Joyce*, 2:25-cv-01963-MEF-MAH, Dkt. 299 (D.N.J. June 11, 2025) ("Order") at 12, attached here. Based on finding the Rubio determination likely unconstitutional, Judge Farbiarz further preliminarily enjoined ICE "from detaining [Mr. Khalil] based on the Secretary of State's determination." *Id.* at 13. The District Court also found "as a matter of fact that it is overwhelmingly likely that [Mr. Khalil] would not be detained based solely on the lawful-permanent-resident application charge." *Id.* at 10.

The District Court's order went into effect at 8:30 a.m. Central Time today. Subsequently, Respondents submitted a letter to the District Court stating that Mr. Khalil is "now detained based on" the charge of removability under INA § 237(a)(1)(A). *Khalil v. Joyce*, 2:25-cv-01963-MEF-MAH, Dkt. 304 (D.N.J. June 13, 2025). Respondents further stated "Khalil may seek release through the appropriate administrative processes, first before an officer of the Department of Homeland Security, 8 C.F.R. § 236.1(c)(8)[.]" This request follows.

## Mr. Khalil is Not a Danger or a Flight Risk

Mr. Khalil should be immediately released from ICE custody because he is neither a danger nor a flight risk. 8 C.F.R. § 236.1(c)(8). Significantly, DHS has never asserted in either immigration court or in Mr. Khalil's habeas proceedings that he is either a danger or a flight risk.

The BIA has held that an individual should not be detained unless they are a danger or a flight risk. *Matter of Guerra*, 24 I&N Dec. 37 (BIA 2006). The Board stated in *Guerra* that relevant factors to be considered include: (1) whether the noncitizen has a fixed address in the United States; (2) the noncitizen's length of residence in the United States; (3) the noncitizen's family ties in the United States, and whether they may entitle the noncitizen to reside permanently in the United States in the future; (4) the noncitizen's employment history; (5) the noncitizen's record of appearance in court; (6) the noncitizen's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the noncitizen's history of immigration violations; (8) any attempts by the noncitizen to flee prosecution or otherwise escape from authorities; and (9) the noncitizen's manner of entry to the United States.

Mr. Khalil lawfully entered the United States in December 2022 on a student visa to pursue a Master's Degree from Columbia University. On November 16, 2023, Mr. Khalil married his U.S. citizen wife, Dr. Noor Abdalla. *See* Tab G, Marriage Certificate. On November 16, 2024, Mr. Khalil became an LPR of the United States. *See* Tab D, Mr. Khalil's Lawful Permanent Resident Card. On April 21, 2025, Dr. Abdalla gave birth to the couple's first child, Deen Khalil. *See* Tab I, Birth Certificate. The extended separation of Mr. Khalil from his wife and child during the first weeks and months of Deen's life has caused immense psychological and emotional strain for both Mr. Khalil and Dr. Abdalla. *See* Tab V, Declaration of Mahmoud Khalil; Tab W, Declaration of Noor Abdalla.

Mr. Khalil's community of friends, colleagues and supporters all confirm that he is widely beloved and poses no danger to anyone. Mr. Khalil's former colleague ██████████ notes that Mr. Khalil "was security cleared to work at the British Embassy in Beirut, one of the most politically sensitive posts in the diplomatic network," where he "was a trusted member of the team, showing discretion and personal integrity in all that he did." *See* Tab X.4, Letter of Support from ██████████. Friends from Columbia describe him as an advocate for safety for all in his community, describing him as "a kind and devoted husband and friend," "deeply committed to fostering mutual understanding," and "someone who always puts himself between those around him and danger." *See* Tab X, Letters of Support.

Furthermore, in addition to his strong community ties, Mr. Khalil has demonstrated that he poses no risk of flight and is willing to comply with ICE's directives. On March 8, 2025, when he was detained in his apartment building, uncontroverted evidence, including video footage of the arrest, demonstrates that Mr. Khalil complied with the ICE officers arresting him, despite the fact they had no arrest warrant. *See* Tab M, Declaration of Mahmoud Khalil; Tab O, Declaration of Amy Greer; Tab N, Declaration of Noor Abdalla; Tab P, Declaration of Oona Cahill.

