Marc Van Der Hout
Johnny Sinodis
Oona Cahill
Van Der Hout LLP
360 Post Street, Suite 800
San Francisco, California 94108
Telephone: (415) 981-3000
Facsimile: (415) 981-3003

Attorneys for Respondent
Mahmoud KHALIL

**DETAINED**

UNITED STATES DEPARTMENT OF JUSTICE

EXECUTIVE OFFICE FOR IMMIGRATION REVIEW

OFFICE OF THE IMMIGRATION JUDGE

JENA, LOUISIANA

| | |
|---|---|
| In the Matter of: | ▮▮▮▮▮▮ |
| Mahmoud KHALIL, | Hearing Date: N/A |
| Respondent, | Hearing Time: N/A |
| In Custody Proceedings. | Before: Hon. Judge Jamee E. Comans |

**MR. KHALIL'S MOTION TO SCHEDULE WEBEX CUSTODY REDETERMINATION HEARING ON MONDAY, JUNE 23 OR AS SOON THEREAFTER AS THE COURT CAN HEAR THE MATTER**

Respondent, **Mr. Mahmoud KHALIL,** ▮▮▮▮▮▮ by and through undersigned Counsel, hereby submits this Motion to Schedule a Custody Redetermination Hearing pursuant to Immigration and Nationality Act (INA) § 236(a)(2).

The Court has jurisdiction to conduct a custody redetermination hearing under INA § 236(a)(2) and 8 C.F.R. § 1003.19. Due to the District Court's enjoining of the Rubio Determination, *see* attached Exhibit A, which formed the basis for Respondent's previously filed Motion to Reconsider Removability under INA § 237(a)(4)(C), *see* attached Exhibit B, the Court is not barred by any asserted regulatory basis from granting bond now in this matter. The Court should, thus, grant bond in a reasonable amount given that Mr. Khalil is neither a flight risk nor a danger to the community. Concurrent with this motion, Mr. Khalil submits **_preliminary_** evidence in support of his motion for custody redetermination, evidencing he is neither a flight risk nor a danger. *See* Preliminary Evidence in Support of Mr. Khalil's Motion for Custody Redetermination, submitted June 17, 2025. Additional evidence, along with a witness list and a supporting bond memorandum, will be filed with the Court prior to the custody redetermination hearing.

Undersigned counsel, respectfully request that the custody redetermination hearing be scheduled for Monday, June 23, 2025 at 1:00 p.m. If that day is not available for the Court, undersigned counsel respectfully request that the hearing be scheduled as soon as possible thereafter.

Undersigned counsel, who are appearing pro bono in this matter, also respectfully request that the Court permit counsel to appear via Webex for this hearing, as the Court has permitted for prior hearings in this matter. Traveling to Jena, Louisiana on such a short timeline would pose an undue administrative and financial burden for counsel.

For the aforementioned reasons, Mr. Khalil, through Counsel, asks the Court to grant this

Motion and to schedule a custody redetermination hearing for June 23, 2025, as requested, and permit counsel to appear via Webex.

Dated: June 17, 2025                              Respectfully submitted,

Marc Van Der Hout
Johnny Sinodis
Oona Cahill
Van Der Hout LLP

Attorneys for Mr. Khalil

# EXHIBIT A

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

MAHMOUD KHALIL,

        *Petitioner*,

   v.

DONALD TRUMP et al.,

        *Respondents*.

No. 25-cv-01963 (MEF)(MAH)

<u>OPINION and ORDER</u>

## Table of Contents

I.   <u>Background</u>

    A.   <u>The Facts</u>

    B.   <u>Procedural History</u>

    C.   <u>The Court's Approach</u>

II.  <u>Preliminary Injunction Requirements</u>

    A.   <u>Success</u>

    B.   <u>Harm</u>

    C.   <u>Equities</u>

    D.   <u>Public Interest</u>

III. <u>The Preliminary Injunction</u>

\*   \*   \*

Federal officials detained a lawful permanent resident and seek to remove him from the United States for two reasons.

One reason is that the Secretary of State has determined that his activities and presence in the United States "compromise a compelling . . . foreign policy interest."

The lawful permanent resident filed a habeas corpus petition and has moved to preliminarily enjoin federal officials from

removing him from the United States based on the Secretary's determination.

The motion is granted.

*       *       *

## I.   **Background**

### A.   **The Facts**

The relevant facts for now are as follows.

A lawful permanent resident[1] was arrested by federal officials. See Declaration of Amy E. Greer (ECF 11-1) ¶¶ 4-6.

He remains in immigration custody. See Petitioner's Amended Memorandum of Law in Support of Motion for Preliminary Injunctive Relief (ECF 124) ("Motion for Preliminary Injunction") at 1–2.

The Department of Homeland Security is seeking to remove him from the United States on two grounds.

