# EXHIBIT A

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| Mahmoud KHALIL, *Petitioner*, v. Donald J. TRUMP, in his official capacity as President of the United States; William P. JOYCE, in his official capacity as Acting Field Office Director of New York, Immigration and Customs Enforcement; Yolanda PITTMAN, in her official capacity as Warden of Elizabeth Contract Detention Facility; Caleb VITELLO, Acting Director, U.S. Immigration and Customs Enforcement; Kristi NOEM, in her official capacity as Secretary of the United States Department of Homeland Security; Marco RUBIO, in his official capacity as Secretary of State; and Pamela BONDI, in her official capacity as Attorney General, U.S. Department of Justice, *Respondents*. | Case No. 25-cv-01963 (MEF-MAH) **DECLARATION OF MAHMOUD KHALIL** |

I, Mahmoud Khalil, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct to the best of my knowledge.

1. I am the Petitioner-Plaintiff in this action.

2. I submit this declaration to describe the ongoing, irreparable harms I am suffering as a result of the U.S. government's continued retaliation against me for engaging in speech that is *supposed* to be protected by the First Amendment.

3. Since my unlawful arrest by plainclothes ICE agents inside of my Columbia University-owned apartment building on March 8, 2025, I have been trapped in what feels like a relentless cycle of government retaliation. And while each new step in this process has come with a shifting explanation and a constantly moving goalpost, the underlying motive remains the same: punishment for my protected speech.

4. I previously submitted a declaration in this matter that largely focused on the irreparable harm caused by the government's initial justification for arresting, detaining, and seeking to remove me—one that openly admitted I was being targeted for my political speech:

Secretary of State Marco Rubio's determination that my public advocacy for Palestinian rights, criticism of Israel, and U.S. support for Israel would "compromise a compelling U.S. foreign policy interest."

5. The government's latest justification—the Post-Hoc Charge—is inseparable from the first. The irreparable harms I continue to suffer remain the same: restrictions on my physical liberty and my freedom of expression, dignitary and reputational damage, personal and familial hardship, and severe damage to my professional future.

6. Indeed, since March 8, I have felt that any expressive activity I undertake carries the risk of further punishment or surveillance. That fear was confirmed on March 17, just nine days after my arrest and the day we filed the preliminary injunction in this case—when LaSalle staff handed me a Form I-261, "Additional Charges of Inadmissibility/Deportability." DHS had added a new charge, this time under 8 U.S.C. §§ 1227 (a)(1)(A) and 1182(a)(6)(C)(i), now alleging that I had willfully misrepresented a material fact on my green card application nearly a year ago. (the "Post-Hoc Charge."). It felt like the government had combed through my entire record just to find something, anything, to use against me. Why else would the government revisit a nearly year-old application that had been already adjudicated and approved without issue or even so much as a follow-up interview? The message was clear: if the Rubio Determination didn't hold up in court, they needed a backup way to punish me. U.S. officials had publicly called me the "blueprint" for a new crackdown on pro-Palestinian viewpoints, and they were determined to make an example out of me.

7. The timing of the Post-Hoc Charge, and its obvious lack of merit—as I've addressed in my previous declaration (ECF 284-1 at ¶¶ 24-29)—made the retaliation undeniable. My arrest the week before had quickly become a national and international story. The highest levels of the U.S. government had publicly celebrated it, making grotesque and false accusations against me. At the same time, we had just filed this lawsuit, received a court schedule, and prepared the preliminary injunction.

8. So when I saw the Post-Hoc Charge, I immediately felt that I was being punished—not just for supporting Palestinian rights, not just for speaking out against Israel's war crimes against my people, or the U.S. role in enabling them, and Columbia University's support for them, but now also for daring to fight back in court and assert my constitutional rights.

9. My fear of constantly being punished and scrutinized for my speech was reinforced again on June 13, the day this Court partially granted my motion for a preliminary injunction. Within hours of the Court's order prohibiting my detention under the Rubio Determination—the only basis the government had relied on up to that point—the government abruptly shifted course and invoked the Post-Hoc Charge as its new justification for detaining me.

10. After reading the expert declarations submitted in this case, I now understand just how extraordinary and rare the government's actions have been. It is virtually unheard of for the government to add an additional charge like the Post-Hoc Charge under these circumstances—and even more unusual to rely on it as a basis for detention—especially

against someone like me: a lawful permanent resident with no criminal history, no pending immigration applications, and no record of fraud or deception.

11. Still, the fact that the government chose to detain me based on the minor (and meritless) Post-Hoc Charge did not surprise me. What did surprise me was the claim that this was merely a neutral exercise of discretion, when it was plainly retaliatory. I remember seeing a public statement from White House spokesperson Abigail Jackson after this Court ordered my release on bail, in which she described me as someone who "doesn't have a right to be in the United States" because, according to her, I was "siding with Hamas terrorists and organizing group protests that made college campuses unsafe and harassed Jewish students." She added that the administration won't hesitate to hold me and others who "mimic" my "tactics… accountable." (Declaration of Veronica Salama, Exhibit G). This, too, confirmed what I've always known: that the March 17 issuance of the Post-Hoc Charge, and the government's June 13 reliance on it to justify my continued detention, are punishment for my lawful and constitutionally protected speech in support of Palestinian rights, speech that the government wrongly and dangerously conflates with support for Hamas or hostility toward Jewish students.

