# EXHIBIT F

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| Mahmoud KHALIL,<br><br>*Petitioner*,<br><br>v.<br><br>Donald J. TRUMP, in his official capacity as President of the United States; William P. JOYCE, in his official capacity as Acting Field Office Director of New York, Immigration and Customs Enforcement; Yolanda PITTMAN, in her official capacity as Warden of Elizabeth Contract Detention Facility; Caleb VITELLO, Acting Director, U.S. Immigration and Customs Enforcement; Kristi NOEM, in her official capacity as Secretary of the United States Department of Homeland Security; Marco RUBIO, in his official capacity as Secretary of State; and Pamela BONDI, in her official capacity as Attorney General, U.S. Department of Justice,<br><br>*Respondents*. | Case No. 25-cv-01963 (MEF-MAH)<br><br>**DECLARATION OF EMILY RYO** |

    I, Emily Ryo, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct to the best of my knowledge.

1. My name is Emily Ryo. The facts set forth in this declaration are based on my personal knowledge, unless otherwise indicated, and, if called as a witness, I could and would testify thereto. I am over eighteen years of age and of sound mind to declare to the facts stated herein.

2. I am the Charles L. B. Lowndes Distinguished Professor of Law and Professor of Sociology at Duke University School of Law. Prior to teaching at Duke, I held teaching positions at University of Southern California Gould School of Law and Stanford University. Prior to entering academia, I clerked for the Hon. M. Margaret McKeown of the United States Court of Appeals for the Ninth Circuit and practiced as a lawyer with Cleary, Gottlieb, Steen & Hamilton. I am a graduate of University

of Illinois, Urbana-Champaign (B.A. in History), Harvard Law School (J.D.), and Stanford University (Ph.D. in Sociology).

3. I am an empirical legal scholar and my current research focuses on immigration enforcement, immigration court decision-making, and the criminal justice system. I use both quantitative and qualitative methods in my research and publish widely in both sociology and law journals. My article with Ian Peacock, "A Study of Pandemic and Stigma Effects in Removal Proceedings," Journal of Empirical Legal Studies 19(3): 560-593, received the 2023 Article Prize from the Law and Society Association. I have been awarded the National Science Foundation Research Grant, the ABF/JPB Access to Justice Fellowship, and the Andrew Carnegie Fellowship, among others, to support my research and scholarship.

Summary of Data and Findings

4. As part of my research, I have analyzed datasets released by the Executive Office of Immigration Review (EOIR Data) and the Immigration and Customs Enforcement (ICE Data). The EOIR Data is available on the EOIR's website (https://www.justice.gov/eoir/foia-library-0), and the ICE Data is available on an open-source platform (github.com/UWCHR/ice-detain) on which the University of Washington Center for Human Rights has posted the data that it obtained from ICE pursuant to a request under the Freedom of Information Act.

5. The EOIR Data contains information on immigration court proceedings, including information on the filing date and the charges listed on the notice to appear (NTA) filed by the Department of Homeland Security (DHS) to commence the proceedings, the individual's custody status at the time of their proceedings, and the type of legal relief that the individual sought. The ICE Data contains information on all individuals who were detained by ICE, including their book-in date, legal status, and whether the individual has a criminal conviction. Individuals in ICE detention can be transferred across multiple facilities during their detention stay. The federal government generates a new record each time an individual is booked into a facility, which I refer to as a detention-stint record. This means that individuals who experience inter-facility transfers during a given detention stay have multiple detention-stint records. To avoid double counting individuals, I conducted my analysis of the ICE Data only at the level of detention stays.

6. Neither EOIR nor ICE makes underlying source information available (such as the charging documents themselves). I have accepted the records in the EOIR Data and ICE Data as true for the purposes of my analysis. Only essential steps were taken to clean and prepare the datasets for analyses, such as correcting formatting and related

errors present in the data tables, merging relevant individual data tables across record types and years using unique identifiers, and selecting observations only with complete records. I examined these datasets for the ten-year time period of 2012-2022, as these are the years for which I have both of these datasets cleaned and prepared for analysis.

7. I examined the EOIR Data and ICE Data to determine how common it is for federal immigration officials to detain individuals who are similarly situated as Mr. Khalil—specifically, a lawful permanent resident in a removal proceeding who is charged solely with INA § 237(a)(1)(A) based on § 212(a)(6)(C)(i), and who is seeking a waiver under § 237(a)(1)(H). An individual's legal status, seriousness of the charge(s), and eligibility for relief are all factors that may play a role in the decision to detain.

8. The EOIR Data allows one to estimate the percentage of removal proceedings involving individuals who face a particular charge, submit a particular type of relief application, and are either never detained, detained, or released from detention. The EOIR Data includes information about the individual's custody status, charges listed on their NTA, and the type of relief application filed, but it does not contain information about the legal status of the individual (i.e., lawful permanent resident, asylee, refugee, or other). Therefore, the results that I report from the analysis of the EOIR Data are likely to overestimate how many individuals similarly situated to Mr. Khalil are detained.

9. The ICE Data—which by definition focuses only on individuals whom the DHS has decided to detain—does contain information about the individual's legal status and whether or not the individual has a criminal conviction. Therefore, the ICE Data allows one to estimate the percentage of detention stays involving individuals who are lawful permanent residents without a criminal conviction whom ICE has detained. However, because the ICE Data does not include information on the charges listed on the NTA and relief applications, the results that I report from the analysis of the ICE Data are likely to overestimate how many individuals similarly situated to Mr. Khalil are detained.

10. For the EOIR Data, I analyzed removal proceedings that the federal government commenced between 2012 and 2022. During this ten-year period, the federal government commenced 5,188,657 removal proceedings. Of the removal proceedings for which the EOIR provides information on the charges and relief applications, 0.01% involved individuals charged solely with INA § 237(a)(1)(A) based on § 212(a)(6)(C)(i), and who are seeking a waiver under § 237(a)(1)(H). Of those removal proceedings involving individuals charged solely with INA § 237(a)(1)(A) based on § 212(a)(6)(C)(i), and who are seeking a waiver under

§ 237(a)(1)(H), 1.76% were detained throughout their removal proceedings. The EOIR Data does not allow me to distinguish individuals by their legal status, and thus lawful permanent residents likely constitute only a certain fraction of this estimate.

11. During the same ten-year period (fiscal years 2012-2022), the ICE Data shows that there were 3,378,458 detention stays involving adult males (males 18 years or older). Of the detention stays for which ICE provides information on the legal status of the individual, 0.14% percent were lawful permanent residents without criminal convictions. The ICE Data does not specify whether detained individuals have pending criminal charges, and thus lawful permanent residents without criminal convictions and pending criminal charges likely constitute only a certain fraction of this estimate.

12. Based on these results, I conclude that it is exceedingly rare for individuals similarly situated as Mr. Khalil to be detained throughout their removal proceedings.

Dated: July 8, 2025  
Durham, NC

Signed:

*Emily Ryo*

_____  
Emily Ryo, J.D., Ph.D.

4