

**U.S. Department of Justice**

Civil Division

---

July 15, 2025

**By ECF**

Honorable Michael E. Farbiarz
United States District Judge
U.S. Post Office & Courthouse
    Federal Square
Newark, New Jersey 07101

      Re:    *Khalil v. Joyce, et al.*, **Civ. Act. No. 25-1963 (MEF) (MAH)**
            **Government's Response to ECF Nos. 344, 347**

Dear Judge Farbiarz:

      Respondents ("the Government") respectfully submit this letter in response to the Court's Order, ECF No. 344, and to Petitioner Mahmoud Khalil's letter to the Court, ECF No. 347. The Court ordered the parties to address two questions: **First**, does the preliminary injunction of June 11 require the immigration judge ("IJ") to reverse or vacate her decision that Petitioner is removable under Section 237(a)(4)(C) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(4)(C)(i) (the "foreign policy ground")? **Second**, may the IJ rely on the Secretary of State's determination in ruling on Petitioner's requests for asylum and for a waiver under Section 237(a)(1)(H) of the INA, 8 U.S.C. § 1227(a)(1)(H)? The answers are no and yes, respectively.

    **1. This Court may not apply the preliminary injunction to exercise appellate review of the removal proceedings.**

      Petitioner asks this Court to apply its preliminary injunction to compel the IJ to vacate her decision that Petitioner is removable under the foreign policy ground and to adjudicate Petitioner's requests for asylum and Section 237(a)(1)(H) waiver without regard to the Secretary of State's foreign policy determination. Those requests go far beyond the limited habeas relief this Court has entered, and are foreclosed by fundamental limits on this Court's authority.

      <u>First</u>, the relief Petitioner requests is not relief that may be awarded as an exercise of the Court's habeas jurisdiction. "Habeas is at its core a remedy for unlawful executive detention," and so the traditional function of habeas is to secure the habeas petitioner's release. *Munaf v. Geren*, 553 U.S. 674, 693 (2008); *see also Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("[T]he traditional function of the writ is to secure release from illegal custody"). Petitioner is not now seeking his release, because this Court already ordered that relief. *See* ECF No. 316. Instead, Petitioner asks this Court to dictate the content of the IJ's removal decision, to direct the IJ's decision-making process, and to control the contents of the Government's filings to the IJ in ongoing administrative proceedings. ECF No. 347 at 4. In essence, Petitioner asks this Court sitting in habeas to exercise preemptory appellate review of the IJ's decisions, in addition to micromanaging the Government's pleadings before that tribunal. Such relief is foreign to the historic function of habeas. Predictably, Petitioner cites no case in which a court sitting in habeas awarded comparable relief. Those habeas cases he does cite (ECF No. 347

at 3) involved challenges to the absence (or sufficiency) of bond hearings to secure release from detention—relief within the traditional scope of habeas.[1]  But again, that relief has already been afforded, which is why Petitioner is currently released.  Habeas can provide him with nothing further at this juncture.

Second, the INA, 8 U.S.C. § 1252, deprives this Court of jurisdiction over the operations of removal proceedings, but Petitioner now seeks unprecedented intervention into just that.  Section 1252(g) provides that "no court"—including a court sitting in habeas—"shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to *commence* proceedings, *adjudicate* cases, or execute removal orders against any alien under this chapter."  8 U.S.C. § 1252(g) (emphasis added).[2]  As Petitioner emphasizes, the IJ derives her authority from the Attorney General.  ECF No. 347, at 2.  Whether and how the IJ resolves the underlying removability charges and any requests for relief are "decision[s] or action[s]" to "adjudicate" the case.  8 U.S.C. § 1252(g).  Thus, this Court lacks jurisdiction to review any cause or claim arising from those decisions and actions.  *See Kilani-Hewitt v. Bukszpan*, 130 F. Supp. 3d 858, 864 (S.D.N.Y. 2015) ("Kilani–Hewitt seeks to compel IJ Bukszpan to consider her reopened adjustment of status application immediately . . . . [T]he Court is in no better position to act because the relief that the Plaintiffs seek would limit the Attorney General's discretion to 'adjudicate' Kilani–Hewitt's case—an act that is specifically excluded from this Court's purview pursuant to Section 1252(g).").

Petitioner also seeks an order requiring the Department of Homeland Security ("DHS") to "formally notify the IJ in writing that it no longer seeks to remove Petitioner based on the Secretary of State's determination under 8 U.S.C. § 1227(a)(4)(C)(i) and that it withdraws the memorandum reflecting the Secretary of State's determination as an exhibit in support of its removal case."  ECF No. 347, at 4.  Such an order would impermissibility intrude on DHS's decisions or actions to commence proceedings.  To be sure, this Court previously concluded that § 1252(g) did not preclude jurisdiction to review the lawfulness of the Secretary of State's foreign policy determination.  ECF No. 214, at 102–04.  But the Court did so on the premise that the Secretary of State's action was distinct from DHS's decision to commence proceedings, a decision that includes choosing what removability charges to bring.  *See id.*  The latter is covered by § 1252(g) even if the former is not.  *Id.*  Under § 1252(g), the Court lacks jurisdiction to expand its June 11 order by directing DHS to take or not take certain actions as to what removability charges to bring and pursue.

