UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MAHMOUD KHALIL,

    *Petitioner*,

v.

DONALD TRUMP et al.,

    *Respondents*.

No. 25-cv-01963 (MEF)(MAH)

OPINION and ORDER

\* \* \*

For the purposes of this brief Opinion and Order, the Court assumes familiarity with the facts and procedural history of this case.

\* \* \*

On June 11, the Court held that the "Respondents are preliminarily enjoined from seeking to remove the Petitioner from the United States based on the Secretary of State's determination." ECF 299 at 12.

The Petitioner has sought clarification as to the meaning of the preliminary injunction, see ECF 332 at 1-2, and it appears that the parties have different views of what it requires. Compare ECF 347 (setting out the Petitioner's view), with ECF 349 (setting out the Respondents').

The Court writes briefly (a) to ensure there is clarity, and (b) to outline next steps.

\* \* \*

Clarification first.

The "Respondents are preliminarily enjoined from seeking to remove the Petitioner from the United States based on the Secretary of State's determination."

As a matter of plain meaning, "seeking" removal from the United States covers steps that come before physical removal from the United States.  Detention is one example.  Continuing to pursue charges is another.

Second, the "Respondents are preliminarily enjoined from seeking to remove the Petitioner from the United States based on the Secretary of State's determination."

Again as a matter of plain meaning, seeking removal "based on the Secretary of State's determination" includes all efforts to remove the Petitioner that are predicated on ("based on") the Secretary's determination.

This is not qualified.  It covers all efforts.  Those that are solely based on the Secretary's determination.  And also those that as a practical matter meaningfully rely on the Secretary's determination.  "Based" covers both.

* * *

But plain meaning may not be the whole story.[1]

---

[1]  Statutes and contracts are typically interpreted with a laser focus on text.  See, e.g., United States v. Alvarez-Sanchez, 511 U.S. 350, 356 (1994) (statutes); Barila v. Bd. of Educ. of Cliffside Park, 241 N.J. 595, 616-17 (2020) (contracts).  But consider some of the reasons why that approach does not apply to injunctions.  Take statutes as an example.  A text-only focus is often described as the right one because statutes are passed by legislatures --- and legislatures, as multi-member bodies, do not realistically have a discernible intent outside of the text. See, e.g., Merck & Co. v. Reynolds, 559 U.S. 633, 659 (2010) (Scalia, J., concurring in part).  But injunctions are normally issued by a single judge, not by a large legislature.  A text-heavy approach is also said to be required because only the words of the text pass through the "presentment" process, see U.S. Const. art. I, § 7, cl. 2, and become law.  See, e.g., Amy Coney Barrett, Congressional Insiders & Outsiders, 84 U. Chi. L. Rev. 2193, 2210-11 (2017); Frank H. Easterbrook, Text, History & Structure in Statutory Interpretation, 17 Harv. J.L. & Pub. Pol'y 61, 65-66 (1994).  But presentment has no bearing as to

Injunctions are generally interpreted and enforced with an eye to the underlying equities of a situation. See California v. Am. Stores Co., 495 U.S. 271, 294 (1990); Sys. Fed'n No. 91, Ry. Emps. Dep't, AFL-CIO v. Wright, 364 U.S. 642, 647 (1961); Brown v. Bd. of Educ. of Topeka, 349 U.S. 294, 300 (1955); McComb v. Jack. Paper Co., 336 U.S. 187, 193 (1949); Milk Wagon Drivers Union of Chi., Loc. 753 v. Meadowmoor Dairies, Inc., 312 U.S. 287, 298 (1941); United States v. Swift & Co., 286 U.S. 106, 114 (1932); see also Salazar v. Buono, 559 U.S. 700, 761-62 (2010) (Breyer, J., dissenting); Schering Corp. v. Ill. Antibiotics Co., 62 F.3d 903, 906 (7th Cir. 1995); cf. Brown v. Plata, 563 U.S. 493, 542-43 (2011).[2]

