July 17, 2025

Honorable Michael E. Farbiarz, United States District Judge
Martin Luther King Building & U.S. Courthouse
50 Walnut Street, Newark, New Jersey 07101

Re:    ***Khalil v. Trump, et al.***, No. 2:25-cv-1963 (MEF) (MAH)

Dear Judge Farbiarz,

Petitioner Mahmoud Khalil writes in response to this Court's Order permitting the parties "to supplement the record with factual information in the form of affidavits, and to make any legal argument they wish" regarding "clarification of the June 11 preliminary injunction." ECF 350 at 6. Mr. Khalil now submits additional evidence that—along with the existing record in this case— demonstrates he will continue to suffer ongoing irreparable harm absent an order compelling Respondents' immediate and full compliance with this Court's preliminary injunction.

**Summary of Factual Submissions**

Mr. Khalil submits additional evidence of two forms of irreparable harm he is suffering based on the government's continued pursuit of his removal on the basis of the Secretary of State's Determination (also the "Foreign Policy Ground" or "FPG"). As this Court has already determined in large part, the first category of irreparable harms—relating to the speech-chilling, reputational, and practical effects of the Determination remaining an active basis for removal proceedings—is ongoing. *See* ECF 299 at 4-11. And the second category of irreparable harms—the altered, prejudicial course of his immigration proceedings based on a likely-unconstitutional charge—has been accruing and will be exacerbated imminently.

I.    *Ongoing Irreparable Harm Based on Chilled Speech, Practical, and Reputational Effects of the Determination*

The government continues to rely on the Secretary of State's Determination that Mr. Khalil's presence in this country would compromise United States foreign policy interests, including in its ongoing filings in immigration court and through the immigration judge's finding of removability. *See* Exhibit 1 (July 16 Declaration of Marc Van Der Hout) ("July 16 Van Der Hout Decl."), Ex. A (DHS's most recent opposition to Khalil's Motion for reconsideration (filed in immigration court on July 14, 2025)); Ex. B (Khalil reply in support of motion to reconsider (filed in immigration court on July 15, 2025)); Exhibit C (IJ's July 16 denial of motion to reconsider). So long as the government continues to move Mr. Khalil forward towards removal on the basis of that Determination, he is subject to severe reputational harm and harm to his employment prospects. Exhibit 2 (July 16 Declaration of Mahmoud Khalil) ("July 16 Khalil Decl.") ¶¶ 4-11. The government's ongoing reliance on the Rubio Determination also has a chilling effect on his speech, causing him to self-censor about topics that might implicate the Determination. *Id.* ¶¶ 4-6, 11.

II.    *Irreparable Harm Based on the Prejudicial Altered Course of Immigration Proceedings*

The record also now demonstrates that the government's continued pursuit of removal based on—and ongoing reliance on—the Rubio Determination will, without this Court's intervention, cause irreparable harm with respect to the waiver process, further asylum proceedings, ongoing proceedings before the Board of Immigration Appeal (the "BIA"), and Mr. Khalil's ability to sustain himself and his family and function in the United States.

First, based on the Secretary of State's Determination, Mr. Khalil has been denied a waiver of removability (and even the opportunity to present evidence relevant to a waiver) as to the Post-Hoc Charge regarding his lawful permanent resident (LPR) application.

