UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MAHMOUD KHALIL,<br><br>*Petitioner,*<br><br>v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>*Respondents.* | *Civ. Act. No.* 25-cv-1963 (MEF) (MAH) |

RESPONDENTS' MOTION TO STAY THE COURT'S JULY 17, 2025 ORDER
MODIFYING THE PRELIMINARY INJUNCTION PENDING APPEAL

On the brief:

BRETT A. SCHUMATE
Assistant Attorney General
Civil Division

YAAKOV M. ROTH
Principal Deputy Assistant Attorney General

DREW C. ENSIGN
Deputy Assistant Attorney General

AUGUST E. FLENTJE
Special Counsel for Immigration Litigation

ALANNA T. DUONG
DHRUMAN Y. SAMPAT
Senior Litigation Counsel

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................................1

BACKGROUND ...................................................................................................................................2

LEGAL STANDARD ............................................................................................................................2

ARGUMENT..........................................................................................................................................2

    I. ............ The Government is likely to succeed on appeal because the Court's expanded preliminary injunction exceeds its jurisdiction.................................................................................................2

    II.       The Court's expansion of the preliminary injunction to forbid any consideration of the foreign policy charge irreparably harms the Government. ......................................................6

    III.      The public interest favors staying the Court's order..................................................................8

CONCLUSION......................................................................................................................................9

# **TABLE OF AUTHORITIES**

## Cases

*Aguilar v. U.S. Immigr. & Customs Enf't Div. of Dep't of Homeland Sec.*,
   510 F.3d 1 (1st Cir. 2007) ............................................................................................. 7

*Bonhometre v. Gonzales*,
   414 F.3d 442 (3d Cir. 2005) .......................................................................................... 5

*Dep't of Homeland Sec. v. Thuraissigiam*,
   591 U.S. 103 (2020) ....................................................................................................... 3

*Duvall v. Atty. Gen. of U.S.*,
   436 F.3d 382 (3d Cir. 2006) .......................................................................................... 6

*E.O.H.C. v. Sec. United States Dep't of Homeland*,
   *Sec.* 950 F.3d 177 (3d Cir. 2020) .................................................................................. 5

*Fiallo v. Bell*,
   430 U.S. 787 (1977) ....................................................................................................... 7

*J.E.F.M. v. Lynch*,
   837 F.3d 1026 (9th Cir. 2016) ...................................................................................... 5

*Maryland v. King*,
   567 U.S. 1301 (2012) ................................................................................................. 7, 8

*Mathews v. Diaz*,
   426 U.S. 67 (1976) ......................................................................................................... 7

*Munaf v. Geren*,
   553 U.S. 674 (2008) ....................................................................................................... 2

*Nken v. Holder*,
   556 U.S. 418 (2009) .................................................................................................. 2, 8

*Preiser v. Rodriguez*,
   411 U.S. 475 (1973) ....................................................................................................... 3

*Reno v. Am.-Arab Anti-Discrimination Com.*,
   525 U.S. 471 (1999) ........................................................................................... 4, 5, 6, 8

*Tazu v. Att'y Gen. of the U.S.*,
   975 F.3d 292 (3d Cir. 2020) .......................................................................................... 4

*United States ex rel. Knauff v. Shaughnessy*,
   338 U.S. 537 (1950) ....................................................................................................... 8

*United States v. Martinez-Fuerte*,
   428 U.S. 543 (1976) ............................................................................................................8

*Vasquez v. Aviles*,
   639 F. App'x 898 (3d Cir. 2016) .........................................................................................5

*Verde-Rodriguez v. Att'y Gen.*,
   734 F.3d 198 (3d Cir. 2013) ................................................................................................4

*Younger v. Harris*,
   401 U.S. 37 (1971) ..............................................................................................................7

**Statutes**

8 U.S.C. § 1227(a)(1)(A) ...............................................................................................................1

8 U.S.C. § 1227(a)(4)(C) ...........................................................................................................1, 3

8 U.S.C. § 1252(a)(2)(D) ...............................................................................................................4

