# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

Mahmoud KHALIL,

*Petitioner,*

v.

William P. JOYCE, *et al.,*

*Respondents.*

No. 25-cv-1963-MEF-MAH

## PETITIONER'S BRIEF IN OPPOSITION TO RESPONDENTS' MOTION TO STAY THE COURT'S JULY 17, 2025 ORDER PENDING APPEAL

AMERICAN CIVIL LIBERTIES UNION OF
NEW JERSEY FOUNDATION
Jeanne LoCicero
Farrin R. Anello
Molly K.C. Linhorst
Liza Weisberg
570 Broad Street, 11th Floor
Newark, New Jersey 07102
Tel: (973) 854-1715

NEW YORK CIVIL LIBERTIES UNION
FOUNDATION
Amy Belsher*
Robert Hodgson*
Veronica Salama*
Molly Biklen*
125 Broad Street, 19th Floor
New York, N.Y. 10004
Tel: (212) 607-3300

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
Omar Jadwat
Noor Zafar*

CLEAR PROJECT
MAIN STREET LEGAL SERVICES, INC.
Ramzi Kassem*
Naz Ahmad
Mudassar Hayat Toppa*
Shezza Abboushi Dallal*
CUNY School of Law
2 Court Square
Long Island City, NY 11101
Tel: (718) 340-4558

CENTER FOR CONSTITUTIONAL RIGHTS
Baher Azmy
Samah Sisay*
Diala Shamas*
666 Broadway, 7th Floor
New York, NY 10012
Tel: (212) 614-6464

WASHINGTON SQUARE LEGAL
SERVICES, INC.
Alina Das*
Immigrant Rights Clinic
245 Sullivan Street, 5th Floor

Sidra Mahfooz*
Michael K.T. Tan*
Brian Hauss*
Esha Bhandari*
Vera Eidelman*
Tyler Takemoto*
Brett Max Kaufman*
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2500

New York, New York 10012
Tel: (212) 998-6430

DRATEL & LEWIS
Amy E. Greer
29 Broadway, Suite 1412
New York, NY 10006
Tel: (212) 732-8805
Fax: (212) 571-3792

VAN DER HOUT LLP
Marc Van Der Hout (CA Bar #80778)*
Johnny Sinodis (CA Bar #290402)*
Oona Cahill (CA Bar #354525)*
360 Post St., Suite 800
San Francisco, CA 94108
Tel: (415) 981-3000
Fax: (415) 981-3003

*Counsel for Petitioner*

*Appearing *Pro Hac Vice*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

    I.  A STAY WOULD NULLIFY BOTH OF THIS COURT'S ORDERS ...................................................................................................... 3

    II.  THE EQUITIES FAVOR PETITIONER AND DO NOT JUSTIFY A STAY .......................................................................................... 3

        A.  The Re-Opening of Immigration Proceedings Does Not Alter the Balance of Equities ....................................................................... 3

        B.  Respondents' Assertions Regarding Preclusion and Other Purported Harms Are Unavailing ............................................................ 8

    III. RESPONDENTS ARE NOT LIKELY TO SUCCEED ON THE MERITS ........................................................................................................... 14

        A.  Respondents' Appeal Is Improperly Taken ........................................... 14

        B.  The Court Properly Exercised Jurisdiction ........................................... 16

        C.  The INA Does Not Strip Jurisdiction Over Petitioner's Claims ........ 19

    IV. A STAY WOULD DISSERVE THE PUBLIC INTEREST ....................... 25

    V.  ALTERNATIVELY, THIS COURT SHOULD STAY ONLY THE PROSPECTIVE PORTION OF ITS ORDER ............................................. 26

CONCLUSION ................................................................................................................... 27

# TABLE OF AUTHORITIES

## Cases

*Alli v. Decker*,
650 F.3d 1007 (3d Cir. 2011) .........................................................................19

*Armando C.G. v. Tsoukaris*,
20-CV-5652, 2020 WL 4218429 (D.N.J. July 23, 2020) ...............................19

*Association of Community Organizations for Reform Now v. Illinois State Board of Elections*,
75 F.3d 304 (7th Cir. 1996) ............................................................................15

*Boumediene v. Bush*,
553 U.S. 723 (2008) ........................................................................................17

*Carafas v. LaVallee*,
391 U.S. 234 (1968) ........................................................................................17

*Chehazeh v. Holder*,
666 F.3d 118 (3d Cir. 2012) ...........................................................................23

*Clark v. Martinez*,
543 U.S. 371 (2005) ........................................................................................24

*Cristian A.R. v. Decker*,
453 F. Supp. 3d 670 (D.N.J. 2020) .................................................................19

*DHS v. Thuraissigiam*,
591 U.S. 103 (2020) ........................................................................................18

*Dombrowski v. Pfister*,
380 U.S. 479 (1965) ........................................................................................25

*Duvall v. Attorney General of the United States*,
436 F.3d 382 (3d Cir. 2006) ..................................................................... 9, 10

*EOHC v. DHS*,
950 F.3d 177 (3d Cir. 2020) ..................................................................... 23, 24

*Evitts v. Lucey*,
469 U.S. 387 (1985) ........................................................................................17

*Garcia v. Attorney General of the United States,*
   553 F.3d 724 (3d Cir. 2009) ...................................................................................21

*Guerrero-Lasprilla v. Barr,*
   589 U.S. 221 (2020) ...............................................................................................20

*Gul v. Obama,*
   652 F.3d 12 (D.C. Cir. 2011) .................................................................................18

*In re Pickering,*
   23 I. & N. Dec. 621 (B.I.A. 2003) .........................................................................11

*INS v. St. Cyr,*
   533 U.S. 289 (2001) ...............................................................................................17

*International Association of Machinists and Aerospace Workers v. East Airlines, Inc.,*
   849 F.2d 1481 (D.C. Cir. 1988) .............................................................................15

*Jane v. Rodriguez,*
   No. 20-CV-5922, 2020 WL 6867169 (D.N.J. Nov. 23, 2020) ...............................17

*Jones v. Cunningham,*
   371 U.S. 236 (1963) ...............................................................................................16

*Kucana v. Holder,*
   558 U.S. 233 (2010) ...............................................................................................23

*Madu v. Attorney General of the United States,*
   470 F.3d 1362 (11th Cir. 2006) .............................................................................21

*Mahdawi v. Trump,*
   136 F.4th 443 (2d Cir. 2025) .................................................................................23

*Major v. Orthopedic Equipment Company,*
   561 F.2d 1112 (4th Cir. 1977) ...............................................................................16

*Matter of Cerna,*
   20 I. & N. Dec. 399 (B.I.A. 1991) ...........................................................................5

*Matter of Mogtabi Hassan Azrag,*
   28 I&N Dec. 784 (B.I.A. 2024) .............................................................................11

*Matter of Rahman,*
   20 I. & N. Dec. 480 (B.I.A. 1992) ...........................................................................6

*Matter of Thomas and Thompson,*
   I. & N. Dec. 674 (B.I.A. 2019) ........................................................................11

