UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MAHMOUD KHALIL,

    *Petitioner,*

v.

DONALD J. TRUMP, *et al.*,

    *Respondents.*

*Civ. Act. No.* 25-cv-1963 (MEF) (MAH)

---

RESPONDENTS' REPLY IN SUPPORT OF
RESPONDENTS' MOTION TO STAY THE COURT'S JULY 17, 2025 ORDER
MODIFYING THE PRELIMINARY INJUNCTION PENDING APPEAL

---

On the brief:

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

YAAKOV M. ROTH
Principal Deputy Assistant Attorney General

DREW C. ENSIGN
Deputy Assistant Attorney General

AUGUST E. FLENTJE
Special Counsel for Immigration Litigation

ALANNA T. DUONG
DHRUMAN Y. SAMPAT
Senior Litigation Counsel

## **TABLE OF CONTENTS**

INTRODUCTION ...........................................................................................................................1

ARGUMENT ...................................................................................................................................2

    I.    The Government is Likely to Succeed on Appeal ..............................................................2

        A.    The Court's July 17 Order is appealable ..................................................................2

        B.    The Court Lacked Jurisdiction to Enter the July 17 Order. .....................................2

    II.    The Government Will Be Irreparably Harmed Without a Stay .........................................4

    III.    The Balance of Equities and Public Interest Favor a Stay. ..............................................6

CONCLUSION ................................................................................................................................8

# **TABLE OF AUTHORITIES**

## Cases

*Amrollah v. Napolitano*,
  710 F.3d 568 (5th Cir. 2013) ...................................................................................4

*Arab Anti-Discrimination Comm. v. Reno*,
  119 F.3d 1367 (9th Cir. 1997) .................................................................................5

*Duvall v. Atty. Gen. of U.S.*,
  436 F.3d 382 (3d Cir. 2006) ....................................................................................4

*Garcia v. Att'y Gen. of the U.S.*,
  553 F.3d 724 (3d Cir. 2009) ....................................................................................3

*Massieu v. Reno*,
  915 F. Supp. 681 (D.N.J.) .................................................................................. 5, 6

*Nken v. Holder*,
  556 U.S. 418 (2009) ................................................................................................8

*Sears, Roebuck & Co. v. NLRB*,
  473 F.2d 91 (D.C. Cir. 1972) ..................................................................................7

*Small v. Kiley*,
  567 F.2d 163 (2d Cir. 1977) ....................................................................................7

*Tazu v. Att'y Gen. of the U.S.*,
  975 F.3d 292 (3d Cir. 2020) ............................................................................... 3, 4

*U.S. Fire Ins. Co. v. Asbestospray, Inc.*,
  182 F.3d 201 (3d Cir. 1999) ....................................................................................2

*United States v. Martinez-Fuerte*,
  428 U.S. 543 (1976) ................................................................................................8

## Statutes

8 U.S.C. § 1182(a)(6)(C)(i) ........................................................................................2

8 U.S.C. § 1227(a)(1)(A) ............................................................................................2

8 U.S.C. § 1227(a)(1)(H) .................................................................................... 2, 3, 4

8 U.S.C. § 1227(a)(4)(C) .................................................................................... 1, 2, 7

8 U.S.C. § 1252(g) ......................................................................................................3

28 U.S.C. § 1292(a)(1) ................................................................................................2

# INTRODUCTION

This Court's July 17 Order marks an unprecedent intrusion into the Petitioners' ongoing removal proceedings in contravention of the historic limits on habeas jurisdiction and the explicit jurisdiction-stripping provisions. A stay of this Court's July 17 Order pending appeal is warranted.[1]

Petitioner argues that a stay is not needed because, if this Court's injunction is reversed, the Government can simply reopen immigration proceedings to pursue removal based on the Secretary of State's foreign-policy determination. That is an empty promise. Petitioner cites *no case* in which a district court has entered an injunction like this one—ordering removal proceedings to move forward while prohibiting the Government from relying on a particular ground for removal. The Government should not be forced to risk forfeiture of a potentially valid ground for removal based on Petitioner's self-serving assurances. Nor has Petitioner shown that he will suffer any harm if a stay is granted. This Court's preliminary injunction prohibits Petitioner's removal, and this Court has ordered his release from custody. Although Petitioner raises the specter of reputational and occupational harms, those harms are not a result of the removal proceedings; they are a result of the Secretary of State's public determination that Petitioner's "presence or activities" in the United States will have "adverse foreign policy consequences." 8 U.S.C. § 1227(a)(4)(C). And while Petitioner invokes a free speech injury, nothing prevents him from speaking on any topic he chooses. Indeed, he is currently doing exactly that.

Accordingly, the Court should stay its July 17 Order pending appeal.

