


**U.S. Department of Justice**

Civil Division

July 24, 2025

**By ECF**

Honorable Michael E. Farbiarz
United States District Judge
U.S. Post Office & Courthouse
    Federal Square
Newark, New Jersey 07101

    Re:    *Khalil v. Joyce, et al.*, **Civ. Act. No. 25-1963 (MEF) (MAH)**
            <u>Government's Response to ECF 346, 356</u>

Dear Judge Farbiarz:

    Respondents ("the Government") respectfully submit this letter in response to the Court's Order, ECF 346, and Petitioner Mahmoud Khalil's letter, ECF 356, to explain why the Court should *not* consider Petitioner's successive motion for preliminary injunction, which again challenges the Government's initiation of removal proceedings against him pursuant to 8 U.S.C. §§ 1182(a)(6)(C)(i), 1227(a)(1)(A) (the "document-fraud charge"). *See* ECF 90-1; *see also* ECF 345-1.

**I.    Petitioner's second preliminary injunction motion is a successive motion, and therefore, the Court should not consider it.**

    Petitioner's motion is a successive motion, and this Court should decline to consider it. "Successive motions cannot be used to obtain a chance to make a different or better argument—or, here, to get a second crack at an [injunction]." *United States v. Alexander*, 505 F. App'x 601, 602 (7th Cir. 2013) (citing *United States v. Redd,* 630 F.3d 649 (7th Cir. 2011)). Successive motions may be procedurally improper if the arguments in the second motion could have been raised in the first motion. *See, e.g.*, *Brown v. City of Syracuse*, 673 F.3d 141, 147 n.2 (2d Cir. 2012). Using the context of appealability as a guidepost, courts have recognized limited exceptions where a plaintiff shows a change in law, facts, or circumstances between the two motions. *See, e.g.*, *United States Sec. & Exch. Comm'n v. Young,* 121 F.4th 70, 76 (10th Cir. 2024); *Kossman Contracting Co. v. City of Houston, Tx.*, 128 F. App'x 376, 377 (5th Cir. 2005); *Gill v. Monroe Cnty. Dep't of Soc. Servs.*, 873 F.2d 647, 648–49 (2d Cir. 1989); *F.W. Kerr Chem. Co. v. Crandall Assoc., Inc.*, 815 F.2d 426, 429 (6th Cir. 1987). Under those principles, Petitioner's second preliminary injunction motion is impermissibly successive.

    *First*, Petitioner's new preliminary injunction motion presents the same legal arguments he raised in his first motion. In both motions, the crux of Petitioner's arguments is that the charge at issue "violates his First Amendment and substantive due process rights." *Compare* ECF 67 at 6-11, 19-22 (arguing that his detention was based on a retaliatory motive in violation of the First and Fifth Amendments), *with* ECF 345-1 at 10-17, 21-24 (arguing that his continued detention was based on a retaliatory motive in violation of the First and Fifth Amendment). Those substantially identical arguments could have (and should have) been brought together in Petitioner's first preliminary injunction motion. The only reason they were not is because Petitioner made the strategic decision in his first motion to focus heavily on the foreign-policy charge and ignore the document-fraud charge. The Court, and the Government, should not have to bear the burden that strategic choice to proceed

in an unnecessary piecemeal fashion when Petitioner's arguments on the document-fraud charge could have reasonably and efficiently been litigated alongside Petitioner's challenge to the foreign-policy charge in the first motion. *Cf. Lippe v. Bairnco Corp.*, 249 F. Supp. 2d 357, 386 (S.D.N.Y. 2003), *aff'd*, 99 F. App'x 274 (2d Cir. 2004) ("Rather, it would be fundamentally unfair to require defendants to go through the process again, to delay the final resolution of this very difficult and burdensome case, solely because plaintiffs made some ill-advised tactical choices and refused to adjust when it was apparent that they should."). Accordingly, because the gravamen of Petitioner's arguments relating to the two charges is the same and because Petitioner could have raised his objections to the document-fraud charge in the first motion, this second motion is procedurally improper. *Cf. Young*, 121 F.4th at 76-77 ("The court will not exercise jurisdiction when the motion was merely a re-packaging in new garb of the corpse of an old motion in an attempt to resurrect it.").

