**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MAHMOUD KHALIL,<br><br>*Petitioner*,<br><br>v.<br><br>DONALD TRUMP et al.,<br><br>*Respondents*. | No. 25-cv-01963 (MEF)(MAH)<br><br>**OPINION and ORDER** |

\* \* \*

For the purposes of this brief Opinion and Order, the Court assumes familiarity with the facts and procedural history of this case.

\* \* \*

On June 11, the Court preliminarily enjoined the Respondents "from seeking to remove the Petitioner from the United States based on the Secretary of State's determination." Khalil v. Trump, 2025 WL 1649197, at *6 (D.N.J. June 11, 2025).

The Petitioner sought clarification as to how the June 11 preliminary injunction applies in certain circumstances. See Petitioner's Letter (July 1, 2025) (ECF 332).

As to that question, the parties filed briefs, see Petitioner's Letter (July 11, 2025) (ECF 347), Respondents' Letter (July 15, 2025) (ECF 349); the Court issued an Opinion and Order, see Khalil v. Trump, 2025 WL 1981392 (D.N.J. July 16, 2025); the parties filed supplemental materials, see Petitioner's Brief (July 17, 2025) (ECF 352), Respondents' Brief (July 17, 2025) (ECF 353); Petitioner's Reply Brief (July 17, 2025) (ECF 354); and the Court issued a clarifying Opinion and Order, on July 17. See Khalil v. Trump, 2025 WL 1983755 (D.N.J. July 17, 2025).

The clarifying order required the Respondents to take certain steps on July 18.  See id. at *5.

The Respondents did not fully do so.  Rather, after the close of business on July 18, see Motion to Stay (July 18, 2025) (ECF 360), they filed a motion for a stay.  See id. at 1-2.

The motion became fully briefed a few hours ago.  See ECF 366.

It is denied.

          \*    \*    \*

The Respondents carry the burden of persuasion as to their stay application.  See Landis v. N. Am. Co., 299 U.S. 248, 255 (1936); see also Hertz Corp. v. Gator Corp., 250 F. Supp. 2d 421, 424-25 (D.N.J. 2003).

And in analyzing the Respondents' application, the Court must consider four things:

> (1) whether the stay applicant has made a strong showing that it is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

In re Revel AC, Inc., 802 F.3d 558, 568 (3d Cir. 2015) (cleaned up); see also Jazz Pharms., Inc. v. Avadel CNS Pharms., LLC, 2022 WL 17735952, at *1 (D. Del. Dec. 5, 2022); Blue Gentian v. Tristar Prods., Inc., 2021 WL 3561215, at *4 (D.N.J. Aug. 12, 2021).

Walk through these here.

          \*    \*    \*

The first thing: likelihood of success on the merits.

As to this, the Respondents focus all but exclusively on the argument that the Court did not have jurisdiction to enter the June 11 preliminary injunction that was then clarified by the Court's July 17 Opinion and Order.

The Respondents are not likely to succeed on these arguments.

2

The Respondents argue that jurisdiction was stripped by 8 U.S.C. § 1252(b)(9). See Motion to Stay at 4-5. But as the Court has previously set out, see Khalil v. Joyce, --- F. Supp. 3d ---, 2025 WL 1232369, at *6-29 (D.N.J. Apr. 29, 2025), the Respondents' proposed interpretation of Section 1252(b)(9) runs aground on the plain text of the statute, see id. at *13-16, and is at odds with a Third Circuit decision. See id. at *21-23 (citing EOHC v. Sec'y U.S. Dep't of Homeland Sec., 950 F.3d 177 (3d Cir. 2020)).

And if anything, the Court's approach to Section 1252(b)(9) is now on sturdier footing.

In decisions handed down after the Court's ruling, the Second Circuit and the Fourth Circuit have taken the same approach to interpreting the statute. See Suri v. Trump, 2025 WL 1806692, at *8-9 (4th Cir. July 1, 2025); Ozturk v. Hyde, 136 F.4th 382, 399-401 (2d Cir. 2025).

The Respondents also seem to argue that there is a lack of jurisdiction here because the Court's "new directive[]," Motion to Stay at 3 --- that is, the July 17 clarification of the June 11 preliminary injunction --- is (a) too far removed from the Court's habeas jurisdiction, and (b) is inconsistent with Section 1252(g). See id. at 2-4.

These arguments are not persuasive for a range of reasons, ably set out by the Petitioner. See Opposition Brief (ECF 362) at 16-25.[1]

---

[1] Two things here. First, the Respondents specifically requested a rapid decision. See Respondents' Letter (July 25, 2025) at 1. So the Court does not work through each point they raise. And in general, it relies on the Petitioner's papers, even when it does not say so explicitly. Second, as to jurisdiction, it bears noting that some of what the Respondents argue is surprising. They seem to suggest, for example, that habeas relief is no longer available here because the Petitioner is no longer detained; he has been granted bail. See Motion to Stay at 2-3. But habeas relief is available to people operating under various restraints on their liberty well short of detention. See Jones v. Cunningham, 371 U.S. 236, 240 (1963) ("History, usage, and precedent can leave no doubt that, besides physical imprisonment, there are other restraints on a man's liberty, restraints not shared by the public generally, which have been thought sufficient in the English-speaking world to

3

But for now, note only one point.

