**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MAHMOUD KHALIL,<br><br>      *Petitioner*,<br><br>  v.<br><br>DONALD TRUMP et al.,<br><br>      *Respondents*. | No. 25-cv-01963 (MEF)(MAH)<br><br>**OPINION and ORDER** |

\* \* \*

For the purposes of this Opinion and Order, the Court assumes familiarity with the facts and procedural history of this case.

\* \* \*

In March, the Petitioner moved for a preliminary injunction. See Notice of Motion for Preliminary Injunction (Mar. 17, 2025) (ECF 66).

In May, it was denied in part. See Khalil v. Trump, 2025 WL 1514713, at *56 (D.N.J. May 28, 2025).[1]

---

[1] The motion was denied as to the Petitioner's claim that the Respondents should be preliminary enjoined from seeking to remove him from the United States based on the charge that he had failed to accurately complete his lawful permanent resident application. As to that charge --- called here "the documents charge" --- the Court ruled that the Petitioner's claim did not work. See Khalil, 2025 WL 1514713, at *52-54. The claim appeared to be rooted in the idea that the documents charge had been filed as part of a broader "policy" pursued by federal officials to target the Petitioner and others for their First Amendment-protected speech. The preliminary injunction motion related to the "policy"/documents charge was denied for two

The denied part concerned the so-called documents charge.  See footnote 1 (providing background).

As to the documents charge, the Petitioner now moves again for a preliminary injunction.  See Notice of Motion for Preliminary Injunction (July 9, 2025) (ECF 345).

The motion will not be considered, and is therefore denied.

Virtually all the arguments the Petitioner makes in his current preliminary injunction motion were either made, or could have been made, in his first preliminary injunction motion.

But successive motions are not generally permitted.  And the Court will not exercise its discretion to allow what would mainly be a second bite at the apple.

The Petitioner can continue to push forward this litigation as he might wish.  But not by making an improperly successive preliminary injunction motion.[2]

                    *    *    *

Start with the key background principles.

---

likelihood-of-success reasons.  First, the Petitioner put no supporting facts before the Court.  There was no affidavit to directly support the documents charge, for example, and the habeas petition that described the documents charge had not been verified.  See id. at *54.  And second, the Petitioner's legal arguments as to the documents charge and First Amendment retaliation were sparse; they were not meaningfully developed.  See id. at *53.  All of this is discussed more below.  (The Petitioner also sought to preliminarily enjoin the Respondents from removing him from the United States based on a determination by the Secretary of State.  The Court granted that preliminary injunction.  See Khalil v. Trump, 2025 WL 1649197 (D.N.J. June 11, 2025).)

[2] After the Petitioner filed his current preliminary injunction motion, the Court directed the parties to submit legal papers as to whether the motion should be considered given the successive filing issue.  See Order (July 10, 2025) (ECF 346).  Those legal papers are now in.  See Petitioner's Letter (July 17, 2025) (ECF 356); Respondents' Letter (July 24, 2025) (ECF 364).

Successive applications for what is essentially the same thing --- that is not generally how litigation works.

For example, a party that loses a motion to dismiss can ask for reconsideration or take an appeal.[3]  Or it can move onto the next logical steps in the case --- discovery, summary judgment motion, trial.  But absent exceptional circumstances, parties that lose motions to dismiss are not permitted to go back and try again.

These are the basic rules of the road for all sorts of filings.  These rules are widely understood.  And they are so rarely breached that they can seem invisible.

