October 31, 2025

<u>**By ECF**</u>
Honorable Michael A. Hammer
United States Magistrate Judge
District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street, Newark, New Jersey 07101

Re:    *Khalil v. Trump, et al.*, No. 2:25-cv-1963 (MEF) (MAH)
       <u>**Joint Status Report Pursuant to Court's Order ECF 399**</u>

Dear Judge Hammer,
       The parties write to respectfully provide their positions as to the appropriateness of discovery proceeding at this time in response to this Court's Order (ECF 399). Additionally, to the extent Habeas Rule 6 applies to the Court's inquiry, Petitioner has appended his discovery requests (First Set of Requests for Production (Ex. A); First Set of Interrogatories (Ex. B); a proposed order outlining Petitioner's proposed discovery plan (Ex. C)).

                        Respectfully submitted,

*/s/ Liza Weisberg*                          */s/ Aniello Desimone*
AMERICAN CIVIL LIBERTIES UNION OF            ANIELLO DESIMONE
NEW JERSEY FOUNDATION                        Trial Attorney
Jeanne LoCicero                              Office of Immigration Litigation
Farrin R. Anello                             General Litigation and Appeals Section PO
Molly K.C. Linhorst                          Box 878, Ben Franklin Station Washington,
Liza Weisberg                                D.C. 20044
570 Broad Street, 11th Floor                 Tel: (202) 532-5239
Newark, New Jersey 07102                     aniello.desimone@usdoj.gov
973-854-1715
                                             BRETT A. SHUMATE
                                             Assistant Attorney General
NEW YORK CIVIL LIBERTIES UNION
FOUNDATION                                   _____
Amy Belsher*                                 YAAKOV M. ROTH
Robert Hodgson*                              Principal Deputy Assistant Attorney
Veronica Salama*                             General
Molly Biklen*
125 Broad Street, 19th Floor                 DREW C. ENSIGN
New York, N.Y. 10004                         Deputy Assistant Attorney General
Tel: (212) 607-3300
                                             ALANNA T. DUONG
                                             Senior Litigation Counsel

                                             ERIKA ARCE-ROMERO
                                             JOSHUA C. MCCROSKEY

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
Omar Jadwat
Noor Zafar*
Sidra Mahfooz*
Michael K.T. Tan*
Brian Hauss*
Esha Bhandari*
Vera Eidelman*
Brett Max Kaufman*
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2500

CENTER FOR CONSTITUTIONAL RIGHTS
Baher Azmy
Samah Sisay*
Diala Shamas*
666 Broadway, 7th Floor
New York, NY 10012
Tel: (212) 614-6464

CLEAR PROJECT
MAIN STREET LEGAL SERVICES, INC.
Ramzi Kassem*
Naz Ahmad
Mudassar Toppa*
Shezza Abboushi Dallal*
CUNY School of Law
2 Court Square
Long Island City, NY 11101
Tel: (718) 340-4558

DRATEL & LEWIS
Amy E. Greer
29 Broadway, Suite 1412
New York, NY 10006
Tel: (212) 732-8805
Fax: (212) 571-3792

VAN DER HOUT LLP

Trial Attorneys

*Counsel for Respondents*

Marc Van Der Hout (CA Bar #80778)*
Johnny Sinodis (CA Bar #290402)*
Oona Cahill (CA Bar #354525)*
360 Post St., Suite 800
San Francisco, CA 94108
Tel: (415) 981-3000
Fax: (415) 981-3003

WASHINGTON SQUARE LEGAL SERVICES,
INC.
Alina Das*
Kyle Barron
Immigrant Rights Clinic
245 Sullivan Street, 5th Floor
New York, New York 10012
Tel: (212) 998-6430

*Counsel for Petitioner*
*\* Appearing Pro hac vice*

## PETITIONER'S POSITION: DISCOVERY SHOULD PROCEED EXPEDITIOUSLY

In this hybrid habeas petition and civil rights action, Mahmoud Khalil asserts First Amendment, Fifth Amendment, and APA challenges to the government's punitive and retaliatory actions against him—including the Rubio Determination, the Post-Hoc Charge, and detention—and to its policy of punishing and retaliating against noncitizens for their protected expression in support of Palestinian human rights, critical of Israel, or in opposition to U.S. support for Israel (the "Policy").

Discovery, on an expedited basis, is appropriate at this time because Respondents are seeking to deprive Mr. Khalil of his lawful U.S. permanent resident status in expedited proceedings, based on a charge he alleges Respondents have unconstitutionally lodged against him pursuant to their Policy and in retaliation and punishment for his protected political speech. Mr. Khalil also continues to suffer irreparable chilling of his First Amendment-protected speech and association, as well as ongoing harm to his reputation and career prospects resulting from the challenged actions. Mr. Khalil's targeted discovery requests, appended to this letter, are organized by priority and aim to establish the government's punitive and retaliatory animus, as well as the scope of the Policy. Moreover, much of the information sought was already produced in another case that successfully challenged effectively the same Policy, minimizing any burden on the government. *See AAUP v. Rubio*, 2025 WL 2777659 (D. Mass. Sept. 30, 2025) ("AAUP"). Good cause exists for this discovery and for it to proceed on an expedited timeline. Mr. Khalil's allegations and the undisputed record raise a strong inference that his requests will yield evidence in further support of his weighty claims. Finally, Mr. Khalil is entitled to "the whole [administrative] record" for each of his APA claims as of right.

