October 20, 2026

VIA ECF
Honorable Stacey D. Adams
United States Magistrate Judge
District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street, Newark, New Jersey 07101

**Re: *Khalil v. Trump, et al.*, No. 2:25-cv-1963 (MEF) (SDA)**

Dear Judge Adams:

Petitioner Mahmoud Khalil, by counsel, hereby respectfully requests that the Court modify certain restrictions that are provided in the Court's original June 20, 2025, Bail Order (ECF 317), the July 7, 2025, Clarification Order (ECF 339), and the October 17, 2025, Bail Modification Order (ECF 394) ("the Order"), as set forth in Attachment 1 (Proposed Order). Mr. Khalil's counsel conferred with opposing counsel, who indicated that Respondents oppose each of the three requests. Respondents request 10 days to file their opposition to this request (Friday, October 30, 2026), and Petitioner respectfully seeks 5 days to reply (Wednesday, Nov. 4, 2026).

**First**, Mr. Khalil asks that this Court lift the requirement that he provide Respondents' counsel notice before traveling overnight to certain states within the continental United States. This request arises in the context of a significant increase in requests for Mr. Khalil to attend speaking events related to the publication of his book wherein he writes about his life, his speech in support of Palestinian human rights, and his experience in immigration detention in the United States; at these events Mr. Khalil seeks also to use his book as a platform for public education and advocacy surrounding justice for Palestine and for immigrants in detention.[1] Attendance at these events has required frequent domestic travel with the potential for last-minute changes, making compliance with the 48-hour notice requirements set forth in the October 17, 2025 Order unduly onerous. Lifting the restriction on domestic travel will ensure that Mr. Khalil can fully engage with the public on issues of public concern. Petitioner has had to update Respondents as to various changes in his schedule within the current parameters, which Respondents have accommodated, and the proposed modification will ease administrative burdens for both sides. No purpose is served by requiring him to decline speaking engagements that might arise within the 48 hours Mr. Khalil is presently restrained by. The existing travel restrictions and notice requirements are ordinarily not imposed on, and are unnecessary for, non-detained individuals with final orders of removal who are pursuing appeals such as Mr. Khalil. Moreover, Mr. Khalil is already permitted to travel to and within several states without 48-hour notice to Respondents, and has done so without incident.

**Second**, for the same reasons as request #1, Mr. Khalil seeks to modify the bail conditions to permit domestic travel throughout the United States and its territories, rather than only the continental

[1] In his book, which was published on September 29, 2026, Mr. Khalil writes about growing up in a Palestinian refugee camp in Syria and his experience in immigration detention in the United States following his arrest by ICE on March 8, 2025 that resulted from his speech in support of Palestinian human rights.

United States. Specifically, Mr. Khalil would like the domestic travel allowance to include Puerto Rico and Hawaii, places to which Mr. Khalil has already had to decline speaking event invitations regarding his book. The Court previously granted Mr. Khalil permission to travel to a non-contiguous U.S. state (*see* ECF 418), and he did so without incident.

**Third**, Mr. Khalil requests that Respondents return his passport, which he surrendered as a condition of his release. Mr. Khalil is requesting his passport for two reasons. First, Mr. Khalil's Permanent Resident Card ("green card"), the only official form of identification he currently possesses, expires on November 16, 2026. As the government is aware, Mr. Khalil has been presenting his green card to airport security for purposes of identification only for his domestic travel to date and, to avoid potential misunderstandings at the airport regarding his authorization to travel, he would prefer to be able to present an unexpired form of identification when his green card expires in the coming weeks. Second, Mr. Khalil also requires his passport in order to make arrangements for his possible departure from the United States. He has filed a petition for a writ of certiorari, and if the petition is denied and no further stays are in place, the government will require Mr. Khalil to leave the United States. Mr. Khalil would like to apply for foreign visas now, which require his passport, so that he may be prepared for the possibility of departure outside of the United States.

*Context and Basis for Mr. Khalil's Bail Modifications Request*

Mr. Khalil was ordered released from immigration custody on June 20, 2025 (ECF 316). The Court found Mr. Khalil is not a flight risk or danger to the community. The Court also set certain conditions of release including limits to the states Mr. Khalil could travel and a requirement that Mr. Khalil surrender his passport (ECF 317). On October 14, 2025, after three months of complying with the conditions of his release, Mr. Khalil requested a modification of his bail order to allow him to travel domestically without being limited to specific states (ECF 390). On October 17, 2025, the Court granted the request while requiring that Mr. Khalil provide advance notice to Respondents before traveling overnight to certain states (ECF 394).

Under his current conditions of release, Mr. Khalil is entitled to unrestricted travel, without notice to Respondents, to New Jersey, New York, and Michigan. Mr. Khalil is also not required to report: "(1) interstate travel occurring within one day, (2) travel to Louisiana for court appearances and attorney visits only, or (3) travel to Washington, D.C. for lobbying and legislative purposes only." (ECF 394.) For overnight travel elsewhere within the continental United States, Mr. Khalil is required to provide Respondents' counsel forty-eight (48) hours' notice regarding: (1) the dates of travel, (2) the destination locations, and (3) means of travel, including any specific carrier flights and times.

