**U.S. Department of Justice**
Civil Division

October 30, 2026

**By ECF**
Honorable Stacey D. Adams
United States Magistrate Judge
District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street, Newark, New Jersey 07101

Re: ***Khalil v. Joyce, et al.*, Civ. Act. No. 25-1963 (MEF) (SDA)**
**Government's Response to Petitioner's Letter, ECF 434**

Dear Judge Adams:

Respondents ("the Government") respectfully submit this letter in response to Petitioner's letter dated October 20, 2026 (ECF 434), in which Petitioner requests three modifications to the bail conditions set by U.S. Magistrate Judge Michael A. Hammer. This Court should deny Petitioner's requests. As a threshold matter, this Court may lack the jurisdiction to consider the requests because the issue of release is an aspect of the Third Circuit appeal. In addition, since Judge Hammer set the bail conditions that Petitioner seeks to modify, the Third Circuit has held that the District Court lacks subject-matter jurisdiction over this case and never should have ordered Petitioner's release. Without the District Court's order, Petitioner would be subject to mandatory detention. Although the Third Circuit has not yet issued the mandate directing the District Court to dismiss this case, this Court should heed the Third Circuit's ruling and refrain from further loosening the restrictions on Petitioner.

Put simply, to the extent that the status quo is to be altered after the Government's victory on appeal at all, it should be in the Government's favor, not Petitioner's. The Third Circuit has held that this Court lacked jurisdiction to order release *at all*. Petitioner's request to ease the terms of release after that decisive loss is, among other problems, remarkably tone deaf to the clear message that the panel's decision was intended to convey. But, as set forth below, Petitioner's proverbial failure to read the room is hardly the only issue with his audacious request.

Moreover, Petitioner is subject to a final order of removal. As a result, the Government has an even stronger interest in knowing Petitioner's location and being able to reassert custody to execute removal once the Third Circuit issues its mandate. Last, Petitioner presents no strong reasons to justify his requests. Petitioner can go on his book tour while still complying with the relatively minimal bail restrictions that are in place.

## I. Background

The Secretary of State determined that Petitioner engaged in "antisemitic protests and disruptive activities which foster[ed] a hostile environment for Jewish students in the United States." ECF 198-1, at 7. The Secretary further determined that these activities "undermine U.S. policy to combat anti-Semitism around the world and in the United States" and that "condoning anti-Semitic

conduct and disruptive protests in the United States would severely undermine that significant foreign policy objective." *Id.* Accordingly, the U.S. Department of Homeland Security ("DHS") served Petitioner with a Notice to Appear ("NTA") charging him as removable under 8 U.S.C. § 1227(a)(4)(C)(i)-(ii)—the "foreign policy charge." ECF 32, at 2; ECF 72, at 2, 7. Under that provision, an alien is deportable based on his "beliefs, statements, or associations" if "the Secretary of State personally determines that the alien's admission would compromise a compelling United States foreign policy interest." 8 U.S.C. § 1182(a)(3)(C)(iii). DHS detained Petitioner pending removal proceedings. ECF 32, at 2; ECF 72, at 2. DHS subsequently charged Petitioner as removable on the additional ground that he failed to disclose material information on his application for adjustment of status—the "fraud charge." ECF 90-1, at 5.

On March 9, 2025, Petitioner filed the underlying petition for habeas corpus, alleging that DHS's arrest and detention of him was a result of the U.S. government's repression of student activism and speech specifically targeting students at Columbia University for criticism of Israel's actions against Gaza. ECF 2, at 2. On June 11, 2026, the District Court granted Petitioner's motion for a preliminary injunction, holding that Petitioner was likely to succeed on his challenge to the foreign policy charge. ECF 299, at 3, 12. However, the District Court held that Petitioner was *not* likely to succeed on his challenge to the fraud charge. *Id.* at 3. Accordingly, the District Court enjoined the Government from detaining or removing Petitioner from the United States based on the foreign policy charge. *Id.* at 12-13. The District Court made clear, however, that its holding "ha[d] no impact on efforts to remove the Petitioner for reasons other than the Secretary of State's determination." *Id.* at 13 n.14.

On June 20, 2025, the District Court ordered that Petitioner be released on bail and stated that the release order would become effective once the U.S. Magistrate Judge set bail conditions. ECF 316, at 1. The District Court forbade the Magistrate Judge from imposing electronic monitoring. *Id.* Judge Hammer set bail conditions and Petitioner was released. ECF 317; ECF 320. When released, Petitioner received a copy of his passport. ECF 320. The Government appealed from the District Court's preliminary injunction and release order. ECF 318.

