November 4, 2026

VIA ECF
Honorable Stacey D. Adams
United States Magistrate Judge
District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street, Newark, New Jersey 07101

**Re: *Khalil v. Trump*, *et al.*, No. 2:25-cv-1963 (MEF) (SDA)**

Dear Judge Adams,

Petitioner Mahmoud Khalil, by counsel, hereby respectfully submits this reply to Respondents' opposition (Dkt. No. 437) to Petitioner's request for a modification of his bail order (Dkt. No. 434).

As an initial matter, Respondents question this Court's authority to modify the bail conditions in this case. Respondents are incorrect. Federal district courts retain authority to modify bail conditions while a case is on appeal, and the government cites no authority that indicates that the bail authority is a one-way ratchet. *See Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 97 (3d Cir. 1988) (noting that, when a case is on appeal, the district court retains jurisdiction over "the granting of bail, and matters of a similar nature.") (citing *Venen v. Sweet,* 758 F.2d 117, 120 n. 2 (3d Cir.1985)); *see also United States v. Elkins*, 683 F.2d 143, 145 (6th Cir. 1982) ("The [district] court retains jurisdiction . . . at least for the limited purposes of reviewing, altering or amending the [bail] conditions . . . during the pendency of an appeal) (quoting *United States v. Black*, 543 F.2d 35, 37 (7th Cir. 1976)). Indeed, the last modification of the bail conditions in this case occurred while the case was on appeal to the Third Circuit. *See* Dkt. No. 394. The fact that the Third Circuit has now ruled does not change this calculus; the Third Circuit has stayed its mandate pending the Supreme Court's consideration of Mr. Khalil's petition for a writ of certiorari (a petition that the U.S. Solicitor General has already told the Supreme Court should be granted). *See* Order, *Khalil v. President, United States*, No. 25-2162 (3d Cir. Sept. 22, 2026), ECF No. 171 (staying mandate); Petition for Writ of Certiorari at 5, *Trump v. Suri*, No. 26-380 (U.S. Sept. 21, 2026) (stating that the Supreme Court should grant certiorari in *Khalil*). So long as the bail order is in place, this Court has the power to modify it.

Turning to Respondents' substantive objections to Mr. Khalil's requests, Respondents assert an interest in being able to effectuate Mr. Khalil's removal order if it ever becomes enforceable. However, Respondents have not explained why the restrictions in the bail order that Mr. Khalil seeks to modify are necessary to ensure that he departs from the United States.[1] Respondents and the Court have consistently asserted that Mr. Khalil would be able to self-deport from the United States. *See* M.J. Hammer Hr'g Tr. at 13:8-17 (June 20, 2025) (Respondents' counsel requesting a condition disallowing international travel "with the exception for requiring Mr. Khalil to self-deport upon a final order of removal."), *id.* 21:14-20 (Magistrate Judge Hammer noting that the government could move to modify the condition prohibiting international travel, "if necessary, for self-deportation."). These conversations took place even after an immigration judge had ordered Mr. Khalil removed. *See* M.J.

[1] Respondents claim that, "[w]ithout the District Court's order, Petitioner would be subject to mandatory detention." This is a misstatement of law. Without the bail order, Mr. Khalil would be subject to only supervision under 8 U.S.C. § 1231(a)(3). Supervision requirements vary and do not necessarily entail restrictions on travel within the United States.

Hammer Hr'g Tr. at 9:12-13 (June 20, 2025). When the BIA issued a final order of removal, they also told Mr. Khalil to self-deport. Ex. A (Self-Deport Flyer, issued to Mr. Khalil by the BIA on April 9, 2026). Just two weeks ago, in response to Mr. Khalil's petition for writ of certiorari, the Department of Homeland Security stated to the press: "We would encourage him to use the CBP Home App and self-deport."[2] Elsewhere, Respondents consistently encourage noncitizens to arrange for their own deportation, and provide no reason why Mr. Khalil should not be permitted to do the same.[3] To treat him differently in this respect would be further evidence of Respondents' retaliatory and punitive motives.

And as this Court has already found—and Respondents did not contest—Mr. Khalil is not a flight risk or danger. Dkt. No. 330, J. Farbiarz Hr'g Tr. at 56: 5-11 (June 20, 2025). One of the reasons Mr. Khalil is seeking to modify his bail order—namely, the return of his passport—is precisely so he can depart from the United States if his removal order becomes enforceable. Under federal regulations, such a departure would effectuate the removal order, fulfilling the government's interest. 8 C.F.R. §§ 241.17, 1241.7.

The current restraints on Mr. Khalil's liberty are preventing him from attending speaking events and engaging with the public on matters of pressing concern. The 48-hour requirement has led him to turn down speaking engagements that have arisen while he has been traveling. The continental U.S. restriction has led him to turn down speaking engagements in Hawaii and Puerto Rico. Respondents do not and cannot argue that Mr. Khalil and the people who seek to hear his viewpoints have no interest in doing so.