**No Lawful Basis Exists to Detain Mr. Khalil**

In his preliminary injunction order, Judge Farbiarz found that "the evidence is that lawful permanent residents are virtually never detained pending removal for the sort of alleged omissions in a lawful-permanent-resident application that the Petitioner is charged with here." Order at 8. Judge Farbiarz based this determination on declarations from experienced immigration practitioners and former ICE officials. Kerry Doyle, Principal Legal Advisor (PLA), for Immigration Customs Enforcement (ICE) from September 2021 through September 2024 states that ""[l]awful permanent residents . . . are . . . certainly not detained, based solely on the types of allegedly missing information described [here][.]" *See* Tab U, Declaration of Kerry Doyle. Second, per experienced immigration practitioner Stacy Tolchin: "it is incredibly rare to see a lawful permanent resident detained . . . for[, as in this case,] having failed to disclose a past membership or association on the application for adjustment of status." *See* Tab T, Declaration of Stacy Tolchin. Leading immigration law scholar Ira Kurzban confirms that "[I]t is extremely unusual for a lawful permanent resident charged . . . [for] making material misrepresentations to be detained pending removal proceedings absent aggravating circumstances such as a criminal record." *See* Tab S, Declaration of Ira Kurzban.

DHS, through counsel, and due to Judge Farbiarz's ruling that the Rubio determination is unconstitutional, has stated in its filing in District Court today that it is now detaining Mr. Khalil based solely on the charge of removability under INA § 237(a)(1)(A), which is based on allegations that Mr. Khalil withheld certain information on his I-485 application. Mr. Khalil has submitted extensive evidence rebutting those allegations, which DHS failed to contest at all in its closing written statement to the Immigration Court on June 2, 2025. *See also* Tab R, Declaration of Johnny Sinodis. In fact, DHS did not contest at all the testimony of Mr. Khalil in immigration court that there was no misrepresentation at all in his application for permanent residency and the Immigration Judge has already found DHS did not meet its burden to sustain one of the allegations at Mr. Khalil's Individual Calendar Hearing on May 22, 2025. That DHS made no effort to sustain its burden on the charge regarding Mr. Khalil's green card application is yet another reason why release is appropriate here.

Immigration detention can never be punitive, either by design or effect. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *see also Fong Yue Ting v. United States*, 149 U.S. 698, 730 (1893). To continue detaining Mr. Khalil, a lawful permanent resident based solely on the INA § 237(a)(1)(A) charge would be highly unusual and retaliatory. It would also be a violation of his constitutional rights, given that he is neither a danger nor a flight risk.

If Mr. Khalil is released, he plans to return to New York to reunite with his U.S. citizen wife and son. Mr. Khalil will comply with all orders and requirements from ICE, including attending any and all check-ins and court appearances.

For all the aforementioned reasons, Mr. Khalil should now promptly be released, as he is neither a danger nor a flight risk. He is a lawful permanent resident who legally entered the United States, has no criminal history in the United States or anywhere in the world, is married to a U.S. citizen, and is the father of a one-month old U.S. citizen. He has extensive support from his family and wider community, who confirm he is neither a danger nor a flight risk. *See* Tab X, Letters of

Support. We therefore ask the Department to now release Mr. Khalil so that he can be reunited with his wife and infant son, who are suffering each day he remains separated from them.

### **DHS Must Withdraw Reliance on the Secretary of State's Determination**

Separately, as noted above, the June 11 order by the U.S. District Court for the District of New Jersey enjoins ICE (and all other Respondents in Mr. Khalil's ongoing federal habeas corpus case) from "seeking to remove [Mr. Khalil] from the United States based on the Secretary of State's determination, as reflected in the Secretary's memorandum to the Secretary of Homeland Security." *Khalil v. Joyce*, 2:25-cv-01963-MEF-MAH, Dkt. 299 (D.N.J. June 11, 2025) ("Order") at 12, attached here. That preliminary injunction went into effect at 8:30 a.m. Central Time on June 13 and remains in full effect.

Accordingly, ICE must now promptly inform the Immigration Judge that it withdraws all reliance on the INA § 237(a)(4)(C) foreign policy charge stemming from the Rubio Memorandum that the federal district court found unconstitutional. We ask that ICE confirm that it has already taken or will immediately take this step.

Thank you for your prompt attention to this matter. We would request a response by close of business this coming Monday, June 16, 2025.

Sincerely,

/s/ _____
Marc Van Der Hout
Johnny Sinodis
Oona Cahill