The first ground:

In 2024, the lawful permanent resident inaccurately completed his lawful-permanent-resident application. See DHS Evidence, Tab 2 (Apr. 9, 2025) (Form I-485); see also Additional Charges of Inadmissibility (Mar. 17, 2025) (ECF 90-1) ("Additional Charges") at 1.

This can be a basis for removal. See Additional Charges at 1; see also 8 U.S.C. §§ 1182(a)(6)(C)(i), 1227(a)(1)(A).

The second ground for removal:

The Secretary of State determined that the lawful permanent resident's continued activities or presence in the United States would "compromise a compelling . . . foreign policy interest." Memorandum from Marco Rubio, Secretary of State, to Kristi Noem, Secretary of Homeland Security (ECF 198-1) ("Determination"), at 1.

Such a determination can also be a basis for removal. See 8 U.S.C. § 1227(a)(4)(C).

---

[1]  Mahmoud Khalil.

2

## B.   **Procedural History**

The lawful permanent resident filed a habeas corpus petition in federal court.  See ECF 2.

From here, he is called "the Petitioner."  The various people he named in the petition are called "the Respondents."[2]

The Petitioner moved to preliminary enjoin his removal from the United States.  See ECF 66.[3]

The preliminary injunction motion became fully submitted on May 14, with the filing of the parties' last legal brief.  See ECF 256.

On May 28, the Court ruled on the motion.

As to the first ground of removal, related to the Petitioner's alleged failure to accurately complete the lawful-permanent-resident application, the Court denied the motion.

The Court held that the Petitioner had put forward no evidence, see Khalil v. Trump, 2025 WL 1514713, at *54 (D.N.J. May 28, 2025), and also had not meaningfully developed legal arguments. See id. at *52-53.

As to the second ground of removal, related to the Secretary of State's determination, the Court held the Petitioner was likely to succeed on the merits of his claim, see id. at *52, but had not sufficiently addressed the other things a preliminary injunction applicant must show.  See id. at *55.

---

[2]  The Respondents are listed in the current habeas petition as: President of the United States Donald Trump; Acting Field Office Director of New York, United States Immigration and Customs Enforcement, William P. Joyce; Warden of Elizabeth Contract Detention Facility Yolanda Pittman; Acting Director of United States Immigration and Customs Enforcement Caleb Vitello; Secretary of the United States Department of Homeland Security Kristi Noem; Secretary of the United States Department of State Marco Rubio; and Attorney General of the United States Pamela Bondi.

[3]  For a fuller description of the relevant procedural history, see Khalil v. Trump, 2025 WL 1514713, at *2-3 (D.N.J. May 28, 2025).

As to these matters, the Court indicated it would allow the record to be supplemented.  See id.; see also ECF 273.

The Petitioner said that he would need just under a week to do so.  See Petitioner's Letter (May 29, 2025) (ECF 274).  The Court set a briefing schedule accordingly, see ECF 275, and the final brief was filed yesterday.  See ECF 295.

### C.  The Court's Approach

To obtain a preliminary injunction, the Petitioner must show four things.  See Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).

He must establish that "he is [1] likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."  Id.  Of these, the "most critical" elements are the first and second.  See Nken v. Holder, 556 U.S. 418, 434 (2009).

The Court considers each of these four below, see Part II, and concludes that a preliminary injunction should issue as to the Secretary of State's determination.  The preliminary injunction's terms are set out in Part III.

## II.  Preliminary Injunction Requirements

### A.  Success

To obtain a preliminary injunction as to the Secretary's determination, the Petitioner must first show that he is likely to succeed on the merits of his claim.  See Winter, 555 U.S. at 20.

He has made this showing.  See Khalil, 2025 WL 1514713, at *56.

### B.  Harm

Next, the Petitioner must demonstrate that he is likely to suffer irreparable harm without preliminary relief.  See Winter, 555 U.S. at 20.

The Court concludes that he has done so.

*     *     *

4

<u>First</u>, the Petitioner states that the Secretary's determination has cost him a job, <u>see</u> Declaration of Mahmoud Khalil ("Khalil Declaration") (June 4, 2024) (ECF 281-1) ¶¶ 15-16, and damaged his career prospects through "career-ending" professional harm. <u>See id</u>. ¶¶ 15-17 (describing a hoped-for career in "diplomacy and international affairs," steps taken down that road, and the difficulty of sustaining such a career in light of the Secretary's determination).  The Respondents do not contest this.  <u>See</u> Respondents' Letter (June 9, 2025).  And as a legal matter, serious long-term damage to career prospects can count as irreparable harm.[4]  <u>See</u> <u>Kamdem-Ouaffo</u> v. <u>Task Mgmt. Inc.</u>, 792 F. App'x 218, 222 (3d Cir. 2019) (citing <u>Morton</u> v. <u>Beyer</u>, 822 F.2d 364, 372 n.13 (3d Cir. 1987)); <u>Acierno</u> v. <u>New Castle Cnty.</u>, 40 F.3d 645, 654 (3d Cir. 1994); <u>see also</u> <u>Carson</u> v. <u>Am. Brands, Inc.</u>, 450 U.S. 79, 89 & n.16 (1981); <u>Valley</u> v. <u>Rapides Parish Sch. Bd.</u>, 118 F.3d 1047, 1055-56 (5th Cir. 1997); <u>NAACP, Inc.</u> v. <u>Town of E. Haven</u>, 70 F.3d 219, 224 (2d Cir. 1995).