12. Being falsely accused of fraud by the same government that explicitly detained me for my protected speech, and continues to seek my removal for that same speech, has caused deep and lasting psychological harm. I live with constant anxiety about when or how the government might come after me, or others like me again. I am in a constant state of hypervigilance. I censor myself before speaking. I double- and triple-check everything I say or write. I check in with lawyers about even the most minute application I have to fill out. All of that alone takes a serious mental toll. But this psychological toll is only compounded by the deep responsibility I feel, despite my justified fears of continued retaliation, to keep speaking out against injustice. This is especially true now as I am out on bail, and I am back to being confronted daily with atrocities by Israel that defy imagination and with the livestreamed genocide of the Palestinian people.

13. Even as I try to encourage others to also keep speaking out against injustice, I'm aware of the limits of that encouragement. How can any non-citizen feel truly safe when even I, whose case is so clearly retaliatory, still face real risk of detention and deportation? I see fear in members of my community who want to speak but hold back. The chilling effect and the message that I and so many others are internalizing from the government's successful actions against me so far is clear: speaking out against Israel, this administration, or in support of Palestinian lives can cost you your future in this country.

14. Beyond chilling my speech, the Post-Hoc Charge effectively labels me a fraud in the eyes of the United States government, and, by extension, the public, causing irreparable damage to my personal and professional reputation.

15. For example, in every interview I've given since my release on bail, where I speak openly on the issues at the heart of this case, I see an asterisk attached to my name: "The government is accusing Khalil in court of lying on his green card application."[1] This

---

[1] See, for example, Salama Declaration, Exhibit H.

    reminder hangs over everything I say, making others question my credibility and trustworthiness.

16. But as I've shared in my previous declaration, my work advocating for Palestinian rights and my future career in diplomacy both depend fundamentally on trust and credibility. Being publicly branded by the U.S. government as dishonest and accused of lying to obtain legal permanent residence status severely undermines my ongoing advocacy efforts and my ability to secure future employment in this field. Similarly to the Rubio Determination, which labeled me a risk to U.S. foreign policy interests, how can someone whom the U.S. government views as a fraud fairly represent any international organization on the world stage, where the U.S. is inevitably a key player, and successfully negotiate or advocate on its behalf?

17. The government's continued reliance on the (clearly retaliatory) Post-Hoc Charge also directly threatens my future in the United States with my wife and son, who are both U.S. citizens. Next year, I will need to apply to remove the conditions on my green card in order to maintain my status as a lawful permanent resident. Eventually, I hope to apply for U.S. citizenship. But as long as the Post-Hoc Charge remains in place, the chances of success for either application are all but impossible.

18. Moreover, while I am currently out on bail pending adjudication of this case, I am subject to conditions of release that imposed real and continuing harm, both to my family and to my ability to engage in the very speech for which I was targeted in the first place. Under the court's order, my travel is restricted to New York and Michigan, with limited exceptions: I may travel to New Jersey and Louisiana only for court or attorney visits, and to Washington, D.C. solely for lobbying or legislative purposes. I am barred from international travel entirely.

19. The restrictions on my liberty that come from being released on bail while the Post-Hoc Charge is pending have had an especially painful impact on my family. As I described in my previous declaration (ECF 284-1 at ¶¶20-21), I am unable to visit my elderly father in Germany, who is severely disabled. Seeing him has always been a priority for me. (I have always prioritized visiting him at least three times a year). Now, I can't see him or introduce him to my son, Deen. At the same time, my mother, who had previously been granted a visa to the U.S., was suddenly placed in administrative processing following my arrest. That means she can't come here, and I can't go there.

20. Professionally and politically, the limitations on my domestic travel have also had a chilling effect. I can't fully use the newfound freedom I've gained from my release on bail, or the public platform I've gained through this case, to speak out about the very issues I care most deeply about, namely, Israel's ongoing genocide of the Palestinian people, as well as broader systemic injustices (including in this country's immigration system). I've already been invited to speak at events in Chicago, New Jersey, Washington D.C., and California. I also have a sincere desire to speak at universities across the country. I want to engage with students, especially international students, about the importance of raising their voices, challenging this government's support for Israel's actions and their own universities'

complicity, and defending the rights of all oppressed people. I would gladly accept these invitations and start planning my speaking tour, but under my current restrictions, I can't.

21. Every day that the retaliatory Post-Hoc Charge remains in place, the government continues to succeed in its efforts to suppress my speech, use my case as a blueprint to deter other noncitizens from exercising their First Amendment rights, restrict my freedom, threaten my future in this country, and inflict ongoing irreparable harm.

Executed on July 9, 2025
Detroit, Michigan

*[signature: Mahmoud Khalil]*

_____
Mahmoud Khalil