Separately, Petitioner's requested relief is barred by § 1252(b)(9), which provides that "[j]udicial review of *all* questions of law and fact … *arising from* any action taken *or proceeding brought to remove an alien* from the United States … shall be available *only* in judicial review of a final order [of removal]" in the "appropriate court of appeals."  8 U.S.C. § 1252(a)(5), (b)(9) (emphasis added).  Section 1252(b)(9) expressly precludes habeas review of such questions.  *Id.*  Petitioner's requested relief falls squarely within the scope of § 1252(b)(9): Whether the IJ may "consider[]" or "base any findings on the Secretary of State's determination" or "deny Petitioner relief from removal based on the Secretary of State's determination," ECF No. 347 at 4, are "questions of law … arising from … proceedings brought to remove" Petitioner.  Indeed, those are the precise questions that the court of appeals has exclusive jurisdiction to consider on appeal from the final order.  Although this Court

---

[1] *Franco-Gonzalez v. Holder*, 2014 WL 5475097 (C.D. Cal. Oct. 29, 2014), is not a habeas case.

[2] The Court previously noted that § 1252(g)'s reference to the Attorney General can include the Secretary of Homeland Security.  ECF No. 241, at 101 n.69.  The provision also still encompasses IJs under the Attorney General because "the Attorney General retains the authority to administer removal proceedings."  *Nielsen v. Preap*, 586 U.S. 392, 398 n.2 (2019).

concluded that § 1252(b)(9) does not apply absent an order of removal, *see* ECF No. 214, at 24-39, the IJ has now issued an order of removal, *see* ECF No. 347 at 1, which Petitioner intends to appeal to the BIA on June 20, *id.* at 4 n.5. Under 8 U.S.C. § 1252(a)(5), the courts of appeals are the "sole and exclusive means for judicial review of an order of removal." Petitioner's request that this Court compel the immigration court to vacate its decision defies this clear statutory framework—installing this Court, rather than the court of appeals, as the tribunal responsible for exercising appellate jurisdiction over the removal order.

### 2. Even if this Court had jurisdiction, the preliminary injunction does not require the IJ to vacate her decision that Petitioner is removable on the foreign policy ground.

This Court preliminarily enjoined the Government "from seeking to remove the Petitioner from the United States based on the Secretary of State's determination" and from detaining him on that basis. ECF No. 299, at 12-13. The Government understands "seeking to remove the Petitioner" as referring to his physical removal and not to litigation before the IJ. When the Court issued the preliminary injunction, the IJ had already sustained the foreign policy removability ground, as this Court recognized. *See* ECF No. 214, at 4. But this Court did not purport to vacate that holding. The Court also did not enjoin the actual foreign policy removal charge. The Court issued a forward-looking injunction that prohibits the Government from "seeking to remove" Khalil based on the foreign policy determination. *See ADP, Inc. v. Levin*, 2022 WL 1184202, at *2 (3d Cir. 2022) ("[T]he purpose of a preliminary injunction is to 'protect[ ] the plaintiff . . . going forward." (quoting *Siemens USA Holdings Ing v. Geisenberger*, 17 F.4th 393, 407–08 (3d Cir. 2021))). Perhaps recognizing the limits of its jurisdiction, the Court did not phrase its order to "encompass[ ] the full spectrum of efforts that precede and are distinct from the final action or outcome of removal itself." ECF No. 347, at 2.

While the IJ's order of removal is based in part on the foreign policy ground, the decision itself does not violate the terms of the Court's June 11 injunction because the removal order has not been and cannot be executed at this time. *See Tazu v. Att'y Gen. of the U.S.*, 975 F.3d 292, 298-99 (3d Cir. 2020) (noting that "[t]he verb 'execute' means '[t]o perform or complete'"). "'Removal' is a term of art in immigration law that means sending an alien back permanently to his country of origin." *E.O.H.C. v. Sec'y U.S. Dep't of Homeland Sec.*, 950 F.3d 177, 184 (3d Cir. 2020). Seeking to remove Petitioner would involve steps such as choosing a time for removal, securing travel documents, arranging a mode of transportation, and briefly re-detaining him (if necessary). *Cf. Tazu*, 975 F.3d at 297–98 (discussing the process as to Tazu). No such plans have been or could be made at this time.