And as to preliminary injunctions in particular, these are issued early in a case. They are not an end-of-the-line product, like a statute or a contract. Rather, they are preliminary --- and because they turn on what is "likely," see Winter v. Nat. Res. Def. Council, 555 U.S. 7, 20 (2008), they are necessarily somewhat tentative.[3]

This may imply an added need for interpretive flexibility. See McCreary Cnty. v. ACLU of Ky., 545 U.S. 844, 874 (2005); Sys. Fed'n No. 91, 364 U.S. at 647; Swift & Co., 286 U.S. at 114; cf. Schering Corp., 62 F.3d at 908-09 (interpretation of an injunction depends on the type of injunction); Sprint Commc'ns Co. L.P. v. CAT Commc'ns Int'l, Inc., 335 F.3d 235, 243 (3d Cir. 2003); Marshall v. Bd. of Ed., 575 F.2d 417, 425 (3d Cir. 1978).

In short: the underlying equities and a need for flexibility --- these inform how injunctions are to be read and enforced, just

---

injunctions. See generally F. Andrew Hessick & Michael T. Morley, Interpreting Injunctions, 107 Va. L. Rev. 1059, 1083-84 (2021) (discussing the relevant issues).

[2] This approach has long been part of the law. See, e.g., St. John's Coll., Oxford v. Carter (1839) 41 Eng. Rep. 191, 192; Bolt v. Stanway (1795) 145 Eng. Rep. 965, 965; Morrice v. Hankey (1732) 24 Eng. Rep. 1006, 1006; cf. Trump v. CASA, Inc., 606 U.S. ---, ---, 2025 WL 1773631, at *6 (2025) (looking to English equitable practice from the time of the Founding to fix the limits of federal courts' equitable powers).

[3] "Even so-called 'permanent injunctions' are actually provisional." June Med. Servs. LLC v. Russo, 591 U.S. 299, 421 (2020) (Gorsuch, J., dissenting) (citing Glenn v. Field Packing Co., 290 U.S. 177, 179 (1933)), abrogated by Dobbs v. Jackson Women's Health Org., 597 U.S. 215 (2022).

as they are touchstones for crafting an injunction in the first place.

\*   \*   \*

Against this backdrop, walk through a set of three real-world circumstances.  Each is plainly covered by the language of the Court's June 11 preliminary injunction.  But how do these link up to the case's underlying equities?

Take three examples, each drawn from the parties' papers.

First, look to the removal charge that has been lodged against the Petitioner based on his alleged failures to accurately complete his lawful permanent resident application.

The Petitioner suggests that, "based on the Secretary of State's determination," he has been denied (a) a waiver of removability as to the LPR application charge and/or (b) the possibility of making a meaningful argument at an evidentiary hearing as to waiver, even though affording such a hearing would generally be routine.  See ECF 347 at 3-4 (developing this argument).

If (a) is substantiated, it is hard to see how it would not add up to irreparable injury.[4]  If (b) is substantiated, it could also add up to irreparable injury, presumably depending in some part on how often waivers are granted in circumstances like this one.

But have (a) and (b) been substantiated?  Neither appears rooted in sworn factual information that has been put before the Court.

Take a second example.

The Petitioner argues that, "based on the Secretary of State's determination," he has been prevented from meaningfully seeking asylum on the LPR application charge.  See id. at 3.

But this argument does not seem to be factually substantiated at this point.

---

[4]  In contemporary case law, irreparable injury is one of the key yardsticks by which the underlying equities of a case are measured.  See, e.g., Winter, 555 U.S. at 20; Amoco Prod. Co. v. Vill. of Gambell, 480 U.S. 531, 542 (1987); Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982).