In immigration proceedings, someone like Mr. Khalil who is subject to a charge of misrepresentation or fraud in their LPR application, but who is married to a U.S. citizen (or LPR) or has a U.S. citizen (or LPR) child, can seek a waiver of removability. Exhibit 3 (July 16 Declaration of Kerry Doyle) ("July 16 Doyle Decl.") ¶ 19; Exhibit 4 (July 16 Declaration of Stacy Tolchin) ("July 16 Tolchin Decl.") ¶ 6; Exhibit 5 (July 16 Declaration of Ira Kurzban) ("July 16 Kurzban Decl.") ¶ 15; Exhibit 7 (July 16 Declaration of Dana Leigh Marks) ("July 16 Marks Decl.") ¶ 6. There is no application form for such a waiver. July 16 Doyle Decl. ¶ 23; July 16 Tolchin Decl. ¶ 9; July 16 Kurzban Decl. ¶ 17. The process to apply for and obtain such a waiver requires first requesting an evidentiary hearing for such a waiver from the immigration judge. July 16 Doyle Decl. ¶ 23; July 16 Tolchin Decl. ¶ 8; July 16 Kurzban Decl. ¶ 16. Such a request can be made orally during an immigration hearing or can also occur in writing. July 16 Tolchin Decl. ¶ 8; July 16 Kurzban Decl. ¶ 16. Following such a request, an immigration judge must then schedule a hearing, at which they will consider evidence and arguments regarding the noncitizen's eligibility for such a waiver. July 16 Tolchin Decl. ¶¶ 10, 13; July 16 Kurzban Decl. ¶ 18. Such a hearing might involve testimony from the U.S. citizen spouse, family and community members, and others. July 16 Doyle Decl. ¶ 23; July 16 Tolchin Decl. ¶ 10; July 16 Kurzban Decl. ¶ 18.

In a situation such as Mr. Khalil's, a waiver of removability would "almost certainly be granted" following such a hearing. July 16 Doyle Decl. ¶ 29; *see also* Exhibit 7 (July 16 Declaration of Dana Marks) ("July 16 Marks Decl.") ¶ 12 (former IJ stating he "clearly merits" waiver). A waiver candidate has the requisite family relationship when they have a U.S. citizen spouse or a child, July 16 Doyle Decl. ¶ 19, and Mr. Khalil has both, July 16 Khalil Decl. ¶ 7. The only other relevant factor in granting the waiver is whether the person is otherwise inadmissible. July 16 Doyle Decl. ¶ 19. And, without the FPG charge, Mr. Khalil satisfies that factor as well. July 16 Doyle Decl. ¶ 29; July 16 Tolchin Decl. ¶ 16. In "the normal course," in circumstances involving an LPR with a U.S. citizen spouse and child seeking such a waiver of removability, for someone with Mr. Khalil's facts, a waiver would "almost certainly" be granted. July 16 Doyle Decl. ¶ 29.[1] And when a waiver is granted, an

---

[1] Charles L. B. Lowndes Distinguished Professor of Law and Professor of Sociology at Duke University School Emily Ryo, an empirical legal scholar, has analyzed EOIR data from 2012-2022, the most recent years for which data is available, showing that, of those removal proceedings involving individuals charged solely with INA § 237(a)(1)(A) based on § 212(a)(6)(C)(i), and who are seeking a

LPR's immigration proceedings are resolved in their favor. July 16 Doyle Decl. ¶ 23; July 16 Kurzban Decl. ¶ 22;  July 16 Tolchin Decl. ¶¶ 14, 16.

On April 23, Mr. Khalil requested a waiver hearing before the immigration judge in writing. July 16 Van Der Hout Decl. ¶ 6. He renewed this request on May 22 orally, and again on June 2 in writing. *Id.* ¶¶ 7-8. Even though a hearing is the required procedure to follow a request for such a waiver, July 16 Doyle Decl. ¶¶ 22-23; July 16 Tolchin Decl. ¶¶ 10-11, 13; July 16 Kurzban Decl. ¶¶ 16, 18, the immigration judge did not schedule such a hearing, July 16 Van Der Hout Decl. ¶¶ 9-16. Instead, on June 20, the immigration judge issued a decision finding Mr. Khalil removable based on the Secretary of State's Determination, and on July 16 denied a motion for reconsideration of that decision and for reconsideration of its decision not to schedule a waiver hearing, July 16 Van Der Hout Decl., Exs. A-C. The immigration judge has therefore now denied Mr. Khalil a waiver of removability by denying him a hearing at which he would have established his waiver eligibility. While the immigration judge did not address Mr. Khalil's request for a waiver hearing explicitly in any decision, the judge presumably did not see the request as relevant in light of the court's finding of removability on FPG grounds. Were the FPG basis of removability valid, a waiver on the second, Post-Hoc Charge would be practically immaterial, because the FPG charge cannot be waived. July 16 Doyle Decl. ¶ 18; July 16 Kurzban Decl. ¶¶ 14-15; July 16 Tolchin Decl. ¶ 12. But (as mentioned above), in the absence of the FPG, it would be unheard of for an immigration judge to deny a waiver hearing request—and even a waiver itself—for an LPR with a U.S. citizen wife and child, without a criminal record, and who is facing only the misrepresentation or fraud charges that are the waiver's raison d'être. July 16 Doyle Decl. ¶ 29; July 16 Kurzban Decl. ¶¶ 20, 22; July 16 Tolchin Decl. ¶ 15.