8 U.S.C. § 1252(a)(5) ................................................................................................................3, 4

8 U.S.C. § 1252(b)(9) .........................................................................................................  1, 3, 5

8 U.S.C. § 1252(g) .....................................................................................................................3, 4

**Rule**

Federal Rule of Civil Procedure 62 ...............................................................................................2

**Regulation**

8 C.F.R. § 1003.30.........................................................................................................................6

**Other Authorities**

H.R. Conf. Rep. No. 109-72...........................................................................................................5

# **INTRODUCTION**

The Court's order of July 17, 2025 ("the Order") directs Respondents ("the Government") to cause the immigration judge ("IJ") (1) to vacate or amend her June 20 decision to the extent it finds that Petitioner Mahmoud Khalil is removable from the United States based on the Secretary of State's foreign-policy determination, 8 U.S.C. § 1227(a)(4)(C); and (2) to evaluate Petitioner's eligibility for a Section 237(a)(1)(H) waiver from removability due to his document-fraud charge, 8 U.S.C. §§ 1227(a)(1)(A), 1182(a)(6)(C)(i), without reference to the Secretary of State's foreign-policy determination. ECF 355.[1] That Order marks an unprecedented and dramatic intrusion into Petitioner's ongoing removal proceedings in contravention of the historic limits on a habeas court's jurisdiction and Congress's explicit judgment to channel challenges to detention and removal through the petition for review process. This Court should stay the Order pending appeal.

The Government is likely to succeed on appeal because this Court lacks jurisdiction over this action. First, the Order far exceeds the historic function of habeas to secure release from detention— relief this Court had already provided in a prior order. Second, the Order transgresses multiple statutory bars stripping district courts of jurisdiction to review the Executive's decisions to commence and adjudicate removal proceedings against an alien. *See* 8 U.S.C. §§ 1252(b)(9), (g). The Government will likely suffer irreparable harm as a result. The Order forces the Government to risk abandoning and waiving litigation positions in Petitioner's removal proceedings that it may be precluded from reasserting in the event this Court's preliminary injunction is stayed or reversed. At a minimum, the Order will introduce enormous inefficiencies into the removal proceedings, substituting piecemeal litigation for Congress's choice of streamlined adjudication. In stark contrast, Petitioner will suffer no harm: all the harms he invoked have been prevented by the IJ's reopening of his removal proceedings.

---

[1] In compliance with the Court's order, the IJ has reopened Petitioner's removal proceedings.

Therefore, the Government requests, under Federal Rule of Civil Procedure 62, that the Court stay its July 17 order expanding the preliminary injunction pending disposition of the appeal by the United States Court of Appeals for the Third Circuit.

## BACKGROUND

The relevant background is recounted in the statement of the facts in the Government's Opposition to Petitioner's Motion for a Preliminary Injunction. *See* ECF 156 at 15-18.

## LEGAL STANDARD

To evaluate whether to issue a stay of its order pending appeal, a court consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (quotation omitted). The first two factors "are the most critical[,]" and the final factors merge where, as here, the Government is a party. *Id.* at 434-35.

## ARGUMENT

Established Third Circuit precedent confirms that the Government is likely to succeed on the merits of its appeal. Because this Court lacks jurisdiction and the Government will suffer irreparable harm as a result, a stay of the Order pending appeal is warranted.

**I.    The Government is likely to succeed on appeal because the Court's expanded preliminary injunction exceeds its jurisdiction.**

The Order transgresses multiple limits on the Court's jurisdiction arising from the restricted scope of habeas relief and the INA.

*First,* the relief the Court granted Petitioner is not relief that may be awarded as an exercise of this Court's habeas jurisdiction. "Habeas is at its core a remedy for unlawful executive detention," and so the traditional function of habeas is to secure the habeas petitioner's release. *Munaf v. Geren*,

2

553 U.S. 674, 693 (2008); *see also Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("[T]he traditional function of the writ is to secure release from illegal custody"). This Court already ordered Petitioner's release. *See* ECF 316. The Order's new directives—controlling the content of the IJ's decisions and the grounds for her determinations—fall far outside the scope of habeas relief. *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 118 (2020) (finding that the alien's requested relief of "vacatur of his removal order and an order directing the Department to provide him with a new opportunity to apply for asylum and other relief from removal falls outside the scope of the common-law habeas writ") (cleaned up). In essence, this Court sitting in habeas is exercising preemptory appellate review of the IJ's operations. Such relief is foreign to the historic function of habeas.