*McComb v. Jacksonville Paper Company,*
   336 U.S. 187 (1949) ........................................................................18

*Mikel v. Gourley,*
   951 F.2d 166 (8th Cir. 1991) ........................................................................15

*Motorola, Inc. v. Computer Displays International,*
   739 F.2d 1149 (7th Cir. 1984) ........................................................................15

*Munaf v. Geren,*
   553 U.S. 674 (2008) ........................................................................18

*Ndungu v. Attorney General of the United States,*
   126 F.4th 150 (3d Cir. 2025) .................................................................. 9, 10

*Nken v. Holder,*
   556 U.S. 418 (2009) ........................................................................5, 18, 23

*Oestereich v. Selective Serv. System Local Bd. No. 11,*
   393 U.S. 233 (1968) ........................................................................25

*Ohio Bell Telephone Co. v. Public Utilities Commission of Ohio,*
   301 U.S. 292 (1937) ........................................................................14

*Öztürk v. Trump,*
   136 F.4th 382 (2d Cir. 2025) ........................................................................23

*Pinho v. Gonzales,*
   432 F.3d 193 (3d Cir. 2005) ........................................................................11

*Preiser v. Rodriguez,*
   411 U.S. 475 (1973) ........................................................................18

*Reno v. American-Arab Anti-Discrimination Committee,*
   525 U.S. 471 (1999) ........................................................................20, 21, 24

*Rodriguez v. Attorney General. of the United States,*
   844 F.3d 392 (3d Cir. 2016) ........................................................................11

*Rodriguez v. Mayorkas,*
   No. 23-435-CV, 2024 WL 4023841 (2d Cir. Sept. 3, 2024) ........................................22

*Salguero v. Attorney General of the United States,*
770 Fed. Appx. 618 (3d Cir. 2019)......................................................................12

*Securities and Exchange Commission v. Xia,*
2024 WL 3447849 (E.D.N.Y. July 9, 2024)........................................................20

*Sibron v. New York,*
392 U.S. 40 (1968) .............................................................................................17

*Silverman v. Commodity Futures Trading Commission,*
549 F.2d 28 (7th Cir. 1977) ................................................................................14

*Sunday v. Attorney General of the United States,*
832 F.3d 211 (3d Cir. 2016) ...............................................................................12

*Suri v. Trump,*
25-cv-1560, 2025 WL 1806692 (4th Cir. July 1, 2025) ......................... 14, 23

*Swann v. Charlotte-Mecklenburg Board of Education,*
402 U.S. 1 (1971) ...............................................................................................18

*Tazu v. Attorney General of the U.S.,*
975 F.3d 292 (3d Cir. 2020) ...............................................................................21

*Trump v. Int'l Refugee Assistance Project,*
582 U.S. 571 (2017) ...........................................................................................26

*Trump v. J.G.G.,*
145 S. Ct. 1003 (2025)........................................................................................17

*U.S. Fire Insurance Co. v. Asbestospray, Inc.,*
182 F.3d 201 (3d Cir. 1999) ...............................................................................15

*United States v. Hovsepian,*
359 F.3d 1144 (9th Cir. 2004) ............................................................................21

*Valencia-Alvarez v. Gonzales,*
469 F.3d 1319 (9th Cir. 2006) ..............................................................................9

*Younger v. Harris,*
401 U.S. 37 (1971) .............................................................................................25

*Yusupov v. Attorney General of United States,*
518 F.3d 185 (3d Cir. 2008) ...............................................................................23

**Statutes**

28 U.S.C. § 2243 ...........................................................................................18

8 U.S.C. § 1252 ............................................................................................23

8 C.F.R. § 1003.20 ..........................................................................................6

8 C.F.R. § 1003.23 ..........................................................................................4

8 C.F.R. § 1003.30 ..........................................................................................9

8 C.F.R. § 1003.38 ..........................................................................................4

8 C.F.R. § 1003.39 ..........................................................................................4

8 C.F.R. § 214.14 ..........................................................................................12

REAL ID Act, Pub. L. No. 109-13, 119 Stat. 312 (May 11, 2005)................................23

**Other Authorities**

6 Gordon, Mailman, Yale-Loehr & Wada, Immigration Law and Procedure (2025)...........................................................................................................6

## INTRODUCTION

In seeking a stay of this Court's July 17, 2025 order (the "clarification order"), ECF 355, Respondents attempt to resurrect the state of play from months ago, prior to the issuance of the Court's June 11 preliminary injunction, ECF 299. While the immigration judge ("IJ") reopened immigration proceedings, in partial compliance with the Court's order, a stay of the order would only clear the way for Respondents to revert to their pursuit of Petitioner's removal based on the Secretary of State's determination by reasserting the foreign policy ground that this Court has preliminarily enjoined. This Court has already found that continued reliance on the Secretary of State's determination—even short of the ultimate act of removing Petitioner—would indisputably cause irreparable (and uncontested) harms. Respondents offer no reason, old or new, to nullify the Court's orders with a stay. *Infra* Section I.

On the equities alone, Respondents fail to justify a stay. While Respondents seek to portray the IJ's reopening of removal proceedings as somehow ameliorating the irreparable harms that this Court has found Petitioner will be forced to endure in those proceedings, a stay would almost certainly mean that the reopening would be brief and temporary. If a stay were ordered, Respondents would seek to close proceedings again—both on the presently enjoined foreign policy ground and on the second, post-hoc, misrepresentation charge. Unless the foreign policy ground remains enjoined and until the IJ fully and fairly adjudicates the pending request for a waiver of removability under 8 U.S.C. § 1227(a)(1)(H), Petitioner's liberty from further unlawful detention and

1

removal will remain in jeopardy, and the irreparable injuries that this Court has already credited will continue to affect Petitioner. By contrast, Respondents' recitation of the vague specter of so-called "bars" or preclusion and their invocation of other alleged harms are unavailing and insubstantial compared to what is at stake for Petitioner. If this Court denies a stay, and Respondents later secure one or win outright reversal on appeal, they would be able to reopen or otherwise resume removal proceedings based on the now-enjoined Secretary of State's determination. Far from constituting irreparable harm, this would merely follow the ordinary course of events in countless immigration matters involving collateral or appellate proceedings in a variety of postures. *Infra* Section II.

On the merits, Respondents are not likely to prevail on appeal because, as a threshold matter, their appeal is improperly taken as that order is not appealable. Moreover, this Court properly exercised its jurisdiction over Petitioner's claims, without running afoul of the Immigration and Nationality Act ("INA"), when it issued the preliminary injunction in question. *Infra* Section III. And the public interest clearly militates against a stay here. *Infra* Section IV.

Accordingly, this Court should deny Respondents' motion for a stay pending appeal of its July 17 clarification order. In the alternative, if this Court were inclined to grant the stay, it should instead stay only the portion of its July 17 clarification order that requires Respondents to consider Petitioner's waiver request. *Infra* Section V.