---

[1] The Court asked for a "detailed analysis" of certain points and characterized a certain issue as being "substantially developed." ECF 361. The Court then gave the Government a mere fifteen hours to draft this reply, nine of which were outside normal business hours. *Id.* The Court's deadline makes any fulsome analysis of the issues impossible. Nonetheless, in the interest of receiving a decision as quickly as possible, the Government is complying with the deadline and focuses this reply on just a few points.

## ARGUMENT

**I.    The Government is Likely to Succeed on Appeal.**

**A.    The Court's July 17 Order is appealable.**

The Court's July 17 Order is appealable for at least two reasons. First, the July 17 Order is an appealable order because it modified the court's preliminary injunction. *See* 28 U.S.C. § 1292(a)(1) (authorizing appeals of orders "modifying … injunctions"). Although this Court stated that it was not "expanding" its June 11 preliminary injunction, ECF 355 at 9 n.5, the " substance of the order rather than merely its language" controls. *U.S. Fire Ins. Co. v. Asbestospray, Inc.*, 182 F.3d 201, 207 (3d Cir. 1999). In substance, the Court's Order directs the Government to cause the immigration judge (1) to vacate or amend her June 20 decision to the extent it finds that Petitioner is removable from the United States based on the Secretary of State's foreign-policy determination, 8 U.S.C. § 1227(a)(4)(C); and (2) to evaluate Petitioner's eligibility for a Section 237(a)(1)(H), 8 U.S.C. § 1227(a)(1)(H), waiver from removability due to his document-fraud charge, 8 U.S.C. §§ 1227(a)(1)(A), 1182(a)(6)(C)(i), without reference to the Secretary of State's foreign-policy determination. *See generally* Order. The Court's June 11 injunction did not require those specific actions. *See* ECF 299, at 12–13. Thus, the July 17 Order was an appealable modification of the preliminary injunction.

Second, if the Court's July 17 Order did not modify the June 11 preliminary injunction, then it is subsumed within the Government's existing appeal of the June 11 preliminary injunction. Either way, the Court's July 17 Order is appealable.

**B.    The Court Lacked Jurisdiction to Enter the July 17 Order.**

The Court's July 17 Order violates clear statutory bars stripping district courts of jurisdiction to act as appellate tribunals reviewing immigration proceedings. As the Government explained in its motion, Section 1252 provides that, except for courts of appeals deciding a petition for review, "no

2

court shall have jurisdiction to hear any cause or claim by . . . any alien arising from the decision or action by the Attorney General to . . . adjudicate cases . . . against any alien under this chapter." 8 U.S.C. § 1252(g); *see also id.* § 1252(a)(5), (b)(9). The Court's July 17 Order violates this prohibition: it interferes directly in the immigration proceedings and commands the immigration judge to take (or not take) specific actions to adjudicate Petitioner's case. Petitioner argues that this case and the Court's Order are permissible because they focus on the *Secretary of State's determination* and only incidentally involve a remedy that affects the operations of removal proceedings. Pet'r Memo 20–23. That is false. The July 17 Order did not review any claim about the Secretary of State's actions. The Court reviewed *the immigration judge's* adjudication of the removal case. *See* ECF 347. And the Court did not order the Secretary of State to do something that incidentally affected removal proceedings. Rather, the Court commanded *the immigration judge* to reopen proceedings, vacate her prior opinion, and adjudicate Petitioner's Section 237 waiver without reliance on the foreign-policy determination. *See* ECF 355 at 2 ("[T]he Respondents must cause the immigration judge to promptly vacate or amend her June 20 decision . . . ."); *id.* at 5 ("[T]he Respondents must cause the immigration judge to consider in an appropriately full and thorough manner" the Section 237(a)(1)(H) waiver.); *id.* at 9 ("[T]he Respondents shall promptly cause the immigration judge to take all appropriate steps on July 18 that would be required to ensure that she would not be divested of her jurisdiction over this case . . . ."). The Court's July 17 Order directly contravenes § 1252's prohibition.

It is also not true that Petitioner has challenged Respondents' "very authority" to seek removal. Pet'r Memo 21. Petitioner relies on *Garcia v. Att'y Gen. of the U.S.*, 553 F.3d 724, 729 (3d Cir. 2009), but "*Garcia* addressed only a case in which the [Immigration and Nationality] Act itself took away the Attorney General's authority." *Tazu v. Att'y Gen. of the U.S.*, 975 F.3d 292, 298 (3d Cir. 2020). *Garcia* was about "statutory authority," and does not permit "challenge[s] to the Executive's general lack of authority to violate due process, equal protection, the Administrative Procedure Act, or some other

3

federal law." *Id.* Under the statutory scheme and Supreme Court case law, those claims are funneled into a "single petition for review filed with the appropriate court of appeals." *Id.* This Court, sitting in habeas, did not have jurisdiction to issue its July 17 Order.