*Second*, there has been no change in the facts, the circumstances, or the law that would warrant consideration of Petitioner's second motion. Although Petitioner argues that his new motion "rel[ies] on distinct legal and factual arguments grounded in recent events," these events are not recent. As Petitioner notes, the document-fraud charge was lodged on March 17, 2025—eight days after his removal proceedings commenced. ECF 90-1. It is true that Petitioner filed his first motion on that same day, but nothing prevented Petitioner from filing an amended habeas petition or a subsequent motion shortly thereafter to account for the newly lodged document-fraud charge. As the Court noted in its order, "the motion became fully submitted on May 14, with the filing of the parties' final legal brief." *Khalil v. Trump*, ---F.Supp.3d ---, No. 25-cv-01963, 2025 WL 1514713, at *3 (D.N.J. May 28, 2025).

Indeed, from March 17 to May 14, Petitioner had ample opportunity to request leave to make any necessary amendments to his petition or his motion to enable him to include arguments related to the document-fraud charge. Petitioner chose not to. In fact, he admits that he "expressly excluded [the document-fraud charge] from his first motion for preliminary relief." ECF 356 at 1. Although Petitioner speculates that amending and refiling a new habeas petition and motion "would have necessarily delayed relief from the ongoing irreparable harm resulting from the Foreign Policy Charge[,]" ECF 356 at 3, the real harm follows from Petitioner's own refusal to timely pursue a challenge to the document-fraud charge. *See, e.g.*, *Stenson Tamaddon, LLC v. IRS*, 742 F. Supp. 3d 966, 1001 (D. Ariz. 2024 (denying injunction when "Plaintiff bears at least some responsibility for the harm now facing them."); *New York v. U.S. Dep't of Commerce*, 345 F. Supp. 3d 444, 448 n.2 (S.D.N.Y. 2018) ("a party should not be heard to complain about harms of its own creation [in requesting injunctive relief]"). In fact, the Court itself had to point out that "Petitioner *references* the second charge against him [in the first motion] … [b]ut there is no reference to this in the habeas petition." *Khalil v. Joyce*, --- F.Supp.3d ---, No. 25-cv-01963, 2025 WL 1232369, at *3 n.7 (D.N.J. April 29, 2025) (emphasis added) (citing *Salas v. Warren*, No. 11-5154, 2019 WL 3423534, at *1 n.1 (D.N.J. July 30, 2019) (declining to consider claims that the petitioner raised in his traverse, rather than in his petition). It was not until the Court made this point that "Petitioner amended his habeas petition to include two paragraphs on the failure-to-disclose charge, and these new paragraphs allude to the First Amendment." *Khalil*, 2025 WL 1514713, at *52 (citing ECF 223-2 ¶¶ 88-89 (filed May 1, 2025)).

Now, Petitioner argues that circumstances have changed while presenting the same facts, arguments, and evidence. *See, e.g.*, ECF 345-7, Ex. D ("*As I stated in my prior declaration*, it is unusual that DHS added the second charge based upon the facts of this case."). The only factual circumstance that has changed is that Petitioner has been released, thus diminishing the need for urgency. Yet, this fact alone is not reason to warrant consideration of the second motion, as this Court has enjoined the Government from seeking to remove Petitioner from the United States. Accordingly, Petitioner has

2

not submitted new arguments or facts that would require a different result. For these reasons, the Court should not entertain Petitioner's second preliminary injunction motion.

**II.     In any event, the Court should decline to consider the merits of Petitioner's claim.**

Even if the Court considers the second motion, 8 U.S.C. § 1252(g) precludes this Court from reviewing the Government's discretionary decision to commence removal proceedings against Petitioner based on the document-fraud charge. Although Petitioner alleges that the use of the document-fraud charge is "extraordinary," ECF 356 at 2, Congress has given the Government broad discretion to commence and adjudicate removal proceedings, as well as the discretion to execute removal orders. *See* 8 U.S.C. § 1252(g). Petitioner says it is "unusual" for the Executive to pursue removal based on a document-fraud charge, but the Courts of Appeals, including the Third Circuit, frequently reviews removal orders premised on that exact charge. *See, e.g.*, *Gallimore v. Att'y Gen.*, 619 F.3d 216, 223 (3d Cir. 2010) ("An alien who becomes an LPR through fraud has not been 'lawfully admitted for § 212(c) purposes."); *see also* 8 U.S.C. §§ 1252(a)(5), (b)(9). In any event, the Executive Branch has substantial discretion in establishing its enforcement priorities, including how it vigorously wishes to pursue certain statutory grounds for removal. *See United States v. Texas, et al.*, 599 U.S. 670, 678 (2023) ("Under Article II, the Executive Branch possesses authority to decide 'how to prioritize and how aggressively to pursue legal actions against defendants who violate the law.'" (quoting *TransUnion LLC*, 594 U.S. 413, 429 (2021)); *see, e.g., Bourfa v. Mayorkas*, 604 U.S. 6, 17 (2024) ("[I]f the Secretary determines at any point along the way that the agency's prior approval of a visa petition was erroneous, he can exercise his discretion to revoke it").