The July 17 Opinion and Order was not a "new directive[]," as the Respondents suggest.  Rather, on July 17 the Court only clarified its earlier June 11 preliminary injunction.  See Khalil, 2025 WL 1983755, at *1 (saying this).

To see why this is so, look back for a moment --- and then consider the implications for the Court's jurisdiction.

As the Court previously explained, entry by the immigration judge of her June 20 decision was, as to the Secretary of State's determination, directly at odds with the plain language of this Court's June 11 preliminary injunction.  See id.

But before making any final determinations, the Court sought further information as to familiar equitable factors like irreparable harm.  See Khalil, 2025 WL 1981392, at *3-4.

This was not because the Court aimed to issue a new injunction, for which a showing of irreparable harm would be needed.  Not at all.  Rather, it was because the Court's view is that interpretation of a pre-existing injunction should focus on more than plain text.  It should also take account of broader equitable factors.  See id. at *3 n.5 (explaining this).

Seeking equities-related information was not a tell that the Court was considering a "new" injunction.

It was what the Court said it was: an effort to ensure that interpretation of the old injunction, the June 11 one, was itself grounded in equitable concerns.

The Court was "hesitat[ing]" pending receipt and review of equities-related information, id. at *3 --- not in order to issue a new injunction, but rather to consider whether it made

---

support the issuance of habeas corpus."); accord Maleng v. Cook, 490 U.S. 488, 491 (1989); R v. Clarkson, 93 Eng. Rep. 625 (K.B. 1722).  And while courts have issued bail in habeas cases for well over a century, see, e.g., Mapp v. Reno, 241 F.3d 221, 225 n.4 (2d Cir. 2001) (collecting cases), there is no suggestion in the case law that habeas courts lose their habeas jurisdiction when they grant bail.

4

sense to interpret the July 11 preliminary injunction against the Respondents for all its plain text was worth.[2]

Why does this matter?

Because when the July 17 Opinion and Order is properly understood --- as what it said it was, solely a clarification of the June 11 preliminary injunction --- then the Respondents' jurisdictional arguments melt away.

Whatever else might be said, see footnote 1, there can be no meaningful suggestion that the June 11 preliminary injunction

---

[2] Two points here. First, the more searching interpretive look undertaken by the Court could have only benefited the Respondents --- because, as the Court noted, see Khalil, 2025 WL 1983755, at *1, their relevant actions violated the plain text of the June 11 preliminary injunction. Possibly whittling back a bit on an injunction is a long way from "expanding" it, as the Respondents repeatedly suggest. (And note that the more searching look did indeed aid the Respondents. The Court interpreted the June 11 decision in accord with the dictates of its plain text as to the immigration judge's June 20 reliance on the Secretary of State's determination. See id. But with an eye to the equities, the Court did not hold the Respondents to the just-plain-text meaning of the June 11 preliminary injunction as to the immigration judge's asylum approach. See id. at *2.) A second point. The fact that the Court's July 17 clarifying Opinion and Order was more detailed and more specific than the operative language of the June 11 preliminary injunction does not suggest that the July 17 clarification was an entirely "new" injunction. Greater detail was necessary because the Respondents did not comply with the June 11 preliminary injunction. Imagine that at Time 1 a court orders a bailed criminal defendant: "do not apply for new travel documents." And then imagine that the Court learns at Time 2 that the defendant has applied for a visa to a particular country. The visa is no passport. But should it count as a "new travel document," as the plain meaning of those words suggests? If the Court answers "yes," and issues a Time 3 injunction ("the visa counts as a travel document, and the visa must be surrendered to the United States Marshals Service") no one would think the greater detail of the Time 3 injunction somehow makes it a "new directive[]." It is an interpretation of the old injunction, packaged with an instruction to comply with it.

(as clarified on July 17) pushed beyond this Court's core habeas jurisdiction. The Petitioner was detained then.

And there can be no suggestion that Section 1252(g), which limits federal courts' involvement in immigration courts' "adjudicat[ing] [of] cases," strips away jurisdiction.

The Court's June 11 preliminary injunction was not barred by Section 1252(g) for interference with immigration judge adjudication. See Khalil, 2025 WL 1232369, at *56-58 (explaining why).

And the Court's June 11 preliminary injunction (as clarified on July 17) now requires alterations to the immigration court's June 20 "adjudicat[ion]" only because the June 11 preliminary injunction was not complied with in the first place.

A jurisdictional problem cannot be created after the fact by failing to comply with an earlier federal court order as to which there was jurisdiction. This is obvious, and the Respondents, who bear the burden here, see Landis, 299 U.S. at 255, have made no showing to the contrary.

\*   \*   \*

Second, as to irreparable injury, the Respondents press a grab bag of arguments.

But again, they do not carry their burden, for reasons well stated by the Petitioner. See Opposition Brief at 8-14. Those will not be repeated here.