But when a party does try to make a successive filing, courts generally hold that there are no do-overs.[4]

This is true across the board, in the context of many different sorts of motions, and in federal courts around the Nation.  See, e.g., Caraballo v. City of N.Y., 2025 WL 1430152, at *1 (2d Cir. May 19, 2025) ("[I]t may be an abuse of discretion to permit a second dispositive motion if the arguments in the second motion could have been brought into the first."); United States v. Alexander, 505 F. App'x 601, 602 (7th Cir. 2013) ("[s]uccessive motions cannot be used to obtain a chance to make a different or better argument"); Jing v. Ashcroft, 105 F. App'x 437, 440–41 (3d Cir. 2004) ("[T]he [petitioners'] arguments in their second motion to reopen . . . could have been raised in their first motion to reopen.  The BIA was well within its discretion in denying the petitioners' second motion to reopen based on a failure to exercise due diligence."); Off. Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147, 167 (2d Cir. 2003) ("[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.") (cleaned up); Lippe v. Bairnco Corp., 249 F. Supp. 2d 357, 386 (S.D.N.Y. 2003), aff'd, 99 F. App'x 274 (2d Cir. 2004) ("When a party loses . . . a summary judgment motion, it does not get to do it again."); see also, e.g., Tran v. Tran, 2024 WL 4710231, at *1 (M.D. Fla. Nov. 7, 2024); IQVIA, Inc. v. Veeva

---

[3]  The Petitioner took neither step as to the denial of his preliminary injunction motion on the documents charge.

[4]  The basis for this: federal courts have inherent power to manage their dockets.  See Dietz v. Bouldin, 579 U.S. 40, 47 (2016); Am. Life Ins. Co. v. Stewart, 300 U.S. 203, 215 (1937).

3

Sys., Inc., 2021 WL 12319550, at *7 (D.N.J. Jan. 15, 2021), rev'd and vacated, 2022 WL 17990836 (D.N.J. Dec. 29, 2022); cf. Gordon v. Monoson, 239 F. App'x 710, 714 (3d Cir. 2007) ("Because the District Court had already rejected [the defendant's] arguments . . . , it was not required to consider those arguments anew[.]").[5]

The case law on successive motions for preliminary injunction applications in particular is sparse.[6]

But it points in the same rough direction as the authorities cited just above. See F.W. Kerr Chem. Co. v. Crandall Assoc., Inc., 815 F.2d 426, 428 (6th Cir. 1987); Red Star Yeast & Prods. Co. v. La Budde, 83 F.2d 394, 396 (7th Cir. 1936); SEC v. Graye, 156 F. Supp. 544, 546 (S.D.N.Y. 1957); Ball v. Paramount Pictures, 57 F. Supp. 505, 507 (W.D. Pa. 1944); Louisville & N.R. Co. v. Ky. R.R. Comm'n, 214 F. 465, 467–68 (E.D. Ky. 1914)

---

[5] Sometimes a litigant asks for permission to make what is not strictly a successive filing, but rather is the sort of filing that, lawyers understand, should have been made earlier. For example, Rule 12(c) motions are typically made toward the beginning of a litigation. Earlier this year, in another case, the defendants sought permission to file a late-in-the-day Rule 12(c) motion --- and explained in a legal brief why, in their judgment, doing so was appropriate. See Defendants' Letter (Nov. 15, 2024), In re Celgene Corp. Sec. Lit., No. 18-cv-04772 (ECF 348). This Court declined to allow it, noting that the request came "after the parties and the Court have invested a great deal of time in summary-judgment practice." Order (Apr. 30, 2025), In re Celgene Corp., No. 18-cv-04772 (ECF 402).

[6] This may be because the core justification for a preliminary injunction is that there is a time-sensitive issue. It must be addressed right away, even on a tentative, likely-to-succeed basis, or there will be irreparable injury. There are presumably cases in which the emergency at Time 1 (when the preliminary injunction motion was filed) remains a bona fide emergency at Time 3 (when the preliminary injunction motion is tweaked and refiled, after having been denied at Time 2). But there are likely relatively few of those cases. Because in asking whether a given case fits into that category, the source of the Time 3 emergency cannot be that the preliminary injunction applicant lost at Time 2 and therefore still seeks the remedy he failed to get before, at Time 1. If that were a possible argument, there would be little left of the bar on filing second-bite-at-the-apple preliminary injunction motions.