<u>Under Any Standard, Expedited Discovery on Mr. Khalil's Constitutional Claims Should Proceed.</u>

Discovery on an expedited basis is appropriate under any standard. Mr. Khalil asserts two grounds for discovery: First, because Mr. Khalil has brought this case as both a habeas petition and a complaint under 28 U.S.C. § 1331, this Court can and should exercise its broad discretion to apply the Federal Rules of Civil Procedure ("FRCP"), which "govern the procedure in all civil actions and

proceedings." Fed. R. Civ. P. 1. Hybrid pleadings are routinely filed in this Circuit seeking various forms of relief. *See, e.g., Alli v. Decker*, 650 F.3d 1007, 1009–10, 1016 (3d Cir. 2011); *David Q. v. Tsoukaris*, No. 20-CV-7176, 2020 WL 4382282, at *9–10 (D.N.J. July 30, 2020) (petitioner, a civil immigration detainee, can proceed on his claims under both Section 2241 and *Bivens* for injunctive relief); *see also Herrera v. Agents of Pennsylvania Bd. of Prob. & Parole*, 132 F.4th 248, 255 (3d Cir. 2025).[1] And under the FRCP, a plaintiff need not make any showing of entitlement to discovery. Alternatively, if this Court applies the Habeas Rules, as set forth below, Mr. Khalil easily satisfies the "good cause" standard for discovery. *Bracy v. Gramley,* 520 U.S. 899, 904 (1997).[2]

Even assuming the Rule 6 good cause analysis applies, the Supreme Court has recognized that, for the habeas writ to be an "effective and meaningful remedy," courts must be able to "assess the sufficiency of the Government's evidence" and "consider relevant evidence." *Boumediene v. Bush*, 553 U.S. 723, 729 (2008) (cleaned up). This principle underscores the importance of discovery here: Mr. Khalil's petition-complaint raises significant constitutional claims, yet he lacks access to a pre-existing factual record or to any meaningful opportunity to develop one outside this proceeding. *See* ECF 214 at 65–66 (immigration court cannot "meaningfully" develop factual record to adjudicate Mr. Khalil's free speech claims); *id.* at 61 n.45 (acknowledging IJ's denial of Mr. Khalil's discovery-related motions). Because this case is a "far cry" from the typical habeas action—which usually follows a criminal

---

[1] Despite litigating this case "vigorously," Oct. 23 Conf. Tr.,15:3–10, Respondents have not moved to dismiss this hybrid action on any merits basis. Respondents' reliance on a single footnote from an unpublished decision suggesting, in dicta, that in that case the "better approach" to "case management" would have been to deny leave to amend a habeas to include civil claims unrelated to release is unavailing. *Burnam v. Marberry*, 313 F. App'x 455, 456 n.2 (3d Cir. 2009). The district court cases they cite acknowledge *Burnam's* limited holding. *See, e.g., Russo v. Att'y Gen.*, No. 15- CV-6736, 2018 WL 2723860, at *4 (D.N.J. June 6, 2018). Their reliance on *Thieme v. Warden Fort Dix FCI*, which was not a hybrid action, is misplaced. No. 23-1697, 2025 WL 2846567, at *5 (3d Cir. Oct. 8, 2025).
[2] Rule 6 of the §2254 and §2255 Rules (collectively, "Habeas Rules") reflect the good cause standard. *See* Rule 6, 28 U.S.C.A. foll. §§ 2254, 2255. Although Rule 6 does not automatically apply to §2241 civil habeas petitions or hybrid habeas/civil rights actions like this one, Rule 1(b) of the §2254 Rules allows courts to apply "any or all" of its rules to such cases. Rule 1(b), 28 U.S.C.A. foll. § 2254.

conviction where a petitioner had the benefit of procedural safeguards, access to discovery, and an established factual record—discovery here is especially critical. *See Gomes v. U.S. Dep't of Homeland Sec., Acting Sec'y*, 559 F. Supp. 3d 8, 14 (D.N.H. 2021) (declining to require strict compliance with Rule 6).

Finally, the Third Circuit has recognized that discovery on an expedited basis is appropriate where time-sensitive developments could cause personal and adverse consequences. *See In re Kensington Int'l Ltd.*, 353 F.3d 211, 224–25 (3d Cir. 2003) (ordering expedited discovery and resolution of recusal motion within six weeks, noting delay could personally and adversely impact asbestos claimants and emphasizing need for developed record). This case meets that standard: prompt discovery is necessary to protect Mr. Khalil's rights and to enable the court's merits review, while imposing minimal burden on the government. *See Tyson v. Coinbase Glob., Inc.*, No. 23-CV-22066, 2024 WL 69929, at *2 (D.N.J. Jan. 4, 2024) ("Good cause exists where the need for expedited discovery, in consideration of the administration of justice … outweighs the prejudice to the responding party") (cleaned up).

<u>If This Court Applies Habeas Rule 6, Good Cause Exists for Discovery on His Constitutional Claims.</u>

A petitioner satisfies the "good cause" standard by setting forth "specific factual allegations which, if fully developed, would entitle him" to the relief sought. *Williams v. Beard*, 637 F.3d 195, 209 (3d Cir. 2011). Once good cause is shown, it is "the duty of the court to provide the necessary facilities and procedures for an adequate inquiry." *Harris v. Nelson*, 394 U.S. 286, 300 (1969); *see also Marshall v. Hendricks*, 103 F. Supp. 2d 749, 760 (D.N.J. 2000) ("[A] court's blanket denial of discovery is an abuse of discretion if discovery is indispensable to a fair development of the material facts."), *aff'd in part, rev'd in part on other grounds*, 307 F.3d 36 (3d Cir. 2002). Discovery is warranted where, as here, the "essential elements" of the petitioner's claims, *Bracy*, 520 U.S. at 904, considered alongside the specific

factual allegations in the record, "demonstrate that the sought-after information is pertinent and that there is good cause for its production." *Williams*, 637 F.3d at 209.[3]

A. <u>Khalil's constitutional claims warrant discovery.</u>

Mr. Khalil brings four First Amendment retaliation claims challenging (1) the Rubio Determination, ECF 198-1,[4] (2) the Post-Hoc Charge—lodged after he filed this action challenging the Rubio Determination—alleging material misrepresentation in his March 2024 green card application, (3) his detention, and (4) the Policy pursuant to which each of those adverse actions were taken. ECF 382 ¶¶ 144–58. Mr. Khalil alleges that the Policy also violates the First Amendment's prohibition on viewpoint discrimination. *Id.* ¶¶ 57–60. He also raises a Fifth Amendment substantive due process claim separately challenging the constitutionality of his detention. *Id.* ¶¶ 159–64.[5]

The elements of Mr. Khalil's First Amendment and Fifth Amendment substantive due process claims differ, but they all turn on a common factual question that is necessarily in dispute: whether the government's actions were motivated by a desire to punish him and other noncitizens for their protected speech in support of Palestinian human rights, critical of Israel and the U.S. government's support for Israel, and to censor future such speech.[6] Because this is necessarily a fact-intensive inquiry, and the Third Circuit has made clear that such motives are "indeed relevant, if not dispositive" when an individual's exercise of protected speech precedes adverse government action, *Anderson v. Davila*, 125 F.3d 148, 161 (3d Cir. 1997), discovery is necessary to allow Mr. Khalil to develop the

---

[3] Because Rule 6 requires a review of the discovery sought, Petitioner attaches his First Set of Requests for Production (Ex. A); First Set of Interrogatories (Ex. B); and a proposed order outlining Petitioner's proposed discovery plan (Ex. C). Respondents have reviewed the substance of these documents. ECF 396. However, in light of the BIA Notice issued on October 22, *see* ECF 402, Petitioner has revised the labeling of certain requests designated for "priority" production as well as the proposed timelines.