The proposed modification to Mr. Khalil's release conditions would more closely align with those conditions imposed on other non-detained individuals in analogous circumstances. For example, Rümeysa Öztürk, a Massachusetts-based graduate student detained by ICE based on her lawful speech, was released by order of the U.S. District Court for the District of Vermont on bail, pending adjudication of her habeas petition, without travel restrictions. *Öztürk v. Trump*, 2:25-cv-00374-wks, ECF 131 (D. Vt. May 9, 2025) ("Petitioner is not subject to any travel restrictions.").[2] Similarly, a

[2] The Court required only that Ms. Öztürk notify the Burlington Community Justice Center ("CJC") in advance of any overnight travel outside of New England, following which the CJC would notify a government contact. ECF 141 (D. Vt. May 16, 2025). Ms. Öztürk has subsequently departed the U.S., pursuant to a settlement of her case.

district court ordered the release of Dr. Badar Khan Suri subject only to the following conditions: "(1) Petitioner will reside in Virginia; (2) Petitioner will attend all court hearings in person unless excused by the Court; and (3) Petitioner will participate in his removal proceedings. Petitioner is **not** required to submit to any GPS monitoring." *Khan Suri v. Trump*, No. 1:25-cv-480 (E.D. Va. May 14, 2025) (ECF 65) (emphasis in original). In Mohsen Mahdawi's case, the district court lifted its initial travel restrictions after Mr. Mahdawi complied with its orders in the three months following his release, finding that "[i]n the absence of any information indicating that Mr. Mahdawi presents a risk of flight or a danger to the community, the removal of unnecessary restrictions on his movement within the United States is appropriate." *Mahdawi v. Trump*, 2:25-cv-00389-gwc (D. Vt. July 17, 2025) (ECF 86). Yunseo Chung's case provides further support for Mr. Khalil's request. The government targeted Ms. Chung under the same statutory provision used to target Mr. Khalil, alleging the same purported foreign policy concerns, and based on the same Rubio Determination. (ECF 198-1). A federal judge barred the government from detaining Ms. Chung nationwide, and imposed no limitations on her ability to travel. *See Yunseo Chung v. Trump*, 25 Civ. 2412 (NRB) (S.D.N.Y. June 5, 2025) (ECF 57); Tr. of Hr'g 29:12-30:5, *Chung v. Trump*, 25 Civ. 2412 (NRB) (S.D.N.Y. June 5, 2025)[3]; *see also Sarsour v. Swearingen*, No. 2:26-CV-00224-JPH-MKK, 2026 WL 1831176, at *12 (S.D. Ind. June 18, 2026) (releasing Petitioner on his own recognizance, subject only to the conditions that he reside in Wisconsin; attend all court hearings in his case unless excused by the Court; and participate in his removal proceedings).

Like each of these other habeas petitioners, and as this Court has found on numerous occasions, Mr. Khalil does not pose a risk of flight or danger and therefore should be allowed to travel domestically to both Hawaii and Puerto Rico and should not be subject to notice requirements as to his domestic travel. Moreover, the return of his passport does not create any flight risk concerns because he can already travel domestically and the administrative proceedings in his case have concluded. Upon information and belief, the government has provided (or never confiscated) passports for several of the other individuals listed above.

Fifteen months have passed since Mr. Khalil was released. Mr. Khalil respectfully requests that the Court allow him to travel domestically within the United States and its territories and lift the requirement that he provide Respondents' counsel notice before traveling overnight to certain states within the United States. Mr. Khalil also requests that Respondent return his passport, soon to be his only unexpired form of government issued identification and necessary for preparations for possible departure.

We thank the Court for its consideration of this request.

---

[3] Although Ms. Chung was neither detained nor in removal proceedings prior to the district court's issuance of a temporary restraining order, followed by a preliminary injunction, her ability to travel across the country without restriction despite the Secretary of State's determination that her presence in the United States is purportedly contrary to foreign policy interests supports Mr. Khalil's request here.

Respectfully submitted,

/s/ Baher Azmy

WASHINGTON SQUARE LEGAL SERVICES, INC.
Alina Das*
Immigrant Rights Clinic
245 Sullivan Street, 5th Floor
New York, New York 10012
Tel: (212) 998-6430

VAN DER HOUT LLP
Marc Van Der Hout*
Johnny Sinodis*
Oona Cahill*
360 Post St., Suite 800
San Francisco, CA 94108
Tel: (415) 981-3000
Fax: (415) 981-3003

CENTER FOR CONSTITUTIONAL RIGHTS
Baher Azmy
Samah Sisay*
Diala Shamas*
666 Broadway, 7th Floor
New York, NY 10012
Tel: (212) 614-6464

Kyle Barron
119 West 23rd St., Suite 900
New York, NY 10011
Tel: (480)430-6829

* *Appearing Pro hac vice*

*Counsel for Petitioner*