On October 14, 2025, Petitioner asked Judge Hammer to remove all restrictions on his "travel within the United States" so that he could, *inter alia*, attend "conferences and events nationwide to which he has been invited" and "travel with family as needed or desired." ECF 390, at 1. Upon consideration of the parties' contentions and interests, Judge Hammer ordered the restrictions and reporting requirements that are currently in place. ECF 394; *see* Tr. of Oct. 16, 2026 Hearing, ECF 398. Specifically, Judge Hammer permitted Petitioner to travel to New Jersey, New York, and Michigan without prior notice to Respondents; and he granted Petitioner's request to travel overnight elsewhere in the continental United States, provided that Petitioner report the travel to the Government no less than 48 hours before starting the travel. ECF 394, at 1; *see also id.* at 1 n.1 ("Petitioner need not report: (1) interstate travel occurring within one day, (2) travel to Louisiana for court appearances and attorney visits only, or (3) travel to Washington, D.C. for lobbying and legislative purposes only."). In December 2025, Judge Hammer permitted Petitioner to travel one time outside the continental United States after the Government received notice of Petitioner's travel plans. ECF 418.

On January 15, 2026, the Third Circuit reversed the District Court's conclusion that it had jurisdiction over Petitioner's habeas petition. *Khalil v. President, United States*, 164 F.4th 259, 273, 281 (3d Cir. 2026) (per curiam). The Third Circuit concluded that the Immigration and Nationality Act,

specifically 8 U.S.C. § 1252(b)(9), stripped the District Court of jurisdiction over Petitioner's claims, requiring him to raise them in a petition for review of a final removal order. *Id.* at 273. The Third Circuit stated that it, therefore, will vacate the appealed orders and remand with instructions to dismiss the habeas petition for lack of subject-matter jurisdiction. *Id.* at 281; ECF 426 (Judgment). On October 19, 2026, Plaintiff petitioned for certiorari with the Supreme Court, Dkt. No. 26-530. The Third Circuit has stayed issuance of its mandate pending disposition of the certiorari petition. *See* Dkt. No. 25-2162 (3d Cir.), ECF 171 (Sept. 22, 2026).

On April 9, 2026, Petitioner received an administratively final order of removal—which terminated his status as a conditional lawful permanent resident—based on the foreign-policy charge and the fraud charge. *Matter of M-K-*, 29 I. & N. Dec. 556, 559-61 (BIA 2026); *see* 8 C.F.R. §§ 241.1, 1241.1 (defining "final order of removal"). Petitioner is seeking review of that final removal order in the Fifth Circuit. *See* Pet. for Review, *Khalil v. Blanche*, No. 26-60344 (5th Cir. May 10, 2026); 8 C.F.R. § 1.2 (defining "lawfully admitted for permanent residence"). Petitioner had also filed separate motions for remand, to reopen, and to reconsider with the Board of Immigration Appeals ("Board"). The Board has denied each motion. *See Matter of M-K-*, 29 I. & N. Dec. at 561-63 (denying motion to remand); *Matter of M-K-*, 30 I. & N. Dec. 84, 84 & n.2 (BIA 2026) (denying motion to reopen and motion to reconsider in separate orders).

In his October 20, 2026 letter, Petitioner requests three modifications to the bail conditions. ECF 434. First, Petitioner asks that this Court lift the requirement that he provide the Government notice before traveling overnight. Second, Petitioner requests permission to travel to Puerto Rico and Hawaii. Third, Petitioner asks this Court to order the Government to return his passport.

## II. Argument

### A. This Court likely lacks the authority to order looser bail restrictions while the appeal remains open.

Generally, "[t]he filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) (per curiam). The Government appealed specifically from the release order (ECF 316) in its first notice of appeal (ECF 318). The release order stated that it would not be effective until the Magistrate Judge set bail conditions, and it forbade making electronic monitoring one of those conditions. ECF 316, at 1. Thus, the bail conditions are intertwined with the release order at issue in the Third Circuit appeal. Although this Court may have the power to vacate the bail order and order arrest, this Court likely lacks authority to further loosen the bail restrictions. In the context of criminal appeals, district courts retain jurisdiction to "vacate a bail bond and order arrest." *Venen v. Sweet*, 758 F.2d 117, 120 n.2 (3d Cir. 1985). That makes sense: if a bailee violates release conditions or other circumstances show that the district court should revoke release, the court has the authority to do so. But Petitioner cites no authority establishing that this Court in the habeas context has jurisdiction to loosen the bail restrictions while the appeal of the release order remains open.

In any event, this Court certainly has the authority to deny Petitioner's requests. Fed. R. Civ. P. 62.1(a)(2). This Court should deny them for several reasons.

### B. The Government's interests in the restrictions have greatly increased because of the Third Circuit's decision and the final removal order.