With respect to his passport, Respondents point out that there is a process by which individuals can seek the return of confiscated identify documents. In any event, here, it is the bail order that dictates the surrender of Mr. Khalil's passport, not agency policy. Mr. Khalil surrendered his passport upon his release; ICE did not confiscate it when it detained him. Dkt. No. 316, Bail Order. Mr. Khalil must seek a modification of the bail order to receive his passport back.[4] Here, the interests of the parties should be aligned. The passport restriction prevents him from making arrangements for departing the U.S. if his removal order becomes enforceable. Respondents provide no reason why they cannot provide Mr. Khalil back his passport, even temporarily, so that he may pursue arrangements for his departure.

Thank you for your consideration of this request.

---

[2] *Activist Mahmoud Khalil asks Supreme Court to let US judges quickly reverse immigration detentions*, Associated Press (Oct. 19, 2026), https://apnews.com/article/mahmoud-khalil-supreme-court-palestinian-protests-columbia-8ac4b21f75a38a0165c92ee1a14f093e.

[3] In May 2025, government officials announced a program to incentivize self-deportation by providing financial and travel assistance and the ability to "leave safely" and "travel normally." *See* Homeland Sec., CBP Home: Assistance to Voluntarily Self Deport (May 7, 2025), https://www.dhs.gov/cbphome. A press release stated "self-deportation is the best, safest and most cost-effective way to leave the United States to avoid arrest. . . . This is the safest option for our law enforcement, [noncitizens] and is a 70% savings for US taxpayers." *See* Press Release, Dep't Homeland Sec., DHS Announces Historic Travel Assistance and Stipend for Voluntary Self-Deportation (May 5, 2025). The government has provided various incentives for noncitizens to "leave the U.S. on your [their] terms," including monetary and travel stipends for self-removal. *See supra*, Homeland Sec., CBP Home: Assistance to Voluntarily Self Deport (May 7, 2025).

[4] An original passport, rather than a certified copy, is typically required to apply for visas and similar documents. Petitioner would be happy to address any questions the Court may have about his need for a passport should the Court wish to schedule a conference on this matter.

Respectfully submitted,

/s/ Baher Azmy

WASHINGTON SQUARE LEGAL SERVICES, INC.
Alina Das*
Immigrant Rights Clinic
245 Sullivan Street, 5th Floor
New York, New York 10012
Tel: (212) 998-6430

VAN DER HOUT LLP
Marc Van Der Hout*
Johnny Sinodis*
Oona Cahill*
360 Post St., Suite 800
San Francisco, CA 94108
Tel: (415) 981-3000
Fax: (415) 981-3003

CENTER FOR CONSTITUTIONAL RIGHTS
Baher Azmy
Samah Sisay*
Diala Shamas*
666 Broadway, 7th Floor
New York, NY 10012
Tel: (212) 614-6464

Kyle Barron
119 West 23rd St., Suite 900
New York, NY 10011
Tel: (480)430-6829

* *Appearing Pro hac vice*

*Counsel for Petitioner*

# EXHIBIT A

# MESSAGE TO ILLEGAL ALIENS:
# A WARNING TO SELF-DEPORT

## Benefits:

**Self-deportation is safe.** Leave on your own terms by picking your departure flight.

**Keep money earned in the U.S.** If you self-deport as a non-criminal illegal alien.

**Future opportunity for legal immigration.** If you self-deport using CBP Home instead of being deported by ICE.

**Possible Flights Home.** You may be eligible to a subsidized flight if you cannot afford to leave.

For More Information:

SCAN ME

## Consequences:

**Immediate deportation.** You will be apprehended by DHS with no opportunity to get your affairs in order beforehand.

**Fines and penalties.** A fine of $998 *per day* if you received a final order of removal and stayed. A fine of $1,000 - $5,000 if you fail to self-deport after claiming that you will.

**Possible imprisonment.** If you fail to self-deport, you may be subject to jail time.

**Barred from returning.** Prohibited from reentering the U.S. through the legal immigration system.

EOIR - 1 of 2

# MENSAJE A LOS INMIGRANTES ILEGALES:

# UNA ADVERTENCIA PARA LA AUTODEPORTACIÓN

## BENEFICIOS:

**Autodeportación es mas seguro.** Puede viajar bajo sus propios términos y elegir su vuelo.

**Mantenga su dinero ganado en los Estados Unidos.** Si se autodeporta como un inmigrante no criminal.

**Oportunidades de inmigración legal en el futuro.** Si se autodeporta usando la aplicación CBP Home en lugar de ser deportado por ICE.

**Posibles vuelos a casa.** Podrá ser eligible a que su vuelo sea pagado si no puede pagarlo por su cuenta.

Para más información:

SCAN ME

## Consecuencias:

**Deportación Inmediata.** Sera arrestado por DHS sin tener la oportunidad de poder hacer ningún arreglo de antemano.

**Multas y Sanciones.** Una multa de $998 por día si recibe una ultima orden de deportación y decide quedarse. Una multa de $1,000 - $5,000 si no se auto deporta después de haber dicho que si lo haría.

**Posible Encarcelamiento.** Si no se autodeporta, será sujeto a tiempo en prisión.

**Prohibido Regresar.** Prohibido de regresar a los Estado Unidos por el sistema legal de migración.