*     *     *

<u>Second</u>, the Petitioner states that the Secretary's determination harms his reputation.  <u>See</u> Khalil Declaration ¶¶ 3, 8-10, 16, 22.  Again, the Respondents have opted not to contest this.  <u>See</u> Respondents' Letter (June 9, 2025).  And when it cannot be compensated through money damages, as cannot readily be done here, reputational injury can count as irreparable harm.  <u>See</u>, <u>e.g.</u>, <u>Guardian Life Ins. Co. of Am.</u> v. <u>Est. of Cerniglia</u>, 446 F. App'x 453, 456 (3d Cir. 2011); <u>Kos Pharms., Inc.</u> v. <u>Andrx Corp.</u>, 369 F.3d 700, 726 (3d Cir. 2004); <u>Pappan Enters., Inc.</u> v. <u>Hardee's Food Sys., Inc.</u>, 143 F.3d 800, 805 (3d Cir. 1998); <u>accord</u>, <u>e.g.</u>, <u>Life Spine, Inc.</u> v. <u>Aegis Spine, Inc.</u>, 8 F.4th 531, 546 (7th Cir. 2021); <u>Register.com., Inc.</u> v. <u>Verio, Inc.</u>, 356 F.3d 393, 404 (2d Cir. 2004); <u>Rent-a-Center, Inc.</u> v. <u>Canyon Television & Appliance Rental, Inc.</u>, 944 F.2d 597, 603 (9th Cir. 1991); <u>see also</u> 11A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2948.1 (4th ed. 2025) ("Injury to reputation . . . is not easily measurable in monetary terms, and so often is viewed as irreparable."); <u>Bennington Foods LLC</u> v.

---

[4]  Loss of employment, standing on its own, generally would not. <u>See</u> <u>Morton</u>, 822 F.2d at 372; <u>Moteles</u> v. <u>Univ. of Pa.</u>, 730 F.2d 913, 919 (3d Cir. 1984); 1 Moore's Manual --- Federal Practice and Procedure § 10A.22(2)(c) (2025).

St. Croix Renaissance, Grp., LLP, 528 F.3d 176, 178–79 (3d Cir. 2008).

* * *

**Third**, the Petitioner states that the Secretary's determination deters him from engaging in speech-related activities. In particular, the Petitioner states that he engaged in protest activities, see Khalil Declaration ¶ 12, and that "[a]s I remain detained because of the [Secretary of State's] [d]etermination, . . . I am unable to protest." Id. ¶ 13.[5]

Again, the Respondents have not contested this factually. See Respondents' Letter (June 9, 2025).[6]

And per the Supreme Court, "chilling" of speech counts as irreparable harm. See Elrod v. Burns, 427 U.S. 347, 373 (1976) (plurality opinion); see also, e.g., Hartman v. Moore, 547 U.S. 250, 256 (2006); Riley v. Nat'l Fed'n of the Blind of N.C., Inc., 487 U.S. 781, 794 (1988); Wooley v. Maynard, 430 U.S. 705, 714 (1977).[7]

---

[5] The Petitioner's speech-related activities concern political speech. See Petition ¶¶ 22–23, 26, 29; Khalil Declaration ¶¶ 12–14; Declaration of Noor Ramez Abdalla (Mar. 14, 2025) (ECF 55) ¶¶ 6–8; see also Khalil, 2025 WL 1232369, at *45–46. And political speech is entitled to special protection under the First Amendment. See id. at *45.

[6] There is ample record evidence that the Petitioner engaged in speech-related activities. See Third Amended Petition (ECF 236) ("Petition") ¶¶ 22–29; Khalil Declaration ¶¶ 12–14; Declaration of Noor Ramez Abdalla (Mar. 14, 2025) (ECF 55) ¶¶ 6–8. And also that he would return to these activities if detention did not prevent him from doing so. See Khalil Declaration ¶¶ 13–14, 23; Petition ¶ 72; see also Khalil Declaration ¶¶ 9–12; Declaration of Veronica Salama, Exhibit B ("Abdalla June 4 Declaration") ¶ 26; Petition ¶ 22; cf. Falcone v. Dickstein, 92 F.4th 193, 210 (3d Cir. 2024). (The Petition has been verified. See Khalil Declaration ¶ 1. Therefore, the Court treats it as evidence. See, e.g., K-2 Ski Co. v. Head Ski Co., 467 F.2d 1087, 1088 (9th Cir. 1972); see also Bascom Food Prods. Corp. v. Reese Finer Foods, Inc., 715 F. Supp. 616, 624 n.14 (D.N.J. 1989).)