The Government, therefore, reasonably reads the Court's order as not interfering with Petitioner's ongoing administrative proceedings. And, importantly, Petitioner may continue to challenge the legality of the foreign policy ground, or any other aspect of the IJ's decision (including his eligibility for relief from removal), through the administrative appeals process and, if necessary, by seeking review of the BIA's final decision with the appropriate court of appeals. *See* 8 C.F.R. §§ 1003.38(b), 1003.39; *see also* 8 U.S.C. § 1252(a)(5). That means that—unlike with respect to his original challenge to detention—Petitioner faces no irreparable harm, and has adequate means of vindicating his rights in the ordinary course. Meanwhile, a broader application of the injunction would irreparably harm the Government by forcing it to abandon its legal theories mid-stream. Petitioner proposes that the BIA simply remand for further proceedings if the Third Circuit reverses this Court's orders. ECF No. 247, at 4 n.4. But that would result in what Congress sought to prevent: removal proceedings "becoming fragmented, and hence prolonged." *Tazu*, 975 F.3d at 296 (citation modified).

Contrary to Petitioner's argument, the Government's reading of the Court's June 11 order does not render the Court's March 19 order redundant. *See* ECF No. 347, at 2. The March 19 order

3

and the June 11 order fulfill different purposes. The March 19 order was based on the All Writs Act, and the Court justified it as necessary to preserve the Court's jurisdiction. ECF No. 81. Unlike the June 11 order, the March 19 order did not address the preliminary injunction factors or analyze the lawfulness of the Secretary of State's determination or Petitioner's detention.

### 3. The IJ may rely on the Secretary of State's foreign policy determination in ruling on Petitioner's requests for asylum and a Section 237 waiver.

For similar reasons, the Court's preliminary injunction does not prevent the IJ from relying on the Secretary's foreign policy determination in ruling on Petitioner's request for asylum or for a waiver. That ongoing administrative litigation is not pretermitted by this Court's injunction. In any event, even if Petitioner were correct that "seeking to remove" encompasses more than physical removal, the phrase does not encompass denials of requests for asylum and a Section 237(a)(1)(H) waiver. An alien previously admitted to the United States is removable if he is found to fall within one of the statutory grounds of deportability. 8 U.S.C. § 1229a(e)(2). Requests for relief from removal involve separate determinations with their own criteria for eligibility. *See, e.g.*, 8 U.S.C. §§ 1158(b)(1), 1227(a)(1)(H)(i). And many types of relief from removal, including asylum and a Section 237(a)(1)(H) waiver, are granted only "in the discretion of the Attorney General." 8 U.S.C. §§ 1227(a)(1)(H), 1158(b)(1)(A). Thus, denying a request for asylum or a Section 237(a)(1)(H) waiver is not "seeking to remove" an alien; it is declining to give the alien something that he has no right to in any event. The Court's June 11 order did not purport to reach that issue.

### 4. At a minimum, this Court should defer to the IJ's resolution of these issues.

At a minimum, the Court should defer ruling on these questions until the IJ and the BIA (if appropriate) have resolved these issues. The matters raised in Petitioner's letters will be most efficiently addressed by the IJ or the BIA in the first instance. Petitioner has filed a motion to reconsider with the IJ with respect to the first issue, Petitioner's removability under the foreign policy ground. *See* ECF No. 342, at 1; ECF No. 343, at 1 & n.1. The IJ's resolution of that motion may moot the issue in this Court.

The second issue, Petitioner's requests for asylum and Section 237(a)(1)(H) waiver, also may be resolved administratively. As to the request for asylum, the IJ conducted a thorough analysis in the alternative to determine that Petitioner is not eligible for asylum even apart from the Secretary of State's foreign policy determination. ECF No. 333, at 21–33; ECF No. 347, at 3. Unless the IJ reopens, or the BIA reverses, that analysis, a ruling by this Court that Petitioner may not be denied asylum based on the Secretary of State's determination would have no practical effect. Likewise, if Petitioner is correct that the IJ has erred by failing to set an evidentiary hearing in response to Petitioner's purported requests for a Section 237(a)(1)(H) waiver, *see* ECF No. 343, at n.3; ECF No. 347, at 1 n.2, Petitioner may raise that issue before the BIA, a body much better equipped than this Court to answer questions about immigration court procedure. If the IJ grants the waiver, the issues in this Court would be moot. Even if the IJ denies the waiver on the basis of Petitioner's removability under the foreign policy ground, the IJ may provide an alternative analysis like with the asylum denial. If there is such an alternative ruling, a determination by this Court would have little practical effect. All these facts show that judicial economy favors allowing the immigration proceedings to continue without further interference from this Court—which, again, is the whole point of the INA's various jurisdictional bars.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | */s/ Alanna T. Duong* |
| BRETT A. SHUMATE | ALANNA T. DUONG |
| Assistant Attorney General | Senior Litigation Counsel |
| Civil Division | Office of Immigration Litigation |
|  | Civil Division, U.S Dept. of Justice |
| DREW C. ENSIGN | PO Box 878, Ben Franklin Station |
| Deputy Assistant Attorney General | Washington, D.C. 20044 |
|  | alanna.duong@usdoj.gov |
| DHRUMAN Y. SAMPAT |  |
| Senior Litigation Counsel |  |