4

And it does not reckon with the fact that the immigration judge conducted an extensive and close analysis here, ranging across six single-spaced pages, see ECF 333 at 21-26, and based on live testimony from experts put forward by the Petitioner, see id. at 14-16 --- and concluded that the Petitioner is not eligible for asylum for reasons the immigration judge explicitly stated that are not based on the Secretary of State's determination. See id. at 21.

Third and finally, the Petitioner suggests that the Respondents are continuing to press forward with affirmatively arguing in the immigration courts for his removal on the ground that the Secretary of State has so determined.

If this is indeed happening, it seems hard to square with the Court's June 11 preliminary injunction.

But as a factual matter, it is not clear whether this injures the Petitioner. After all, the Court has ordered the Respondents not to remove him from the United States. See ECF 81.

\*   \*   \*

As to courses of conduct (like the three listed above) that are (a) covered by the language of the June 11 preliminary injunction but that (b) may not be directly supported by the Court's factual findings as to irreparable injury on which the preliminary injunction was based --- the Court might potentially hesitate to mechanically compel compliance with the strict language of the June 11 preliminary injunction unless and until the Court concludes that the underlying factual record has been persuasively filled out.[5]

---

[5] Two things. First, as noted, irreparable injury is a way to think through a case's equities. See footnote 4. And, if as to a given course of conduct there is no factual support for the idea that that the conduct is irreparably injurious, then the Court might not have issued an injunction on June 11 to cover that conduct. ("Might not have" because the Court could have been permitted to do so. See United States v. Bausch & Lomb Optical Co., 321 U.S. 707, 724 (1944); Ethyl Gasoline Corp. v. United States, 309 U.S. 436, 461 (1940); accord FTC v. Nat'l Lead Co., 352 U.S. 419, 430 (1957); see also United States v. U.S. Gympsum Co., 340 U.S. 76, 89-90 (1950).) Second, the Court's powers here are broad. To construe its injunction, as

5

The parties will be permitted to supplement the record with factual information in the form of affidavits, and to make any legal arguments they may wish to.

Per the Petitioner, there is a hard-stop deadline coming. See ECF 347 at 4, n.5.[6]

Therefore, the parties shall make their supplemental filings before 6:00am on July 17. Each party may then file a brief factual or legal reply, should they wish to, before 9:00am on July 17. If there is a need to resolve factual disputes through live testimony, that will be handled by phone on July 17.

The Court will rule on July 17.

If a party opts not to make a filing, the Court will rule based on the record as it currently exists as to the Petitioner's request for clarification of the June 11 preliminary injunction.[7]

IT IS on this 16th day of July, 2025, so **ORDERED**.

_____
Michael E. Farbiarz, U.S.D.J.

---

the Petitioner has requested. See McComb, 336 U.S. at 192; United States v. Crescent Amusement Co., 323 U.S. 173, 188 (1944). To modify it, even sua sponte. See Chi. Bd. of Educ. v. Substance, Inc., 354 F.3d 624, 632 (7th Cir. 2003); W. Water Mgmt., Inc. v. Brown, 40 F.3d 105, 109 (5th Cir. 1994). Or to decline to enforce a remedy as to a violation of one part of it. See United States v. Armour & Co., 402 U.S. 673, 682 (1971); cf. Milk Wagon Drivers Union of Chi., Loc. 753, 312 U.S. at 298.

[6] As to the issues discussed here, the Respondents' brief was filed during the evening of July 15 and this Opinion and Order is signed at approximately 9:15am on July 16.

[7] The most substantial jurisdictional arguments raised by the Respondents in ECF 349 have been previously reached and resolved by this Court. They are before the Third Circuit. The Respondents at ECF 349 rightly note that this Court does not sit as an appellate tribunal over the immigration courts. Not at all. The concern here is solely to ensure the efficacy of an injunction issued last month by the Court. That is why the Court's focus is on the underlying standards related to injunctive relief (irreparable injury, etc.), and not on the basic standards that govern appellate review (de novo as to questions of law, clear error as to facts, etc.).