Based on the Secretary of State's Determination, Mr. Khalil has therefore been deprived of both (1) the possibility of making a meaningful argument at an evidentiary hearing as to waiver, even though affording such a hearing is required, and (2) in fact obtaining such a waiver, which would "almost certainly" be granted in cases such as his. And if he were granted a waiver of removability, his immigration proceedings would be resolved in his favor. July 16 Doyle Decl. ¶ 23; July 16 Kurzban Decl. ¶ 22; July 16 Tolchin Decl. ¶ 16.

Second, due in part to the Secretary of State's Determination, Mr. Khalil has been denied asylum. *See* ECF 333 (June 20 IJ decision) at 20. While asylum was also denied on alternative grounds, he has the right to appeal those findings. However, Mr. Khalil will lose his opportunity to be heard if the Secretary of State's Determination remains in place, because the BIA need only affirm the

---

waiver under § 237(a)(1)(H), 85% were granted the waiver. Exhibit 6 (July 16 Declaration of Emily Ryo) ("July 16 Ryo Decl.") ¶ 8. Because these figures include non-LPRs and those who, unlike Mr. Khalil, do not have either a U.S. citizen spouse or child, or who have criminal histories, the rate for people in Mr. Khalil's circumstances would likely be "significantly higher." *Id.* ¶¶ 9-10. This analysis thus further supports the declarations of other experts stating that, for someone in Mr. Khalil's position, such a waiver would "almost certainly" be granted. July 16 Doyle Decl. ¶ 29; *see also* July 16 Tolchin Decl. ¶ 16 (stating that, were Mr. Khalil granted a waiver hearing, "proceedings would be resolved in his favor"); July 16 Marks Decl. ¶ 12 (former IJ stating he "clearly merits" waiver).

Immigration Judge's decision on the basis of the Determination alone. *See* July 16 Tolchin Decl. ¶ 17; *see also* Exhibit 8 (Declaration of Homero Lopez) ("Lopez Decl.") ¶ 4 (former BIA Appellate Immigration Judge stating the BIA would "have no need" to address any arguments beyond the FPG). Moreover, the only reason Mr. Khalil needed to seek asylum (which is a lesser form of status than lawful permanent resident status) is because he was precluded from being considered for the 237(a)(1)(H) waiver, which would allow him to maintain his lawful permanent resident status. July 16 Tolchin Decl. ¶ 14. If he is permitted to apply for a waiver and is granted the waiver, there would be no need to adjudicate his asylum application at all or pursue these issues on appeal. *Id.* ¶¶ 14, 16.