**Second,** Congress intentionally created a singular path for aliens to raise challenges related to removal. This path ensures that aliens receive consideration of their claims before an Immigration Court and review of their claims before the Board of Immigration Appeals and the appropriate Court of Appeals. *See* 8 U.S.C. §§ 1252(a)(5), (b)(9). To ensure that this process is not interrupted, Congress also enacted statutory provisions that deprive district courts of jurisdiction—including habeas jurisdiction—over the operations of removal proceedings. *See* 8 U.S.C. §§ 1252(b)(9), (g). Yet, this Court has upended the congressional design by broadening the scope of the preliminary injunction to micromanage Petitioner's removal proceedings by controlling the content of, and bases for, the IJ's decisions. In effect, this Court has substituted itself as the appellate tribunal in place of the Board of Immigration Appeals and the Third Circuit.

This Court has no authority to disrupt or control removal proceedings. *See* 8 U.S.C. § 1252(g). In finding that the IJ has to "vacate or amend her June 20 decision to the extent it finds the Petitioner removable from the United States on the 8 U.S.C. § 1227(a)(4)(C) charge," this Court bypassed Congress's jurisdictional limitations in § 1252(g). Congress has made clear that "notwithstanding any other provision of law (statutory or nonstatutory), including *section 2241 of title 28*, or *any other habeas*

3

*corpus* provision … no court shall have jurisdiction to hear any cause or claims by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or executive removal proceedings against any alien." 8 U.S.C. § 1252(g) (emphasis added). The Government acknowledges that the preliminary injunction prevents Petitioner's removal from the United States based on the foreign policy charge. *See* ECF 349 at 2, 353 at 1; *Tazu v. Att'y Gen. of the U.S.*, 975 F.3d 292, 298-99 (3d Cir. 2020) (noting that "[t]he verb 'execute' means '[t]o perform or complete'"). Even if the Court had the authority to issue that relief (which the Government disputes), the Order's interference with the operations of the removal proceedings is in direct conflict with the INA's clear language.

The fact that Petitioner raises First Amendment challenges in his habeas petition does not mean that he is without recourse *if* his challenges have merit. Under § 1252, Congress channeled into the statutorily prescribed removal process all legal and factual questions—including constitutional issues—that may arise from the removal of an alien, with judicial review vested exclusively in the court of appeals *not* the district court. *See Reno v. Am.-Arab Anti-Discrimination Com. ("AADC")*, 525 U.S. 471, 483 (1999). The Order's expansion of the preliminary injunction has undermined the Government's authority to make "discretionary determinations" and now encourages "separate rounds of judicial intervention" despite Congress's intent to avoid such an act. *Id.* at 485. That is exactly what § 1252(g) forbids.

Moreover, Petitioner is an alien in removal proceedings who wishes to raise issues arising from those removal proceedings. Under the statute, he can do so, by a petition for review ("PFR") in the appropriate Court of Appeals if (and after) he receives a final order of removal. *Tazu*, 975 F.3d at 294; 8 U.S.C. § 1252(a)(2)(D). In passing the REAL ID Act, Congress prescribed a single path for judicial review of orders of removal: "a petition for review filed with an appropriate court of appeals." 8 U.S.C. § 1252(a)(5); *see also Verde-Rodriguez v. Att'y Gen.*, 734 F.3d 198, 201 (3d Cir. 2013). The REAL

4

ID Act further provides that, "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, *arising from any action taken or proceeding brought to remove an alien from the United States* under this subchapter shall be available only in judicial review of a final order under this section." 8 U.S.C. § 1252(b)(9) (emphasis added). Read in conjunction with § 1252(b)(9), § 1252(a)(5) expresses Congress's intent to channel and consolidate judicial review of every aspect of removal proceedings into the petition-for-review process in the courts of appeals. H.R. Conf. Rep. No. 109-72, at 174–75; *see also Bonhometre v. Gonzales*, 414 F.3d 442, 446 (3d Cir. 2005) (highlighting Congress's "clear intent to have all challenges to removal orders heard in a single forum (the courts of appeals)" as part of a petition for review).