2

## I.    A STAY WOULD NULLIFY BOTH OF THIS COURT'S ORDERS

While Respondents' emphasis on the IJ's reopening of proceedings seeks to muddy the waters, it is critical to understand that acceding to Respondents' request for a stay would effectively nullify *both* this Court's subsequent clarification order *and* its preliminary injunction, returning the parties to a position this Court has already ruled untenable—namely, one where Respondents are free to renew their reliance on the Secretary of State's determination to seek Petitioner's removal, while Respondents' appeal of the Court's orders runs its course before the Third Circuit. And the relief Respondents seek would reopen any of the irreparable injuries that Respondents' partial compliance with the Court's orders to date has temporarily abated. Clarification Order 3 (ECF 355) (this Court finding that "the continued post-June 11 efforts to remove him from the United States on the Section 1277 charge are causing various types of harm" amounting to irreparable injury, including reputational, occupational, and speech-related harms). As detailed below, Respondents have failed to demonstrate why they would be entitled to such an extraordinary and dramatic reversal, in the immediate wake of this Court's clarification order and their own recent and limited compliance with the preliminary injunction thus far.

## II.    THE EQUITIES FAVOR PETITIONER AND DO NOT JUSTIFY A STAY

### A.    The Re-Opening of Immigration Proceedings Does Not Alter the Balance of Equities

In its text order regarding Respondents' motion to stay, the Court expressed particular interest in "a detailed analysis of the difference, if any, made by the apparent re-opening of the immigration judge's decision." ECF 361. It is true that Respondents' decision to have the IJ reopen removal proceedings pursuant to this Court's July 17 clarification order ensures "that she would not be divested of her jurisdiction over this case." Clarification Order 9 (ECF 355). The IJ has broad authority to reopen or reconsider any case that has not reached the Board of Immigration Appeals ("BIA"). *See* 8 C.F.R. § 1003.23(b)(1) ("An immigration judge may upon the immigration judge's own motion at any time, or upon motion of DHS or the noncitizen, reopen or reconsider any case in which the judge has rendered a decision, unless jurisdiction is vested with the Board of Immigration Appeals."). Notably, the IJ's June 20 decision had not yet become final at the time the IJ reopened proceedings, because the time for filing an appeal had not yet expired, and no appeal had yet been taken. *See* 8 C.F.R. § 1003.38(b) (providing that an appeal to the BIA must be taken within 30 days); 8 C.F.R. § 1003.39 ("Except when certified to the Board, the decision of the Immigration Judge becomes final upon waiver of appeal or upon expiration of the time to appeal if no appeal is taken whichever occurs first.").

By reopening proceedings, the IJ has also vacated her prior decision so that a new decision can be entered after the required determinations relating to Petitioner's request for a waiver under 8 U.S.C. § 1227(a)(1)(H) of the removability charge alleging misrepresentation in an immigration application. *See* Clarification Order 5 (ECF 355)

4

(clarifying that Court's June 11 preliminary injunction requires Respondents to cause IJ "to consider in an appropriately full and thorough manner, and then determine" whether Petitioner should be afforded evidentiary hearing on waiver request and whether Petitioner should be granted waiver); *see also Matter of Cerna*, 20 I. & N. Dec. 399, 403 (B.I.A. 1991) ("[A] motion to reopen proceedings seeks to reopen proceedings so that new evidence can be presented and so that a new decision can be entered, normally after a further evidentiary hearing."); *cf. Nken v. Holder*, 556 U.S. 418, 429 n.1 (2009) ("But a determination that the BIA should have granted Nken's motion to reopen would necessarily extinguish the finality of the removal order. *See* Tr. of Oral Arg. 42 (Acting Solicitor General) ('[I]f the motion to reopen is granted, that vacates the final order of removal and, therefore, there is no longer a final order of removal pursuant to which the alien could be removed.').").

Therefore, the case is now reopened, and the IJ can now make the required determinations relating to Petitioner's request for a waiver in the ordinary course, which, as this Court noted, should have occurred following the initial issuance of its preliminary injunction. *See* Clarification Order 2 n.1 (ECF 355) ("The Court, today, needs to take a backward-looking action—to reach back and compel the June 20 decision to be vacated or amended—because the June 11 preliminary injunction was not properly complied with.").

However, to the extent Respondents might dispute that vacatur of the June 20 IJ removal order and opinion is automatic, then the reopened removal proceedings,

without more, would do little to remedy the harm to Petitioner occasioned by the continued existence of a removal order premised, even in part, on the likely unconstitutional Secretary of State's determination. And more to the point in this posture, a stay of the Court's clarification order would mean that whatever effect the IJ's reopening has had since Friday would in all likelihood be entirely short-lived.

In addition, the Court's clarification order reminded Respondents to cause the IJ to fully and thoroughly consider, and then determine, both Petitioner's request for an evidentiary hearing on his section 1227(a)(1)(H) waiver request and the request for a waiver of removability itself, without regard for the preliminarily enjoined Secretary of State's determination. Clarification Order 5 (ECF 355). The IJ has reopened proceedings for that purpose.[1] If this Court were to stay its order, including the requirement that Respondents cause the IJ to consider the waiver request, then

---

[1]    In the ordinary course, the evidentiary hearing on the section 1227(a)(1)(H) waiver should be held before an immigration judge in New York City, now that Petitioner has been released from detention in Louisiana, has returned to his home in New York City, and has formally notified both the Executive Office of Immigration Review ("EOIR") and the Department of Homeland Security ("DHS") of his change of address. *See* 8 C.F.R. § 1003.20(b) (providing authority to change venue); *Matter of Rahman,* 20 I. & N. Dec. 480 (B.I.A. 1992) (explaining that good cause for change of venue motion is determined by balancing relevant factors, including location of witnesses, cost of transporting witnesses or evidence to new location, and factors commonly associated with noncitizen's place of residence); 6 Gordon, Mailman, Yale-Loehr & Wada, Immigration Law and Procedure (2025) at § 72.04[3][c] ("If the respondent moves to another area before the hearing commences, or even after it is under way, it is customary to transfer the proceedings to the immigration district near the respondent's new home."). Accordingly, after the IJ reopened removal proceedings, Petitioner filed a motion to change venue on July 18 that remains pending today.

Petitioner would be left facing the same reputational, occupational, and speech-related irreparable harms that this Court already recognized and sought to remedy. *See* Clarification Order 7 (ECF 355) (this Court noting that undisputed evidence "strongly suggests that the Secretary of State's determination is operating as the hurdle that is preventing an evidentiary hearing, and therefore the possibility of a waiver" and that not considering waiver "is no academic matter"); *see, e.g.,* Op. and Order 4–10 (ECF 299).