## II. The Government Will Be Irreparably Harmed Without a Stay.

Requiring the immigration judge to reach a final decision on the charges of removability or a Section 237 waiver may create complicated issues of collateral estoppel and res judicata that cannot simply be remedied if this Court's preliminary injunctions are overturned on appeal. "A final decision by an immigration judge has a preclusive effect on future litigation and agency decisions." *Amrollah v. Napolitano*, 710 F.3d 568, 571 (5th Cir. 2013); *see Duvall v. Atty. Gen. of U.S.*, 436 F.3d 382 (3d Cir. 2006). Thus, a final decision that Petitioner is not removable under the foreign-policy ground may have preclusive effect, and a final decision that Petitioner is eligible for a Section 237 waiver may have preclusive effect.

Petitioner argues that such decisions would not be final determinations on the merits. Pet'r Memo 9–10. But this argument flies in the face of what Petitioner seeks to accomplish through this Court's injunctions directed at the immigration judge: a final determination that he is not removable based on the foreign-policy ground and a final determination that he is eligible for a Section 237 waiver. *See id.* at 8 (noting that Petitioner seeks a "resolution of removal proceedings in Petitioner's favor"). Indeed, Petitioner seems to concede that an order granting him a Section 237 waiver may well be final and prevent the Government from pursuing the separate document-fraud charge even if the Third Circuit vacates this Court's injunctions. *See id.* at 10 ("At most, then, a potential grant of relief to Petitioner under a section 1227(a)(1)(H) waiver would only affect the post-hoc ground of removal based on the alleged misrepresentation in an immigration application.").

Petitioner says that res judicata is "flexible" in this context, *id.* at 9–10, but he points to no case analyzing issue or claim preclusion in similar circumstances. Notably, in cases where district

4

courts have directly interfered with removal proceedings, the injunctions stayed the removal proceedings *entirely*. *See Am.-Arab Anti-Discrimination Comm. v. Reno*, 119 F.3d 1367, 1370 (9th Cir. 1997), *vacated*, 525 U.S. 471 (1999), *and vacated*, 170 F.3d 1264 (9th Cir. 1999); *Massieu v. Reno*, 915 F. Supp. 681, 711 (D.N.J.), *rev'd*, 91 F.3d 416 (3d Cir. 1996). In contrast, this Court has preliminarily enjoined a key portion of the removal proceedings, inserted new limits on the immigration judge's authority, and then ordered the removal case to proceed as if everything were normal. Petitioner's unsupported assurance that the Government will not be barred by preclusion from pursuing removal based on the foreign-policy charge if this Court's June 11 preliminary injunction is reversed is small comfort. Even if this Court were to believe that collateral estoppel and res judicata will not preclude removal proceedings based on the foreign-policy ground if the Government prevails on appeal, there is no guarantee that the Board of Immigration Appeals ("BIA") or a circuit court of appeals hearing a petition for review ("PFR") will agree with this Court's view. And if the question were presented, Petitioner would undoubtedly vigorously urge those tribunals to apply preclusion rules to bar any further efforts to remove him.

Next, Petitioner contends that immigration cases frequently "ping-pong" back-and-forth between the immigration court, the BIA, and the Third Circuit. Pet'r Memo 10. That is true—but only within the context of the streamlined PFR process established by § 1252, not as a result of a collateral attack on those immigration proceedings through a habeas proceeding in district court. Petitioner is thus wrong to say that this kind of outside interference with removal proceedings "happens all the time." Pet'r Memo 10. Petitioner cites no case where a district court has entered injunctions like this Court's July 17 Order. The BIA cases and PFR cases he does cite involved the vacatur of a criminal conviction underlying a charge of removability by a court with jurisdiction to hear challenges to the conviction, as well as cases in which an alien seeks immigration status through another administrative process. *Id.* at 11–12. Those circumstances are not remotely analogous: This

5

Court has not vacated the Secretary of State's foreign-policy determination, and the Court has not granted Petitioner some other immigration status. Moreover, even if the Secretary of State's foreign-policy determination had been vacated or Petitioner had received some new status, the proper venue to raise those issues is the removal proceedings themselves or in the court of appeals in a PFR, as illustrated by the cases Petitioner cites—not to collaterally attack the immigration proceedings through district court litigation.

Finally, Petitioner says that this is all the Government's fault anyway because it allegedly violated the preliminary injunction and brought these removal charges in the first place. Pet'r Memo 12–14. The Government, however, moved forward with the removal proceedings based on its reasonable reading of the Court's preliminary injunction. And the Government brought removal proceedings to enforce immigration laws duly enacted by Congress and to protect the foreign policy interests of the United States, as determined by the Secretary of State. Any procedural complexity and uncertainty is directly traceable to Petitioner's decision to challenge those removal charges through this collateral proceeding in district court, rather than through the streamlined review process that Congress created by statute.