The Supreme Court has acknowledged the breadth of this discretion and noted that for this reason, Congress "focus[ed] special attention upon, and ma[d]e special provision[s] for, judicial review of the Attorney General's discrete acts of 'commenc[ing] proceedings, adjudicat[ing] cases, [and] execut[ing] removal orders'—which represent the initiation *or* prosecution of various stages in the deportation process." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 483 (1999) (emphasis added). Because the Executive Branch has the authority to decide its enforcement priorities, as well as when and how to commence proceedings in line with those priorities, this Court does not have authority or jurisdiction to interfere with such proceedings. Petitioner's second motion is a transparent attempt to bypass the limitations set forth in § 1252(g), and to interfere with the process Congress created to review decisions that arise out of immigration court pursuant to §§ 1252(a)(5) and (b)(9).

This Court has already enjoined the Government from removing or detaining Petitioner pursuant to foreign-policy charge. As of July 17, 2025, the Court further directed the Government to cause the Immigration Judge to vacate her prior decision and evaluate Petitioner's eligibility for a Section 237(a)(1)(H) waiver in light of the document-fraud charge, without reference to the foreign-policy charge. *See* ECF 355. But now, Petitioner is attempting to void the document-fraud charge outside of Immigration Court, which would essentially lead to the termination of removal proceedings. Congress did not enact §§ 1252(a)(5), (b)(9), and (g) for a District Court to then terminate proceedings—which it has no authority to do. *See Tazu v. Att'y Gen.*, 975 F.3d 292, 296 (3d Cir. 2020) ("Congress used complementary provisions to funnel removal-related *claims away from district courts* and into a petition for review in a single court of appeals.") (emphasis added). In fact, both §§ 1252(a)(5) and (b)(9) further § 1252(g)'s goal. "Taken together, § 1252(a)(5) and § 1252(b)(9) mean that *any* issue—whether legal or factual—arising from *any* removal-related activity can be reviewed only through the [petition-for-review] process." *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016). The Court should allow the proceedings to resume in Immigration Court without further interruption— just as this Court's prior orders expressly contemplate. The Immigration Court, the Board of Immigration Appeals, and if necessary, the appropriate Court of Appeals, are equipped to determine

3

whether the Government has met its burden in establishing that Petitioner is removable pursuant to document-fraud charge. Otherwise, Congress's entire statutory scheme would be rendered meaningless. *See Massieu v. Reno*, 91 F.3d 416, 422 (3d Cir. 1996) ("Congress *intended* to delay federal court review of claims by aliens against whom deportation proceedings have been instituted until the conclusion of the administrative proceedings," recognizing that "the court of appeals generally may provide meaningful review.").

Of note, this second preliminary injunction motion stems from Petitioner's habeas petition. And even though the Government disagrees with this Court's determination as to whether it has jurisdiction to review Petitioner's challenges to both charges of removability, here, Petitioner is not challenging his detention—which is the purpose of habeas. *See Tazu*, 975 F.3d at 294 ("In law, as in life, the path often matters as much as the destination. For an alien challenging his removal, that path begins with a petition for review of his removal order, not a habeas petition."). Habeas corpus is not an all-purpose writ to secure interlocutory appellate review of administrative agencies—particularly where no actual custody is presently threatened. Similar to Tazu, Petitioner's second motion is challenging the basis for the Government's efforts to remove him. And like Tazu, Petitioner here has "lost his way by doing so in the wrong proceeding in the wrong court." *Id.* Petitioner is no longer detained. And now, Petitioner is attempting to use his active case to essentially wipe out his removal proceedings. Fundamentally, Petitioner is challenging the fact that the Government has issued charges of removability against him, which falls squarely within § 1252(g).