Some quick points, though.

[1]

If a stay is not entered, the Respondents vaguely gesture at arguments they "may" one day be barred from making. Motion to Stay at 6. And they point in tentative fashion to litigation developments that "could raise . . . complicated [preclusion] issues." Id.

These arguments are better developed in the Respondents' brief of yesterday. See Reply Brief (ECF 363) at 4-5.

But the Petitioner plainly has the better of them. See Opposition Brief at 8-10.

6

And the Respondents' arguments are not remotely strong enough to carry their burden.

[2]

The Respondents also say that a stay should be granted because of the "absurd inefficiencies," Motion to Stay at 6, that would be generated if: no stay is granted; this Court's June 11 preliminary injunction is vacated; and the Respondents would then be forced to "reinstate the foreign policy ground," id., that is currently reflected in the immigration judge's June 20 decision.

But this is exaggerated.

The immigration judge's decision on the foreign policy ground is written.  Indeed, it was issued on June 20.  It is on the shelf.  If the Third Circuit undoes this Court's undoing of the immigration judge's June 20 foreign-policy-ground decision --- then reinstatement is simple.  It is no meaningful inefficiency, let alone something that veers toward the irreparable.

[3]

More generally, the Respondents repeatedly invoke the "inefficiencies" associated with the Court's June 11 preliminary injunction, as clarified by the Court's July 17 Opinion and Order, and the problems of "piecemeal" litigation and the "additional strain" that will put on "an already overburdened system."  Motion to Stay at 6-7.

But the Respondents, who have the burden, make no real factual or legal effort to show that the costs of litigating on two tracks in this case (here, and in immigration court) adds up to irreparable injury.

And more fundamentally, it is the Congress that decides where jurisdiction is allocated.  And Congress has opted for (a) leaving in place the habeas jurisdiction of the federal courts while also (b) allowing for proceedings before immigration courts.

That may cause some arguable inefficiencies.

But operating within that system is not the stuff of irreparable harm, any more than it is irreparable harm to have to follow the rules of evidence or to litigate tort cases as to which Congress has waived the federal government's sovereign immunity.

[4]

Finally, the Respondents invoke Maryland v. King, 567 U.S. 1301 (2012) (Roberts, C.J., in chambers), for the proposition that "[a]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." Id. at 1303 (cleaned up).

But this is to ignore the context of the Chief Justice's words, as the Fourth Circuit has recently suggested. See Suri, 2025 WL 1806692, at *9.

In King, the implication of the lower-court ruling was that Maryland would not be able to use its DNA Collection Act, which allowed state officials to collect DNA from arrestees suspected of certain serious crimes. See 567 U.S. at 1303-04.

Here, the Court did something markedly narrower.

It did not enjoin the Respondents from generally using a statute, Section 1227(a)(4)(C). And it took no step that even suggested that the statute might not be usable across the board.

Rather, it held that, given what was within the four corners of the Secretary of State's determination in this case, Section 1227(a)(4)(C) was likely vague as applied to the Petitioner's case. See Khalil v. Trump, --- F.Supp.3d ---, 2025 WL 1514713, at *14 (D.N.J. May 28, 2025).

This does not disable the Respondents more generally. It only disables them, for now, in this case.

If this sort of impact --- in a single case, as to a single litigant, on a preliminary basis --- can count as irreparable injury, on the theory that it disables the government from "effectuating" a statute, King, 567 U.S. at 1303, then the government will be able to show irreparable injury virtually every time it loses in a lower court.

That is not the law.

\*    \*    \*

The third and fourth factors here are less important than the first two.

But the Court has closely balanced them, and they, too, show that the Respondents have not carried their burden.

8

Most fundamentally, the balance of the equities and the public interest strongly favors the Petitioner.

The Court issued a preliminary injunction, and nine days later the immigration judge issued a decision that was at odds with it. Those are the critical facts here; in light of them, the Respondents do not have the equities on their side and the public interest does not favor their position.

If there was doubt as to the meaning of the Court's June 11 preliminary injunction, the Respondents could have sought clarification before the June 20 decision issued. They did not do so.

Instead, they now argue that "[a]ny . . . uncertainty is directly traceable to [the] Petitioner's decision to challenge th[]e removal charges through . . . collateral proceeding[s] in [the] district court, rather than through the streamlined review process that Congress crafted by statute." Reply Brief at 6.

But this does not work.

Parties are free to use the litigation paths that Congress has created. One of those is a "collateral proceeding in [the] district court." And when a district court issues a preliminary injunction, as here, it must be complied with. The fault for non-compliance is on the party that did not comply. Not the party that brought the case.

\*   \*   \*

The application for a stay is denied.

The Respondents must comply with the directives reflected in Khalil, 2025 WL 1983755, by August 1 at 10:00am.

This added time is to afford the opportunity for appellate consideration that the Respondents have today suggested they will promptly seek.

IT IS on this 25th day of July, 2025, so **ORDERED**.

_____
Michael E. Farbiarz, U.S.D.J.

9