4

(citing Buckley v. Corse, 1 N.J. Eq. 504, 510 (N.J. Ch. 1832)), aff'd sub nom. Louisville & N.R. Co. v. Finn, 235 U.S. 601 (1915); cf. Calloway v. Dobson, 4 F. Cas. 1082, 1083 (C.C.D. Va. 1807) (Marshall, C.J.).

As a leading treatise has explained, "as a general rule, the second application will be denied merely on a showing that the first one was denied, unless the plaintiff presents new and additional matter discovered since the former hearing." 43A Corpus Juris Secundum Injunctions § 367; see also id. § 79.

In other words, a party may not generally bring a new motion for injunctive relief based mainly on grounds that could have been, but were not, raised before.

The rules set out above are no technicalities.

They are a basic part of the architecture of our legal system --- and they serve critical functions.

Allowing only one try at a motion helps non-moving parties --- by preventing them from being swamped by over-and-over again filings that veer close to being reruns.

And allowing only one try forces the parties and their lawyers to muster their best arguments the first time around, because they know there will likely be no second chance.

This focusing of attention helps judges, by giving them the sharpened analysis they need to make appropriately well-informed decisions.

And it helps our legal system work for all those who call on it. For a judge with a large docket, any one of his or her cases must move forward, not back, if the other cases are to move, too.[7]

---

[7] There are any number of other rules that, like the bar on successive filings, shape the basic structure of American litigation and do so with an eye to advancing similar goals. For example, the law of the case doctrine exists to "ensure that strong arguments are made on the front-end and for the sake of overall efficiency." In re Celgene Corp., Inc. Sec. Litig., 747 F. Supp. 3d 748, 763 n.20 (D.N.J. 2024). And the first-filed rule is there to "protect[] parties from the vexation of subsequent litigation over the same subject matter." Muhammad

\* \* \*

Come back now to this case.

And begin by noting that the overwhelming bulk of what the Petitioner now argues could easily have been argued before or was argued before --- though in bare-bones fashion.

To see this, line up the Petitioner's current preliminary injunction motion (focused on the documents charge) with the prior preliminary injunction motion.

What becomes clear is the large overlap between the old preliminary injunction motion and the current one.

The stepping off point for each motion is that the Petitioner engaged in First Amendment-protected conduct before he was detained by immigration officials.  Compare Petitioner's Memorandum of Law in Support of Motion for Preliminary Injunctive Relief (ECF 67) ("First Memorandum") at 2 ("[The Petitioner] engages in protected speech."), with Memorandum of Law in Support of Petitioner's Motion for Preliminary Injunction Regarding the Post-Hoc Charge (ECF 345-1) ("Second Memorandum") at 11 ("[The Petitioner] engaged in protected speech[.]").

Each motion argues that the Respondents retaliated against the Petitioner for his speech.  Compare First Memorandum at 6-11, 19-22, with Second Memorandum at 10-21.

Each motion's retaliation case is based on the Respondents' statements.  Compare First Memorandum at 21 ("[T]he government's statements make clear that it is detaining [the Petitioner] to prevent his current and future speech[.]"), with Second Memorandum at 7 ("The record now includes many statements by Respondents and other government officials explicitly

---

v. State Farm Indem. Co., 719 F. Supp. 3d 397, 402 (D.N.J. 2024) (cleaned up).  Other core rules push in the same direction.  Think, for example, of the rules as to (a) the waiver of arguments that are only glancingly developed; (b) successive habeas petitions; or (c) double jeopardy.  These incentivize a party to put in its best work at Time 1, by making clear that there will likely be no chance for a re-do at Time 2.  No chance to press a contention at oral argument if it was barely there in the legal papers.  No new habeas petition if the first one did not persuade.  And no new try for the prosecutors if their first case ends in acquittal.

characterizing [the Petitioner]'s arrest and continued detention as punishment for his speech[.]").

And each motion points to the same specific statements.

Each cites the President's statements, and the same ones. Compare Petitioner's Amended Memorandum of Law in Support of Motion for Preliminary Injunctive Relief (ECF 124) ("Amended First Memorandum") at 33-34 (citing First Amended Petition (ECF 38) ¶ 73, which describes President Trump's statement about Petitioner on Truth Social, a social-media platform), with Second Memorandum at 7 (citing Third Amended Petition (ECF 236) ¶ 73, describing same).