[4] Respondents mischaracterize the Rubio Determination. *Compare* Gov't Letter 7 *with* ECF 272 at 37.

[5] Mr. Khalil also alleges the Policy and the Rubio Determination are unconstitutionally vague, *id.* ¶¶ 165–66, and the district court preliminarily enjoined the Rubio Determination on that basis. ECF 299.

[6] While Mr. Khalil's core political speech underlies all his claims, he alleges the Post-Hoc Charge was also substantially motivated by this lawsuit. ECF 382 ¶¶ 107–12, 123–31; *see also* ECF 345-1 at 10–18.

evidentiary record to further support his claims. Indeed, as the district court has noted, discovery is among the "next logical steps" in this case. ECF 374 at 3. *See Han Tak Lee v. Glunt*, 667 F.3d 397, 403–05 (3d Cir. 2012) (district court's denial of discovery was abuse of discretion; petitioner specifically alleged his due process claim depended on post-trial scientific developments and sought related evidence); *see also Gaitan-Campanioni v. Thornburgh*, 777 F. Supp. 1355, 1358–59 (E.D. Tex. 1991) (good cause for discovery; punitive detention claim "depended on a highly fact-bound determination").

To prevail on his First Amendment retaliation claims as to each of the government's discrete adverse actions, Mr. Khalil must show "that (1) he engaged in constitutionally-protected activity; (2) that the government responded with retaliation; and (3) that the protected activity caused the retaliation." *Miller v. Mitchell*, 598 F.3d 139, 147 (3d Cir. 2010). Here, there is no real dispute as to the first two elements: the Rubio Determination, the Post-Hoc Charge, and his detention constitute adverse government actions, *see* ECF 124 at 13; ECF 345-1 at 11–12, and the speech at issue is indisputably protected by the First Amendment. ECF 299 at 6 n.5; ECF 214 at 81–82; ECF 272 at 12–13, 79, 77 n. 65; *see also Conard, 902 F.3d at* 183–84 (filing a lawsuit is undoubtedly protected). ECF 198-1. As such, Mr. Khalil's ability to prevail likely turns on the third factor: causation. To prove causation, Mr. Khalil need only prove, by a preponderance of the evidence, that his protected expression was a "substantial" or "motivating" factor behind the adverse actions. *Mt. Healthy City Sch. Dist. v. Doyle*, 429 U. S. 274, 287 (1977); *see also Falco v. Zimmer*, 767 F. App'x 288, 311 (3d Cir. 2019). Evidence of retaliatory motive may include direct evidence, such as government statements, as well as the timing and proximity of the adverse action to the protected activity, a pattern of antagonism, and other facts "gleaned from the record as a whole." *Conard*, 902 F.3d at 184; *see also Watson v. Rozum*, 834 F.3d 417, 424 (3d Cir. 2016); *Miller v. Mitchell*, 598 F.3d at 152–55.

Similarly, to prevail on his First Amendment retaliation and viewpoint discrimination claims against the Policy, he must prove "the existence and enforcement of an official policy motivated by

retaliation" *Lozman v. Riviera Beach*, 585 U.S. 87, 100 (2018); *see AAUP*, 2025 WL 2777659, at *48 (finding that plaintiffs have proved such a policy)*, and that the Policy applies "to particular speech because of…the idea or message expressed." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015).

The government's motive is also central to Mr. Khalil's substantive due process claim challenging his detention. To prevail on this claim, Mr. Khalil must prove "either that the government acted with a punitive purpose or that it lack[ed] any legitimate reason to detain him." *Mahdawi v. Trump*, 781 F. Supp. 3d 214, 232 (D. Vt. 2025); *see also Bell v. Wolfish*, 441 U.S. 520, 539 n. 20 (1979) ("Retribution and deterrence are not legitimate nonpunitive governmental objectives.") (cleaned up).[7]

B. Mr. Khalil's allegations, corroborated by government statements and undisputed evidence, establish a non-speculative basis for the discovery sought.

Mr. Khalil's verified petition, the undisputed record, and the government's own statements and conduct strongly support the inference that related discovery will uncover additional evidence further substantiating his constitutional challenges to the Policy and to each of the adverse actions taken under it—including his detention, the Rubio Determination, and the Post-Hoc Charge. *See generally* ECF 382. Moreover, the limited publicly available portions of the government's disclosures and trial evidence in *AAUP*, as well as the district court's recent FRCP 52(a) findings of fact in that case, confirm that directly relevant and responsive evidence exists and is readily discoverable. These facts strongly support Mr. Khalil's allegations and suggest the requested discovery will yield additional evidence. *See Bracy*, 520 U.S. at 908–09 (finding good cause on petitioner's judicial bias claim based on history of judge's corruption and evidence of bias in petitioner's own trial); *see also Alvarez v. LaRose*, No. 20-CV-00782, 2020 WL 5594908, at *8 (S.D. Cal. Sept. 18, 2020) ("[T]he good cause standard is met if Petitioners' claims do not appear purely speculative or without any basis in the record"); *see also*

_____

[7] Because "the evidence strongly suggests that there is no basis for detention" the district court has already found that there is "at least something to" Mr. Khalil's substantive due process claim challenging detention as an effort to punish him. June 20 Hearing Tr. at 60:13–62:1.

*Phouk v. Warden, Stewart Det. Ctr.*, 378 F. Supp. 3d 1209, 1213 (M.D. Ga. 2019); *Castañeda Juarez v. Asher*, 2020 WL 8473407, at *3–4 (W.D. Wash. Oct. 7, 2020).