Since Judge Hammer set the current bail restrictions in October 2025, the Government's interest in knowing Petitioner's location and being able to apprehend him swiftly have substantially increased. The Third Circuit has now held that the District Court lacks subject-matter jurisdiction and never should have ordered release. With the benefit of the Third Circuit's ruling, this Court should not further loosen the restrictions placed on Petitioner. This Court has no place interfering in the Government's decisions to place Petitioner in removal proceedings and to detain him. It is quite remarkable for Petitioner to ask this Court to ease the conditions of bail when the Third Circuit has held that the bail order and exercise of habeas jurisdiction was contrary to law. To the extent that the status quo should be modified at all, it should be in the Government's favor, not the Petitioner's.

In addition, Petitioner has now received an administratively final order of removal. *Matter of M-K-*, 29 I. & N. Dec. at 569; *see* 8 C.F.R. § 1241.1(a). And his attempts to reopen and remand his removal proceedings, or have the Board reconsider the final order of removal, proved meritless. *See Matter of M-K-*, 29 I. & N. Dec. at 561-63; *Matter of M-K-*, 30 I. & N. Dec. at 84 & n.2. Without the District Court's release order, Petitioner would have been subject to mandatory detention. 8 U.S.C. § 1231(a)(2). The Government has a strong interest in being able to swiftly locate Petitioner and execute the removal order if the Third Circuit's mandate issues and no other stay of removal is in place. *See Nken v. Holder*, 556 U.S. 418, 436 (2009) ("There is always a public interest in prompt execution of removal orders[.]"). Indeed, "to perform or complete a removal, the Attorney General must exercise his . . . power to detain an alien for a few days." *Tazu v. Att'y Gen. United States*, 975 F.3d 292, 298 (3d Cir. 2020).

Now that Petitioner has a final removal order, the Government has a strengthened interest in possessing his passport because a passport or other travel document is "generally necessary to effectuate a noncitizen's removal." U.S. Immigr. & Customs Enforcement, Policy No. 11311, *Confiscation and Return of Original Documents* § 2.4 (Jan. 13, 2023).[1] For aliens with a final removal order, DHS generally retains custody of their passports while the aliens are in custody or under an order of supervision. *Id.* § 5.8. No basis exists to provide Petitioner special treatment inconsistent with this policy.

Thus, since the current bail conditions were set in October 2025, the Government has gained even stronger interests in knowing Petitioner's travel plans, having Petitioner available for removal at the appropriate time rather than in distant locations, and possessing Petitioner's passport to effect removal.

### C. Petitioner provides no significant reason to reweigh the parties' interests as to his specific requests.

Judge Hammer weighed Petitioner's interests when setting the currently applicable restrictions. Petitioner presents no reason why he merits greater solicitude at this point.

As to the first request, Petitioner's desire to travel more frequently for a book tour does not provide any reason to eliminate the 48-hour notice requirement. Petitioner contends that "[a]ttendance

[1] https://perma.cc/F96D-3QUW

at these events has required frequent domestic travel with the potential for last-minute changes, making compliance with the 48-hour notice requirements set forth in the October 17, 2025 Order unduly onerous." ECF 434, at 1. Petitioner does not explain how providing notice has become unduly onerous. It is not difficult for Petitioner to inform his counsel of his travel plans and for his counsel to inform the Government.

Moreover, Judge Hammer already weighed Petitioner's interest in traveling to speak at events. In his request to modify the bail conditions last year, Petitioner asked the Court to remove all restrictions on his "travel within the United States" to attend "conferences and events nationwide to which he has been invited." ECF 390, at 1. Judge Hammer weighed that request and ordered the notification requirement in light of the Government's interest in knowing Petitioner's location and the minimal burden that the notification requirement imposes on Petitioner. *See* Tr. of Oct. 16, 2026 Hearing 20, ECF 398 ("[T]he Government fairly notes that it has a continuing interest in ensuring Mr. Khail appears at all future proceedings and can be located if he is in fact subjected to a final order of removal."); *id.* at 21 ("[M]erely providing basic travel information, the logistics is a minor task."). Petitioner's desire to travel more frequently does not justify reconsidering the bail restrictions, especially now that the Board has determined that Petitioner has no lawful right to be in the United States. While the Government has been flexible in accommodating Petitioner's last-minute changes to his travel plans, the Government has a strong interest in the current notification requirements. And although Petitioner is already permitted to travel to a few states where he has substantial ties without notice, that fact does not justify permitting travel everywhere in the United States without notice.