[7] Three things. First, the underlying likely legal violation here relates to unconstitutional vagueness. See Khalil, 2025 WL

To be sure, it might be argued that the Petitioner would be
detained anyway.  After all, as noted above, the Department of
Homeland Security is seeking to remove the Petitioner based not
only on the Secretary of State's determination --- but also on a
second basis, the Petitioner's alleged failure to accurately

---

1514713, at *52.  But a chilling effect on speech can count as
an irreparable harm even where the underlying legal violation is
not itself a First Amendment violation.  See, e.g., Reporters
Comm. for Freedom of the Press v. Rokita, 751 F. Supp. 3d 931,
943-44, 947 (S.D. Ind. 2024) (so holding); Ctr. for Individual
Freedom, Inc. v. Ireland, 2008 WL 1837324, at *5 (S.D. W. Va.
Apr. 22, 2008) (same); Alexander v. Thornburgh, 713 F. Supp.
1278, 1287-88 (D. Minn. 1989) (same); cf. Walls v. Sanders, 733
F. Supp. 3d 721, 741 (E.D. Ark. 2024) (holding that a vague
statute that assertedly chills teachers' classroom speech does
not count as irreparable injury because "when . . . teachers
speak in the course of carrying out . . . required employment
obligations, they have no personal interest in the content of
that speech") (cleaned up).  To be sure, causation principles
require a tight nexus between the underlying legal violation and
the chilling impact on speech.  Cf. Goldie's Bookstore v. Super.
Ct. of Cal., 739 F.2d 466, 472 (9th Cir. 1984).  Here, the Court
finds, there is plainly that sort of close link.  Second, the
Petitioner seems to suggest that his detention may itself count
as irreparable harm.  See Petitioner's Letter (June 4, 2025)
(ECF 280) at 1 & n.1.  But there are cases that tug in different
directions on this.  Compare, e.g., Arevalo v. Hennessy, 882
F.3d 763, 767 (9th Cir. 2018), and United States v. Bogle, 855
F.2d 707, 710-11 (11th Cir. 1988), with Watkins v. Muhammad,
2024 WL 4524525, at *3 (7th Cir. Oct. 18, 2024) ("[T]he ordinary
hardships [such as pretrial detention] experienced by criminal
defendants do not rise to the level of irreparable harm."); see
also Respondents' Letter (June 9, 2025) (ECF 288) at 2
(discussing this point in the immigration context).  The
Petitioner's legal briefs do not meaningfully discuss this or
cite cases in support of his position.  Third, as part of his
irreparable-harm filing, the Petitioner put forward evidence to
suggest the Secretary's determination has chilled the speech of
third parties.  But the Petitioner makes no legal argument as to
how that can count as irreparable harm here.  See, e.g., Kansas
v. United States, 124 F.4th 529, 534 (8th Cir. 2024) ("The
irreparable-harm analysis focuses on the moving party, not . . .
[a] third party.") (cleaned up).

complete his lawful-permanent-resident application.  <u>See</u> Additional Charges at 1.

Maybe the Petitioner would be detained, in any event, on that second basis.  And if so, it might be argued, there would not be any incremental chilling effect from detaining the Petitioner for an <u>additional</u> reason, the Secretary of State's determination.

But that argument does not work.

The reason: the evidence is that lawful permanent residents are virtually never detained pending removal for the sort of alleged omissions in a lawful-permanent-resident application that the Petitioner is charged with here.  And that strongly suggests that it is the Secretary of State's determination that drives the Petitioner's ongoing detention --- not the other charge against him.

On this point, there are three relevant pieces of evidence. (Again, none of this is contested by the Respondents.  <u>See</u> Respondents' Letter (June 9, 2025).)

First, Kerry Doyle[8] states in a declaration that "[l]awful permanent residents . . . are . . . certainly not detained,

---

[8] Doyle's relevant experience:

> I served as Principal Legal Advisor (PLA), for Immigration Customs Enforcement (ICE) from September 2021 through September 2024. In that role, I oversaw the more than 1,500 attorneys and staff who work for the Office of the Principal Legal Advisor (OPLA) across the country.  As PLA, I was responsible for establishing the direction and priorities of our office in alignment with the Office of General Counsel (OGC), ICE, and DHS leadership.  During that time, I also served on detail as Acting Deputy General Counsel, Office of General Counsel (OGC), Department of Homeland Security (DHS) from February 2024 through May 2024 and as Deputy General Counsel from October 2024 through December 2024.  I was appointed as an Immigration

based solely on the types of allegedly missing information
described [here][.]"  Declaration of Veronica Salama, Exhibit P
(ECF 281-16) ¶ 18.

Second, per Stacy Tolchin: "it is incredibly rare to see a
lawful permanent resident detained . . . for[, as in this case,]
having failed to disclose a past membership or association on
the application for adjustment of status."  Declaration of
Veronica Salama, Exhibit L (ECF 281-12) ¶ 13 (emphasis added).