Third, Mr. Khalil now faces the imminent irreparable harm of litigating several issues at the Board of Immigration Appeals that he would not otherwise have to litigate but for the Secretary of State's Determination, and ultimately of being subject to a final order of removal as soon as the BIA decides his appeal. Specifically, without this Court's intervention, Mr. Khalil will be required by the appeal deadline to file by July 18, 2025, an appeal of the IJ's determination to the BIA, *see* ECF 347 at 4 n.5, which will divest the IJ of jurisdiction and move his proceeding to the appeal stage, *see* July 16 Tolchin Decl. ¶ 17. On appeal, he will have to litigate several issues that should be off the table under this Court's injunction: not only will he have to litigate on the merits against the Secretary of State's Determination as a basis for his removal, July 16 Van Der Hout Decl. ¶ 18; July 16 Tolchin Decl. ¶ 17; July 16 Kurzban Decl. ¶ 23, but he will also have to litigate against the immigration judge's denial of asylum, July 16 Van Der Hout Decl. ¶ 18.  In the absence of the FPG charge, it is overwhelmingly likely that he would have obtained a waiver of removability in the ordinary course of proceedings and would not need to appeal anything at all to the BIA. July 16 Doyle Decl. ¶¶ 29, 34; July 16 Kurzban Decl. ¶ 22; July 16 Tolchin Decl. ¶ 16. Therefore, he is being forced to litigate entirely different issues on appeal than he otherwise would, if he would be required to file an appeal at all, because the Secretary of State's Determination remains in play notwithstanding this Court's preliminary injunction. July 16 Doyle Decl. ¶ 34.

Further, as a result of the FPG charge, and the immigration judge's finding of removability on that ground, Mr. Khalil will be subject to a final order of removal as soon as the BIA renders a decision on his appeal. July 16 Doyle Decl. ¶ 35; Kurzban Decl. ¶ 24. On the record that is poised to go up on administrative appeal, the BIA will be bound by precedent to quickly affirm on the basis of the FPG and cannot consider Mr. Khalil's constitutional challenges to that charge. Lopez Decl. ¶¶ 3-4; July 16 Doyle Decl. ¶¶ 31-32; July 16 Tolchin Decl. ¶ 17. There are important consequences to the final order of removal the BIA would then issue. At that point, critically, Mr. Khalil would no longer have LPR status. July 16 Doyle Decl. ¶¶ 35-36. July 16 Tolchin Decl. ¶ 18; July 16 Kurzban Decl. ¶ 24. The lack of LPR status (pursuant to issuance of a final order of removal) will have serious consequences for Mr. Khalil: he will no longer be able to lawfully work or engage in other daily transactions without proof of lawful status, July 16 Doyle Decl. ¶¶ 37-38; July 16 Tolchin Decl. ¶ 18.

Finally, having to litigate issues he otherwise would not face on appeal also imposes resource costs on Mr. Khalil that cannot be meaningfully remedied after the fact, including by imposing significant demands on limited attorney time that would otherwise be spent on other issues in his case,

July 16 Khalil Decl. ¶¶ 8-9; July 16 Van Der Hout Decl. ¶ 18, and by prejudicing his ability to fully address in any appeal briefing issues relevant to charges that are not related to the FPG, *see id.*

### Legal Argument

Based on the factual submissions summarized above, along with the existing record in this case, Mr. Khalil has demonstrated ongoing irreparable harm flowing from the government "continuing to pursue charges" based on the Foreign Policy Ground or otherwise "meaningfully rely[ing] on the Secretary's determination." ECF 350 at 2. These include the concrete harms of his ongoing removal proceeding, chilled speech, damaged career prospects, and damaged reputation.

First, one of the primary harms flowing from the government's likely-unconstitutional application of the Foreign Policy Ground to Mr. Khalil is being forced "'to undergo the complained-of agency proceedings.'" ECF 214 (Apr. 29 Order) at 99 (In the absence of federal court intervention, "the claimants 'will lose their rights not to undergo the complained-of agency proceedings if they cannot assert those rights until the proceedings are over' . . . . So too here." (quoting *Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175, 192 (2023))). As described above, if the government is permitted to continue relying on the Rubio Determination, Mr. Khalil will lose his right not to face unconstitutional charges before the immigration court and the BIA, and he will lose his right to obtain meaningful relief from removal that is otherwise immediately available to him—in particular a waiver which would "almost certainly be granted," July 16 Doyle Decl. ¶ 29, and which, if granted, would fully resolve his immigration court proceedings "in his favor," July 16 Tolchin Decl. ¶ 16; *see also supra* at 2-3.