Therefore, "most claims that even relate to removal" are improper if brought before the district court. *E.O.H.C. v. Sec. United States Dep't of Homeland Sec.* 950 F.3d 177, 184 (3d Cir. 2020); *see AADC*, 525 U.S. 483 (labeling § 1252(b)(9) an "unmistakable zipper clause," and defining a zipper clause as "[a] clause that says 'no judicial review in deportation cases unless this section provides judicial review.'"); *Vasquez v. Aviles*, 639 F. App'x 898, 900-01 (3d Cir. 2016); *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016) ("Taken together, § 1252(a)(5) and § 1252(b)(9) mean that any issue – whether legal or factual – arising from any removal-related activity can be reviewed only through the [petition-for-review] process."). Put otherwise, the Third Circuit has underscored that district courts cannot review "any action taken or proceeding brought to remove an alien" so long as the claim can receive meaningful review through a petition for review. *E.O.H.C.*, 950 F.3d at 186. This Court's directive to the IJ regarding Petitioner's removability and eligibility for relief clearly show that Petitioner's challenges sufficiently "relate[s] to removal" and are thus barred by § 1252(b)(9). *E.O.H.C.*, 950 F.3d at 184.

## II. The Court's expansion of the preliminary injunction to forbid any consideration of the foreign policy charge irreparably harms the Government.

The Court's expansion of the preliminary injunction from an order that Petitioner not be *removed* based on the foreign policy charge, to an order that the Government may not *rely* on that charge for *any purpose whatsoever* throughout the removal proceedings irreparably harms the Government.

*First,* forbidding administrative litigation on the foreign policy ground means that the Government will effectively be forced to waive reliance on that ground both for purposes of removability and eligibility determinations before the agency and court of appeals. Petitioner argues that this is not irreparable harm because if the Government does prevail, it may simply reopen proceedings or otherwise reinstate the foreign policy ground. *See* ECF 354 at 2. The absurd inefficiencies this injects into the system is its own form of irreparable injury, *see infra*, but there also is no reason to believe the process will be as simple as Petitioner speculates. Even if the Government were ultimately to prevail in its appeal of the underlying preliminary injunction, it still may be barred from ultimately presenting the foreign policy ground as a basis for Petitioner's removability from the United States if the underlying proceedings have otherwise concluded. *Cf.* 8 C.F.R. § 1003.30. And a potential grant of relief to Petitioner under a Section 237 waiver could raise its own complicated issues of collateral estoppel and res judicata. *See generally Duvall v. Atty. Gen. of U.S.*, 436 F.3d 382 (3d Cir. 2006).

*Second,* even if the Government may not be *barred* from bringing a foreign policy based charge against Petitioner in the future should it prevail in its appeal, requiring it to fully litigate proceedings at this stage and only wait until a future date to consider that additional charge would result in a piecemeal and deeply flawed removal proceeding, something Congress has consistently sought to forestall by streamlining removal proceedings. *See AADC*, 525 U.S. at 486-87. Considering

6

the inefficiencies injected into the proceedings by the Order, and the additional strain it will necessarily place on an already overburden system, the Government will clearly be irreparable harmed by the "scattershot" approach required by the expanded injunction, *see Aguilar v. U.S. Immigr. & Customs Enf't Div. of Dep't of Homeland Sec.*, 510 F.3d 1, 9 (1st Cir. 2007), and Petitioner did not even attempt to argue to the contrary, *see* ECF 354.