Finally, the Court stated that Petitioner's uncontested evidence establishes, "as a factual matter," that Petitioner "easily" should be granted a 1227(a)(1)(H) waiver "and that not ruling on the waiver meaningfully raises the odds that the Petitioner will be removed from the United States." Clarification Order 6–8 (ECF 355).[2] Per

---

[2]     *See also* Clarification Order 7 (ECF 355) (quoting Decl. of Stacy Tolchin at ¶15) ("[I]f the sole charge of removal against a noncitizen were under 8 U.S.C. § 1227(a)(1)(A), due to what is perceived as fraud and/or misrepresentation at the time that they adjusted their status, the likelihood of obtaining a waiver under § 1227(a)(1)(H) would be high where the noncitizen has close relationships to U.S. citizen and/or lawful permanent resident family members and they lack any criminal history."); *id.* at 8 (quoting Decl. of Ira Kurzban at ¶ 22) ("[W]aivers pursuant [to] 8 U.S.C. § 1227(a)(1)(H) are regularly granted to LPRs who satisfy the statutory requirements for such relief."); Second Decl. of Emily Ryo ¶¶ 8–9 (ECF 352-6) (stating that "[o]f those removal proceedings commenced between 2012 and 2022 involving individuals charged solely with INA § 237(a)(1)(A) based on § 212(a)(6)(C)(i), and who are seeking relief in the form of a waiver under § 237(a)(1)(H), excluding cases where a decision code was missing, 85% were granted relief," and noting that "[t]his figure likely underestimates the percentage of these cases in which relief is granted where the applicant is a lawful permanent resident whose qualifying relative is a U.S. citizen" like Petitioner here).

uncontradicted expert statements, a fully and fairly adjudicated waiver, consistent with this Court's preliminary injunction, would be granted in the ordinary course of removal proceedings, resulting—as a practical matter and in combination with the enjoined foreign policy ground—in the resolution of removal proceedings in Petitioner's favor. This outcome obviously would vindicate Petitioner's interest in liberty from further unlawful detention and removal.

Conversely, granting the stay Respondents request prior to a full and fair adjudication of the waiver would leave Petitioner living under a sword of Damocles, facing a potential or actual removal order based on the likely unconstitutional Secretary of State's determination as to either or both removability charges during the potentially lengthy duration of Respondents' appeal. The aforementioned irreparable harms to Petitioner's reputation, occupation, and speech would persist unabated.

### B.    Respondents' Assertions Regarding Preclusion and Other Purported Harms Are Unavailing

Respondents suffer no comparable injury in the absence of a stay—whether by way of any bar, preclusion, or otherwise. Should the Third Circuit vacate this Court's preliminary injunction on appeal, nothing prevents Respondents from later pursuing removability based on the Secretary of State's determination, as Respondents seem to concede. Mot. to Stay 6 (ECF 360-1) (Respondents not disputing they could "reopen proceedings or otherwise reinstate the foreign policy ground" should they prevail on appeal). In fact, nothing prevents the IJ from detailing, in any subsequent decision, how

she would have ruled differently, but for this Court's preliminary injunction. Unable to contend that any legal or practical bar actually exists, Respondents offer instead what appears to be an argument about administrative inconvenience as irreparable harm.

Indeed, even if Petitioner's immigration case were to proceed and conclude without the foreign policy ground charge, and even if Respondents in that event would not be able to petition the federal court of appeals for review of a BIA decision in Petitioner's favor that did not include that charge (as only the noncitizen may petition for judicial review), the regulation Respondents cite, 8 C.F.R. § 1003.30, allowing "additional or substituted charges of deportability" but only while proceedings remain open, still would not bar the reopening or resumption of proceedings to reassert the charge if a higher authority stayed or reversed this Court's preliminary injunction. And because any such BIA decision in that scenario would not have been based on the enjoined foreign policy ground, there could be no *res judicata* or other estoppel effect with respect to that ground that would preclude Respondents from charging it anew in the event of a stay or reversal by the Third Circuit. *See, e.g.*, *Valencia-Alvarez v. Gonzales*, 469 F.3d 1319, 1323–24 (9th Cir. 2006) (holding that *res judicata* does not bar government from bringing additional charges where there is no final judgment and no separate action).

Nor does *Duvall v. Attorney General of the United States*, 436 F.3d 382 (3d Cir. 2006), stand for a contrary proposition. In fact, both *Duvall* and the more recent case of *Ndungu v. Attorney General of the United States*, 126 F.4th 150 (3d Cir. 2025), illustrate that *res*

*judicata* in immigration proceedings is "flexible," *Duvall*, 436 F.3d at 390, and does not apply where there has not been a final determination on the merits of an issue, *Ndungu*, 126 F.4th at 166—indeed, in *Duvall*, the court of appeals allowed new proceedings to go forward against a noncitizen for that very reason, 436 F.3d at 392.

At most, then, a potential grant of relief to Petitioner under a section 1227(a)(1)(H) waiver would only affect the post-hoc ground of removal based on the alleged misrepresentation in an immigration application. It would not stand in the way of a separate charge based on the foreign policy ground, should that charge no longer be enjoined if Respondents succeed on appeal.

Far from injecting "absurd inefficiencies . . . into the system," as Respondents contend, Mot. to Stay 6 (ECF 360-1), reopening, remanding, or otherwise resuming removal proceedings following a stay or reversal from the Third Circuit is an unremarkable and frequent occurrence. As the undisputed factual record reflects, "[i]t is … not uncommon for a case to 'ping pong' back-and-forth from the immigration judge and the Board of Immigration Appeals several times before a final administrative order on removability is entered … particularly … in cases raising difficult or novel legal issues." Decl. of Ira J. Kurzban ¶ 17 (ECF 175-1). Further, what Respondents mischaracterize as an extraordinary harm stemming from interference with agency processes also happens all the time as a result of other collateral orders. The Court here has ruled on an issue that is collateral to the immigration proceedings—the constitutionality of the Secretary of State's determination as applied to Petitioner—and

10

is one that could not be addressed in immigration proceedings. Op. 55–78 (ECF 214). Respondents suffer no harm from being foreclosed from relying on a ground this Court—but not the IJ—has the authority to declare unconstitutional. There would be no undue interference with the IJ process as such here, no different from when a federal or state court vacates a criminal conviction based on a constitutional defect, and an IJ must then recognize that the previously convicted noncitizen is no longer removable as charged or is now eligible for relief as a result. *See, e.g., In re Pickering*, 23 I. & N. Dec. 621, 625 (B.I.A. 2003) (holding that "if a court with jurisdiction vacates a conviction based on a defect in the underlying criminal proceedings" then the noncitizen no longer has a "conviction" for immigration purposes and their removability cannot be found on that basis); *Matter of Mogtabi Hassan Azrag*, 28 I&N Dec. 784, 785–86 (B.I.A. 2024) (quoting *Matter of Thomas and Thompson*, I. & N. Dec. 674, 675 (B.I.A. 2019)); *see also, e.g., Rodriguez v. Att'y Gen. of the U.S.*, 844 F.3d 392, 398 (3d Cir. 2016) (holding that state court's vacatur of petitioner's criminal conviction based on defects in underlying criminal proceedings meant that petitioner was "no longer 'convicted' under the INA"); *Pinho v. Gonzales*, 432 F.3d 193, 215–16 (3d Cir. 2005) (citing *Pickering* and holding that where criminal conviction is vacated because of defective or unconstitutional underlying criminal proceedings it may no longer be treated as valid conviction for immigration purposes).