### III. The Balance of Equities and Public Interest Favor a Stay.

Petitioner does not identify any actual harm that he would suffer during the pendency of the appeal. Pet'r Memo 4–8. This Court has ordered that Petitioner be released. *See* ECF 316. That is all the relief a court sitting in habeas is authorized to grant. *See* ECF 360-1 at 2-3. Petitioner cannot convert the writ of habeas corpus into a cure-all to redress every conceivable harm he might experience. *Id.*

Even if he could, a stay of the Court's July 17 Order will not redress any of the harms Petitioner identifies. In addition to ordering his release, this Court's June 11 preliminary injunction prohibits the Government from removing Petitioner during this litigation. *See* ECF 299 at 12. Nor can Petitioner

show that he will suffer any alleged reputational, occupational, or speech injury if this Court's July 17 Order is stayed. Those harms do not derive from the ongoing removal proceedings; they derive from the Secretary of State's public (and ongoing) determination that Petitioner is removable under 8 U.S.C. § 1227(a)(4)(C) as an alien "whose presence or activities in the United States … would have serious adverse foreign policy consequences for the United States." The Court's July 17 Order did not remedy those harms, and so a stay of that Order will not exacerbate those harms either. Nor would a stay of the Court's July 17 Order impair Petitioner's ability to speak freely. *Cf.* Pet'r Momo 24. Again, Petitioner remains out of custody pursuant to this Court's order, and he is free to engage in whatever speech he chooses—as he is doing at this very time.

In the end, the only injury Petitioner will suffer if this Court's July 17 Order is stayed is the burden of being subjected to removal proceedings, but "[i]rreparable harm cannot be established by a mere reliance on the burden of submitting to agency hearings." *Small v. Kiley*, 567 F.2d 163, 165 (2d Cir. 1977) (quoting *Sears, Roebuck & Co. v. NLRB*, 473 F.2d 91, 93 (D.C. Cir. 1972)). Petitioner transparently hopes that this Court's interference will cause "the resolution of removal proceedings in Petitioner's favor." Pet'r Memo 8. But Petitioner is asking the Court to interfere with the "very proceedings" from which he could receive corrective relief. *Small*, 567 F.2d at 165 n.2.

Even accepting Petitioner's arguments about claim and issue preclusion, denying a stay would not reduce the risk of removal. Petitioner asserts that "granting the stay Respondents request prior to a full and fair adjudication of the waiver would leave Petitioner living under a sword of Damocles, facing a potential or actual removal order . . . during the potentially lengthy duration of Respondents' appeal." Pet'r Memo 8. Similarly, Petitioner argues that a stay would "exacerbate the chilling effect this Court recognized the Secretary of State's determination has on Petitioner's speech." Pet'r Memo 26. But, if Petitioner is correct about issue or claim preclusion, Petitioner would remain under the same risks with or without a stay because, "[s]hould the Third Circuit vacate this Court's preliminary

7

injunction on appeal, nothing prevents Respondents from later pursuing removability based on the Secretary of State's determination." Pet'r Memo 8. Petitioner has not shown that he would face any additional harm if the Court grants the requested stay.

The public has an interest in the prompt enforcement of immigration laws. *See United States v. Martinez-Fuerte*, 428 U.S. 543, 556-58 (1976); *Nken v. Holder*, 556 U.S. 418, 436 (2009). Granting a stay would limit the delay caused by this Court's interference with the removal proceedings.

## **CONCLUSION**

For the foregoing reasons and the reasons stated in the Motion, the Court should grant a stay pending appeal.

Respectfully submitted,

*/s/ Alanna T. Duong*

| | |
|---|---|
| BRETT A. SHUMATE<br>Assistant Attorney General<br>Civil Division | ALANNA T. DUONG<br>Senior Litigation Counsel<br>Office of Immigration Litigation<br>Civil Division, U.S. Dept. Justice |
| YAAKOV M. ROTH<br>Principal Deputy Assistant Attorney General | PO Box 878, Ben Franklin Station<br>Washington, D.C. 20044<br>alanna.duong@usdoj.gov |
| DREW C. ENSIGN<br>Deputy Assistant Attorney General | |
| AUGUST E. FLENTJE<br>Special Counsel for Immigration Litigation | |
| | July 24, 2025 |
| DHRUMAN Y. SAMPAT<br>Senior Litigation Counsel | Attorneys for Respondents |

8

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing filing was served on counsel of record via this Court's CM/ECF system on July 24, 2025.

*/s/ Alanna T. Duong*
ALANNA T. DUONG
Senior Litigation Counsel
U.S. Department of Justice