Petitioner alleges that the Government will attempt to detain him and remove him pursuant to the document-fraud charge. This legal issue, however, has already been reserved for the judgment of the Immigration Court, the Board of Immigration Appeals, and the appropriate Court of Appeals. This is the streamlined process Congress created to ensure that removal proceedings are not interrupted. *See* 8 U.S.C. §§ 1252(a)(5), (b)(9). Otherwise, IIRIRA's jurisdictional bars precluding judicial review of the government's decision "to commence proceedings, adjudicate cases, or execute removal orders[,]" would be rendered meaningless. *See* 8 U.S.C. § 1252(g); *Ragbir v. Homan*, 923 F.3d 53, 65-66 (2d Cir. 2019), *cert. granted, judgment vacated sub nom. Pham v. Ragbir*, 141 S. Ct. 227 (2020) ("Taken together with § 1252(g)'s clear elimination of habeas corpus jurisdiction, it follows that the statute purports to forbid bringing even constitutional claims in such a proceeding…, *even if a difficult constitutional question is presented*.") (emphasis added)).

Petitioner's other assertions carry little weight. Petitioner's alleged harms today are the same that he alleged in his prior motion. *Compare* ECF 67 at 22 ("the silencing of his deeply held beliefs … loss of future employment," and separation from his family), *with* ECF 345-1 at 25-28 (alleges his speech has been chilled and career prospects have been damaged). And his assertions of irreparable harm in ways he had not experienced before: (1) public statements "by the government" to continue his detention; (2) his inability to have a contact visit with wife and son; and (3) his inability to transfer to a detention center closer to family (ECF 356 at 5), are unavailing. Petitioner is no longer detained, and he is reunited with his family. *See* ECF 345-11 ("Today he's reunited with his family in New York."). Petitioner further alleges that the document-fraud charge is causing him harm, *see id.,* ECF 345-1 at 25-28, by "deter[ring him] and others from engaging in protected expressive activity the government disfavors," ECF 345-1 at 26; and that the it has led to "restrictions on [his] physical liberty and [his] freedom of expression, dignitary, and reputational damage, personal and familial hardship, and severe damage to [his] professional future," ECF 345-4 ¶ 5. However, the evidence he submits contradicts these claimed fears. For instance, when being interviewed by a journalist from The New York Times, Petitioner made clear that he will "resume his advocacy for Palestinian rights, as well as immigrant rights[,]" and that his detention "reinforced [his] belief that what we're doing is right." ECF

4

345-10 at 11-12. This demonstrates that he is not experiencing the harm he alleges. In the same vein, Petitioner has further failed to demonstrate that professional opportunities have ceased to exist due to the document-fraud charge. No evidence shows Petitioner's being denied employment because of the document charge specifically. Therefore, Petitioner has failed to demonstrate that he experienced irreparable harm in connection with the document-fraud charge.

      In short, the Government urges the Court to permit Petitioner's removal proceedings to continue through the administrative process as Congress intended. *See* 8 U.S.C. § 1103. "For reasons long recognized as valid, the responsibility for regulating the relationship between the United States and our alien visitors has been committed to the political branches of the Federal Government." *Mathews v. Diaz*, 426 U.S. 67, 81 (1976). Respect for the political Branches' authority over immigration policy dictates a narrow standard of judicial review over executive and legislative decisions in the realm of immigration. *Fiallo v. Bell*, 430 U.S. 787, 792 (1977).

                                                  Respectfully submitted,

|  |  |
|---|---|
|  | */s/ Alanna T. Duong* |
| BRETT A. SHUMATE | ALANNA T. DUONG |
| Assistant Attorney General | Senior Litigation Counsel |
| Civil Division | Office of Immigration Litigation |
|  | Civil Division, U.S Dept. of Justice |
| YAAKOV M. ROTH | PO Box 878, Ben Franklin Station |
| Principal Deputy Assistant Attorney General | Washington, D.C. 20044 |
|  | alanna.duong@usdoj.gov |
| DREW C. ENSIGN |  |
| Deputy Assistant Attorney General |  |
|  |  |
| DHRUMAN Y. SAMPAT |  |
| Senior Litigation Counsel |  |

5