And each motion looks to the Secretary of State's statements, and the same ones. Compare Amended First Memorandum at 4 (citing First Amended Petition ¶ 75, which alleges that Secretary of State Rubio said he would revoke the visas "of Hamas supporters"), with Second Memorandum at 7 (citing Third Amended Petition ¶ 75, alleging the same).

The motions also share other proof of allegedly retaliatory motive.

Each motion foregrounds the same executive order. Compare First Amended Memorandum at 16 n.17 (citing Exec. Order No. 14188, *Additional Measures to Combat Anti-Semitism*, 90 Fed. Reg. 8847 (Jan. 29, 2025)), with Second Memorandum at 14 (citing same).

Each motion cites the Respondents' decision to detain the Petitioner in Louisiana, away from family. Compare First Memorandum at 21 (arguing that transfer to "thousands of miles away from his family and attorneys" is retaliatory), and Amended First Memorandum at 33 ("[The Petitioner]'s detention in rural Louisiana --- thousands of miles away from his . . . family . . . --- is intended as retaliatory punishment[.]"), with Second Memorandum at 16 (arguing that a "pattern of antagonism . . . began with [the Petitioner]'s . . . unusual transfer more than a thousand miles away from his then-pregnant wife" and continued with government refusing "a contact visit with his wife and newborn son").

Each motion contends that the timing of the documents charge helps to show that it was animated by retaliatory intent. Compare Amended First Memorandum at 18 n.20 ("The timing of Respondents' after-the-fact addition of new allegations and a new charge against [the Petitioner] . . . only further confirms their retaliatory motive."), with Second Memorandum at 11

7

("[T]he government's attempts to remove [the Petitioner] by lodging the [documents] [c]harge constitute retaliatory action[.]").

Each motion argues that the Respondents pressed the documents charge to punish the Petitioner for filing this lawsuit. <u>Compare</u> First Amended Petition at 8-9 (arguing that Petitioner was "subject to additional retaliation" (that is, the documents charge) for "challeng[ing] the Policy in federal court"), <u>with</u> Second Memorandum at 11-12 (arguing that Petitioner's "filing of this lawsuit is also First Amendment-protected speech" against which the Respondents retaliated).

And each motion argues that the underlying allegations in the documents charge are "meritless" --- that the Petitioner did not, in fact, fail to honestly complete his lawful permanent resident application. <u>Compare</u> First Amended Petition at 18 n.20 ("These allegations are meritless."), <u>with</u> Second Petition at 17 n.9 ("To be sure, [the Petitioner] does not concede that the [documents] [c]harge is anything other than meritless[.]").

The motions also press the same contentions as to how the Respondents' conduct impacts the Petitioner.

The Petitioner argued on the first motion that the Respondents' retaliatory efforts were chilling his speech. <u>See</u> First Memorandum at 10 (stating that deportation efforts have "a chilling effect on [the Petitioner]'s speech"). And he makes the same argument now. <u>See</u> Second Memorandum at 11 (stating that the documents charge suffices "to deter a person of ordinary firmness from exercising their First Amendment rights.") (cleaned up).

Then as now, the Petitioner argues that the Respondents are harming him professionally. <u>Compare</u> Amended First Memorandum at 34 ("[H]e will be unable to start his new job . . . and may lose his employment altogether[.]"), <u>with</u> Second Memorandum at 8 (arguing that the documents charge is causing "continuing long-term damage to [the Petitioner's] career prospects.").

And reputationally. <u>Compare</u> Amended First Memorandum at 13 (arguing the Secretary of State's determination "has irretrievably damaged [the Petitioner's] reputation"), <u>with</u> Second Memorandum at 27 ("The same issues with . . . credibility, and with reputation that the [Secretary of State's] [d]etermination caused . . . flow equally from the [documents] [c]harge[.]").