### The Policy, the Rubio Determination, and Detention

Mr. Khalil alleges, and the *AAUP* record confirms that, following the Executive Orders and consistent with Respondents' promises, Respondents launched a step-by-step operation to punish noncitizens, including Mr. Khalil, for engaging in protected expression.[8] Mr. Khalil's March 8 arrest and detention was not only publicly praised by the White House, Respondents, and other high-ranking federal officials, but it was also highlighted as a "blueprint" for future government action. *Id.* ¶ 94. In *AAUP*, the court found, by clear and convincing evidence, the government has adopted and carried out an unlawful policy of targeting pro-Palestinian noncitizen student activists—including Mr. Khalil—with the goal of chilling such protected expression, and specifically to "terroriz[e] similarly situated non-citizen (and other) pro-Palestinians into silence." *Id.* at *39, 41; ECF 382 ¶¶ 57–61.

### The Post-Hoc Charge

Mr. Khalil's allegations regarding the retaliatory nature of the government's sudden investigation into his 2024 green card application, followed by the addition of the Post-Hoc Charge on March 17, when considered alongside the government's statements, publicly available *AAUP* evidence, and timing of Respondents' actions, similarly raise a strong inference that the discovery sought here will uncover additional evidence of the government's retaliatory motives. In the week between Mr. Khalil's arrest pursuant to the Rubio Determination[9] and the lodging of the Post-Hoc Charge, Respondent Rubio publicly vowed to "do more," including targeting green card processes. ECF 175-18 at 6. This rhetoric—paired with the government's apparent desire to make an example

---

[8] In *AAUP*, the government produced documents about the Policy and Mr. Khalil's targeting. Mr. Khalil seeks the entire *AAUP* record, most of which is sealed. *See* Ex. A, RFPs 1, 2. Courts allow such discovery where, as here, there is "significant factual and legal overlap." *See, e.g., Schneider v. Chipotle Mexican Grill, Inc.*, No. 16-CV-02200, 2017 WL 1101799, at *4 (N.D. Cal. Mar. 24, 2017).

[9] Removal proceedings commenced after his arrest. *See* ECF 31 at 2; ECF 382 ¶77 ECF 214 at 103.

of Mr. Khalil—coincided with growing internal concerns: that the Rubio determination might not survive judicial scrutiny given its unprecedented nature and Mr. Khalil's status as a Lawful Permanent Resident, ECF 382 ¶ 51; that, as of March 6, DHS had identified "no alternative ground of removability," *id.*; and that Mr. Khalil's legal challenge to the Rubio Determination—especially his forthcoming motion for injunctive relief—could invite further challenges by similarly situated noncitizens. *Id.* ¶ 112. That the Post-Hoc Charge was issued just days after Mr. Khalil filed the instant action, on the same day he moved for a preliminary injunction, and amid nationwide protest and public scrutiny of the Rubio Determination, *id.* ¶ 107, supports the inference that Respondents quickly sought an alternative, pretextual basis for removal—both in retaliation for Mr. Khalil's protected speech and to ensure Mr. Khalil would serve as a proper "blueprint" of the Policy. The inference of retaliation is also bolstered by undisputed testimony from "seasoned, expert [immigration] practitioners," June 20 Hearing Tr. at 57:9–12, describing the addition of the Post-Hoc Charge as highly unusual—both in timing and substance. ECF 284-12 ¶¶6–15; ECF 284-11 ¶¶17–18; ECF 284-10 ¶16; ECF 294-4 ¶¶ 89; *see Conard*, 902 F.3d at 184; *Ragbir v. Homan*, 923 F.3d 53, 79 (2d Cir. 2019) (near-in-time retaliation carries "taint of the unconstitutional conduct") *cert. granted, judgment vacated on other grounds sub nom. Pham v. Ragbir*, 141 S. Ct. 227 (2020). The government's later decision to detain Mr. Khalil solely based on that charge—after his detention under the Rubio Determination was enjoined—further evinces its retaliatory motive. *See* ECF 284-16 ¶18.

Moreover, the government's immigration court submissions in support of the Post-Hoc Charge included the Canary Mission profile of Mr. Khalil, *see* ECF 298, and statements from other third-parties, communications with whom he now seeks in discovery. As in *Mohammed H. v. Trump*, Respondents here have offered "no evidence explaining why" Mr. Khalil's previously approved green card application was, one year later, suddenly "selected for" investigation "in the first place." 786 F. Supp. 3d 1149, 1157 (D. Minn. 2025) (granting First Amendment habeas where timing, context, and

government statements linked petitioner's arrest and detention to his pro-Palestinian speech). Evidence suggests the Post-Hoc Charge was driven by DHS's investigation into Mr. Khalil's political speech and his placement on the target list that led to the Rubio Determination. Discovery, including inter- and intra-agency communications referencing Mr. Khalil, will likely yield critical information concerning the basis for USCIS's sudden decision to re-examine his green card application and for Respondents to add the Post-Hoc Charge. It will likely further show that Respondents would not have added this charge absent Mr. Khalil's protected expression and his filing of this lawsuit.[10]

Finally, Mr. Khalil has alleged a detailed, sustained pattern of government antagonism since his warrantless arrest which, if fully developed through discovery, will likely yield further evidence that the government's actions over the past ten months have been driven by retaliatory animus towards his protected expression and the desire to make an example of him to chill the speech of others. This pattern is part of "the record as a whole," *Conard,* 902 F.3d at 184, and bears on the Court's analysis of the government's motives for each adverse action against Mr. Khalil. *See* ECF 382 ¶¶ 132–43.

That courts have granted similar discovery requests in habeas cases with comparable facts and claims highlights the reasonableness of Mr. Khalil's requests here. *See, e.g.,* Order to Grant Disc., *Gutierrez-Soto v. Sessions,* No. 18-CV-00071, Dkt. No. 46 (W.D. Tex. July 20, 2018) (retaliatory parole revocation case); *see also* Order on Mot. For Disc. and Order on Mot. for Leave to File, *Jean Montrevil v. Thomas Decker et al.,* No. 20-CV-264, Text Order (E.D.N.Y May 21, 2020) (First Amendment retaliation habeas petition); *id.* Text Order (E.D.N.Y June 3, 2021); *Momennia v. Estrada,* No. 3-03-0525, 2003 WL 21318323, at *2 (N.D. Tex. May 21, 2003); *see also Lunn v. Smith,* No. 17-CV-10938, 2018 WL 2849759, at *1 (D. Mass. Jan. 22, 2018); *Gaitan-Campanioni,* 777 F. Supp. at 1358–60.