Petitioner asserts that the "existing travel restrictions and notice requirements are ordinarily not imposed on, and are unnecessary for, non-detained individuals with final orders of removal who are pursuing appeals such as Mr. Khalil." ECF 434, at 1. Petitioner neglects to mention that ordinarily individuals with final orders of removal must be detained by statute during the removal period and can be swiftly removed unless the circuit court hearing a petition for review issues a stay of removal. 8 U.S.C. § 1231(a)(2). Even those aliens released on an order of supervision are subject to restrictions, including a requirement that they "appear before an immigration officer periodically for identification." *Id.* § 1231(a)(3)(A). Petitioner cites other district court cases in which the courts ordered various release conditions. *See* ECF 434, at 2-3. But this Court should not find those cases to be persuasive when the Third Circuit has ruled that courts in this situation lack subject-matter jurisdiction to entertain the case at all. *Khalil*, 164 F.4th at 273, 281.

In fact, Petitioner's final order of removal gives the Government even more interest in his whereabouts since the Court last set his bail conditions. After the Board dismissed his appeal and denied every subsequent motion, Petitioner's lawful permanent resident status terminated under 8 C.F.R. § 1001.1(p). *See, e.g.*, *Loa-Herrera v. Trominski*, 231 F.3d 984, 988 (5th Cir. 2000), *Matter of Lok*, 18 I. & N. Dec. 101, 105 (BIA 1981). The U.S. Citizenship and Immigration Services thereafter terminated his employment authorization.

As to Petitioner's second request, Petitioner says that he "would like the domestic travel allowance to include Puerto Rico and Hawaii" so that he can attend speaking events related to his book. ECF 434, at 2. But again, Judge Hammer considered Petitioner's interests versus the Government's interests already. Petitioner presents no real reason why this Court should permit him to travel to Hawaii and Puerto Rico as a matter of course, particularly where Petitioner is now an "unauthorized alien" for employment purposes. Indeed, Petitioner simply "would like" to travel there.

As to Petitioner's third request, Petitioner presents no credible reason for why he needs the return of his passport. Petitioner's stated reasons for returning his passport are specious. First, Petitioner states that his Permanent Resident Card will expire on November 16 and that he will no longer have an unexpired identification to present at airport security. ECF 434, at 2. Petitioner states that "he would prefer to be able to present an unexpired form of identification when his green card expires in the coming weeks." *Id.* Notably, Petitioner uses the word "prefer" because having an expired identification does not prevent Petitioner from flying domestically. The Transportation Security Administration "currently accepts expired ID up to two years after expiration." *Acceptable Identification at the TSA Checkpoint*, Transp. Sec. Admin.[2]

Petitioner's second reason for requesting his passport is equally misdirected. Petitioner argues that he "requires his passport in order to make arrangements for his possible departure from the United States." ECF 434, at 2. His argument appears to be an attempt to bypass ICE policy governing the custody and return of original identity and travel documents. *See* Policy No. 11311, *Confiscation and Return of Original Documents*. Policy No. 11311 provides that ICE will generally confiscate foreign and domestic government-issued documents during the pendency of removal proceedings and will retain them if the alien receives a final order of removal. *See id.* § 2. While an alien may request ERO to provide an original document, the return of that document requires a case-by-case determination, considering, *inter alia*, any operational concerns. *See id.* § 2.3; *see also id.* § 5.2. Alternatively, the alien may request a certified copy of the original document. *See id.* § 5.5.

Additionally, if the Third Circuit's mandate issues and no stay of removal is in place, the Government will arrange for Petitioner's departure from the United States. Petitioner did not receive a grant of voluntary departure. *See Matter of M-K-*, 29 I. & N. Dec. at 568-69. Even if he had, it would have automatically terminated when he filed his petition for review with the Fifth Circuit. *Munoz-Granados v. Barr*, 958 F.3d 402, 408-09 (5th Cir. 2020) (citing 8 C.F.R. § 1240.26(i)). Petitioner will not need to apply for visas on his own. If the Government requires any assistance from Petitioner to effectuate his removal, the Government will inform him what specific steps are needed.

In short, Petitioner presents no compelling reason why this Court should revisit Judge Hammer's analysis, especially when the most substantial developments—the administratively final removal order and the Third Circuit's ruling—overwhelmingly strengthen the Government's interests.

For these reasons, the Government respectfully asks this Court to deny Plaintiff's requests to modify the bail conditions.

[2] https://perma.cc/87S3-XFTR

Respectfully submitted,

*/s/ Joshua C. McCroskey*
JOSHUA C. MCCROSKEY
ANIELLO DESIMONE
Trial Attorneys
Office of Immigration Litigation
Civil Division, U.S. Dept. of Justice
PO Box 878, Ben Franklin Station
Washington, D.C. 20044
202-305-1540
joshua.c.mccroskey@usdoj.gov

Counsel for Respondents

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

DREW C. ENSIGN
Deputy Assistant Attorney General

AUGUST E. FLENTJE
Deputy Director

ALANNA T. DUONG
Senior Litigation Counsel