Tolchin, whose experience is extensive, see id. ¶¶ 1, 4-5, says
this:

> I have represented at least ten permanent
> residents who have been placed into removal
> proceedings after they were denied
> naturalization.  The only ones who were
> detained were those who had criminal
> convictions that DHS believed made them
> removable, in addition to being ineligible
> for naturalization.

Id. ¶ 17.

And all the more so, per Tolchin, as to one of the questions
that the Petitioner allegedly answered inaccurately, given the
history of "many" federal immigration officials essentially
ignoring this question, see id. ¶ 12; see also id. ¶ 8; the
question's asserted vagueness, see id. ¶¶ 7-11; the case law
that has developed under it, see id. ¶¶ 13-14; and the
particular context here.  See id. ¶ 15.

> As relevant to [the Petitioner]'s case, it
> is incredibly rare to see a lawful permanent
> resident detained . . . for having failed to
> disclose a past membership or association on
> the application for adjustment of status.

---

> Judge and served in that position from
> December 2024 through mid-February 2025.
>
> In private practice, I have represented many
> hundreds of noncitizens in removal
> proceedings.

Declaration of Veronica Salama, Exhibit P (ECF 281-16) ¶¶ 3-4.

Id. ¶ 16.

The third declaration is Ira J. Kurzban's.[9]

He states that, in general, lawful permanent residents are typically not detained by the immigration judge unless detention is mandatory.  See Kurzban Declaration ¶ 14. "[I]t is extremely unusual for a lawful permanent resident charged . . . [for] making material misrepresentations to be detained pending removal proceedings absent aggravating circumstances such as a criminal record."  Id. ¶ 15; see also id. ¶ 16.  And all of that generally tracks with this case.[10]

The Doyle, Tolchin, and Kurzban declarations are each based on extensive professional experience.  They are written in a careful way.  And they back each other up; they are mutually reinforcing, one to the next.

Based on the declarations, the Court finds as a matter of fact that it is overwhelmingly likely that the Petitioner would not be detained based solely on the lawful-permanent-resident-application charge.  Rather, the Court finds, the Petitioner's detention almost surely flows from the charge that is based on the Secretary of State's determination.[11]

---

[9]  Kurzban's relevant experience: a leading immigration-law scholar, see Declaration of Veronica Salama, Exhibit K (ECF 281-11) ("Kurzban Declaration") ¶ 4, and practitioner, see id. ¶¶ 2-3, 5-7, who has been counsel of record on various landmark Supreme Court cases.  See id. ¶ 6.

[10]  The Petitioner has no criminal record.  See Khalil Declaration ¶ 5.  The Secretary of State's determination does not say that he has been involved in criminal activity or violence.  See Determination at 1-2.  And the Respondents have not put forward any evidence as to involvement by the Petitioner in violence, destruction of property, or any other sort of criminal activity.

[11]  The Petitioner also states that even "[b]eyond [his] immediate detention," Khalil Declaration at ¶ 14, the Secretary of State's determination chills his speech.  The Court credits this, and finds as a factual matter that even if the Petitioner were not detained, or even if he were detained on another basis, the Secretary's determination would deter him from speaking.

                        *     *     *

To sum up:

The Respondents have not contested the evidence put forward by
the Petitioner, and in light of that the Court finds as a matter
of fact that the Petitioner's career and reputation are being
damaged and his speech is being chilled --- and this adds up to
irreparable harm.

### C.   Equities

So far, the Court has held that the Petitioner is likely to
succeed on the merits and would suffer irreparable harm without
an injunction.  See Part II.A and Part II.B.

Now the Court considers the third requirement for an
injunction.[12]  Has the Petitioner shown "that the balance of
equities tips in his favor"?  Winter, 555 U.S. at 20.

Yes.

The Respondents can have little or no interest in applying the
relevant underlying statutes in what is likely an
unconstitutional way.  See A.C.L.U. v. Ashcroft, 322 F.3d 240,
251 n.11 (3d Cir. 2003), aff'd and remanded, 542 U.S. 656 (2004)
("[N]either the Government nor the public generally can claim an
interest in the enforcement of an unconstitutional law.").

And "[w]hen a plaintiff is claiming the loss of a First
Amendment right, courts commonly rule that even a temporary loss
outweighs any harm to defendant and that a preliminary
injunction should issue."  11A Charles Alan Wright & Arthur R.
Miller, Fed. Prac. & Proc. Civ. § 2948.2 (3d ed. 2025) (citing
Ramirez v. Collier, 595 U.S. 411, 433 (2022); Roman Cath.
Diocese of Brooklyn v. Cuomo, 592 U.S. 14, 19 (2020); Yang v.
Kosinski, 960 F.3d 119, 136 (2d Cir. 2020); Cmty. House, Inc. v.
City of Boise, 490 F.3d 1041, 1059 (9th Cir. 2007)); accord

---

This is in part because of the vagueness associated with the
determination's underlying approach.  That makes it hard to know
what speech might potentially be covered, see Khalil, 2025
WL 1514713, at *37-42, and more likely that a person will curb
his speech.  See id. at *41 n.63.