On the issue of waiver specifically, the Court has noted that, if Mr. Khalil has been denied a waiver of removability, "it is hard to see how it would not add up to irreparable injury." ECF 350 at 4. Here, Mr. Khalil has now been denied a waiver through the IJ's latest denial of his motion to reconsider, which explicitly requested a waiver hearing. *See* July 16 Van Der Hout Decl., Ex. C (July 16 IJ decision); *see also* July 16 Tolchin Decl. ¶ 12; July 16 Doyle Decl. ¶¶ 27-28. The Court also noted that even the denial of "the possibility of making a meaningful argument" at a waiver hearing "could also add up to irreparable injury," depending on the likelihood of success. ECF 350 at 4. Here again, Mr. Khalil has demonstrated that such a waiver should "almost certainly" be granted to him based on the relevant factors of his application, July 16 Doyle Decl. ¶ 29, and, even if that were not the case, being deprived of even a slim chance of having his immigration proceeding fully resolved in his favor at this time would constitute irreparable harm, *see, e.g., De Jesus Martinez v. Nielsen*, 341 F. Supp. 3d 400, 408–09 (D.N.J. 2018) ("Denying Mr. Martinez the opportunity to complete the waiver process would constitute . . . irreparable harm"); *M'Bagoyi v. Barr*, 423 F. Supp. 3d 99, 107 (M.D. Pa. 2019) (similarly finding "irreparable harm" based on a denial of "the opportunity to complete the waiver process," emphasizing "the right to seek such a waiver" and not any guarantee of the ultimate relief of waiver).

Second, the government's seeking to remove Mr. Khalil on the basis of the Secretary's Determination also puts him at imminent risk of losing his lawful permanent resident status as soon as the BIA affirms the IJ's decision. *See* July 16 Doyle Decl. ¶ 35; Kurzban Decl. ¶ 24. Losing his LPR status would result in the immediate loss of his ability to maintain employment authorization and to

otherwise engage in daily tasks that require valid proof of his lawful status. July 16 Doyle Decl. ¶¶ 37-38.

Third, the ongoing progress of the enjoined charge through the immigration court and BIA, "even '[b]eyond . . . detention,'" and even while removal remains enjoined, will continue to "chill[] his speech." ECF 299 at 10 n.11. That chill arises directly from the vagueness of the Foreign Policy Ground, *id.*, and how the government's continued application of that ground means, for Mr. Khalil, "that any expressive activity I undertake carries the risk of further punishment or surveillance," ECF 281-1 ("June 4 Khalil Decl.") ¶ 14; July 16 Khalil Decl. ¶¶ 4-7. As long as the government's likely-unconstitutional charge remains live and proceeding through the immigration court, it achieves its purpose of deterring Mr. Khalil and others from engaging in protected expressive activity the government disfavors. *See, e.g., Dombrowski v. Pfister*, 380 U.S. 479, 487-89 (1965) (finding "sufficient irreparable injury" to warrant a preliminary injunction in part because "[t]he chilling effect upon the exercise of First Amendment rights may derive from the fact of the prosecution, unaffected by the prospects of its success or failure").

Fourth, beyond any effect on speech, "serious long-term damage to career prospects can count as irreparable harm." ECF 299 at 5 (citing *Kamdem-Ouaffo v. Task Mgmt. Inc.*, 792 F. App'x 218, 222 (3d Cir. 2019); *Morton v. Beyer*, 822 F.2d 364, 372 n.13 (3d Cir. 1987); *Acierno v. New Castle Cnty.*, 40 F.3d 645, 654 (3d Cir. 1994); *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 89 & n.16 (1981); *Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1055-56 (5th Cir. 1997); *NAACP, Inc. v. Town of E. Haven*, 70 F.3d 219, 224 (2d Cir. 1995)). The government continuing to pursue charges, continuing to rely in immigration court on a determination that Mr. Khalil's presence or activities in the United States would compromise a compelling United States foreign policy interest, and otherwise continuing to move through the formal removal process on these grounds is causing severe damage to Mr. Khalil's ability to further his career. *See* July 16 Khalil Decl. ¶¶ 4, 7; *see also* ECF 299 at 5 (citing June 4 Khalil Decl. ¶¶ 3, 8-10, 16, 22). By pursuing the enjoined charges and obtaining regular affirmations of their underlying viability from the immigration court (and, soon, the BIA), the government continues to label Mr. Khalil a threat to the United States in the eyes of the government, undermining his credibility, both writ large and specifically in his field of diplomacy and international affairs. *See id.*; *see also* July 16 Khalil Decl. ¶¶ 4, 7.