*Third,* the expanded scope of the preliminary injunction forecloses the Government from relying on a statute duly enacted by Congress. As the Supreme Court has noted, "[a]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., *in chambers*) (citation modified). Section 1227(a)(4)(C)(i) remains controlling law at this point, and the Order foreclosing any reliance on the statutory provision—for purposes of removability, eligibility, or any other—works an irreparable harm against the interests of the Government that has been charged with enforcing that provision.

*Finally,* and as a corollary, comity between the branches of the federal government had traditionally required a heighted showing of harm before a court will enjoin an administrative proceeding. *See, e.g., Younger v. Harris*, 401 U.S. 37, 46 (1971). This principle has special salience in the immigration context, where the Supreme Court has long recognized that it is to Congress and the Executive that the Constitution has delegated responsibility over immigration matters. *See Mathews v. Diaz*, 426 U.S. 67, 81 (1976). For that reason, judicial review over immigration matters has been exceedingly narrow. *See, e.g., Fiallo v. Bell*, 430 U.S. 787, 792 (1977). The Court's unjustified expansion of the scope of the injunction in this case tramples these principles and, by transcending its narrow remit in immigration cases, it has and continues to cause irreparable harm to the interests and prerogatives of the Government.

7

In stark contrast, Petitioner suffers no harm. First, the harms that Petitioner invoked to this Court, that is, the IJ's losing jurisdiction to the Board of Immigration Appeals and his receiving a final order of removal, have now been prevented in light of the IJ's reopening of his removal proceedings. The alleged harm to his reputation and career prospects is actually mitigated because the IJ has reopened his removal proceedings. Moreover, again, because of this Court's preliminary injunction, Petitioner cannot be (physically) removed based on the foreign policy charge unless the preliminary injunction is reversed or dissolved. *See* ECF 349 at 2. Petitioner thus faces no irreparable harm from a stay pending appeal.

The Government "suffers a form of irreparable injury" "[a]ny time [it] is enjoined by a court from effectuating statutes enacted by representatives of its people." *Maryland*, 567 U.S. at 1303 (Roberts, C.J., in chambers) (citation omitted). That is particularly true here because rules governing immigration "implement[] an inherent executive power." *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542 (1950) ("it is not within the province of any court, unless expressly authorized by law, to review the determination of the political branch of the Government to exclude a given alien").

### III. The public interest favors staying the Court's order.

It is well settled that the public interest in the enforcement of the United States' immigration laws is significant. *See, e.g., United States v. Martinez-Fuerte*, 428 U.S. 543, 556-58 (1976); *Nken*, 556 U.S. at 435. There is "always a public interest in prompt execution of removal orders." *Nken*, 556 U.S. at 436. That principle extends to the prompt resolution of determining removability because "[t]he continued presence of an alien lawfully deemed removable undermines the streamlined removal proceedings IIRIRA established, and 'permit[s] and prolong[s] a continuing violation of United States law.'" *Id.* (quoting *AADC*, 525 U.S. at 490). Granting the relief Petitioner seeks impairs the Government's ability to carry out its official duties, which is contrary to the public interest.

8

## **CONCLUSION**

      The Court should stay the Order pending appeal.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | */s/ Alanna T. Duong* |
| BRETT A. SHUMATE | ALANNA T. DUONG |
| Assistant Attorney General | Office of Immigration Litigation |
| Civil Division | Civil Division, U.S. Dept. of Justice |
|  | PO Box 878, Ben Franklin Station |
| YAAKOV M. ROTH | Washington, D.C. 20044 |
| Principal Deputy Assistant Attorney General | alanna.duong@usdoj.gov |
|  |  |
| DREW C. ENSIGN |  |
| Deputy Assistant Attorney General |  |
|  |  |
| AUGUST E. FLENTJE |  |
| Special Counsel for Immigration Litigation |  |
|  | July 18, 2025 |
| DHRUMAN Y. SAMPAT |  |
| Senior Litigation Counsel | Attorneys for Respondents |

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing filing was served on counsel of record via this Court's CM/ECF system on July 18, 2025.

/s/ *Alanna T. Duong*
ALANNA T. DUONG
Senior Litigation Counsel
U.S. Department of Justice