Similar processes are triggered in immigration proceedings when a noncitizen collaterally obtains status from U.S. Citizenship and Immigration Services, which has

sole jurisdiction to consider immediate relative petitions and various forms of humanitarian relief, such as visas for crime victims, trafficking victims, and special juvenile immigration status. *See, e.g., Salguero v. Attorney Gen. of the U.S.*, 770 Fed. Appx. 618, 622–23 (3d Cir. 2019) ("[I]f a U visa application is approved, the alien can move to reopen and terminate the removal proceedings.") (citing 8 C.F.R. § 214.14(c)(5)(i)); *Sunday v. Att'y Gen. of the U.S.*, 832 F.3d 211, 213–14 (3d Cir. 2016) (holding that USCIS rather than immigration judge has sole jurisdiction both to consider request for waiver of inadmissibility regarding U-visa application and over decision whether to ultimately grant U-visa). In neither scenario do collateral proceedings, adjudications, and rulings improperly "interfere" with administrative removal proceedings.

Equally important, any additional administrative hurdles Respondents may now face in the wake of the IJ's June 20 order and decision amount at most to a complexity of their own making, because they did not take steps to ensure compliance with this Court's preliminary injunction. *See* Clarification Order 2 n.1 (ECF 355) ("The June 20 immigration court finding came down *after* this Court's June 11 preliminary injunction. It should not have been made. The Court, today, needs to take a backward-looking action—to reach back and compel the June 20 decision to be vacated or amended— because the June 11 preliminary injunction was not properly complied with."). This Court should not reward lawlessness by permitting Respondents to describe the need for the IJ to reopen proceedings as irreparable harm, when the IJ should have never issued the June 20 order and decision based on the preliminarily enjoined Secretary of

State's determination in the first place. Respondents certainly recognized, the day the preliminary injunction went into effect, that it would impact removal proceedings. *See* Letter from Resp'ts (ECF 304) (Respondents recognizing on June 13 that Petitioner could now seek bond hearing before IJ because foreign policy charge was enjoined); *see also* June 20 Oral Arg. Tr. 9:22–10:3 (during bail hearing before this Court one week later on June 20 counsel for Respondents again represented to Court that IJ would schedule bond hearing within days or "pretty soon"). Respondents' own error, in failing to abide by the Court's preliminary injunction, cannot be the cause of Respondents' irreparable harm.

And should the Third Circuit overturn this Court's decision, any residual risk of inefficient immigration proceedings would be cabined by the fact that the IJ has already concluded an individual hearing and written an opinion in which she relied upon the Secretary of State's determination, and, in any event, would be no greater than the inefficiency attendant to garden variety remands that the Third Circuit regularly issues in connection with Petitions for Review.

It bears emphasis that the Justice Department has the largest law firm in the country, even discounting the scores of lawyers at the Department of Homeland Security. Respondents decide which cases to bring, and it was their decision to file unprecedented and largely untested immigration charges against Petitioner based on his protected speech. If this case now appears constitutionally defective, Respondents,

13

heavily resourced as they are, cannot legitimately complain about any extra labor they might have to shoulder in further pursuit of their relatively novel legal theories.

Besides, Respondents cite no authority supporting the proposition that mere administrative inconvenience or expenditure of resources is a legally cognizable harm, let alone one sufficient to outweigh the specific constitutional injuries that this Court has ruled Petitioner is likely to be suffering. In fact, courts have long held that administrative inconvenience is not a reason to abandon constitutional rights. *See Silverman v. Commodity Futures Trading Comm'n*, 549 F.2d 28, 33 (7th Cir. 1977) (citing *Ohio Bell Telephone Co. v. Pub. Utils. Comm'n of Ohio*, 301 U.S. 292, 304 (1937) ("True it is that administrative convenience or even necessity cannot override the constitutional requirements of due process."); *see also Suri v. Trump*, 25-cv-1560, 2025 WL 1806692, at *1 n.1 (4th Cir. July 1, 2025) (stating that "[t]he Constitution does not yield to administrative convenience" and that "our courts should not become sanctuaries for efficiency at the expense of justice").

And while some judicial regard for executive prerogatives may be due, generally, it cannot go so far as to override a judicial determination that the executive branch may have acted unconstitutionally. Respondents enjoy no discretion to violate the Constitution.

## III. RESPONDENTS ARE NOT LIKELY TO SUCCEED ON THE MERITS

### A.    Respondents' Appeal Is Improperly Taken

Respondents are not likely to succeed on the merits of their appeal and a stay pending appeal of this Court's July 17 clarification order should be denied because Respondents' appeal is improperly taken, as that order is not appealable under 28 U.S.C. § 1292(a)(1), and Respondents have not sought leave to appeal from this Court or the court of appeals.

The Court stated that it was not, through its July 17 clarification order, "expanding the preliminary injunction," as Respondents contend, Mot. to Stay 2 (ECF 360-1), but rather clarifying and interpreting that injunction "as it was written." Clarification Order 9–10 & n.5 (ECF 355). The Court's explicit purpose was "to clarify in three ways the meaning of its June 11 preliminary injunction." *Id.* at 1. An order interpreting or clarifying an injunction is not appealable. *See U.S. Fire Ins. Co. v. Asbestospray, Inc.*, 182 F.3d 201, 207 (3d Cir. 1999) (stating "our appellate jurisdiction under 28 U.S.C. § 1292(a)(1) does not extend to orders . . . that interpret or clarify injunctions"); *see also, e.g., Ass'n of Cmty. Orgs. for Reform Now (ACORN) v. Illinois State Bd. of Elections*, 75 F.3d 304, 306 (7th Cir. 1996) ("[I]nterpretations of injunctions as distinct from modifications of them are not appealable, provided they really are interpretive, and do not change the meaning of—that is, modify—the original injunction."); *Mikel v. Gourley*, 951 F.2d 166, 168 (8th Cir. 1991) ("A mere clarification of an injunction is not a final  appealable order."); *Int'l Ass'n of Machinists & Aerospace Workers v. E. Airlines, Inc.*, 849 F.2d 1481, 1485 (D.C. Cir. 1988) (distinguishing for purposes of appellate jurisdiction between orders that are "mere interpretation[s]" and orders that modify

injunctions); *Motorola, Inc. v. Comput. Displays Int'l*, 739 F.2d 1149, 1155 (7th Cir. 1984) ("Orders that merely interpret or clarify an injunction are not appealable under § 1292(a)(1)."); *Major v. Orthopedic Equip. Co.*, 561 F.2d 1112, 1115 (4th Cir. 1977) ("[The order] is simply an interpretation, not appealable under 28 U.S.C. § 1292(a)(1).").

Petitioner intends to move to dismiss Respondents' appeal (numbered 25-2357) as improperly brought. Respondents' motion for a stay pending appeal of the July 11 clarification order should not be granted at this juncture and in this posture.