8

Given the large overlap between them, it is hardly surprising that the Petitioner's new motion says that it incorporates "[a]ll evidence in support of" his first one.  See Second Memorandum at 9.

And the old preliminary injunction motion and the current one do not rest on just the same set of factual allegations.

They press many of the same basic legal claims, too.

Each preliminary injunction motion, new and old, says that the Respondents retaliated against the Petitioner's First Amendment-protected speech.  Compare First Memorandum at 19 ("[The Petitioner]'s retaliatory detention violates . . . the First Amendment."), with Second Memorandum at 10 ("The government's decisions to add the [documents] [c]harge and detain [the Petitioner] on that basis were retaliatory in violation of the First Amendment.").

Each motion leans on the same case law for the same propositions.

The first motion, for example, cites Calderon-Rosas v. Attorney General United States, 957 F.3d 378 (3d Cir. 2020), and German Santos v. Warden Pike County Correctional Facility, 965 F.3d 203 (3d Cir. 2020), for the proposition that "the Fifth Amendment entitles noncitizens to due process in deportation proceedings, including in detention incident to those proceeds."  Amended First Memorandum at 31 (cleaned up).  That sentence reappears nearly verbatim in the current motion.  Second Memorandum at 22.

And another example: each motion cites Ragbir v. Homan, 923 F.3d 53 (2d Cir. 2019), cert. granted, judgment vacated sub nom. Pham v. Ragbir, 141 S. Ct. 227 (2020), for a particular idea.  Compare Amended First Memorandum at 13 (arguing case holds "that threat of removal constitutes adverse action under First Amendment analysis"), with Second Memorandum at 11 (same).

Bottom line: the first preliminary injunction motion overlaps with the current preliminary injunction motion to a great extent, factually and legally.

*    *    *

To be sure, the motions are not carbon copies.  There are differences between them --- three in particular.

9

But these, discussed just below, do not meaningfully change the picture.

\*   \*   \*

The first main difference: the Petitioner's current preliminary injunction motion adds an assertedly new legal theory.

The documents charge, the Petitioner now says, violates not only the Constitution's First Amendment guarantee, but also its "substantive due process" protection.  See Second Memorandum at 21-25.

But this is little more than putting a new label to the earlier claim.[8]

The basic thrust of the substantive due process claim is that "the government detained [the Petitioner] not for any bona fide law enforcement purpose but to punish him for his speech."  Id. at 22.

But that is no different in substance than the First Amendment argument the Petitioner made in his prior motion.  See Amended First Memorandum at 32 ("Not only does the government lack a legitimate purpose in [the Petitioner]'s detention, but it is clearly detaining him . . . to punish him for his speech.").

In addition, the Petitioner argues that the Respondents violated "substantive due process because the uncontroverted evidence demonstrates that he is not a flight risk or danger to the community."  Second Memorandum at 23.

But the Petitioner argued that before, too.  See Amended First Memorandum at 32 ("[The Petitioner] is neither a flight risk nor a danger to the community.").

In short, the building blocks of the new substantive due process argument are largely the building blocks of the old First Amendment argument.

---

[8]  The Petitioner comes close to acknowledging this, arguing that the substantive due process claim should succeed "for all the reasons the government's efforts to detain . . . [the Petitioner] have been retaliatory in violation of the First Amendment."  Second Memorandum at 22.

10

And more fundamentally, there is likely no bona fide way to press a substantive due process claim here --- precisely because that claim appears to be nothing other than a dressed-up First Amendment retaliation claim.

That follows from Graham v. Connor, 490 U.S. 386 (1989), a Fourth Amendment case in which the Supreme Court held that the validity of a claim against government officials "must be judged by reference to the specific constitutional standard which governs that right," id. at 394, not "under a 'substantive due process' approach." Id. at 395.

In light of Graham, the Third Circuit has held that a substantive due process challenge collapses into a First Amendment claim, and gets no independent traction of its own, where the two claims are based on the same core factual allegations.