Each APA Claim Requires the Whole Administrative Record.

---

[10] Mr. Khalil "need not demonstrate that he will ultimately prevail" on his claim to obtain discovery. *Pham v. Terhune,* 400 F.3d 740, 743 (9th Cir. 2005) (citing *Bracy,* 520 U.S. at 909).

Because Mr. Khalil's claims challenging the Policy, the Rubio Determination, and the Post-Hoc Charge under the APA entitle him to the "whole [administrative] record," 5 U.S.C. § 706, for each challenged final agency action as of right, he separately requests their production here. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42–43 (1983). The Policy's administrative record must include materials sufficient to "ascertain the contours of the precise policy at issue." [11] *Hispanic Affairs Project v. Acosta*, 901 F.3d 378, 388 (D.C. Cir. 2018). The administrative record for the other challenges must include all materials "referred to, considered by, or used" by the decisionmakers. *Ad Hoc Metals Coal. v. Whitman*, 227 F. Supp. 2d 134, 139 (D.D.C. 2002).

The Court Should Not Stay Discovery

Respondents request to stay discovery should be denied because such stays are "not favored" and Respondents have failed to show good cause. *See United States ex rel. Simpson v. Bayer Corp.*, No. 05-CV-3895, 2013 WL 12303732, at *1–2 (D.N.J. Jan. 4, 2013). Their appeal of the bail decision and preliminary injunction—for which they have already been denied a stay—does not encompass Mr. Khalil's entire action. And none of the other habeas cases they cite present the critical facts here—accelerated removal proceedings and a finding of ongoing irreparable harm. Thus, "the interests of the parties, the court, and the public in a just, speedy, and efficient adjudication" weigh in favor of proceeding with discovery. *Id.* (cleaned up); *see also Gesture Tech. Partners, LLC v. LG Elecs. Inc.*, No. CV 21-19234 (JMV) (MAH), 2023 WL 11979862, at *2 (D.N.J. Jan. 18, 2023). Moreover, the district court has already indicated that the parties should proceed with discovery concurrent to any further briefing on threshold issues. Oct. 9 Hearing Tr. 3:3–8, 8:4–10:18, 13:5–10.[12]

---

[11]The *AAUP* court supplemented the "bare-bones" administrative record "with all extra-record materials produced at trial." *AAUP*, 2025 WL 2777659, at *51 n.46. The Policy's administrative record here should likewise include those and other materials developed or relied upon for the Policy since.

[12]Habeas Rule 6 also does not require an answer prior to a motion for discovery. *See* Rule 6. And Respondents' failure to answer the complaint pursuant to the FRCP, or provide *any* "relevant information," *see, e.g.*, *Gaitan-Campanioni*, 777 F. Supp. at 1360, is no reason to curtail discovery particularly where, as here, evidentiary questions have been raised through extensive litigation.

**Respondents' Position Opposing Petitioner's Request for Expedited Discovery**

In response to the Court's October 23, 2025 order (ECF 399), the government respectfully submits that it is not appropriate for discovery to proceed for four reasons. First, the Third Circuit is currently considering whether Petitioner Mahmoud Khalil's claims are barred by multiple jurisdictional provisions. The Third Circuit's forthcoming decision could well require dismissal of this entire lawsuit; at a minimum, the court of appeals is likely to clarify or narrow the issues involved. The Court should defer considering Khalil's request for discovery pending the outcome of that appeal, especially because Khalil seeks intrusive, disfavored discovery into the communications and decisions of high-level government officials. Second, Khalil is not presumptively entitled to discovery or to the administrative record because he has filed a habeas petition, which proceeds under the habeas rules and cannot be properly combined with ordinary civil claims. Third, discovery is unwarranted because Khalil has not shown good cause for it. Khalil's claims turn on legal disputes, not factual matters. Even if Khalil's claims did depend on factual development, he has not shown a need for discovery because he has the voluminous administrative record before the Board of Immigration Appeals ("BIA"), the record already created in this Court, and public information. Fourth, Khalil's request for discovery is premature because the Court has not ordered the government to respond to the habeas petition. For these reasons, the Court should not permit any discovery to proceed.

I.    **The Court should stay consideration of discovery pending the Third Circuit appeal.**

First and foremost, this Court should stay any discovery in this proceeding pending a decision from the Third Circuit. A district court "has broad power to stay proceedings." *Bechtel Corp. v. Loc. 215, Laborers' Int'l Union of N. Am., AFL-CIO*, 544 F.2d 1207, 1215 (3d Cir. 1976). Whether to stay proceedings "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Id.* (citation omitted); *see Saint-Jean v. Holland*, No. CV 19-10680, 2021 WL 5866901, at *3–4 (D.N.J. Dec. 9, 2021) (staying district court proceedings pending appeal).

Here, the competing interests weigh decidedly against allowing discovery to proceed while the Third Circuit is deciding the government's appeal. In its appeal, the government argued that this Court lacks jurisdiction to adjudicate Khalil's claims, both because the Court lacks habeas jurisdiction and because multiple provisions of the Immigration and Nationality Act divest the Court of jurisdiction over Khalil's challenges to his detention and removal. The government also appealed the Court's holding that Khalil has shown a likelihood of success on his void-for-vagueness challenge, *see* Appellants' Br. 14–16, No. 25-2162 (3d Cir. Aug. 20, 2025), ECF 46, and Khalil raised his First Amendment and Due Process claims as alternative grounds for affirmance, *see* Appellee's Br. 12–16, No. 25-2162 (3d Cir. Sept. 10, 2025), ECF 61. Thus, essentially the entire case is before the Third Circuit, which held oral argument on October 21, 2025, after expedited briefing and argument.