[12]  This third requirement is less important than the first two.
See Nken, 556 U.S. at 434.

Amalgamated Transit Union Loc. 85 v. Port Auth. of Allegheny Cnty., 39 F.4th 95, 109 (3d Cir. 2022).

### D.    **Public Interest**

Finally, the Petitioner must show "that an injunction is in the public interest."  Winter, 555 U.S. at 20.[13]

"[T]he public has no interest in the enforcement of what is very likely an unconstitutional statute."  Odebrecht Constr., Inc. v. Sec'y, Fla. Dep't of Transp., 715 F.3d 1268, 1290 (11th Cir. 2013); accord, e.g., Schrader v. Dist. Att'y of York Cnty., 74 F.4th 120, 128–29 (3d Cir. 2023); Chamber of Com. of U.S. v. Edmondson, 594 F.3d 742, 771 (10th Cir. 2010).

And on the other side of the ledger, there is a chilling effect on speech.  See Amalgamated Transit Union Loc. 85, 39 F.4th at 109 ("There is a strong public interest in upholding the requirements of the First Amendment.  And, if a plaintiff demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff.") (cleaned up).

## III. **The Preliminary Injunction**

All four preliminary injunction factors point in the same direction.  See Part II.  In light of that, the Court exercises its discretion, see Benisek v. Lamone, 585 U.S. 155, 158 (2018), and holds:

First, the Respondents are preliminarily enjoined from seeking to remove the Petitioner from the United States based on the Secretary of State's determination, as reflected in the Secretary's memorandum to the Secretary of Homeland Security.

Second, because the Court's preliminary injunction bars the Respondents from seeking to remove the Petitioner based on the Secretary's determination, the Respondents are also

---

[13]  This fourth requirement is less important than the first two. See Nken, 556 U.S. at 434.

preliminarily enjoined from detaining the Petitioner based on the Secretary of State's determination.[14]

The Court hereby stays its preliminary injunction for around 40 hours, until 9:30AM on June 13. This is to allow the Respondents to seek appellate review should they wish to.

In addition, the preliminary injunction shall not go into effect unless and until the Petitioner posts a nominal bond in the amount of $1, consistent with the requirement of Federal Rule of Civil Procedure 65(c).[15]

\*     \*     \*

---

[14]  The two holdings set out in the text have no impact on efforts to remove the Petitioner for reasons other than the Secretary of State's determination.

[15]  The Respondents have requested the posting of a bond. See Respondents' Opposition to Petitioner's Motion for a Preliminary Injunction (ECF 156) at 35. But they have not specified any costs associated with complying with a preliminary injunction that they would seek to get back if the injunction were undone on appeal. See id.; see generally Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 804–05 (3d Cir. 1989) ("[T]he bond serves to inform the plaintiff of the price they can expect to pay if the injunction was wrongfully issued."); see also Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp., 847 F.2d 100, 103 (3d Cir. 1988). The Court is unaware of any such costs. See Zambelli Fireworks Mfg. Co. v. Wood, 592 F.3d 412, 426 (3d Cir. 2010); Siegel v. Platkin, 653 F. Supp. 3d 136, 161 (D.N.J. 2023); Koons v. Reynolds, 649 F. Supp. 3d 14, 45 (D.N.J. 2023); Beattie v. Line Mountain Sch. Dist., 992 F. Supp. 2d 384, 397 (M.D. Pa. 2014); Stilp v. Contino, 629 F. Supp. 2d 449, 468 (M.D. Pa. 2009), aff'd and remanded, 613 F.3d 405 (3d Cir. 2010). To be sure, if the Respondents opt to appeal, some of their attorneys' time would be occupied. But a Rule 65 bond does not typically aim to cover the costs associated with attorneys' fees. See Tullock v. Mulvane, 184 U.S. 497, 510–12 (1902) (quoting Oelrichs v. Spain, 82 U.S. (15 Wall.) 211, 230–31 (1872)); Nokia Corp. v. InterDigital, Inc., 645 F.3d 553, 560 (2d Cir. 2011); Fireman's Fund Ins. Co. v. S.E.K. Constr. Co., 436 F.2d 1345, 1351–52 (10th Cir. 1971); Sionix Corp. v. Moorehead, 299 F. Supp. 2d 1082, 1086 (S.D. Cal. 2003); Minn. Power & Light Co. v. Hockett, 105 F. Supp. 2d 939, 942 (S.D. Ind. 1999); 11A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 2954 & n.1.

IT IS on this 11th day of June, 2025, so ORDERED.