Fifth, and similarly, "when it cannot be compensated through money damages, as cannot readily be done here, reputational injury can count as irreparable harm." ECF 299 at 5 (citing *Guardian Life Ins. Co. of Am. v. Est. of Cerniglia*, 446 F. App'x 453, 456 (3d Cir. 2011); *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 726 (3d Cir. 2004); *Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 805 (3d Cir. 1998); *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 546 (7th Cir. 2021); *Register.com., Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004); *Rent-a-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991); 11A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2948.1 (4th ed. 2025) ("Injury to reputation . . . is not easily measurable in monetary terms, and so often is viewed as irreparable."); *Bennington Foods LLC v. St. Croix Renaissance, Grp., LLP*, 528 F.3d 176, 178–79 (3d Cir. 2008)). Here again, the government's continued public reliance on the Rubio Determination causes ongoing irreparable harm to Mr. Khalil's reputation: it designates him as

a threat to the United States, and it continues to subject him to the humiliating public statements of the highest government officials trumpeting the ongoing progress of his deportation proceedings. *See id.* (citing June 4 Khalil Decl. ¶¶ 3, 8-10, 16, 22); ECF  July 16 Khalil Decl. ¶¶ 4-5, 7.

Respectfully submitted,

_____/s/ *Naz Ahmad*_____

**DRATEL & LEWIS**
Amy E. Greer
29 Broadway, Suite 1412
New York, NY 10006
Tel.: (212)732-8805
agreer@dratellewis.com

**CENTER FOR CONSTITUTIONAL RIGHTS**
Baher Azmy
Samah Sisay*
Diala Shamas*
666 Broadway, 7th Floor
New York, NY 10012
Tel.: (212) 614-6464
bazmy@ccrjustice.org
ssisay@ccrjustice.org
dshamas@ccrjustice.org

**VAN DER HOUT LLP**
Marc Van Der Hout*
Johnny Sinodis*
Oona Cahill*
360 Post Street, Suite 800
San Francisco, CA 94108
Tel.: (415) 981-3000
Fax: (415) 981-3003
ndca@vblaw.com

**CLEAR PROJECT**
**MAIN STREET LEGAL SERVICES, INC.**
Ramzi Kassem*
Naz Ahmad
Mudassar Hayat Toppa*
Shezza Abboushi Dallal*
CUNY School of Law
2 Court Square, 5th Floor
Long Island City, NY 11101

**AMERICAN CIVIL LIBERTIES UNION OF NEW JERSEY FOUNDATION**
Jeanne LoCicero
Farrin R. Anello
Molly K.C. Linhorst
570 Broad Street, 11th Floor
Newark, NJ 0710
Tel.: (973) 854-1715

**NEW YORK CIVIL LIBERTIES UNION FOUNDATION**
Amy Belsher*
Robert Hodgson*
Veronica Salama*
Molly Biklen*
125 Broad Street, 19th Floor
New York, NY 10004
Tel.: (212) 607-3300

**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
Omar Jadwat*
Noor Zafar*
Sidra Mahfooz*
Brian Hauss*
Brett Max Kaufman*
Esha Bhandari*
Vera Eidelman*
Tyler Takemoto*
125 Broad Street, 18th Floor
New York, NY 10004
Tel.: (212) 549-2500

**WASHINGTON SQUARE LEGAL SERVICES, INC.**
Alina Das*
Immigrant Rights Clinic

7

Tel.: (718) 340-4558

245 Sullivan Street, 5th Floor
New York, New York 10012
Tel.: (212) 998-6430
alina.das@nyu.edu

*Admitted* pro hac vice

*Counsel for Petitioner*