## B.    The Court Properly Exercised Jurisdiction

Respondents mechanically stress that the core purpose of habeas is to effectuate a petitioner's release, and suggest that since Petitioner's release has occurred, there is nothing left for this Court to decide in habeas past that point. Of course, this Court did not conclusively release Petitioner on the merits so as to effectively end his habeas case; he was released conditionally—on bail—pending the full adjudication of the merits of his habeas petition. *Cf. Jones v. Cunningham*, 371 U.S. 236, 243 (1963) (holding that parole for state prisoner "imposes conditions which significantly confine and restrain his freedom; this is enough to keep him in the 'custody' of the…parole board within the meaning of the habeas corpus statute"). The petition remains pending, and his ultimate freedom correspondingly is still on the line. Thus, as this Court continues to adjudicate the merits of Petitioner's habeas petition, it can issue any orders that further the ultimate disposition of the case, including the orders Respondents have appealed.

16

Stepping back to a broader view, the purpose of habeas is to remedy unlawful restraints on liberty, including but not limited to unlawful physical confinement, as the Supreme Court recently reaffirmed in the context of a challenge to the process of deportation under the Alien Enemies Act. *See Trump v. J.G.G.*, 145 S. Ct. 1003, 1005 (2025) ("Regardless of whether the detainees formally request release from confinement, because their claims for relief 'necessarily imply the invalidity' of their confinement and removal . . . their claims fall within the 'core' of the writ of habeas corpus.") (collecting cases deeming equitable relief appropriate via habeas); *see also, e.g., Jane v. Rodriguez*, No. 20-CV-5922, 2020 WL 6867169, at *1 (D.N.J. Nov. 23, 2020) (considering habeas petitioners' claim for declaratory relief that detention center failed to follow ICE regulations). Habeas is at its strongest when constraining unilateral executive detention with little or no prior process, *INS v. St. Cyr*, 533 U.S. 289, 301 (2001), and is designed to ensure "meaningful" habeas review free from executive manipulation, *Boumediene v. Bush*, 553 U.S. 723, 783, 797–98 (2008).

Even if one considered Petitioner fully released (notwithstanding his conditional bail release), this Court, sitting in habeas, would still enjoy broad power even corollary to release. That is why, for example, even after release a habeas court can adjudicate unlawful government actions to the extent a released petitioner is suffering "collateral consequences" from the detention. *See Evitts v. Lucey*, 469 U.S. 387, 391 n.4 (1985) (finding case "not moot" because "some collateral consequences of [petitioner's] conviction remain"); *Sibron v. New York*, 392 U.S. 40, 55 (1968) (possibility of collateral

consequences preserves habeas jurisdiction); *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968) (concluding that "once the federal jurisdiction has attached in the District Court, it is not defeated by the release of the petitioner prior to completion of proceedings on such application"); *Gul v. Obama*, 652 F.3d 12, 16 (D.C. Cir. 2011) (observing detainees may litigate habeas cases post-transfer upon showing of continuing collateral consequences); *see also* 28 U.S.C. § 2243 (habeas court "shall … dispose of the matter as law and justice require").

The cases Respondents rely on for the anodyne proposition that the function of habeas is to secure release, Mot. to Stay 2–3 (ECF 360-1), do not limit the Court's actions here, as the relief sought in those cases was unrelated to protecting any interest in release. *See DHS v. Thuraissigiam,* 591 U.S. 103, 118 (2020) (Suspension Clause does not authorize district court to require renewed "credible fear" proceedings beyond what Congress has specifically prescribed for individual seeking entry to United States); *Munaf v. Geren*, 553 U.S. 674, 693–94 (2008) (district court not authorized to enjoin transfer of petitioner following release from U.S. to Iraqi custody or to proscribe application of Iraqi criminal process in light of Iraqi sovereign prerogatives); *Preiser v. Rodriguez,* 411 U.S. 475, 484 (1973) (only habeas, subject to exhaustion requirements, and not 42 U.S.C. § 1983 actions can effectuate release from custody). This Court has not similarly overstepped its habeas authority. The Court used its broad equitable "power to ensure that its injunctive decrees are effective as a practical matter"— including a decree supporting the ultimate adjudication of Petitioner's habeas petition.

Clarification Order 7 (ECF 355) (citing *Nken*, 556 U.S. at 428; *Swann v. Charlotte-Mecklenburg Bd. of Ed.*, 402 U.S. 1, 15–16 (1971); *McComb v. Jack. Paper Co.*, 336 U.S. 187, 193 (1949)).

And, even if the Court credited Respondents' view that habeas power is limited to release, Petitioner brought this case as both a habeas corpus petition and a complaint under 28 U.S.C. § 1331. Third Am. Compl. (ECF 236). The Court, sitting in equity, has the inherent authority to enjoin presumptively unconstitutional government conduct, including through the orders Respondents seek to stay. Hybrid pleadings are routinely filed in this Circuit seeking various forms of relief. *See, e.g., Alli v. Decker*, 650 F.3d 1007, 1009–10, 1016 (3d Cir. 2011) (considering "combined habeas petition and civil complaint" that sought declaratory relief regarding immigration bond hearings); *Cristian A.R. v. Decker*, 453 F. Supp. 3d 670, 682 (D.N.J. 2020) (granting relief on constitutional conditions of confinement claim in hybrid habeas petition and civil complaint); *Armando C.G. v. Tsoukaris*, 20-CV-5652, 2020 WL 4218429, at *7 (D.N.J. July 23, 2020) (same).

## C.    The INA Does Not Strip Jurisdiction Over Petitioner's Claims

Respondents rehash arguments about the INA's judicial review provisions that this Court has already rejected. The arguments fare no better this time around. This Court has already found that the June 11 preliminary injunction was not foreclosed by 8 U.S.C. §§ 1252(g) and (b)(9). Op. 100–104, 12–39 (ECF 214). And if it had jurisdiction to instruct Respondents on June 11 that they could not seek to remove Petitioner based on the likely unconstitutional Secretary of State's determination, it has the same

authority to clarify on July 17 that, as a practical matter, the preliminary injunction forecloses any reliance on that determination and the foreign policy ground and requires vacatur or amendment of the IJ's decision. *See Sec. & Exch. Comm'n v. Xia*, 2024 WL 3447849, at *5–7 (E.D.N.Y. July 9, 2024) (collecting cases discussing "long established power" of district courts to enforce, modify, or clarify preliminary injunctions pending appeal in order to preserve status quo); Clarification Order 2 n.10 (ECF 355).

As this Court has already determined, no INA jurisdictional provision bars review of Petitioner's claims. The Supreme Court has "consistently applied" the "well-settled" and strong presumption favoring judicial review of administrative action to immigration statutes. *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 229 (2020) (cleaned up) (collecting cases). That presumption, which can only be overcome by "clear and convincing evidence of congressional intent to preclude judicial review," applies here. *Id.* (cleaned up).