The referenced case is Phillips v. Borough of Keyport, 107 F.3d 164 (3d Cir. 1997) (en banc).

There, the appellants were denied permits for an adult bookshop. They argued that the denials violated their rights to both substantive due process and to freedom of speech. See id. at 167-68.

The en banc court held that "where there is an explicit textual constitutional provision addressing the alleged wrongs --- as there is here in the form of the First Amendment --- it must be the guide for liability rather than the more generalized notion of substantive due process." Id. at 179. As such, the appellants' challenges were "substantive due process claims governed by First Amendment standards." Id. at 180 n.7.[9]

Bottom line: that the Petitioner's new challenge to the documents charge now includes a substantive due process claim is not a telling difference. The old claim (First Amendment retaliation) and the new claims (First Amendment retaliation and also substantive due process) rest on the same core of facts and arguments. And in any event, under Graham, the substantive due process claim likely melts away --- because it does little more than repackage as a substantive due process concern a claim

---

[9] Other circuit courts see things in roughly the same way. See, e.g., Collins v. Putt, 979 F.3d 128, 136 (2d Cir. 2020); Thaddeus-X v. Blatter, 175 F.3d 378, 387-88 (6th Cir. 1999) (en banc); Conyers v. Abitz, 416 F.3d 580, 586 (7th Cir. 2005).

under a specific, on-point constitutional guarantee, the First Amendment.

\*   \*   \*

There is a <u>second</u> main difference between the Petitioner's current preliminary injunction motion (as to the documents charge) and his earlier preliminary injunction motion.

The difference is this:

The prior motion rested on virtually no facts that substantiated the Petitioner's challenge to the documents charge in particular, and the legal arguments it made as to that challenge were sparse and not meaningfully developed.

The current motion works to plug those holes.  There is now sworn evidence to look to.  And there are more built-out legal arguments.

These are real differences.  But they do not move the needle.

The reason: the facts that are now advanced, and the legal arguments that are now fleshed out --- virtually all of this could have been done before.  And as noted above, a party may not generally bring a successive motion based on grounds that could have been, but were not, raised before.

The best way to see all this is to walk briefly through some of the procedural history here.

The Petitioner was detained by federal officials on March 8 and filed a petition for habeas corpus the next day in Manhattan. <u>See</u> <u>Khalil</u> v. <u>Joyce</u>, 777 F. Supp. 3d 369, 399 (D.N.J. 2025).

Nine days later, on March 17, federal officials lodged the documents charge against the Petitioner.  <u>See</u> <u>Khalil</u>, 2025 WL 1514713, at \*2.

This means the documents charge was already on the books by the time this case arrived in New Jersey, on March 19.  <u>See</u> <u>Khalil</u> v. <u>Joyce</u>, 771 F. Supp. 3d 268 (S.D.N.Y. 2025) (sending the case here).

And indeed, the documents charge was on the books <u>before</u> the Petitioner filed his amended preliminary injunction motion in this Court, on March 25.

12

Over the course of April, the Petitioner actively engaged with the documents charge before the immigration court. The immigration judge gave him until April 23 to file, among other things, "any applications for relief" as to that charge. See Petitioner's Letter (Apr. 23, 2025) (ECF 209) at 1.

But while the Petitioner sought relief before this Court as to efforts to remove him based on the Secretary of State's determination, see Amended First Memorandum at 40, he did not seek relief from this Court as to the documents charge.

As this Court noted in an April ruling, a footnote in one of the Petitioner's legal briefs "reference[d] the second charge against him," the documents charge --- but the underlying habeas petition itself made "no reference" to it. Khalil v. Joyce, 2025 WL 1232369, at *3 n.7 (D.N.J. Apr. 29, 2025).

So, the Court noted, "[n]o challenge to the second charge is before the Court." Id.

The Petitioner responded two days later by "seek[ing] to add such a claim to his amended petition." Petitioner's Letter (May 1, 2025) (ECF 223) at 1 n.3.

The Court granted the Petitioner's motion to amend. See Transcript of Status Conference (May 2, 2025) (ECF 229) at 4:14-15.