"A stay is particularly appropriate, and within the court's 'sound discretion,' where the outcome of another case may 'substantially affect' or 'be dispositive of the issues' in a case pending before a district court." *MEI, Inc. v. JCM Am. Corp.*, No. CIV. 09-351, 2009 WL 3335866, at *4 (D.N.J. Oct. 15, 2009) (quoting *Bechtel Corp.*, 544 F.2d at 1215). If the Third Circuit decides in the government's favor on the jurisdictional issues, this case will of necessity be dismissed and any discovery request will be moot. At a minimum, the Third Circuit's decision will undoubtedly clarify the issues before this Court. Discovery, if any, should then be tailored to the circuit court's decision. For those reasons, judicial economy strongly favors a stay. *See Saint-Jean*, 2021 WL 5866901, at *3–4 ("Undoubtedly, it would promote judicial economy, preserve judicial resources, and avoid the duplication of efforts to allow the Appeal to proceed before this Court adjudicates the same issues."). In similar habeas cases, the district courts have not allowed discovery to proceed during the pendency of the appeals. *See Mahdawi v. Trump*, No. 2:25-cv-389 (D. Vt. July 7, 2025), ECF 81; *Chung v. Trump*, No. 1:25-cv-2412 (S.D.N.Y. July 18, 2025), ECF 64, *denying reconsideration*, No. 1:25-cv-2412 (S.D.N.Y. Aug. 14, 2025), ECF 66. So too, this Court should decline Khalil's request until the Third Circuit resolves the appeal.

Forcing the government "to engage in discovery which would be rendered moot" if the Third Circuit rules in the government's favor would cause unnecessary hardship. *Gibly v. Best Buy Co.*, No. CV 21-14531, 2022 WL 2413906, at *3 n.5 (D.N.J. Mar. 7, 2022). That is especially true because Khalil seeks broad discovery into the communications and foreign-policy decisions of high-level officials across multiple agencies. *See, e.g.*, Interrogatory # 6 (inquiring generally into how the government identifies aliens "subject to removability on the basis of the Foreign Policy Ground"); RFP # 9 (all communications in the entire Executive Branch concerning the timing of any aspect of Khalil's removal proceeding). "[U]ncontrolled discovery poses a special threat" when directed at federal government officials. *Dynamic Image Techs., Inc. v. United States*, 221 F.3d 34, 38 (1st Cir. 2000). Indeed, the Supreme Court has held that the conduct of the nation's foreign policy is not fodder for discovery in immigration-related litigation. In *Reno v. American-Arab Anti-Discrimination Committee* ("*AADC*"), the Court explained that "[t]he Executive should not have to disclose its 'real' reasons for deeming nationals of a particular country a special threat." 525 U.S. 471, 491 (1999). Khalil should therefore not be permitted to use the tools of discovery to pry into the internal deliberations of the high-ranking Executive officials, particularly in areas affecting sensitive issues of foreign policy—especially as the Third Circuit's decision may require that this entire action be dismissed. *See* Miscellaneous Order, *U.S. DOGE Serv. v. Citizens for Responsibility & Ethics in Wash.*, No. 24-1246 (S. Ct. June 6, 2025) (staying "discovery order that require[d] the Government to disclose the content of intra-Executive Branch" deliberations and reiterating that "separation of powers concerns counsel judicial deference and restraint in the context of discovery regarding internal Executive Branch Communications") (citing *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 385 (2004)), https://perma.cc/7JGR-QLYW.

Staying consideration of discovery would not unduly prejudice Khalil. Khalil contends that he needs expedited discovery so that he can seek relief from this Court as to the removal charge alleging misrepresentations in his lawful permanent resident ("LPR") application (the "document charge")

before the BIA issues a final order of removal.[1] However, removal—the most significant consequence of a final order—cannot occur while this Court's order staying removal remains in place. ECF 81. Khalil would still be able to litigate his claims before the Fifth Circuit in a petition for review ("PFR") and before this Court (if the Third Circuit holds that this Court has jurisdiction).

Khalil asserts that other harms could result from a final order on the document charge, namely, the loss of LPR status and of work authorization. Tr. of Oct. 23, 2025 Hr'g at 6–7, 9–10. Those are normal consequences faced by every LRP who receives a final order of removal; they are not a reason why *this* case must proceed on an expeditious timeline. In essence, Khalil is seeking to move this case forward on an expedited basis to avoid having to litigate the document charge in front of the BIA (and the Fifth Circuit if Khalil receives a final order and petitions for review). However, Khalil already sought preliminary injunctive relief as to the document charge and failed. ECF 272, at 99 ("[Khalil] is not likely to succeed on his challenge as to the efforts to remove him for allegedly failing to make certain disclosures on his lawful-permanent-resident application."). The Court did not bar the government from pursuing a final order based on the document charge. ECF 299, at 13 n.14. The Court also determined that Khalil may not file successive motions seeking preliminary relief. ECF 374, at 2. The Court should not now allow Khalil to assert an urgent need for discovery as to the document charge when Khalil did not sufficiently support his arguments for interim relief. *Id.* at 12–13 ("[T]he facts that are now advanced, and the legal arguments that are now fleshed out --- virtually all of this could have been done before.").

Moreover, Khalil bears at least some responsibility for the urgency he alleges because he waited several months before seeking discovery. In similar habeas cases, the petitioners all sought discovery in June or earlier. *See* Mot. for Limited Disc., *Mahdawi v. Trump*, No. 2:25-cv-389 (D. Vt. June 11, 2025),

---

[1] The BIA granted Khalil's extension request on October 28, 2025. Khalil's brief is now due December 3, and the Department of Homeland Security's ("DHS") brief is due December 24.

ECF 77; Letter Mot. for Disc., *Chung v. Trump*, No. 1:25-cv-2412 (S.D.N.Y. Apr. 10, 2025), ECF 30; Mot. to Conduct Limited Disc., *Ozturk v. Hyde*, No. 2:25-cv-374 (D. Vt. June 16, 2025), ECF 150.

Finally, Khalil will suffer no undue prejudice from waiting to have his request for discovery resolved because he has no presumptive right to any discovery in a habeas case. Khalil's assertions of harms do not justify starting discovery expeditiously now before the Third Circuit has ruled.

## II. Khalil is not entitled to discovery as a matter of right in this habeas proceeding.

Khalil's case is a habeas action. The Supreme Court has held that a "habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). Rather, pursuant to Rule (6)(a) of the Rules Governing § 2254 Cases, "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure." Rule 6(a), R. Gov. § 2254 Cases.[2] (As explained in Part III below, Khalil cannot show the requisite "good cause.")