_____
Michael E. Farbiarz, U.S.D.J.

# **EXHIBIT B**

Marc Van Der Hout                                              **<u>DETAINED</u>**
Johnny Sinodis
Oona Cahill
Van Der Hout LLP
360 Post Street, Suite 800
San Francisco, California 94108
Telephone: (415) 981-3000
Facsimile: (415) 981-3003

Attorneys for Respondent
Mahmoud KHALIL

UNITED STATES DEPARTMENT OF JUSTICE

EXECUTIVE OFFICE FOR IMMIGRATION REVIEW

OFFICE OF THE IMMIGRATION JUDGE

JENA, LOUISIANA

| | |
|---|---|
| In the Matter of: | ▮▮▮▮▮▮▮ |
| Mahmoud KHALIL, | Hearing Date: N/A |
| | Hearing Time: N/A |
| Respondent, | Before: Hon. Judge Jamee E. Comans |
| In Removal Proceedings. | |

**MR. KHALIL'S MOTION TO RECONSIDER ORDER FINDING DHS SUSTAINED ITS BURDEN TO ESTABLISH REMOVABILITY UNDER INA § 237(a)(4)(C)**

**On June 11, 2025, the Honorable Judge Farbiarz from the District Court for the District of New Jersey Enjoined the Charge of Removability Under INA § 237(a)(4)(C) As Unconstitutional**

Respondent, **Mr. Mahmoud KHALIL,** ███████████ through undersigned Counsel, respectfully submits this Motion to Reconsider the Court's Order dated April 11, 2025, finding that the U.S. Department of Homeland Security (DHS) sustained its burden to establish removability under Immigration and Nationality Act (INA) § 237(a)(4)(C).

On June 11, 2025, the Honorable Judge Farbiarz at the District Court for the District of New Jersey enjoined the government from "seeking to remove [Mr. Khalil] from the United States based on the Secretary of State's determination, as reflected in the Secretary's memorandum to the Secretary of Homeland Security." *Khalil v. Joyce*, 2:25-cv-01963-MEF-MAH, Dkt. 299 (D.N.J. June 11, 2025). A copy of the District Court Order is attached as <u>Tab A</u>. Based on finding the Rubio determination likely unconstitutional, Judge Farbiarz further preliminarily enjoined the government "from detaining [Mr. Khalil] based on the Secretary of State's determination." <u>Tab A</u>, District Court Order at 13. The Court must therefore reconsider its prior Order and issue a new ruling finding that DHS can not and thus has not sustained its burden to establish Mr. Khalil's removability under INA § 237(a)(4)(C).

## RELEVANT PROCEDURAL HISTORY

On March 8, 2025, DHS arrested and detained Mr. Khalil. On March 9, 2025, DHS presented Mr. Khalil with a Notice to Appear (NTA) and initiated removal proceedings against him, scheduling him to appear for a Master Calendar Hearing before an immigration judge at the LaSalle Detention Facility on March 27, 2025. The NTA claimed Mr. Khalil is subject to removal under INA § 237(a)(4)(C)(i), in that "the Secretary of State has reasonable ground to believe that your presence or activities in the United States would have potentially serious adverse foreign policy consequences for the United States."

On March 17, 2025, DHS issued Mr. Khalil a Form I-261, Additional Charges of

Inadmissibility/Deportability, which asserted an additional charge of removability under INA § 237(a)(1)(a) (inadmissibility at the time of adjustment of status due to alleged fraud or misrepresentation).

On April 9, 2025, DHS filed four submissions with the Court in an attempt to establish its allegations and charges of removability against Mr. Khalil. The first DHS submission, which it believes supports Allegation 5 and the charge of removal under INA § 237(a)(4)(C)(i), is an undated, two-page memorandum (Memorandum) purportedly signed by Secretary of State Rubio. *See* Exhibit 7. The letter itself contains no recitation of facts pertaining to Mr. Khalil nor any explanation as to why his presence in the United States is counter to a compelling United States foreign policy objective. *Id*. Furthermore, although the Memorandum references five "Attachments," none of those Attachments were provided to Mr. Khalil or the Court. *Id*. at p. 6 (citing "DHS Letter on Mahmoud Khalil" and "HSI Subject Profile of Mahmoud Khalil").[1] Mr. Khalil submitted rebuttal evidence on April 11, 2025. Exhibit 13, Tab A.

At Mr. Khalil's Master Calendar Hearing on April 11, 2025, the Court sustained DHS's charge of removability under INA § 237(a)(4)(C)(i), finding that the letter from the Secretary of State explaining his purported determination that Mr. Khalil's presence has potentially serious adverse foreign policy consequences for the United States was "facially reasonable and gives bona fide reasons for that determination." The Court held in abeyance its decision on the INA § 237(a)(1)(a) charge of removability.