First, 8 U.S.C. § 1252(g) is a "tightly drawn" provision. Op. 101 (ECF 214) (collecting cases). It applies "only to three discrete actions" taken in the discretion of the *Attorney General* to commence proceedings, adjudicate cases, or execute removal orders. *Reno v. Am.-Arab Anti-Discrimination Comm.* ("*AADC*"), 525 U.S. 471, 482 (1999). Here, Petitioner challenges the constitutionality of the *Secretary of State's* determination, and the Court's order enjoins Respondents only from "seeking to remove the Petitioner" on that basis. Clarification Order 2 (ECF 355). The Secretary of State's determination is not "one of the three specific actions covered by the statute, and it is

not an exercise of prosecutorial discretion" that section 1252(g) was designed to protect. Op. 101 (ECF 214) (cleaned up). Indeed, *AADC* itself contemplated that "decisions or actions that may be part of the deportation process" would not fall within the "narrow" ambit of section 1252(g) because they do not interfere with the Attorney General's discretion to initiate proceedings or "abandon the endeavor" during the three discrete stages specified by the statute. 525 U.S. at 482, 483, 487; *see also Tazu v. Att'y Gen. of the U.S.*, 975 F.3d 292, 298 (3d Cir. 2020) (noting that section 1252(g) does not reach claims "challen[ging] Government actions taken *before* the Attorney General tried to execute [any] order" (emphasis added)). Thus, it poses no bar here, as this Court has already held.

Petitioner's claim challenging Respondents' "very authority" to seek removal on an unlawful basis does "not implicate[]" 1252(g). *Garcia v. Att'y Gen. of the U.S.*, 553 F.3d 724, 729 (3d Cir. 2009); Mot. to Stay 4 (ECF 360-1). Following *AADC*'s analysis, courts have jurisdiction to review challenges to the legal authority underpinning the executive's actions. *See, e.g., United States v. Hovsepian*, 359 F.3d 1144, 1155 (9th Cir. 2004) (en banc) ("The district court may consider a purely legal question that does not challenge the Attorney General's discretionary authority, even if the answer to that legal question—a description of the relevant law—forms the backdrop against which the Attorney General later will exercise discretionary authority."); *Madu v. Att'y Gen. of the U.S.*, 470 F.3d 1362, 1368 (11th Cir. 2006) (explaining that section 1252(g) "does not proscribe substantive review of the underlying legal bases for those discretionary decisions and

actions"). That is all this Court's order does: it reviews the legality of the Secretary of State's determination as a basis for Petitioner's detention and removal, and enjoins Respondents from continuing their likely unlawful behavior.

Respondents argue that directing the IJ to "consider in an appropriately full and thorough manner" Petitioner's eligibility for a waiver under 8 U.S.C. § 1227(a)(1)(H), Clarification Order 5 (ECF 355), "has undermined" their authority to make "discretionary determinations," Mot. to Stay 4 (ECF 360-1). That argument, too, fails. The Court's order simply directs that Petitioner be afforded a fair and full *opportunity* to establish his eligibility for a waiver in the ordinary course of comparable removal cases without being prejudiced by the IJ's consideration of the likely unconstitutional Secretary of State's determination; it does not dictate the outcome. *See Rodriguez v. Mayorkas*, No. 23-435-CV, 2024 WL 4023841, at *2 (2d Cir. Sept. 3, 2024) (district court had jurisdiction to review whether agency "failed to comply with the statutory procedural requirements"). As such, it is not barred by section 1252(g).

Respondents argue that the Court's order "micromanage[s] Petitioner's removal proceedings by controlling the content of, and bases for, the IJ's decisions." Mot. to Stay 3 (ECF 360-1). But this assertion, misleading as it may be, is also beside the point. Section 1252(g) only applies to bar review of a "cause or claim" arising from the Attorney General's decisions or actions to undertake the three acts specified in the statute. 8 U.S.C. § 1252(g). As explained above, Petitioner's claim is not barred because it challenges a predicate action by the Secretary of State. And even if the *remedy*

addressing that claim involves an order that implicates "the operations of removal proceedings," Mot. to Stay 4 (ECF 360-1), section 1252(g) does not deprive this Court of jurisdiction to review the underlying claim. By contrast, other provisions of 8 U.S.C. § 1252 deal expressly with limitations on relief. *See, e.g.,* 8 U.S.C. §§ 1252(e)(1), (f). "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Kucana v. Holder*, 558 U.S. 233, 249 (2010) (cleaned up). "That is particularly true" where, as here, the provisions referenced "were enacted as part of a unified overhaul of judicial review procedures." *Nken*, 556 U.S. at 430–431; *see* REAL ID Act, Pub. L. No. 109-13, 119 Stat. 312 (May 11, 2005) (amending judicial review provision of INA to curtail habeas review of final orders of removal).

Second, 8 U.S.C. § 1252(b)(9) does not strip jurisdiction here because Petitioner has not been issued a final order of removal. *See* Op. 12–39 (ECF 214); *Chehazeh v. Holder*, 666 F.3d 118, 131–33 (3d Cir. 2012); *Öztürk v. Trump*, 136 F.4th 382, 399 (2d Cir. 2025); *Suri*, 2025 WL 1806692, at *9; *see also Yusupov v. Att'y Gen. of U.S.,* 518 F.3d 185, 195 (3d Cir. 2008) (citing 8 U.S.C. § 1101(a)(47)(B) and noting that an order becomes "final" upon the earlier of a determination by the BIA affirming the order, or the expiration of the appeal period). Additionally, even if section 1252(b)(9) applied to pre-order cases, judicial review would be required to provide "meaningful" relief. *Jennings v. Rodriguez,* 583 U.S. 281, 293 (2018) (plurality opinion); *see also EOHC v. DHS*,

23

950 F.3d 177, 180 (3d Cir. 2020); Op. 54–101 (ECF 214). Petitioner's "core argument" is that his free speech rights "are being violated, *now*." *Mahdawi v. Trump,* 136 F.4th 443, 452 (2d Cir. 2025). By seeking to remove him based on the Secretary of State's likely unconstitutional determination, Respondents are chilling his speech and that of others who similarly seek to speak out in support of Palestinian rights. Decl. of Mahmoud Khalil ¶¶ 5–6 (ECF 352-2). If Petitioner were forced to wait until the end of the petition for review ("PFR") process to raise his claims, "it will be too late to review or remedy" the harms he and others are experiencing now. *EOHC,* 950 F.3d at 187. This "here-and-now First Amendment injur[y]," Op. 88 (ECF 214), coupled with the fact that the IJ and BIA do not have authority to grant Petitioner the relief he seeks or adequately develop the record for review by the court of appeals, strongly suggests that "meaningful review" cannot be provided through the PFR process. *Id.* at 54–101. Section 1252(b)(9) does not channel Petitioner's claims or preclude this Court's jurisdiction to issue its preliminary injunction and the subsequent July 17 clarification order.[3]

Finally, even assuming that section 1252(b)(9) applies here, the First Amendment itself would still require immediate review. *See* Op. 84–90 (ECF 214). As Justice

---

[3]    To the extent the Court finds section 1252(b)(9) ambiguous as to its scope, *see EOHC.,* 950 F.3d at 185, the canon of constitutional avoidance favors reading the statute not to apply to Petitioner's claims, as doing so would raise serious First Amendment concerns. *See infra; see also Clark v. Martinez,* 543 U.S. 371, 381 (2005).