The resulting amended petition added two paragraphs that seemed to contend that the documents charge was the result of a "policy" pushed forward by federal officials in retaliation for the Petitioner's exercise of First Amendment rights. See Third Amended Petition (May 8, 2025) (ECF 236) ¶¶ 88-89.[10]

But as the Court later ruled, in late May, the Petitioner's challenge to the documents charge was not persuasive. See Khalil, 2025 WL 1514713, at *52-53.

There were two shortcomings, the Court ruled in May, one legal and one factual.

The legal problem was that there was simply too little there.

---

[10] The two paragraphs in the Third Amended Petition are hard to follow. See Khalil, 2025 WL 1514713, at *52-53. But the Petitioner has not sought to clarify his petition by seeking to amend it.

13

The Petitioner had (and has) the burden of persuasion.  See id. at *53.

But, the Court noted in May, the Petitioner had not made any "substantial argument" about the documents charge.  Id.  The Court had flagged this point in a prior opinion, in late April.  See Khalil, 2025 WL 1232369, at *3 n.7.

But around a month later, when the relevant part of the Petitioner's first preliminary injunction motion was resolved, the Court noted that as to "policy" and its impact on the documents charge, the Petitioner still had "not developed any arguments in his legal briefs."  Khalil, 2025 WL 1514713, at *53.

Nor had he cited any cases as to the causation issues critical to any First Amendment retaliation claim, though there was, as the Court noted in ruling, "a large body of potentially relevant case law."  Id.  (The Court noted that two Supreme Court cases in particular were likely relevant but had not been mentioned.  See id. (citing Nieves v. Bartlett, 587 U.S. 391, 398 (2019); Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).)

The Court, in short, denied the preliminary injunction motion in part because the Petitioner had not developed any particular legal arguments as to why the documents charge should be preliminarily enjoined as retaliatory.  See id.

All of this has, now, been fleshed out to an extent.

For example, the Petitioner's legal brief associated with his current preliminary injunction motion, Nieves and Bartlett are discussed for over ten pages.  See Second Memorandum at 10-21.

And there is now a specific, tailored legal argument as to how the documents charge was allegedly retaliatory.  See id. at 11-17.

But the key point is this: there is nothing about these now-made legal arguments that could not have been made before.

The referenced Supreme Court cases are not new.  And the lack of meaningful development of legal arguments related to the documents charge had long been readily apparent.  As noted, the Court pointed this out in a written opinion in April.  See Khalil, 2025 WL 1232369, at *3 n.7.

14

The Petitioner did not try to fix the issue --- he did not, for example, seek to file supplemental materials.

And the Court ruled in May in a not-hard-to-predict way. The Petitioner had not carried his burden on the documents charge, the Court ruled, because he had not meaningfully developed legal arguments. See Khalil, 2025 WL 1514713, at *52-54.

The Court's May ruling also rested on a second flaw in the Petitioner's argument.

This one was factual.

As the Court noted, a party moving for a preliminary injunction must present facts "through affidavits, deposition testimony, or other documents." See id. at *54 (citing Adams v. Freedom Forge Corp., 204 F.3d 475, 487 (3d Cir. 2000)).

But on the claim related to the documents charge, the Petitioner offered none of the above. There was, for example, no affidavit that laid out the basics --- none that described the documents charge, and thereby put it before the Court in the way the Third Circuit requires.

It is true, the Court noted in May, that a sworn pleading can sometimes fill that gap. See id. at *54 & nn.85-86. But the Petitioner had not tried to go that route either. He had not sworn to the allegations in the revised habeas petition that referenced the documents charge. See id. at *54.

The Petitioner had, in short, put before the Court no evidence specific to the documents charge. See id.

The factual gap has now been addressed in the current preliminary injunction motion. See, e.g., Second Memorandum at 4-5 (describing evidence on the documents charge, all of which the Petitioner filed after the Court denied the first preliminary injunction).