Contrary to Khalil's argument, he is not presumptively entitled to discovery based on the "hybrid" nature of his habeas petition that purports also to be a civil complaint. Khalil initiated this case by filing a petition for writ of habeas corpus under 28 U.S.C. § 2241 and paying a $5.00 filing fee. *See* ECF 2. Though Khalil styles the operative pleading as the "Fourth Amended Petition for Writ of Habeas Corpus *and Complaint*," Khalil's claims all challenge the legality of his detention—the core of habeas. *See generally* ECF 382. Analyzing a previous petition raising substantially identical claims, the Southern District of New York concluded that all of Khalil's "claims, at bottom, present a challenge to his detention." ECF 78, at 16–17. Khalil may not evade the ordinary habeas rules by adding the word "complaint" to his pleading's caption.

---

[2] Courts routinely apply the Rules Governing § 2254 Cases to habeas actions brought under 28 U.S.C. § 2241. *See, e.g.*, *Thieme v. Ortiz*, No. CV 20-14835, 2023 WL 2706757, at *1 (D.N.J. Mar. 30, 2023), *aff'd sub nom. Thieme v. Warden Fort Dix FCI*, 154 F.4th 115 (3d Cir. 2025); *Pemberty v. Sessions*, No. CV 18-3412, 2018 WL 1370524, at *2 (D.N.J. Mar. 16, 2018); *Forbes v. Edwards*, No. CV 18-249, 2018 WL 515880, at *1 (D.N.J. Jan. 22, 2018).

Moreover, courts in the Third Circuit usually do not permit the type of hybrid proceeding that Khalil purports to bring. *See, e.g.*, *Romeo S. K. v. Barr*, No. CV 20-18065, 2020 WL 7640538, at *5 n.3 (D.N.J. Dec. 23, 2020) (petitioner in immigration detention); *Russo v. Att'y Gen.*, No. CV 15-6736, 2018 WL 2723860, at *4 (D.N.J. June 6, 2018). "Because habeas corpus actions and non-habeas corpus actions have different filing fee requirements, different pleading standards, and different substantive standards, it is generally inappropriate to bring a hybrid action asserting both habeas and non-habeas claims in one case." *Marsh v. Stratton*, No. CV 3:23-899, 2025 WL 950856, at *7 n.4 (M.D. Pa. Mar. 28, 2025), *reconsideration denied*, No. CV 3:23-899, 2025 WL 1416289 (M.D. Pa. May 15, 2025). When faced with a "hybrid" pleading, the district court should dismiss the habeas petition without prejudice or should construe the entire action as a habeas proceeding. *See Burnam v. Marberry*, 313 F. App'x 455, 456 n.2 (3d Cir. 2009).

Though Khalil cites two cases to support his position, those cases did not analyze whether a hybrid petition is ordinarily permissible (much less hold that it is). *See Alli v. Decker*, 650 F.3d 1007, 1009–10 (3d Cir. 2011); *David Q. v. Tsoukaris*, No. 20-CV-7176, 2020 WL 4382282, at *5 (D.N.J. July 30, 2020). And neither case holds that a hybrid pleading entitles petitioners to discovery under the Federal Rules of Civil Procedure. A habeas petitioner can assert various legal theories to allege that his detention is unlawful, but they are subject to the substantive limits and procedural rules of habeas actions. *See Thieme*, 154 F.4th at 123 ("[F]or an APA claim to be brought in habeas, it must have some relationship to the prisoner's release."); *see also Thieme*, 2023 WL 2706757, at *1–2 (applying the habeas rules in a case where the petitioner raised an APA claim). Khalil cites no authority for his assertion that bringing various claims in a habeas petition allows him to circumvent the habeas rules.

## III.    Khalil has not shown good cause for discovery in this habeas case.

Khalil has not shown "good cause" for discovery because his claims rest on legal issues, not factual disputes, and because he already has enough information to pursue his claims. *See* Rule 6(a), R.

Gov. § 2254 Cases. To show good cause, Khalil must set "forth specific factual allegations which, if fully developed, would entitle him . . . to the writ." *Williams v. Beard*, 637 F.3d 195, 209 (3d Cir. 2011). Even if Khalil meets the good-cause standard, the district court controls the scope of discovery and should reject "speculative discovery requests" that amount to a "fishing expedition." *Id.* at 210–11.

###### A.    Khalil has not shown good cause because his claims turn on legal questions.

There are no material disputed facts related to the reasons for Khalil's detention: the Secretary of State determined that his continued presence in the United States would compromise a compelling U.S. foreign policy interest. ECF 198-1, at 6. That determination was based on Khalil's participation in disruptive protests at Columbia University and his advocacy of foreign policy objectives contrary to current U.S. foreign policy in the Middle East, including U.S. support for Israel. *Id.* at 6–7. The Secretary of State's memorandum made clear that his determination was informed by the policy choices articulated in Executive Order 14150 and the Executive's determination that Khalil's actions and statements, contrary to U.S. foreign policy, "would severely undermine" the "significant foreign policy objective" of combating anti-Semitism at home and abroad. *Id.* at 7. DHS arrested and detained Khalil attendant to DHS's commencement of removal proceedings against him, pursuant to 8 U.S.C. § 1227(a)(4)(C) (the foreign policy charge). ECF 90-1, at 2. DHS later added a second charge of removability – the document charge. *See* 8 U.S.C. §§ 1182(a)(6)(C)(i), 1227(a)(1)(A); ECF 90-1, at 5. Congress provides that aliens may be detained pending removal proceedings on those charges. 8 U.S.C. § 1226(a). Given this undisputed factual record, there is no justification for permitting Khalil to engage in any discovery, not to mention discovery seeking to canvas the Executive Branch for information about the nation's foreign policy.

The claims in Khalil's Fourth Amended Petition do not otherwise warrant discovery. In the petition, Khalil alleges that the government has retaliated against him for his First Amendment activity, ECF 382, ¶¶ 144–58; has detained him without justification based on an unconstitutionally vague

policy in violation of the Fifth Amendment's Due Process Clause, *id.* ¶¶ 159–66; and has violated the APA with arbitrary and capricious actions, *id.* ¶¶ 167–69.