Mr. Khalil submitted additional rebuttal evidence relevant to the charge of removability

---

[1] In his motion to compel production of documents, Mr. Khalil argued that DHS must: disclose the Attachments relating to Mr. Khalil which allegedly support Secretary Rubio's Memorandum; disclose prior versions of the Memorandum, as they will contain information to which Mr. Khalil is entitled; and submit evidence regarding when the unauthenticated and undated alleged Memorandum from Secretary Rubio was allegedly written and whether Secretary Rubio "personally" made the determination. *See* Exhibit 9. On April 11, 2025, the Court denied the Motion to Compel. *See* Exhibit 9A.

under INA § 237(a)(4)(C)(i) on April 23, 2025. Exhibit 14, <u>Tabs A-D</u>. On May 12, 2025, Mr. Khalil submitted further rebuttal evidence to the INA § 237(a)(4)(C)(i), noting that the Court had already sustained the charge but that he was including the evidence for purposes of appeal. Exhibit 19, <u>Tabs A-F</u>.

On May 22, 2025, Mr. Khalil appeared for his Individual Calendar Hearing (ICH) before this Court. The Court stated that DHS had not met its burden to sustain Allegation 7 on the Form I-261, and that it was still considering the evidence on the two remaining allegations—Allegations 6 and 8. At the close of the hearing, the Court directed both parties to submit written closing arguments regarding the alleged misrepresentation charge and Mr. Khalil's eligibility for asylum, withholding of removal, and protection under the Convention Against Torture (CAT) by Monday, June 2, 2025, at 5:00 p.m. In its closing argument, DHS did not even attempt to argue it had met its burden to establish by clear convincing and unequivocal evidence—nor did it even address-- the alleged misrepresentation charge.

On June 11, 2025, Judge Farbiarz at the federal district court for the District of New Jersey issued a preliminary injunction enjoining the government from "seeking to remove [Mr. Khalil] from the United States based on the Secretary of State's determination, as reflected in the Secretary's memorandum to the Secretary of Homeland Security." <u>Tab A</u>, District Court Order at 12. The District Court's order went into effect on June 13, 2025, at 8:30 a.m. Central Time. *Id.* The government has not filed an appeal of the District Court Order.

## ARGUMENT

Pursuant to 8 C.F.R. § 1003.23(b), the Court may, upon written motion, reopen or reconsider a matter in which a decision has been issued. *See also* INA § 240(c)(6)(A). Said motion must be filed within thirty days of the date of entry of a final administrative order. 8 C.F.R. §

1003.23(b)(1). This motion is timely filed, as no final administrative order has been entered on the charge of removability under INA § 237(a)(4)(C)(i).

Judge Farbiarz's June 11 Order enjoins DHS, ICE, and the Attorney General (including the Executive Office for Immigration Review) from "seeking to remove [Mr. Khalil] from the United States based on the Secretary of State's determination, as reflected in the Secretary's memorandum to the Secretary of Homeland Security." <u>Tab A</u>, District Court Order at 12. This injunction is based on the District Court's conclusion that Mr. Khalil is likely to succeed on his argument that INA 237(a)(4)(C)(i) is unconstitutional as applied to him based on the Secretary of State's determination—the only document that DHS has introduced to sustain its burden. *See id.* at 4 (citing *Khalil v. Trump*, 2025 WL 1514713, *56 (D.N.J. May 28, 2025)). That preliminary injunction went into effect at 8:30 a.m. Central Time on June 13, 2025, and remains in full effect.

The Secretary of State's determination, as reflected in the Secretary's memorandum to the Secretary of Homeland Security (Exhibit 7), has now been enjoined by the federal district court, which has found it to likely be unconstitutional. There is no other basis beside the Secretary's memorandum to sustain the INA § 237(a)(4)(C) charge against Mr. Khalil. Accordingly, the Court must reconsider its oral decision on April 11, 2025, and find that the charge of removability under INA § 237(a)(4)(C) has not been sustained.

## CONCLUSION

For all of the aforementioned reasons, Mr. Khalil and undersigned Counsel ask the Court to grant this Motion, reconsider its oral decision on April 11, 2025, and find that the charge of removability under INA § 237(a)(4)(C) has not been sustained.

Dated: June 17, 2025

Respectfully submitted,

Marc Van Der Hout

Johnny Sinodis
Oona Cahill
Van Der Hout LLP

Attorneys for Mr. Khalil

## CERTIFICATE OF SERVICE

On June 17, 2025, I, Johnny Sinodis, caused the enclosed document to be served on the U.S. Department of Homeland Security via the EOIR Courts and Appeals System (ECAS). This document was electronically filed through ECAS and both parties are participating in ECAS. Therefore, there is no separate service completed.

Executed this 17th day of June 2025.

**CERTIFICATE OF SERVICE**

On June 17, 2025, I, Johnny Sinodis, caused the enclosed document to be served on the U.S. Department of Homeland Security via the EOIR Courts and Appeals System (ECAS). This document was electronically filed through ECAS and both parties are participating in ECAS. Therefore, there is no separate service completed.

Executed this 17th day of June 2025.

Motion to Schedule Custody Redetermination Hearing
Mahmoud KHALIL, █████████