Ginsburg explained in her concurrence in *AADC*, the cases addressing federal injunctions that stop state proceedings and related case law provide a "helpful framework." 525 U.S. at 492–93 (Ginsburg, J., concurring) (discussing *Dombrowski v. Pfister*, 380 U.S. 479 (1965); *Younger v. Harris*, 401 U.S. 37, 47–53 (1971); *Oestereich v. Selective Serv. System Local Bd. No. 11*, 393 U.S. 233 (1968)). Applied here, those cases "suggest[] that interlocutory intervention in [immigration] proceedings would be in order, notwithstanding a statutory bar, if the [agency] acts in bad faith, lawlessly, or in patent violation of constitutional rights." *Id.* at 493. Petitioner has readily made that showing here.[4] The factual record is replete with unrebutted evidence that Petitioner was targeted for his speech, and this Court has already found that the Secretary of State's determination as to Petitioner is likely unconstitutional. *See* ECF 272 at 73 (noting that "Petitioner's case is a First Amendment case"). Thus, even assuming 1252(b)(9) applies to some of Petitioner's claims, the First Amendment requires this Court's continuing review, with no stay, to remedy the ongoing injury to his speech rights.

## IV.    A STAY WOULD DISSERVE THE PUBLIC INTEREST

As this Court has already held, "the public has no interest in the enforcement of what is very likely an unconstitutional statute," Op. and Order 12 (ECF 299)(citations

---

[4]    *See, e.g.,* Third Am. Compl. ¶¶ 30–33, 73–84 (ECF 236); *see also* Khalil Decl.. Ex. A ¶ 10 (ECF 284-1) (describing impact seeing official statements has had on him); June 20 Oral Arg. Tr. at 61:23–25, 62:1 (noting based on record "that there is at least something to the underlying claim that there is an effort to use the immigration charge here to punish the petitioner," which, "of course… would be unconstitutional"); Memo. in Supp. of Pet'r's Mot. for Prelim. Inj. 17 (ECF 345-1) (collecting similar cases).

omitted), and "[t]here is a strong public interest in upholding the requirements of the First Amendment," *id.* (citations omitted). A stay would pave the way to Respondents' continued pursuit of Petitioner's removal based on the likely unconstitutional Secretary of State's determination—an outcome that would not be in the public interest. By the same token, a stay would also exacerbate the chilling effect this Court recognized the Secretary of State's determination has on Petitioner's speech. Op. and Order 10 n.11 (ECF 299). That would run counter to the public interest, too.

## V. ALTERNATIVELY, THIS COURT SHOULD STAY ONLY THE PROSPECTIVE PORTION OF ITS ORDER

If this Court were nonetheless inclined to grant a stay pending appeal, it should, in the alternative, stay only the portion of its July 17 clarification order that requires Respondents to consider and determine Petitioner's waiver request. While Petitioner disputes Respondents' claimed harms from complying with this Court's order, any such claimed harm would be eliminated or at least mitigated if this Court stayed the portion of its July 17 clarification order that requires the consideration of Petitioner's waiver request.

In doing so, this Court should make clear that its preliminary injunction remains in effect with respect to the actions Respondents have already taken in reopening immigration proceedings. *See, e.g., Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571, 580 (2017) (a court may "in its discretion, tailor a stay so that it operates with respect to only some portion of the proceeding" (cleaned up)). That would, in turn, mitigate to

a degree the irreparable injuries Petitioner faces—including by keeping at bay the harm of having to continue to litigate the preliminarily enjoined Secretary of State's determination on appeal to the BIA, at the risk of being "subject to a final order of removal, losing his status as a lawful permanent resident and therefore his ability to work," Clarification Order 3 (ECF 355), and by cabining the ongoing reputational, occupational, and speech-related harms Petitioner experiences, flowing from Respondents' continued pursuit of the foreign policy charge.

In this scenario, should Respondents nonetheless choose to proceed on Petitioner's request for a waiver of removability, they would be doing so of their own volition.

For all of these reasons, if this Court were inclined to grant a stay pending appeal, it should, in the alternative, stay only that portion of its July 17 clarification order that requires Respondents to consider and determine Petitioner's waiver request, while preserving the order to the extent it required reopening Petitioner's immigration proceedings and precludes moving forward in any way based on the Secretary of State's determination.

## CONCLUSION

The Court should deny Respondents' motion for a stay pending appeal of its July 17 clarification order. In the alternative, if this Court were inclined to grant the stay, it

should instead stay only the portion of its July 17 clarification order that requires Respondents to consider and determine Petitioner's waiver request.

DATE:      July 23, 2025

Respectfully submitted,

/s/ Naz Ahmad

AMERICAN CIVIL LIBERTIES UNION OF
NEW JERSEY FOUNDATION
Jeanne LoCicero
Farrin R. Anello
Molly K.C. Linhorst
Liza Weisberg
570 Broad Street, 11th Floor
Newark, New Jersey 07102
Tel: (973) 854-1715

NEW YORK CIVIL LIBERTIES UNION
FOUNDATION
Amy Belsher*
Robert Hodgson*
Veronica Salama*
Molly Biklen*
125 Broad Street, 19th Floor
New York, N.Y. 10004
Tel: (212) 607-3300

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
Omar Jadwat
Noor Zafar*
Sidra Mahfooz*
Michael K.T. Tan*
Brian Hauss*
Esha Bhandari*
Vera Eidelman*
Tyler Takemoto*
Brett Max Kaufman*

CLEAR PROJECT
MAIN STREET LEGAL SERVICES, INC.
Ramzi Kassem*
Naz Ahmad
Mudassar Hayat Toppa*
Shezza Abboushi Dallal*
CUNY School of Law
2 Court Square
Long Island City, NY 11101
Tel: (718) 340-4558

CENTER FOR CONSTITUTIONAL RIGHTS
Baher Azmy
Samah Sisay*
Diala Shamas*
666 Broadway, 7th Floor
New York, NY 10012
Tel: (212) 614-6464

WASHINGTON SQUARE LEGAL
SERVICES, INC.
Alina Das*
Immigrant Rights Clinic
245 Sullivan Street, 5th Floor
New York, New York 10012
Tel: (212) 998-6430

DRATEL & LEWIS
Amy E. Greer
29 Broadway, Suite 1412
New York, NY 10006

28

125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2500

Tel: (212) 732-8805
Fax: (212) 571-3792

VAN DER HOUT LLP
Marc Van Der Hout (CA Bar #80778)*
Johnny Sinodis (CA Bar #290402)*
Oona Cahill (CA Bar #354525)*
360 Post St., Suite 800
San Francisco, CA 94108
Tel: (415) 981-3000
Fax: (415) 981-3003

*Counsel for Petitioner*

*Appearing *Pro Hac Vice*