But same problem: there is nothing about the necessary factual backbone of the documents charge that he could not have put before the Court before. The documents charge was filed against the Petitioner on March 17. See Khalil, 2025 WL 1514713, at *2.

The missing facts, like the undeveloped legal arguments, could plainly have been teed up before.

The Petitioner did not do so. (Indeed, he suggests now that this was intentional, a strategic move. See Petitioner's Letter (July 17, 2025) (ECF 352) at 4-5.)

But as laid out above, a party generally cannot make a successive filing based on facts and arguments that he could have pressed before.

And that is the case here. The factual and legal bases for the challenge to the documents charge were mainly there for the making. "[T]he arguments in the second motion could have been brought into the first." Caraballo, 2025 WL 1430152, at *1.

\*   \*   \*

The third difference, per the Petitioner, between the first preliminary injunction motion and the current one is that the current one is based on new facts.

Per the Petitioner, these new facts are the Respondents' decisions (1) to detain him under the documents charge alone, (2) to refuse to transfer him nearer to his family, and (3) to deny him a contact visit with his wife and newborn child. See Petitioner's Letter (July 17, 2025) at 4-5.

Consider these in turn.

The first is a new fact, and it is a notable one. Its incremental weight, when added to what was there already, helped to tilt the balance in terms of the Court's view of the merits here. See generally Transcript of Motion for Bail (ECF 330). But that does not mean that the increment was itself large. The more important facts in this case --- the comments, for example, of senior federal officials --- had been on the table for months.[11]

The second fact is the Respondents' refusal to transfer the Petitioner to be nearer to his family. But this is mostly not new. The Petitioner's distance from his family was a consequence of his detention in Louisiana, where he was

---

[11] And even now, in the Petitioner's latest brief, the decision to continue to detain him on the documents charge is arguably not presented as the central fact. The Petitioner devotes more space to the addition of the documents charge and to governmental statements than he does to his detention on the documents charge. See Second Memorandum at 3-7.

16

throughout most of this litigation, before being bailed. And in his first preliminary injunction motion, the Petitioner repeatedly noted the "retaliatory" nature of this detention. See, e.g., First Memorandum at 6, 20, 23; Amended First Memorandum at 10, 33, 36.

The third fact, per the Petitioner, is that the Respondents denied him a visit with his wife and newborn child (until the Respondents allowed a visit).

But this, too, cannot be easily chalked up as a new fact. The Petitioner wrote to the Court about it on May 21. See Petitioner's Letter (May 21, 2025) (ECF 258). And while the Petitioner immediately asked for the Court to intervene to make a visit possible, see id., he did not try to adjust any of his underlying arguments. By the time the Court ruled in May on the claim that related to the documents charge, the Petitioner had not made any argument as to why denial of a contact visit had impacted the alleged illegality of the documents charge.

\*   \*   \*

In short:

The current preliminary injunction motion is a largely successive one. As to the claim that concerns the documents charge, there is a great deal of overlap between the old motion that was denied and the current one.

To be sure, there are differences between the motions.

There is a new legal claim in the new motion. But that is mainly the old claim in new packaging.

Now, the legal arguments are more fleshed out, and fundamental facts are properly put before the Court. But that could have been done before, and was not.

As to new facts, some are barely new, if at all. And on balance, it is the old facts that are plainly at the core of the current preliminary injunction motion.

Against the above backdrop, the Court will exercise its discretion and will not consider the current preliminary injunction motion. See generally Dietz v. Bouldin, 579 U.S. 40,

17

47 (2016); <u>In re Fine Paper Antitrust Litig.</u>, 685 F.2d 810, 817 (3d Cir. 1982).[12]

*   *   *

The motion at ECF 345 is denied.

IT IS on this 8th day of August, 2025, so **ORDERED**.

_____
Michael E. Farbiarz, U.S.D.J.

---

[12] There might be circumstances in which the Court would potentially exercise its discretion in a different direction. If, for example, the Petitioner were detained, the Court might consider taking a different tack. <u>Cf</u>. footnote 6. But that is not the case now.

18