Khalil's First Amendment claim fails as a matter of law because "an alien unlawfully in this country has no constitutional right to assert selective enforcement as a defense against his deportation." *AADC*, 525 U.S. at 488. The Supreme Court reached that holding even though the government there *admitted* that it was targeting the aliens (some of whom were LPRs) for removal because of their First Amendment-protected activity. *Id.* at 473–74, 487–92. *AADC* forecloses Khalil's First Amendment claim. Khalil was charged as removable from the United States on the document charge—which has nothing to do with any First Amendment activity. As in *AADC*, "the Government does not offend the Constitution" by seeking to deport Khalil on that charge, even if it is also seeking to "deport[] him for [an] additional reason" related to First Amendment activity. *Id.* at 491–92.

Khalil's due process claim also lacks merit. "Detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523 (2003). Accordingly, aliens may be detained during the pendency of their removal proceedings even without an individualized determination as to flight risk or dangerousness. *See, e.g.*, *Carlson v. Landon*, 342 U.S. 524, 528–34, 538 (1952); *Wong Wing v. United States*, 163 U.S. 228, 235 (1896). Here, the government invoked its statutory authority to detain Khalil pending removal proceedings. *See* 8 U.S.C. § 1226.

In addition, Khalil's void-for-vagueness argument turns on legal questions. The government contends that Khalil cannot validly argue that a *policy* setting enforcement priorities is unconstitutionally vague. And the underlying statutory provisions, 8 U.S.C. §§ 1182(a)(3)(C)(iii) and 1227(a)(4)(C)(i), are not subject to a vagueness challenge because they do not regulate primary conduct. *See Nyeholt v. Sec'y of Veterans Affs.*, 298 F.3d 1350, 1356 (Fed. Cir. 2002). Moreover, the statutes' plain text contains benchmarks to provide notice of what conduct could fall under the statute.

For his APA claims, Khalil has not shown good cause for discovery or the production of the

administrative record because he does not challenge a final agency action. 5 U.S.C. § 704. Khalil's removal proceedings are ongoing, and there is no "final decision on [his] immigration status."[3] *Jama v. Dep't of Homeland Sec.*, 760 F.3d 490, 496 (6th Cir. 2014); *Arias Gudino v. Lowe*, 785 F. Supp. 3d 27, 37 n.3 (M.D. Pa. 2025); *Bal v. Sessions*, 292 F. Supp. 3d 604, 608 (E.D. Pa. 2017).

Finally, Khalil cannot show good cause for discovery as to the document charge because his claim is transparently barred by 8 U.S.C. § 1252(g) and (b)(9). Khalil now explicitly asks the Court to enjoin the government from "seeking to remove Petitioner based" on the document charge.[4] ECF 382, Prayer for Relief ¶ 4. No district court has jurisdiction to interfere with the decision or action "to commence proceedings, adjudicate cases, or execute removal orders." § 1252(g); *see* § 1252(a)(5), (b)(9) (providing for judicial review only through a PFR filed with a court of appeals).

In sum, to resolve this case, the Court will have to answer primarily questions of law, not fact. To be clear, the government does dispute some of Khalil's allegations (and once ordered by the Court, the government's answer may clarify the exact disputes). But, as shown above, Khalil's claims fail even under his version of the facts. That is why Khalil cannot show good cause for discovery.[5]

## B.    Khalil has not shown good cause because he already has sufficient information and opportunity to make and develop his claims.

Even if Khalil's claims did depend on factual development, Khalil has not shown a need for discovery because he has the voluminous administrative record before the BIA (over 4,300 pages); the extensive record already created in this Court (over 4,600 pages filed on the docket); and access to information in the public domain. Indeed, Khalil often cites public statements and other information

---

[3] Even if viable, the APA claim would proceed on the administrative record, not open-ended discovery. *See* 5 U.S.C. § 706; *Hill Dermaceuticals, Inc. v. FDA*, 709 F.3d 44, 47 (D.C. Cir. 2013).

[4] To avoid jurisdictional problems, Khalil previously represented that his claims "do not . . . seek to terminate his immigration proceedings." ECF 175, at 11.

[5] Khalil asserts, "as the district court has noted, discovery is among the 'next logical steps' in this case." But Judge Farbiarz was not making a statement about *this case*. Judge Farbiarz was discussing a general example about a case where a party lost a motion to dismiss. ECF 374, at 3.

to support his claims. *See, e.g.*, ECF 382, ¶¶ 32–37. Despite all the information he already has, Khalil states that he wants discovery to uncover further and additional support for his claims.[6] Khalil does not need discovery; he wants to engage in a "fishing expedition." *See Williams*, 637 F.3d at 209.

Moreover, Khalil can develop his claims in his removal proceedings and before the court of appeals in a PFR if necessary. The immigration judge *is* empowered to develop a record. *See* 8 U.S.C. § 1229a(b)(1); *see also* 8 C.F.R. §§ 1240.1(c), 1240.10(a)(4), 1240.11(c)(3)(ii). Indeed, the immigration judge has a duty to do so. *See, e.g., Toure v. Att'y Gen.*, 443 F.3d 310, 325 (3d Cir. 2006). And if the PFR record were insufficient, the court of appeals could "transfer the proceedings to a district court" for limited fact-finding in appropriate circumstances. 28 U.S.C. § 2347(b)(3); *see AADC*, 525 U.S. at 496 & nn. 2–3 (Ginsburg, J., concurring); *see also* Appellants' Rule 28(j) Letter, No. 25-2162 (3d Cir. Oct. 22, 2025), ECF 122. Khalil has not shown good cause for discovery.

## IV.    The Court should wait to consider Khalil's request until after the government responds to the habeas petition.

The Court has not yet ordered the government to answer Khalil's operative petition. *See* Rule 5(a), R. Gov. § 2254 Cases. The habeas rules contemplate that the Court will order an answer (Rule 5) before considering a request for discovery (Rule 6). The government's answer and any accompanying documents may eliminate the purported need for discovery or narrow the issues.

\*    \*    \*

The Court should wait to consider Khalil's request for discovery until after the Third Circuit rules on the pending appeal and the government answers the operative petition. Even if the Court considers the request now, the Court should deny it. Khalil does not show that he needs discovery when his claims turn primarily on legal questions and he already has access to sufficient information.

---

[6] Khalil argues that he needs all the materials produced in *AAUP v. Rubio*, No. 25-10685-WGY (D. Mass.). However, that discovery was ordered in another case does not show that discovery is needed in this one. Regardless, if the Court orders discovery to proceed, the government will dispute the relevance and proportionality of Khalil's requests when the parties discuss the scope of discovery.